IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company and Allergan USA, Inc.,

Plaintiffs,

v.

Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,

Defendants.

C.A. No. 21-1411-RGA-LDH

[redacted]

[redacted]

REDACTED - PUBLIC VERSION
Filed December 20, 2024

**EXHIBITS TO REVANCE'S MOTION IN LIMINE # 3**
**<u>TO PRECLUDE ALLERGAN FROM PRESENTING PAIK EXHIBIT 31</u>**

# Exhibits to Allergan's Opposition to Revance's Motion in Limine # 3 to Preclude Allergan from Presenting Paik Exhibit 31

| Exhibit | Description |
|---|---|
| 1 | Excerpt of Deposition Transcript of Jason Paik |
| 2 | Plaintiffs' Objections and Responses to Defendants' Notice of Rule 30(b)(6) Deposition of Plaintiffs |
| 3 | Botox US Supply Chain Flows |

# EXHIBIT 1

[redacted]



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc.,
Plaintiffs,
v.
Revance Therapeutics, Inc., and Ajinomoto Althea, Inc., d/b/a Ajinomoto Bio-Pharma Services,
Defendants.

Case No. 1:21-cv-01411-RGA

[redacted]

Videotaped Deposition of
Jason Paik
Wednesday, November 1, 2023
COSTA MESA, CALIFORNIA
9:21 a.m.

STENOGRAPHICALLY REPORTED BY:
LINDSAY A. STOKER, RMR, CRR, CRC
CA CSR No. 14373

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646



Deposition of JASON PAIK, held at the offices of:

Paul Hastings LLP
695 Town Center Drive
Costa Mesa, California 92626

Before Lindsay Stoker, Registered Diplomate Reporter, Certified Shorthand Reporter No. 14373 in and for the State of California.



APPEARANCES:
ON BEHALF OF PLAINTIFFS ALLERGAN, INC., ALLERGAN PHARMACEUTICALS IRELAND UNLIMITED COMPANY, AND ALLERGAN USA, INC.:
PAUL HASTINGS LLP
BY: CHAD J PETERMAN, ESQ.
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6797
Facsimile: (212) 230-7797
Email: Chadpeterman@paulhastings.com
PAUL HASTINGS LLP
BY: FELIX A EYZAGUIRRE, ESQ.
600 Travis Street
58th Floor
Houston, Texas 77002
Telephone: (713) 860-7382
Facsimile: (713) 353-2803
Email: Felixeyzaguirre@paulhastings.com

ON BEHALF OF DEFENDANTS REVANCE THERAPEUTICS, INC., AND AJINOMOTO ALTHEA, INC., d/b/a AJINOMOTO BIO-PHARMA SERVICES:
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
BY: SASHA S. RAO, ESQ.
NIRAV N. DESAI, ESQ.
1101 K Street Northwest
10th Floor
Washington, D.C.
Telephone: (202) 772-8733
Email: SRao@sternekessler.com, ndesai@sternekessler.com

ALSO PRESENT:

VIDEOGRAPHER:
Miguel Espana



INDEX

WITNESS: JASON PAIK


| | PAGE |
|---|---|
| EXAMINATION BY MR. RAO | 9 |


EXHIBITS


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | Plaintiff's Responses to Defendant's 30(b)(6) Notice | 11 |
| EXHIBIT 2 | Defendant's 30(b)(1) Notice | 19 |
| EXHIBIT 3 | Resume of Mr. Paik | 20 |
| EXHIBIT 4 | Distribution agreement document between two entities, Allergan Pharmaceuticals Ireland API with Allergan U.S.A., Bates number ALGN-0012623 through 638 | 38 |
| EXHIBIT 5 | ALGN-1837437.xlsx, Bates number ALGN-1837437 | 42 |
| EXHIBIT 5 | [redacted] [redacted] Bates number ALGN-1837437 | [redacted] |
| EXHIBIT 6 | [redacted] of Exhibit 5 | 50 |

[redacted]



with me is Felix Eyzaguirre, also from Paul Hastings.
THE VIDEOGRAPHER: Will the court reporter please swear in the witness.

JASON PAIK,
called as a witness, having been first duly sworn, was examined and testified as follows:
THE VIDEOGRAPHER: You may proceed.

EXAMINATION
BY MR. RAO:
**Q. Can you please state your name for the record.**
A. Yes, Jason Paik.
**Q. And what is your address?**
A. [redacted]
**Q. And have you been deposed before?**
A. No, I have not.
**Q. So I'm going to go over some general principles for the deposition. I'm going to ask you a number of questions today, and please answer to the best of your ability and knowledge.**
A. Okay.



**Q. If you don't understand a question, please let me know. If you don't ask for clarification, I will assume that you have understood the question.**
A. Okay.
**Q. If your counsel objects, you will still need to answer.**
A. Okay.
**Q. And as you know, the court reporter will be recording your testimony today, and so please provide verbal answers. Please wait till I finish my question before you respond, and I will try to do the same, wait for your response to be complete before asking my next question.**
**Are you taking any medications today that might impair your ability to testify completely and accurately?**
A. No, I am not.
**Q. And is there any reason why you would not be able to give truthful and accurate testimony today?**
A. No.
**Q. What is your understanding for why you are providing testimony today?**
A. I understand there is litigation underway to -- where Allergan is filing a Complaint for



infringement on patents for Botox and against Revance.
**Q. And have you seen that Complaint?**
A. I have seen the Complaint document, yes.
**Q. And have you seen the patents that Allergan is asserting?**
A. I have seen patent numbers and the list of the patents, yes.
**Q. Are you aware of the subject matter of those patents?**
A. Based on the description of a patent, but not the details of what is behind each patent --
**Q. Okay.**
A. -- no.
**Q. Do you have an understanding of which products are involved in this litigation?**
A. Primarily Botox.
MR. RAO: I am going to introduce as Exhibit 1, Plaintiff's Responses to Defendant's 30(b)(6) Notice. This will appear on your screen shortly.
(Exhibit 1 was marked for identification.)
MR. RAO: And please let me know once it does.
BY MR. RAO:
**Q. Has it appeared on your screen yet?**



A. Yes.
**Q. Have you seen this document before?**
A. Yes, I have.
**Q. And what is your understanding of what this document is?**
A. This document lists the plaintiff's objections for multiple topics.
**Q. And is it your understanding that you have been designated to testify on behalf of plaintiffs with respect to certain of these topics?**
A. Yes.
**Q. And to confirm, are those topics 6, 9 --**
MR. PETERMAN: He is looking at the wrong part of the document. Can I take him to --
MR. RAO: Yes, please.
BY MR. RAO:
**Q. 28?**
A. Yes.
**Q. 33?**
A. Yes.
**Q. 35?**
A. Yes.
**Q. 36?**
A. Yes.
**Q. 43 through 47?**

[redacted]



A. Yes.
**Q. And are you prepared to testify on those topics today?**
A. Yes, I am.
**Q. And what did you do to prepare?**
A. I met with my counsel to prepare to understand the background of each topic, and also prepare for -- to be able to respond to each topic.
**Q. And which counsel did you meet with to prepare?**
A. I met with Chad Peterman at Paul Hastings and also with Felix from Paul Hastings.
**Q. Aside from counsel, did you meet or speak with anyone else in preparation for today's deposition?**
A. There were others that we met with to obtain additional information to be able to respond accordingly for each topic.
**Q. And who were with those individuals?**
A. The individuals were Inaja Amorim, finance director, at AbbVie; and Christopher Mlynek, who is head of manufacturing for the supply chain for Allergan at AbbVie, and -- and then Russell Benes, also part of supply chain operations, the vice president for -- at AbbVie. And also Jill Carey,



who is senior director of tax at AbbVie.
**Q. Did you speak with anyone else?**
A. No one else.
**Q. What was the nature of your conversation with Inaja Amorim?**
A. Inaja Amorim was primarily in -- obtaining more recent assumptions for the financials for Botox Cosmetic and, specifically, more around pricing information and P&L information for Botox Cosmetic.
**Q. And when you say more recent assumptions, what date range are you referring to?**
A. For 2023.
**Q. And why was a conversation needed with Ms. Amorim about P&L pricing and recent assumptions in 2023?**
A. So --
MR. RAO: I would just caution the witness not to reveal any attorney-client communications as to rationale, but if you can answer otherwise, you can feel free to.
THE WITNESS: It was primarily because I have been out of the role as a finance director. She backfilled my role. And so I'm getting more additional information on the latest assumptions for Botox Cosmetic.



BY MR. RAO:
**Q. And how long were you -- sorry, scratch that.**
**What do you mean by you were out of the role as finance director?**
A. I switched out of the role as finance director about six months ago, and Inaja Amorim is my backfill.
**Q. So she's now the individual who is responsible for the subject matter that you just described?**
A. Today, yes.
**Q. And what was the nature of your communication with Christopher Mlynek?**
A. Christopher Mlynek was primarily to understand how the demand for Botox Cosmetic is being managed today, or for Botox at AbbVie and understanding manufacturing capacities.
**Q. Did you speak with Mr. Mlynek regarding any other subject matter?**
A. No other subject matter.
**Q. Was the manufacturing capacity for any other products discussed?**
A. No. Only Botox.
**Q. And when you say "only Botox," are you**



**referring to only Botox Cosmetic or both Botox cosmetic and therapeutic?**
A. The topic was for Botox, which covers cosmetic and therapeutic.
**Q. And what was your conversation with Russell Benes?**
A. Russell Benes provided the -- more double-click information on manufacturing capacity for Botox.
**Q. What do you mean by "double-click information"?**
A. Additional information, specific figures on the exact quantity of product that AbbVie can manufacture for Botox.
**Q. And, again, that refers both to Botox Cosmetic and therapeutic --**
A. Correct.
**Q. -- is that correct?**
**And Jill Carey, what was your conversation concerning with respect to Jill Carey?**
A. Jill Carey was able to walk me through the structure of the Allergan entities as it relates to Botox IP, and explain, I guess, the economic profit of Botox across the Allergan entities.
**Q. And, again, referring to Botox as both**

[redacted]

Page 17

**Botox Cosmetic as well as therapeutic?**
A. Yes.
**Q. Aside from speaking with these individuals, did you review any documents?**
A. Well, no documents were reviewed in speaking with Christopher Mlynek and Russell Benes. However, [redacted]
MR. RAO: And, Counsel, we would ask for that [redacted] that Mr. Paik is referring to to be produced.
MR. PETERMAN: We will take it under consideration.
BY MR. RAO:
**Q. Do you have that [redacted] with you today?**
A. I do not.
**Q. Aside from the documents you mentioned reviewing with those individuals, did you review any other documents?**
A. We -- I did review some documents produced by Inaja Amorim -- I believe that has been shared -- specifically regarding Botox Cosmetic in the U.S.

Page 18

for pricing and the P&L.
**Q. Were there any other documents that you reviewed?**
A. No other documents.
**Q. Outside of your discussions with counsel and these individuals, and the documents you just mentioned, did you do anything else to prepare for today's deposition?**
A. No other preparations.
**Q. I would like you to turn back to Exhibit No. 1, and if you could take a look at topics 40 and 41, please.**
A. Okay.
**Q. Do you understand that you have been designated to testify as to these topics as well?**
A. Yes.
**Q. And what did you do to prepare for those two topics?**
A. I had a conversation with my counsel on what these two topics were about, and that was it.
**Q. Aside from speaking with counsel, did you have any conversations with anyone else?**
A. I did not.
**Q. Did you review any documents in relation to preparing for these two topics?**

Page 19

A. No, I did not.
**Q. When were you told that you would be speaking as to topics 40 and 41?**
A. Just this morning before this deposition.
**Q. Around what time was that?**
A. Around 8:30 a m. this morning.
MR. RAO: I would like to introduce as Exhibit No. 2 Defendant's 30(b)(1) Notice on Mr. Paik.
(Exhibit 2 was marked for identification.)
MR. RAO: It should be available now.
THE WITNESS: Okay. Okay.
BY MR. RAO:
**Q. You understand that in addition to the testimony you will provide today on behalf of plaintiffs that you have also been designated -- or asked to testify with respect to issues and things within your personal knowledge?**
A. No. I'm not aware based on personal knowledge.
**Q. Have you seen this document before?**
A. Yes.
**Q. And when did you see this document?**
A. About two days ago.
**Q. And what is your understanding of this**

Page 20

**document?**
A. I read this document as -- as an official notice that I am being deposed for this case.
**Q. Do you have any further understanding of your obligations under the role of this document?**
A. Nothing beyond, then, what is stated on this document.
**Q. So today you will be providing testimony in two capacities. One is speaking on behalf of the knowledge of plaintiffs and, secondly, testimony with respect to your own knowledge regarding questions that I ask.**
A. Okay.
**Q. In both capacities, you are to provide accurate and complete information, truthful testimony. And those rules apply for both.**
A. Understood.
**Q. Approximately how much time did you spend preparing for today's deposition?**
A. I would say, in total, roughly 12 to 14 hours in preparation for this deposition.
MR. RAO: I would like to introduce as Exhibit No. 3 a resume of Mr. Paik.
(Exhibit 3 was marked for identification.)

**of profits from the development, manufacture, sale, marketing, or promotion of Botox Therapeutic?**
A. No.
**Q. Who would be knowledgeable about that subject matter?**
A. My finance counterpart, when I was in the role, is Stacy Klinkenborg, and Stacy Klinkenborg would be more knowledgeable on the Botox Therapeutic side.
**Q. And did you speak with Ms. Klinkenborg in preparation for today's deposition?**
A. I did not.
**Q. [redacted]?**
A. I do not know.
**Q. Have you ever heard of an entity referred to as AbbVie Neuroscience?**
A. I have not.
**Q. Do you have any understanding of what entity sells, markets, distributes, or manufactures Botox Therapeutic?**
A. No. I am not aware of other entities.
**Q. Earlier you mentioned that you had taken a look at some of the patent numbers that are for the**



**patents that are asserted in this case; correct?**
A. Correct.
**Q. Do you have an understanding of which entity those patents are currently assigned to?**
A. No. I don't have knowledge for it -- on it.
**Q. Do you have any knowledge regarding any entities that hold any exclusive licenses to those patents?**
A. No.
**Q. And just to be clear, when you are saying "no," you are referring to whether you have knowledge or whether the entities do or do not hold exclusive licenses to the patents?**
A. The prior.
MR. RAO: I would like to introduce as Exhibit 5 a document bearing Bates number ALGN-1837437.
(Exhibit 5 was marked for identification.)
MR. PETERMAN: If we're going to switch documents, we have been going for about an hour and 20 now. Can we take a break?
MR. RAO: Yes, we can take a break.
THE VIDEOGRAPHER: We are going off the video record at 10:30 a m.



(Recess).
THE VIDEOGRAPHER: We are going back on the video record at 10:48 a m.
BY MR. RAO:
**Q. Welcome back, Mr. Paik.**
A. Thank you.
**Q. During the break, did you speak with counsel regarding the substance of your testimony?**
A. No, I did not.
**Q. In preparation for today's deposition,** [redacted]
**Q. What did you mean by you "**[redacted]
A. [redacted]



[redacted]
**Q. And aside from counsel, who did you speak with to learn about these** [redacted] **that you just mentioned?**
A. Also spoke to my tax person at AbbVie, Jill Carey, as well, who was able to walk me through the [redacted]
**Q. Is the** [redacted] **you referred to earlier this morning** [redacted]
**Q. So you mentioned that** [redacted]
**What are the responsibilities and benefits of that contract with** [redacted]**?**
MR. PETERMAN: Object to form.
THE WITNESS: Yeah, I don't know.
BY MR. RAO:
**Q. What is the purpose of** [redacted]

[redacted]

Page 185

[redacted]
A. I was not a part of the calculation for any of the [redacted]. So this was not in my scope of responsibilities when I was a part of the R&D finance organization.
**Q. Are you aware of whether** [redacted]
A. I am not aware of any.
MR. RAO: Okay. I would like to introduce as Exhibit 31. Oh, right here. Okay.
MR. PETERMAN: We should mark it, or are we doing it electronically?
MR. RAO: Did you email me this document?
MR. PETERMAN: I did.
MR. RAO: Okay. I am going to mark as Exhibit 31 a document produced by counsel this afternoon, referenced by Mr. Paik in his testimony this morning.
(Exhibit 31 was marked for identification.)
BY MR. RAO:
**Q. Mr. Paik, before your preparation for today's deposition, have you ever seen this document?**

Page 186

A. Yes. I have seen this document before.
**Q. In what context did you see this document?**
A. In my conversation with Jill Carey, my contact within the tax department at AbbVie.
**Q. And just to be clear, this is before your preparation for today's deposition?**
A. No. Not before preparation. For -- for the preparation for today.
**Q. Do you know why this document was prepared?**
A. [redacted]
**Q. Do you know whether this is a document that exists in the ordinary course of business?**
A. I do not know beyond the fact that [redacted]
**Q. Okay. So you are unaware of whether or not this document existed prior to your being designated for this deposition?**
A. I am unsure whether this existed or when this was created.
**Q. Was the purpose -- is it your understanding that the purpose of preparing this document was for your preparation for today's deposition?**
A. Correct.

Page 187

**Q. So this particular document refers to both Botox Cosmetic or only Botox -- scratch that.**
**This document refers to both Botox Therapeutic and Cosmetic or just Botox Cosmetic?**
A. That's my -- yes. That is my understanding. It is for Botox, both for Therapeutic and Cosmetic.
**Q. And you will note, at the top of the first page, it says** [redacted] **Does this represent the** [redacted]
A. Correct.
**Q. And then the second page is from** [redacted]
A. Correct.
**Q. What happened on** [redacted]

Page 188

**Q. Okay.**
A. So that's my understanding.
**Q. Okay. I will get back to that.**
**Between -- actually, sorry. When you referred to AbbVie's** [redacted] **what does that mean?**
[redacted]
**Q. Okay. So between the first and second page -- or between the first period and second period, if I can refer to them as such,** [redacted]

Page 189

Q. Just with the -- the only -- the difference being the change in name?
A. [redacted]
Q. I see. [redacted] is that correct?
A. Correct.
Q. And what was -- the reason for that change was the [redacted] that you described?
A. Yes. Correct.
Q. And those are [redacted]; correct?
A. Those are [redacted] yes.
Q. And [redacted]; correct?
A. Yes.
Q. In both time periods?
A. Correct.
Q. And for the earlier time period, it was [redacted]., which we discussed today; correct?
A. Correct.
Q. And as of [redacted] correct?

Page 190

A. Correct.
Q. And so [redacted]?
A. Correct.
Q. [redacted] -- sorry, strike that.
There are dash lines between each of these boxes; correct?
A. Yes.
Q. Does that indicate the [redacted]
A. [redacted]
Q. And what [redacted]
A. This represents the -- [redacted]
Q. Earlier today we looked at a few documents that Allergan had identified: [redacted]

Page 191

[redacted], among others?
A. Yes.
Q. And those documents established [redacted]
A. Correct.
Q. As of those dates; correct?
A. Correct.
Q. Are there -- sorry, scratch that.
Similarly, [redacted] Exhibit 31?
A. Are you referring to the first page of Exhibit 31.
Q. Yes. We will start there?
A. Okay. [redacted]
Q. In the [redacted] correct?
A. Correct.
Q. Over here is [redacted] correct?
A. Correct.
Q. Which is a different entity; correct?
A. [redacted]

Page 192

[redacted]
Q. So -- okay. So to be clear, the [redacted] that are shown on this chart of Exhibit 31, both pages 1 and 2, [redacted]
A. Correct. [redacted]
Q. Right. Apart from the change from the second to the first slide, [redacted]
A. Not that I know of.
Q. And this chart begins [redacted] correct? That's the earliest date on this exhibit?
A. Correct.
Q. What were the [redacted] prior to that date?
A. I do not know.
Q. Did they [redacted]

[redacted]

Page 193

[redacted]
A. I do not know.
**Q. The --** [redacted] **is also the --**
[redacted]
A. Yes, [redacted]
**Q. So are those the only** [redacted] **that** [redacted] **shown in Exhibit 31?**
A. I do not know.
**Q. So there are -- just to be clear, are there any -- sorry, just to be more specific.**
[redacted]

Page 194

**Q. Were you told -- or did you discuss any additional** [redacted]
A. No, I did not.
**Q. Okay. You can put that to the side.**
A. Okay.
MR. RAO: Last night -- well, this morning, we were given a document bearing Bates number ALGN-1845835 by plaintiffs.
Do you have --
Marking as Exhibit 32 a document bearing Bates number ALGN-1845835 that was produced last night before this deposition.
(Exhibit 32 was marked for identification.)
BY MR. RAO:
**Q. What is this document?**
**Sorry, scratch that.**
**Do you recognize this document?**
A. I do recognize this document.
**Q. And what is this document?**
A. [redacted]
And then showing it in [redacted]

Page 195

[redacted]
**Q. And now does this document exist as in the normal course of business, or was this prepared for purposes of this litigation?**
A. This document exists as a part of normal course of business [redacted]
**Q. Okay. Now, we looked at a series of spreadsheets today. Does this typically exist in the form of a spreadsheet or does it come in a different form?**
A. This exists in the form of a spreadsheet that's within our normal [redacted]
**Q. So it is -- it would be in an Excel spreadsheet with multiple worksheets like we had seen today?**
A. Yes.
MR. RAO: Counsel, this was produced to us only as a PDF with a single sheet. We request the full document from which this came.
MR. PETERMAN: I think this is the full document, but I will take it under advisement.

Page 196

BY MR. RAO:
**Q. With respect to the -- in the center of this page, there is a table shaded blue --**
A. Yes.
**Q. -- and it is labeled "**[redacted]**" correct?**
A. Correct.
**Q. Does this apply to both** [redacted]
A. This is [redacted]
**Q. Okay. So for these** [redacted]
**Q. Okay. And how would one** [redacted]
A. [redacted]

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-JLH |

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFFS**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiffs Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc. (collectively, "Plaintiffs" or "Allergan") make the following objections and responses to Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services' Notice of Deposition to Plaintiffs.

**GENERAL OBJECTIONS AND RESPONSES**

Plaintiffs hereby incorporate by reference, as though fully set forth herein, and make part of their response to each Topic, the General Objections set forth in Plaintiffs' October 19, 2022 Objections and Responses to Defendants' First Set of Requests for Production of Documents (Nos. 1-131), Plaintiffs' October 19, 2022 Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-7), Plaintiffs' January 20, 2023 Objections and Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-7), Plaintiffs' April 3, 2023 Objections and Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-7), and Plaintiffs'

April 28, 2023 Objections and Responses to Defendants' Second Set of Requests for Production of Documents (Nos. 132-164).

1. Plaintiffs object to each Topic to the extent it purports to impose obligations not contemplated by Federal Rule of Civil Procedure 30(b)(6) and the Local Rules of the United States District Court for the District of Delaware.

2. Plaintiffs object to each Topic to the extent it is directed to the parties' factual and legal contentions in this case.

3. Plaintiffs object to each Topic as premature to the extent it seeks expert testimony. Plaintiffs reserve their right to offer expert testimony in accordance with the schedule set by the Court.

4. Plaintiffs object to each Topic to the extent it (a) uses terms that are vague, ambiguous, overly broad, and/or unduly burdensome, (b) is not proportional to the needs of the case, and/or (c) seeks information that is irrelevant to any claim or defense in this action.

5. Plaintiffs object to each Topic to the extent the discovery sought is unreasonably duplicative of previous discovery requests.

6. Plaintiffs object to each Topic to the extent it seeks deposition testimony or information concerning "all facts" as vague, ambiguous, overly broad, and unduly burdensome. To the extent Plaintiffs do not otherwise object to a Topic concerning "all facts," Plaintiffs agree to make a reasonable, good-faith effort to answer Defendants' inquiries within reasonable parameters relevant to the claims or defenses and proportional to the needs of this case.

7. Plaintiffs object to each Topic as overly broad and unduly burdensome to the extent it seeks information that is a matter of public record and, therefore, is equally accessible to

Defendants. Plaintiffs further object to each Topic to the extent it seeks information that is not within the possession, custody, or control of Plaintiffs.

8. Plaintiffs object to each Topic to the extent it seeks confidential information of any third party that is in the possession of Plaintiffs pursuant to confidentiality and/or nondisclosure restrictions imposed by contract or applicable law.

9. Plaintiffs object to each Topic as impractical and unreasonable to the extent it seeks a corporate witness to testify regarding the purported collective awareness and knowledge of Plaintiffs.

10. No objection, limitation, or response (or lack thereof) made herein shall be an admission by Plaintiffs as to: (a) the truth of any of the statements made in the Topics; or (b) the existence or nonexistence of information responsive to the Topics.

11. By agreeing to produce a witness as to one or more Topics, or as to any aspect(s) of a Topic, Plaintiffs do not agree that such witness will be able to provide information on any and every question as to such Topic. The witness will instead testify in accordance with the standards set forth in Fed. R. Civ. P. 30(b)(6).

12. These responses, objections, and limitations contained herein are subject to and without waiver of: (a) the right to make additional or supplemental objections, including at the deposition; and (b) the right to revise, amend, or modify these responses.

13. The foregoing General Objections are incorporated by reference into each of the specific objections, as applicable. All Responses made herein are subject to and without waiver of the foregoing General Objections and any other specific objection asserted with respect to a specific request.

within their possession, custody, and control. Plaintiffs further object to this Topic to the extent that it seeks information protected by the attorney-client privilege, attorney-work-product doctrine, or any other applicable privilege or immunity. Plaintiffs further object to this Topic to the extent that it seeks legal conclusions or expert testimony, which is premature and not appropriate subject matter for a Rule 30(b)(6) designee. Plaintiffs also object to this Topic as premature to the extent it seeks information that may be possessed by expert witnesses and/or directed to the parties' factual and legal contentions in this case. Plaintiffs reserve the right to produce expert opinions and testimony providing information beyond that which may be possessed by a fact witness. Plaintiffs further object to this Topic to the extent it is directed to knowledge of specific individuals, including individuals not employed by Plaintiffs, rather than knowledge of the corporate entities. Plaintiffs also object to this Topic as seeking duplicative discovery.

Subject to and without waiver of the foregoing objections and their General Objections, and to the extent Plaintiffs understand this Topic, this Topic is directed to specific actions and thoughts of individuals, including non-parties that occurred many years ago. Subject to and without waiver of the foregoing objections and their General Objections, Plaintiffs respond that they will make a reasonable, good-faith effort to provide one or more witnesses to testify generally regarding a reasonable scope of non-privileged information concerning the research and development of the subject matter of the Asserted Claims, to the extent that any such information exists and is known or reasonably available to Plaintiffs.

**TOPIC NO. 6:**

Facts related to the ownership of, assignment to, license to, or transfer of any right to the Asserted Patents.

**<u>RESPONSE TO TOPIC NO. 6</u>:**

In addition to their General Objections, Plaintiffs object to this Topic as overly broad, unduly burdensome, and calling for information that is neither relevant to any claim or defense in this action nor proportional to the needs of the case. Plaintiffs further object to this Topic to the extent that it seeks information protected by the attorney-client privilege, attorney-work-product doctrine, or any other applicable privilege or immunity. Plaintiffs also object to this Topic as seeking duplicative discovery.

Subject to and without waiver of their objections, Plaintiffs respond that they will make a reasonable, good-faith effort to provide one or more witnesses to testify generally regarding a reasonable scope of non-privileged information concerning the ownership of, assignment to, license to, or transfer of any rights the Asserted Patents, to the extent that any such information exists and is known or reasonably available to Plaintiffs.

**<u>TOPIC NO. 7:</u>**

The factual basis and support for Plaintiffs' responses to any interrogatories served in this Case.

**<u>RESPONSE TO TOPIC NO. 7</u>:**

In addition to their General Objections, Plaintiffs object to this Topic as overly broad, unduly burdensome, and calling for information that is neither relevant to any claim or defense in this action nor proportional to the needs of the case. Plaintiffs further object to this Topic to the extent that it seeks legal conclusions or expert testimony, which is premature and not appropriate subject matter for a Rule 30(b)(6) designee. A fact witness should not be required to formulate a party's contentions in response to deposition questioning. Plaintiffs also object to this Topic as premature to the extent it seeks information that may be possessed by expert witnesses and/or directed to the parties' factual and legal contentions in this case. Plaintiffs reserve the right to

**TOPIC NO. 35:**

Facts relating to the entities that manufacture, distribute, or sell BOTOX® and BOTOX® Cosmetic in the United States, including the manufacturing and distribution capacities for such activities and costs associated with any expansion of manufacturing and distribution capacities.

**RESPONSE TO TOPIC NO. 35:**

In addition to their General Objections, Plaintiffs also object to this Topic as overly broad, unduly burdensome, and calling for information that is neither relevant to any claim or defense in this action nor proportional to the needs of the case. Plaintiffs further object to this Topic to the extent that it seeks information not within their possession, custody, and control, including information related to "entities that manufacture, distribute, or sell." Plaintiffs further object to this Topic as vague and ambiguous, including with respect to the phrase "any expansion of manufacturing and distribution capacities." Plaintiffs further object to this Topic to the extent that it seeks information protected by the attorney-client privilege, attorney-work-product doctrine, or any other applicable privilege or immunity.

Subject to and without waiver of their objections, Plaintiffs respond that they will make a reasonable, good-faith effort to provide one or more witnesses to testify generally regarding a reasonable scope of non-privileged information concerning Plaintiffs' manufacturing capacity for, and distribution of, Botox, to the extent that any such information exists and is known or reasonably available to Plaintiffs.

**TOPIC NO. 36:**

Plaintiffs' past, current, and forecasted revenues, costs (including production costs, costs of goods sold, and marketing and sales costs), gross margin, and profits from the sale of any product or process Plaintiffs believe is impacted by the alleged infringement of the Asserted Patents.

the right to produce expert opinions and testimony providing information beyond that which may be possessed by a fact witness.

Subject to and without waiver of their objections, Plaintiffs respond that they will not provide a witness to testify concerning this Topic as written.

**TOPIC NO. 42:**

Plaintiffs' policies and procedures for licensing intellectual property, including the Asserted Patents and any other patents related to the manufacture, testing, or composition of botulinum toxin products, and Plaintiffs' strategies, policies and procedures that govern licensing discussions with potential in- and out-license partners.

**RESPONSE TO TOPIC NO. 42:**

In addition to their General Objections, Plaintiffs also object to this Topic as overly broad, unduly burdensome, and calling for information that is neither relevant to any claim or defense in this action nor proportional to the needs of the case. Plaintiffs further object to this Topic as vague and ambiguous, including with respect to the phrases "policies and procedures for licensing intellectual property" and "strategies, policies and procedures that govern licensing discussions." Plaintiffs further object to this Topic to the extent that it seeks information protected by the attorney-client privilege, attorney-work-product doctrine, or any other applicable privilege or immunity.

Subject to and without waiver of their objections, Plaintiffs respond that they will not provide a witness to testify concerning this Topic as written.

**TOPIC NO. 43:**

The facts and circumstances relating to any agreement between Plaintiffs and their parent entities, subsidiaries, or affiliates for the distribution of profits from the development, manufacture, sale, marketing, or promotion of BOTOX® and BOTOX® Cosmetic, any commercial embodiment of the Asserted Patents, or any subject matter or technology claimed in the Asserted Patents.

**<u>RESPONSE TO TOPIC NO. 43</u>:**

In addition to their General Objections, Plaintiffs also object to this Topic as overly broad, unduly burdensome, and calling for information that is neither relevant to any claim or defense in this action nor proportional to the needs of the case. Plaintiffs further object to this Topic as vague and ambiguous, including with respect to the phrases "the development, manufacture, sale, marketing, or promotion," "any commercial embodiment," and "any subject matter or technology claimed." Plaintiffs further object to this Topic to the extent that it seeks information protected by the attorney-client privilege, attorney-work-product doctrine, or any other applicable privilege or immunity.

Subject to and without waiver of their objections, Plaintiffs respond that they will make a reasonable, good-faith effort to provide one or more witnesses to testify generally regarding a reasonable scope of non-privileged information concerning the agreements at ALGN-0012619, ALGN-0012623, ALGN-0012639, ALGN-0012645, ALGN-0012656, and ALGN-0012840, to the extent that any such information exists and is known or reasonably available to Plaintiffs.

**<u>TOPIC NO. 44:</u>**

The facts and circumstances relating to any agreement between Plaintiffs and any third party for the distribution of profits from the development, manufacture, sale, marketing, or promotion of BOTOX® and BOTOX® Cosmetic, any commercial embodiment of the Asserted Patents, or any subject matter claimed in the Asserted Patents.

**<u>RESPONSE TO TOPIC NO. 44</u>:**

In addition to their General Objections, Plaintiffs also object to this Topic as overly broad, unduly burdensome, and calling for information that is neither relevant to any claim or defense in this action nor proportional to the needs of the case. Plaintiffs further object to this Topic as vague and ambiguous, including with respect to the phrases "the development, manufacture, sale, marketing, or promotion," "any commercial embodiment," and "any subject matter claimed."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiffs Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company and Allergan USA, Inc.*

OF COUNSEL:

Eric W. Dittmann
Chad J. Peterman
Melanie R. Rupert
Bruce M. Wexler
Ashley N. Mays-Williams, Ph.D.
Krystina L. Ho, Ph.D.
Carl J. Minniti III
Amanda E. Hoffman, Ph.D.
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Felix A. Eyzaguirre
PAUL HASTINGS LLP
600 Travis Street, 58th Floor
Houston, TX 77002
(713) 860-7300

August 25, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2023, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire *VIA ELECTRONIC MAIL*
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

Dennies Varughese, Pharm. D. *VIA ELECTRONIC MAIL*
Eldora L. Ellison, Ph.D.
Adam C. LaRock, Esquire
Olga A. Partington, Ph.D.
Ryan E. Conkin, Esquire
Anna G. Phillips, Esquire
Sasha S. Rao, Esquire
STERNE, KESSLER, GOLDSTEIN
& FOX P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, DC 20005
*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

# EXHIBIT 3

[redacted]


IP Owner
Manufacturer
Importer
Marketer/ Distributor
Market
Finished product
Finished product
Finished product

[redacted]


IP Owner
Manufacturer
Importer
Marketer/
Distributor
Market
[redacted]
Finished product
Finished product
Finished product

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 8, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Candace Polster
PAUL HASTINGS LLP
71 South Wacker Drive
Suite 4500
Chicago, IL 60606
candacepolster@paulhastings.com

*Attorneys for Plaintiffs*

Eric W. Dittmann
Chad J. Peterman
Melanie R. Rupert
Bruce M. Wexler
Ashley N. Mays-Williams, Ph.D.
Krystina L. Ho, Ph.D.
Carl J. Minniti, III
Isaac S. Ashkenazi
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166

Felix A. Eyzaguirre
PAUL HASTINGS LLP
600 Travis Street, 58th Floor
Houston, Texas 77002
felixeyzaguirre@paulhastings.com

Karthik R. Kasaraneni
PAUL HASTINGS LLP
2050 M. Street NW
Washington, DC 20036
karthikkasaraneni@paulhastings.com

Dated: November 8, 2024

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*<u>/s/ Anne Shea Gaza</u>*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*