# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHANBOND, LLC, Plaintiff, v. ATLANTIC BROADBAND GROUP, LLC, Defendant. — C.A. No. 15-842-RGA

CHANBOND, LLC, Plaintiff, v. BRIGHT HOUSE NETWORKS, LLC, Defendant. — C.A. No. 15-843-RGA

CHANBOND, LLC, Plaintiff, v. CABLE ONE, INC., Defendant. — C.A. No. 15-844-RGA

CHANBOND, LLC, Plaintiff, v. CABLEVISION SYSTEMS CORPORATION and CSC HOLDINGS, LLC, Defendants. — C.A. No. 15-845-RGA



CHANBOND, LLC, Plaintiff, v. CEQUEL COMMUNICATIONS, LLC and CEQUEL COMMUNICATIONS HOLDINGS I, LLC d/b/a SUDDENLINK COMMUNICATIONS, Defendant. — C.A. No. 15-846-RGA

CHANBOND, LLC, Plaintiff, v. CHARTER COMMUNICATIONS, INC., Defendant. — C.A. No. 15-847-RGA

CHANBOND, LLC, Plaintiff, v. COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC, Defendants. — C.A. No. 15-848-RGA

CHANBOND, LLC, Plaintiff, v. COX COMMUNICATIONS, INC., Defendant. — C.A. No. 15-849-RGA

Thursday, July 2, 2020
10:02 a.m.
Pretrial Videoconference

BEFORE: THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.



APPEARANCES:

BAYARD, P.A.
BY: STEPHEN B. BRAUERMAN, ESQUIRE

-and-

KING & WOOD MALLESONS LLP
BY: MARK S. RASKIN, ESQUIRE
BY: JOHN PETRSORIC, ESQUIRE
BY: ROBERT WHITMAN, ESQUIRE
BY: ANDREA PACELLI, ESQUIRE
BY: MICHAEL S. DeVINCENZO, ESQUIRE

For the Plaintiff

MORRIS NICHOLS ARSHT & TUNNELL LLP
BY: JENNIFER YING, ESQUIRE

-and-

WINSTON & STRAWN
BY: DAVID ENZMINGER, ESQUIRE
BY: THOMAS M. MELSHEIMER, ESQUIRE
BY: KRISHNAN PADMANABHAN, ESQUIRE

Also Present:

Kelly E. Farnan, Esquire
Miss Cythia Biron

*** PROCEEDINGS ***

THE COURT: Good morning. This is Judge Andrews in ChanBond versus Cox Communications which is Civil Action Number 15-849 and part of the consolidated 15-842 case.
I thought I saw that my court reporter is on the line; is that correct?
THE REPORTER: Yes, Judge.
THE COURT: And I saw that my deputy clerk is on



the line; is that correct?
DEPUTY CLERK: Yes, Judge.
THE COURT: All right. And I think possibly I saw that, though I'm just looking at out-of-town counsel here, Mr. Brauerman, do you represent the plaintiff?
MR. BRAUERMAN: I do, Your Honor, and I am on the line.
THE COURT: Okay. So tell me who's on and who's going to be speaking for your side.
MR. BRAUERMAN: Thank you, Your Honor. I am joined by my co-counsel Mark Raskin, Robert Whitman, Michael DeVincenzo, Andrea Pacelli, and John Petrsoric. We're also joined by Dominick Vitaliano, who is lead counsel's paralegal on behalf of the plaintiff.
And depending on the particular issue, Your Honor, I think various of my co-counsel will be addressing the Court. I expect Mr. Whitman will be taking the lead on most issues, but there are other folks who I expect will speak as well, Your Honor.
THE COURT: All right. Thank you, Mr. Brauerman.
And who represents the defendant here?
MS. YING: Your Honor, this is Jennifer Ying from Morris Nichols. Good morning. And I have with me on the line here co-counsel from Winston & Strawn. I have Tom

Wechselberger said that Cox's expert says the opposite?

MR. PETRSORIC: Well, I think this also ties in with respect to our first motion in limine, Your Honor, that the -- that Dr. Cromarty is opining that a combiner -- in the construction of a combiner requiring a multiplexer would set forth a litany of other requirements. And Mr. Wechselberger's testimony directly contraverts that. Contradicts that.

THE COURT: And does your expert in this case say whatever it is that Dr. Wechselberger, whatever his title is, said in this testimony?

MR. PETRSORIC: Yes, he does, Your Honor.

THE COURT: Okay. So basically you want to use kind of the fact that he's allied with, or was allied, or worked for Cisco to have him say the same thing because it would be more effective than your expert saying that?

MR. PETRSORIC: Or it at least buttresses what our expert says.

THE COURT: Okay. In a claim in the pretrial order, did you all, Mr. Petrsoric, actually submit whatever the actual testimony was that you designated so that I could actually read it if I wanted to?

MR. PETRSORIC: Well, there's a list. There's a list, Your Honor, but of course, that does not allow you to read it. But we would be glad to submit a highlighted



transcript that corresponds to the list we submitted in our Exhibit 5.

THE COURT: So, yeah, if you could file the entire deposition with the highlights of whatever it is that you've designated. And if, in fact, the deposition is 350 pages long, and you've only designated about five or six page, I think there could be a brief cover page telling me which pages the designations are on because leafing through 350 pages to find a yellow highlighting is something I prefer not to do.

Okay. Well, so I'm going to take that under advisement. I have seen that both sides, and in particular, Cox have quoted decisions that I made before for these. They always keep coming up, these issues, in slightly different context. So I would want to actually review what I've done before.

And I know the plaintiffs also submitted some citation, and I think I've actually seen some discussion of this issue by Judge Bryson in some case that I think postdates my cases and possibly whatever it is plaintiff cited.

Okay.

MR. PETRSORIC: Your Honor, may I interject?

THE COURT: Yes.

MR. PETRSORIC: With respect to Judge Bryson's



decision, I understand that Judge Bryson addressed the issues with respect to federal rule of evidence 801. We would be seeking to get Mr. Wechselberger's testimony in under the exception under 804, so it is a different issue. And if the Court would allow us a paragraph or two to flush it out, at least in a perfunctory fashion, that would be much appreciated.

THE COURT: Well, no, I don't -- so I appreciate what you've said, and as I said, you know, I read whatever it was Judge Bryson wrote some time ago for some reason, but I obviously didn't study it other than I know he was kind of addressing an issue that I had addressed before so it kind of stuck in the back of my brain. But I don't, at this point, really want to get any more argument, but that does bring up a slightly different thing, and maybe this will just change what I've said.

So there's also the debate about the plaintiff's use of the motions in limine. And without going through a lot of song and dance, part of the reason why I have occasionally commented in these other cases that plaintiff says, you know, well, that's the custom and practice for people not to follow the rules is because I don't like it when people don't follow the rules. And in those cases, you know, I got this for whatever reason, I don't remember exactly, you know, the weekend before trial, I'm dealing



with these things. And sometimes the weekend before trial, you know, where neither side is objecting, you just go ahead and do it. And that may be the case.

As I said, most of the time I'm doing these pretrials shortly before trial, but I don't feel such an obligation here when we're doing it six weeks before trial. From what I can see, the defendants did what I envisioned the rules actually requiring.

So I'm going to strike all the plaintiff's motions in limine, but I'll let you file three of them. You can, if you want, expand an argument to fill more pages. And so I wouldn't imagine, other than selecting which ones you actually want to do, this would take very long.

I will also let defendants revise their response to whichever argument you go with, and then you can reply. But I would think you could do all of this -- you know, maybe plaintiffs do their three motions by the close of next Wednesday. Plaintiffs -- I'm sorry, plaintiffs do their motions by the close of next Wednesday. Defendants respond by the close of Monday, and the reply can be done by the close of Tuesday. And you can file three separate motions with the little package of briefing, and you don't need to re-file all the appendices and exhibits. You can just cite to them so that I can actually find them pretty easily, and then I will decide three motions by the plaintiffs.

I looked a little bit at the three motions of the defendants. At least two of them I thought require a bit of thought on my part, and basically I will do all of them as I usually do at the same time. So I am not going to be addressing the motions in limine anymore today.

All right. And so if we are on this trial schedule that we are on right now, the parties' alternative order presentation of evidence as stated in paragraph 110 is fine with me. And I appreciate your thinking about that in coming to what seems to be a very sensible approach to that issue. I note the statement in paragraph 111 that you can do the case in 12-and-a-half hours per side for openings and presentation of evidence. As the Delaware counsel know, the amount of time that's allotted to closing argument is something that we usually work on. We come to some agreement in the middle of trial, but typically nobody needs more than an hour per side, but that's extra time.

So the parties spend a lot of time on pages 31 and 32 talking about handling of confidential information at trial. All I would say is that's mostly between the parties as to what you agree as to your people, what they do or they don't do. But the presumption is that the trial is an open trial, and unless you get my express permission, everything should be on public display. If you want to take your people out of the room for things by some agreement between



yourselves, that's fine. But you know, when you mark things confidential, or highly confidential, attorneys' eyes only, that's mostly for discovery purposes, that's not for trial purposes.

So you know, I'm going to say I have adopted the order except to the extent that I've said something different. So here I'm saying something different.

The sequestration of witnesses, which is in paragraph 121, you know, the inventors are not excepted. Each party gets a corporate designee. So you can designate whoever you want, and that person, assuming that we don't otherwise change the rules here, that person can be present for everything. But if there are three inventors and plaintiff's calling two of them, whichever one or both, if they're not the corporate designee, they're sequestered until you call them. Of course, usually if you call them, they're usually at the beginning, so they don't miss a whole lot.

You know, and if Cox has the intention of calling Mr. Snyder as an adverse witness, then he's going to be sequestered. You know, whether they plan to do that or not, that's something that you all can keep discussing amongst yourselves. And you know, often at some point, the defendant decides, well, yeah, we're not going to spend any of our valuable 12-and-a-half hours on cross-examining the



third inventor, but until they decide that, he's going to be excluded.

Hold on a minute. Oh, paragraph 123, you say you're going to play the Federal Judicial Center introduction of the patent system video. The one thing that I ask, and I would think Mr. Brauerman and Ms. Ying probably have this available to them, is that you edit out the part where Judge Fogel says, I'm a United States District Court judge. Judge Robinson had a case where the jury said they were following his instructions, and that seemed like a problem. But if he's just introduced as the administrative officer of the court, that's less likely to happen.

All right. So in terms of the pretrial order, I think that was everything that I noted in the pretrial order that I wanted to discuss with you. You know, in due course, the preliminary jury instructions I will file some set that I will actually give.

I looked at the voir dire for a minute. Again, I will look at that in some more detail and file some voir dire that I would actually give, but I think you've all pretty much got the general gist of how I like to approach these things. So there may be a question or two that I strike or there's some times where you write have you or anyone in your family or any close friend ever "X," and you know, I generally don't care what their close friends do,



and a lot of times I don't really care what their family does. So those will probably be edited down.

The verdict form, you know, it's good for you all to have verdict forms out there, but until we actually get to trial, and you know, see what we're actually going to trial on in 12-and-a-half hours, you know, I doubt that plaintiff's going to go to trial on all the claims they currently have. I doubt that the defendants are going to try to put up all three of the invalidity defenses the way it's kind of outlined in the pretrial order.

So I anticipate that there will be some narrowing and that all that narrowing will have an effect on both the final jury instructions and the verdict form. So until we actually get to trial, I have no objection if you all want to keep talking about it between yourselves, but I suspect push will come to shove once we actually get started.

And I guess one other thing is my current practice is that in the final jury instructions, I don't repeat what I've done in the preliminary jury instructions. I will anticipate that the preliminary jury instructions will be in a form suitable to give to the jury in writing so they'll have that at the end of the case as well as the final instructions that I give at the end of the case.

So I think as far as I can tell, that's all I

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HQ SPECIALTY PHARMA CORP. and WG CRITICAL CARE LLC, Plaintiffs, v. FRESENIUS KABI USA, LLC, Defendant.

VOLUME 1
C.A. No. 21-1714(MN)

Monday, August 26, 2024
9:00 a.m.
Jury Trial

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE MARYELLEN NOREIKA
United States District Court Judge

THE HONORABLE ELEANOR G. TENNYSON
United States District Court Magistrate Judge
(Voir Dire)

APPEARANCES:

MORRIS NICHOLS ARSHT & TUNNELL LLP
BY: JACK B. BLUMENFELD, ESQ.

-and-

ROTHWELL FIGG ERNST & MANBECK, P.C.
BY: STEVEN LIEBERMAN, ESQ.
BY: SHARON L. DAVIS, ESQ.
BY: JENNY L. COLGATE, ESQ.
BY: KRISTEN J. LOGAN, ESQ.
BY: MEGAN ELIZABETH DELLINGER, ESQ.

Counsel for the Plaintiffs



APPEARANCES CONTINUED:

FARNAN LLP
BY: BRIAN FARNAN, ESQ.

-and-

RAKOCZY MOLINO MAZZOCHI SWIK
BY: WILLIAM A. RAKOCZY, ESQ.
BY: HEINZ J. SALMEN, ESQ.
BY: KEVIN P. BURKE, ESQ.
BY: ERIC R. HUNT, ESQ.
BY: TY W. CALLAHAN, ESQ.
BY: MATTHEW V. ANDERSON, ESQ.
BY: ADRIANNE C. ROSE, ESQ.

Counsel for the Defendant

_ _ _ _ _ _ _ _ _ _ _ _ _

THE COURT: All right. Good morning, everyone. Please be seated. Anyway, sorry about the disturbances we got here, but we need to both fix the projector and deal with the objections. So I thought we would come out now. All right. You guys are on the clock. You got a lot of objections, and we're going to go through them one by one. All right. First one, DDX-1.4.

MR. LIEBERMAN: Your Honor, Steve Lieberman. There are four slides.

THE COURT: No, we do one at a time.

MR. LIEBERMAN: Okay.



THE COURT: I don't care if it's the same issue, you want me to look at four slides, I have to do each one at a time.

MR. LIEBERMAN: Yes, Your Honor. On the timeline, every entry --

THE COURT: Which is DDX-1.4?

MR. LIEBERMAN: Yes, every entry says bags with the two exceptions, one the vial entry from 1999, it has a vial which makes it a vial. There is no indication as to whether or not the FDA application, and that's what we're objecting to, is for a vial or a bag. And we're just asking that it say for a vial because otherwise it gives a misleading impression that it's for a bag.

THE COURT: Why are there vials, there are vials and bags for 2011 and 2016?

MR. LIEBERMAN: That's correct, Your Honor.

THE COURT: Okay.

MR. LIEBERMAN: And we just want the word vial added so that it doesn't appear that --

THE COURT: Yeah, I mean otherwise you can just put it up there and tell them they're lying to them. Okay. What's the point. I mean, it is a little misleading.

MR. LIEBERMAN: That's the point.

THE COURT: Yes. I get it. I'm asking Mr. Rakoczy, and you're standing in his way.



MR. RAKOCZY: Bill Rakoczy for Fresenius, Your Honor. Your Honor, if you turn to the next slide, we actually put a picture of the approved vial. The application number is the exact NDA number approved for the vial. I will not attempt to confuse anyone that that application is not for a vial, which is why I put a picture of the vial which says FDA approved. So I don't think it's misleading Your Honor, there is no intent to mislead anyone, so we put a picture of the vial.

THE COURT: You guys don't have to come up to the podium. Mr. Lieberman?

MR. LIEBERMAN: The first slide doesn't have the picture.

THE COURT: Who cares, really, how long is it going to be up on the screen?

MR. RAKOCZY: Not long, Your Honor, until I put the next slide --

THE COURT: 1.4 is overruled. What's your problem with 1.5, there is a picture of a vial.

MR. LIEBERMAN: The issues on 1.5 to 1.9 are all the same, given Your Honor's ruling we withdraw our objection to 1.5, 1.8 and 1.9.

THE COURT: Okay. 1.17. Okay. What's the problem here?

MR. LIEBERMAN: Your Honor, the patent video is

09:03:46 being presented essentially as an instruction to the jury 09:03:49 rather than as a background to the jury. Your Honor gives 09:03:52 the instructions to the jury.

09:03:56 THE COURT: That sounds true.

09:03:58 MR. RAKOCZY: Bill Rakoczy for Fresenius, Your 09:04:00 Honor. The video will be played, Your Honor. We had slides 09:04:05 merely saying what the video says, I'm not paraphrasing, 09:04:08 this has been done in many cases in the district Your Honor, 09:04:12 including Your Honor's ArcherDX case, number 18-1019; 09:04:17 three cases from Judge Williams, Cao Lighting, 20-681; 09:04:22 Natera, 20-125, Persawvere, 21-400, numerous courts in this 09:04:32 district have allowed the use of true and accurate slides 09:04:37 and pieces of the patent video which is all we're doing. 09:04:41 That includes Your Honor's ArcherDX case, 18-1019, 09:04:46 three cases from Judge Williams, Cao Lighting, 20-681; 09:04:51 Natera, 20-125, Persawvere, 21-400; Judge Kennelly by 09:04:58 designation in 10X, 21-653, all the way back to Judge Sleet 09:05:03 in the Bridgestone case, 13-763, the video will be part of 09:05:10 the trial record Your Honor, all these slides are doing is 09:05:12 reminding --

09:05:13 THE COURT: Why is it part -- I mean, it's not 09:05:15 evidence, right, it's just --

09:05:17 MR. RAKOCZY: It's not evidence, Your Honor, it 09:05:19 will just be played to the jury and become part of the trial 09:05:22 transcript. And I thought to be fair, I'm not even trying



09:05:26 to paraphrase these, I'm putting the exact language.

09:05:35 THE COURT: Okay. Do you know of anyone who 09:05:38 has, you listed a bunch of people, how about the more 09:05:47 experienced judges on our court, Judge Stark, Judge Andrews, 09:05:51 do you have anything from them?

09:05:53 MR. RAKOCZY: I don't, Your Honor.

09:05:54 THE COURT: ArcherDX, there was no objection, so 09:05:56 I wouldn't say I left it.

09:05:58 MR. RAKOCZY: I only have yourself, Judge 09:06:00 Williams, Judge Sleet.

09:06:01 THE COURT: I don't count me because I only deal 09:06:04 with objections, if nobody objected, I don't care.

09:06:07 MR. BLUMENFELD: Your Honor, I raised this, and 09:06:08 the cases have gone both ways in terms of judges letting it 09:06:12 in or not. My first memory with Judge Robinson didn't 09:06:16 permit it and her view was I'm the judge, Judge Fogel is not 09:06:21 the judge, the jury ought to hear from me what the law is, 09:06:25 not Judge Fogel.

09:06:28 THE COURT: All right. This is making me 09:06:29 uncomfortable, I do feel like it's sort of instructing the 09:06:33 jury, so I'll sustain the objection to 1.17. And especially 09:06:38 if it was just 1.17, I probably would let it go, but then we 09:06:42 get into 1.18, 1.19, and is there more?

09:06:47 MR. LIEBERMAN: 1.32, Your Honor.

09:06:52 THE COURT: And 1.32, yes, so I'm going to



09:06:55 sustain that objection.

09:06:56 MR. RAKOCZY: Your Honor, may I ask for a quick 09:06:58 point of guidance on that? For example, on slide DDX-1-19, 09:07:06 the point that patents are issued by the Patent Office 09:07:10 because sometimes the patent examiner does not always have 09:07:13 all of the relevant art before her or did not consider all 09:07:16 of the relevant art, and in fact, that's the case here, we 09:07:19 are relying on art that was never before the patent 09:07:23 examiner. Our argument and statements. Am I still 09:07:27 permitted to make that point?

09:07:28 THE COURT: Yes. People make that point all the 09:07:30 time.

09:07:30 MR. RAKOCZY: Thank you, Your Honor.

09:07:32 THE COURT: You don't put it up there with the 09:07:37 imprimatur of Judge Fogel saying it.

09:07:39 MR. RAKOCZY: Thank you, Your Honor.

09:07:40 THE COURT: Okay. 1.21.

09:07:44 MR. LIEBERMAN: This is the third and last 09:07:45 category, Your Honor, this slide we believe relates to 09:07:49 inequitable conduct which Your Honor ruled is going to be 09:07:52 tried to you.

09:07:59 THE COURT: Response?

09:08:00 MR. RAKOCZY: Yes, Your Honor, Bill Rakoczy for 09:08:02 Fresenius. This has nothing to do with inequitable conduct, 09:08:05 I will not use this slide or any other slide in front of the



09:08:08 jury to accuse anyone of inequitable conduct or deceiving 09:08:12 the PTO, this deals with obviousness and invalidity. Number 09:08:16 one for context, statements about the art, characterizations 09:08:21 of the art, comparisons of the product to the vial product 09:08:24 to the FDA are relevant to the state of the art and 09:08:26 obviousness. Number two as I just said, whether something 09:08:29 was before the examiner comes in every obviousness case, if 09:08:33 the shoe were on the other foot, and we were arguing art in 09:08:37 arguments that were before the examiner, they would have it 09:08:40 all over their slides. All I'm doing is pointing out there 09:08:44 was art in arguments they made to the FDA, they didn't tell 09:08:47 it to the Patent Office, that is all I am doing, and as the 09:08:50 patent video will tell them, patents are issued --

09:08:54 THE COURT: You're not saying they didn't tell 09:08:56 the Patent Office, you're saying they told the Patent Office 09:08:58 something that wasn't true that was different from what they 09:09:02 said elsewhere.

09:09:02 MR. RAKOCZY: I'm sorry, Your Honor, I didn't 09:09:04 mean to interrupt.

09:09:05 THE COURT: I was done, thank you.

09:09:06 MR. RAKOCZY: What I will say is before the FDA, 09:09:10 they made comparisons of their patented bag to the prior art 09:09:14 and they said it was the same. To the Patent Office, when 09:09:17 they filed their application, they said it was new and 09:09:21 nonobvious, and as Your Honor just indicated, I will say