**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>*Plaintiff/Counterclaim Defendant*,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>*Defendants/Counterclaim Plaintiffs*. | C.A. No. 21-1411-RGA-LDH<br><br>**REDACTED - PUBLIC VERSION (Filed August 6, 2025)** |

**DEFENDANTS' OPPOSITION TO ALLERGAN'S**
**MOTION FOR RECONSIDERATION OF MOTION TO DISMISS**

Of Counsel:

Dennies Varughese, Pharm. D.
Adam C. LaRock
Byron L. Pickard
Nirav N. Desai
Deirdre M. Wells
Anna G. Phillips
Christopher M. Gallo
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

Peter J. Armenio
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

Dated: June 27, 2025

# TABLE OF CONTENTS

**Page**


I. Introduction ....... 1

II. Procedural Posture ....... 2

III. Legal Standard ....... 2

IV. Argument ....... 3

A. There is no clear error of law or fact in the Court's determination that Allergan failed to show that API has an exclusive ownership interest in the '748 patent. ....... 3

1. Allergan cannot justify its claim that APHI indisputably did not own rights to the '748 patent by 2006. ....... 4

2. Allergan misconstrues the Court's findings. ....... 5

B. Allergan could have raised the same argument in earlier briefing and, therefore, its arguments are untimely and improper. ....... 6

V. CONCLUSION ....... 9

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arachnid, Inc. v. Merit Indus., Inc.*,
939 F.2d 1574 (Fed. Cir. 1991)....................4

*BP Amoco Chem. Co. v. Sun Oil Co.*,
200 F. Supp. 2d 429 (D. Del. 2002)....................2

*Cirba Inc. v. VMware, Inc.*,
C.A. No. 19-742-GBW, 2023 WL 2428716 (D. Del. Mar. 9, 2023)....................2

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
42 F. Supp. 2d 385 (D. Del. 1999)....................2

*Falkenberg Cap. Corp. v. Dakota Cellular, Inc.*,
925 F. Supp. 231 (D. Del. 1996)....................2, 6

*Inline Connection Corp. v. AOL Time Warner Inc.*,
347 F. Supp. 2d 56 (D. Del. 2004)....................2

*Israel Bio-Engineering Project v. Amgen, Inc.*,
475 F.3d 1256 (Fed. Cir. 2007)....................5

*Kiewit E. Co., Inc. v. L & R Const. Co., Inc.*,
44 F.3d 1194 (3rd Cir. 1995)....................2

*Max's Seafood Café ex. rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999)....................2, 8

*Omni MedSci, Inc. v. Apple Inc.*,
7 F.4th 1148 (Fed. Cir. 2021)....................4

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
148 F.3d 396 (4th Cir. 1998)....................2

## Rules

D. Del. LR 7.1.5(a)....................2

## Glossary

| Entities | |
|---|---|
| **Shorthand** | **Name** |
| AGN | Allergan, Inc. (Plaintiff) |
| ABL | Allergan Botox Limited and Allergan Botox Unlimited Co. |
| APHI | Allergan Pharmaceuticals Holdings (Ireland) Limited |
| API | Allergan Pharmaceuticals Ireland |
| Allergan Ireland | Allergan Pharmaceuticals Ireland Unlimited Company (former Plaintiff) |
| Allergan Services or ASBV | Allergan Services BV |
| Allergan USA | Allergan USA, Inc. (former Plaintiff) |
| Allergan | AGN, Allergan Ireland, Allergan USA |
| Revance | Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. (Defendants) |

| Contracts | | |
|---|---|---|
| **Shorthand** | **Contract** | **Exhibit Number** |
| 2001 Cross License | 2001 ABL-ASBV Cross License Agreement | D.I. 533, Ex. 34. |
| 2001 Services Agreement | 2001 Botox Services Agreement (AGN, ABL, API, APHI) | |
| 2006 Purchase Agreement | 2006 Purchase Agreement (APHI and ASBV) | D.I. 533, Ex. 37. |
| 2010 MOU/MOU | 2010 Memorandum of Understanding (APHI, ABL, API, and ASBV) | D.I. 439-09, Ex. 9. |
| 2012 Termination Agreement | 2012 ASBV-ABL Termination Agreement | D.I. 533, Ex. 40. |
| IP APA | 2020 Intellectual Property and Economic Asset Purchase Agreement (ABUC, APHI, API). | D.I. 439-10. |

| Other Definitions | |
|---|---|
| **Shorthand** | **Definition** |
| "Patents-in-suit" or "Asserted Patents" | U.S. Patent Nos. 11,033,625; 11,147,878; 11,285,216; 7,354,740; and 11,203,748 |

## I. Introduction

Allergan seeks partial reconsideration of the Court's order dismissing Allergan Ireland and Allergan USA, contending that the Court "appears to have overlooked" that the priority application to the '748 patent was not applied for until 2009. Allergan argues that this fact means "APHI could not have conveyed rights in the '748 patent to ASBV in the 2006 Purchase Agreement." D.I. 561, ("Mot.") at 1.

It is unlikely the Court "overlooked" the priority date of the '748 patent, at least because Revance had already briefed that issue precisely to show why the 2009 priority date of the '748 patent did not exclude it from the sale of the 2006 Purchase Agreement. *See, e.g.*, D.I. 534 at 10; D.I. 548 at 8. Revance explained that "it is at least plausible that … the '748 patent was also covered" by the 2006 Purchase Agreement, observing that Allergan had submitted no evidence about the timing of the funding for the research and development activities that resulted in the alleged inventions of the '748 patent. *Id.* If that funding occurred before 2006, then APHI's rights in that intellectual property accrued at that time, and ASBV now owns the economic rights in the technology claimed in the '748 patent. *See* 2010 MOU § 1, Economic Ownership. Allergan, in all the briefing submitted on the standing issue until this point, did not provide any facts, evidence or argument to counter Revance's argument on this issue, and argued only that the subsequent termination of the 2006 Purchase Agreement meant that the Agreement did not apply to any Asserted Patents.

Revance's earlier argument is fatal to Allergan's motion for reconsideration for two reasons. First, Revance's earlier argument about the priority date of the '748 patent is fatal to Allergan's motion for reconsideration because Allergan has no good answer to it—dismissing Revance's argument in a footnote without engaging with the substance of it. Mot. at 5 n.4. Second, it shows that Allergan's current argument is improper as untimely raised—Revance

essentially invited Allergan's present argument during the merits briefing, but Allergan ignored it. A motion for reconsideration is not a proper vehicle for raising new arguments, and the Court should deny the motion on that basis alone.

## II. Procedural Posture

This case is set for a jury trial, starting on July 14, 2025. The final pretrial conference is scheduled to occur on July 1, 2025.

## III. Legal Standard

"The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, 2023 WL 2428716, at *1 (D. Del. Mar. 9, 2023) (quoting *Max's Seafood Café ex. rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Motions to reconsider are disfavored and therefore "are granted sparingly and only in limited circumstances." *See* D. Del. LR 7.1.5(a); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999). *BP Amoco Chem. Co. v. Sun Oil Co.*, 200 F. Supp. 2d 429, 432 (D. Del. 2002); *Inline Connection Corp. v. AOL Time Warner Inc.*, 347 F. Supp. 2d 56, 59–60 (D. Del. 2004).

Motions for reconsideration "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment…." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Kiewit E. Co., Inc. v. L & R Const. Co., Inc.*, 44 F.3d 1194, 1204 (3rd Cir. 1995); *Falkenberg Cap. Corp. v. Dakota Cellular, Inc.*, 925 F. Supp. 231, 243 (D. Del. 1996) ("The Third Circuit Court of Appeals has expressly held that Rule 59(e) motions are not designed to provide a mechanism to raise new issues previously available but not raised before.").

## IV. Argument

Allergan's motion for reconsideration should be denied for two independent reasons. *First*, Allergan's argument fails on the merits. Allergan claims that it is not possible for the 2006 Purchase Agreement to sell rights in a patent that would not be applied for until a later date. But Allergan offers no legal support for that claim, overlooking that the law recognizes present transaction of later-arising rights as valid, including as to patent rights. And Allergan points to no facts showing that the 2006 Purchase Agreement does not apply to the '748 patent (other than the bare timeline of events) nor does it dispute the plausibility of Revance's prior showing that the 2006 Purchase Agreement likely did cover the '748 patent. *Second*, Allergan could have raised the same arguments in earlier briefing where the 2006 Purchase Agreement was squarely at issue, especially since Revance argued that the '748 patent was in fact covered by the 2006 Purchase Agreement. It chose not to, forfeiting its present argument and making its motion for reconsideration an improper vehicle for raising it.

### A. There is no clear error of law or fact in the Court's determination that Allergan failed to show that API has an exclusive ownership interest in the '748 patent.

The Court correctly found that Allergan had failed to meet its burden showing that ASBV did not (as of the 2020 IP APA) hold the necessary rights in the Asserted Patents. D.I. 558 ("Op.") at 15. The essence of the Court's decision is that the 2006 Purchase Agreement's "scope . . . is uncertain (and therefore might plausibly include the asserted patents)." Op. at 19. To prevail on the merits of its motion, Allergan must therefore show that is not possible that the 2006 Purchase Agreement covered the '748 patent.[1] In attempting to meet this heavy burden, Allergan posits two critical points. Mot. at 4–5. First, Allergan contends that APHI held no rights

[1] Allergan's brief has taken that very tact: "The 2006 Purchase Agreement thus could not have transferred any rights in the '748 patent." Mot. at 5.

in the ’748 patent at the time of the 2006 purchase agreement, a fact Allergan further contends “cannot be disputed.” *Id*. at 4. And second, Allergan contends the Court issued “findings” that “the 2006 Purchase Agreement did not have an ongoing effect that could have divested APHI of rights in asserted patents acquired after the 2006 Purchase Agreement.” *Id.* at 5. Allergan argues that APHI could not have conveyed rights in the ’748 patent to ASBV in the 2006 Purchase Agreement because no such rights existed in 2006, because the patent itself did not exist. Mot. at 1.

Allergan is wrong about both of its critical points.

**1. Allergan cannot justify its claim that APHI indisputably did not own rights to the ’748 patent by 2006.**

Allergan offers no factual basis (aside from the patent filing dates and contract dates)[2] that APHI held no rights in the ’748 patent as of 2006—and is certainly wrong in claiming there can be no dispute on that issue. And it fails to cite any legal authority for its theory that it is not possible to transfer rights today to an asset that will not exist until a future date. To the contrary, the law recognizes the legal validity of present assignments of future rights, including as to patents. *See, e.g.*, *Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1152 (Fed. Cir. 2021) (citing *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991) (enforcing a contract that prospectively granted patent rights in any future invention)); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991) (differentiating an agreement to assign from a present-tense assignment of future rights).

[2] Throughout the briefing on this, Allergan has simply failed to produce any parol evidence whatsoever about the meaning of the 2006 Purchase Agreement, including what each party to the agreement owned just before and just after it was executed. To be sure, Allergan’s corporate witness, Mr. Mulders, whose job it was to know what assets ASBV had previously owned, could not say what rights ASBV purchased under the 2006 Purchase Agreement. D.I. 548, Ex. 45, Mulders Dep. 67:23-68:2.

In fact, Revance has already shown why APHI, in 2006, likely held a present interest in the future rights that would come to be embodied in the '748 patent. D.I. 534. Revance's showing on this point is as follows. Allergan agrees that APHI funded the R&D that would have led to the priority application to the '748 patent. Op. at n. 11 & 2010 MOU at Recital E. That fact alone would make it at least plausible that APHI owned the rights to the alleged invention because it had funded them. So, too, does the 2010 MOU, which purports to memorialize the parties' "*prior* and current ownership of Botox IP rights," and which provides that APHI owned the rights to all Botox IP that it had funded. 2010 MOU at Recital F (emphasis added). And Allergan has fundamentally failed to offer any evidence as to when APHI's funding first began. It is not sufficient that the priority application to the '748 patent was filed after the 2006 Purchase Agreement, Allergan has offered no evidence to counter Revance's argument that APHI may have funded the research that led to the invention of the patent.

Moreover, the filing and assignment dates for the '748 patent relate to the transfer of legal title. Facts and law related to the transfer of legal title to not-yet-filed patents are not even relevant here. The issue here is about ownership of "beneficial rights" in the Botox IP recited in that patent. *See generally Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256 (Fed. Cir. 2007) (distinguishing beneficial ownership rights from legal title to a patent and interpreting a contract that purported to confer economic rights to any future patents resulting from R&D funded by appellant). Allergan's premise of looking to the filing and assignment dates of the '748 patent is therefore fundamentally flawed.

**2. Allergan misconstrues the Court's findings.**

In discussing the Court's findings, Allergan largely misstates what the Court has held. For example, Allergan argues that it was clear error for the Court to hold the "2006 Purchase Agreement divested APHI of rights in the '748 patent …." Mot. at 3. But the Court did not hold

as such. Elsewhere, Allergan states that the Court reasoned that the 2006 Purchase Agreement was a "one-time, static event." Mot. at 4. But there is no such reasoning in the Court's opinion. Twice, Allergan states that the Court found the 2006 Purchase Agreement "did not have an ongoing effect." Mot. at 5 & fn. 4. But again, that is not what the Court said about the 2006 Purchase Agreement.

The Court instead made a very different finding—that the 2012 Termination Agreement did not reverse or undo the 2006 Purchase Agreement because the 2006 Purchase Agreement could only be modified by a subsequent writing that explicitly referred to the agreement by name—which the 2012 Termination Agreement did not do. Op. at 18. The Court also observed that the 2006 Purchase Agreement "did not establish an ongoing relationship and, by its nature, was concluded as soon as it was executed." *Id.* at 18–19. There is a striking difference between finding a transaction effects a sale of economic rights (which has "ongoing effect") and finding a license creates an ongoing *relationship*. *Compare* Mot. at 5 *with* Op. at 18. While the 2006 Purchase Agreement may not have created an ongoing relationship, it certainly had an ongoing effect. Specifically, it had the ongoing effect of vesting in ASBV whatever IP rights it needed to make, use, and sell Botox in perpetuity. Allergan's attempt to seize upon one sentence of the Court's opinion and twist the Court's words into something they are not should be given no credence and, in any event, does not support its motion.

**B. Allergan could have raised the same argument in earlier briefing and, therefore, its arguments are untimely and improper.**

Allergan's motion for reconsideration hangs on just one argument: the 2006 Purchase Agreement could not have impacted the rights to the '748 patent because that patent was not applied for or assigned until 2009. *See* Mot. at 1. Because Allergan could have raised this issue in earlier briefing, Allergan's argument is both untimely and improper. *See Falkenberg*, 925 F.

Supp. at 243 ("Rule 59(e) motions are not designed to provide a mechanism to raise new issues previously available but not raised before."). Accordingly, denial of Allergan's motion for reconsideration is proper.

The existence of the 2006 Purchase Agreement came to light when Allergan produced it in February 2025, one year and three months after the close of fact discovery, and 3 months after the parties were to go to trial, in a production apparently prompted by the Court's order for the parties to brief the issue of Allergan Services' status as a beneficial owner (as specified by the 2010 MOU). In the relevant briefing, Revance argued that the 2006 Purchase Agreement established Allergan Services' ownership interests in all of the Asserted Patents, which included arguments that the '748 patent was covered by the Agreement.[3] *See* D.I. 534 at 10–11; *see also* D.I. 533 at 3. In its later supplemental brief, Revance again argued that "Allergan Services purchased *all* of APHI's rights in Botox by the 2006 Purchase Agreement" because the Agreement "sold to Allergan Services, among other rights, its share of the 'beneficial rights' to make, use, and sell Botox." D.I. 548 at 8.

Despite this, and despite the fact that it is Allergan's burden to show standing, Allergan never countered the notion that, under Revance's proposed reading of the contracts, the 2006 Purchase Agreement covered all of the patents, including the '748 patent. Rather, Allergan's entire argument around the 2006 Purchase Agreement was that it was later terminated and, therefore, did not apply to *any* of the Asserted Patents. *See* D.I. 550 at 9–10. The Court's memorandum opinion recognized as much "[b]ecause it is possible that the 2006 Purchase Agreement included rights to the asserted patents, and *because Allergan has provided no*

[3] Indeed, Allergan understood and knew of Revance's argument that the 2006 Purchase Agreement applied to the '748 patent. *See, e.g.,* Mot. at 5 n.4. Allergan also recognizes that Revance's previously raised arguments are germane to its current argument.

*rationale from which to conclude otherwise*…" Op. at 19 (emphasis added). In short, because Allergan could have raised its present theory during original merits briefs but chose not to, its motion for reconsideration is not a proper vehicle to raise this new argument.

Allergan essentially ignores the timeliness issue in its motion to reconsider. It generally complains that Revance's arguments "have shifted over time," Mot. at 2, but it does not contend that there was anything surprising, unforeseeable, or even unforeseen in the Court's opinion or that it did not have a fair opportunity to raise its present argument in any of the three merits briefs it submitted in opposing Revance's partial motion to dismiss. The closest Allergan comes to attempting to justify its tardiness in raising its reconsideration argument is a parenthetical discussion of *Max's Seafood* on the final page of its brief. But *Max's Seafood* is no help to Allergan. There, the Third Circuit held the lower court abused its discretion in denying a motion for reconsideration based on an untimely argument. But that holding addressed the district court's finding that a defendant company was liable for violating a consent order regarding advertising for statements that were made before that defendant company was even in existence. *See Max's Seafood*, 176 F.3d at 672–73. The Third Circuit found that the district court's analysis did not "disclos[e] the rationale for this decision" and that there was "nothing on the record . . . to support the imposition of liability on [defendant company] Jack-Mack." *Id.* at 672, 677. In other words, the *Max's Seafood* plaintiffs who the district court had sided with clearly failed to meet their burden of proof. But here, it is Allergan who has the burden to prove standing. And, as the Court aptly found, "Allergan has offered no explanation for what the 2006 Purchase Agreement *is* meant to cover" and cannot meet its burden. Op. at 17. Nothing in *Max's*

*Seafood* allows Allergan to use a motion for reconsideration to obtain a second bite at the apple when it failed to raise arguments to satisfy its burden the first time.

For this independent reason, the Court should deny Allergan's motion for reconsideration.

## V. CONCLUSION

The Court should deny Allergan's motion for reconsideration.

Dated: June 27, 2025

Of Counsel:

Dennies Varughese, Pharm. D.
Adam C. LaRock
Byron L. Pickard
Nirav N. Desai
Deirdre M. Wells
Anna G. Phillips
Christopher M. Gallo
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

Peter J. Armenio
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 27, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Candace Polster
Robert Unikel
PAUL HASTINGS LLP
71 South Wacker Drive
Suite 4500
Chicago, IL 60606
candacepolster@paulhastings.com
robertunikel@paulhastings.com

*Attorneys for Plaintiff*

Eric W. Dittmann
Chad J. Peterman
Melanie R. Rupert
Bruce M. Wexler
Ashley N. Mays-Williams, Ph.D.
Krystina L. Ho, Ph.D.
Carl J. Minniti, III
Isaac S. Ashkenazi
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166

Felix A. Eyzaguirre
PAUL HASTINGS LLP
600 Travis Street, 58th Floor
Houston, Texas 77002
felixeyzaguirre@paulhastings.com

Karthik R. Kasaraneni
David M. Valente
Amanda K. Taylor
PAUL HASTINGS LLP
2050 M. Street NW
Washington, DC 20036
karthikkasaraneni@paulhastings.com
davidvalente@paulhastings.com
amandataylor@paulhastings.com

Dated: June 27, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*