**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and PCI San Diego, Inc.,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**REDACTED - PUBLIC VERSION (Filed August 6, 2025)** |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS
FROM SAMANTHA G. WILSON REGARDING MOTION TO STRIKE CERTAIN OF DR. SCHÖNEICH'S TESTIMONY, FOR JUDGMENT AS A MATTER OF LAW ON UNEXPECTED RESULTS, AND FOR A CURATIVE INSTRUCTION**

Of Counsel:

Dennies Varughese, Pharm. D.
Adam C. LaRock
Byron L. Pickard
Nirav N. Desai
Deirdre M. Wells
Anna G. Phillips
Christopher M. Gallo
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

Peter J. Armenio
Andrew Solomon
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance Therapeutics, Inc. and PCI San Diego, Inc.*

Dated: July 16, 2025

Dear Judge Andrews:

Pursuant to the Court's direction during Tuesday's trial proceedings, *see* July 15, 2025 Rough Trial Tr. at 545:14-547:10, Revance hereby moves to strike certain testimony from Dr. Schöneich from the record and for a judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(a) finding that Plaintiff Allergan, Inc. ("Allergan") has not shown unexpected results. Should the Court grant either or both requests, Revance also requests a curative instruction that the jury should not consider such testimony related to the issue of invalidity, whether in connection with final jury instructions or earlier.

JMOL under Fed. R. Civ. P 50 is appropriate where "there is insufficient evidence from which a jury reasonably could find liability," *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002), and the verdict is "not supported by substantial evidence," *Pannu v. Iolab Corp*., 155 F.3d 1344, 1348 (Fed. Cir. 1998). Courts "must scrutinize the evidence carefully to ensure that th[is] 'substantial evidence' standard is satisfied." *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1336 (Fed. Cir. 2009).

"In considering unexpected results, courts ask whether the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected" compared to the prior art as of the priority date. *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 937 (Fed. Cir. 2019). The starting reference point for evaluating unexpectedness is the closest prior art. *See Bristol-Myer Squibb Co. v. Teva Pharms. USA, Inc.,* 752 F.3d 967, 977 (Fed. Cir. 2014); *Kao Corp. v. Unilever U.S., Inc*., 441 F.3d 963, 970 (Fed. Cir. 2006); *see also In re De Blauwe,* 736 F.2d 699, 705 (Fed. Cir. 1984).

Dr. Schöneich's testimony regarding unexpected results is based primarily on testing performed by Allergan comparing a single formulation embodying claim 6 of the '878 patent to a formulation similar to Botox. July 15, 2025 Rough Trial Tr. at 456:18-457:23. Based in part on that testing, Dr. Schöneich concludes that the claimed formulation provides "the unexpected property of longer duration of action." *Id.* at 445:9-15; 469:2-5. However, Dr. Schöneich does not compare the allegedly "unexpected property" of the claimed formulation to the closest prior art. The claimed formulation requires a disaccharide, specifically trehalose, and a surfactant. *See* JTX-001 at claim 6. However, Dr. Schöneich admitted that he did not compare the claimed formulation to any prior art (*id.* at 470:15-19), let alone the closest prior art which would require an animal protein free formulation containing a surfactant. *See* Ex. A (Suryanarayanan Reply Report) at ¶ 161. Moreover, while Botox cannot be considered the closest prior art, at least because it contains animal proteins and does not contain a surfactant (*id.* at ¶ 162), Dr. Schöneich admitted he did not even compare the claimed formulation to Botox. *See* July 15, 2025 Rough Trial Tr. at 470:23-25.

Moreover, Dr. Schöneich's alleged unexpected results are not commensurate with the scope of the claims. The '878 patent claims, as non-limiting example, over twenty surfactants as possible embodiments. JTX-001 at 19: 25–44. Yet, as Dr. Schöneich admits, Allergan's testing examines a "singular surfactant, Polysorbate 20," to inform his opinion that '878 confers an unexpected extended duration feature for botulinum toxin products. *See* Rough Trial Tr. at 471:24-472:2; 472: 15-11. Similarly, the '878 patent claims botulinum toxin combined with at least two excipients, trehalose and a surfactant, in any combination of amounts. *See* JTX-001 at

claim 6. Yet, Allergan's testing only looks at a single formulation, meaning only one combination of amounts, which does not even correspond to the correct formulation for DAXXIFY. *See id.* at 466:4-5.

Because the '878 patent claims a range of embodiments, Allergan must provide evidence "that other embodiments falling within the claim will behave in the same manner." *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011). An "experiment[] … limited to [a single embodiment is] not commensurate in scope, and are, therefore, insufficient to rebut the prima facie case" of obviousness. *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983); *see also In re Harris*, 409 F.3d 1339 (Fed. Cir. 2005) (A "showing of unexpected results is not commensurate in scope with the degree of protection sought" if they do "not show that the improved performance would result if the [examples] were varied within the claimed ranges").

Allergan's testing cannot support Dr. Schöneich's unexpected results opinion for the reasons stated above. Without that single experiment, Dr. Schöneich's only support for his opinion is two out of context quotes that Revance provided to the FDA about the role of its peptide. *See* July 15, 2025 Rough Trial Tr. at 448:16-453:22. Those documents on their own do not support any claim of unexpected results. Dr. Schöneich testified that, through these documents, Revance "represented to the FDA that its peptide does not drive the duration of action." *Id.* at 452:8-13 (discussing PTX-091 and DTX-136). Through these documents, Dr. Schöneich can, at best, support an opinion that Revance's peptide does not contribute to DAXXIFY's extended duration. He cannot, however, support an opinion that the formulation described in claim 6 of the '878 patent is responsible for "the unexpected property of longer duration of action." *Id.* at 459:17-23; *see also id.* at 445:9-15; 469:2-5.

Because Dr. Schöneich's unexpected results opinion fails as a matter of law, his testimony should be stricken from the record and the Court should grant JMOL on unexpected results for the reasons set forth above. Moreover, a curative instruction regarding use of this testimony when determining invalidity should be read to the jury, whether in connection with final jury instructions or earlier.

Respectfully,

*/s/ Samantha G. Wilson*

Samantha G. Wilson (No. 5816)

Enclosure (Exhibit A)
cc: All Counsel of Record (Via E-mail)

# EXHIBIT A

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER SUBJECT TO EAR RESTRICTIONS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc.,<br><br>*Plaintiffs*,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/b Ajinomoto Bio-Pharma Services,<br><br>*Defendants*. | C.A. No. 21-1411-RGA<br><br>**HIGHLY CONFIDENTIAL—**<br>**SUBJECT TO PROTECTIVE ORDER**<br>**SUBJECT TO EAR RESTRICTIONS** |

**REPLY EXPERT REPORT OF**
**RAJ SURYANARAYANAN, PH.D. ON THE INVALIDITY OF**
**U.S. PATENT NOS. 11,033,625, 11,147,878, AND 11,285,216**

#### 2. Dependent claims of each of the ’625, ’878, and ’216 Patents

155. Dr. Schöneich does not make any additional opinions regarding the dependent claims of each of the ’625, ’878, and ’216 Patents. It, therefore, is still my opinion that the dependent claims of each of the ’625, ’878, and ’216 Patents would have been obvious in view of Hunt 598 and Johnson 468 for the reasons discussed above in ¶¶134−154, for the reasons discussed in my Opening Report, and after considering any objective indicia of nonobviousness (which are addressed below in Section VII.E.).

### E. Dr. Schöneich Has Not Established the Existence of Any Objective Indicia of Nonobviousness That Weigh in Favor of the Nonobviousness of the Asserted Composition Claims.

156. Dr. Schöneich opines that “numerous objective indicia further support the nonobviousness of the Asserted Formulation Claims, including (1) unexpected results, (2) long felt need, (3) industry praise, and (4) skepticism of others.” Schöneich Report, ¶468. I disagree that Dr. Schöneich has established evidence of any of the foregoing objective indicia.

#### 1. No unexpected results

157. Dr. Schöneich opines that the alleged inventions of the Asserted Composition Claims achieve the unexpected and surprising result of a longer duration of action profile “when compared to the duration profiles of other BoNT injectable products that available by January 2005.” *See* Schöneich Report, ¶482.

158. To that end, Dr. Schöneich states that “it is [his] opinion that, to the extent Revance’s Daxxify product yields a longer duration of action profile as compared to other injectable toxin products on the market, this characteristic is attributable to, and thus has a nexus to, to [sic] the subject matter covered by the Asserted Formulation Claims.” *Id.* at ¶470. Dr. Schöneich also states that he has “been asked by Allergan’s counsel to provide an analysis of

the unexpected results of the Asserted Formulation Claims, and whether, to the extent Revance's Daxxify product may yield a longer duration of action profile as compared to other injectable toxin products on the market, this characteristic is attributable to subject matter covered by the Asserted Formulation Claims." *Id.* at 471.

159. In coming to his opinions, Dr. Schöneich reviewed "certain sections of BLA No. 761127, public statements about Daxxify and RTP004 made by Revance, and a study conducted by Allergan analyzing a formulation designed to mimic Revance's Daxxify product." *Id.* at ¶472. From that review, Dr. Schöneich concludes that (1) "any 'duration of action' effects that Daxxify exhibits are due to the combination of excipients recited in the Asserted Formulation Claims, rather than Revance's RTP004 peptide excipient." *Id.* at ¶481.

160. I disagree that Dr. Schöneich has established evidence of unexpected results having a nexus to the Asserted Composition Claims.

161. First, I understand that unexpected results must be compared to the closest prior art which is the reference having the most in common with the claimed invention. In comparing the duration profile of DAXXIFY® to other injectable toxin products on the market, Dr. Schöneich fails to make a comparison to the closest prior art. Here, the closest prior art references are the Webb and Pickett references discussed above, each of which disclose AFP botulinum toxin compositions comprising a surfactant, sucrose, a buffer, and having a pH of 5 to 7.3. The Frevert and Hunt 598 references are also closer prior art than any of the marketed botulinum toxin compositions in January 2005, as the Frevert and Hunt 598 compositions are APF and also contain a surfactant.

162. The only "other injectable toxin products on the market" in January 2005 that Dr. Schöneich refers to as a comparator for unexpected results appear to be BOTOX and

MYOBLOC, which are not the closest prior art to the Asserted Composition Claims because BOTOX and MYOBLOC both contain the animal-protein stabilizer HSA, do not contain a surfactant, and do not contain a disaccharide. *See* BOTOX 2003 Label, 7; MYOBLOC 2001 Label, 15. Yet, Dr. Schöneich opines that the alleged unexpected and surprising longer duration of action profile of DAXXIFY® is tied to the presence of polysorbate 20 (a surfactant) in DAXXIFY®. Schöneich Report, ¶¶474−481. Dr. Schöneich, therefore, should have compared DAXXIFY®'s duration of action to the duration of action of the compositions that contain a surfactant, such as the compositions in Webb, Pickett, Frevert, and Hunt 598. To the extent Dr. Schöneich does not agree that Webb, Pickett, and Frevert are prior art to the Asserted Composition Claims, Dr. Schöneich still should have made a comparison to Hunt 598. Dr. Schöneich has thus failed to do a proper analysis to demonstrate unexpected results tied to the Asserted Composition Claims, for at least this reason.

163. Second, Dr. Schöneich has failed to demonstrate that DAXXIFY®'s longer duration of action profile has a nexus to the Asserted Composition Claims.

164. As stated above, I understand that objective evidence of non-obviousness, such as unexpected results, will have no weight if the evidence is related to an unclaimed feature or a feature found in the prior art that materially impacts a product's functionality.

165. As an initial matter, none of the Asserted Composition Claims recite any limitations directed to a longer clinical duration of action. The Asserted Composition claims, therefore, do not require that the botulinum toxin composition exhibit any particular duration of action profile. In other words, Dr. Schöneich's pointing to "a longer duration of action profile as compared to other injectable toxin products on the market" is not a required feature of the compositions encompassed by the Asserted Composition Claims. Schöneich Report, ¶¶470−471.