# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Exhibit 1 to Pretrial Order**

**Joint Statement of Uncontested Facts**

## I. The Parties

1. Plaintiff Allergan, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1 North Waukegan Road, North Chicago, Illinois 60064.

2. Defendant Revance Therapeutics, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1222 Demonbreun Street, Suite 2000, Nashville, Tennessee 37203.

3. Defendant Ajinomoto Althea, Inc. is a corporation organized and existing under the laws of the State of California, with a principal place of business at 11040 Roselle Street, San Diego, California 92121.

4. Ajinomoto Althea, Inc. is also doing business as "PC San Diego, Inc..

5. Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. are collectively referred to herein as "Revance."

## II. The Asserted Patents

### A. U.S. Patent No. 11,033,625 (the "'625 patent")

6. The '625 patent, titled "Method for Stabilizing a Toxin," was issued by the U.S. Patent and Trademark Office on June 15, 2021.

7. The individual identified on the face of the '625 patent as the "inventor" is Terrence J. Hunt.

8. On its face, the '625 patent claims the benefit of the filing of U.S. Provisional Application No. 60/725,126, which was filed on October 6, 2005.

### B. U.S. Patent No. 11,147,878 (the "'878 patent")

9. The '878 patent, titled "Animal Protein-Free Pharmaceutical Compositions," was issued by the U.S. Patent and Trademark Office on October 19, 2021.

10. The individual identified on the face of the '878 patent as the "inventor" is Terrence J. Hunt.

11. On its face, the '878 patent claims the benefit of the filing of U.S. Provisional Application No. 60/725,126, which was filed on October 6, 2005.

### C. U.S. Patent No. 11,285,216 (the "'216 patent")

12. The '216 patent, titled "Animal Protein-Free Pharmaceutical Compositions," was issued by the U.S. Patent and Trademark Office on March 29, 2022.

13. The individual identified on the face of the '216 patent as the "inventor" is Terrence J. Hunt.

14. On its face, the '216 patent claims the benefit of the filing of U.S. Provisional Application No. 60/725,126, which was filed on October 6, 2005.

**D. U.S. Patent No. 7,354,740 (the "'740 patent")**

15. The '740 patent, titled "Animal Product Free System and Process for Purifying a Botulinum Toxin," was issued by the U.S. Patent and Trademark Office on April 8, 2008.

16. The individuals identified on the face of the '740 patent as the "inventors" are Hui Xiang, Mingjiang Luo, Ping Wang, and Stephen Donovan.

17. On its face, the '740 patent claims the benefit of the filing of U.S. Patent Application No. 10/672,876, which was filed on September 25, 2003.

**E. U.S. Patent No. 11,203,748 (the "'748 patent")**

18. The '748 patent, titled "Process and System for Obtaining Botulinum Neurotoxin," was issued by the U.S. Patent and Trademark Office on December 21, 2021.

19. The individuals identified on the face of the '748 patent as the "inventors" are Jennifer L. Ton, Hemant A. Patel, Ronald C. Bates, and Wajdie M. Ahmad.

20. On its face, the '748 patent claims the benefit of the filing of U.S. Patent Application No. 12/502,181, which was filed on July 13, 2009.

## III. Revance

21. Revance filed Biologics License Application ("BLA") No. 761127 for approval of its daxibotulinumtoxinA drug product, which is sold under the trade name Daxxify®, in November 2019.

22. On September 8, 2022, Revance received approval from the FDA to market Daxxify® in accordance with the aesthetic indication set forth in its FDA-approved label, namely for the "temporary improvement in the appearance of moderate to severe glabellar lines associated with corrugator and/or procerus muscle activity in adult patients." 2023 Daxxify® Label.

23. Revance's Daxxify® product competes in the aesthetic market in the United States with Galderma's Dysport®, Merz's Xeomin®, and Evolus's Jeuveau®.

* * *

# EXHIBIT 2-A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Exhibit 2-A to Pretrial Order**

**Plaintiff Allergan's Statement of Issues of**
**Facts That Remain to be Litigated (*See* D. Del. LR 16.3(c)(4))**

1. By making these disclosures, Plaintiff Allergan, Inc. ("Allergan") does not agree to take on the burden of proof for any issue on which Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services (collectively, "Revance") bear the burden of proof.

2. This Statement of Issues of Facts that Remain to Be Litigated ("Statement") is based on the current status of the case and the Court's rulings to date.[1]

3. The following list of issues of facts that remain to be litigated is not exhaustive, and Allergan reserves the right to prove, in accordance with the applicable burdens, any matters

[1] This Statement was made after Allergan Pharmaceuticals Ireland Unlimited Company ("Allergan Ireland" was dismissed. Because of that dismissal, Allergan is not currently seeking lost profits damages. Allergan reserves the right to revise Exhibit 2-A if the Court grants Allergan's currently pending motion for reconsideration of Order dismissing Allergan Ireland (D.I. 561), including to add statements related to Allergan Ireland and lost profits damages.

identified in its pleadings, contentions, interrogatory responses, expert reports, and/or dispositive motions.

4. This Statement is based on Allergan's current understanding of the arguments and theories that Revance is likely to proffer in attempting to prove invalidity of the asserted patent claims based on alleged obviousness, and in response to Allergan's request for monetary damages due to Revance's patent infringement. To the extent Revance intends or attempts to introduce different or additional legal arguments, Allergan reserves the right to supplement this Statement and contest and otherwise respond to those legal arguments, and to present any and all rebuttal evidence in response to those arguments.

5. Allergan reserves the right to contest and otherwise respond to legal issues raised by Revance even if not specifically set forth below.

6. By providing this Statement, Allergan does not concede that all of the recited issues are appropriate for trial. In particular, Allergan does not waive any of its motions *in limine*, *Daubert* motions, or motions for summary judgment, which would render some or all of these issues moot if granted.

7. Should the Court determine that any issue identified below is more appropriately considered an issue of law, Allergan incorporates such issues by reference in its Statement of Issues of Law that Remain to Be Litigated (Exhibit 3-A).

8. To the extent that Allergan's Statement of Issues of Law that Remain to be Litigated contains issues that the Court deems to be issues of fact, those issues are incorporated herein by reference.

9. Allergan reserves the right to revise or supplement this trial witness list consistent with the Pretrial Order, the applicable rules, or as otherwise permitted by the Court, including

based on any parties' pretrial exchanges, any pretrial rulings by the Court, or as otherwise necessary.

## I. <u>The Parties</u>

10. Plaintiff Allergan, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1 North Waukegan Road, North Chicago, Illinois 60064. Allergan, Inc. is a wholly owned, indirect subsidiary of AbbVie Inc.

11.

12. Defendant Revance Therapeutics, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1222 Demonbreun Street, Suite 2000, Nashville, Tennessee 37203.

13. Defendant Ajinomoto Althea, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 11040 Roselle Street, San Diego, California 92121.

14. Ajinomoto Althea, Inc. is also doing business as "Ajinomoto Bio-Pharma Services." (*See, e.g.*, Ex. 1, Revance Therapeutics, Inc., Form 10-Q at 16-17 (Aug. 5, 2021).)

## II. <u>The Asserted Patents</u>

### A. <u>U.S. Patent No. 11,147,878 ("the '878 patent")</u>

15. The '878 patent, titled "Animal Protein-Free Pharmaceutical Compositions," was duly and legally issued by the U.S. Patent and Trademark Office on October 19, 2021.

16. The named inventor listed on the '878 patent is Terrence J. Hunt.

17. Allergan, Inc. is the assignee of the '878 patent.

18. Allergan Pharmaceuticals Ireland Unlimited Company holds an exclusive license with respect to the '878 patent.

19. Allergan USA, Inc. holds an exclusive sublicense with respect to the '878 patent.

**B. U.S. Patent No. 11,285,216 ("the '216 patent")**

20. The '216 patent, titled "Animal Protein-Free Pharmaceutical Compositions," was duly and legally issued by the U.S. Patent and Trademark Office on March 29, 2022.

21. The named inventor listed on the '216 patent is Terrence J. Hunt.

22. Allergan, Inc. is the assignee of the '216 patent.

23. Allergan Pharmaceuticals Ireland Unlimited Company holds an exclusive license with respect to the '216 patent.

24. Allergan USA, Inc. holds an exclusive sublicense with respect to the '216 patent.

**C. U.S. Patent No. 7,354,740 ("the '740 patent")**

25. The '740 patent, titled "Animal Product Free System and Process for Purifying a Botulinum Toxin," was duly and legally issued by the U.S. Patent and Trademark Office on April 8, 2008.

26. The named inventors listed on the '740 patent are Hui Xiang, Mingjiang Luo, Ping Wang, and Stephen Donovan.

27. Allergan, Inc. is the assignee of the '740 patent.

28. Allergan Pharmaceuticals Ireland Unlimited Company holds an exclusive license with respect to the '740 patent.

29. Allergan USA, Inc. holds an exclusive sublicense with respect to the '740 patent.

**D. U.S. Patent No. 11,203,748 ("the '748 patent")**

30. The '748 patent, titled "Process and System for Obtaining Botulinum Neurotoxin," was duly and legally issued by the U.S. Patent and Trademark Office on December 21, 2021.

31. The named inventors listed on the '748 patent are Jennifer L. Ton, Hemant A. Patel, Ronald C. Bates, and Wajdie M. Ahmad.

32. Allergan, Inc. is the assignee of the ’748 patent.

33. Allergan Pharmaceuticals Ireland Unlimited Company holds an exclusive license with respect to the ’748 patent.

34. Allergan USA, Inc. holds an exclusive sublicense with respect to the ’748 patent.

## III. <u>Botulinum Toxins</u>

35. The bacterium *Clostridium botulinum* produces extremely poisonous toxins, including botulinum neurotoxin type A (“BoNT/A”). BoNT/A is considered among the most lethal natural biological agents.

36. Human exposure to BoNT/A can lead to the development of botulism, which in turn can lead to death. When ingested by a human, BoNT/A binds *in vivo* to certain nerve receptors that release acetylcholine, a neurotransmitter that regulates important nerve impulses throughout the central and peripheral nervous systems. After binding to these nerve receptors, BoNT/A enters the nerves themselves and inhibits acetylcholine release, which stops nerve signaling entirely. BoNT/A achieves this inhibition by, for example, cleaving SNAP-25, a protein that is necessary for the release of acetylcholine. As a result, the nerves can no longer signal the muscles to expand and contract, which can have fatal consequences (*e.g.*, preventing expansion of the diaphragm, thus impairing breathing).

## IV. <u>Allergan</u>

37. Allergan markets the Botox® and Botox® Cosmetic brands in the United States.

38. In 1989, Botox® (which was called “Oculinum” at that time) was first approved by the U.S. Food and Drug Administration (“FDA”) for therapeutic uses. Botox® is currently approved for multiple therapeutic indications as set forth in its FDA-approved label, including for the “treatment of cervical dystonia in adult patients, to reduce the severity of abnormal head position and neck pain.”

39. Botox® Cosmetic was first approved by the FDA for aesthetic uses in 2002. Botox® Cosmetic is currently approved for multiple aesthetic indications as set forth in its FDA-approved label, including for "moderate to severe glabellar lines associated with corrugator and/or procerus muscle activity."

40. In addition to its Botox® and Botox Cosmetic® product lines, Allergan has pursued the development of additional BoNT/A products, including animal-protein free BoNT/A drug products and BoNT/A drug products that incorporate drug substance that is manufactured using animal-protein free chromatography methods.

41. Allergan's research and development into animal-protein free BoNT/A drug product formulations started as early as 2003 at the direction of Terrence Hunt.

42. Allergan Laboratory Notebook [redacted] shows that, on October 10, 2003, Allergan prepared [redacted] as part of "Experiment 5." These formulations included:

- [redacted];
- [redacted];
- [redacted];
- [redacted]
- [redacted].

43. On October 22, 2003, [redacted] were obtained for certain BoNT formulations manufactured for Experiment 5 that had been [redacted] Allergan documents show that the [redacted] of the formulation of [redacted] following [redacted]. Allergan documents

also show that the [redacted]

44. Allergan Laboratory Notebook [redacted] shows that, on April 28, 2004, Allergan prepared [redacted] as part of "Experiment 9." These formulations included:

- [redacted]; and
- [redacted].

45. On May 19, 2004, [redacted] were obtained for certain BoNT formulations manufactured for Experiment 9 that had been [redacted] Allergan documents show that the [redacted] of the [redacted] following [redacted], as determined by [redacted] Allergan documents also show that the [redacted] test formulation following [redacted], as determined by [redacted]

46. Allergan Laboratory Notebook [redacted] shows that, on July 23 2004, Allergan prepared [redacted] as part of "Experiment 14." These formulations included:

- [redacted]; and
- [redacted]

47. On August 26, 2004 and September 9, 2004, [redacted] were obtained for certain BoNT formulations manufactured for Experiment 14 that had been [redacted]. These results included [redacted] and

[redacted], which were both tested [redacted]. Allergan documents show that the [redacted] of the formulation [redacted] following [redacted], as determined [redacted], was [redacted]. Allergan documents also show that the [redacted] of the formulation of [redacted] following [redacted], as determined [redacted], was [redacted].

48. Allergan Laboratory Notebook [redacted] shows that, on September 28, 2004, Allergan prepared [redacted] as part of "Experiment 17." These formulations included:

- [redacted];
- [redacted]; and
- [redacted]

49. On October 7, 2004, [redacted] were obtained for certain BoNT formulations manufactured for Experiment 17 that had been [redacted] Allergan documents show the [redacted] for test formulations [redacted] and [redacted], which were tested following [redacted]. Allergan documents also show [redacted] of the [redacted], as determined by [redacted], was [redacted] Allergan documents also show that the [redacted] of the formulation [redacted], following [redacted], as determined by [redacted]

50. On October 14, 2004, additional [redacted] were also obtained for certain BoNT formulations manufactured for Experiment 17 that had been [redacted] These results

included [redacted] for test formulation [redacted], which was tested following [redacted] Allergan documents show that the [redacted] of the formulation [redacted] following [redacted], as determined by [redacted], was [redacted].

51. On January 13, 2005, [redacted] was conducted following [redacted] Allergan documents show that the [redacted], as determined by [redacted]

52. On February 3, 2005, [redacted] was conducted following [redacted] Allergan documents show that the [redacted], as determined by [redacted]

53. On March 31, 2005, [redacted] was conducted following [redacted] Allergan documents show that the [redacted], as determined by [redacted]

54. Allergan Laboratory Notebook [redacted] shows that, during the January to February 2005 timeframe, Allergan prepared BoNT/A formulations [redacted] "Experiment 19," which was [redacted]

55. Allergan Laboratory Notebook [redacted] shows that, on March 1, 2005, Allergan prepared [redacted] as part of "Experiment 21." These formulations included:

- [redacted]

56. On March 16, 2005, [redacted] as part of Experiment 21 that had been [redacted]. These results included the [redacted] of the formulation [redacted], which was tested following [redacted] Allergan documents show that the [redacted] of the formulation of [redacted] following [redacted], as determined by [redacted] was [redacted]

57. On June 1, 2005, [redacted] was conducted following [redacted] Allergan documents show that the [redacted] of the formulation of [redacted], as determined by [redacted]

58. On June 2, 2005, [redacted] was conducted following [redacted] The [redacted] of the formulation of [redacted] following [redacted], as determined by [redacted]

## V. **Revance**

59. Revance filed Biologics License Application ("BLA") No. 761127 for approval of its daxibotulinumtoxinA drug product, which is sold under the trade name Daxxify, in November 2019.

60. On September 8, 2022, Revance received approval from the FDA to market Daxxify in accordance with the aesthetic indication set forth in its FDA-approved label, namely for the "temporary improvement in the appearance of moderate to severe glabellar lines associated with corrugator and/or procerus muscle activity in adult patients."

61. On August 14, 2023, Revance received approval from the FDA to market Daxxify in accordance with the therapeutic indication set forth in its FDA-approved label, namely for the "treatment of cervical dystonia in adult patients."

62. Revance's Daxxify product competes with Allergan's Botox franchise in the United States.

63. Revance Therapeutics, Inc. directs and controls the Daxxify drug product manufacturing efforts of Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services.

64. BLA No. 761127 describes Revance's process for manufacturing daxibotulinumtoxinA drug substance.

65. The manufacture of daxibotulinumtoxinA drug substance does not use or otherwise incorporate human or animal-based components.

66. BLA No. 761127 describes Revance's process for manufacturing Daxxify drug product.

67. BLA No. 761127 describes the components that are included in the Daxxify drug product.

68. The Daxxify drug product does not contain human or animal-based components.

69. The manufacture, use, sale, and/or offer for sale within the United States, or importation into the United States, of daxibotulinumtoxinA drug substance incorporated into Daxxify that is made in accordance with BLA No. 761127 satisfies the limitations of claim 8 of the '740 patent.

70. The manufacture, use, sale, and/or offer for sale within the United States, or importation into the United States, of daxibotulinumtoxinA drug substance incorporated into

Daxxify that is made in accordance with BLA No. 761127 satisfies the limitations of claim 8 of the ’748 patent.

71. The manufacture, use, sale, and/or offer for sale within the United States, or importation into the United States, of the Daxxify drug product that is made in accordance with BLA No. 761127 satisfies the limitations of claim 6 of the ’878 patent.

72.

73. The manufacture, use, sale, and/or offer for sale within the United States, or importation into the United States, of the Daxxify drug product that is made in accordance with BLA No. 761127 satisfies the limitations of claim 1 of the ’216 patent.

**VI. <u>DaxibotulinumtoxinA Drug Substance Batches</u>**

74. DaxibotulinumtoxinA drug substance Batch No. [redacted] was manufactured by Revance on [redacted]

75. Revance has [redacted]

76. DaxibotulinumtoxinA drug substance Batch No. [redacted] was manufactured by Revance on [redacted]

77. Revance has [redacted].

78. DaxibotulinumtoxinA drug substance Batch No. [redacted] was manufactured by Revance on [redacted]

79. Revance has [redacted]

80. DaxibotulinumtoxinA drug substance Batch No. [redacted] was manufactured by Revance on [redacted]

81. Revance has [redacted]

82. DaxibotulinumtoxinA drug substance Batch No. [redacted] was manufactured by Revance on [redacted]

83. Revance has [redacted]

84. DaxibotulinumtoxinA drug substance Batch No. [redacted] manufactured by Revance on [redacted]

85. Revance has [redacted]

## VII. <u>Daxxify Drug Product Batches</u>

86. Daxxify drug product Batch No. [redacted] was manufactured by ABPS at the direction and control of Revance on [redacted].

87. Revance has commercially sold Daxxify vials from Batch No. [redacted].

88. Daxxify drug product Batch No. [redacted] was manufactured by ABPS at the direction and control of Revance on [redacted]

89. Revance has commercially sold Daxxify vials from Batch No. [redacted]

90. Daxxify drug product Batch No. [redacted] was manufactured by ABPS at the direction and control of Revance on [redacted]

91. Revance has commercially sold Daxxify vials from Batch No. [redacted]

## VIII. <u>Infringement</u>

92. Revance does not contest infringement of claim 8 of U.S. Patent No. 7,354,740 ("the '740 patent"), claim 6 of U.S. Patent No. 11,147,878 ("the '878 patent"), claim 1 of U.S.

Patent No. 11,285,216 ("the '216 patent"), and claim 8 of U.S. Patent No. 11,203,748 ("the '748 patent") to the extent any of these claims are not proven invalid. (*See, e.g.*, D.I. 352; D.I. 449.)

## IX. Damages

93. The amount adequate to compensate Allergan for Revance's infringement of any asserted claim not found to be invalid.

## X. Validity

94. Whether Revance has identified any reference that qualifies as prior art pursuant to 35 U.S.C. § 102.

95. Whether WO2005/007185 ("Frevert") published on January 27, 2005 qualifies as prior art to any of the asserted claims of the '878, or '216 patents under 35 U.S.C. § 102.

96. Whether WO2006/005910 ("Webb") published on January 19, 2006 qualifies as prior art to any of the asserted claims of the '878, or '216 patents under 35 U.S.C. § 102.

97. Whether Revance has identified any alleged obviousness ground that renders any of the asserted claims invalid pursuant to 35 U.S.C. § 103.

* * *

# EXHIBIT 2-B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants/Counterclaim Plaintiffs. | C.A. No. 21-1411-RGA-LDH<br><br>[redacted] |

**EXHIBIT 2-B: DEFENDANTS' AMENDED STATEMENT OF CONTESTED ISSUES OF FACT**

Defendants Revance Therapeutics, Inc. ("Revance") and PCI San Diego f/k/a Ajinomoto Bio Pharma Services (collectively, "Defendants") submit the following statement of the issues of fact which remain to be litigated in this case, based on Defendants' claims and defenses, Defendants' current understanding of Plaintiffs' claims and defenses, and the proceedings in this action to date. Defendants' statement is based upon the current status of the case and the Court's current rulings. To the extent that Defendants' statement of the issues of law that remain to be litigated contains issues of fact, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of law, Defendants incorporate such issue by reference into Exhibit 3-B.

By including an issue herein, Defendants do not assume the burden of production or persuasion with regard to that issue. Defendants reserve the right to revise this statement in light of the Court's rulings, in response to Plaintiff's positions, or as otherwise may be

appropriate. Defendants will include in their proposed jury instructions their positions on how the jury should be instructed on the law relevant to this case. The following statements are not exhaustive, and Defendants reserve the right to prove any matters identified in their pleadings, discovery responses, including their contentions, and/or expert reports and depositions. Moreover, Defendants also intend to offer evidence as to the issues of fact and issues of law identified in this Joint Pretrial Order. Defendants reserve the right to modify or supplement this statement as part of the meet and confer process leading up to trial, in response to Plaintiff's pretrial disclosures and objections, by agreement with Plaintiff, and/or in response to any pretrial ruling or orders from the Court. Defendants reserve the right to address additional issues not set forth herein to the extent they are raised in the parties' pending summary judgment motions, *Daubert* motions, or motions to strike, in any motion *in limine* that may be filed by the parties, or by Plaintiff at trial.

Defendants object to Plaintiff presenting any evidence of infringement, validity, or other arguments or opinions that they have not properly preserved in their complaint, disclosed in their discovery responses or their expert reports, and/or any infringement, validity, or other arguments or opinions precluded by the Court. Defendants intend to offer evidence to rebut evidence offered by Plaintiff, and to argue that Plaintiff is precluded from offering evidence in support of theories and claims not adequately disclosed in accordance with the Scheduling Orders (D.I. 54, D.I. 75, D.I. 265). Defendants incorporate by reference their expert reports and depositions in support of any proof to be presented by expert testimony.

## I. BOTULINUM TOXINS

1. The bacterium *Clostridium botulinum* produces toxins, including botulinum neurotoxin type A.

2. In 1989, Botox® was first approved by the U.S. Food and Drug Administration ("FDA") for therapeutic uses in 1989.

3. Botox Cosmetic® was first approved by the FDA for aesthetic uses in 2002.

4. Botox® and Botox Cosmetic® contain botulinum toxin serotype A.

5. The market for botulinum toxin injectable products for aesthetic use in the United States consists of five competitors: (i) Allergan's Botox®, (ii) Ipsen's Dysport®, (iii) Merz's Xeomin®, (iv) Evolus's Jeuveau®, and (v) Revance's DAXXIFY®.

6. All five botulinum toxin injectable products marketed in the aesthetic space are FDA-approved for the temporary improvement of glabellar lines. Additionally, Botox Cosmetic® is approved for the temporary improvement of lateral canthal lines and forehead lines.

7. Botox Cosmetic®, Dysport®, Xeomin®, and Jeuveau® all contain human serum albumin (HSA).

8. Botox®, Dysport®, Xeomin®, and Jeuveau® are not animal-product free (APF) products.

9. Dysport® was initially FDA-approved in 2009.

10. Xeomin® was initially FDA-approved in 2010.

11. Jeuveau® was initially FDA-approved in 2019.

12. There is no evidence in the record of any demand for animal-product free (APF) botulinum toxin products from consumers or customers of botulinum toxin products.

13. Botox Cosmetic®, Botox®, and their manufacture do not practice any claim of the asserted patents.

14. Section 11 ("Description") of the FDA-approved label for Botox® states as follows: "Each vial of BOTOX contains either 50 Units of Clostridium botulinum type A neurotoxin

complex, 0.25 mg of Albumin Human, and 0.45 mg of sodium chloride; 100 Units of Clostridium botulinum type A neurotoxin complex, 0.5 mg of Albumin Human, and 0.9 mg of sodium chloride; or 200 Units of Clostridium botulinum type A neurotoxin complex, 1 mg of Albumin Human, and 1.8 mg of sodium chloride in a sterile, vacuum-dried form without a preservative." 2011 Botox® Label.

15. Dysport®, Xeomin®, and Jeuveau® and the manufacture of each do not practice any claim of the asserted patents.

16. The presence of animal product in a botulinum toxin product does not preclude acceptability of that botulinum toxin product to customers.

17. Dysport®, Xeomin®, and Jeuveau® are FDA-approved products for sale in the aesthetics market and are safe and effective options for their approved indications.

18. Dysport® is marketed as having a longer clinical duration than Botox®.

19. Within the aesthetics space, extended clinical duration generally refers to products whose clinical duration lasts longer than the standard three-month clinical duration.

20. The average botulinum toxin cosmetic patient receives botulinum toxin injections no more than two times per year, regardless of the botulinum toxin product administered.

21. Healthcare practitioners (HCPs) are more familiar with administering Botox® than other botulinum toxin injectable products.

22. As reflected in the label for Botox®, the dosage units of Botox® are not interchangeable with the dosage units of other botulinum products, including DAXXIFY®.

23. The average DAXXIFY®-to-Botox® Vials-to-Treatments Ratio is at least 2:1.

24. The unit ratio of DAXXIFY® to Botox® is not one-to-one.

25. Botox® and DAXXIFY® are sold in 50-unit and 100-unit vials.

26. The labeled dosing for treatment of glabellar lines per treatment is 20 units for Botox® and 40 units for DAXXIFY®.

27. Botox®, Xeomin®, and Jeuveau® are not considered longer duration products.

28. Dysport® has a longer duration than Botox®.

29. If DAXXIFY® were not on the market, some DAXXIFY® customers would have turned to Dysport®, Jeuveau®, or Xeomin®.

30. Dysport®, Jeuveau®, and Xeomin® are acceptable, non-infringing substitutes for some customers of DAXXIFY®.

31. A clinical duration of effect of less than six months but at least three to four months does not preclude acceptability of a botulinum toxin product to customers.

32. The duration of Botox® ranges from three to six months.

33. Botox® has more approved cosmetic and therapeutic indications than DAXXIFY®.

34. [redacted]

35. DAXXIFY® possesses multiple product attributes, other than animal-product free (APF) and longer duration, that drive consumer and customer demand for the product.

36. Unlike Botox®, DAXXIFY® is manufactured entirely in the United States.

37. DAXXIFY® has a faster onset than other currently available botulinum toxin products.

38. There are no licenses identified by either side that are comparable to the license that would be the result of the hypothetical negotiation.

39. In AbbVie's January 10, 2024 company conference presentation, Robert Michael, President and Chief Operating Officer of AbbVie, stated: "Despite Daxxify coming in the market, we've held our share for Botox."[1]

40. On or around January 10, 2024, Jeffrey Ryan Stewart, Chief Commercial Officer of AbbVie, stated: "We're going to continue to see momentum in the fourth quarter in our [Botox] share position despite the launch of other products, so-called long-acting products, has not moved at all."

41. In AbbVie's April 27, 2023 earnings call, AbbVie stated: "The U.S. cosmetic toxin market was down low single digits in the first quarter on a year-over-year basis. Botox Cosmetic continues be the clear market leader and its share of the U.S. toxin market remains stable."

42. In AbbVie's July 27, 2023 earnings call, AbbVie stated: "Botox Cosmetic continues to be the clear market leader, maintaining strong and stable share despite new competitive entrants."

43. In AbbVie's July 27, 2023 earnings call, AbbVie stated that the Botox® "franchise continues to outperform [] expectations," and that it would "be [] raising [its] full year guidance for the collective neuroscience portfolio."

44. In AbbVie's July 27, 2023 earnings call, AbbVie stated: "So in terms of DAXI, it's been more than 6 months since their launch and the uptake has been quite limited from our perspective in the low single digits."

---

[1] Defendants agree to withdraw these statements if evidence and testimony regarding competition between Defendants and Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, Allergan USA, Inc., or AbbVie is excluded.

45. In AbbVie's July 27, 2023 earnings call, AbbVie stated: "So we have yet to see impact on Botox share and Botox will continue to be the clear market leader as the other toxins compete for the #2, 3, 4 position in our customers' offices."

46. In AbbVie's October 27, 2023 earnings call, AbbVie stated: "Botox continues to perform very well despite increasing competition. It remains the clear market leader with a strong and stable share, and we have seen little to no share impact from new competitive entrants."

47. In AbbVie's October 27, 2023 earnings call, AbbVie stated: "Botox is performing very well, and we're certainly doing a very nice job maintaining our share position despite competitive pressure."

48. In AbbVie's January 10, 2024 company conference presentation, AbbVie stated: "[1] We're going to continue to see momentum in the fourth quarter in our share position despite the launch of other products, so-called long-acting products, has not moved at all[;] [2] [W]e've been incredibly efficient at maintaining our leading share position[;] [and] [3] Despite Daxxify coming in the market, we've held our share for Botox."

49. On the same AbbVie January 10, 2024 company conference presentation, AbbVie stated: "[T]here's been questions on the aesthetics business, but we're seeing a trend very nicely. We expect it to return to growth in '24. As Jeff mentioned, toxins are clearly on that trend. We've now seen 2 quarters of very nice growth. Fillers are getting there, but we're most encouraged by the share performance. Despite Daxxify coming in the market, we've held our share for Botox and then to see Juvederm gaining share with the new launches of Volux and SkinVive is very encouraging."

50. In AbbVie's February 2, 2024 earnings call, AbbVie stated: "Botox Cosmetic sales were $453 million, an increase of 7.3%. We continue to see sustained momentum in the recovery

of the U.S. facial toxin market, which was a primary driver of growth in the fourth quarter. Botox Cosmetic remains the clear market leader with strong and stable share despite new competitive entrants."

51. In AbbVie's March 5, 2024 earnings call, Roopal Thakkar, Senior Vice President of Research and Development at AbbVie stated: "Can I mention a little briefly. So on the long acting, there is quite a bit of work on the formulation side, but that is like the long acting. It is a longer-term strategy, but that's ongoing. However, what a need really appears to be maybe more so in aesthetics than a long-acting because we've seen how that's played out. It's a short-acting. And the reason for that is there's many patients, individuals on the sidelines that aren't sure they want to start using it because they're afraid of an unnatural outcome. And once they get it, it's hard to reverse it. So you have that maybe for 2, 3, 4 months. What [Bonti] allows is someone to dip their toe in to decide if they like that outcome or even use it for an event. You got a high school reunion or something coming up, you can use it. Now how does that work? It's injected and within hours, you see the onset of efficacy, and it peaks at day 7 to the same level that we have seen Botox and then degrades off quickly over the next week or 2 weeks. That data has been shared and we are in the midst of that assembling that application and finishing off the CMC work, and that submission will actually go in this year. So that will be in people's hands to access the number of patients that don't want to try it yet because once they do, they like it and then Botox is there for them."

52. In AbbVie's April 26, 2024 earnings call, Carrie C. Strom, Senior Vice President of AbbVie, stated: "From a competitive perspective, our U.S. aesthetics portfolio continues to perform well. Market share for both Botox Cosmetic and Juvederm was stable in the first quarter as these assets remain the clear market leaders. While we're pleased that the market and share

trends across U.S. facial injectables are aligned with our previous expectations, our first quarter results were impacted by customers holding lower-than-normal inventory levels at quarter end. This dynamic relates to a decision made during the quarter to shift the timing of certain promotional activities into the second quarter. We, therefore, expect inventory levels to normalize in the second quarter and remain on track to deliver full year aesthetics sales growth in the U.S."

53. In AbbVie's May 15, 2024 earnings call, Robert A. Michael, President and Chief Operating Officer of AbbVie, stated: "So if you—on the U.S. toxin market, we saw it really return—the market return to growth in the third quarter last year. We saw that continue in the fourth quarter, and we saw again the first quarter, thinking like in terms of mid-single-digit market growth. So we are seeing a recovery there. We've actually given—if you look at the guidance we've given for the aesthetics business this year, it's high single-digit growth. So we'd say we've returned to growth. The U.S. is—we're seeing this sequential improvement. Even fillers were somewhat—I think the market was essentially flat. It tends to lag somewhere around 2 quarters of toxins, but we're seeing nice recovery there in the overall market. But what's really encouraging is the share performance. There was a lot of questions around the impact of DAXXIFY, what that meant for Botox Cosmetic. We've held our share throughout that entire launch. And so it's been pretty resilient."

54. In AbbVie's June 12, 2024 earnings call, Robert A. Michael, President and Chief Operating Officer of AbbVie, stated: "Then aesthetics, we expect to continue to deliver on that greater than $9 billion revenue target for 2029. Great opportunities there. That's one that—we're market leaders. We've, I think, done a very nice job protecting share despite the entry of DAXXIFY." Further, Jeffery Ryan Stewards, Executive VP and Chief Commercial Officer of AbbVie, stated: "I think one of the things that I'm personally and certainly the company is proud

of is we're able to defend share very, very strongly. So for example, Rob mentioned it last year with DAXXIFY, they were not able to take any share from Botox. So we've been, to your point, very, very resilient with the way that we're able to connect with the customers, connect with the med spas, the derms, et cetera, to basically be pretty critical part of their practice."

55. In AbbVie's July 25, 2024 earnings call, Robert A. Michael, President and Chief Operating Officer of AbbVie, stated: "We've exceeded our deal model expectations since we announced the deal. So we think it's operating very well. Obviously, we're working through some macroeconomic headwinds. But when you look at, for example, share performance, we had the entry of Daxxify last year, and we did not lose any share."

56. In the same July 25, 2024 earnings call, Robert A. Michael further said: "But when you look at, for example, share performance, we had the entry of Daxxify last year, and we did not lose any share. I think a lot of investors were concerned that we'd see considerable share loss. And so I think the team has done a remarkable job of competing in this marketplace going through a period with economic headwinds. We're still very confident given low penetration rates, given our relationship in the field, the potential innovations that we plan to bring forward."

57. Both Botox® and Botox Cosmetic® contain human serum albumin, which is an animal-derived product.

58. Botox® and Botox Cosmetic® are not "animal-product free" and therefore do not practice any of the '740 patent, '748 patent, '878 patent, or '216 patent.

59. The manufacturing process for Botox® and Botox Cosmetic® uses casein hydrolysate, which is an animal-derived product.

60. The manufacturing process for Botox® and Botox Cosmetic® is not "animal-protein free" and therefore does not practice any of the '740 patent, '748 patent,'878 patent, or '216 patent.

61. Allergan has not commercialized and does not currently commercialize any process or product that practices any of the ’740 patent, ’748 patent,’878 patent, or ’216 patent.

62. The ’740 patent already expired on September 25, 2023; the ’748 patent expires on July 13, 2029; and the ’878 and ’216 patent expire on September 21, 2026.

63. Allergan, Inc. does not market, manufacture, formulate, develop, market, distribute, sell, or profit from Botox® Cx/Tx or any other product that competes with Revance’s DAXXIFY®.

64. Allergan, Inc. does not receive profits from Botox®.

65. Allergan, Inc. purports to receive 2% of net sales (excluding Canada) of Botox for owning the trademark and trade dress.

## II. DAXXIFY®

63. The formulation of Revance’s DAXXIFY® drug product contains [redacted]

64. The median clinical duration for DAXXIFY® is approximately six months.

65. The RTP004 peptide present in Revance’s DAXXIFY® drug product contributes to its median six-month clinical duration of action.

66. The FDA would have understood, based on Revance’s FDA communications, that [redacted].

67. Revance’s DAXXIFY ® product competes in the aesthetic market with the Botox® franchise, Galderma’s Dysport®, Merz’s Xeomin®, and Evolus’s Jeuveau® in the United States.

## III. NON-INFRINGEMENT

68. Revance's accused purification process described in Biologics License Application ("BLA") No. 761127 does not literally meet each and every element of asserted claim 8 of U.S. Patent No. 11,203,748 ("the '748 patent").

69. Plaintiff has not—and cannot—prove that the botulinum toxin obtained from Revance's accused purification process described in BLA No. 761127 does not have residual nucleic acid levels of less than "one part residual nucleic acid per million parts of botulinum neurotoxin."

70. Revance does not and cannot infringe asserted claim 8 of U.S. Patent No. 7,354,740 ("the '740 patent"), asserted claim 8 of the '748 patent, asserted claim 6 of U.S. Patent No. 11,147,878 ("the '878 patent"), and asserted claim 1 of U.S. Patent No. 11,285,216 ("the '216 patent"), because those claims are invalid.

74. Allergan also accused Revance's manufacture of Batch Nos. 10002B-226, DS0027, DS0028, and DS0029 of infringement of patents asserted in this action.

75. DaxibotulinumtoxinA drug substance Batch No. 10002B-226 was used in Phase 1 and 2 trials for DAXXIFY®.

76. Batch No. 10002B-226 was manufactured by Revance on or around September 21, 2011 for purposes reasonably related to obtaining FDA approval and is therefore protected under 35 U.S.C. § 271(e)(1).

77.

## IV. CONCEPTION

92. Allergan Laboratory Notebook [redacted] has an entry on page 138, dated October 10, 2003, for an experiment entitled "[redacted]" ("Experiment 5").

93. Allergan Laboratory Notebook [redacted], and [redacted], dated October 10, 2003, indicating that botulinum toxin type A formulations were prepared as part of "Experiment 5" [redacted]. Those formulations included:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

94. Allergan Laboratory Notebook [redacted] has an entry on [redacted] dated October 23, 2003 and entitled "[redacted]." As indicated on page 169 of Allergan Laboratory Notebook [redacted], the [redacted], as determined by [redacted] The [redacted] of the formulation [redacted] following [redacted], as determined by [redacted]

95. Allergan Laboratory Notebook [redacted] has an entry on [redacted] dated April 28, 2004, for an experiment entitled [redacted] ("Experiment 9").

96. Allergan Laboratory Notebook [redacted] has entries on pages [redacted] dated April 28, 2004, indicating that botulinum toxin type A formulations were prepared as part of "Experiment 9" and [redacted]. Those formulations included:

- [redacted]
- [redacted]

97. Allergan documents indicate that the formulations [redacted] were tested for [redacted] following [redacted] on May 19, 2004. Allergan documents indicate that the [redacted], as determined by [redacted] Allergan documents indicate that the [redacted] of the formulation [redacted] following [redacted], as determined by [redacted]

98. Allergan Laboratory Notebook [redacted] has an entry on [redacted], dated July 22, 2004, for an experiment entitled [redacted] ("Experiment 14").

99. Allergan Laboratory Notebook [redacted] has entries on [redacted], dated July 22, 2004, indicating that botulinum toxin type A formulations were prepared as part of "Experiment 14" and [redacted] Those formulations included:

- [redacted]
- [redacted]
- [redacted]
- [redacted]

- [redacted]

100. Allergan documents indicate that on August 26, 2004, September 9, 2004, September 16, 2004, and September 22, 2004, the formulations [redacted] were tested for [redacted] The [redacted] of the formulation [redacted] following [redacted], as determined by [redacted] and the formulation had a [redacted] The [redacted] of the formulation [redacted] following [redacted] as determined by [redacted] and the formulation had a [redacted]. The [redacted] of the formulation [redacted] following [redacted], as determined by [redacted] and the formulation had a [redacted]. The [redacted] of the formulation [redacted] following [redacted] as determined by [redacted] and the formulation had a [redacted] of the formulation [redacted] following [redacted], as determined by [redacted] and the formulation had a [redacted]

101. Allergan Laboratory Notebook [redacted] has an entry on page 180, dated September 28, 2004, for an experiment entitled "[redacted]" ("Experiment 17").

102. Allergan Laboratory Notebook [redacted] has entries on pages [redacted] dated September 28, 2004, indicating that botulinum toxin type A formulations were prepared as part of "Experiment 17" and [redacted] Those formulations included:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

103. Allergan documents indicate that on October 7, 2004, October 14, 2004, October 20, 2004, and October 21, 2004, the foregoing formulations from Experiment 17 were tested [redacted] following [redacted]. As stated in the table below, the formulations had the [redacted]

| Formulation | [redacted] | [redacted] |
|---|---|---|
| [redacted] | | |

| Formulation | [redacted] | [redacted] |
| --- | --- | --- |
| [redacted] | | |

104. Allergan documents indicate that on January 13, 2005, February 3, 2005, and February 24, 2005, some of the foregoing formulations from Experiment 17 were tested for [redacted] As stated in the table below, the formulations had the following [redacted]

| Formulation | [redacted] | [redacted] |
| --- | --- | --- |
| [redacted] | | |

105. Allergan documents indicate that on March 30, 2005 and March 31, 2005, some of the foregoing formulations from Experiment 17 were tested for [redacted]. As

stated in the table below, the formulations had the following [redacted]

| Formulation | [redacted] | [redacted] |
| --- | --- | --- |
| [redacted] | | |

106. Allergan Laboratory Notebook [redacted] has an entry on page [redacted], dated March 1, 2005, for an experiment entitled “[redacted] (“Experiment 21”).

107. Allergan Laboratory Notebook [redacted] has entries on pages [redacted] dated March 1, 2005, indicating that botulinum toxin type A formulations were prepared as part of “Experiment 21” and [redacted]. Those formulations included:

- [redacted]

108. Allergan documents indicate that on March 16, 2005, the formulation [redacted] was tested [redacted]. The [redacted] following [redacted], as determined [redacted] and the formulation had a [redacted]

109. Allergan documents indicate that on June 1, 2005, [redacted] was conducted following [redacted] The [redacted],

[redacted]

110. Allergan documents indicate that on June 2, 2005, [redacted] The [redacted]

V. INVALIDITY

A. Prior Art

111. U.S. Patent No. 5,756,468 to Johnson et al. ("Johnson 468") was publicly available by May 26, 1998 and therefore is prior art to the asserted claims of the '740, '748, '878, and '216 patents.

112. Gessler et al., "Production and purification of *Clostridium botulinum* type C and D neurotoxin," *FEMS Immunology and Medical Microbiology*, 24:361–67 (1999) ("Gessler") was publicly available in July 1999 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

113. Whitmer et al., "Development of Improved Defined Media for *Clostridium botulinum* Serotypes A, B, and E," *Applied and Environmental Microbiology*, 54(3):753–59 (1988) ("Whitmer 1988") was publicly available in March 1988 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

114. Guidance for Industry: Revised Precautionary Measure to Reduce Possible Risk of Creutzfeldt-Jakob Disease (CJD) and New Variant Creutzfeldt-Jakob Disease (nvCJD) by Blood and Blood Products (November 1999) ("FDA Guidance 1999") was publicly available in November 1999 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

115. Malizio et al., "Purification of *Clostridium botulinum* Type A Neurotoxin," *Methods in Molecular Biology*, 145:27–39 (2000) ("Malizio") was publicly available in 2000 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

116. Smelt et al., "Growth and toxin formation by *Clostridium botulinum* at low pH values," *J. Applied Bacteriology*, 52:75–82 (1982) ("Smelt") was publicly available in February 1982 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

117. Goodnough, M., Ph.D., "Characterization and stabilization of *Clostridium botulinum* neurotoxin for medical use," University of Wisconsin-Madison (1994) ("Goodnough Thesis") was publicly available as of January 19, 1995 and therefore is prior art to the asserted claims of the '740, '748, '878, and '216 patents.

118. Carpenter et al., "Rational Design of Stable Lyophilized Protein Formulations: Some Practical Advice," *Pharma Res*, 14(8):969–75 (1997) ("Carpenter") was publicly available in August 1997 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

119. U.S. Patent Application Publication No. 2003/0118598 ("Hunt 598") was publicly available in June 26, 2003 and therefore is prior art to the asserted claims of the '740, '748,'878, and '216 patents.

120. U.S. Patent Application Publication No. 2005/0238669 A1 ("Xiang") was publicly available by October 27, 2005 and therefore is prior art to the asserted claims of the '748,'878, and '216 patents.

121. International Publication No. WO 2005/007185 A2 ("Frevert 185") was publicly available on January 27, 2005, and therefore is prior art to the asserted claims of the '748,'878, and '216 patents.

**B. International Publication No. WO 2006/005910 ("Webb") was filed on July 6, 2005, and therefore is prior art to the asserted claims of the '748,'878, and '216 patents.Obviousness of the '740 Patent**

111. On April 8, 2008, the United States Patent and Trademark Office issued U.S. Patent No. 7,354,740 ("the '740 patent"), entitled "Animal Product Free System and Process for Purifying a *Botulinum* Toxin." The '740 patent issued from U.S. Application No. 11/072,673 ("the '673 application") which was filed on March 3, 2005. The '673 application is a continuation-in-part of U.S. Application No. 11/072,050, filed on March 3, 2005, which is now U.S. Patent No. 7,160,699 ("the '699 patent"). The '699 patent is itself a continuation-in-part of U.S. Application No. 10/672,876, filed on September 25, 2003, which is now U.S. Patent No. 7,148,041 ("the '041 patent").

112. On its face, the '740 patent purports to claim priority benefit to the September 25, 2003 filing date of U.S. Application No. 10/672,876, and therefore, according to the face of the '740 patent, asserted claim 8 of the '740 patent is entitled to a priority date no earlier than September 25, 2003.

113. The documents and publications available to a person of ordinary skill as of September 25, 2003 demonstrate the relevant state of the art applicable to the '740 patent.

114. Asserted claim 8 of the '740 patent is invalid as obvious under 35 U.S.C. § 103 in view of the combination of Gessler, Smelt, and FDA Guidance 1999, when viewed from the perspective of a person of ordinary skill in the art.

115. Asserted claim 8 of the '740 patent is invalid as obvious in view of the level of ordinary skill in the art, the scope and content of the prior art, and the differences, if any, between the prior art and the subject matter claimed in claim 8 of the '740 patent.

116. A person of ordinary skill in the art would have been motivated to use animal-protein free and/or animal-product free processes to prepare and purify botulinum toxin, and would have had a reasonable expectation of success in doing so.

117. A person of ordinary skill in the art would have had the skill, ability, and know-how to prepare and purify botulinum toxin in an animal-protein free and/or animal-product free manner.

118. A person of ordinary skill in the art would have been motivated to use a hydrophobic interaction chromatography column to purify botulinum toxin with a reasonable expectation of success.

119. A person of ordinary skill in the art would have been motivated to add a hydrophobic interaction chromatography column to a chromatographic purification process that utilizes anion and/or cation exchange chromatography with a reasonable expectation of success.

120. A person of ordinary skill in the art would have been motivated to use a hydrophobic interaction chromatography column in place of an acid precipitation step in a botulinum toxin purification process with a reasonable expectation of success.

121. A person of ordinary skill in the art would have been motivated to combine prior-art elements to arrive at the subject matter claimed in claim 8 of the ’740 patent.

122. A person of ordinary skill in the art would have had a reasonable expectation of success when combining prior-art elements to arrive at the subject matter claimed in claim 8 of the ’740 patent.

123. There are no objective indicia showing that asserted claim 8 of the ’740 patent would not have been obvious. There are no objective indicia of non-obviousness having a nexus to asserted claim 8 of the ’740 patent.

124. There was no industry skepticism supporting non-obviousness of claim 8 of the ’740 patent, including no industry skepticism that a purification process involving chromatography resins would work.

125. There is no evidence of copying of asserted claim 8 of the ’740 patent.

126. There is no industry praise supporting non-obviousness of asserted claim 8, including no industry praise for the subject matter claimed in asserted claim 8 of the ’740 patent.

127. There is no record evidence that practicing the claimed subject matter of the ’740 patent, by itself, results in a product with a longer duration of action than any other botulinum toxin product.

### C. Obviousness of the ’748 Patent

128. On December 21, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,203,748 (“the ’748 patent”), entitled “Process and System for Obtaining Botulinum Neurotoxin.” The ’748 patent issued from U.S. Patent Application No. 17/340,720 (“the ’720 application”), filed on June 7, 2021. The ’720 application is a continuation of U.S. Patent Application No. 16/673,444, filed on November 4, 2019, which is itself a continuation of U.S. Patent Application No. 15/664,456, filed on July 31, 2017, which is a divisional of U.S. Patent Application No. 14/961,327, filed on December 7, 2015, which is a divisional of U.S. Patent Application No. 14/561,402, filed on December 5, 2014, which is a continuation of U.S. Patent Application No. 13/407,662, filed on February 28, 2012, which is a continuation of U.S. Patent Application No. 13/344,399, filed on January 5, 2012, which is a continuation of U.S. Patent Application No. 12/502,181, filed on July 13, 2009.

129. On its face, the ’748 patent purports to claim priority benefit to the July 13, 2009 filing date of U.S. Patent Application No. 12/502,181, and therefore, according to the face of the

’748 Patent, asserted claim 8 of the ’748 patent are entitled to a priority date no earlier than July 13, 2009.

130. The documents and publications available to a person of ordinary skill as of July 13, 2009 demonstrate the relevant state of the art applicable to the ’748 patent.

131. Malizio in view of Xiang disclose “[a] substantially animal product free (APF) process utilizing chromatography for purifying *Clostridium botulinum* toxin serotype A (BoNT/A) in a sample comprising approximately 150 kDa BoNT/A and at least one impurity protein” as recited in claim 1 of the ’748 patent.

132. Asserted claim 8 of the ’748 patent is invalid as obvious under 35 U.S.C. § 103 in view of the combination of Malizio and Xiang, when viewed from the perspective of a person of ordinary skill in the art.

133. Asserted claim 8 of the ’748 patent is invalid as obvious in view of the level of ordinary skill in the art, the scope and content of the prior art, and the differences, if any, between the prior art and the subject matter claimed in claim 8 of the ’748 patent.

134. A person of ordinary skill in the art would have been motivated to obtain botulinum toxin with residual nucleic acid levels of no more than one part residual nucleic acid per million parts of the botulinum neurotoxin with a reasonable expectation of success.

135. A person of ordinary skill in the art utilizing the chromatographic purification processes in Malizio would inherently obtain botulinum toxin with residual nucleic acid levels of no more than one part residual nucleic acid per million parts of the botulinum neurotoxin.

136. A person of ordinary skill in the art would have been motivated to combine prior-art elements to arrive at the subject matter claimed in claim 8 of the ’748 patent.

137. A person of ordinary skill in the art would have had a reasonable expectation of success when combining prior-art elements to arrive at the subject matter claimed in claim 8 of the ’748 patent.

138. There are no objective indicia showing that asserted claim 8 of the ’748 patent would not have been obvious. There are no objective indicia of non-obviousness having a nexus to asserted claim 8 of the ’748 patent.

139. There is no long-felt, unmet need for a rapid, relatively smaller scale yet high-yield process for obtaining high purity, highly potent botulinum neurotoxin; nor is there any industry skepticism against the use of anion exchange chromatography to purify botulinum toxin supporting non-obviousness of asserted claim 8 of the ’748 patent.

140. There is no teaching away from the subject matter claimed in asserted claim 8 of the ’748 patent.

141. There is no record evidence that practicing the claimed subject matter of the ’748 patent, by itself, results in a product with a longer duration of action than any other botulinum toxin product.

**D. Obviousness of the ’878 Patent**

142. On October 19, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,147,878 (“the ’878 patent”), entitled “Animal Protein-Free Pharmaceutical Compositions.” The ’878 patent issued from U.S. Patent Application No. 17/332,283 (“the ’283 application”), filed on May 17, 2021. The ’283 application is a continuation of U.S. Patent Application No. 17/143,770, filed on January 7, 2021, which is a continuation of U.S. Patent Application No. 17/071,239, filed on October 15, 2020, which is a continuation of U.S. Patent Application No. 16/925,667, filed on July 10, 2020, which is a continuation of U.S. Patent Application No. 13/427,582, filed on March 22, 2012, which is a continuation of the

’816 application, filed on December 10, 2008, which is a continuation-in-part of the ’683 application, filed on September 21, 2006. The ’878 patent also purports to claim the benefit of the ’126 provisional application, which was filed on October 6, 2005.

143. Asserted claim 6 of the ’878 patent are not entitled to a priority date earlier than December 10, 2008, which is the filing date of the ’816 application.

144. Asserted claim 6 of the ’878 patent are not entitled to an invention date any earlier than the October 6, 2005 filing date of the ’126 provisional application.

145. The documents and publications available to a person of ordinary skill as of the ’878 patent’s earliest priority date of December 10, 2008 and earliest invention date of October 6, 2005 demonstrate the relevant state of the art applicable to the ’878 patent.Hunt 598 discloses “[a]n animal protein free method to stabilize a serotype A Clostridial botulinum neurotoxin, comprising: (a) compounding an aqueous carrier with two or more non-animal derived non-protein excipients and a biologically active serotype A Clostridial botulinum neurotoxin to form a compounded formulation; and (b) lyophilizing or vacuum-drying the compounded formulation to thereby provide a stable powdered formulation” as recited in claim 1 of the ’878 patent.

146. Hunt 598 discloses that the “non-animal derived non-protein excipients comprise (i) a surfactant,” as recited in claim 1 of the ’878 patent.

147. Hunt 598 discloses that “the powdered formulation is suitable for intramuscular or subcutaneous administration after reconstitution with normal saline or water,” as recited in claim 1 of the ’878 patent.

148. Hunt 598 discloses that “the powdered formulation is animal protein free and polysaccharide free,” as recited in claim 1 of the ’878 patent.

149. Hunt 598 discloses Formulations B, C, and E comprising botulinum toxin type A that had an initial potency of 96%, 100%, and 116%.

150. Asserted claim 6 of the '878 patent is invalid as obvious under 35 U.S.C. § 103 in view of the combination of Hunt 598 and Johnson 468, when viewed from the perspective of a person of ordinary skill in the art.

151. A person of ordinary skill in the art would have been motivated to add trehalose to Hunt 598's compositions with a reasonable expectation of success.

152. A person of ordinary skill in the art would have been motivated to combine prior-art elements to arrive at the subject matter claimed in asserted claim 6 of the '878 patent.

153. A person of ordinary skill in the art would have had a reasonable expectation of success when combining prior-art elements to arrive at the subject matter claimed in asserted claim 6 of the '878 patent.

154. There are no objective indicia showing that asserted claim 6 of the '878 patent would not have been obvious. There are no objective indicia of non-obviousness having a nexus to asserted claim 6 of the '878 patent.

155. There are no unexpected results, long-felt unmet need, industry praise, or skepticism for the subject matter claimed in claim 6 of the '878 patent.

156. DAXXIFY®'s performance in the market does not establish that the subject matter claimed in claim 6 of the '878 patent is a commercial success supporting non-obviousness.

157. The proprietary RTP004 peptide in Revance's DAXXIFY® product contributes to DAXXIFY®'s duration of action. The proprietary RTP004 peptide in Revance's DAXXIFY® product is not claimed in the '878 patent.

158. The ’878 patent does not identify or describe the botulinum toxin formulations covered by its claims as having a longer duration of action.

159. There is no record evidence that practicing the claimed subject matter of the ’878 patent, by itself, results in a product with a longer duration of action than any other botulinum toxin product.

**E. Obviousness of the ’216 Patent**

160. On March 29, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,285,216 (“the ’216 patent”), entitled “Animal Protein-Free Pharmaceutical Compositions.” The ’216 patent issued from U.S. Application No. 17/384,388 (“the ’388 application”) filed on July 23, 2021. The ’388 application is a continuation of U.S. Patent Application No. 17/143,770, filed on January 7, 2021, which is a continuation of U.S. Patent Application No. 17/071,239, filed on October 15, 2020, which is a continuation of U.S. Patent Application No. 16/925,667, filed on July 10, 2020, which is a continuation of U.S. Patent Application No. 13/427,582, filed on March. 22, 2012, which is a continuation of the ’816 application, filed on December 10, 2008, which is a continuation-in-part of the ’683 Application, filed on September 21, 2006. The ’216 patent also purports to claim the benefit of the ’126 provisional application, which was filed on October 6, 2005.

161. Asserted claim 1 of the ’216 patent is not entitled to a priority date earlier than December 10, 2008, which is the filing date of the ’816 application.

162. Asserted claim 1 of the ’216 patent is not is entitled to an invention date any earlier than the October 6, 2005 filing date of the ’126 provisional application.

163. The documents and publications available to a person of ordinary skill as of the ’216 patent’s earliest priority date of December 10, 2008 and earliest invention date of October 6, 2005 demonstrate the relevant state of the art applicable to the ’216 patent.

164. Hunt 598 discloses "[a] powder pharmaceutical composition comprising: a botulinum toxin, wherein the botulinum toxin is a type A serotype; [and] a surfactant … wherein: the composition is suitable for intramuscular or subcutaneous injection following reconstitution with sterile normal saline or water; [and] the composition is animal protein free," as recited in claim 1 of the '216 patent.

165. Hunt 598 discloses Formulations B, C, and E comprising botulinum toxin type A that had a retained potency of 95%, 97%, and 99%, respectively, after storage for six months at below freezing temperature.

166. Asserted claim 1 of the '216 patent is invalid as obvious under 35 U.S.C. § 103 in view of the combination of Hunt 598 and Johnson 468, when viewed from the perspective of a person of ordinary skill in the art.

167. A person of ordinary skill in the art would have been motivated to add a buffer and trehalose to Hunt 598's compositions with a reasonable expectation of success.

168. A person of ordinary skill in the art would have been motivated to combine prior-art elements to arrive at the subject matter claimed in asserted claim 1 of the '216 patent.

169. A person of ordinary skill in the art would have had a reasonable expectation of success when combining prior-art elements to arrive at the subject matter claimed in asserted claim 1 of the '216 patent.

170. There are no objective indicia showing that asserted claim 1 of the '216 Patent would not have been obvious. There are no objective indicia of non-obviousness having a nexus to asserted claim 1 of the '216 patent.

171. There are no unexpected results, long-felt unmet need, industry praise, or skepticism for the subject matter claimed in asserted claim 1 of the '216 patent.

172. DAXXIFY®'s performance in the market does not establish that the subject matter claimed in claim 1 of the '216 patent is a commercial success supporting non-obviousness.

173. The proprietary RTP004 peptide in Revance's DAXXIFY® product contributes to DAXXIFY®'s duration of action. The proprietary RTP004 peptide in Revance's DAXXIFY® product is not claimed in the '216 patent.

174. The '216 patent does not identify or describe the botulinum toxin formulations covered by its claims as having a longer duration of action.

175. There is no record evidence that practicing the claimed subject matter of the '216 patent, by itself, results in a product with a longer duration of action than any other botulinum toxin product.

## VI. DESIGN-AROUND

268. Acceptable non-infringing design-around alternatives to the asserted patents were available to Revance as of September 2011 and beyond.

269. The use of casein hydrolysate in the fermentation media would design around the '740 patent and the '748 patent.

270. The use of 0.05% w/v human serum albumin in the drug substance tube would design around the '878 patent and the '216 patent.

271. The use of human serum albumin in the drug product would design around the '878 patent and the '216 patent.

272. The additional cost to replace 1 kilogram of animal-product free, plant protein (e.g., [redacted]) with 1 kilogram casein hydrolysate in the fermentation media in 2011, 2019, or 2022 would have been no more than $33.54 per fermentation run.

273. The additional cost to replace 1 kilogram of animal-product free, plant protein (e.g., [redacted]) with 1 kilogram casein hydrolysate in the fermentation media in 2011, 2019, or 2022 would have been no more than $\$1x10^{-6}$ per injectable drug product vial.

274. The additional cost to add 0.05% w/v human serum albumin per drug substance tube in 2011, 2019, or 2022 would have been no more than $10 ($1,000/25 mg, times 0.25 mg/drug substance tube).

275. The additional cost to add 0.05% w/v human serum albumin per drug substance tube in 2011, 2019, or 2022 would have been no more than $0.000034 per injectable drug product vial.

276. From a regulatory perspective, it would have taken Revance, in 2019, less than about 11 months to implement and test a design-around for the ’740 and ’748 patents—less than six months to implement adding more than 1% by weight of commercially available animal protein into the fermentation culture medium, approximately another 3 months to prepare PPQ batches, and another 2 months to analyze the PPQ batches. The design-around would cost approximately $2.2 million to $2.6 million. If Revance were to implement the same design-around in 2011, it would not have affected Revance’s development timeline or budget.

277. From a regulatory perspective, it would have taken Revance, in 2019, about 11 months to implement and test a design-around for the ’878 and ’216 patents—about 6 months to implement adding HSA to the drug substance after toxin purification, approximately another 3 months to prepare PPQ batches, and another 2 months to analyze the PPQ batches. The design-around would cost approximately $2.2 million to $2.6 million. If Revance were to implement the same design-around in 2011, it would not have affected Revance’s development timeline or budget.

278. From a regulatory perspective, if Revance, in 2019, were to implement the design-around solutions for each of the ’740, ’748, ’878, and ’216 patents, the associated testing would be conducted in parallel, as well as the manufacture of PPQ batches, and preparation of associated regulatory documents. Therefore, the time to implement both design-around solutions would be approximately 11 months, including the time to prepare associated regulatory documents.

## VII. DAMAGES AND RELIEF

279. Plaintiff has not established demand for DAXXIFY® or BOTOX®.

280. Plaintiff cannot establish the absence of acceptable non-infringing alternatives to the ’740 and ’748 patents.

281. Plaintiff cannot establish the absence of acceptable non-infringing alternatives to the ’878 and ’216 patents.

282. September 2011 is the correct hypothetical negotiation date. In view of the Court ruling that “the hypothetical negotiation that [sic] did not occur in 2011” (Oct. 30 Hr’g Tr. 185:9–186:5), however, Revance agrees to use the December 2022 hypothetical negotiation date for the trial in this case. Revance fully reserves its right to raise in any appeal whether 2011 is the correct negotiation date in this case.”

283. Allergan seeks damages beginning when Revance launched DAXXIFY® for commercial sale in December 2022. *See* Oct. 30 Hr’g Tr. 176:23–25 (“We’re only asserting infringement and damages of batches that were sold.”); *see also id.* at 180:2–16.

284. The appropriate hypothetical negotiation date for a reasonable royalty is not June 2019 because the conduct Allergan accuses is protected by Safe Harbor.

285. Plaintiff has not properly apportioned its damages claims for the ’740 and ’748 patents.

286. Plaintiff has not properly apportioned its damages claims for the ’878 and ’216 patents.

287. If there were no available, acceptable non-infringing alternatives to the asserted patents as of the hypothetical negotiation date, Plaintiff’s proposed royalty rate at the hypothetical negotiation is unreasonably high.

288. If there were available, acceptable non-infringing alternatives before June 2019, the reasonable royalty rate would be in the form of a one-time lump sum payment.

289. If damages are awarded against Revance, the damages award should not be enhanced by the Court.

290. If damages are awarded against Revance, the rate of prejudgment interest and whether it should be compounded would be determined by the Court.

291. The costs to be awarded to the prevailing party need to be determined by the Court.

292. Whether this case is exceptional in the favor of either party and whether either party is entitled to attorneys’ fees are issues for the Court.

293. If any asserted claim is found to be valid and infringed, Plaintiff is not entitled to injunctive relief.

# Exhibit 3-A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Exhibit 3-A to Pretrial Order**

**Plaintiff Allergan's Statement of Issues of Law**
**<u>that Remain to be Litigated (*See* D. Del. LR 16.3(c)(5))</u>**

## I. Reservation of Rights

1. By making these disclosures, Allergan does not agree to take on the burden of proof for any issue on which Revance bears the burden of proof.

2. This Statement of Issues of Law that Remain to Be Litigated ("Statement") is based on the current status of the case and the Court's rulings to date.[1]

3. The following list of issues of law is not exhaustive, and Allergan reserves the right to prove, in accordance with the applicable burdens, any matters identified in its pleadings, contentions, interrogatory responses, expert reports, and/or dispositive motions.

[1] This Statement was made after Allergan Pharmaceuticals Ireland Unlimited Company ("Allergan Ireland" was dismissed. Because of that dismissal, Allergan is not currently seeking lost profits damages. Allergan reserves the right to revise Exhibit 3-A if the Court grants Allergan's currently pending motion for reconsideration of Order dismissing Allergan Ireland (D.I. 561), including to add statements related to Allergan Ireland and lost profits damages.

4. This Statement is based on Allergan's current understanding of the arguments and theories that Revance is likely to proffer in attempting to prove invalidity of the asserted patent claims based on alleged obviousness, in raising its defense of alleged safe harbor, and in response to Allergan's request for monetary damages due to Revance's patent infringement. To the extent Revance intends or attempts to introduce different or additional legal arguments, Allergan reserves the right to supplement this Statement and contest and otherwise respond to those legal arguments, and to present any and all rebuttal evidence in response to those arguments.

5. Allergan reserves the right to contest and otherwise respond to legal issues raised by Revance even if not specifically set forth below.

6. By providing this Statement, Allergan does not concede that all of the recited issues are appropriate for trial. In particular, Allergan does not waive any of its motions *in limine*, *Daubert* motions, or motions for summary judgment, which would render some or all of these issues moot if granted.

7. Should the Court determine that any issue identified below is more appropriately considered an issue of fact, Allergan incorporates such issues by reference in its Statement of Issues of Fact that Remain to Be Litigated (Exhibit 2-A).

8. To the extent that Allergan's Statement of Issues of Fact that Remain to be Litigated contains issues that the Court deems to be issues of law, those issues are incorporated herein by reference.

9. Allergan reserves the right to revise or supplement this trial witness list consistent with the Pretrial Order, the applicable rules, or as otherwise permitted by the Court, including

based on any parties' pretrial exchanges, any pretrial rulings by the Court, or as otherwise necessary.

## II. Infringement

### A. Issues to Be Litigated[2]

10. Whether Revance infringes claim 8 of the '740 patent, either literally or under the doctrine of equivalents.

11. Whether Revance infringes claim 8 of the '748 patent, either literally or under the doctrine of equivalents.

12.

13. Whether Revance infringes claim 6 of the '878 patent, either literally or under the doctrine of equivalents.

14. Whether Revance infringes claim 1 of the '216 patent, either literally or under the doctrine of equivalents.

### B. Legal Authority

15. 35 U.S.C. § 271(a) states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

16. 35 U.S.C. § 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."

17. 35 U.S.C. § 271(c) states that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture,

[2] Allergan provides this list of infringement issues to be litigated in view of the parties' stipulations (*see* D.I. 350 ¶ 3, D.I. 449 ¶ 3).

combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

18. 35 U.S.C. § 271(g) states, *inter alia*, that "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or used of the product occurs during the term of such process patent." *See, e.g.*, *Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Ltd.*, Case No. 17-313, 2018 WL 834583, at *8-9 (D. Del. Feb. 12, 2018) (recognizing § 271 imposes liability for sale of product resulting from a patented process).

19. The patent infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

20. The first step is to define the disputed the terms of the patent consistent with how those terms would be understood by a person of ordinary skill in the art. *Id.; Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

21. The second step in the infringement analysis is to compare the accused product or method with the properly construed claims. *Markman*, 52 F.3d at 976; *see generally* 35 U.S.C. § 271.

22. Allergan bears the burden to prove by a preponderance of the evidence that each and every limitation set forth in an asserted claim appears in the accused product or method, either literally or under the doctrine of equivalents. *See, e.g.*, *Amgen Inc. v. Hospira, Inc.*, 944

F.3d 1327, 1335-36 (Fed. Cir. 2019); *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005); *Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).

## III. **Invalidity**

### A. **Issues to Be Litigated**

23. Whether Revance can prove by clear and convincing evidence that any of the asserted patent claims are invalid for obviousness under 35 U.S.C. § 103, including in view of the objective indicia of commercial success, unexpected results, copying, long-felt need, industry praise, and/or skepticism.

24. Whether claim 8 of the ’740 patent is invalid under 35 U.S.C. § 103 based on the following alleged obviousness ground:

a. Obviousness in view of Malizio in combination with Gessler and FDA Blood and Blood Products Guidance 1999 and Smelt

25. Whether claim 8 of the ’748 patent is invalid under 35 U.S.C. § 103 based the following alleged obviousness ground:

a. Obviousness in view of Malizio in combination with Xiang 669

26. Whether claim 6 of the ’878 patent is invalid under 35 U.S.C. § 103 based on the following alleged obviousness ground:

a. Obviousness in view of Hunt 598 in combination with Johnson 468

27. Whether claim 1 of the ’216 patent is invalid under 35 U.S.C. § 103 based on the following alleged obviousness ground:

a. Obviousness in view of Hunt 598 in combination with Johnson 468

28. Whether Frevert qualifies as prior art to the asserted claims of the ’878 patent, or ’216 patent under 35 U.S.C. § 102 (Pre-AIA).

29. Whether Webb qualifies as prior art to the asserted claims of the ’878 patent, or ’216 patent under 35 U.S.C. § 102 (Pre-AIA).

## B. Legal Authority

30. 35 U.S.C. § 282 states that “[a] patent is presumed valid,” and that “[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.”

31. Revance bears the burden to prove invalidity by clear and convincing evidence. *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2015).

### 1. Obviousness

32. 35 U.S.C. § 103 states, *inter alia*, that “[a] patent for a claimed invention may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.”

33. The party asserting that a patent claim is invalid as obvious under 35 U.S.C. § 103 bears the burden to show by clear and convincing evidence that any references upon which it relies qualify as prior art. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996) (“[The accused infringer] must persuade the trier of fact by clear and convincing evidence that the [contested reference] was published prior to [the] invention date” to qualify as prior art).

34. The question of obviousness is resolved on the basis of underlying factual determinations, including (1) “the scope and content of the prior art;” (2) “difference between the prior art and the claims at issue;” (3) “the level of ordinary skill in the art;” and (4) “objective

evidence of nonobviousness," such as commercial success, unexpected results, copying, long-felt need, industry praise, and/or skepticism. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415-21 (2007).

35. Obviousness is judged from the perspective of a person having ordinary skill in the art at the time the alleged invention was made. *See KSR*, 550 U.S. at 415-21.

36. To prove obviousness, Revance bears the burden to show, by clear and convincing evidence, that "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *In re Magnum Oil Tools Int'l*, Ltd., 829 F.3d 1364, 1381 (Fed. Cir. 2016).

**2. <u>Conception and Reduction to Practice</u>**

37. If an alleged prior art document that was published before the filing date of a challenged patent claim is offered into evidence, then the patentee may seek to disqualify that document as prior art under 35 U.S.C. § 102(a) by "offer[ing] evidence showing he invented the subject matter of his patent before the publication date of the document." *Id.* at 1576-77.

38. The patentee can establish a date of invention before an alleged prior art date by proving "either that it reduced its invention to practice first or that it conceived of the invention first and was diligent in reducing it to practice." *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). That is, "[a]n alleged prior inventor would need to prove conception only if the alleged prior inventor had not successfully reduced the invention to practice before the critical date . . . ." *Id.*; *see also Medtronic, Inc. v. Teleflex Life Sci. Ltd.*, 86 F.4th 902, 905-06 (Fed. Cir. 2023) ("A patent owner may antedate an asserted prior art patent by showing conception of the claimed invention prior to the critical date and either actual reduction to practice prior to the reference's critical date *or* 'reasonably continuous diligence' in reducing the

invention to practice until its effective filing date.") (emphasis in original); *see also Johns Hopkins Univ. v. 454 Life Sci. Corp.*, 230 F. Supp. 3d 357, 381-82 (D. Del. 2017).

39. "Conception" of an invention is "the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention." *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). That said, an "inventor need not know that his invention will work for conception to be complete." *Id.* Moreover, conception of the full scope of a claim is not required. *See Oka v. Youssefyeh*, 849 F.2d 581, 584 (Fed. Cir. 1988). Instead, "conception of a species within a genus may constitute conception of the genus." *Id.*

40. While an inventor's testimony is important evidence of conception, corroboration of such testimony with other evidence is necessary. *See NFC Tech., LLC v. Matal*, 871 F.3d 1367, 1371 (Fed. Cir. 2017). "[T]here is no particular formulation that an inventor must follow in providing corroboration," and instead, courts apply "a flexible 'rule of reason' that considers all 'pertinent evidence'" in determining conception. *Plexxikon Inc. v. Novartis Pharm. Corp.*, 631 F. Supp. 3d 823, 836 (N.D. Cal. 2022) (quoting *Singh v. Brake*, 317 F.3d 1334, 1341 (Fed. Cir. 2003)); *see also E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1076 (Fed. Cir. 2019) ("The law requires only that the corroborative evidence, including circumstantial evidence, support the credibility of the inventors' story."). Corroborating evidence of an inventor's conception of the claimed invention may come in many forms. "The most definitive corroboration of conception" is a showing of "reduction to practice." *See Burroughs Wellcome*, 40 F.3d at 1229.

41. Actual "reduction to practice" can be demonstrated by showing that the inventor (1) "constructed an embodiment or performed a process that met all the [claimed] limitations of the [invention]; and (2) . . . determined that the invention would work for its intended purpose."

*Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). In the absence of a reduction to practice, documentary or physical evidence created contemporaneously with the inventive process generally provides the most reliable proof of conception. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); *see, e.g., Johns Hopkins*, 230 F. Supp. 3d at 381-82 (laboratory notebooks sufficient to corroborate inventor's conception); Plexxikon, 631 F. Supp. 3d at 837 (inventor emails with staff sufficient to support corroboration of conception); *E.I. du Pont De Nemours*, 921 F.3d at 1076 (same).

42. While "[r]eliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention," *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002), that does not mean that "corroboration *must* come in the form of contemporaneous records," *Plexxikon*, 631 F. Supp. 3d at 838 (emphasis in original). Documentary evidence post-dating conception may also be considered, so long as there is no suggestion that the evidence was created solely for the litigation. *See, e.g., id.; Johns Hopkins*, 230 F. Supp. 3d 357, 383 (D. Del. 2017) (confirming that, while gene sequencing "was not completed on [the conception date]," information post-dating conception nonetheless provided evidence of the "the ultimate goal" of the scientists, and thus corroborated conception).

43. Finally, courts have explained that, under the "rule of reason" test, a party seeking to corroborate conception of a claimed invention need not show that every recited claim element is present in a single embodiment. *See E.I. du Pont de Nemours*, 921 F.3d at 1077 (finding corroboration "[e]ven though no single independent document precisely shows the" claimed invention); *see also Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014) (finding sufficient corroboration although "none of the corroborating evidence constitute[d] definitive

proof of [the inventor's] account or disclose[d] each claim limitation as written" because "the corroboration requirement has never been so demanding.").

## IV. Damages

### A. Issues of Be Litigated

44. Whether Allergan is entitled to damages under 35 U.S.C. § 284.

45. What is the amount adequate to compensate Allergan for Revance's patent infringement, assuming that Revance is found liable for infringement of any asserted claims that are not found to be invalid.

46. Whether Allergan is entitled to a judgment and order requiring Revance to give an accounting of all infringing use, distribution, sales, and revenues, together with prejudgment and post-judgment interest from the date of first infringement of the asserted claims under 35 U.S.C. § 284 and 28 U.S.C. § 1961.

### B. Legal Authority

47. 35 U.S.C. § 284 states that a patentee shall be awarded "damages adequate to compensate for infringement, but in no event will these damages be less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

48. Allergan bears the burden of proving the amount of damages to which it is entitled by a preponderance of the evidence. *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

49. Damages for patent infringement pursuant to 35 U.S.C. § 284 may be in the form of lost profits and/or a reasonable royalty.

50. To recover damages in the form of lost profits for patent infringement, the patentee must show a causal relation between the infringement and its loss of profits. *See, e.g.*,

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284-86 (Fed. Cir. 2017) ("There is no particular required method to prove but for causation."); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). That is, a patentee can prove entitlement to lost profits by showing a reasonable probability that "but for" the infringing activity, the patentee would have made the infringer's sales. *See, e.g.*, *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

51. To recover damages in the form of a reasonable royalty for patent infringement, the plaintiff may put forth evidence based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). While a specific methodology for calculating a reasonable royalty is not required, courts typically rely upon the factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *See also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("[E]stimating a 'reasonable royalty' is not an exact science. . . . [T]here may be more than one reliable method for estimating a reasonable royalty."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2014). The "hypothetical-negotiation approach to calculating reasonable-royalty damages 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1375-76 (Fed. Cir. 2017) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)); *Boston Sci. Corp. v. Cordis*

*Corp.*, 777 F. Supp. 2d 783, 792 (D. Del. 2011) (noting the date of hypothetical negotiation may be determined as a matter of law).)

52. 35 U.S.C. § 284 further provides for enhanced "damages up to three times the amount found or assessed." *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 101 (2016), *rev'd on other grounds*, 138 S. Ct. 2129 (2018) (the Supreme Court stating that "we eschew any rigid formula for awarding enhanced damages under § 284."); *Read Corp. v. Portec Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (listing exemplary considerations for enhancement); *iFIT Inc. v. Peloton Interactive, Inc.*, Case No. 21-507-RGA, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) ("I am not prepared to say that a finding of willfulness at trial is an absolute prerequisite to an award of enhanced damages."). A plaintiff must prove enhanced damages by a preponderance of the evidence. *See Halo*, 136 S. Ct. at 1934.

## V. Attorneys' Fees, Interest, and Costs

### A. Issues to Be Litigated

53. What is the amount of costs that should be awarded to Allergan as the prevailing party.

54. Whether Allergan is entitled to a judgment and order that this is an exceptional case within the meaning of 35 U.S.C. § 285, and that Allergan is thus entitled to its costs, enhanced damages, and reasonable attorneys' fees.

### B. Legal Authority

55. 35 U.S.C. § 285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

56. To be a "prevailing party," a party "must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment."

*Parallel Iron LLC v. NetApp Inc.*, Case No. 12-769-RGA, 2014 WL 4540209, at *3 (D. Del. Sept. 12, 2014).

57. "An 'exceptional' case, then, is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case or the unreasonable manner in which the case was litigated.)" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion." *Id.*

58. The prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

59. "Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993). Courts in this District routinely award post-judgment interest in patent infringement cases. *See nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest for patent infringement).

60. Federal Rule of Civil Procedure 54 states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Supreme Court has explained that "prejudgment interest should

ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983); *see also* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Prejudgment interest is not a penalty but "serves to make the patent owner whole, for damages properly include the foregone use of money of which the patentee was wrongly deprived." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). Accordingly, awarding "prejudgment interest is the rule, not the exception." *Id.* "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus., Inc. v. ROL Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988).

61. Pursuant to Federal Rule of Civil Procedure 54(d), costs should be allowed to the prevailing party. Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See also* D. Del. LR 54.1.

* * *

# EXHIBIT 3-B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants/Counterclaim Plaintiffs. | C.A. No. 21-1411-RGA-LDH |

**EXHIBIT 3-B: DEFENDANTS' AMENDED STATEMENT OF ISSUES OF LAW TO BE LITIGATED**

Defendants Revance Therapeutics, Inc. ("Revance") and Ajinomoto Althea, Inc. ("Ajinomoto") (collectively, "Defendants") respectfully submit this Statement of Issues of Law to be Litigated based on Defendants' claims and defenses, Defendants' current understanding of Plaintiffs' claims and defenses, and the proceedings in this action to date. Defendants' statement is based upon the current status of the case and the Court's current rulings. To the extent that Defendants' statement of the issues of fact that remain to be litigated (Exhibit 2-B) contains issues of law, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of fact, Defendants incorporate such issue by reference into Exhibit 2-B.

By including an issue herein, Defendants do not assume the burden of production or persuasion with regard to that issue. Defendants reserve the right to revise this statement in light of the Court's rulings, in response to Plaintiffs' positions, or as otherwise may be

appropriate. Defendants will include in their proposed jury instructions their positions on how the jury should be instructed on the law relevant to this case. The following statements are not exhaustive, and Defendants reserve the right to prove any matters identified in their pleadings, discovery responses, including their contentions, and/or expert reports and depositions. In addition, the authority cited herein is illustrative and not exhaustive, Defendants reserve the right to rely on authority not cited in this statement. Moreover, Defendants also intend to offer evidence as to the issues of fact and issues of law identified in this Joint Pretrial Order. Defendants reserve the right to modify or supplement this statement as part of the meet and confer process leading up to trial, in response to Plaintiffs' pretrial disclosures and objections, by agreement with Plaintiffs, and/or in response to any pretrial ruling or orders from the Court.

Defendants object to Plaintiffs presenting any evidence of infringement, validity, or other arguments or opinions that they have not properly preserved in their complaint, disclosed in their discovery responses or their expert reports, and/or any infringement, validity, or other arguments or opinions precluded by the Court. Defendants intend to offer evidence to rebut evidence offered by Plaintiffs, and to argue that Plaintiffs are precluded from offering evidence in support of theories and claims not adequately disclosed in accordance with the Scheduling Orders (D.I. 54, D.I. 75, D.I. 265). Defendants incorporate by reference their expert reports and depositions in support of any proof to be presented by expert testimony. Defendants reserve the right to rely upon the legal authorities cited by Plaintiffs in their corresponding issues of law.

## I. NON-INFRINGEMENT

1. The jury may be asked to decide whether Defendants directly infringe claim 8 of the '748 patent.[1]

2. "Direct infringement requires proof by preponderant evidence that the defendant performs (if a method claim) or uses (if a product claim) each element of a claim, either literally or under the doctrine of equivalents." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). As a result, "failure to meet a single limitation is sufficient to negate infringement of the claim." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991); *Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004) (same).

3. The patentee bears the burden of proving infringement by a preponderance of the evidence, i.e., that it is more likely than not that an accused product embodies all limitations of the claim. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Nuance Commc'ns Inc. v. Tellme Networks Inc.*, 707 F. Supp. 2d 472, 481 (D. Del. 2010). "Infringement is a question of fact." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013); *see Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001).

---

[1] Plaintiffs never raised any infringement theory under 35 U.S.C. §271(g) as it does not appear in any complaint, any infringement contentions that Plaintiffs have served, or in any of Plaintiffs' infringement expert reports. Defendants address §271(g) herein out of an abundance of caution and to avoid any waiver because it was first raised in Plaintiffs' Statement of Issues of Law to be Litigated, but Defendants maintain their position that infringement under §271(g) is not a proper issue in this action and reserve all rights.

4. For dependent claims, "'[o]ne who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.'" *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (quoting *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989)).

5. To prove direct infringement of a claim in a patent, a patentee must show that an accused product meets every limitation of the claim. *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005). A two-step analysis is applied to determine infringement: first, the court construes the asserted claims to determine their meaning and scope, and second, the fact finder compares the accused product to the properly construed claims. *Nuance Commc'ns*, 707 F. Supp. 2d at 480–81.

6. Finally, "an invalid patent cannot be infringed." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015). "[I]f at the end of the day, an act that would have been an infringement . . . pertains to a patent that is shown to be invalid, there is no patent to be infringed," and therefore "there is no liability." *Id.*; *see also United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023) ("Because unpatentable or invalid claims cannot be infringed the issue of infringement of claims 1–3 of the '066 patent has been rendered moot.") (internal citations omitted); *Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010) ("There can be no infringement of claims deemed to be invalid."); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005) ("Because the claims in suit are invalid, we need not visit the question of whether the district court erred in determining that the claims were not infringed."); *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 628 (Fed. Cir. 1984) ("[T]he issue of infringement is now moot. Durham can incur no liability for

‘infringement’ of invalid claims.”); *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) (“The claim being invalid there is nothing to be infringed.”); *see also* 35 U.S.C. § 282.

7. In order to be liable as an infringer under § 271(b), the patentee must prove the defendant “actively and knowingly aid[ed] and abett[ed] another’s direct infringement.” *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). This liability may arise “if, but only if, [there is] direct infringement*.” Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). Moreover, “a finding of induced infringement requires actual inducement,” in that “to prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants’ actions led to direct infringement of the [patent-in-suit].” *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016).

8. “Although section 271(b) does not use the word ‘knowing,’ the case law and legislative history uniformly assert such a requirement.” *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). “Liability for inducing infringement attaches only if the defendant knew of the patent and that ‘the induced acts constitute patent infringement.’” *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). It “must be established that the defendant possessed specific intent to encourage another’s infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement.” *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990).

9. The patentee can only recover damages for the number of actual instances of direct infringement it can prove Defendant’s inducing activity caused. *See e.g. Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334–35 (Fed. Cir. 2009) (Holding Plaintiff failed to meet burden showing the extent to which its patent was used to support damages).

Hypothetical direct infringement does not suffice for induced infringement patentee must prove that the accused conduct "necessarily infringe[s]" the asserted patent or identify "a specific instance of direct infringement and restrict its suit to liability stemming from that specific instance." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275–76 (Fed. Cir. 2004).

10. To establish contributory infringement, "the patent owner must show . . . 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). "Both induced and contributory infringement require knowledge of the asserted patent" and "knowledge of the patent [] infringement." *Cleveland Med. Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4, 10 (D. Del. 2023). "The mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement." *Dynacore Holdings*, 363 F.3d at 1275. "Unless a commodity 'has no use except through practice of the patented method,' the patentee has no right to claim that its distribution constitutes contributory infringement." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984).

11. A defendant may be liable for infringement under 35 U.S.C. § 271(g) only if the "patentee establish[es], inter alia, that an accused infringer imported, offered to sell, sold, or used a product made by a process falling within the scope of one or more claims of the patentee's United States patent." *Novo Nordisk of North America, Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367–68 (Fed. Cir. 1996). This liability covers only a "physical article that was 'manufactured.'" *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1377–78 (Fed. Cir. 2003). Further, an article made by a patented process is not considered infringing if "it is materially changed by

subsequent processes." 35 U.S.C. § 271(g)(1). Courts look "to the substantiality of the change between the product of the patented process and the product that is being imported." *Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1573 (Fed. Cir. 1996). For instance, a product is materially changed when it "differ[s] significantly in their structure and properties, including their biological activity," from the patented process. *Id.* at 1571. Alternatively, the product will not be considered infringing where it is a "trivial and nonessential component of another product." *Id.* at 1572. There is no set test for whether the component is trivial and nonessential; rather it is judged by "proximity to the product of the patented process on a case-by-case basis." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1561 (Fed. Cir. 1996).

## II. INVALIDITY

12. The jury will be asked to decide whether the '216 and '878 patents are entitled to a priority date earlier than is listed on the face of the respective patent. The jury will also be asked to decide whether claim 8 of the '740 patent; claim 8 of the '748 patent; claim 6 of the '878 patent; and claim 1 of the '216 patent are invalid as obvious.

13. All patents are presumed valid. *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) ("It is black-letter law that a patent is presumed valid."). Defendants bear the burden of proving its invalidity defenses by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). Defendants bear this burden throughout the entirety of the litigation. *Novo Nordisk*, 719 F.3d at 1352 ("'[B]ecause the presumption of validity remains intact . . . throughout the litigation,' the burden of persuasion never shifts to the patentee . . . ."). "In contrast to . . . a 'preponderance of the evidence' standard" the clear and convincing evidence requires that the party bearing the burden "place in

the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

**A. Priority Date of Asserted Patents**

14. The patentee bears the burden of establishing entitlement to an earlier priority date. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375–76 (Fed. Cir. 2016).

15. "An application for patent for an invention disclosed in the manner provided by section 112(a) . . . in an application previously filed in the United States, or as provided by section 363 or 385, which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application." 35 U.S.C. § 120. "To be entitled to the priority date of the earlier-filed [patent]" Plaintiff must show that the earlier-filed patent "discloses what the [later-filed patent] claims." *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361 (Fed. Cir. 2018). Thus, to claim priority, "(1) the written description of the earlier filed application [must] disclose[] the invention claimed in the later filed application sufficient to satisfy the requirements of § 112; (2) the applications have at least one common inventor; (3) the later application is filed before the issuance or abandonment of the earlier filed application; and (4) the later application contains a reference to the earlier filed application." *In re NTP, Inc.*, 654 F.3d 1268, 1277 (Fed. Cir. 2011).

16. "To gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Hollmer v. Harari*, 681 F.3d 1351, 1355 (Fed. Cir. 2012). That written description must be laid out "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361,

1373 (Fed. Cir. 2005). "[I]f any application in the priority chain fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain." *Hollmer*, 681 F.3d at 1355. "[Nothing] permits incorporating a priority claim by reference," which conflicts with "the statute's purpose . . . to provide clear notice . . . of the patentee's claimed priority date." *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1320 (Fed. Cir. 2018).

17. The specification of the earlier-filed application must provide an enabling disclosure of that claimed invention. *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1324 (Fed. Cir. 2005) (declining a prior priority date for lack of enablement). "Under the enablement requirement, 'the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.'" *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017).

**B. Conception**

18. Conception is a question of law based on underlying facts. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). It is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quotations omitted). "An idea is sufficiently definite for conception 'when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.'" *Purdue Pharma L.P. v. Accord Healthcare Inc.*, 669 F. Supp. 3d 286, 311 (D. Del. 2023) (quoting *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1312 (Fed. Cir. 2011)). That means "conception must encompass all limitations of the claimed invention." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003).

19. "A conception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice." *Burroughs Wellcome*, 40 F.3d at 1229.

20. Conception cannot be proved by inventor testimony and documents alone; it must be corroborated through other evidence. *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1295 (Fed. Cir. 2018). "[C]orroborating evidence is required." *See E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075–76 (Fed. Cir. 2019).

### C. Reduction to Practice

21. Section 102(g) requires that the "invention was made in this country," thus reduction to practice must have occurred in the United States. 35 U.S.C. § 102(g). "A process is reduced to practice when it is successfully performed." *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358, 383 (1928). Reduction to practice may be actual or constructive. *Cooper*, 154 F.3d at 1327.

22. "The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application." *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998).

23. For actual reduction to practice the "inventor must have (1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention would work for its intended purpose." *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1305 (Fed. Cir. 2012). "[T]here can be no actual reduction to practice if the constructed embodiment or performed process lacks an element recited in the count or uses an equivalent of that element." *Eaton v. Evans*, 204 F.3d 1094, 1097 (Fed. Cir. 2000). For an invention to have

worked for its intended purpose, "the inventor must have recognized that the tests were successful." *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 659 F.3d 1186, 1193–95 (Fed. Cir. 2011). "[C]orroboration of the existence of the [invention] is not sufficient . . . to establish corroboration of reduction to practice. It is also necessary to corroborate that the device worked for its intended purpose." *In re Garner*, 508 F.3d 1376, 1380–81 (Fed. Cir. 2007).

24. Actual reduction to practice must be proven by extrinsic admissible evidence. *Brown v. Barbacid*, 436 F.3d 1376, 1379 (Fed. Cir. 2006). "[A]n actual reduction to practice . . . must be corroborated by independent evidence," and whether the inventor's testimony is sufficiently corroborated is judged under the "rule of reason." *Cooper*, 154 F.3d at 1330. "Subsequent testing or later recognition may not be used to show that a party had contemporaneous appreciation of the invention. However, evidence of subsequent testing may be admitted for the purpose of showing that an embodiment was produced and that it met the limitations of the count." *Id.* at 1331.

**D. Obviousness**

25. Defendants bear the burden of demonstrating by clear and convincing evidence that any of the asserted patent claims are invalid as obvious. 35 U.S.C. § 103; 35 U.S.C. § 282.

26. Patent claims are invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405, 421 (2007).

27. The hypothetical person of ordinary skill is "presumed to know all the pertinent prior art, whether or not the applicant is actually aware of its existence." *In re Carlson*, 983 F.2d

1032, 1038 (Fed. Cir. 1992). The person of ordinary skill is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988). Thus, "the proper way to apply the 103 obviousness test . . . is to first picture the inventor as working in his shop with the prior art references– which he is presumed to know– hanging on the walls around him." *Application of Winslow*, 365 F.2d 1017, 1020 (C.C.P.A. 1966). A person of ordinary skill is a person of ordinary creativity, not an automaton. *KSR*, 550 U.S. at 421.

28. "A party seeking to invalidate a patent based on obviousness must demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). "Conclusive proof of efficacy is not necessary to show obviousness. All that is required is a reasonable expectation of success." *Hoffmann-La Roche Inc. v. Apotex Inc.*, 748 F.3d 1326, 1331 (Fed. Cir. 2014). "Instead of ascertaining what was subjectively obvious to the inventor at the time of invention, the court must ascertain what would have been objectively obvious to one of ordinary skill in the art at such time." *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 718 (Fed. Cir. 1991).

29. An invention is obvious if "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 550 U.S. at 416. A critical issue is whether the "improvement is

more than the predictable use of prior art elements according to their established functions." *Id.* at 417. "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161–62 (Fed. Cir. 2007). But conclusory assertions or generalizations will not support a finding of obviousness. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1365–66 (Fed. Cir. 2014) (no obviousness where "an important structural limitation . . . is not evidently and indisputably within the common knowledge of those skilled in the art"); *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (rejecting expert testimony that it was common sense to add a claim element where "a key limitation . . . was missing from the prior art reference"); *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1308–09 (Fed. Cir. 2015) (affirming summary judgment of no invalidity where prior art did not disclose limitation).

30. Rather than applying "rigid preventative rules that deny factfinders recourse to common sense," courts must take a more "expansive and flexible approach" to determining whether an invention was obvious. *KSR,* 550 U.S. at 415, 421. Thus, "the legal determination of obviousness may include recourse to logic, judgment, and common sense[.]" *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239 (Fed. Cir. 2010). "[O]bviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007). "[E]xpectation of success need only be reasonable, not absolute." *Id.*

**E. Secondary Considerations**

31. The patent holder "may rebut a prima facie showing of obviousness with objective indicia of nonobviousness." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("If all of the factual disputes regarding the objective evidence resolve in favor of [plaintiff], it has presented a strong basis for rebutting the prima facie case [of obviousness]."). "Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013).

32. Objective evidence of non-obviousness requires proof of a "nexus" with the claims and must be commensurate in scope with the claims. *Wyers*, 616 F.3d at 1246; *Asyst Techs., Inc. v. Emtrak Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008). The patentee has the burden of production to show the required nexus between the objective indicia and the claimed invention. *Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*, 805 F.3d 1092, 1101–02 (Fed. Cir. 2015).

33. "[T]he presumption of nexus only applies when a product is 'coextensive' with a patent claim." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1371 (Fed. Cir. 2019). In order for a feature to be "coextensive" it is not sufficient that a "patent claim broadly covers the product." *Id.* at 1377–78. Rather, for a patent and product to be "coextensive," there can be no "unclaimed features . . . [that] materially impact the [product's] functionality." *Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc*., 24 F.4th 1406, 1417–19 (Fed. Cir. 2022). Where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions' . . . the secondary considerations are inadequate to establish

nonobviousness as a matter of law." *Wyers*, 616 F.3d at 1246 (quoting *KSR*, 550 U.S. at 417). "[S]econdary considerations of nonobviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Id.*; *see also Leapfrog*, 485 F.3d at 1162 ("[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion [of obviousness].").

**a. Commercial Success**

34. For commercial success to be a probative secondary consideration, the patentee must possess "evidence of (1) commercial success, and (2) some causal relation or 'nexus' between an invention and commercial success of a product embodying that invention." *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.,* 923 F.Supp.2d 602, 677 (D. Del. 2013). A "nexus must be established between the merits of the claimed invention and evidence of commercial success before that evidence may become relevant to the issue of obviousness." *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004).

35. A prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988); *see also Geo. M. Martin Co. v. Alliance Machine Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010). "[I]f the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant." *Ormco*, 463 F.3d at 1312.

36. The patentee "must offer proof 'that the sales were a direct result of the unique characteristics of the claimed invention—as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter.'" *In re DBC*, 545 F.3d 1373, 1384 (Fed.

Cir. 2008) (quoting *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996)); *see also Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005). "[I]nformation solely on numbers of units sold is insufficient to establish commercial success." *In re Baxter Travenol Lab'ys*, 952 F.2d 388, 392 (Fed. Cir. 1991).

**b. Long-Felt Need**

37. "[L]ong-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem." *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993). The long-felt need must not have been satisfied by another before the invention. *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1574-75 (Fed. Cir. 1992). The long-felt need should be driven by inadequacies in technical knowledge and not due to business-driven market forces that are unrelated to technical considerations. *Orthopedic Equipment Co., Inc. v. U.S.*, 702 F.2d 1005, 1013 (Fed. Cir. 1983).

**c. Copying**

38. "Not every competing product that arguably falls within the scope of a patent is evidence of copying. Otherwise every infringement suit would automatically confirm the nonobviousness of the patent. Rather, copying requires the replication of a specific product." *Iron Grip*, 392 F.3d at 1325. "[T]he copying inquiry involves a comparison of the competitor's product with the allegedly copied patented product, rather than the patent's claims, lest the 'separate infringement and copying inquiries [collapse] into a single analysis.'" *Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331 (Fed. Cir. 2023). Because copying is different from infringement, to find copying, there must be evidence that others duplicated the patentee's work based on access to that work. *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133 (Fed. Cir. 2019).

39. “Copying is a question of fact.” *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1336 (Fed. Cir. 2016).

40. “[A] showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling objective indicia of other secondary considerations.” *Sealy Tech., LLC v. SSB Manuf. Co.*, 825 F. App’x 801, 808 (Fed. Cir. 2020) (quoting *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000)); *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1370 (Fed. Cir. 2011) (same). Moreover, evidence of copying is entitled to only “little weight” if the copier’s “effort to develop their own solution was not shown to have been extensive, its product is not identical to the claimed invention, and it vigorously denied infringement.” *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 317 (Fed. Cir. 1985).

**d. Unexpected Results**

41. “It is well settled that unexpected results must be established by factual evidence. Mere argument or conclusory statements in the specification does not suffice.” *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984). Such results must be “unexpected by one of ordinary skill in the art at the time of [the] application.” *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997). “When an article is said to achieve unexpected (i.e. superior) results, those results must logically be shown as superior compared to the results achieved with other articles.” *In re De Blauwe*, 736 F.2d at 705. “To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention.” *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014).

42. Evidence of unexpected results must be "commensurate in scope" with the scope of the claim. *See In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983); *In re Dill*, 604 F.2d 1356, 1361 (C.C.P.A. 1979); *Asyst Techs.*, 544 F.3d at 1316; *In re Harris*, 409 F.3d 1339, 1343–44 (Fed. Cir. 2005); *In re Haase*, 542 F. App'x 962, 968–69 (Fed. Cir. 2013); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 965 (Fed. Cir. 2014); *In re Peterson*, 315 F.3d 1325, 1330–31 (Fed. Cir. 2003). "[W]hen unexpected results are used as evidence of nonobviousness, the results must be shown to be unexpected compared with the closest prior art." *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006). "The 'closest prior art' is the reference having the most 'in common' with the claimed invention." *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1365 (Fed. Cir. 2013) (Newman, J., concurring in part) (citing *In re Merchant*, 575 F.2d 865, 868–69 (C.C.P.A. 1978).

43. An unexpected result supports nonobviousness only when that result is "'different in kind and not merely in degree from the results of the prior art.'" *In re Huang*, 100 F.3d at 139 (quoting *In re Aller*, 220 F.2d 454, 456 (C.C.P.A. 1955)); *see also In re Merz*, 97 F.2d 599, 601 (C.C.P.A. 1938); *Bristol-Myers*, 752 F.3d at 977; *Hoffmann-La Roche*, 748 F.3d at 1334; *Galderma Lab'ys, L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013).

**e. Industry Praise**

44. "[A]n expert must establish a nexus between the industry praise and the patented technology." *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 650 (D. Del. 2014).

**f. Skepticism**

45. Evidence of industry skepticism is a question of fact that weighs in favor of non-obviousness. *WBIP*, 829 F.3d at 1335.

## III. DAMAGES AND RELIEF

46. If any patent is found to be infringed and not invalid, the jury may be asked to award damages. 35 U.S.C. § 284.

47. Proof of damages must be tied to the claimed invention. *LaserDynamics, Inc. v. Quanta Comput., Inc*., 694 F.3d 51, 67 (Fed. Cir. 2012). Damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

### A. Reasonable Royalty

48. The jury may be asked to determine a reasonable royalty award. 35 U.S.C. § 284; *VirnetX, Inc. v. Cisco Sys., Inc*., 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury").

49. "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Thus, a reasonable royalty is "the floor below which damages shall not fall." *Lucent*, 580 F.3d at 1324 (quotation and citation omitted). "The amount of damages based on a reasonable royalty is an issue of fact." *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1394 (Fed. Cir. 2003). "The burden of proving damages falls on the patentee." *Lucent*, 580 F.3d at 1324.

50. Reasonable royalty damages may be determined using a "hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010). "A reasonable royalty is based 'upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing

licensee.'" *St. Clair Intell. Prop. Consultants, Inc. v. Canon, Inc.*, No. Civ.A. 03-241 JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004) (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983)).

51. "In general, the date of the hypothetical negotiation is the date that the infringement began." *LaserDynamics*, 694 F.3d at 75. "The correct determination of [the hypothetical negotiation] date is essential for properly assessing damages." *Id.* (quoting *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003)). To determine the relevant date, the Court "presumes that the asserted patents are valid and infringed." *Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 413 (D. Del. 2018), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019).

52. "A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *ResQNet.com, Inc.*, 594 F.3d at 869; *see St. Clair Intell. Prop.*, 2004 WL 2213562, at *2. "In considering the fifteen *Georgia-Pacific* factors, it is presumed that the parties had full knowledge of the facts and circumstances surrounding the infringement at that time. Indeed, the basic question posed in a hypothetical negotiation is: if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?" *LaserDynamics*, 694 F.3d at 76.

53. The fifteen factors recited in *Georgia-Pacific* may assist in the determination of what constitutes a reasonable royalty. *ResQNet.com, Inc.*, 594 F.3d at 869 (discussing *Georgia–Pacific*, 318 F. Supp. at 1120. Those factors are:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
7. The duration of the patent and the term of the license.
8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.
10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.
11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.
12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
14. The opinion testimony of qualified experts.
15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120.

54. However, the *Georgia-Pacific* factors are nonexclusive. *Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011). Moreover, "in patent cases, damages experts routinely rely on facts and opinions provided by technical experts when rendering their damages analysis." *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS-CJB, 2015 WL 12731924, at *6 (D. Del. Nov. 4, 2015); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) (citing cases), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

55. Any evidence offered to support a reasonable royalty "must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement . . . ." *AstraZeneca*, 782 F.3d at 1343; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) ("A patentee is only entitled to a reasonable royalty attributable to the infringing features.").

56. The Federal Circuit has "consistently maintained that 'a reasonable royalty analysis requires a court to hypothesize, not to speculate[:] [T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place.'" *LaserDynamics*, 694 F.3d at 67 (quoting *ResQNet.com*, 594 F.3d at 869). "A damages theory must be based on 'sound economic and factual predicates.'" *LaserDynamics*, 694 F.3d at 67 (quoting *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)).

57. Damages may not be awarded for "items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." *Rite-Hite*, 56 F.3d at 1550. "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet.com*, 594 F.3d at 869.

58. "Supreme Court precedent . . . requires apportionment of the value of the patented technology from the value of" unpatented features and products. *Ericsson*, 773 F.3d at 1233. "When the accused infringing products have both patented and unpatented features, measuring [damages] requires a determination of the value added by such features." *Id.* at 1226. "[W]hen a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (quoting *AstraZeneca*, 782 F.3d at 1338). "[W]hen a *patent is for an improvement*, and not for an entirely new machine or contrivance . . . the patent holder should only be compensated for the approximate incremental benefit derived from his invention." *Ericsson*, 773 F.3d at 1233 (emphasis in original) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018) ("[A]pportionment was required to reflect the value of the patented technology compared to the value of the unpatented elements.").

59. The requirement that damages be apportioned to the value of the invention is a general rule to which "[t]he entire market value rule is a narrow exception." *See LaserDynamics*, 694 F.3d at 67. "[T]he entire market value rule ordinarily prohibits the presentation of evidence

to a jury that uses the entire market value of a multi-component product, which includes both patented and unpatented features, as the royalty base in calculating royalty damages." *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 514–15 (D. Del. 2017) (quoting *Ericsson*, 773 F.3d at 1226). The entire market value rule is properly invoked only where the patented feature was the "sole driver of customer demand or substantially creates the value of the component parts." *See LaserDynamics*, 694 F.3d at 66–67; *see also Power Integrations*, 904 F.3d at 977–80.

60. "When an [accused] infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low." *AstraZeneca*, 782 F.3d at 1334. The availability of an acceptable design-around is a consideration in determining a reasonable royalty rate as it impacts the economic incentives of the negotiating parties. *Id.* at 1334–35. "The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation." *Riles*, 298 F.3d at 1312.

**B. Prejudgment and Post-Judgment Interest**

61. Upon a finding of infringement, prejudgment interest may be awarded "'where necessary to afford the plaintiff full compensation for the infringement.'" *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020) (citations omitted). The rate of prejudgment interest and whether it should be compounded or not are matters for the Court's discretion. *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988); *Bio-Rad Lab'ys, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). Prejudgment interest must be based "only on the compensatory portion of the damages award," not on any enhanced damages awarded. *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1580 (Fed. Cir. 1991).

### C. Exceptional Case and Attorneys' Fees

62. The Court may award "reasonable attorney fees to the prevailing party" in an "exceptional" patent case. 35 U.S.C. § 285. To be "exceptional," a case must "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553–55 (2014). The Court must determine whether the case is exceptional "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*.

### D. Costs

63. "Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012). Under Federal Rule 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1) "uses the word 'costs' as a term of art, rather than to refer to all expenses a prevailing party may incur in a given action." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 458 (3d Cir. 2000). The categories of costs that are taxable are established by 28 U.S.C. § 1920, which provides for the taxation of the following items as costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

24936155.3

# EXHIBIT 4-A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Exhibit 4-A to Pretrial Order**

**Plaintiff Allergan's Brief Statement**
**of Intended Proofs (*See* D. Del. LR 16.3(c)(4))**

1. A statement of the issues that Plaintiff Allergan, Inc. ("Allergan") intends to prove at trial is set forth below ("Statement"), and is based on the current status of the case and the Court's rulings to date.[1]

2. By making these disclosures, Allergan does not agree to take on the burden of proof for any issue on which Revance bears the burden of proof.

3. The following list of issues of facts that remain to be litigated is not exhaustive, and Allergan reserves the right to prove, in accordance with the applicable burdens, any matters

[1] This Statement was made after Allergan Pharmaceuticals Ireland Unlimited Company ("Allergan Ireland" was dismissed. Because of that dismissal, Allergan is not currently seeking lost profits damages. Allergan reserves the right to revise Exhibit 4-A if the Court grants Allergan's currently pending motion for reconsideration of Order dismissing Allergan Ireland (D.I. 561), including to add statements related to Allergan Ireland and lost profits damages.

identified in its pleadings, contentions, interrogatory responses, expert reports, and/or dispositive motions, and in the accompanying statements of the facts and legal issues to be litigated at trial.

4. Allergan may also provide additional proof to rebut any proof offered by Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Service (collectively, "Revance") before and during trial, in response to rulings by the Court, or for other good cause.

5. This Statement is based on Allergan's current understanding of the arguments and theories that Revance is likely to proffer in attempting to prove invalidity of the asserted patent claims based on alleged obviousness, and in response to Allergan's request for monetary damages due to Revance's patent infringement. To the extent Revance intends or attempts to introduce different or additional legal arguments, Allergan reserves the right to supplement this Statement and contest and otherwise respond to those legal arguments, and to present any and all rebuttal evidence in response to those arguments.

6. Allergan reserves the right to contest and otherwise respond to fact and legal issues raised by Revance even if not specifically set forth below.

7. By providing this Statement, Allergan does not concede that all of the recited issues are appropriate for trial. In particular, Allergan does not waive any of its motions *in limine*, *Daubert* motions, or motions for summary judgment, which would render some or all of these issues moot if granted.

8. Should the Court determine that any issue identified below is more appropriately considered an issue of fact or law, Allergan incorporates such issues by reference in its Statement of Issues of Fact that Remain to be Litigated (Exhibit 2-A) and Statement of Issues of Law that Remain to Be Litigated (Exhibit 3-A).

9. Allergan reserves the right to revise or supplement this trial witness list consistent with the Pretrial Order, the applicable rules, or as otherwise permitted by the Court, including based on any parties' pretrial exchanges, any pretrial rulings by the Court, or as otherwise necessary.

## I. <u>Allergan's Infringement Claims</u>

10. Revance does not contest infringement of claim 8 of U.S. Patent No. 7,354,740 ("the '740 patent"), claim 6 of U.S. Patent No. 11,147,878 ("the '878 patent"), claim 1 of U.S. Patent No. 11,285,216 ("the '216 patent"), and claim 8 of U.S. Patent No. 11,203,748 ("the '748 patent") to the extent these claim are not proven invalid. (*See, e.g.*, D.I. 352; D.I. 449.)

## II. <u>Allergan's Entitlement to Damages, Fees, Interests, and Costs</u>

11. Allergan will present proof supporting damages of no less than a reasonable royalty in view of Revance's infringement.

12. Allergan will present proof that it is entitled to damages in the form of a reasonable royalty.

13. Allergan will present proof that it is entitled to enhanced damages.

14. Allergan will present proof that it is entitled to an order requiring Revance to give an accounting of all infringing sales and revenues, together with prejudgment and post-judgment interest from the date of first infringement of the asserted patents under 35 U.S.C. § 284 and/or 28 U.S.C. § 1961

15. Allergan will present proof that it is entitled to a judgment and order that this is an exceptional case within the meaning of 35 U.S.C. § 285, and that Allergan is thus entitled to its costs, enhanced damages, and reasonable attorneys' fees.

16. Allergan will present proof rebutting Revance's assertions, if any, concerning alleged noninfringing alternatives and/or design arounds.

## III. Revance's Invalidity Defenses

17. Revance bears the burden of proof to establish by clear and convincing evidence that any of the asserted claims are invalid.

18. Allergan will present proof rebutting Revance's assertion that the asserted claims are invalid for obviousness, including proof that a person of ordinary skill in the art would not have been motivated to combine the references relied on by Revance.

19. Allergan will present proof of at least the follow objective indicia of nonobviousness: commercial success, unexpected results, copying, long-felt need, industry praise, and/or skepticism.

20. To the extent Revance challenges the priority of any asserted claims of the '878, and/or '216 patent, Allergan will present proof that the challenges claims are entitled to the October 6, 2005 priority filing date of U.S. Provisional Application No. 60/725,126.

21. To the extent Revance seeks to invalidate any asserted claim of the '878, and/or '216 patent as obvious in view of WO2005/007185 ("Frevert") or WO2006/005910 ("Webb"), Allergan will present proof that the challenged claims are entitled to an invention date earlier than either reference.

* * *

# EXHIBIT 4-B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants/Counterclaim Plaintiffs. | C.A. No. 21-1411-RGA-LDH<br><br>[redacted] |

**EXHIBIT 4-B: DEFENDANTS' AMENDED STATEMENT OF INTENDED PROOFS**

Defendants Revance Therapeutics, Inc. ("Revance") and Ajinomoto Althea, Inc. ("Ajinomoto") (collectively, "Defendants") submit the following brief statement of what they intend to prove at trial. Defendants' statement is based on Defendants' claims and defenses, Defendants' current understanding of Plaintiff's claims and defenses, the proceedings in this action to date, the current status of the case, and the Court's current rulings.

Defendants reserve the right to supplement or revise this statement in response to Plaintiff's pretrial activities, any subsequent discovery, or any further decisions or orders of the Court. Defendants reserve the right to address additional issues not set forth herein to the extent they are raised in the parties' pending summary judgment motions, *Daubert* motions, or motions to strike, in any motion *in limine* that may be filed by the parties, or by Plaintiff at trial.

By including an issue herein, Defendants do not assume the burden of production or persuasion with regard to that issue. Defendants reserve the right to revise this statement in light

of the Court's rulings, in response to Plaintiff's positions, or as otherwise may be appropriate. The following statements are not exhaustive, and Defendants reserve the right to prove any matters identified in their pleadings, discovery responses, including their contentions, and/or expert reports and depositions.

Moreover, Defendants also intend to offer evidence as to the issues of fact and issues of law identified in this Joint Pretrial Order. Defendants reserve the right to modify or supplement this statement as part of the meet and confer process leading up to trial, in response to Plaintiff's pretrial disclosures and objections, by agreement with Plaintiff's, and/or in response to any pretrial ruling or orders from the Court.

Defendants object to Plaintiff presenting any evidence of infringement, validity, or other arguments or opinions that they have not properly preserved in their complaint, disclosed in their discovery responses or their expert reports, and/or any infringement, validity, or other arguments or opinions precluded by the Court. Defendants intend to offer evidence to rebut evidence offered by Plaintiff, and to argue that Plaintiff is precluded from offering evidence in support of theories and claims not adequately disclosed in accordance with the Scheduling Orders (D.I. 54, D.I. 75, D.I. 265). Defendants incorporate by reference their expert reports and depositions in support of any proof to be presented by expert testimony.

1. Defendants intend to rebut Plaintiff's allegations and evidence of infringement with respect to asserted claim 8 of U.S. Patent No. 11,203,748 ("the '748 patent").

2. Defendants intend to prove by clear and convincing evidence that asserted claim 8 of U.S. Patent No. 7,354,740 ("the '740 patent") is obvious under 35 U.S.C. § 103 in view of the combination of Gessler et al., "Production and purification of *Clostridium botulinum* type C and D neurotoxin," *FEMS Immunology and Medical Microbiology*, 24:361–67 (1999) ("Gessler 1999"), Guidance for Industry: Revised Precautionary Measures to Reduce the Possible Risk of Transmission of Creutzfeldt-Jakob Disease (CJD) and New Variant Creutzfeldt-Jakob Disease (nvCJD) by Blood and Blood Products (November 1999) ("FDA Guidance 1999"), and Smelt et al., "Growth and toxin formation by *Clostridium botulinum* at low pH values," *J. of Applied Bacteriology*, 52:75–82 (1982) ("Smelt 1982"), when viewed from the perspective of a person of ordinary skill in the art.

3. Defendants intend to prove by clear and convincing evidence that asserted claim 8 of the '748 patent is obvious under 35 U.S.C. § 103 in view of the combination of Malizio et al., "Purification of *Clostridium botulinum* Type A Neurotoxin," *Methods in Molecular Biology*, 145:27–39 (2000) ("Malizio") and U.S. Patent Application Publication No. 2005/0238669 A1 to Xiang et al. ("Xiang 669"), when viewed from the perspective of a person of ordinary skill in the art.

4. Defendants intend to prove that asserted claim 6 of U.S. Patent No. 11,147,878 ("the '878 patent"), and asserted claim 1 of U.S. Patent No. 11,285,216 ("the '216 patent") are not entitled to an effective filing date earlier than the December 10, 2008 filing date of U.S. Patent Application No. 12/331,816, to which the Asserted Claims purport to claim priority benefit.

5. Plaintiff bears the burden of establishing entitlement to an invention date before the effective filing date of the asserted patents. Defendants intend to rebut any attempt by Plaintiff to prove that asserted claim 6 of the ’878 patent, and asserted claim 1 of the ’216 patent are entitled to an invention date any earlier than October 6, 2005, the filing date of U.S. Provisional Application No. 60/725,126 to which those claims purport to claim priority benefit.

6. Defendants intend to prove by clear and convincing evidence that asserted claim 6 of the ’878 patent are obvious under 35 U.S.C. § 103 in view of the combination of U.S. Patent Application Publication No. 2003/0118598 (“Hunt 598”) and U.S. Patent No. 5,756,468 to Johnson et al. (“Johnson 468), when viewed from the perspective of a person of ordinary skill in the art.

7. Defendants intend to prove by clear and convincing evidence that asserted claim 1 of the ’216 patent is obvious under 35 U.S.C. § 103 in view of the combination of Hunt 598 and Johnson 468, when viewed from the perspective of a person of ordinary skill in the art.

8. Plaintiff bears the burden of establishing objective indicia of non-obviousness. Defendants intend to rebut any alleged objective indicia of non-obviousness, and intend to rebut any alleged nexus between any alleged objective indicia of non-obviousness and the asserted claims of Plaintiff’s asserted patents.

9. Defendants will demonstrate that Plaintiff has not established that practicing the claimed subject matter of any asserted claim of the ’740, ’748, ’878, and ’216 patents, by itself, results in a product with a longer duration of action than any other botulinum toxin product.

10. Defendants will demonstrate that acceptable, non-infringing design-around alternatives to the ’740, ’748, ’878, and ’216 patents were available to Revance as of September 2011 and/or June 2019.

11. Plaintiff bears the burden of establishing that, should any asserted claim of Plaintiff's asserted patents be found infringed and not invalid, they are entitled to damages. Defendants intend to rebut any allegation that Plaintiff would be entitled to any damages, including a reasonable royalty, enhanced damages, pre- or post-judgment interest, attorneys' fees, costs, or any other relief.

12. If any asserted claim is found to be infringed and not invalid, and if Plaintiff establishes that they are entitled to damages, Defendants will demonstrate that the appropriate amount of reasonable royalty compensation in this case, is, at most, the amount proposed by Defendants' damages expert.

13. Defendants preserve their own right to prove that this case is exceptional in Defendants' favor, and that as a result, Defendants are entitled to costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285, as well as to any other relief deemed just and proper by the Court, with pre- and post-judgment interest.

# EXHIBIT 5-A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Exhibit 5-A to Pretrial Order**

**Plaintiff Allergan's Trial Witness List (*See* D. Del. LR 16.3(c)(7))**

Plaintiff Allergan, Inc. ("Allergan") identifies the following witnesses that it may call live or by deposition at trial. This list is not a commitment that Allergan will call any particular witness at trial, or a representation that any witness listed is available or will appear for trial. The witnesses identified herein are generally listed in alphabetical order for organizational purposes.

## I. Reservation of Rights

1. Allergan reserves the right to modify this list in accordance with Fed. R. Civ. P. 26(a)(3), D. Del. LR 16.3, or in view of other events or changed circumstances that may occur before or during trial.

2. Allergan reserves the right to call live or by deposition any witness on its trial witness list.

3. Allergan reserves the right to call live or by deposition any witness on Revance's trial witness list, any witness that Revance represents it may bring to trial to provide live

testimony, any witness Revance represents it may call by deposition, and any witness identified by Revance who does not testify at trial.

4. Allergan reserves the right to introduce testimony of additional witnesses live or by deposition in rebuttal to, or to impeach, any witness called by Revance.

5. If any Allergan, Revance, or third-party witness does not testify live, Allergan reserves the right to introduce testimony from that witness through deposition.

6. Allergan reserves the right to call any witness, whether or not listed below, to establish authenticity and/or admissibility of any trial exhibit for which authenticity or admissibility is challenged by Revance.

7. Allergan reserves the right to object on any ground to the admissibility of the testimony of witnesses on Revance's trial witness list and move for the exclusion or limitation of such testimony.

8. Allergan reserves the right to revise or supplement this trial witness list consistent with the Pretrial Order, the applicable rules, or as otherwise permitted by the Court, including based on any parties' pretrial exchanges, any pretrial rulings by the Court, or as otherwise necessary.

## II. Expert Witnesses

Below are the expert witnesses Allergan may call as witnesses at trial:

1. Dr. Christian Schöneich (live)
2. Dr. Frank Gessler (live)
3. Dr. Daniela Drago (live)
4. Dr. Christine Siegwarth (live)

## III. Fact Witnesses

Below are the fact witnesses Allergan may call as witnesses at trial:

1. Wajdie Ahmad (by deposition)
2. Ronald Bates (intend to call live)
3. Ronald Broide (intend to call live)
4. Jill Carey (by deposition)
5. Jamie Gonzales (by deposition)
6. Terrence Hunt (intend to call live)
7. Stacey Klinkenborg (by deposition)
8. Chad Lindemann (by deposition)
9. Jason Paik (live and/or by deposition)
10. Edward Podraza (by deposition)
11. Jennifer Ton (by deposition)
12. Huong Tran (by deposition)[1]
13. Hui Xiang (by deposition)
14. Mung Bernardo (by deposition)
15. Bryan Bullock (by deposition)
16. Megan Clevenger (by deposition)
17. Michelle Frazier (by deposition)
18. Conor Gallagher (by deposition)
19. Maria Green (by deposition)
20. Robert Jones (by deposition)
21. Kellie Lao (by deposition)

---

[1] *See* Varughese Email to Minniti (Nov. 1, 2023); Minniti Email to Varughese (Oct. 31, 2023).

22. Allen Li (by deposition)

23. Curtis Ruegg (live)

24. Eric Sanders (by deposition)

25. Joanna Stebbins (by deposition)

26. Savitha Venkatesh (by deposition)

27. Roy Yoshimitsu (by deposition)

28. Maurice Mulders (by deposition)

* * *

# EXHIBIT 5-A-2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants/Counterclaim Plaintiffs, | C.A. No. 21-1411-RGA |

**<u>DEFENDANTS' OBJECTIONS TO ALLERGAN'S TRIAL WITNESS LIST</u>**

Defendants Revance Therapeutics, Inc. ("Revance") and PCI San Diego, f/k/a Ajinomoto Althea, Inc. (collectively, "Defendants") hereby object to the witnesses identified by Plaintiff Allergan, Inc. ( "Allergan") for the reasons set forth below.

Defendants reserve to right to raise these or other objections to any of Allergan's witnesses at trial.

1. Defendants object to Allergan's Trial Witness List as excessive, and in violation of the Federal Rules of Civil Procedure and Local Rules, as it does not fairly disclose who Allergan intends to call at trial. Specifically, for a five-day jury trial (when Allergan will be allotted no more than 50% of trial time), Allergan has designated 34 witnesses on its "May Call" list. Allergan has not designated any witness on its "Will Call" list. Defendants reserve the right

to seek relief from the Court should Allergan fail to provide adequate disclosure of the witnesses it will actually call sufficiently in advance of trial.

2. Defendants object to the presentation of deposition testimony to the extent it is impermissible under Federal Rule of Civil Procedure 32. Defendants reserve the right to provide objections and counter-designations should Allergan be permitted to introduce testimony for such witnesses.

3. Defendants object to the presentation of deposition testimony to the extent the witness is not unavailable under Federal Rule of Civil Procedure 32 or Federal Rule of Evidence 804.

4. Defendants object to the inclusion of objections or colloquy made by counsel in any designated deposition testimony.

5. Defendants object to any witness designated by Allergan that is the subject of, or may offer testimony that is the subject of, any motion for summary judgement, motions to strike, motions *in limine*, or *Daubert* motions filed by Defendants.

6. Defendants reserve the right to seek to introduce any testimony or call any witness listed in Allergan's Witness List, if otherwise admissible.

7. Defendants reserve the right to utilize deposition designations made by Allergan, as well as undesignated portions of deposition testimony, for demonstratives, impeachment purposes, or rebuttal.

8. Defendants reserve the right to object to any specific questions or testimony at the time proffered to the Court.

9. For any exhibits appearing within Allergan's designated testimony, Defendants' objections to use of such exhibits may appear in Allergan's Trial Exhibit List.

10. For any exhibits appearing within Allergan's designated testimony, Defendants

object to Allergan's reliance on any exhibits that appear in Allergan's designations but that are not included in Allergan's Trial Exhibit List.

11. Defendants reserve the right to object to Allergan introducing any testimony which relies on or refers to evidence not timely produced pursuant to Federal Rules of Civil Procedure 26 and 37.

12. Defendants reserve the right to supplement their objections as necessary, whether based on Allergan's Witness List, Exhibit List, Deposition Designations, or Statements of Fact or Law; other pretrial filings, and any amendments to the same; any rulings that the Court may make, including summary judgment, witnesses, evidence or *in limine* motions, motions to strike; or any other changed circumstances.

# I. GENERAL OBJECTIONS

## A. Fact Witnesses

13. Defendants incorporate by reference any objection to proposed deposition testimony of any witness as set forth in Defendants' objections to Allergan's deposition designations.

14. Defendants object to the testimony of any witness for which that witness lacks personal knowledge, testimony outside the scope of the Federal Rule of Civil Procedure 30(b)(6) testimony for which a witness was designated, testimony beyond the description for such witness as set forth in Allergan's Federal Rule of Civil Procedure 26(a) initial disclosures, testimony beyond the scope of Allergan's interrogatory responses, or testimony not otherwise properly disclosed under the Federal Rules of Civil Procedure. Defendants object to the testimony of any witness to the extent that it is impermissible under Federal Rules of Evidence 105, 701, 702, 703, 611, 401, 402, 403, 803, or 804.

15. Defendants object to the testimony of any fact witness relating to claims or

defenses that are no longer being asserted in this case. Such evidence is irrelevant, potentially confusing, prejudicial, and a waste of time (Fed. R. Evid. 402 & 403).

16. Defendants object to the testimony of any fact witness relating to any request for equitable relief. Such evidence is irrelevant to any issues properly before the jury, potentially confusing, prejudicial, and a waste of time (Fed. R. Evid. 402 & 403).

17. Defendants reserve the right to provide objections and counter-designations to the deposition designations of any witnesses' depositions by Allergan.

18. Defendants incorporate by reference the objections set forth in Exhibtis 6-A to Allergan's deposition designations.

19. Defendants reserve the right to object to Allergan calling witnesses identified on Defendants' Witness List but not on Allergan's Trial Witness List should Allergan attempt to call any such witnesses live or by deposition.

**B. Expert Witnesses**

20. Defendants object to the testimony of Allergan's experts to the extent that their testimony is related to any evidentiary issues raised by Defendants in the parties' proposed Pretrial Order.

21. Defendants object to Allergan calling any of their expert witnesses by deposition.

22. Defendants object to Allergan's experts and their testimony to the extent that Allergan's experts attempt to opine on matters outside the scope of their Federal Rule of Civil Procedure 26(a)(2)(B) expert reports, deposition testimony, or their respective experience or purported areas of expertise.

23. Defendants object to Allergan's experts and their testimony to the extent that they or their testimony are objectionable under one or more of Federal Rules of Evidence

105, 702, 703, 611, 401, 402, or 403.

24. Defendants object to the testimony of any expert witness relating to claims or defenses that are no longer being asserted in this case. Such evidence is irrelevant, potentially confusing, prejudicial, and a waste of time (Fed. R. Evid. 402 & 403).

25. Defendants object to the testimony of any expert witness relating to any request for equitable relief. Such evidence is irrelevant to any issues properly before the jury, potentially confusing and prejudicial, and a waste of time.

26. Defendants object to Allergan's experts and their testimony to the extent that they or their testimony are duplicative of the testimony of other witnesses, including to the extent duplicative/cumulative over the testimony of Allergan's other experts.

27. Defendants object to Allergan's experts and their testimony to the extent that they or their testimony have not been properly, timely, and sufficiently disclosed during fact or expert discovery pursuant to Federal Rules of Civil Procedure 26 and 37.

28. Defendants object to Allergan's experts and their testimony to the extent that they or their testimony attempt to offer any rebuttal opinions not sufficiently described in the expert reports.

## II. SPECIFIC OBJECTIONS

### A. <u>Fact Witnesses</u>

29. **Wajdie Ahmad**: Defendants object to any presentation of Wajdie Ahmad's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Ahmad live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent

Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Ahmad to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the scope of Allergan's interrogatory responses, and (3) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Defendants further object to the testimony of Mr. Ahmad because Mr. Ahmad was not disclosed in Allergan's initial disclosures. Other objections to Mr. Ahmad's testimony, if any, are reserved for trial.

30. **Ronald Bates**: Defendants object to any presentation of Ronald Bates's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Bates live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Bates to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Bates's testimony, if any, are reserved for trial.

31. **Ronald Broide**: Defendants object to any presentation of Ronald Broide's

deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Broide live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Broide to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Broide's testimony, if any, are reserved for trial.

32. **Jamie Gonzales**: Defendants object to any presentation of Jamie Gonzales's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Gonzales live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Gonzales to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes

beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Gonzales's testimony, if any, are reserved for trial.

33. **Terrence Hunt**: Defendants object to any presentation of Terrence Hunt's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Hunt live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Hunt to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Hunt's testimony, if any, are reserved for trial.

34. **Stacey Klinkenborg**: Defendants object to any presentation of Stacey Klinkenborg's deposition testimony to the extent that she testifies live at trial. Defendants object to Ms. Klinkenborg's testimony as not relevant to any of issue in the case to the extent it is directed at the therapeutic market, which is not within the scope of Plaintiffs' damages expert's opinions. Such testimony would also be highly prejudicial, confusing, and misleading to the jury. Defendants object to Allergan calling Ms. Klinkenborg live or by deposition designation to the extent it seeks to introduce testimony for which she lacks

personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Klinkenborg to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Klinkenborg's testimony, if any, are reserved for trial.

35. **Chad Lindemann**: Defendants object to any presentation of Chad Lindemann's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Lindemann live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Lindemann to the extent that:

36. (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under

the Federal Rules of Civil Procedure. Defendants further object to the testimony of Mr. Lindemann because Mr. Lindemann was not disclosed in Allergan's initial disclosures. Other objections to Mr. Lindemann's testimony, if any, are reserved for trial.

37. **Jason Paik**: Defendants object to any presentation of Jason Paik's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Jason Paik to the extent that his testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending motions for summary judgment, Daubert motions, or forthcoming motions in limine. As a non-limiting example, Defendants object to Jason Paik providing any testimony regarding Paik Exhibit 31. Defendants object to Allergan calling Mr. Paik live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Paik to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Paik's testimony, if any, are reserved for trial.

38. **Hemant Patel**: Defendants object to any presentation of Hemant Patel's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Patel live or by deposition designation to the extent it seeks to

introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Patel to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Patel's testimony, if any, are reserved for trial.

39. **Edward Podraza**: Defendants object to any presentation of Edward Podraza's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Podraza live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Podraza to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Defendants further object to the

testimony of Mr. Podraza because Mr. Podraza was not disclosed in Allergan's initial disclosures. Other objections to Mr. Podraza's testimony, if any, are reserved for trial.

40. **Jennifer Ton**: Defendants object to any presentation of Jennifer Ton's deposition testimony to the extent that she testifies live at trial. Defendants object to Allergan calling Ms. Ton live or by deposition designation to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Ton to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Ton's testimony, if any, are reserved for trial.

41. **Huong Tran**: Defendants object to Allergan calling Huong Tran by deposition designation at least because it has not made adequate showing under Federal Rule of Civil Procedure 32 or Federal Rule of Evidence 804. Defendants object to Allergan calling Huong Tran to the extent that her testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending motions for summary judgment, Daubert motions, or forthcoming motions in limine. Defendants object to Allergan calling Ms. Tran by deposition designation to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R.

Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Tran to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Tran's testimony, if any, are reserved for trial.

42. **Hui Xiang**: Defendants object to any presentation of Hui Xiang's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Xiang live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Xiang to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Xiang's testimony, if any, are reserved for trial.

43. **Mung Bernardo**: Defendants object to any presentation of Mung

Bernardo's deposition testimony to the extent that she testifies live at trial. Defendants object to Allergan calling Ms. Bernardo to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Bernardo to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Bernardo's testimony, if any, are reserved for trial.

44. **Bryan Bullock**: Defendants object to any presentation of Bryan Bullock's deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Bullock to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Bullock to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's

interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Bullock's testimony, if any, are reserved for trial.

45. **Megan Clevenger**: Defendants object to any presentation of Megan Clevenger's deposition testimony to the extent that she testifies live at trial. Defendants object to Allergan calling Ms. Clevenger to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Clevenger to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Clevenger's testimony, if any, are reserved for trial.

46. **Michelle Frazier**: Defendants object to any presentation of Michelle Frazier's deposition testimony to the extent that she testifies live at trial. Defendants object to Allergan calling Ms. Frazier to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized

knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Frazier to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Frazier's testimony, if any, are reserved for trial.

47. **Conor Gallagher**: Defendants object to any presentation of Conor Gallagher's deposition testimony to the extent that he testifies live at trial. Defendants object to any presentation of Conor Gallagher's deposition testimony as not relevant to any of issue in the case. Such testimony would also be highly prejudicial, confusing, and misleading to the jury. Defendants object to Allergan calling Dr. Gallagher to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Dr. Gallagher to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Dr. Gallagher's testimony, if any, are reserved for trial.

48. **Maria Green**: Defendants object to any presentation of Maria Green's

deposition testimony to the extent that she testifies live at trial. Defendants object to Allergan calling Ms. Green to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Green to the extent that: (1) it is not relevant to the issues in the case, (2) it goes beyond the description set forth in Allergan's initial disclosures, (3) it goes beyond the scope of Allergan's interrogatory responses, and (4) it was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Ms. Green's testimony, if any, are reserved for trial.

49. **Jill Carey**: Defendants object to any presentation of Jill Carey's deposition testimony to the extent that she testifies live at trial. Defendants object to Allergan calling Ms. Carey live or by deposition designation to the extent it seeks to introduce testimony for which she lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Ms. Carey because her testimony: (1) is not relevant to the issues in the case, (2) was not disclosed in Allergan's initial disclosures, (3) goes beyond the scope of Allergan's interrogatory responses, and (4) was not otherwise properly disclosed under the Federal Rules of Civil

Procedure. Other objections to Ms. Carey's testimony, if any, are reserved for trial.

50. **Maurice Mulders**: Defendants object to any presentation of Maurice Mulders' deposition testimony to the extent that he testifies live at trial. Defendants object to Allergan calling Mr. Mulders live or by deposition designation to the extent it seeks to introduce testimony for which he lacks personal knowledge or to the extent the witness is not competent to testify. See Fed. R. Evid. 601, 602. Defendants further object to the extent Allergan seeks to introduce testimony that constitutes improper lay witness opinion, including but not limited to opinion testimony of a lay witness and any testimony that is based on legal or other specialized knowledge that should properly be the subject of expert testimony pursuant to Federal Rule of Evidence 701. Defendants further object to the testimony of Mr. Mulders because his testimony: (1) is not relevant to the issues in the case, (2) was not disclosed in Allergan's initial disclosures, (3) goes beyond the scope of Allergan's interrogatory responses, and (4) was not otherwise properly disclosed under the Federal Rules of Civil Procedure. Other objections to Mr. Mulders' testimony, if any, are reserved for trial.

### B. Expert Witnesses

51. **Dr. Christian Schöneich**: Defendants object to Allergan calling Dr. Schöneich to the extent that his testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending motions for summary judgment, Daubert motions, or forthcoming motions in limine. Defendants object to Dr. Schöneich's testimony to the extent that he attempts to opine on matters outside the scope of his Rule 26(a)(2)(B) expert reports, deposition, or outside his experience or purported area of expertise. Defendants further object to any testimony by Dr. Schöneich that is irrelevant to the issues in this case, and to testimony otherwise objectionable under one or more of Fed. R. Evid. 702, 703, 611,

401, 402, and 403. Defendants object to the extent that Dr. Schöneich attempts to opine on legal issues that are beyond the scope of his expertise and knowledge, including, without limitation, purely legal matters. Defendants object to any of Dr. Schöneich's testimony that seeks to explicitly or implicitly alter or amend the meaning of any claim term (whether plain and ordinary, as agreed to by the parties, and/or as construed by the Court). Defendants object to Dr. Schöneich's testimony as cumulative to the extent Allergan proffers multiple experts to testify with regard to the same subject matter. Defendants reserve all rights to conduct any necessary voir dire of Dr. Schöneich's qualifications and opinions at trial.

52. **Dr. Frank Gessler**: Defendants object to Allergan calling Dr. Gessler to the extent that his testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending motions for summary judgment, Daubert motions, or forthcoming motions in limine. Defendants object to Dr. Gessler's testimony to the extent that he attempts to opine on matters outside the scope of his Rule 26(a)(2)(B) expert reports, deposition, or outside his experience or purported area of expertise. Defendants further object to any testimony by Dr. Gessler that is irrelevant to the issues in this case, and to testimony otherwise objectionable under one or more of Fed. R. Evid. 702, 703, 611, 401, 402, and 403. Defendants object to the extent that Dr. Gessler attempts to opine on legal issues that are beyond the scope of his expertise and knowledge, including, without limitation, purely legal matters. Defendants object to any of Dr. Gessler's testimony that seeks to explicitly or implicitly alter or amend the meaning of any claim term (whether plain and ordinary, as agreed to by the parties, and/or as construed by the Court). Defendants object to Dr. Gessler's testimony as cumulative to the extent Allergan proffers multiple experts to testify with regard to the same subject matter. Defendants reserve all

rights to conduct any necessary voir dire of Dr. Gessler's qualifications and opinions at trial.

53. **Dr. Steven Chamow**: Defendants object to Allergan calling Dr. Chamow to the extent that his testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending motions for summary judgment, Daubert motions, or forthcoming motions in limine. As a non-limiting example, Defendants object to Dr. Chamow's testimony and opinions regarding qPCR testing performed by LabEaze and the results and conclusions of that testing. Defendants object to Dr. Chamow's testimony to the extent that he attempts to opine on matters outside the scope of his Rule 26(a)(2)(B) expert reports or outside his experience or purported area of expertise. Defendants further object to any testimony by Dr. Chamow that is irrelevant to the issues in this case, and to testimony otherwise objectionable under one or more of Fed. R. Evid. 702, 703, 611, 401, 402, and 403. Defendants object to the extent that Dr. Chamow attempts to opine on legal issues that are beyond the scope of his expertise and knowledge, including, without limitation, purely legal matters. Defendants object to any of Dr. Chamow's testimony that seeks to explicitly or implicitly alter or amend the meaning of any claim term (whether plain and ordinary, as agreed to by the parties, and/or as construed by the Court). Defendants object to Dr. Chamow's testimony as cumulative to the extent Allergan proffers multiple experts to testify with regard to the same subject matter. Defendants reserve all rights to conduct any necessary voir dire of Dr. Chamow's qualifications and opinions at trial.

54. **Dr. Daniela Drago**: Defendants object to Allergan calling Dr. Drago to the extent that her testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending pending motions for summary judgment, Daubert motions, or forthcoming motions in limine. Defendants object to Dr. Drago's testimony to the extent

that he attempts to opine on matters outside the scope of her Rule 26(a)(2)(B) expert reports or outside her experience or purported area of expertise. Defendants further object to any testimony by Dr. Drago that is irrelevant to the issues in this case, and to testimony otherwise objectionable under one or more of Fed. R. Evid. 702, 703, 611, 401, 402, and 403. Defendants object to the extent that Dr. Drago attempts to opine on legal issues that are beyond the scope of her expertise and knowledge, including, without limitation, purely legal matters. Defendants object to any of Dr. Drago's testimony that seeks to explicitly or implicitly alter or amend the meaning of any claim term (whether plain and ordinary, as agreed to by the parties, and/or as construed by the Court). Defendants object to Dr. Drago's testimony as cumulative to the extent Allergan proffers multiple experts to testify with regard to the same subject matter. Defendants reserve all rights to conduct any necessary voir dire of Dr. Drago's qualifications and opinions at trial.

55. **Dr. Christine Siegwarth (formerly Meyer)**: Defendants object to Allergan calling Dr. Siegwarth to the extent that her testimony is the subject of, or may offer testimony that is the subject of, Defendants' pending motions to strike, Daubert motions, and forthcoming motions in limine. As a non-limiting example, Defendants object to Dr. Siegwarth providing any testimony or opinions regarding any license or royalty rate that Dr. Siegwarth determined to be incomparable in her expert disclosures. Defendants object to Dr. Siegwarth's testimony to the extent that she attempts to opine on matters outside the scope of her Rule 26(a)(2)(B) expert reports or outside her experience or purported area of expertise. Defendants further object to any testimony by Dr. Siegwarth that is irrelevant to the issues in this case, and to testimony otherwise objectionable under one or more of Fed. R. Evid. 702, 703, 611, 401, 402, and 403. Defendants object to the extent that Dr. Siegwarth attempts to opine on legal issues that are beyond the scope of her expertise and

knowledge, including, without limitation, purely legal matters. Defendants object to any of Dr. Siegwarth's testimony that seeks to explicitly or implicitly alter or amend the meaning of any claim term (whether plain and ordinary, as agreed to by the parties, and/or as construed by the Court). Defendants object to Dr. Siegwarth's testimony as cumulative to the extent Allergan proffers multiple experts to testify with regard to the same subject matter. Defendants reserve all rights to conduct any necessary voir dire of Dr. Siegwarth's qualifications and opinions at trial.

# EXHIBIT 5-B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants/Counterclaim Plaintiffs, | C.A. No. 21-1411-RGA-LDH |

**EXHIBIT 5-B: DEFENDANTS' AMENDED WITNESS LIST**

Defendants Revance Therapeutics, Inc. ("Revance") and PCI San Diego, Inc. (collectively, "Defendants") submit this list of witnesses that Defendants will or may call to testify live or by deposition at trial.

Defendants reserve the right to modify or amend this list to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this list to fairly respond to any new issue that Plaintiff Allergan, Inc. ("Allergan") may raise. Defendants also reserve the right to call additional witnesses live or by deposition designations (or to offer additional deposition designations from witnesses identified herein) in rebuttal to issues raised in Allergan's case-in-chief or rebuttal presentations. Defendants further reserve the right to call additional witnesses live or by deposition designation to respond to issues raised after the preparation and submission of this list, including any changes by Allergan to its arguments, witness lists, or other positions. Defendants also reserve the right to change or modify these lists as permitted by the Federal Rules of Civil Procedure, Local Rules, or Orders of the Court, including as part of the meet and

confer process leading up to the submission of the pretrial order or to trial, in view of events at trial, or based on circumstances that may evolve prior to the commencement of trial, such as, but not limited to, summary judgment, *Daubert*, or evidentiary rulings or other rulings by the Court.

Defendants further reserve the right to call any witness live or by deposition designation for purposes of impeachment. Defendants further reserve the right to call additional witnesses live or by deposition designations (or to offer additional deposition designations from witnesses identified herein) to the extent necessary to provide foundational testimony if Allergan contests the authenticity or admissibility of any materials to be offered as evidence at trial.

If any witness Defendants intend to call to testify live is or becomes unavailable, Defendants reserve the right to offer deposition testimony, and to amend their deposition designations accordingly, for such witness, irrespective of whether the witness is designated as may call by deposition. Defendants further reserve the right to substitute witnesses for the listed witnesses should any listed witness become unavailable for trial. If any of Allergan's expert witnesses is not called live at trial, Defendants reserve the right to offer deposition testimony of such witness. Defendants further reserve the right to call any witness listed by Allergan on its witness list or who otherwise appears for Allergan at trial, without waiving any right to (i) object to Allergan's presentation of such witnesses at trial, (ii) object to the admissibility of such testimony, and (iii) move to exclude any such testimony. Defendants further reserve the right to use any deposition designations identified by Allergan as either affirmative designations or as counter-designations. The inclusion of a witness on this list does not require Defendants to call that witness to testify, and does not imply or establish that Defendants have the power to compel the live testimony of that witness or make that witness available to the opposing party.

| | WITNESS | WILL CALL LIVE | MAY CALL LIVE | MAY CALL BY DEPOSITION |
|---|---|---|---|---|
| 1. | Curtis Ruegg | X | | |
| 2. | Dr. Michael C. Goodnough | X | | |
| 3. | Dr. Raj Suryanarayanan | X | | |
| 4. | Dr. Akhilesh K. Nagaich | X | | |
| 5. | Dr. Joshua D. Ramsey | X | | |
| 6. | Dr. Michael Meagher | X | | |
| 7. | Dana Trexler | X | | |
| 8. | Dr. Atul T. Patel | X | | |
| 9. | Dr. Jeffrey Dover | X | | |
| 10. | Wadjie Ahmad | | X | X |
| 11. | Ron Bates | X | X | X |
| 12. | Ron Broide | X | X | X |
| 13. | Stephen Donovan | | X | X |
| 14. | Jamie Gonzalez | | X | X |
| 15. | Terrance Hunt | X | X | X |
| 16. | Stacey Klinkenborg | | X | X |
| 17. | Chad Lindemann | | X | X |
| 18. | Mingjiang Luo | | X | X |
| 19. | Curtis Monnig | | X | X |
| 20. | Jason Paik | X | X | X |
| 21. | Hemant Patel | | X | X |
| 22. | Ed Podraza | | X | X |
| 23. | Jennifer Ton | | X | X |
| 24. | Huong Tran | | X | X |
| 25. | Hui Xiang | | X | X |
| 26. | Dr. Christine Siegwarth (formerly Meyer) | X | | |
| 27. | Dr. Frank Gessler | X | | |
| 28. | Any witness included on Allergan's witness list[1] | | X | X |

[1] Defendants have designated Allergan's witnesses as "may call live" and "may call by deposition" in the event that Allergan does not call witnesses live at trial or attempts to limit the scope of cross-examination to subject matter elicited during direct examination.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Plaintiff Allergan's Objections to Defendant Revance's Witness List**

## I. Reservation of Rights

1. Plaintiffs Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc. (collectively, "Allergan") hereby submits its Objections to Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services (collectively, "Revance") Witness List served on October 2, 2024. In addition to its specific objections identified in the sections below, Allergan generally objects to the inclusion of objections or colloquy by counsel in any designated deposition testimony.

2. Allergan objects to any witness designated by Revance who is the subject of Allergan's *Daubert* motions, motions to strike, or motions in limine.

3. Allergan reserves the right to amend, supplement, modify, or withdraw any of its objections leading up to and at trial.

4. Allergan reserves the right to object to any testimony as inadmissible under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

5. Allergan reserves the right to object to any witness testimony under any basis for any objection raised by Revance.

6. Allergan reserves the right to seek to introduce any testimony and/or call any witness listed on Revance's Witness List.

7. Allergan reserves the right to utilize any deposition testimony designated by Revance for Allergan's demonstratives, impeachment purposes, or rebuttals.

## II. <u>Objections to Revance's "Will Call Live" Witnesses</u>

### A. <u>Mr. Curtis Ruegg</u>

8. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

9. Allergan objects to Revance's calling of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

10. Allergan objects to the extent this witness's testimony is inadmissible under the Federal Rules of Evidence.

11. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce evidence, including oral testimony or documents, concerning the purported design-around availability and acceptability of adding animal-based products to Revance's daxibotulinumtoxinA drug substance manufacturing process and albumin to its Daxxify drug product formulation. (*See, e.g.*, Minniti Ltr. to Rao (Apr. 17, 2024); *see also* Ho Email to Counsel (Oct. 8, 2024).)

12. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

**B. Dr. Michael C. Goodnough**

13. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

14. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703).

15. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through the Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

16. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan.

17. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

**C. Dr. Raj Suryanarayanan**

18. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

19. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703).

20. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through the Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

21. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan. (*See, e.g.*, Ho Email to Counsel (Oct. 8, 2024); *see also* Ho Ltr. to LaRock (June 7, 2024).)

22. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

**D. <u>Dr. Akhilesh K. Nagaich</u>**

23. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

24. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703), including for at least the reasons set forth in Allergan's *Daubert* motions (*see, e.g.*, D.I. 348, D.I. 364).

25. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

26. Allergan objects to the testimony of this witness to the extent it concerns Revance's purported safe harbor defense with respect to daxibotulinumtoxinA drug substance and/or Daxxify drug product batches that are not accused of infringement and for which Allergan does not seek damages. (*See, e.g.*, Minniti Ltr. to Rao (Apr. 17, 2024) ("[B]ased on the discovery of facts (current as of November 10, 2023) concerning the use of commercial Daxxify batches, Allergan has asserted infringement, and thus sought damages, focused on the following drug substance batches, in addition to any future Daxxify batches that are commercially manufactured, used, sold, or offered for sale: [*Allergan identifying specific commercial batches of daxibotulinumtoxinA drug substance and Daxxify drug product*].").)

27. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan. (*See, e.g.*, Ho Email to Counsel (Oct. 8, 2024); *see also* Minniti to Rao (Apr. 17, 2024); Minniti Ltr. Rao (Apr. 1, 2024).)

28. Allergan reserves the right to object to any specific questions or testimony at the time proffered by the Court.

**E. <u>Dr. Joshua D. Ramsey</u>**

29. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

30. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703).

31. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through the Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

32. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan.

33. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

**F. <u>Dr. Michael Meagher</u>**

34. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

35. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703), including for at least the reasons set forth in Allergan's *Daubert* motions (*see, e.g.*, D.I. 348, D.I. 364).

36. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

37. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan. (*See, e.g.*, Ho Email to Counsel (Oct. 8, 2024); *see also* Ho Ltr. to LaRock (June 7, 2024); Minniti Ltr. Rao (Apr. 1, 2024).)

38. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

**G. <u>Ms. Dana Trexler</u>**

39. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

40. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703), including for at least the reasons set forth in Allergan's *Daubert* motions (*see, e.g.*, D.I. 348, D.I. 364).

41. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

42. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan. (*See, e.g.*, Minniti to Rao (Apr. 17, 2024); Minniti Ltr. Rao (Apr. 1, 2024).)

43. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

### H. Dr. Jeffrey Dover

44. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

45. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703), including for at least the reasons set forth in Allergan's *Daubert* motions (*see, e.g.*, D.I. 348, D.I. 364).

46. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through Allergan's pending motions (*see, e.g.*, D.I. 348, D.I. 364).

47. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan.

48. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

## III. Objections to Revance's "May Call Live" / "May Call By Deposition" Witnesses

### A. Dr. Atul T. Patel

49. Allergan objects to the testimony of this witness to the extent it is duplicative of testimony of other witnesses and/or relates to any evidentiary issue raised by Allergan.

50. Allergan objects to this witness's testimony to the extent it is inadmissible under the Federal Rules of Evidence (*e.g.*, Rules 702 and/or 703), including for at least the reasons set forth in Allergan's *Daubert* motions (*see, e.g.*, D.I. 348, D.I. 364).

51. Allergan objects to this witness's testimony to the extent it concerns subject matter that is no longer at issue in the case, including in view of issues that may be resolved through Allergan's pending motions (*see, e.g*., D.I. 348, D.I. 364).

52. Allergan objects to the testimony of this witness to the extent it is outside the scope of this witness's expert reports and/or relates to any evidentiary issue raised by Allergan.

53. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered by the Court.

**B. <u>Mr. Wajdie Ahmad</u>**

54. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 4, 2023 deposition transcript of this witness, see Exhibit 6-B.

55. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

56. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**C. <u>Mr. Ron Bates</u>**

57. For Allergan's objections and counter-designations to Revance's designations of the testimony in the September 27, 2023 deposition transcript of this witness, see Exhibit 6-B.

58. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

59. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**D. <u>Dr. Ron Broide</u>**

60. For Allergan's objections and counter-designations to Revance's designations of the testimony in the November 7, 2023 deposition transcript of this witness, see Exhibit 6-B.

61. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

62. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**E. <u>Mr. Stephen Donovan</u>**

63. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 25, 2023 deposition transcript of this witness, see Exhibit 6-B.

64. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

65. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**F. Ms. Jamie Gonzalez**

66. For Allergan's objections and counter-designations to Revance's designations of the testimony in the August 31, 2023 deposition transcript of this witness, see Exhibit 6-B.

67. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

68. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**G. Mr. Terrence Hunt**

69. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 26, 2023 deposition transcript of this witness, see Exhibit 6-B.

70. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

71. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**H. Ms. Stacey Klinkenborg**

72. For Allergan's objections and counter-designations to Revance's designations of the testimony in the September 22, 2023 deposition transcript of this witness, see Exhibit 6-B.

73. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was

designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

74. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**I. Mr. Chad Lindemann**

75. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 25, 2023 deposition transcript of this witness, see Exhibit 6-B.

76. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

77. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**J. Mr. Mingjiang Luo**

78. For Allergan's objections and counter-designations to Revance's designations of the testimony in the November 2, 2023 deposition transcript of this witness, see Exhibit 6-B.

79. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

80. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**K. Mr. Curtis Monnig**

81. For Allergan's objections and counter-designations to Revance's designations of the testimony in the November 1, 2023 deposition transcript of this witness, see Exhibit 6-B.

82. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

83. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

### L. <u>Mr. Jason Paik</u>

84. For Allergan's objections and counter-designations to Revance's designations of the testimony in the November 1, 2023 deposition transcript of this witness, see Exhibit 6-B.

85. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

86. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

### M. <u>Mr. Hemant Patel</u>

87. For Allergan's objections and counter-designations to Revance's designations of the testimony in the September 21, 2023 deposition transcript of this witness, see Exhibit 6-B.

88. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

89. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**N. Mr. Ed Podraza**

90. For Allergan's objections and counter-designations to Revance's designations of the testimony in the February 29, 2024 deposition transcript of this witness, see Exhibit 6-B.

91. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

92. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**O. Ms. Jennifer Ton**

93. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 11, 2023 deposition transcript of this witness, see Exhibit 6-B.

94. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

95. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**P. Ms. Huong Tran**

96. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 18, 2023 deposition transcript of this witness, see Exhibit 6-B.

97. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony that is beyond the scope of the topic(s) for which this witness was

designated under Rule 30(b)(6), Fed. R. Civ. P., and/or for which this witness lacks personal knowledge or to the extent this witness is not competent to testify.

98. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**Q. Mr. Hui Xiang**

99. For Allergan's objections and counter-designations to Revance's designations of the testimony in the October 13, 2023 deposition transcript of this witness, see Exhibit 6-B.

100. Allergan objects to the testimony of this witness to the extent Revance seeks to introduce testimony for which this witness lacks personal knowledge and/or to the extent this witness is not competent to testify.

101. Allergan reserves the right to object to any specific questions and/or testimony at the time proffered to the Court.

**R. "Any witness included on Allergan's witness list"**

102. Allergan objects to Revance's inclusion of this witness category to the extent Revance's identification fails to comply with the Scheduling Order (D.I. 54) and D. Del. LR 16(c)(7), which requires disclosure of "[t]he names of all witnesses a party intends to call to testify, whether this witness will testify in person or by deposition and, if by deposition, a list of deposition designations."

103. Without further information, in the event that the Court rules that a witness may testify in place of the unnamed "witness included on Allergan's witness list" at trial, Allergan reserves all rights to make any objection under the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence.

*        *        *

# EXHIBIT 6-A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**Exhibit 6-A to Pretrial Order**

**Plaintiff Allergan's Deposition Designations (*See* D. Del. LR 16.3(c)(7))**

Allergan submits the following deposition designations, objections to Revance's counter-designations, and counter designations to counter Revance's counter designations. The witnesses identified herein are generally listed in alphabetical order for organizational purposes.

## I. Reservation of Rights

1. Allergan reserves the right to modify these designations in accordance with Fed. R. Civ. P. 26(a)(3), D. Del. LR 16.3, or in view of other events or changed circumstances that may occur before or during trial.

2. Allergan reserves its right to use all designations (including Revance's) for any purpose.

3. Allergan reserves the right to revise or supplement these deposition designations consistent with the Pretrial Order, the applicable rules, or as otherwise permitted by the Court, including based on any parties' pretrial exchanges, any pretrial rulings by the Court, or as otherwise necessary.

4. Allergan incorporates by reference its objections to Revance's Witness List and Exhibit List.

5. To the extent a witness does not appear live at trial, Allergan reserves the right to provide affirmative designations and objections and/or counter-designations to Revance's affirmative designations.

| The Parties' Agreed-Upon Objection Key for Deposition Designations and Exhibit List | |
|---|---|
| **Code** | **Objection** |
| **602** | This testimony is objectionable because it constitutes testimony to which the witness lacks personal knowledge. *See* FRE 602 |
| **701** | This testimony is objectionable because it is opinion testimony by a lay witness that is not reasonably based on perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in dispute (*see* FRE 701), and/or it is attempted expert testimony from a witness who was not designated as an expert and who did not submit an expert report (*see* FRCP 26) |
| **AA** | Asked and answered |
| **AF** | Assumes a fact not in evidence |
| **AU** | Lack of authenticity or identification (FRE 901) |
| **B** | Not best evidence (FRE 1002, 1003, and/or 1004) |
| **BS** | Beyond the scope of contentions |
| **CO** | Compound question |
| **DB** | *Daubert* / FRE 701–703 |
| **DE** | Demonstrative / should not be admitted into evidence |
| **DUP** | Counter designation is duplicative of the original designation |
| **E** | Calls for expert opinion, improper testimony of a lay witness |
| **F** | Lacks foundation (*see* FRE 901; *see also* FRE 103, 104, 105) |
| **FRCP 30(b)(6)** | Outside the scope of witness designation |
| **H** | Hearsay (FRE 801–802) |
| **HYP** | Improper Hypothetical |
| **I** | Incomplete (FRE 106) |
| **ID** | Improper deposition designation (*e.g.* Attorney objections not removed, etc.) |

| | |
|---|---|
| **IE** | Relates to exhibit that is an excerpt from a longer document without the original or a copy of the original document having been provided. |
| **IL** | Illegible |
| **L** | Legal conclusion |
| **LD** | Leading (*see* FRE 611) |
| **LIVE** | The witness will be live at trial. |
| **MC** | Mischaracterizes testimony, misleading, or misstates evidence. |
| **MIL** | Subject to *motion in limine* |
| **MU** | Entry includes multiple documents |
| **N** | Documents are not properly identified. Parties reserve the right to further object after inspection or examination of the properly identified documents. |
| **NP** | Not produced / provided before relevant discovery deadline |
| **NSW** | No sponsoring witness |
| **NT** | No translation / translation not timely provided |
| **OS** | Outside scope of original designation |
| **P** | Prejudice/confusion/misleading/delay/waste of time/cumulative (FRE 403) |
| **PRIV** | Attorney Client Privilege or Work Product |
| **R** | Lack of relevance (FRE 401–402) |
| **SP** | Speculation; calls for speculation |
| **V** | Vague and ambiguous |

## II. Deposition Designations

| Deposition of Wajdie Ahmad[1,2] October 4, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[3]** | **Revance's Counter-Designations[4]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 7:10-14 | H | | | |
| 8:2-7 | H | | | |
| 9:5-13:2 | H | | | |
| 13:15-24 | V, P, R, H | | | |
| 14:17-22 | V, P, R, H | | | |
| 15:5-10 | V, R, H | | | |
| 15:19-16:6 | ID, R [re: 16:4-6], H | 16:7 | | |
| 16:12-19 | V, P, R [re: 16:16-19], H | | | |
| 17:1-19 | V, R [re: 17:8-19], H | | | |
| 18:2-9 | H | | | |
| 18:16-19:24 | H | | | |
| 20:6-21:15 | H | | | |

[1] Revance objects to Allergan's affirmative designation of Wajdie Ahmad's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[2] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[3] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[4] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Wajdie Ahmad as counter designations.

| Deposition of Wajdie Ahmad[1,2]<br>October 4, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[3]** | **Revance's Counter-Designations[4]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 21:20-22:5 | H | | | |
| 22:19-23:4 | H | | | |
| 24:8-25:21 | V, R, H | | | |
| 26:16-27:17 | H | | | |
| 28:17-23 | H | | | |
| 29:2-30:20 | V, SP, R [re:29:14-30:20], H | | | |
| 31:4-6 | H | | | |
| 32:9-16 | H | | | |
| 32:18-20 | H | | | |
| 34:7-35:8 | H | | | |
| 36:17-37:8 | H | | | |
| 38:7-39:17 | V, P, 701, E, R, H | | | |
| 40:16-42:17 | V, P, 701, E, R [re:40:16-41:10], H | | | |
| 48:19-22 | H | | | |
| 48:24-49:17 | H | | | |
| 49:23-50:21 | H | | | |
| 63:8-14 | V, P, R, H | | | |
| 63:20-64:10 | H | | | |
| 71:8-11 | H | | | |
| 72:3:73:4 | V, R, H | | | |
| 74:2-9 | H | | | |
| 81:24-82:14 | H | | | |

| Deposition of Ronald Bates[5,6]<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[7]** | **Revance's Counter-Designations[8]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:10-15 | H | | | |
| 11:9-18 | H | | | |
| 12:12-13:24 | H | | | |
| 14:4-23 | H | | | |
| 15:23-25 | H | | | |
| 16:6-17:13 | H | | | |
| 18:3-19:15 | H | | | |
| | | | | 19:18-19:21 |
| 21:14-22:18 | H | | | |
| 23:6-24:22 | V, R, H | | | |
| 25:5-26:15 | H | | | |
| 26:24-27:14 | V, R, H | | | |
| 27:17-30:24 | V, R, H | | | |
| 31:25-32:8 | H | | | |
| 32:15-18 | H | | | |

[5] Revance objects to Allergan's affirmative designation of Ronald Bates's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[6] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[7] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[8] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Ronald Bates as counter designations.

| Deposition of Ronald Bates[5,6]<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[7]** | **Revance's Counter-Designations[8]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 32:20-33:7 | H | | | |
| 36:6-13 | H | | | |
| 39:1-40:18 | H | | | |
| 40:20-41:14 | H | | | |
| 41:19-42:9 | H | | | |
| 42:11 | H | | | |
| 42:15-17 | H | | | |
| 42:19-43:9 | H | | | |
| 42:11-19 | V, H | | | |
| 43:13-16 | H | | | |
| 44:18-25 | H | | | |
| 45:2-4 | H | | | |
| 46:2-19 | H | | | |
| 46:21-47:12 | H | | | |
| 47:14-23 | H | | | |
| 48:14-49:7 | H | | | |
| 50:24-51:21 | H | | | |
| 51:23-52:23 | H | | | |
| 52:25-53:17 | V, H | | | |
| 54:5-55:10 | R, H | | | |
| 56:7-16 | V, R, H | | | |
| 57:1-59:3 | R, H | | | |
| 59:21-60:14 | R, H | | | |
| 63:14-65:12 | 701, L, E [re: 64:11-65:12], H | | | |
| 66:8-15 | V, R, SP, H | | | |
| 66:21-67:5 | V, R, SP, H | | | |

| Deposition of Ronald Bates[5,6] September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[7]** | **Revance's Counter-Designations[8]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 67:9-68:14 | V, R, SP, H | | | |
| 68:17-69:5 | V, R, SP, H | | | |
| 69:8-12 | V, R, SP, H | | | |
| 69:19-23 | V, R, SP, H | | | |
| 70:5-71:6 | V, R, SP, H | | | |
| 71:8-17 | R, H | | | |
| 71:20-72:10 | R, H | | | |
| 73:4-74:1 | R, H | 74:2-5 | R, V | |
| 75:10-14 | H | | | |
| 79:16-80:5 | V, H | | | |
| 117:25-121:24 | V, H | | | |
| 122:1-12 | V, H | | | |
| 122:14-123:22 | V, H | | | |
| 123:25-125:1 | V, H | | | |
| 154:5-155:2 | H | | | |
| 155:5-157:7 | R, H | | | |
| 157:10-23 | R, H | | | |
| 157:25-159:5 | R, H | | | |
| 159:7-161:7 | V, R, H | | | |
| 162:25-163:12 | H | | | |
| 165:21-25 | H | | | |
| 168:1-15 | H | | | |
| 168:17-169:2 | V, H | | | |
| 169:14-170:4 | H | | | |
| 171:1-13 | H | | | |
| 177:17-182:22 | R, H | | | |
| 183:4-6 | H | | | |

| Deposition of Ronald Bates[5,6]<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[7]** | **Revance's Counter-Designations[8]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 183:8-16 | H | | | |
| 183:18-184:17 | H | | | |
| 185:8-186:9 | H | | | |
| 186:11-12 | H | | | |
| 186:19-187:12 | R, H | | | |
| 188:4-189:5 | H | | | |
| 189:7-10 | H | | | |
| 191:15-25 | H | | | |
| 192:2-193:11 | H | | | |
| 222:8-223:2 | H | | | |
| 223:4-17 | V, H | | | |
| 223:19-224:3 | V, H | | | |
| 252:16-254:8 | H | | | |
| 254:13-16 | H | | | |
| 255:16-21 | V, R, H | | | |
| 256:1-257:13 | R, H | | | |
| 257:16-258:1 | R, H | | | |
| 258:3-16 | R, H | | | |
| 258:18-259:3 | R, H | | | |
| 259:5-14 | R, H | | | |
| 259:16-19 | R, H | | | |
| 260:12-261:6 | R, H | | | |
| 261:20-262:1 | R, H | | | |
| 262:3-16 | R, H | | | |
| 262:24-263:9 | R, H | | | |
| 263:11-264:4 | R, H | | | |
| 264:20-25 | R, H | | | |

| Deposition of Ronald Bates[5,6] September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[7]** | **Revance's Counter-Designations[8]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 265:3-10 | H | | | |
| 265:23-266:3 | R, H | | | |
| 267:5-6 | H | | | |
| 267:8-22 | H | | | |
| 267:24 | H | | | |

| Deposition of Mung Bernardo<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[9]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:7-15 | | | | |
| 9:20-22 | | | | |
| 10:4-7 | R | | | |
| 10:21-11:7 | R | | | |
| 11:9-12:11 | R, MC | | | |
| 12:16-14:23 | R, MC | | | |
| 18:13-19:17 | R, F | 19:18-21 | P, R | |
| 19:22-25 | R, F, SP | | | |
| 20:2-3 | R, F, SP | | | |
| 20:9-16 | R, F, SP | 20:24-25 | P, R | |
| 20:21-22 | R, F, SP | 20:24-25 | P, R | |
| 21:8-17 | R | 21:18-25 | | |
| 22:9-21 | R, F, SP, E | | | |
| 29:2-5 | R | | | |
| 29:7-20 | R, F, SP | | | |
| 30:3-16 | R, F, SP, E | | | |
| 30:18-31:4 | | | | |
| 31:8-17 | | | | |
| 31:19-32:5 | | | | |
| 33:4-22 | R, F, SP | | | |

[9] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Mung Bernardo<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[9]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 33:25-35:23 | R, F, SP, MC, E | | | |
| 35:25-36:19 | R | | | |
| 36:21-24 | | | | |
| 37:4-13 | | | | |
| 37:25-38:7 | R, F, SP | | | |
| 38:13-39:9 | R, F, SP | | | |
| 39:11-23 | | | | |
| 40:2-8 | R | | | |
| 42:16-43:12 | R, F, SP, MC | | | |
| 43:15-17 | R, F, SP, MC | | | |
| 43:20-24 | R, F, SP, MC | | | |
| 44:9-12 | R, F, SP, MC | 43:25-44:8 | P, R | |
| 45:1-4 | R, F, SP | 44:13-25 | | |
| 45:6-12 | R, F, SP | | | |
| 45:19-24 | R, F, SP | 46:25-47:7 | P, R | |
| | | | | 47:08 |
| | | | | 47:10-47:12 |
| 47:13-48:4 | R | | | |
| 49:12-14 | | | | |
| 49:18-50:21 | R, F, SP | | | |
| 51:4-7 | R | | | |
| 51:11-17 | R | | | |
| 51:24-52:2 | R | | | |
| 52:4-20 | R | | | |
| 53:14-54:6 | R, AA | | | |
| 55:3-23 | R, F, SP, V | | | |
| 56:1-11 | R, F, SP, V, AA | 56:12-17, 56:20-57:7 | P, R, I | |

| Deposition of Mung Bernardo<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[9]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| | | | | 57:08-58:11 |
| 64:9-12 | | | | |
| 64:14-65:3 | R, F | 65:4-6 | | |
| 65:7-15 | R, F, SP | | | |
| 66:24-67:2 | | | | |
| 67:4-9 | | | | |
| 67:11-68:3 | R, F, SP | | | |
| 68:11-14 | R | | | |
| 68:16-22 | R | 68:23-25 | P, R | |
| 69:1-8 | R | 69:9-19 | P, R | |
| 69:22-70:2 | | | | |
| 70:4-19 | R, F, SP, MC | | | |
| 70:25-71:3 | R, F, SP, MC | | | |
| 75:16-19 | | | | |
| 75:21-76:4 | R | | | |
| 76:7-18 | R, F, SP, MC | | | |
| 76:23-24 | R, F, SP, MC | | | |
| 77:1-20 | R, F, SP, MC | | | |
| 82:11-14 | | | | |
| 82:16-24 | R | | | |
| 83:2-19 | R, F, SP, MC | | | |
| 84:2-23 | R, F, SP, MC | | | |
| 85:4-5 | R, F, SP, I | 85:6-9 | | |
| 85:10-25 | R, F, SP, V | | | |
| 89:6-16 | R, F, SP, MC | | | |
| 89:22-90:3 | R, F, SP, MC | | | |
| 90:9-91:10 | R, F, SP, MC | | | |

| Deposition of Mung Bernardo<br>September 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[9]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 91:12-15 | | | | |
| 91:17-92:6 | R, MC | | | |
| 92:9-12 | | | | |
| 92:14-21 | R | | | |
| 92:24-93:1 | R | | | |
| 93:3-94:11 | R, F, SP | | | |
| | | | | 96:15-96:16 |
| 97:5-10 | R | 96:17-97:4 | | |
| 97:15-18 | | | | |
| 97:20-98:10 | R | | | |
| 115:25-116:3 | | | | |
| 116:5-6 | | | | |
| 133:16-19 | | | | |
| 133:21-135:7 | R, F, SP, E, 701 | | | |
| 135:11-19 | R, F, SP, E, 701 | | | |
| 135:22-24 | R | | | |
| 137:6-8 | | | | |
| 137:12-22 | R, F, SP, E, 701, FRCP 30(b)(6) | | | |
| 137:25-138:2 | R, F, SP, E, 701, FRCP 30(b)(6) | | | |
| 138:4-8 | R, F, SP, E, 602, 701, FRCP 30(b)(6) | | | |
| 140:13-15 | | | | |
| 140:17-142:1 | R, F, SP, AA, V, E | | | |
| 142:11-19 | R, F, SP, AA | | | |

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:3-10 | H | | | |
| 8:13-9:11 | H | | | |
| 9:13-17 | I, H | 9:12-17 | | |
| 10:10-14 | H | | | |
| 10:16 | H | | | |
| 10:18-24 | I, H | 10:25-11:3 | FRCP 30(b)(6), P, R | |
| 11:24-12:7 | H | | | |
| 12:14-13:9 | I, H | 14:18-22 | FRCP 30(b)(6), P, R | |
| 15:16-18 | H | | | |
| 16:2-20:22 | H | | | |
| 21:2-7 | H | | | |
| 21:12-16 | H | | | |
| 22:11-18 | H | | | |
| 22:23-26:5 | R [re 23:9], H | | | |
| 26:8-10 | H | | | |

[10] Revance objects to Allergan's affirmative designation of Ron Broide's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[11] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[12] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[13] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Ron Broide as counter designations.

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 26:12-17 | H | | | |
| 26:21-24 | H | | | |
| 27:2 | H | | | |
| 27:4-29:19 | H | | | |
| 29:21-30:5 | H | | | |
| 30:10-31:5 | H | | | |
| 31:8-11 | H | | | |
| 31:13-32:6 | H | | | |
| 32:9-10 | H | | | |
| 32:14-16 | H | | | |
| 32:19-21 | H | | | |
| 32:23-33:4 | H | | | |
| 33:12-34:12 | 701 [re 33:23-34:12], H | | | |
| 34:15 | H | | | |
| 34:18 | H | | | |
| 34:20-24 | H | | | |
| 35:2-4 | H | | | |
| 35:6-18 | H | | | |
| 37:2-10 | H | | | |
| 37:19-22 | H | | | |
| 37:25-38:2 | H | | | |
| 38:4-7 | H | | | |
| 38:10-16 | H | | | |
| 39:3-6 | H | | | |
| 39:9 | H | | | |
| 40:12-16 | H | | | |
| 41:19-23 | H | | | |

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 41:25-42:9 | H | | | |
| 42:12-14 | H | | | |
| 42:16-19 | H | | | |
| 43:15-19 | H | | | |
| 44:23-25 | H | | | |
| 45:14-21 | H | | | |
| 46:9-13 | H | | | |
| 48:16-19 | H | | | |
| 48:22-23 | H | | | |
| 52:5-7 | H | | | |
| 52:24-53:2 | H | | | |
| 53:7-17 | 602, 701, H | 53:18-20; 53:25-54:12 | FRCP 30(b)(6), P, R, E, 701, SP, 602 | |
| 56:17-18 | H | | | |
| 56:24-57:4 | H | | | |
| 57:6-8 | H | | | |
| 57:12-14 | 602, 701, H | 58:3-6; 58:10-20 | FRCP 30(b)(6), P, E, 701, SP, L | |
| 57:16-58:2 | H | | | |
| 58:21-59:9 | 602, H | 59:21-23 | FRCP 30(b)(6), P, R, E | |
| 59:13-14 | H | | | |
| 59:16-20 | H | | | |
| 60:1-6 | H | | | |
| 60:8-21 | H | | | |
| 61:19-62:9 | H | 61:6-10; 62:18-20; 62:22; 62:24-63:1; 63:3 | FRCP 30(b)(6), P, R, PRIV | |
| 64:13-19 | H | | | |

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 64:23-65:1 | H | 65:3-9 | P | |
| 65:17-19 | H | | | |
| 65:22-66:2 | H | | | |
| 66:4-21 | H | | | |
| 67:20-22 | H | | | |
| 67:25-68:6 | H | | | |
| 68:10-16 | H | | | |
| 68:18-69:2 | H | | | |
| 71:9-73:7 | H | | | |
| 74:17-21 | H | | | |
| 74:23-75:7 | H | | | |
| 75:10-12 | H | | | |
| 75:14-22 | H | | | |
| 75:25-76:2 | H | | | |
| 76:4-25 | 701 [re: 76:20-25], H | 89:25-90:9; 95:9-12; 95:15-23 | FRCP 30(b)(6), P, R, SP, HYP, 701, E, 602 | |
| 77:8-17 | H | | | |
| 77:20-23 | H | | | |
| 77:25-78:22 | H | 78:23-25 | FRCP 30(b)(6), P, R, E, 701, SP | |
| 79:1-21 | H | | | |
| 79:25-80:4 | H | | | |
| 80:7-10 | H | | | |
| 80:12-81:3 | H | | | |
| 81:7-9 | 701, I, H | 81:16-19; 81:22-23 | FRCP 30(b)(6), P, R, V | |
| 81:25-82:2 | H | | | |
| 82:6-12 | H | | | |

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 82:14-84:9 | H | 89:17-21; 89:25-90:9; 95:9-12; 95:15-23 | FRCP 30(b)(6), P, R, SP, HYP, 701, E, 602 | |
| 84:22-85:10 | H | | | |
| 85:14 | H | | | |
| 85:16-25 | H | | | |
| 86:3 | 701, H | | | |
| 86:15-17 | H | | | |
| 86:21-87:7 | H | | | |
| 88:1-7 | H | | | |
| 88:11-20 | 701, H | 89:25-90:9; 95:9-12; 95:15-23 | FRCP 30(b)(6), P, R, SP, HYP, 701, E, 602 | |
| 88:22-89:2 | H | | | |
| 89:6-15 | H | | | |
| 90:23-92:4 | H | | | |
| 92:10-93:16 | H | | | |
| 94:5-8 | H | 94:9-15; 94:18; 95:2-4; 95:7; 95:9-12; 95:15-23 | FRCP 30(b)(6), P, R, V | |
| 97:8-18 | H | | | |
| 98:8-99:21 | H | | | |
| 99:24-100:6 | 701, H | | | |
| 100:8-25 | H | | | |
| 103:3-8 | H | | | |
| 103:14-104:13 | H | | | |
| 105:15-106:10 | H | 106:11-14 | FRCP 30(b)(6), P, R, V | |
| 106:21-107:23 | H | 106:11-14; 109:23-110:1; 110:4-7; 112:9-12 | FRCP 30(b)(6), P, R, V, I | |

| Deposition of Ron Broide[10,11] November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 108:16-109:5 | H | | | |
| 109:10-16 | H | | | |
| | | | | 110:02-110:03 |
| | | | | 110:08-110:18 |
| | | | | 110:20 |
| | | | | 110:22-110:25 |
| | | | | 111:03-111:10 |
| 113:21-115:8 | 602, H | 110:4-7; 112:9-12; 95:9-12; 95:15-23 | FRCP 30(b)(6), P, R, V, I, F | |
| 115:11-16 | 602, H | | | |
| 117:23-118:5 | H | 119:1-120:4 | FRCP 30(b)(6), P, R, V, SP | |
| 118:7-25 | H | | | |
| 126:8-10 | H | | | |
| 128:15-19 | H | | | |
| 130:2-7 | H | | | |
| 130:15-22 | H | | | |
| 131:1-2 | H | | | |
| 131:6-132:14 | H | | | |
| 132:25-133:1 | H | | | |
| 133:5-9 | SP, H | | | |
| 135:12-22 | H | | | |
| 137:13-15 | H | | | |
| 137:19-138:13 | H | | | |
| 138:15-139:10 | H | 139:11-15 | FRCP 30(b)(6), P, R, V | |
| 140:4-5 | H | | | |
| 140:11-18 | H | | | |

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 149:17-19 | H | | | |
| 149:21-150:1 | H | | | |
| 150:3-17 | H | | | |
| 150:19-151:10 | 602 [re: 151:6-10], H | | | |
| 151:12-17 | 602 [re: 151:14], H | | | |
| 151:20-24 | H | | | |
| 152:6-15 | H | | | |
| 153:21-25 | H | | | |
| 164:24-165:13 | H | | | |
| 165:15-19 | H | | | |
| 168:20-169:4 | H | | | |
| 169:22-170:3 | H | | | |
| 170:6-11 | H | | | |
| 170:13-25 | H | | | |
| 171:25-172:7 | H | 172:18-21; 172:24 | FRCP 30(b)(6), P, R, V | |
| 174:18-21 | H | | | |
| 174:24-175:4 | H | 174:9-13 | FRCP 30(b)(6), P, R, V, SP | |
| 175:6 | H | | | |
| 175:10-11 | 602, H | | | |
| 175:13-25 | H | | | |
| 176:6-177:19 | H | 177:22-23; 178:2-4 | FRCP 30(b)(6), P, R, V, SP, E, 701, 602 | |
| 181:14-25 | H | | | |
| 182:3-8 | H | | | |
| 182:17-183:6 | H | | | |
| 183:11 | H | | | |

| Deposition of Ron Broide[10,11]<br>November 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[12]** | **Revance's Counter-Designations[13]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 183:13-19 | H | | | |
| 184:25-186:2 | H | | | |
| 186:6-8 | H | | | |
| 186:10-15 | H | | | |
| 187:7-188:10 | H | 187:5-6; 190:23-191:18; 192:22-193:17 | FRCP 30(b)(6), P, R, V, I, SP | |
| 189:22-23 | H | | | |
| 190:2-8 | H | 190:10-12; 190:15-17 | FRCP 30(b)(6), P, R, V, SP | |
| | | | | 191:19-192:03 |
| 207:21-23 | H | | | |
| 208:1-7 | H | | | |
| 208:9-23 | H | | | |
| 210:1-7 | H | 208:24-209:6; 209:10-25 | FRCP 30(b)(6), P, R, V, SP | |
| 218:16-220:6 | 602, 701, LD, H | 220:19-221:4; 221:8-9 | FRCP 30(b)(6), OS, P, R, V, SP, L, F | |

| Deposition of Bryan Bullock<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[14]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:13-15 | | | | |
| 8:18-19 | | | | |
| 9:3-6 | | | | |
| 10:11-13 | | | | |
| 10:19-25 | | | | |
| 11:4-6 | | | | |
| 13:22-14:1 | | | | |
| 15:15-17 | | | | |
| 15:22-25 | | | | |
| 23:5-24 | | | | |
| 24:12-25:6 | | | | |
| 25:10-26:2 | | | | |
| 26:7-22 | | | | |
| 26:25-27:5 | | | | |
| 27:8 | | | | |
| 27:10-14 | | | | |
| 27:17-23 | | | | |
| 28:1-6 | | | | |
| 28:8-20 | | | | |
| 29:13-30:15 | | | | |

[14] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Bryan Bullock<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[14]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 31:1-4 | | | | |
| 31:8-21 | | | | |
| 31:23-32:4 | | | | |
| 32:15-20 | | | | |
| 32:25-33:6 | | | | |
| 33:14-34:7 | | | | |
| 34:12-24 | | | | |
| 35:5-11 | | | | |
| 35:18-20 | FRCP 30(b)(6) | 36:4–7; 37:24–38:19 | P, R | |
| 35:23-36:2 | FRCP 30(b)(6) | 36:4–7; 37:24–38:19 | P, R | |
| | | | | 36:08-36:11 |
| 36:12-37:23 | FRCP 30(b)(6) | 36:4–7; 37:24–38:19 | P, R | |
| 39:7-17 | FRCP 30(b)(6), R, P | | | |
| 39:23-40:4 | FRCP 30(b)(6), R, P | | | |
| 40:12-41:4 | | 41:9–16 | P, R, I | |
| | | | | 41:05-41:08 |
| 41:17-42:2 | | 41:9–16 | P, R, I | |
| 42:7-43:4 | | | | |
| 44:10-45:6 | | | | |
| 45:11-46:6 | 602, P, SP | 46:7-11 | P, R | |
| 46:15-21 | | | | |
| 47:2-50:2 | SP | | | |
| 50:19-51:6 | 602, E, SP | | | |
| 51:21-52:4 | AA | 51:7–20 | P, R | |
| 52:11-16 | | | | |
| 52:21-53:1 | FRCP 30(b)(6) | | | |
| 53:8-11 | | | | |

| Deposition of Bryan Bullock<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[14]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 54:10-12 | ID, FRCP 30(b)(6), P, F | | | |
| 54:14-19 | FRCP 30(b)(6), P, F | | | |
| 54:23-55:8 | FRCP 30(b)(6), 602, P, F, B | 57:10–22; 58:6–10 | P, R | |
| 55:11-16 | FRCP 30(b)(6), P, F | | | |
| 55:20-22 | FRCP 30(b)(6), P, F | | | |
| 57:23-58:2 | FRCP 30(b)(6), MC, P, F, 602 | 57:10–22; 58:6–10 | P, R | |
| 59:24-60:12 | | | | |
| 60:19-24 | | | | |
| 61:3-12 | 602, R, P | | | |
| 63:5-23 | | | | |
| 64:3-10 | | | | |
| 64:16-25 | | | | |
| 65:5-9 | | | | |
| 65:20-66:3 | | | | |
| 66:17-67:8 | | 67:14–25 | P, R, I | |
| | | | | 68:01-68:12 |
| | | | | 68:24-69:20 |
| | | | | 70:04-70:17 |
| 71:11-13 | FRCP 30(b)(6), MC, P | 68:13–23; 69:22–70:3<br>71:3–10 | P, R, I | |
| 71:15-72:18 | | | | |
| 72:23-74:1 | | | | |
| 74:11-76:6 | | 76:7–16; 76:19–77:12 | P, R, I | |
| 82:14-85:23 | FRCP 30(b)(6), 602, E | | | |

| Deposition of Bryan Bullock<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[14]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 86:3-87:18 | FRCP 30(b)(6), 602, MC, E | | | |
| 87:22-89:12 | FRCP 30(b)(6), 602, MC, E | | | |
| 89:14-17 | | | | |
| 89:22-90:11 | | | | |
| 90:17-91:24 | | | | |
| 92:15-94:10 | AA, MC, P, F | | | |
| 94:14-96:23 | AA, MC, P, F | | | |
| 99:18-101:10 | FRCP 30(b)(6), P, F, 602, E, SP | | | |
| 102:17-19 | | | | |
| 102:23-104:9 | CO | | | |
| 104:12-105:7 | | 105:8–11 | P, R | |
| 105:12-106:15 | | | | |
| 107:16-109:24 | P | | | |
| 110:11-13 | P | | | |
| 118:14-119:1 | AA, R, P | | | |
| 123:7-124:23 | | | | |
| 125:20-25 | | 126:5–22 | P, R | |
| 127:7-16 | P | 126:5–22 | P, R | |
| 129:16-21 | | | | |
| 130:2-11 | | | | |
| 130:15-131:2 | | | | |
| 131:25-133:21 | | 134:4–135:9; 136:1–4 | P, R, I, MC | |
| | | | | 135:10-135:25 |
| 136:25-137:17 | | | | |

| Deposition of Bryan Bullock<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[14]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 138:8-10 | | | | |
| 142:21-143:9 | | | | |
| 151:9-152:4 | | | | |
| 152:14-153:20 | | | | |
| 157:21-158:19 | | | | |

| Deposition of Jill Carey[15,16]<br>November 21, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[17]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 06:23-06:25 | | | | |
| 13:16-15:22 | | | | |
| 16:06-16:08 | | | | |
| 17:22-18:17 | | | | |
| 33:22-34:07 | I, MC, MIL, NP | 34:8-12 | | |
| 34:13-34:16 | MIL, NP | 34:17-36:3 | CO, R, P, SP | |
| 36:04:34-06 | ID, MIL, NP | 36:7-19 | R, P | |
| 36:20-37:01 | MIL, NP | 38:15-38:21; 39:1-8 | CO, R, P, PRIV, ID | |
| 39:09-39:10 | MIL, NP | | | |

[15] Revance objects to Allergan's affirmative designation of Jill Carey's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804

[16] Revance objects to Allergan calling Ms. Jill Carey by deposition (or in person at trial). The disclosure of Ms. Carey as a trial witness is untimely. First, Ms. Carey was not disclosed in any Rule 26(a)(1) disclosure or any interrogatory response in this case. As a consequence, Allergan has never collected documents for which she is a custodian, nor was she deposed during the fact-discovery period in this case. In addition to lacking Ms. Carey's custodial documents, Allergan has never produced the accounting records that Ms. Carey testified about in her curtailed deposition (and discussed with Dr. Meyer as part of her supplemental report). Second, Ms. Carey was never listed on any Allergan trial witness list during the pre-trial exchanges, appearing for the time in a November 24, 2024 disclosure. Althought Ms. Carey has now been deposed, that deposition cannot cure any prejudice that would result from her late injection into this case. As stated above, Revance did not have the typical collection of documents to adequately cross-examine Ms. Carey at the deposition. And, Allergan cut short Ms. Carey's deposition at the two-hour mark. *See* D.I. 464 at 9–10.

[17] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Jill Carey[15,16] November 21, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[17]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 39:17-40:01 | MIL, NP | | | |
| 40:08-40:14 | MIL, NP | | | |
| 40:16-41:05 | MIL, NP | | | |
| 41:14-41:17 | MIL, NP | | | |
| 43:15-44:24 | MIL, NP | | | |
| 45:03-46:02 | MIL, NP | 46:14-18; 46:21-23 | | |
| 46:25-48:05 | MIL, NP | | | |
| 48:08-48:15 | MIL, NP | | | |
| 48:18-48:20 | I, MC, MIL, NP | 48:22-49:3; 49:6-11; 49:14-15 | ID, CO, R, P, L, V, SP, AF | |
| 49:17-49:21 | MIL, NP | | | |
| 49:23-49:25 | MIL, NP | | | |
| 50:02-50:14 | MIL, NP | 50:15-51:1; 51:4-17; 51:21-23; 52:7-22 | V, AF, CO, L, SP, MC, R, P | |
| 55:15-55:16 | MIL, NP | | | |
| 55:23-57:05 | MIL, NP | | | |
| 57:15-57:19 | I, MIL, NP | 57:20-58:3 | R, P | |
| 58:04-58:12 | MIL, NP | | | |
| 58:14-59:13 | MIL, NP | | | |
| 60:01:60-05 | MIL, NP | | | |
| 60:19-62:15 | MIL, NP | | | |
| 62:18-63:01 | MIL, NP | | | |
| 63:03-63:07 | MIL, NP | 63:9-13 | | |
| 63:14-64:08 | MIL, NP | | | |
| 65:05-65:11 | MIL, NP | | | |
| 65:19-66:08 | MIL, NP | | | |
| 66:16-67:08 | MIL, NP | | | |

| Deposition of Jill Carey[15,16]<br>November 21, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[17]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 67:11-67:17 | MIL, NP | | | |
| 68:21-69:01 | MIL, NP | | | |
| 69:09-69:12 | MIL, NP | 69:25-70:5; 70:7-70:14; 70:18-20; 71:11-13 | V, AF, CO, L, SP, MC, R, P, I | |
| 72:06-72:14 | MIL, NP | | | |
| 72:24-73:18 | MIL, NP | | | |
| 74:16-75:14 | MIL, NP | 75:15-76:1; 76:4-77:3; 77:7-19; 77:23-78:6; 78:9-12; 79:19-80:9 | V, AF, CO, L, SP, MC, R, P, I | |
| 80:11-81:12 | MIL, NP | | | |
| 81:15-82:05 | MIL, NP | | | |
| 82:11-82:12 | MIL, NP | | | |
| 82:17-84:04 | MIL, NP | 84:5-8; 84:11 | V, AF, CO, L, SP, R, P | |
| 84:13-84:15 | MIL, NP | | | |
| 84:17-84:22 | MIL, NP | 84:24-86:3 | V, AF, CO, L, SP, R, P | |
| 86:04-86:09 | MIL, NP | 86:10-17 | V, F, AF, CO, L, SP, R, P | |
| 86:18-87:18 | MIL, NP | 87:21-24 | | |
| 87:25-88:10 | MIL, NP | | | |
| 88:15-88:16 | MIL, NP | | | |
| 88:21 | MIL, NP | | | |
| 88:23-89:09 | MIL, NP | 89:10-15 | R, P | |
| 89:16-89:18 | MIL, NP | | | |
| 89:20-89:25 | MIL, NP | | | |
| 90:02-91:09 | MIL, NP | 91:13-16; 91:21-92:18; 94:11-15 | V, R, P, CO, SP | |
| 95:03-95:10 | MIL, NP | | | |

| Deposition of Jill Carey[15,16]<br>November 21, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[17]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 97:07-97:10 | MIL, NP | 97:14-20; 98:14-24; 99:2-23; 100:2-22; 101:1-13; 102:4-10; 102:13-23; 103:1-19; 103:24-104:1; 104:7-12; 104:18-105:15 | V, AF, CO, L, SP, MC, R, P, I, F | |
| 106:01-106:13 | MIL, NP | | | |
| 106:15-106:22 | MIL, NP | | | |
| 106:25-107:02 | MIL, NP | 107:24-108:6; 108:8-109:6; 109:9-10 | V, CO, L, F, ID | |

| Deposition of Meagan Clevenger<br>November 2, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[18]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 6:4-25 | | | | |

[18] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets

| Deposition of Meagan Clevenger<br>November 2, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[18]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 7:8-8:22 | | | | |
| 9:1-10 | | | | |
| 9:15-10:11 | | | | |
| 10:16-11:8 | | | | |
| 12:10-14 | | | | |
| 12:21-22 | V | | | |
| 13:1-8 | I | | | |
| 14:2-25 | SP | | | |
| 15:2-16:13 | I | | | |
| 17:2-19:4 | SP | | | |
| 20:8-22 | I | 20:23-21:3 | P, R | |
| 21:10-25 | | | | |
| 22:16-25 | | | | |
| 24:11-13 | V | | | |
| 24:16-25:1 | V | | | |
| 25:9-24 | I, AA | 25:2-8 | P, R | |
| 26:4-27:7 | | | | |
| 27:21-28:6 | SP | | | |
| 28:8-13 | SP | | | |
| 29:10-18 | | | | |
| 30:17-32:3 | | | | |
| 32:18-33:9 | | | | |
| 33:17-36:22 | | | | |
| 37:13-38:5 | | | | |

containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Meagan Clevenger<br>November 2, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[18]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 38:14-39:6 | | | | |
| 39:11-41:17 | SP | | | |
| 41:20-42:8 | | | | |
| 42:11-20 | | | | |
| 43:8-15 | | 43:16-18 | P, R | |
| 43:19-44:2 | | | | |
| 48:20-49:25 | SP | | | |
| 50:6-51:22 | | | | |
| 53:14-22 | | | | |
| 53:25-54:19 | | | | |
| 55:1-7 | | | | |
| 59:24-60:5 | | | | |
| 60:24-61:2 | | | | |
| 61:3-8 | | | | |
| 61:17-19 | AA | | | |
| 61:22 | AA | | | |
| 62:1-63:11 | | | | |
| 63:13-64:19 | | | | |
| 65:11-66:4 | | 66:5-68:14 | P, R, I | |
| | | | | 68:15-71:17 |
| 74:18-25 | | | | |
| 78:10-79:3 | I | 79:4-11 | | |
| 79:12-80:16 | | | | |
| 81:16-82:7 | | | | |
| 82:19-83:6 | | | | |
| 83:12-14 | | | | |
| 84:4-11 | | | | |

| Deposition of Meagan Clevenger<br>November 2, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[18]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 84:17-20 | | 84:12-16 | P, R | |
| 85:12-15 | | | | |
| 85:20-23 | | | | |
| 88:13-17 | | 88:18-22 | P, R | |
| 91:24-92:6 | | 92:7-14 | P, R | |
| 92:22-25 | V | | | |
| 93:3-11 | | | | |
| 93:13-16 | I | 93:12 | | |
| 95:8-10 | R | 95:11-19; 97:14-22; 98:6-18 | P, R, LD, V | |
| 95:20-23 | | | | |
| 98:11-99:11 | R, SP | 99:12-15 | P, R | |
| 99:16-18 | R | | | |

| Deposition of Michelle Frazier<br>October 16, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[19]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 7:10-20 | | | | |
| 9:1-5 | R | | | |
| 9:9-12:17 | R, MC | | | |
| 14:20-15:9 | R | | | |
| 15:18-16:14 | R | | | |
| 16:24-17:13 | R | | | |
| 17:21-25 | R | | | |
| 18:4-5 | R | | | |
| 18:10-19:13 | R | 19:14-17 | R, V, SP, ID | |
| 19:18-20:17 | R | | | |
| 20:23-21:12 | R | | | |
| 21:18-24 | R | | | |
| 22:2-20 | R | | | |
| 23:3-22 | R | | | |
| 24:1-25:19 | R | | | |
| 26:8-19 | R, SP | | | |
| 26:23-27:17 | R | | | |
| 28:15-31:8 | R, P | | | |
| 31:14-19 | R, P | | | |
| 32:23-37:25 | R, V | | | |

[19] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Michelle Frazier<br>October 16, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[19]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 38:5-39:12 | R, P, FRCP 30(b)(6) | | | |
| 39:15-24 | R, P, FRCP 30(b)(6) | 39:25-40:10 | R, V, SP | |
| 42:8-43:15 | R | | | |
| 43:19-46:13 | R | | | |
| 46:20-24 | R, MC, V | | | |
| 47:7-50:18 | R, V | | | |
| 51:2-14 | R, V, P, SP | | | |
| 51:17-53:5 | R, V, MC, SP | 53:6-54:7 | R, V, SP | |
| 54:8-21 | R, V, MC, SP, F | | | |
| 54:24-57:15 | R, V, MC, SP, F | | | |
| 58:5-59:15 | R, V, MC, SP, F | | | |
| 59:24-60:21 | R, V, SP, F | | | |
| 61:3-62:8 | R, V, F | | | |
| 63:4-17 | R, V, F, MC | 62:9-62:24, 63:2-3 | | |
| 65:19-67:7 | R, SP, F, MC | | | |
| 67:18-68:16 | R | | | |
| 68:21-25 | R, V | | | |
| 69:3-13 | R, F | 69:14-21 | | |
| 69:22-70:1 | R, F | 70:2-22 | | |
| 70:23-73:16 | R, F, MC | 73:17-18, 73:21-74:5, 74:8-13 | | |
| 74:24-75:2 | R, MC, AA | | | |
| 75:6-21 | R, MC, AA | | | |
| 75:25-76:11 | R, MC, AA, V | | | |
| 76:14-18 | R, MC, AA, V | 76:19-21 | R, V, SP | |
| 76:22-80:3 | R, F, SP, V, E, 701, MC | | | |
| 80:23-81:13 | R, V | | | |

| Deposition of Michelle Frazier<br>October 16, 2023 | | | | |
|---|---|---|---|---|
| Allergan's Designations | Revance's Objections[19] | Revance's Counter-Designations | Allergan's Objections to Counter-Designations | Allergan's Counter-Counter-Designations |
| 82:7-9 | R, V, MC, AA | 81:14-18, 81:21-25, 82:3-6 | ID | |
| 82:12-14 | R, V, MC, AA | 81:14-18, 81:21-25, 82:3-6 | ID | |
| 82:17-19 | R, V, MC, AA | 81:14-18, 81:21-25, 82:3-6 | ID | |
| 82:22-83:2 | R, V, MC, AA | | | |
| 83:10-14 | R, V, MC, AA | 81:14-18, 81:21-25, 82:3-6 | ID | |
| 83:17 | R, V, MC, AA | | | |
| 85:2-12 | R | | | |
| 86:16-21 | R, SP, F | | | |
| 87:19-21 | R | | | |
| 88:7-89:3 | R, SP, F, ID | | | |
| 94:22-96:22 | R, V, SP, F | | | |
| 96:25-97:11 | R, V, SP, F | | | |
| 98:7-20 | R, MC | 99:11-15 | | |
| 99:2-8 | R | | | |
| 99:25-100:15 | R, V, SP F | | | |
| 100:21-103:14 | R, V, SP, F, MC | | | |
| 103:21-105:11 | R, V, MC, SP, F | 105:12-20 | R, V, SP | |
| 108:4-109:18 | R | | | |
| 110:1-113:5 | R, P, F, V, SP, MC | 113:6-8 | R, V, SP | |
| 113:18-24 | R, SP, F | | | |
| 114:2-5 | R | | | |
| 114:12-121:4 | R, V, F, SP, P, MC, FRCP 30(b)(6) | | | |

| Deposition of Michelle Frazier<br>October 16, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[19]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 121:6-122:20 | R, V, F, SP, P, MC | | | |
| 125:1-129:13 | R, F, SP, P, FRCP 30(b)(6) | | | |
| 129:16-17 | R, F, SP, P, FRCP 30(b)(6) | | | |

| Deposition of Conor Gallagher<br>October 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[20]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 10:12-17 | | | | |
| 10:23-11:1 | | | | |
| 11:7-13 | | | | |
| 11:18-19 | | | | |
| 13:7-8 | | | | |
| 13:11-14:21 | | | | |
| 14:24-15:17 | | | | |
| 15:20-16:19 | MIL; P; R | | | |
| 17:18-20 | MIL; P; R | | | |
| 18:1-7 | MIL; P; R | | | |
| 18:10-20:4 | MIL; P; R | | | |
| 20:6-21:10 | MIL; P; R | | | |
| 21:19-22 | MIL; P; R | | | |
| 22:9-23:12 | MIL; P; R | | | |
| 23:14-19 | MIL; P; R | | | |
| 24:4-13 | MIL; P; R | | | |
| 25:7-12 | | | | |
| 25:14-26:5 | MIL; P; R | | | |
| 26:7-14 | MIL; P; R | | | |
| 27:8-28:4 | MIL; P; R | | | |

[20] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Conor Gallagher<br>October 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections**[20] | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 29:14-20 | MIL; P; R | | | |
| 30:6-13 | MIL; P; R | | | |
| 31:9-15 | MIL; P; R | | | |
| 31:20-32:1 | MIL; P; R; AF | | | |
| 32:7-14 | MIL; P; R | | | |
| 34:15-23 | MIL; P; R | | | |
| 35:6-18 | | | | |
| 36:7-37:3 | | | | |
| 37:6-39:24 | MIL;P; R | | | |
| 40:17-21 | | | | |
| 41:12-42:3 | | | | |
| 42:5-9 | | | | |
| 44:9-25 | R | | | |
| 45:5-16 | R | | | |
| 45:23-46:17 | | | | |
| 47:8-14 | R | | | |
| 47:18-48:15 | R, FRCP 40(b)(6) | | | |
| 48:19-49:18 | | | | |
| 50:13-18 | | | | |
| 51:6-10 | | | | |
| 55:17-19 | V | | | |
| 56:5-9 | | | | |
| 56:12-59:12 | V, F [re:57:11-16], 602 [re:57:11-16] | | | |
| 59:24-60:3 | | | | |
| 60:5-11 | | | | |
| 60:15-62:13 | V | | | |

| Deposition of Conor Gallagher<br>October 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[20]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 62:19-63:1 | V, | | | |
| 63:15-20 | | | | |
| 63:25-64:16 | E | 64:17-25 | P, R | |
| 65:1-14 | | | | |
| 66:2-68:10 | | | | |
| 69:1-8 | | | | |
| 69:10-16 | | | | |
| 71:12-72:17 | E | | | |
| 72:20-73:2 | E, 602 | | | |
| 73:22-23 | | | | |
| 73:25-74:2 | | | | |
| 74:4-8 | V, P, MC | | | |
| 75:1-16 | AF, E, P | | | |
| 75:19-22 | | | | |
| 76:12-17 | | | | |
| 76:19-77:8 | | | | |
| 77:10-78:8 | | | | |
| 78:11-12 | | | | |
| 78:14-79:3 | | | | |
| 79:6 | | | | |
| 79:9-80:21 | E, V, R, FRCP 40(b)(6) | | | |
| 83:5-9 | E | | | |
| 83:12-17 | | | | |
| 83:19-23 | | | | |
| 84:7-9 | | | | |
| 84:11-25 | E | | | |
| 85:2-86:21 | E | | | |

| Deposition of Conor Gallagher<br>October 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[20]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 87:5-8 | | | | |
| 87:10 | | | | |
| 87:12-88:3 | E, V, P | | | |
| 88:15-16 | | | | |
| 88:18-21 | | | | |
| 88:23-90:10 | E, V, P | | | |
| 90:13 | | | | |
| 90:16-17 | | | | |
| 90:19-23 | | | | |
| 90:25-92:5 | F | | | |
| 92:7-94:12 | F, E, V, R | | | |
| 94:14-95:6 | | 95:25-96:2 | P, R | |
| 95:8-24 | | | | |
| 96:14-97:9 | 602, R | 96:10-13 | P, R | |
| 97:12 | 602, R | 96:10-13 | P, R | |
| 97:14-100:19 | 602, R | 96:10-13 | P, R | |
| 100:21-24 | 602, R | 96:10-13 | P, R | |
| 101:4-13 | I | 101:14-16 | | |
| 101:15-103:6 | I | 101:14-16 | | |
| 103:12-14 | V | | | |
| 103:16-22 | | | | |
| 103:25-104:5 | V | | | |
| 104:7-9 | | | | |
| 104:23-105:5 | 602, R | | | |
| 106:3-14 | | | | |
| 106:17-18 | | | | |
| 106:20-107:18 | | | | |

| Deposition of Conor Gallagher<br>October 20, 2023 | | | | |
|---|---|---|---|---|
| Allergan's Designations | Revance's Objections[20] | Revance's Counter-Designations | Allergan's Objections to Counter-Designations | Allergan's Counter-Counter-Designations |
| 107:22-108:11 | | | | |
| 108:13-23 | | | | |
| 109:1-2 | | | | |
| 109:4-9 | | | | |
| 110:2-8 | E | | | |
| 110:20-25 | E | | | |
| 111:8 | | | | |
| 111:22-25 | | | | |
| 112:10-113:20 | 602 | 113:21-25; 114:2-5 | P, R | |
| 114:17-23 | 602 | 113:21-25; 114:2-5 | P, R | |
| 115:11-116:10 | 602 | 113:21-25; 114:2-5 | P, R | |
| 116:13-16 | | | | |
| 116:18-19 | | | | |
| 116:21-117:4 | 602 | 117:15-16 | P, R | |
| 117:23-119:10 | 602 | 117:15-16 | P, R | |
| 119:17-22 | | | | |
| 119:25-120:6 | | | | |
| 120:10-121:13 | 602 | 120:7-9 | P, R | |
| 121:20-122:9 | 602 | 120:7-9; 121:14-19; 122:10-14 | P, R | |
| 123:1-3 | AF | 123:6-7; 123:9-11 | P, R | |
| 123:12-18 | | | | |
| 123:21-124:2 | | | | |
| 124:4-16 | | | | |
| 124:21-127:4 | E, R, 602, 701, P | | | |
| 127:6-17 | | 127:19-23 | | |
| 127:24-128:2 | | | | |

| Deposition of Conor Gallagher<br>October 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[20]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 128:4-6 | | | | |
| | | | | 128:07-134:22 |
| 135:5-9 | F | | | |
| 135:11-25 | | | | |
| 136:8-137:2 | | | | |
| 137:11-14 | R | | | |
| 138:5-11 | R, P, FRCP 30(b)(6) | | | |
| 138:17-19 | R, P, FRCP 30(b)(6) | | | |
| 138:21-23 | R, P, FRCP 30(b)(6) | | | |
| 139:6-10 | R, P, FRCP 30(b)(6) | | | |
| 139:13-14 | R, P, FRCP 30(b)(6) | | | |
| 141:3-7 | | | | |
| 141:10-19 | | | | |
| 142:7-13 | | 142:14-16 | P, R | |

| Deposition of Jamie Gonzales[21,22]<br>August 31, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[23]** | **Revance's Counter-Designations[24]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:14-16 | H | | | |
| 9:23-10:1 | H | | | |
| 10:12-23 | H | | | |
| 11:3-8 | I, H | 11:9–22 | P, V, R, FRCP 30(b)(6) | |
| 12:17-21 | I, H | 12:22-13:8 | | |
| 15:18-16:17 | I, H | | | |
| 16:24-17:11 | H | | | |
| 18:14-19:13 | H | | | |
| 19:19-20:24 | H | | | |
| 21:3-18 | H | | | |
| 22:5-13 | H | | | |
| 23:8-19 | R, P, H | | | |
| 23:25-24:4 | R, P, H | | | |
| 24:23-25:3 | H | | | |

[21] Revance objects to Allergan's affirmative designation of Jamie Gonzales's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[22] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[23] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[24] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Jamie Gonzales as counter designations.

| Deposition of Jamie Gonzales[21,22]<br>August 31, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[23]** | **Revance's Counter-Designations[24]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 25:8-15 | H | | | |
| 26:7-15 | H | | | |
| 27:10-28:6 | H | | | |
| 31:12-32:1 | H | | | |
| 32:8-21 | R, P, H | | | |
| 33:2-6 | R, P, H | | | |
| 33:11-34:3 | I, H | 34:4–5; 34:9 | | |
| 36:8-21 | H | | | |
| 37:15-19 | H | | | |
| 37:24-38:7 | H | | | |
| 38:10-17 | H | | | |
| 40:19-41:13 | H | | | |
| 43:21-44:1 | H | | | |
| 44:22-45:2 | H | | | |
| 47:7-18 | H | | | |
| 49:5-20 | H | | | |
| 50:15-17 | P, V, H | | | |
| 50:24-25 | P, V, H | | | |
| 51:3-5 | P, V, H | | | |
| 55:10-24 | H | | | |
| 57:2-17 | P, Hearsay, 602, H | 57:18–58:10; 58:18–59:6; 61:17–62:23 | P, V, R, SP, I, FRCP 30(b)(6) | |
| | | | | 59:10-59:23 |
| | | | | 59:25-61:16 |
| 66:22-67:3 | H | | | |
| 68:4-18 | H, P | | | |

| Deposition of Jamie Gonzales[21,22]<br>August 31, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[23]** | **Revance's Counter-Designations[24]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 69:9-12 | H, P, V, SP | 69:23 – 70:10 | P, V, R, FRCP 30(b)(6), SP, MC, I | |
| | | | | 69:13-69:22 |
| | | | | 70:11-70:21 |
| | | | | 70:23-70:24 |
| | | | | 71:01-71:04 |
| 73:13-21 | H | | | |
| 73:23-74:6 | H | | | |
| 74:11-75:7 | H | | | |
| 75:16-76:1 | H, B, 602, NP | 76:2–13 | P, V, R | |
| 87:10-14 | H | | | |
| | | | | 90:23-90:25 |
| | | | | 91:02-91:03 |
| | | | | 91:05-91:09 |
| | | | | 91:11-91:20 |
| | | | | 94:25-96:19 |
| 99:21-24 | F, H | | | |
| | | | | 101:20-106:17 |
| 110:15-25 | H | | | |
| 111:3-6 | H | | | |
| 111:16-112:8 | H | | | |
| 112:13-24 | R, P, H | | | |
| 113:2-22 | H, R, P, SP | 113:23–114:13 | P, V, R, I | |
| | | | | 114:14-116:06 |
| 116:7-15 | H | | | |
| 117:6-118:5 | H, P, SP | | | |
| 118:8-120:3 | H | | | |

| Deposition of Jamie Gonzales[21,22]<br>August 31, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[23]** | **Revance's Counter-Designations[24]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| | | | | 132:24-133:02 |
| | | | | 137:02-138:14 |
| 163:23-164:14 | H | | | |
| | | | | 204:25-205:11 |
| | | | | 205:18-206:06 |
| | | | | 207:20-208:01 |
| 210:25-211:20 | 602, H, F, P, SP | 211:21–24; 212:1–10 | P, V, R, FRCP 30(b)(6), E, 701, I | |
| | | | | 212:11-212:25 |
| | | | | 219:06-219:10 |
| | | | | 219:12-219:17 |
| | | | | 221:11-223:03 |
| 223:4-20 | H | 223:21-224:8 | P, I, R | |
| | | | | 224:09-224:14 |
| 224:15-19 | H | | | |
| 224:21-225:3 | H | 225:4-226:1 | P, V, R, FRCP 30(b)(6), I | |
| | | | | 226:02-226:06 |
| 228:16-22 | H | | | |
| 229:2-230:1 | H, P | | | |
| 230:4-8 | H | | | |
| 230:10-11 | H | | | |
| 230:17-23 | H | | | |
| 232:18-21 | H | | | |

| Deposition of Maria Green<br>September 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[25]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:13-17 | | | | |
| 9:22-23 | | | | |
| 12:10-23 | | | | |
| 13:6-20 | | | | |
| 14:15-15:4 | | | | |
| 15:16-19:3 | | | | |
| 19:21-21:9 | | | | |
| 23:2-4 | | | | |
| 25:14-19 | V | | | |
| 27:15-28:2 | | | | |
| 28:16-29:2 | | | | |
| 31:21-32:10 | | | | |
| 32:16-33:10 | | 33:11-16 | P, R | |
| 33:17-34:1 | | | | |
| 34:4-13 | | | | |
| 39:12-22 | | | | |
| 40:22-41:8 | | 41:9-10 | P, R, I | |
| | | | | 41:11-42:19 |
| 43:10-18 | | | | |
| 44:14-16 | | | | |
| 44:23-45:10 | | | | |

[25] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Maria Green<br>September 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[25]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 45:18-21 | | | | |
| 46:4-7 | | | | |
| 46:14-21 | L | | | |
| 47:16-22 | | | | |
| 48:3-13 | | | | |
| 48:20-49:22 | | | | |
| 52:1-9 | | | | |
| 52:13-24 | | | | |
| 53:10-15 | L | | | |
| 56:22-57:2 | | | | |
| 57:8-21 | | | | |
| 58:2-4 | | | | |
| 61:18-62:7 | | | | |
| 62:17-63:8 | | | | |
| 63:15-20 | V | 63:21-64:7 | P, R, I | |
| | | | | 64:08-64:16 |
| 64:17-21 | V | 64:22-65:1 | P, R | |
| 65:4-16 | | | | |
| 66:10-21 | | | | |
| 67:9-16 | | | | |
| 67:20-68:2 | | | | |
| 71:25-73:3 | | | | |
| 73:10-22 | | | | |
| 73:25-74:4 | | | | |
| 74:17-75:11 | | | | |
| 75:25-76:6 | | | | |
| 77:7-17 | | | | |

| Deposition of Maria Green<br>September 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[25]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 77:22-78:7 | | | | |
| 78:22-79:1 | | | | |
| 79:8-24 | | | | |
| 80:1-81:13 | | | | |
| 86:7-24 | L, V, 602 | | | |
| 87:6-10 | S | | | |
| 87:13-14 | S | | | |
| 88:20-89:10 | S | | | |
| 89:14-91:6 | | | | |
| 91:20-92:3 | | | | |
| 92:16-21 | | | | |
| 96:2-17 | | | | |
| 96:23-98:8 | | | | |
| 98:25-99:11 | V, 602 | | | |
| 99:21-100:25 | P, 602 | | | |
| 101:2-13 | | | | |
| 101:20-102:8 | | | | |
| 103:15-104:16 | | | | |
| 104:18-19 | | | | |
| 104:23-106:8 | | | | |
| 119:1-16 | | | | |
| 120:4-6 | | | | |
| 120:13-20 | | 120:21-121:1 | P, R, I | |
| | | | | 121:16-122:16 |
| | | | | 123:09-123:16 |
| 123:17-124:11 | | | | |
| 124:13-25 | V | | | |

| Deposition of Maria Green<br>September 7, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[25]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 125:10-25 | | | | |
| 126:8-13 | | | | |
| 127:10-17 | | | | |
| 131:7-132:7 | | 132:8-10 | P, R | |
| 132:11-133:5 | | | | |
| 134:1-18 | | | | |

| Deposition of Terrence Hunt[26,27] October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:22-11:25 | H | | | |
| 12:4-8 | H | | | |
| 16:2-16 | H | | | |
| 16:19-21 | H | | | |
| 16:24-24:7 | H | | | |
| 24:12-25:13 | H | | | |
| 25:16-17 | H | | | |
| 25:19-22 | H | | | |
| 25:24-26:16 | H | | | |
| 26:18-27:23 | H | | | |
| 28:3-29:3 | H | | | |
| 29:18-22 | H | | | |
| 30:8-37:25 | H | | | |
| 38:6-42:18 | H | | | |
| 42:23-43:12 | H | | | |

[26] Revance objects to Allergan's affirmative designation of Terrence Hunt's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[27] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[28] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[29] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Terrence Hunt as counter designations.

| Deposition of Terrence Hunt[26,27]<br>October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 43:14-44:2 | H | | | |
| 44:9-52:15 | R [re 46:21-50:3, 50:15-51:18], H | | | |
| 52:17-53:12 | H | | | |
| 53:22-55:10 | H | | | |
| 58:10-60:22 | V [re 58:13-59:3], H | | | |
| 61:1-2 | H | | | |
| 61:4-6 | H | | | |
| 61:8-10 | H | | | |
| 61:12-62:10 | H | | | |
| 62:12-16 | H | | | |
| 62:19-63:18 | H | | | |
| 63:20-24 | H | | | |
| 64:1-14 | H | | | |
| 64:18-65:11 | H | | | |
| 65:14-66:13 | H | | | |
| 67:11-68:17 | H | | | |
| 68:19-69:2 | H | | | |
| 69:20-71:23 | R [re 70:25-71:23], H | | | |
| 72:9-74:7 | R, H | | | |
| 74:9-75:3 | R, H | | | |
| 75:5-24 | R, H | | | |
| 76:6-22 | R, H | | | |
| 77:5-13 | R, H | | | |
| 77:15-22 | R, H | | | |
| 77:24-25 | R, H | | | |
| 78:2-4 | R, H | | | |

| Deposition of Terrence Hunt[26,27]<br>October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 78:6-15 | R, H | | | |
| 78:18-21 | R, H | | | |
| 78:23-79:4 | R, H | | | |
| 79:6-11 | R, H | | | |
| 79:14-20 | R, H | | | |
| 79:22-80:16 | R, H | | | |
| 81:16-18 | H | | | |
| 82:18-86:19 | H | | | |
| 87:10-89:4 | R [re 88:16-89:4], H | | | |
| 90:23-91:1 | H | 91:8-11<br>95:8-97:5<br>99:15-100:3 | P, R, V, I, MC, SP, IE, DUP | |
| 91:3-6 | H | | | |
| | | | | 93:16-95:07 |
| 99:8-14 | H | | | |
| 101:7-17 | H | 101:18-102:10 | P, R, V | |
| 102:11-103:16 | H | | | |
| 103:20-104:8 | H | | | |
| 104:12-21 | H | | | |
| 104:25-105:8 | H | | | |
| 105:10-12 | H | | | |
| 105:14-17 | H | 105:18-24 | P, R, V, 602, IE | |
| 106:17-25 | H | | | |
| 107:2-11 | H | | | |
| 107:13-110:5 | H | | | |
| 110:24-111:18 | H | | | |
| 112:24-113:11 | H | | | |

| Deposition of Terrence Hunt[26,27]<br>October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 113:25-114:5 | H | | | |
| | | | | 114:06-114:11 |
| 115:2-116:5 | H | 114:12-19 | P, R, V, I, SP, IE, DUP | |
| 116:9-24 | H | | | |
| 117:12-118:25 | H | | | |
| 119:2-5 | H | | | |
| 119:7-15 | H | | | |
| 119:19-120:5 | H | | | |
| 120:24-121:4 | H | | | |
| 121:8-10 | H | | | |
| 121:19-122:4 | H | | | |
| 122:21-123:11 | H | | | |
| 123:13-20 | H | | | |
| 123:24-125:8 | H | | | |
| 125:21-126:5 | H | | | |
| 126:7-15 | H | | | |
| 127:8-12 | H | 127:13-15 | P, R, V | |
| 129:19-131:15 | H | | | |
| 131:17-132:4 | R, H | | | |
| 132:6-135:23 | R [re 132:6-133:11], H | | | |
| 135:25-136:21 | H | | | |
| 136:23-137:9 | H | | | |
| 137:25-138:3 | H | 138:4-7<br>139:14-141:7<br>141:11-21 | P, R, V, I, SP, IE, DUP, AA | |
| | | | | 141:23-142:24 |
| 142:25-143:3 | H | | | |

| Deposition of Terrence Hunt[26,27] October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 143:5-24 | H | | | |
| 144:18-145:3 | H | 145:4-11 | P, R, V, I, SP, 602 | |
| 145:12-25 | H | | | |
| 146:2-8 | H | | | |
| 146:10-14 | H | | | |
| 146:21-148:9 | H | | | |
| 148:11-13 | H | | | |
| | | | | 151:18-152:06 |
| 152:7-9 | R, H | 149:15-150:16<br>150:18<br>150:20-23<br>150:25-151:16 | P, R, V, I, SP, IE, MC | |
| 152:11-18 | R, H | | | |
| 152:20-154:17 | R, H | | | |
| 154:25-156:1 | R, H | | | |
| 156:18-21 | H | | | |
| 156:23-157:5 | H | | | |
| 157:7-158:6 | ID [re 157:18-158:6], H | | | |
| 158:13-159:10 | H | 159:11-13<br>159:15-18<br>159:20-21<br>159:24-25 | P, R, V, SP, IE, DUP, MC | |
| 160:1-5 | H | | | |
| 160:7-22 | H | | | |
| 160:24-161:5 | H | | | |
| 161:7 | H | | | |
| 161:9-163:10 | H | | | |
| 163:12-164:1 | H | | | |

| Deposition of Terrence Hunt[26,27] October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 164:5-7 | H | | | |
| 164:9-14 | H | | | |
| 164:16-21 | H | | | |
| 164:23-25 | H | | | |
| 165:2-166:10 | H | | | |
| 166:12-167:8 | H | | | |
| 171:11-172:7 | H | | | |
| 173:7-9 | H | | | |
| 173:13-19 | H | | | |
| 174:10-175:14 | SP, H | | | |
| 177:2-178:25 | R, H | | | |
| 179:3-6 | H | | | |
| 179:8-9 | H | | | |
| 179:11-182:13 | R, H | | | |
| 182:22-183:4 | H | | | |
| 183:8-9 | H | | | |
| 183:11-13 | H | | | |
| 183:15-17 | H | | | |
| 183:19-20 | H | | | |
| 183:22-25 | H | | | |
| 184:2-11 | SP, H | | | |
| 184:13-15 | H | | | |
| 184:17-185:5 | H | | | |
| 185:7-186:1 | H | | | |
| 186:3-5 | H | 186:2 | | |
| 186:7-12 | H | | | |
| 186:14-19 | H | | | |

| Deposition of Terrence Hunt[26,27] October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 186:22-25 | H | | | |
| 187:4-8 | H | | | |
| 187:13-189:2 | H | | | |
| 189:5-9 | H | | | |
| 189:11-13 | H | | | |
| 189:18-191:3 | H | | | |
| 192:18-195:15 | R [re 193:15-195:11], H | | | |
| 195:18-21 | H | | | |
| 195:23-196:12 | H | | | |
| 196:14-200:25 | ID [re 196:6-200:25], H | | | |
| 208:4-209:1 | R, H | | | |
| 209:3-18 | R, H | | | |
| 209:20-211:22 | R, H | | | |
| 211:24-214:11 | R, H | | | |
| 214:13-215:1 | R, H | | | |
| 216:3-218:6 | R, H | | | |
| | | | | 219:21-220:19 |
| | | | | 220:21-221:20 |
| 221:22-222:16 | R, H | 218:7-219:20<br>222:17-223:10 | P, R, V, I, SP, MC, IE, DUP | |
| 223:11-16 | R, H | | | |
| 223:19-224:14 | R, H | 224:16-18<br>224:20-22<br>224:24-225:1 | P, R, V, SP, DUP, MC | |
| 225:2-21 | R, H | | | |
| 225:24-226:13 | R, H | | | |
| 226:24-227:14 | H | 227:15-22 | | |

| Deposition of Terrence Hunt[26,27]<br>October 26, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[28]** | **Revance's Counter-Designations[29]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 227:23-230:1 | H | | | |
| 230:3-7 | H | 230:9-19 | P, R, V, SP, H | |
| 230:20-232:25 | H | | | |
| 233:9-234:9 | H | 234:10-14 | P, R, V, SP, 602 | |
| 234:25-237:15 | H | | | |
| 237:18-238:1 | H | | | |
| 238:21-239:4 | H | | | |
| 243:2-244:5 | H | | | |
| 244:7-12 | H | | | |
| 244:14-17 | H | | | |
| 244:19-23 | H | | | |
| 244:25-245:4 | H | | | |
| 245:7-13 | H | | | |
| 245:15-246:10 | H | | | |
| 246:13-22 | H | | | |
| 253:14-19 | F, H | | | |
| 254:8-256:19 | R, H | | | |
| 272:17-273:1 | R, L, H | | | |
| 273:5 | R, L, H | | | |
| 273:11-15 | R, H | | | |
| 273:18-24 | R, H | | | |

| Deposition of Robert Jones<br>October 31, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[30]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 5:10-13 | | | | |
| 6:2-5 | | | | |
| 10:8-19 | R | | | |
| 11:1-2 | R | | | |
| 11:6-9 | R | | | |
| 11:21-25 | R | | | |
| 13:4-25 | R, P, MIL | | | |
| 15:9-12 | R, MIL | 15:18-16:11 | P, R, V | |
| 16:12-15 | R | | | |
| 16:19-17:4 | R | 17:5-6 | | |
| 17:7-18:11 | R, P, V, SP | 18:12-21 | P, R, V, I | |
| | | | | 19:06-19:23 |
| 20:19-21 | R | | | |
| 21:6-18 | R, F, SP | 21:21-24 | P, R | |
| 21:25-22:3 | R, F | | | |
| 22:24-23:1 | R, F, SP | | | |
| | | | | 23:02 |
| 24:9-15 | R, F, SP | 23:5-16, 23:18-24:1 | P, R, I | |
| 25:17-26:15 | R, F, SP | 26:16-21, 26:23-27:1 | P, R | |
| 27:3-5 | R | 27:6-8 | P, R, I | |

[30] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Robert Jones<br>October 31, 2023 | | | | |
|---|---|---|---|---|
| Allergan's Designations | Revance's Objections[30] | Revance's Counter-Designations | Allergan's Objections to Counter-Designations | Allergan's Counter-Counter-Designations |
| | | | | 27:09-27:15 |
| 27:16-28:3 | R, SP | 27:6-8 | P, R, I | |
| 28:10-18 | R, V, F, SP | | | |
| 28:24-29:13 | R, V, F, SP, I | 29:14-15 | | |
| 29:16-20 | R, V, F, SP | | | |
| 29:22-23 | R, V, F, SP | | | |
| 30:17-31:22 | R, F, SP | | | |
| 32:1-33:2 | R, F, SP | | | |
| 33:4-8 | R, F, SP | | | |
| 33:10-34:10 | R, SP | | | |
| 34:12 | R, SP | | | |
| 34:14-18 | R | | | |
| 35:4-20 | R, P, F, SP | 27:6-8, 35:21-36:7 | P, R, I | |
| 36:17-37:18 | R, SP | 27:6-8 | P, R, I | |
| 37:25-38:2 | R | | | |
| 38:6-7 | R | | | |
| 38:15-25 | R, F, SP | | | |
| 39:12-40:9 | R, F, SP, V | 40:10-14, 40:18-25 | P, R, I, ID | |
| 41:1-6 | R, F | | | |
| 41:24-42:1 | R | | | |
| 42:9-11 | R, V, F, SP | | | |
| 42:16-43:1 | R, V, F, SP | | | |
| 43:21-45:13 | R, F, MC | | | |
| 45:16 | R, F, MC | | | |
| 46:5-7 | R | | | |
| 46:13-23 | R, F, SP | | | |
| 46:25 | R, F, SP | | | |

| Deposition of Robert Jones<br>October 31, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[30]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 47:2-9 | R, F, SP | 46:16-21 | | |
| 47:13-48:5 | R, F, SP | | | |
| 48:21-50:3 | R, F, SP | | | |
| 57:16-24 | R, F, SP | | | |
| 58:9-13 | R, F, SP | 58:14-17, 58:19-59:19, 59:21-25 | P, R | |
| 60:10-23 | R | | | |
| 64:12-19 | R, F, SP | 64:20-22 | P, R | |
| 64:23-25 | R, F, SP | | | |
| 65:2-4 | R, F, SP | | | |
| 73:12-24 | R, F, SP, V | | | |
| 74:4-5 | R, F, SP, V | | | |
| 74:7-8 | R, F, SP, V | | | |
| 74:13-19 | R, F, SP, V | | | |
| 75:3-5 | R, F, SP, V | | | |
| 75:7-12 | R, F, SP, V | | | |
| 75:14-23 | R, F, SP, V | | | |

| Deposition of Stacey Klinkenborg[31,32]<br>September 22, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[33]** | **Revance's Counter-Designations[34]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:12-18 | H, R | | | |
| 9:16-19 | H, R | | | |
| 12:3-18 | H, R | | | |
| 13:1-7 | H, R | | | |
| 13:14-23 | H, R | | | |
| 18:22-20:5 | H, R | | | |
| 21:1-2 | H, R | | | |
| 21:4-13 | H, R | | | |
| 21:15-20 | H, R | | | |
| 22:2-12 | H, R | | | |
| 22:14-24 | H, R | | | |
| 23:13-23 | H, R | | | |
| 24:1-9 | H, R | | | |
| 24:11-19 | H, R | | | |
| 28:11-13 | H, SP, V, R | 28:20–29:5 | MC, SP, I, V | |

[31] Revance objects to Allergan's affirmative designation of Stacey Klinkenborg's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[32] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[33] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[34] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Stacey Klinkenborg as counter designations.

| Deposition of Stacey Klinkenborg[31,32]<br>September 22, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[33]** | **Revance's Counter-Designations[34]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 28:15-18 | H, SP, V, R | 28:20–29:5 | MC, SP, I, V | |
| | | | | 29:06-29:17 |
| 50:3-15 | H, R | | | |
| 61:12-16 | H, R | | | |
| 61:21-63:13 | H, R | | | |
| 67:4-68:3 | H, R | | | |
| 68:5-69:3 | H, P, R | | | |
| 93:13-94:2 | H, R | 94:21–95:17 | SP, 602, P, I, V, E, 701 | |
| 94:5-11 | H, R | 94:12–16; 94:21–95:17 | R, SP, 602, P, I, V, E, 701 | |
| 94:17-20 | H, R | 94:12–16 | R, P | |
| | | | | 95:23-96:16 |
| 201:3-202:12 | H, R | 202:14–15; 202:17-203:19 | I, SP, 602, V, R, P | |

| Deposition of Kellie Lao<br>September 13, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[35]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:12-18 | | | | |
| 8:22-24 | | | | |
| 10:17-11:9 | R, L | | | |
| 11:13-12:1 | | | | |
| 13:9-14 | | | | |
| 13:16-15:16 | | | | |
| 15:18-16:1 | R | | | |
| 16:15-19:15 | R, P, MIL | | | |
| 21:19-22:21 | R, P, V, F, MIL | | | |
| 23:3-5 | R | | | |
| 23:16-17 | R | | | |
| 29:3-10 | R, P, MIL | | | |
| 32:11-34:22 | R, V, F, FRCP 30(b)(6) | | | |
| 35:4-12 | R, V, F, FRCP 30(b)(6) | | | |
| 35:17-20 | R, F, FRCP 30(b)(6) | | | |
| 35:25-36:3 | R, F, FRCP 30(b)(6) | | | |
| 39:7-9 | R, F, FRCP 30(b)(6) | | | |
| 39:24-40:22 | R, SP | | | |
| 46:8-17 | R, F, SP | | | |
| 48:11-49:6 | R, F, SP | | | |

[35] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Kellie Lao<br>September 13, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[35]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 50:13-16 | R, V, MC | | | |
| 58:21-59:1 | R, V, SP | | | |
| 59:14-60:11 | R, P, FRCP 30(b)(6), V, AA, MIL | 59:2-12, 60:19-61:8, 61:11-22 | P, R | |
| 60:14-17 | R, P, FRCP 30(b)(6), V, AA, MIL | 59:2-12, 60:19-61:8, 61:11-22 | P, R | |
| 63:6-19 | R, F, SP, FRCP 30(b)(6) | | | |
| 63:25-64:3 | R, F, SP, P, FRCP 30(b)(6), MIL | | | |
| 65:9-11 | R, F, SP, FRCP 30(b)(6) | 65:12-16 | P, R | |
| 65:17-24 | R, F, SP, FRCP 30(b)(6) | 65:12-16 | P, R | |
| 67:11-68:4 | R, F, SP, E, 701 | | | |
| 70:13-17 | R, F, SP, E | | | |
| 73:4-7 | | | | |
| 73:15-74:6 | R, F, SP, V | | | |
| 74:12-21 | R, F, SP, V | | | |
| | | | | 75:04 |
| 75:5-76:3 | R, F, SP, V, E | 74:22-75:3 | P, R, I | |
| 76:17-77:3 | R, F, SP, V, E, 602 | | | |
| 78:14-23 | R, V | | | |
| 79:13-14 | R | | | |
| 79:16-80:22 | R, V, SP, F | 80:23-81:1 | P, R | |
| 81:2-23 | R, F, SP, E, 701 | | | |
| 82:14-25 | R, V, AA | | | |
| 84:10-22 | R, SP, V, F | 84:23-85:5 | P, R | |
| 88:9-21 | | | | |
| 89:1-4 | R, F, SP | | | |

| Deposition of Kellie Lao<br>September 13, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[35]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 89:11-90:3 | R, F, SP, 602, E | | | |
| 90:6-91:3 | R, F, SP, 602, E | | | |
| 93:12-17 | R, F, SP, E, 701 | | | |
| 98:23-99:4 | | | | |
| 99:8-13 | | | | |
| 100:3-18 | R, F, SP | 100:19-101:2 | | |
| 101:3-12 | R | | | |
| 101:22-102:2 | R | | | |
| 102:17-103:2 | | | | |
| 103:7-20 | R, F, V, 701 | | | |
| 104:4-12 | R, F, V, P, MC | | | |
| 104:19-105:3 | R, F, V, P, MC | | | |
| 107:19-110:21 | R, F, P, MC | 110:22-25 | P, R | |
| 114:7-115:9 | R, F, P, MC | | | |
| 123:5-9 | R, F, P, MC | 123:10-19 | P, R | |
| 129:2-10 | R, F, V | | | |
| 129:25-131:3 | R, V | | | |
| 138:3-140:15 | R, F, V, MC, E, 701, 602 | | | |
| 146:18-147:3 | R, F, V, E, 701, 602, FRCP 30(b)(6) | | | |
| 147:14-148:7 | R, F, FRCP 30(b)(6) | | | |
| 149:19-150:4 | | | | |
| 150:7-23 | R, F, SP | 150:24-151:1, 151:6-8 | P, R, I | |
| 151:2-5 | R | 150:24-151:1, 151:6-8 | P, R, I | |
| | | | | 151:09-151:14 |
| 152:6-10 | R, F, SP | 150:24-151:1, 151:6-8 | P, R, I | |

| Deposition of Kellie Lao<br>September 13, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[35]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 155:5-156:8 | R, F, SP | 156:9-15 | P, R | |
| 156:16-157:8 | R | | | |
| 157:21-158:7 | | | | |
| 159:8-160:10 | R, F, SP | | | |
| 160:15-161:2 | R, F, SP | | | |
| 161:8-25 | R, F, MC | | | |
| 162:3-5 | R, F, MC | | | |
| 169:5-10 | R, P, F | 168:3-169:4 | P, R, DUP | |
| 173:22-174:3 | R, F | | | |
| 175:8-176:9 | R, F, SP | | | |
| 177:15-178:1 | R, F, SP | 178:2-23 | P, R | |
| 179:6-180:2 | R | | | |
| 180:6-22 | R, F, SP | | | |
| 181:16-182:6 | R, F, SP | | | |
| 184:20-186:2 | R, F, SP, H | 186:3-187:11 | | |
| 187:12-16 | R, F, SP, H | 186:3-187:11 | | |

| Deposition of Allen Li<br>October 5, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[36]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:10-13 | | | | |
| 9:21-23 | | | | |
| 10:19-11:19 | | | | |
| 11:23-13:5 | | | | |
| 13:8-24 | | | | |
| 14:2-16:2 | | | | |
| 16:11-17:12 | | | | |
| 17:17-20:24 | | | | |
| 21:1-23:19 | | | | |
| 24:1-25:1 | | | | |
| 25:21-26:18 | | | | |
| 27:19-28:14 | | | | |
| 28:18-29:18 | | 29:19-22 | R | |
| 29:23-30:6 | | 30:7-9; 31:1-7 | R | |
| 31:8-32:24 | SP | | | |
| 33:1-34:13 | FRCP 30(b)(6), R | | | |
| 39:14-15 | | | | |
| 39:18-40:4 | R | | | |
| 52:10-53:8 | | | | |
| 53:11-24 | | | | |

[36] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Allen Li<br>October 5, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[36]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 56:22 | | | | |
| 57:21-23 | | | | |
| 58:17 | 701, E, L | | | |
| 58:21-59:4 | 701, E, L | | | |
| 62:11-19 | 701, E, L | 62:3-10 | R | |
| 62:25-63:1 | 701, E, L | | | |
| 63:7-23 | 701, E, L | 63:24-64:3 | | |
| 64:4-6 | V, E, L | | | |
| 64:8-22 | V | | | |
| 65:24-67:1 | | | | |
| 67:3-9 | | | | |
| 67:21-68:3 | | | | |
| 68:9-12 | | 68:13-15 | R | |
| 68:16-21 | | | | |
| 69:12-74:7 | | 74:8-9 | | |
| 74:13-18 | | 74:10-12 | | |
| 74:21-76:5 | | | | |
| 76:7-22 | | | | |
| 76:24-77:1 | | | | |
| 77:4-7 | | | | |
| 77:18-78:25 | | | | |
| 79:3-19 | | | | |
| 79:21-23 | | | | |
| 80:1-81:25 | | | | |
| 82:8-9 | | | | |
| 82:12-83:10 | | | | |
| 83:12-84:2 | | | | |

| Deposition of Allen Li<br>October 5, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[36]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 84:3-85:9 | ID | | | |
| 85:14-20 | | 85:21-86:5 | | |
| 86:21-87:19 | | | | |
| 88:2-90:6 | | | | |
| 90:10-93:21 | SP | | | |
| 94:1-95:3 | | 95:5-8 | R | |
| 95:9-97:8 | | 97:9-14 | | |
| 97:19-98:11 | | | | |
| 98:19-99:9 | | | | |
| 99:12-100:15 | | | | |
| 100:18-101:4 | | | | |
| 101:9-16 | | | | |
| 101:24-102:23 | | | | |
| 103:17-104:12 | V | | | |
| 104:14-107:24 | V | | | |
| 108:1-110:4 | | 110:5-11 | R | |
| 110:12-15 | | 110:5-11 | R | |
| 110:18-23 | | 110:5-11 | R | |
| 111:7-25 | | | | |
| 112:4-115:21 | | | | |
| 116:8-117:13 | | | | |
| 118:7-12 | | | | |
| 119:5-23 | | | | |
| 120:1-4 | | | | |
| 120:24-123:2 | | | | |
| 125:9-23 | | | | |
| 126:6-13 | | | | |

| Deposition of Allen Li<br>October 5, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[36]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 126:22-128:13 | | 128:14-18 | R | |
| 129:4-25 | | | | |
| 131:1-133:7 | | | | |
| 133:11-135:10 | | | | |
| 135:13-138:11 | | | | |
| | | | | 138:12-138:23 |
| 138:24-140:4 | | | | |
| | | | | 140:05-141:17 |
| 144:17-25 | R | | | |
| 146:1-18 | R | | | |
| 146:21-25 | FRCP 30(b)(6), R | | | |
| 147:3-17 | FRCP 30(b)(6), R | | | |
| 147:19-23 | FRCP 30(b)(6), R | | | |
| 148:2-7 | FRCP 30(b)(6), R | | | |
| 148:10-18 | FRCP 30(b)(6), R | | | |
| 148:22-149:2 | FRCP 30(b)(6), R | | | |
| 149:5-19 | | | | |
| 149:21-150:7 | | | | |
| 150:10-151:19 | FRCP 30(b)(6), R | | | |
| 152:7-154:18 | FRCP 30(b)(6), R | | | |
| 156:1-6 | | | | |
| 158:11-22 | | | | |

| Deposition of Chad Lindemann[37,38]<br>October 25, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[39]** | **Revance's Counter-Designations[40]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:14-20 | H | | | |
| 12:9-11 | H | | | |
| 13:14-14:8 | H | | | |
| 15:10-25 | I, ID, H | 15:8–9 | | |
| 16:10-17 | H | | | |
| 16:21-17:5 | H | | | |
| 18:15-17 | H | | | |
| 18:22-19:4 | H | | | |
| 20:6-8 | H | | | |
| 20:15-19 | H | | | |
| | | | | 31:15-32:04 |
| 35:5-14 | H | | | |
| 38:4-5 | H | | | |
| 38:7 | H | | | |
| | | | | 44:01-44:05 |

[37] Revance objects to Allergan's affirmative designation of Chad Lindemann's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.
[38] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.
[39] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."
[40] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Chad Lindemann as counter designations.

| Deposition of Chad Lindemann[37,38] October 25, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[39]** | **Revance's Counter-Designations[40]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| | | | | 44:07-44:08 |
| 44:21-24 | H, P | | | |
| 45:1 | H | | | |
| 47:21-48:1 | I, H | | | |
| 48:8-50:14 | H | 50:15-17; 50:20-21 | SP, V, 602, P | |
| | | | | 53:01-53:04 |
| | | | | 53:06-53:08 |
| | | | | 53:10-53:11 |
| 54:1-7 | H | | | |
| 54:10-11 | H | | | |
| 55:11-56:6 | H | | | |
| 57:15-20 | H | | | |
| 58:1-5 | H | | | |
| 58:8-17 | H | | | |
| 58:25-59:8 | H | | | |
| 59:12-16 | H | | | |
| 59:23-60:6 | H | | | |
| 60:10-16 | H, 602, P | 60:7–9 | SP, V, 602, P | |
| 60:19-61:9 | H, P | | | |
| 61:11-20 | H, P | | | |
| 72:1-24 | H | | | |
| 116:7-117:13 | H | | | |
| 119:25-120:13 | H | | | |
| 124:7-9 | H | 124:10-12 | SP, V, 602, P, I | |
| | | | | 124:13-124:17 |
| 136:13-23 | 602, H | | | |
| 137:1-25 | H | | | |

| Deposition of Chad Lindemann[37,38]<br>October 25, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[39]** | **Revance's Counter-Designations[40]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 167:12-17 | H | | | |
| 169:4-6 | H | | | |
| 170:1-4 | H | | | |
| 170:8-14 | H, B, P | 170:15–16 | SP, V, 602, P | |
| 174:19-175:24 | H | | | |
| 183:24-184:14 | H, AA | 184:15–16 | SP, V, 602, P, F | |
| 184:17-185:10 | H | | | |
| 185:19-188:16 | H | 189:7–8; 189:13–15 190:14–20; 191:2–17; 191:20–21; 191:23–24; 192:2–4 | SP, V, 602, P, R | |
| | | | | 189:16-189:20 |
| | | | | 190:07-190:13 |
| | | | | 190:22-190:23 |
| | | | | 190:25 |

| Deposition of Jason Paik[41,42]<br>November 1, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[43]** | **Revance's Counter-Designations[44]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:12-18 | H | | | |
| 10:18-21 | H | | | |
| 20:22-21:5 | H | | | |
| 21:12-20 | H | | | |
| 21:23-25 | H | | | |
| 22:17-23:13 | H | | | |
| 23:25-24:9 | H | | | |
| 24:15-24 | H | | | |
| 25:2-9 | H | | | |
| 25:13-26:3 | H | | | |
| 26:22-27:5 | H | | | |
| 29:9-30:10 | H | | | |
| 30:13-31:5 | H | 31:6-22 | FRCP 30(b)(6), MC, F, HYP, SP, P | |
| 31:23-32:6 | H | | | |

[41] Revance objects to Allergan's affirmative designation of Jason Paik's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[42] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[43] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[44] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Jason Paik's as counter designations.

| Deposition of Jason Paik[41,42]<br>November 1, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[43]** | **Revance's Counter-Designations[44]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 32:9-14 | H | 32:15-17; 32:19; 33:8-11; 33:13 | FRCP 30(b)(6), V, SP, F, P, I, R | |
| | | | | 32:21-33:02 |
| | | | | 33:15-33:21 |
| 33:22-34:19 | H | | | |
| 36:1-7 | H | | | |
| | | | | 36:08-37:12 |
| 37:24-39:5 | H | 37:13-20 | FRCP 30(b)(6), F, V, I, R | |
| 39:8-10 | H | 39:11-12; 39:14-18 | FRCP 30(b)(6), P, F, R, SP | |
| 39:19-40:6 | H | 41:13-16 | FRCP 30(b)(6), P, F, R, I, SP | |
| 43:10-44:10 | H | 39:11-12; 39:14-18; 41:13-16; 41:24-42:15; 44:11-20; 44:22 | FRCP 30(b)(6), P, F, R, MC, V, I, SP | |
| 44:24-45:5 | I, H | 42:3-10; 44:16-20; 44:22; 45:6-46:15 | FRCP 30(b)(6), P, F, R, MC, V, SP | |
| 46:16-48:6 | H | 48:14-21 | FRCP (30)(6), P, F, R, I, AF, V | |
| | | | | 48:07-48:13 |
| | | | | |
| 48:22-25 | H | | | |
| 50:6-11 | H | | | |
| | | | | 50:12-51:01 |
| 51:8-11 | H | | | |
| | | | | 51:12-52:02 |
| 52:3-5 | H | | | |

| Deposition of Jason Paik[41,42]<br>November 1, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[43]** | **Revance's Counter-Designations[44]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 52:25-53:11 | H | | | |
| 53:15-54:5 | H | | | |
| 56:1-24 | H | | | |
| 58:10-24 | H | 58:25-59:8; 60:4-7 | FRCP 30(b)(6), P, R, V | |
| 59:9-16 | H | 59:17-60:3 | FRCP 30(b)(6), P, R, V, MC | |
| 60:8-18 | H | | | |
| 61:2-9 | H | 61:10-18; 62:9-13 | FRCP 30(b)(6), P, R, I, V | |
| | | | | 61:24-62:06 |
| 62:14-23 | H | 62:24-63:11; 63:13-17; 63:19 | FRCP 30(b)(6), P, R, I, V | |
| | | | | 63:20-63:25 |
| 65:5-13 | H | 65:15-16 | P, R, V | |
| 65:17-66:18 | H | 66:19-67:5; 67:15-21; 67:23 | FRCP 30(b)(6), P, R, V, SP, MC | |
| 67:6-14 | H | 67:15-21; 67:23 | FRCP 30(b)(6), P, R, V, MC, SP | |
| 67:25-68:8 | H | 68:9-11 | P, R, V | |
| 68:12-15 | H | 68:16-24 | FRCP 30(b)(6), P, R, V, SP | |
| 69:10-14 | H | 62:24-63:11; 63:13-17; 63:19 | FRCP 30(b)(6), P, R, I, V | |
| 71:18-23 | H | 71:25-72:1 | FRCP 30(b)(6), P, R, V | |
| 72:4-22 | H | 72:23-73:11; 73:13; 73:15-22; 73:24; 74:2-4; 74:6 | FRCP 30(b)(6), P, R, V, SP | |

| Deposition of Jason Paik[41,42]<br>November 1, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[43]** | **Revance's Counter-Designations[44]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 74:8-14 | H | 74:15-20 | FRCP 30(b)(6), P, R, V, SP | |
| 75:6-9 | H | 75:10-12 | FRCP 30(b)(6), P, R, V, SP | |
| 75:16-21 | H | 75:23-24 | FRCP 30(b)(6), P, R, V, I, SP | |
| | | | | 75:25-76:03 |
| 76:4-7 | H | 76:8-15; 76:19-23 | FRCP 30(b)(6), P, R, V, SP | |
| 76:24-77:9 | H | 77:10-12 | FRCP 30(b)(6), P, R, V, SP | |
| 77:13-23 | H | 77:24-78:1 | FRCP 30(b)(6), P, R, V, SP | |
| 78:2-4 | H | | | |
| 78:14-16 | H | | | |
| 78:20-24 | H | | | |
| 80:13-18 | H | 80:20-21 | FRCP 30(b)(6), P, R, V | |
| | | | | 80:22-81:02 |
| 81:3-8 | H | 81:9-23 | FRCP 30(b)(6), P, R, V, SP | |
| 82:3-11 | H | 82:20-24 | FRCP 30(b)(6), P, R, V, I, SP | |
| | | | | 82:12-82:19 |
| 83:3-7 | H | 83:8-24; 84:1-6 | FRCP 30(b)(6), P, R, V, AF, SP | |
| | | | | 85:07-87:11 |
| 94:8-12 | H | | | |
| 94:14-95:18 | H | | | |

| Deposition of Jason Paik[41,42] November 1, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[43]** | **Revance's Counter-Designations[44]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 95:20-96:5 | H | | | |
| 103:13-104:3 | H | 104:4-13 | FRCP 30(b)(6), P, R, V | |
| 104:14-105:17 | H | 105:18-106:2 | FRCP 30(b)(6), P, R, V, AF, F | |
| 107:16-112:3 | 602 [re 110:2-21, 111:2-4]; AF [re 110:2-21, 111:2-4]; 701 [re: 110:16-21], H | 112:10-14 | P, R, V, AF | |
| 112:17-22 | H | | | |
| 113:1-8 | H | | | |
| 118:16-22 | 602, 701, AF, SP, H | | | |
| 119:9-120:6 | 602, H | | | |
| 121:19-22 | 602, SP, H | | | |
| 124:5-125:11 | H | | | |
| 126:5-15 | H | 126:16-127:6 | FRCP 30(b)(6), P, R, V, I | |
| | | | | 127:07-127:14 |
| | | | | 127:17-128:02 |
| 128:3-5 | H | | | |
| 128:10-19 | H | | | |
| 131:3-12 | H | | | |
| 135:17-136:4 | H | | | |
| 137:14-15 | H | | | |
| 139:10-12 | H | | | |
| 139:16-140:6 | 701, H | 140:7-14 | FRCP 30(b)(6), P, R, V, SP | |
| | | | | 140:15-141:02 |
| 154:3-7 | H | | | |

| Deposition of Jason Paik[41,42]<br>November 1, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[43]** | **Revance's Counter-Designations[44]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 155:22-156:3 | H | 157:25-158:5 | FRCP 30(b)(6), P, R, V | |
| 175:16-176:7 | H | 176:8-10 | FRCP 30(b)(6), P, SP | |
| 178:13-24 | 602, 702, H | | | |
| 185:16-186:11 | MIL; P, H | 186:12-25 | FRCP 30(b)(6), P, R, V, SP, F | |
| 187:3-15 | MIL, H | | | |
| | | | | 187:16-188:14 |
| 188:15-189:9 | MIL; P, 602, 702, H | | | |
| | | | | 189:10-189:12 |
| 189:13-190:4 | MIL; P, 602, 702, H | 39:11-12; 39:14-18 | FRCP 30(b)(6), P, F, R, SP | |
| 190:7-191:7 | MIL; P, 602, 702, H | 62:24-63:11; 63:13-17, 63:19 | FRCP 30(b)(6), P, R, I, V | |
| | | | | 191:08-192:04 |
| 192:5-14 | MIL; P, 602, 702, H | 192:19-193:2 | FRCP 30(b)(6), P, R, V, SP, F, AF | |
| 193:3-12 | MIL; P, 602, 702, H | 193:13-16; 193:19-25 | FRCP 30(b)(6), P, R, V, SP, F, AF | |
| 194:10-14 | H | | | |
| 194:18-195:9 | H | | | |
| 196:2-197:23 | H | | | |
| | | | | 197:24-198:15 |

| Deposition of Edward Podraza[45,46] February 29, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[47]** | **Revance's Counter-Designations[48]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 6:16-19 | H | | | |
| 7:1-3 | H | | | |
| 14:14-17 | H | | | |
| 14:20-15:3 | H | | | |
| 15:11-17 | H | | | |
| 16:9-10 | H | | | |
| 16:17-18 | H | | | |
| 17:4-9 | H | | | |
| 17:12-13 | H | | | |
| 17:16-18:3 | H | 18:4-5; 18:8-13 | R, I | |
| | | | | 18:14-18:21 |
| 23:19-24:5 | H | | | |
| 24:13-25:1 | H | | | |
| 25:4-7 | H | | | |
| 25:10-17 | H | | | |

[45] Revance objects to Allergan's affirmative designation of Edward Podraza's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.
[46] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.
[47] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."
[48] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Edward Podraza as counter designations.

| Deposition of Edward Podraza[45,46]<br>February 29, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[47]** | **Revance's Counter-Designations[48]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 26:6-12 | H | 26:16-17; 26:20-21; 28:2-4; 28:7-8 | DUP, R, P, MC, I, IE, 602, FRCP 30(b)(6) | |
| | | | | 27:02-27:03 |
| | | | | 27:07-27:09 |
| 29:22-30:21 | H | | | |
| 31:4-18 | H | | | |
| 32:1-3 | H | | | |
| 34:21-35:4 | H | | | |
| 46:20-23 | H | | | |
| 47:2-4 | H | | | |
| 53:2-13 | H | 53:14-17 | DUP, R, P, MC, I | |
| | | | | 53:18-53:23 |
| 54:1-10 | H | 55:19-24 | R, P, MC, I | |
| 55:4-17 | H | | | |
| | | | | 55:25-56:10 |
| 64:5-11 | H | 64:12-17 | R, P, MC, I | |
| | | | | 64:18-66:12 |
| | | | | 67:06:67-09 |
| 67:10-18 | H | 66:13-67:5 | R, P, MC, I | |
| | | | | 72:20-73:16 |
| | | | | 73:19-73:25 |
| | | | | 74:04-75:14 |
| | | | | 80:10-80:22 |
| | | | | 81:19-22 |
| 89:20-90:5 | H | 90:6-15 | R, P, MC, I | |
| | | | | 91:19-91:23 |
| 92:3-5 | H | 91:24-92:2 | R, P, MC, I | |

| Deposition of Edward Podraza[45,46]<br>February 29, 2024 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[47]** | **Revance's Counter-Designations[48]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| | | | | 93:15-94:08 |
| 94:10-95:8 | S, H | 95:9-11 | R, P | |
| 96:1-14 | H | | | |
| 96:19-24 | H | 98:2-9 | R, P, MC, I, SP | |
| | | | | 97:23-98:01 |
| | | | | 98:10-99:05 |
| 99:6-16 | H | | | |
| 131:18-20 | H | | | |
| 132:9-133:5 | H | | | |
| 133:12-17 | H | 133:18-23 | P, R, V, FRCP 30(b)(6) | |
| 133:24-134:18 | H | | | |
| 135:14-136:16 | H | | | |
| 136:18-25 | H | | | |
| 144:24-145:3 | H | 145:4-7; 145:10-17; 145:19-146:6 | R, P, MC, V, SP | |
| 147:16-148:7 | H | | | |
| 148:10-15 | H | | | |
| 148:19-149:6 | H | | | |
| 150:9-151:1 | H | | | |
| 155:1-5 | P, H | | | |
| 157:11-13 | H | | | |
| 158:9-17 | H | | | |
| 158:21-159:5 | H | 159:6-10; 159:13-14 | R, P, MC, DUP, FRCP 30(b)(6) | |
| 161:4-6 | H | | | |
| 161:9-14 | H | | | |
| 161:17-23 | H | | | |

| Deposition of Edward Podraza[45,46] February 29, 2024 | | | | |
|---|---|---|---|---|
| Allergan's Designations | Revance's Objections[47] | Revance's Counter-Designations[48] | Allergan's Objections to Counter-Designations | Allergan's Counter-Counter-Designations |
| 162:2-12 | H | | | |
| 162:17-163:1 | H | | | |
| 163:6-12 | H | | | |
| | | | | 173:23-173:24 |
| | | | | 174:03-174:07 |
| | | | | 174:10-174:11 |
| 177:12-14 | H | | | |
| 177:21-25 | H | | | |
| 181:22-23 | H | | | |
| 182:3-10 | H | | | |
| 182:13-19 | H | | | |
| 188:5-7 | H | | | |
| 188:12-19 | H | | | |
| 190:9-17 | H | | | |
| 190:22-191:15 | H | | | |
| 195:15-196:1 | H | | | |
| 196:6-9 | H | | | |

| Deposition of Eric Sanders<br>October 24, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections**[49] | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 7:12-17 | | | | |
| 8:13-15 | | | | |
| 9:15-18 | R | | | |
| 9:20-22 | R | | | |
| 11:4-9 | R | 11:12-18 | P, R | |
| 11:19-12:1 | R, V | | | |
| 12:18-23 | R, V | | | |
| 15:23-16:4 | R | | | |
| 17:13-17 | R | | | |
| 17:24-18:19 | R | | | |
| 19:12-19 | R | | | |
| 19:22-23 | R | | | |
| 20:7-20 | R, P, MIL | 20:21-21:2 | | |
| 21:3-19 | R, P, MIL | 20:21-21:2 | | |
| 22:20-23:12 | R, P, MIL | | | |
| 23:14-18 | R, P, MIL | | | |
| 23:21-23 | R, P | | | |
| 24:19-24 | R, P, MIL | | | |
| 30:2-14 | R, P, MIL | | | |
| 31:6-13 | R, P, V, MC, MIL | | | |

[49] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Eric Sanders<br>October 24, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[49]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 34:14-24 | R, P, MC, MIL | 20:21-21:2 | | |
| 36:13-37:23 | R, SP, MIL | | | |
| 38:12-15 | R | | | |
| 47:20-48:18 | R, F, SP, V | | | |
| 52:12-21 | R, F, SP, V, MC | | | |
| | | | | 52:22-53:20 |
| 55:7-9 | R, P, F, V, SP | 53:21-55:6, 55:10-13 | P, R, I | |
| 56:14-24 | R, F, SP, MC | | | |
| 59:13-60:2 | R, F, SP | | | |
| 60:4-11 | R, F, SP, E | | | |
| 60:13-61:10 | R, F, SP, E | | | |
| 61:17-62:3 | R | | | |
| 62:10-63:14 | R, F, SP, V, E | | | |
| 64:15-65:20 | R, F, SP, V, E, 701, 602 | | | |
| 66:2-18 | R, F, SP, V, E, 701, 602 | 66:19-23 | | |
| 66:24-67:12 | R, F, SP, V, E, 701, 602 | 67:13-15 | P, R, I | |
| | | | | 67:16-67:17 |
| 67:18-68:14 | R, F, SP, V | | | |
| 69:25-70:6 | R, F, SP, V, E | | | |
| 71:7-72:11 | R, F, SP, V | 73:5-7 | P, R | |
| 73:1-4 | R, F, SP | 73:5-7 | P, R | |
| 73:11-17 | R, F, SP, V | | | |
| 82:19-83:20 | R, F | | | |
| 85:17-86:3 | R | 86:4-5 | | |
| 86:7-14 | R, F, SP | | | |
| 87:9-20 | R | 87:21-88:3 | P, R | |
| 91:13-17 | R | 91:18-92:2 | P, R | |

| Deposition of Eric Sanders<br>October 24, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[49]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 92:5-9 | R, F, SP | | | |

| **Deposition of Joanna Stebbins<br>September 29, 2023** | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[50]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 9:6-12 | | | | |
| 10:8-10 | | | | |
| 10:15-18 | | | | |
| 10:25-11:13 | | | | |
| 11:18-20 | | | | |
| 12:12-22 | | | | |
| 13:12-14:11 | | | | |
| 14:17-15:20 | | | | |
| 17:2-16 | | | | |
| 17:23-18:9 | | | | |
| 18:13-19:1 | | | | |
| 19:6-10 | | | | |
| 20:2-5 | | | | |
| 21:23-22:2 | | | | |
| 23:20-24:19 | | | | |
| 25:25-26:3 | | | | |
| 27:25-29:4 | | | | |
| 29:11-14 | | | | |
| 30:14-22 | R | | | |
| 31:6-22 | R | | | |

[50] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Joanna Stebbins<br>September 29, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[50]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 32:5-8 | | | | |
| 32:17-33:5 | | | | |
| 34:14-35:16 | | | | |
| 35:21-23 | | | | |
| 36:13-25 | P | 37:1–13 | P, R, DUP | |
| 37:14-21 | P | 37:1–13 | P, R, DUP | |
| 37:24-38:1 | | | | |
| 38:22-39:9 | AA, P | | | |
| 39:20-40:9 | | | | |
| 41:11-42:22 | | | | |
| 42:25-43:5 | V, R | | | |
| 43:9-16 | | | | |
| 44:1-15 | | | | |
| 46:2-47:7 | I, AA [re: 46:2–14] | 46:1–2 | | |
| 47:15-48:22 | | | | |
| 49:1-7 | | | | |
| 51:2-24 | | | | |
| 52:2 | | | | |
| 52:4-9 | | | | |
| 52:16-53:21 | | | | |
| 54:1-10 | | | | |
| 54:18-56:22 | P | | | |
| 59:23-60:1 | | 60:2–13 | P, R, DUP, I | |
| 60:14-61:1 | | | | |
| | | | | 61:02-61:06 |
| 61:7-10 | | | | |
| 61:16-20 | | | | |

| Deposition of Joanna Stebbins<br>September 29, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[50]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 63:20-22 | | | | |
| 65:2-5 | P, R | 65:6–11; 65:23–66:9 | P, R, DUP | |
| 65:12-19 | P, R | 65:6–11; 65:23–66:9 | P, R, DUP | |
| 72:5-19 | F | | | |
| 81:5-13 | FCRP 30(b)(6),P, R, 602, F | | | |
| 88:11-18 | P | | | |
| 90:4-96:17 | | | | |
| 97:2-99:16 | | | | |
| 101:8-13 | | | | |
| 102:17-104:5 | | | | |
| 104:18-105:14 | | | | |
| 106:5-8 | | | | |
| 106:13-25 | | | | |
| 107:3-24 | | 107:25-108:7 | P, R | |
| 112:22-113:1 | | | | |
| 113:4-114:25 | | | | |
| 115:9-116:13 | | | | |
| 116:18-117:8 | | | | |
| 121:9-122:6 | | | | |
| 122:22-124:19 | | | | |
| 125:2-127:3 | | | | |
| 130:25-131:3 | | | | |
| 132:5-133:2 | | | | |
| 142:13-143:19 | | | | |
| 144:21-146:6 | | | | |
| 147:11-148:14 | P | 146:7-147:10 | P, R, DUP | |

| Deposition of Joanna Stebbins<br>September 29, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[50]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 157:17-158:4 | | 146:7-147:10 | P, R, DUP | |
| 158:8-159:10 | | | | |
| 159:14-160:6 | | | | |
| 160:22-161:15 | | | | |
| 165:1-20 | | | | |
| 167:24-168:12 | | | | |
| 168:20-22 | | | | |
| 171:15-19 | | | | |
| 172:4-17 | AU, FRCP 30(b)(6) | | | |
| 173:4-11 | AU, FRCP 30(b)(6) | | | |
| 173:16-18 | AU, FRCP 30(b)(6) | | | |
| 175:13-177:11 | | | | |
| 177:22-178:8 | | | | |
| 179:12-16 | | | | |
| 179:21-180:3 | | | | |
| | | | | 180:16-180:18 |
| | | | | 181:04-181:09 |
| 182:8-16 | | 180:21–181:3 | P, R, I | |
| 183:4-184:4 | | | | |

| Deposition of Jennifer Ton[51,52]<br>October 11, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[53]** | **Revance's Counter-Designations[54]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 5:21-25 | H | | | |
| 7:8-10 | H | | | |
| 8:6-9:13 | R, H | | | |
| 9:25-10:10 | R, H | | | |
| 10:15-11:6 | R, H | | | |
| 12:22-13:1 | V, H | | | |
| 13:3-14:12 | R, H | | | |
| 15:2-7 | R, H | | | |
| 16:17-17:16 | R, H | | | |
| 17:20-18:3 | R, H | | | |
| 18:6-15 | R, H | | | |
| 19:22-25 | R, H | | | |
| 20:2-22:1 | R, H | | | |
| 22:7-18 | R, H | | | |
| 23:7-15 | R, H | | | |

[51] Revance objects to Allergan's affirmative designation of Jennifer Ton's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.
[52] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.
[53] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."
[54] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Jennifer Ton as counter designations.

| Deposition of Jennifer Ton[51,52]<br>October 11, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[53]** | **Revance's Counter-Designations[54]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 23:17-21 | R, H | | | |
| 24:1-9 | R, H | | | |
| 26:2-19 | R, H | | | |
| 27:5-28:25 | V, H | | | |
| 30:1-10 | V, R, H | | | |
| 30:16-31:17 | V, H | | | |
| 31:21-32:8 | V, H | | | |
| 33:19-34:13 | V, H | | | |
| 34:24-35:4 | V, H | | | |
| 35:22-36:18 | V, H | | | |
| 37:21-38:3 | V, H | | | |
| 39:23-40:3 | R, H | | | |
| 40:23-41:4 | V, R, H | | | |
| 41:6-42:20 | H | | | |
| 43:12-24 | H | | | |
| 44:4-45:7 | SP, V [re: 44:4-20], H | | | |
| 46:2-5 | H | | | |
| 50:13-52:3 | H | | | |
| 53:15-22 | H | | | |
| 54:1-23 | V, H | | | |
| 55:2-58:4 | H | | | |
| 58:7-25 | H | | | |
| 59:9 | H | | | |
| 59:11-16 | H | | | |
| 59:19-60:1 | H | | | |
| 60:3-9 | V, H | | | |
| 60:11-18 | V, H | | | |

| Deposition of Jennifer Ton[51,52]<br>October 11, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[53]** | **Revance's Counter-Designations[54]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 67:20-68:5 | 701, E, L SP, H | | | |
| 69:18-22 | V, H | | | |
| 69:24-70:5 | H | | | |
| 70:7-10 | H | | | |
| 73:7-13 | H | | | |
| 73:21-74:2 | H | | | |
| 74:13-75:11 | H | | | |
| 76:2-11 | H | | | |
| 76:16-77:6 | V, R, H | 77:7-8; 77:10 | R, V, MC | |
| 77:12-78:7 | H | | | |

| Deposition of Huong Tran[55,56]<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[57]** | **Revance's Counter-Designations[58]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:12-16 | H | | | |
| 9:20-21 | H | 9:22 | | |
| 11:6-8 | H | | | |
| 11:14-24 | H | | | |
| 12:1-7 | H | 12:8-13:5<br>13:7-19 | R, V, PRIV, P | |
| 13:20-21 | H | 13:22-14:13 | R, V, PRIV, P | |
| 14:14-19 | ID [re 14:19], H | | | |
| 14:21-25 | H | 15:1-12 | | |
| 15:13-21 | ID [re 15:17-18], H | | | |
| 15:23-17:7 | H | | | |
| 17:9-13 | H | | | |
| 17:24-19:2 | H | | | |
| 19:9-17 | H | | | |
| 20:17-19 | F, H | 20:11-16 | | |

[55] Revance objects to Allergan's affirmative designation of Huong Tran's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[56] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[57] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[58] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Huong Tran as counter designations.

| Deposition of Huong Tran[55,56]<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[57]** | **Revance's Counter-Designations[58]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 22:15-21 | H | 22:22-23:24 | R, V, P | |
| 23:25-24:4 | H | 24:5-7 | R, V, P | |
| 24:8-9 | H | | | |
| 24:15-21 | H | | | |
| 25:5-11 | H | | | |
| 25:16-18 | H | | | |
| 26:11-13 | H | | | |
| 28:6-12 | H | | | |
| 28:14-19 | H | | | |
| 28:23-29:9 | H | 29:10-14 | R, V, P | |
| 29:15-24 | H | | | |
| 30:13-31:13 | H | | | |
| 31:15-22 | ID [re 17-18], H | 31:14 | | |
| 35:12-18 | ID [re 35:14], H | 35:20-22<br>37:10-22 | R, V, P, FRCP 30(b)(6), DUP | |
| 38:2-4 | H | 38:5-10 | R, V, P, FRCP 30(b)(6) | |
| 38:21-39:3 | H | 39:4-6 | | |
| 39:7-8 | H | 39:9-12 | R, V, P, FRCP 30(b)(6), DUP | |
| 39:13-16 | H | 39:17-40:14 | R, V, P, FRCP 30(b)(6), DUP, MC | |
| 40:15-16 | H | | | |
| 44:17-45:6 | H | | | |
| 47:12-17 | H | | | |
| 47:19-22 | H | | | |
| 48:3-19 | H | | | |
| 49:8-51:14 | H | | | |

| Deposition of Huong Tran[55,56] October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[57]** | **Revance's Counter-Designations[58]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 52:3-53:20 | H | 53:21<br>53:23-24 | R, V, P, FRCP 30(b)(6), 602 | |
| 54:1-9 | R, H | | | |
| 54:25-55:6 | H | | | |
| 55:17-22 | R, H | | | |
| 56:4-13 | H | | | |
| 56:15-19 | H | | | |
| 56:23-57:8 | H | | | |
| 57:12-25 | H | | | |
| 58:3-7 | H | 58:14-18 | R, V, P | |
| 58:19-59:1 | H | | | |
| 59:15-18 | H | | | |
| 60:13-61:5 | H | | | |
| 63:1-6 | H | | | |
| 65:19-66:10 | H | | | |
| 66:24-67:1 | H | | | |
| 67:13-68:5 | H | | | |
| 69:18-25 | H | | | |
| 71:6-19 | H | 71:20-24 | | |
| 71:25-72:23 | H | 72:24-73:3 | I | |
| | | | | 73:04-73:05 |
| 73:6-24 | H | | | |
| 74:24-75:20 | H | | | |
| 75:25-76:11 | H | | | |
| 76:15-21 | H | | | |
| 76:25-77:2 | H | | | |
| 77:17-22 | H | | | |

| Deposition of Huong Tran[55,56]<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[57]** | **Revance's Counter-Designations[58]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 78:9-79:1 | H | | | |
| 79:9-19 | ID [re 79:17], H | | | |
| 79:21-23 | H | | | |
| 80:2-19 | H | | | |
| 80:23-81:2 | H | | | |
| 81:7-25 | H | | | |
| 82:3-5 | H | | | |
| 83:1-23 | H | | | |
| 83:25-85:22 | H | | | |
| 86:7-17 | H | 86:18-19 | R, V, P, FRCP 30(b)(6), DUP, 602 | |
| 86:20-87:12 | H | | | |
| 87:18-19 | H | 87:20-24 | R, V, P, FRCP 30(b)(6) | |
| 88:3-6 | R, H | | | |
| 89:20-90:5 | H | | | |
| 91:22-93:24 | H | | | |
| 94:19-95:25 | ID [re 95:21], H | | | |
| 96:10-23 | H | | | |
| 97:16-20 | H | | | |
| 98:5-11 | H | | | |
| 98:14-99:6 | H | | | |
| 99:22-100:1 | H | | | |
| 100:3-16 | H | 100:17-19 | R, P | |
| 100:20-101:3 | H | | | |
| 101:9-102:6 | H | | | |
| 102:11-103:11 | H | | | |

| Deposition of Huong Tran[55,56]<br>October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[57]** | **Revance's Counter-Designations[58]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 103:15-17 | H | 103:18-19 | R, V, P, FRCP 30(b)(6), DUP | |
| 103:20-21 | H | 103:22-25 | | |
| 104:1-5 | H | | | |
| 104:9-11 | H | 104:12-16 | R, V, P, FRCP 30(b)(6), DUP | |
| 104:17-105:11 | H | | | |
| 105:19-22 | H | | | |
| 106:4-107:1 | H | | | |
| 107:4-14 | H | | | |
| 107:24-109:21 | H | | | |
| 110:11-17 | H | | | |
| 110:20-22 | H | | | |
| 110:24-111:7 | H | | | |
| 111:14-112:6 | H | | | |
| 112:22-113:14 | H | | | |
| 113:16-17 | H | | | |
| 113:19-25 | H | | | |
| 114:2-4 | H | | | |
| 114:6-15 | H | 114:16-18 | R, V, P, FRCP 30(b)(6), DUP, 602 | |
| 115:21-117:11 | H | | | |
| 117:13-14 | H | | | |
| 117:16-118:13 | H | | | |
| 118:15-17 | H | | | |
| 118:19-121:8 | H | | | |
| 121:10-17 | H | | | |

| Deposition of Huong Tran[55,56] October 18, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[57]** | **Revance's Counter-Designations[58]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 122:4-125:17 | H | | | |
| 129:24-130:3 | H | | | |
| 131:5-6 | H | | | |
| 131:9-11 | H | | | |
| 131:13-20 | H | | | |
| 131:23-25 | H | 132:2-5 | R, V, P, FRCP 30(b)(6), DUP, 602 | |
| 132:6-13 | H | | | |
| 133:8-24 | H | | | |
| 134:3-8 | H | | | |
| 134:23-135:14 | H | | | |
| 135:16-136:5 | ID [re 135:24-136:1], H | | | |
| 136:7-22 | H | | | |
| 136:25-137:1 | H | | | |
| 137:3-14 | H | 137:15-21<br>137:23-24 | R, V, P, FRCP 30(b)(6), DUP, MC, IE | |
| 138:1-5 | H | | | |
| 138:13-19 | H | | | |
| 138:25-139:5 | H | | | |
| 139:14-15 | H | | | |
| 139:18-23 | H | | | |
| 139:25-140:2 | H | | | |
| 140:5-8 | H | | | |
| 140:10-11 | H | | | |
| 140:14-15 | H | | | |

| Deposition of Savitha Venkatesh<br>September 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[59]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:6-8 | | | | |
| 8:21-24 | | | | |
| 9:5-7 | | | | |
| 10:8-11 | | | | |
| 10:13-25 | | | | |
| 11:3-9 | | | | |
| 11:13-20 | | | | |
| 15:17-16:10 | | | | |
| 16:18-19 | | | | |
| 17:10-18:20 | 602, V, R | | | |
| 19:21-20:1 | I, R | | | |
| 20:20-21:3 | F, R | | | |
| 22:10-22 | | | | |
| 23:1-4 | E, R, 602, S; FRCP 30(b)(6) | 23:5-12 | P, R, I | |
| | | | | 23:13-23:16 |
| 25:4-15 | | | | |
| 25:20-26:6 | R | | | |
| 26:25-27:3 | V | | | |
| 27:7-19 | V | | | |

[59] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Savitha Venkatesh<br>September 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[59]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 28:1-22 | | | | |
| 31:25-32:5 | | | | |
| 36:14-22 | V | | | |
| 37:6-38:19 | R, V | | | |
| 51:23-25 | | | | |
| 52:25-53:11 | 602 | | | |
| 54:1-4 | R | | | |
| 80:11-21 | | | | |
| 81:24-82:12 | | | | |
| 83:23-24 | | | | |
| 84:1-2 | | | | |
| 84:4-18 | E, 602, S, F, R | | | |
| 84:22-85:1 | E, 602, S, F, R | | | |
| 85:7-24 | | | | |
| 86:2-12 | | | | |
| 86:16-20 | | | | |
| 86:24-87:8 | | | | |
| 87:22-88:9 | | | | |
| 88:11-12 | | | | |
| 88:18-25 | | | | |
| 90:12-13 | | | | |
| 90:15-22 | | | | |
| 91:4-20 | | | | |
| 92:6-24 | | | | |
| 93:1-2 | | | | |
| 93:4-16 | F, R | | | |
| 93:19-25 | | | | |

| Deposition of Savitha Venkatesh<br>September 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[59]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 103:5-24 | | | | |
| 104:1-2 | | | | |
| 104:4-106:17 | | | | |
| 107:5-25 | | | | |
| 108:2-5 | | | | |
| 108:7-109:13 | | | | |
| 110:3-5 | | | | |
| 110:9-14 | | | | |
| 110:20-111:2 | | | | |
| 111:14-19 | | | | |
| 112:10-13 | | | | |
| 114:24-115:4 | | 115:5-10 | P, R | |
| 115:11-116:5 | | | | |
| 116:10-13 | | | | |
| 117:3-11 | | | | |
| 117:17-118:2 | | | | |
| 118:4-22 | | | | |
| 121:20-122:17 | | | | |
| 131:1-7 | | | | |
| 131:16-132:1 | AF, F, R | | | |
| 133:3-12 | F, S, 602 | | | |
| 133:19-134:5 | F, S, 602 | | | |
| 138:1-5 | | | | |
| 138:7-25 | R | | | |
| 139:2-7 | | | | |
| 139:9-140:15 | R; FRCP 30(b)(6) | | | |
| 152:25-153:13 | | | | |

| Deposition of Savitha Venkatesh<br>September 20, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[59]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 158:16-25 | | | | |
| 160:4-19 | R | | | |
| 161:2-5 | | | | |
| 161:7-12 | | | | |
| 161:15-25 | R, S | | | |
| 162:10-20 | R, S | | | |
| 163:2-10 | | | | |
| 164:11-165:4 | R | | | |
| 167:6-20 | E, 602, F, R, P; FRCP 30(b)(6) | | | |

| Deposition of Hui Xiang[60,61]<br>October 13, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[62]** | **Revance's Counter-Designations[63]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 8:13-16 | H | | | |
| 9:24-10:4 | H | | | |
| 13:2-14:7 | R, H | | | |
| 16:15-22 | R, H | | | |
| 17:15-20 | R, H | | | |
| 18:12-19:20 | R, H | | | |
| 20:21-21:2 | H | | | |
| 21:22-22:11 | R, H | | | |
| 23:16-24:3 | R, H | | | |
| 26:11-19 | R, H | | | |
| 28:15-17 | H | | | |
| 28:19-29:4 | V, H | | | |
| 29:17-31:9 | H | | | |
| 31:13-33:24 | H | | | |
| 34:10-35:8 | H | | | |

[60] Revance objects to Allergan's affirmative designation of Hui Xiang's deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804.

[61] Allergan continues to disagree with Revance's interpretation of Federal Rules of Civil Procedure and the Federal Rules of Evidence. Allergan reserves all rights to designate deposition testimony from the witnesses identified herein.

[62] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

[63] Revance incorporates by reference, as if fully stated herein, Revance's affirmative deposition designations of Hui Xiang's as counter designations.

| **Deposition of Hui Xiang[60,61]<br>October 13, 2023** | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[62]** | **Revance's Counter-Designations[63]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 36:17-39:14 | H | | | |
| 40:6-42:14 | V, H | | | |
| 43:12-44:21 | R, H | | | |
| 45:16-46:4 | V, R, H | | | |
| 48:7-18 | H | | | |
| 49:1-51:18 | V, L, 701, E, H | | | |
| 52:5-58:10 | H | | | |
| 58:22-59:9 | V, R, H | | | |
| 61:4-19 | V, H | | | |
| 96:8-99:18 | R, H | | | |
| 100:18-101:4 | H | | | |
| 120:2-122:9 | R, H | | | |
| 124:15-19 | H | | | |
| 125:12-126:3 | H | | | |
| 126:9-13 | V, H | | | |
| 126:15-127:6 | V, H | | | |
| 133:23-137:9 | V, H | | | |
| 138:6-8 | H | | | |
| 138:11-20 | V, H | | | |
| 138:24-139:6 | V, H | | | |
| 139:19-142:12 | V, H | | | |
| 143:13-145:23 | V, H | | | |
| 145:25-146:15 | V, H | | | |
| 146:24-147:5 | V, H | | | |
| 147:7-150:4 | V, H | | | |
| 172:2-25 | H | | | |
| 174:7-177:17 | V, R, H | | | |

| Deposition of Hui Xiang[60,61]<br>October 13, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[62]** | **Revance's Counter-Designations[63]** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 191:18-21 | H | | | |
| 191:25-192:8 | H | | | |
| 192:15-194:1 | H | | | |
| 194:10-12 | H | | | |
| 194:15-22 | H | | | |
| 195:1-11 | H | | | |
| 198:23-200:13 | R, H | | | |

| Deposition of Roy Yoshimitsu<br>October 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[64]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 6:15-17 | | | | |
| 8:9-11 | | | | |
| | | | | 09:22-10:08 |
| | | | | 10:12-10:22 |
| 12:2-13:2 | R | | | |
| 13:14-18 | R | | | |
| 14:5-15:11 | R, P | 15:12-13 | R | |
| 15:14-17 | R, P | | | |
| 16:8-20 | R, P | 16:21-17:1 | R | |
| 17:2-19 | R, P | 17:20-18:1 | R | |
| 18:2-11 | R, P | | | |
| 18:16-19:20 | R, P | 19:21-24 | R | |
| 19:25-20:12 | R, P | 20:13-15 | R | |
| 20:16-21:23 | R, P | | | |
| 22:3-21 | R, P | | | |
| 23:2-18 | R, P, V | 24:15-18, 25:2-5, 25:7, 25:9-10, 25:12, 25:14-17 | R | |
| | | | | 23:19-23:21 |
| | | | | 23:23-23:24 |

[64] Unless otherwise indicated, an objection abbreviation applies to the entirety of the relevant designation. When an objection applies to a subset of a designation, the objection will be followed by brackets containing the subset of the designation to which it applies (*e.g.*, for an X objection to 1:1-1:2 within a designation for 1:1-1:10, the objection entry would recite "X [re 1:1-1:2]"). When multiple objections apply to the same subset of a designation, the group of applicable objections will be followed by brackets containing the subset of the designation to which that group of objections applies (*e.g.*, for objections X, Y, and Z applying to 2:1-2:2 within a designation for 2:1-2:10, the objection entry would recite "X, Y, Z [re 2:1-2:2]")."

| Deposition of Roy Yoshimitsu<br>October 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[64]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| | | | | 24:01-24:09 |
| | | | | 24:19-25:01 |
| 25:18-26:7 | R | | | |
| 27:3-29:18 | R, P, MC | 29:19-21, 29:24-30:1 | | |
| 30:3-15 | R, P, MC | 30:16-18, 30:22-31:1 | | |
| 31:2-10 | R | | | |
| 31:18-33:9 | R, P, F, V, SP | 33:10-15 | R | |
| 33:16-18 | R, P, V, SP, MC | | | |
| 33:21-34:1 | R, P, V, SP, MC | | | |
| 34:3-19 | R, P, V, SP, MC | | | |
| 34:24-35:4 | R, SP | | | |
| 35:8-18 | R | 35:19-22 | R | |
| 35:23-36:15 | R | 35:19-22 | R | |
| 36:17-37:8 | R | | | |
| 37:22-38:10 | R | | | |
| 38:16-25 | R, F | | | |
| 39:11-13 | R, F | | | |
| 39:19-40:10 | R, H | | | |
| 40:13-14 | R, P, SP | | | |
| 40:16-41:1 | R, P, SP | | | |
| 41:3-42:19 | R, P, F, SP | | | |
| 43:18-21 | R | | | |
| 44:16-45:2 | R | | | |
| 47:8-48:6 | R, F, MC, SP | 49:8-9, 49:11-14, 49:16-18 | R | |
| 48:8-49:7 | R, F, MC, SP | | | |
| 49:23-50:3 | R, F, MC, SP | 50:4-13, 50:15-17 | R | |

| Deposition of Roy Yoshimitsu<br>October 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[64]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 50:19-51:2 | R, P, F, MC, SP | 51:16-18, 51:21-52:3 | R | |
| 51:4-7 | R, P, F, MC, SP | 51:16-18, 51:21-52:3 | R | |
| 51:9-10 | R, P, F, MC, SP | 51:16-18, 51:21-52:3 | R | |
| 52:5-54:20 | R, P, F, MC | | | |
| 54:23-56:1 | R, P, F, MC, SP, ID | | | |
| 56:3-57:1 | R, P, F, MC, SP | | | |
| 57:7-21 | R, F, SP, V | | | |
| 57:23 | R, F, SP, V | 57:25-58:7, 58:10, 58:12 | R | |
| 58:14-16 | R | | | |
| 58:18-21 | R, F, V, SP | | | |
| 58:23-60:6 | R, F, V, SP | | | |
| 60:10-61:5 | R, | | | |
| 61:14-62:21 | R, SP, F | | | |
| 62:24-63:5 | R, SP, F | 64:14-15, 64:17-23 | | |
| 63:7-9 | R, SP, F | 64:14-15, 64:17-23 | | |
| 63:13-25 | R, SP, F | 64:14-15, 64:17-23 | | |
| 64:24-25 | R, SP, F | 64:14-15, 64:17-23 | | |
| 65:2-9 | R, SP, F | | | |
| 65:18-20 | R, SP, F | | | |
| 65:22-66:1 | R, SP, F | | | |
| 66:3-6 | R, SP, F | | | |
| 66:13-67:11 | R | | | |
| 70:23-72:24 | R, F, E, SP, 602 | 29:19-21, 29:24-30:1, 30:16-18, 30:22-31:1, 73:7-12, 74:20-23, 74:25-75:3 | | |

| Deposition of Roy Yoshimitsu<br>October 27, 2023 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections[64]** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 73:17-74:19 | R, F, E, SP, 602, 701, ID | 29:19-21, 29:24-30:1, 30:16-18, 30:22-31:1, 73:7-12, 74:20-23, 74:25-75:3 | | |
| | | | | 75:05-75:07 |
| 75:14-79:12 | R, F, E, SP, 602, 701 | 29:19-21, 29:24-30:1, 30:16-18, 30:22-31:1, 73:7-12, 74:20-23, 74:25-75:3 | | |
| 79:14-83:2 | R, F, E, SP, 602, 701 | 29:19-21, 29:24-30:1, 30:16-18, 30:22-31:1, 73:7-12, 74:20-23, 74:25-75:38 | | |

| Deposition of Maurice Mulders[65,66]<br>March 19, 2025 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 4:10-22 | H, R, P | | R, P | |
| 5:22-6:3 | H, R, P | | R, P | |
| 6:25-7:8 | H, R, ID, P | | R, P | |
| 8:3-12 | H, P, R, I, L, F, AF | | | |
| 9:10-21 | H, P, R, I, L, F, AF | 9:22-25 | R, P | |
| 10:1-11:12 | H, P, R, I, ID, L, F, AF | 9:22-25<br>11:13-24 | R, P | |
| 13:11-24 | H, P, R, ID, AF, F, L | 13:4-10 | R, P | |
| 16:2-17:5 | H, P, R, ID, AF, F, L | | | |

[65] Revance objects to Allergan's affirmative designation of Maurice Mulders' deposition testimony as improper under Fed. R. Civ. P. 32 and Fed. R. Evid. 802 and 804

[66] Revance objects to Allergan, Inc. calling Mr. Maurice Mulders by deposition (or in person at trial). The disclosure of Mr. Mulders as a trial witness is untimely and his testimony is irrelevant and prejudicial in light of the Court's May 30, 2025 Order dismissing Allergan Pharmaceuticals Ireland Unlimited Company and Allergan USA, Inc. First, Mr. Mulders was not disclosed in any Rule 26(a)(1) disclosure or any interrogatory response in this case. As a consequence, Allergan has never collected documents for which he is a custodian, nor was he deposed during the fact-discovery period in this case. Second, Mr. Mulders was never listed on any Allergan trial witness list during the 2024 pre-trial exchanges or the November 2024 Pretrial Order, appearing for the time in a June 25, 2025 disclosure. While Mr. Mulders has now been deposed, that deposition cannot cure any prejudice that would result from his late injection into this case.  Revance did not have the typical collection of documents to adequately cross-examine Mr. Mulders at the deposition for purposes of preparing for trial testimony. Mr. Mulders' deposition was limited to a 2025 declaration and documents Allergan produced in 2025 in relation to whether Allergan Pharmaceuticals Ireland Unlimited Company and Allergan USA, Inc. had Article III Standing in this case. The Court has already determined that Allergan Pharmaceuticals Ireland Unlimited Company does not have Article III standing and that Plaintiff has voluntarily dismissed Allergan USA, Inc. (D.I. 450 at 2, 19). Mr. Mulders' testimony is therefore irrelevant and its probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Ev. 403. If Allergan wished to have Mr. Mulders testify at trial, it could have disclosed him much earlier than June 25, 2025.

| Deposition of Maurice Mulders[65,66]<br>March 19, 2025 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| 18:6-20 | H, P, R, ID, L, F, AF | | | |
| 19:16-20:5 | H, P, R, ID, L, F, AF | 19:5-15<br>20:6-9<br>20:12-18<br>20:22-24 | R, P | |
| 21:10-25 | H, P, R, ID, L, F, AF, I | 22:1-2 | R, P | |
| 22:3-17 | H, P, R, I, L, F, AF | 22:1-2 | R, P | |
| 22:20-23:5 | H, P, R, L, F, AF, I | 20:22-24 | R, P | |
| 23:9-22 | H, P, R, AF | | | |
| 24:18-23 | H, P, R, L, F, AF | | | |
| 25:2-9 | H, P, R, L, F | 25:10-14<br>25:17-26:12 | R, P | |
| 26:16-27:2 | H, P, R, ID | | | |
| 27:11-29:20 | H, P, R, L, F, AF | 33:19-25<br>34:6-25 | R, P | |
| 30:2-31:1 | H, P, R, I, ID, L, F, AF | 29:21-30:1 | R, P | |
| 32:8-33:12 | H, P, R, ID, AF, L, F | 33:13-25<br>34:6-25<br>43:22-44:6 | R, P | |
| 37:18-38:10 | H, P, R, L, F, AF | 33:13-25<br>34:6-25<br>43:22-44:6 | R, P | |
| 39:15-40:8 | H, P, R, I, L, F, AF | 40:9-13 | R, P | |
| 40:14-19 | H, P, R, AF, L, F | 40:9-13 | R, P | |
| 44:7-19 | H, P, R, L, F, ID, AF | 43:22-44:6 | R, P | |
| 46:15-47:10 | H, P, R, L, F, AF | 43:22-44:6 | R, P | |
| 47:18-48:5 | H, P, R, L, F, AF | 43:22-44:6<br>48:6-49:3 | R, P | |

| Deposition of Maurice Mulders[65,66]<br>March 19, 2025 | | | | |
|---|---|---|---|---|
| **Allergan's Designations** | **Revance's Objections** | **Revance's Counter-Designations** | **Allergan's Objections to Counter-Designations** | **Allergan's Counter-Counter-Designations** |
| | | 49:23-50:5 | | |
| 49:4-8 | H, P, R, L, F, AF | 49:23-50:5 | R, P | |
| 55:10-24 | H, P, R, L, F, ID, AF | | | |
| 56:6-13 | H, P, R, L, F, ID, AF | | | |
| 57:2-58:23 | H, P, R, L, F, AF | 58:24-59:22<br>60:4-6<br>60:9-10 | R, P | |
| 61:12-14 | H, P, R, L, F, AF | 61:1-2<br>61:5-11<br>61:15-21 | R, P | |
| 63:4-7 | H, P, R, L, F, I, AF | 62:25-63:3<br>63:8-19 | R, P | |
| 68:12-69:23 | H, P, R, L, F, AF | 69:24-70:6 | R, P | |
| 70:7-71:20 | H, P, R, L, F | 72:6-10<br>72:13-14 | R, P | |
| 72:3-5 | H, P, R, L, F | 72:6-10<br>72:13-14 | R, P | |
| 72:15-20 | H, P, R, L, F | 72:6-10<br>72:13-14<br>72:21-23 | R, P | |

# EXHIBIT 6-B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | C.A. No. 21-1411-RGA-LDH<br><br>**JURY TRIAL DEMANDED** |

**EXHIBIT 6-B: REVANCE'S DEPOSITION DESIGNATIONS**

Revance provides the following deposition designations, which are based on the parties' pleadings, documentary and testimonial evidence, and on Revance's current understanding of Allergan's claims and defenses and the Court's rulings to date. Revance designates this testimony pursuant to Federal Rule of Civil Procedure 26(a)(3).

Revance reserves the right to revise, amend, supplement, or modify its deposition designations and its objections to Allergan's counter designations based upon any pretrial rulings by the Court or to address any additional issues, arguments, evidence, or other developments in the case. Revance further reserves the right to supplement these designations to rebut or otherwise address deposition designations, exhibits, other facts identified by Allergan, to respond to pretrial rulings by the Court, to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments. All irrelevant and

redundant material, including objections and colloquy of counsel, will be eliminated from the deposition designations below when the designations are read or played to the Court.

Revance further reserves the right to designate any portion of the deposition transcripts of Allergan's 30(b)(6) representatives, officers, current or former employees, as well as the witnesses listed on the parties' witness lists should they be unavailable or fail to be in attendance at trial.

Revance further reserves the right to later provide designations from any deposition, whether listed below or not, for purposes of impeachment or refreshment.

Revance also provides the following objections to Allergan's deposition counter-designations. Revance reserves the right to revise, amend, supplement, or modify its objections and counter designations based upon any changes to Allergan's designations, in response to pretrial rulings by the Court, or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.

## **ALLERGAN'S OBJECTIONS TO REVANCE'S DEPOSITION DESIGNATIONS**

Allergan's counter-designations set forth below apply equally to any and all of Revance's affirmative designations. In addition, Allergan may rely upon any of Revance's designations for any purpose, regardless of any objection Allergan may have to Revance's designation of that testimony. Further, Allergan reserves the right to revise or supplement its objections and counter-designations consistent with the Pretrial Order, the applicable rules, or as otherwise permitted by the Court, including based on any parties' pretrial exchanges, any pretrial rulings by the Court, or as otherwise necessary.

Allergan also reserves the right to object at trial to the use of any deposition testimony if the specific context for which the deposition testimony is being offered is objectionable, even if Allergan has no objection to the deposition testimony itself (*e.g.*, deposition testimony that Revance attempts to use in an irrelevant way or as hearsay without a proper exception). Allergan further reserves the right to object if Revance attempts to introduce deposition testimony in a manner that violates or otherwise does not comport with the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware.

While Allergan's counter-designations are generally listed in order next to the closest relevant portion of Revance's designations, Allergan reserves the right to include them as counter-designations to other portions of testimony if Revance plays or reads those other portions at trial. The listing of a deposition designation below by Allergan does not constitute an admission as to the admissibility of the testimony, nor is it a waiver of any applicable objection. Allergan reserves the right to use any deposition testimony not specifically identified on a party's

deposition designation list for the purposes of impeachment or cross-examination at trial. Allergan reserves the right to add additional designations to establish the foundation and authenticity of an exhibit to the extent Revance challenges the admissibility of a particular document.

| The Parties' Agreed-Upon Objection Key for Deposition Designations and Exhibit List | |
|---|---|
| **Code** | **Objection** |
| **602** | This testimony is objectionable because it constitutes testimony to which the witness lacks personal knowledge. *See* FRE 602 |
| **701** | This testimony is objectionable because it is opinion testimony by a lay witness that is not reasonably based on perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in dispute (*see* FRE 701), and/or it is attempted expert testimony from a witness who was not designated as an expert and who did not submit an expert report (*see* FRCP 26) |
| **AA** | Asked and answered |
| **AF** | Assumes a fact not in evidence |
| **AU** | Lack of authenticity or identification (FRE 901) |
| **B** | Not best evidence (FRE 1002, 1003, and/or 1004) |
| **BS** | Beyond the scope of contentions |
| **CO** | Compound question |
| **DB** | *Daubert* / FRE 701–703 |
| **DE** | Demonstrative / should not be admitted into evidence |
| **DUP** | Counter designation is duplicative of the original designation |
| **E** | Calls for expert opinion, improper testimony of a lay witness |
| **F** | Lacks foundation (*see* FRE 901; *see also* FRE 103, 104, 105) |
| **FRCP 30(b)(6)** | Outside the scope of witness designation |
| **H** | Hearsay (FRE 801–802) |
| **HYP** | Improper Hypothetical |

| | |
|---|---|
| **I** | Incomplete (FRE 106) |
| **ID** | Improper deposition designation (*e.g.* Attorney objections not removed, etc.) |
| **IE** | Relates to exhibit that is an excerpt from a longer document without the original or a copy of the original document having been provided. |
| **IL** | Illegible |
| **L** | Legal conclusion |
| **LD** | Leading (*see* FRE 611) |
| **LIVE** | The witness will be live at trial. |
| **MC** | Mischaracterizes testimony, misleading, or misstates evidence. |
| **MIL** | Subject to *motion in limine* |
| **MU** | Entry includes multiple documents |
| **N** | Documents are not properly identified. Parties reserve the right to further object after inspection or examination of the properly identified documents. |
| **NP** | Not produced / provided before relevant discovery deadline |
| **NSW** | No sponsoring witness |
| **NT** | No translation / translation not timely provided |
| **OS** | Outside scope of original designation |
| **P** | Prejudice/confusion/misleading/delay/waste of time/cumulative (FRE 403) |
| **PRIV** | Attorney Client Privilege or Work Product |
| **R** | Lack of relevance (FRE 401–402) |
| **SP** | Speculation; calls for speculation |
| **V** | Vague and ambiguous |

**Deponent: Wadjie Ahmad (October 4, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 07:12-07:14 | | | | |
| 08:02-08:07 | | | | |
| 09:14-09:18 | I | | | |
| | | 09:19-21 | | |
| 09:22-09:25 | I | | | |
| | | 10:01-10:23 | **R** | |
| | | 10:25-11:13 | **R** | |
| | | 11:15-11:17 | **R** | |
| 11:18-13:02 | | | | |
| 13:15-13:24 | | | | |
| 14:13-14:22 | | | | |
| 15:05-15:10 | | | | |
| 15:19-15:25 | | | | |
| 17:01-17:07 | | | | |
| | | 17:08-17:13 | **R** | **17:20-18:1** |
| 17:14-17:19 | I | | | |
| 18:02-18:09 | | | | |
| 18:16-19:01 | | | | |
| 20:06-20:11 | | | | |
| 20:16-20:20 | I | | | |
| | | 20:21-21:07 | **R** | |
| 22:19-23:04 | | | | |
| 24:08-24:18 | | | | |
| | | 24:19-25:21 | **R, OS** | **25:22-26:15** |
| | | 26:16-27:17 | **R, OS** | |
| | | 28:17-28:23 | **R, OS** | |
| | | 29:02-30:09 | **R, OS, F, SP, V** | **30:10-20** |
| | | 31:04-31:06 | **R, OS** | |
| | | 32:09-32:16 | **R, OS, F, SP, V** | |
| | | 32:18-32:20 | **R, OS, F, SP, V** | |
| | | 32:22-33:07 | **R, OS, F, SP, V** | **33:8-20** |
| | | 34:04-34:12 | **R, OS, F, SP, V** | |

| | | | | |
|---|---|---|---|---|
| 34:13-35:08 | I | | | |
| | | 36:17-37:08 | **R, OS, F, SP, V** | |
| | | 38:07-39:17 | **R, OS, F, SP, V** | **39:18-40:15** |
| | | 40:16-41:13 | **R, OS, F, SP, V, P** | |
| 41:14-42:01 | I | | | |
| | | 42:02-42:17 | **R, F, SP, V, P** | |
| 43:02-43:04 | F, 602, R, V | | | |
| 43:06-43:11 | F, 602, R, V | | | |
| 43:17-44:03 | F, 602, R, SP, MC | | | |
| 44:05-44:18 | F, 602, R, SP, MC | | | |
| 45:15-46:02 | F, 602, R, SP, MC, I | | | |
| | | 46:03-46:07 | **R, OS, F, SP, V, P** | |
| | | 46:09-46:11 | **R, OS, F, SP, V, P** | |
| | | 48:19-48:22 | **R, OS, F, SP, V, P** | |
| | | 48:24-49:17 | **R, OS, F, SP, V, P** | **49:18-22** |
| | | 49:23-50:21 | **R, OS, F, SP, V, P** | **50:22-51:5** |
| 63:08-63:14 | | | | |
| | | | | |
| 63:20-64:15 | | | | |
| 64:17-64:19 | | | | |
| 65:23-66:15 | F, 602, R, MC, I | | | |
| | | 67:11-67:22 | **R, F, SP, V, P** | |
| 68:23-69:04 | R, SP, V, I | | | |
| | | 69:05-69:10 | **R, OS, F, SP, V** | |
| 69:11-69:16 | F, 602, R, SP, V | | | |
| | | 69:17-70:01 | **R, OS, F, SP, V** | |
| 70:02-70:08 | R, SP, V | | | |

| | | | | |
|---|---|---|---|---|
| | | 70:09-70:15 | **R, OS, F, SP, V** | |
| 70:16-71:11 | R | | | |
| 72:03-73:04 | | | | |
| 74:02-74:09 | | | | |
| 81:24-82:01 | | | | |
| 82:03-82:24 | | | | |
| 83:01-83:10 | F, 602, E, 701, L, V, R | | | |
| 83:12-83:22 | F, 602, E, 701, L, V, R | | | |
| 83:24-84:05 | F, 602, E, 701, L, V, R | | | |
| 84:07-84:12 | F, 602, E, 701, L, V, R | | | |
| 84:14-84:19 | F, 602, E, 701, L, V, R | | | |
| 84:21-85:02 | F, 602, E, 701, L, V, R | | | |
| 85:04-85:09 | F, 602, E, 701, L, V, R | | | |
| 85:11-85:16 | F, 602, E, 701, L, V, R | | | |
| 85:18-85:23 | F, 602, E, 701, L, V, R | | | |
| 85:25-86:05 | F, 602, E, 701, L, V, R | | | |
| 86:07-86:14 | F, 602, E, 701, L, V, R | | | |
| 86:16-86:18 | F, 602, E, 701, L, V, R | | | |

**Deponent: Ron Bates (September 27, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 09:10-09:12 | | | | |
| 10:19-10:23 | MC | | | |
| 11:09-11:14 | | | | |
| | | 11:15-11:18 | | |
| 12:14-13:05 | I | | | |
| | | 13:06-13:24 | | |
| | | 14:05-14:23 | | |
| | | 15:23-15:25 | | |
| 16:06-16:20 | I | | | |
| | | 16:21-17:13 | | |
| 18:03-18:06 | | | | |
| | | 18:07-18:09 | | |
| 18:10-18:11 | I | | | |
| | | 18:12-19:15 | | |
| | | 19:22-20:03 | **R, V** | |
| 20:06-20:09 | R | | | |
| 20:14-20:25 | R | | | |
| 21:14-22:05 | I | | | |
| | | 22:06-22:12 | | |
| | | 23:06-24:22 | **V** | |
| | | 25:05-25:22 | **V** | |
| | | 26:24-27:12 | **R** | |
| | | 29:20-30:24 | | |
| | | 32:15-32:18 | | |
| | | 32:20-33:07 | | |
| | | 36:06-36:19 | | |
| | | 36:21-37:08 | | |
| 37:10-37:15 | I, R, V, MC | | | |
| 37:17-38:06 | I, R, V, MC | | | |
| 39:01-39:16 | I | | | |
| | | 39:17-40:03 | | |
| 40:04-40:11 | I | | | |
| | | 40:12-40:18 | | |
| | | 40:20-40:21 | | |
| 40:22-41:04 | I | | | |
| | | 41:05-41:14 | | |
| 41:19-42:09 | I | | | |
| 42:11 | I | | | |
| 42:15-42:17 | I | | | |
| 42:19-42:24 | I | | | |

| | | | | |
|---|---|---|---|---|
| | | 42:25-43:09 | **V** | |
| | | 43:11-43:19 | **V** | |
| 44:07-44:16 | V, SP | | | |
| 44:18-44:21 | V, SP | | | |
| 47:24-48:05 | | | | |
| 48:14-49:14 | R, AF, V | | | |
| 49:16-49:23 | R, AF, V | | | |
| 51:23-52:23 | MC, V | | | |
| 52:25-53:17 | MC, V | | | |
| | | 54:05-55:10 | **V** | |
| | | 56:07-56:09 | | |
| 63:12-63:21 | | | | |
| 64:11-64:19 | I | | | |
| | | 64:20-65:12 | **SP** | |
| | | 66:08-66:15 | **SP** | |
| | | 66:21-67:05 | **SP** | |
| | | 67:09-68:14 | **V** | |
| | | 68:17-69:05 | **SP** | |
| | | 69:08-69:12 | | |
| | | 69:19-69:23 | | |
| | | 70:05-71:06 | | |
| | | 71:08-71:17 | | |
| | | 71:20-72:10 | **SP** | **72:11-73:3** |
| | | 73:04-74:01 | **SP, R, V** | **74:02-74:20** |
| | | 75:10-75:14 | **V** | **74:22-75:9** |
| | | 79:16-80:05 | **V** | |
| 81:03-81:18 | R, E, 701, V, SP, L | | | |
| 82:25-83:14 | R, E, 701, V, SP , L | | | |
| 84:14-84:15 | R, E, 701, V, SP, L, AF | | | |
| 84:17-84:24 | R, E, 701, V, SP, L, AF | | | |
| 85:01-85:10 | R, E, 701, V, SP, L, AF | | | |
| 85:12-85:16 | R, E, 701, V, SP, L, AF | | | |
| 88:01-88:09 | R, E, 701, V, SP, L, MC, AF | | | |
| 89:08-91:01 | R, E, 701, V, SP, L, MC, AF | | | |

| | | | | |
|---|---|---|---|---|
| | | 91:02-91:14 | **R** | **85:6-10; 85:12-85:16, 88:01-88:09, 89:08-91:01** |
| 92:04-93:02 | I, R, E, F, 701, 602, V, SP, L | | | |
| 93:04-94:11 | R, E, F, 701, 602, V, SP, L | | | |
| 94:14-94:17 | I, R, E, F, 701, 602, V, SP, L | | | |
| | | 94:18-94:22 | | **93:14-94:11** |
| | | 94:24-95:09 | | **94:14-94:17** |
| 97:13-97:17 | R, E, F, 701, 602, V, SP | | | |
| 97:19-98:02 | R, E, F, 701, 602, V, SP | | | |
| 99:06-99:16 | R, E, 701, 602, V, SP, F, L | | | |
| | | 100:02-100:06 | **V, P** | |
| | | 100:08-100:11 | **V, P** | **99:06-99:25** |
| 100:12-100:16 | R, E, 701, 602, V, SP, F, L | | | |
| 100:18-100:25 | R, E, 701, 602, V, SP, F, L | | | |
| 101:07-101:19 | R, E, 701, 602, V, SP, F, L, MC | | | |
| 102:20-103:06 | E, 701, V, L | | | |
| 103:08-103:14 | E, 701, V, L | | | |
| 103:22-104:09 | E, 701, V, L | | | |
| 104:11-104:18 | E, 701, V, L | | | |
| 106:08-106:24 | R, E, 701, 602, V, SP, F, L | | | |
| 107:01-107:05 | R, E, 701, 602, V, SP, F, L | | | |
| | | 107:06-107:09 | **V, SP** | |
| 117:25-120:10 | I | | | |
| | | 120:11-120:20 | **V, SP** | **118:12-120:10** |
| 120:22-121:18 | | | | |
| 121:20-121:24 | I | | | |
| 122:01-122:05 | I | | | |
| | | 122:06-122:12 | | |

| | | | | |
|---|---|---|---|---|
| | | 122:14-123:22 | **V, SP** | **118:12-120:10** |
| 123:25-125:13 | I | | | |
| 128:24-128:25 | R, F, 602, E, 701, V, SP, L | | | |
| 129:02-130:10 | R, F, 602, E, 701, V, SP, L | | | |
| 130:12-131:06 | R, F, 602, E, 701, V, SP, L | | | |
| 131:08-132:03 | R, F, 602, E, 701, V, SP, L | | | |
| 132:05-132:22 | R, F, 602, E, 701, V, SP, L, MC | | | |
| 132:25-133:17 | R, F, 602, E, 701, V, SP, L, MC | | | |
| 133:19-134:15 | R, F, 602, E, 701, V, SP, L, MC | | | |
| 134:17-135:04 | R, F, 602, E, 701, V, SP, L, MC | | | |
| 135:06-135:10 | R, F, 602, E, 701, V, SP, L | | | |
| 136:03-136:15 | | | | |
| 137:11-137:18 | R, E, 701, L, V, SP | | | |
| 137:20-137:21 | R, E, 701, L, V, SP | | | |
| 138:02-138:04 | R, E, 701, L, V, SP | | | |
| 138:07-138:09 | R, E, 701, L, V, SP | | | |
| 138:11-138:13 | | | | |
| 139:03-139:12 | R, E, 701, L, 602, V, SP, F | | | |
| 139:14-139:23 | R, E, 701, L, 602, V, SP, F | | | |
| 139:25-140:19 | R, E, 701, L, 602, V, SP, F | | | |
| 144:01-144:03 | R, E, 701, L, 602, V, SP, F | | | |

| | | | | |
|---|---|---|---|---|
| 144:05-144:12 | R, E, 701, L, 602, V, SP, F | | | |
| 144:14-144:23 | R, E, 701, L, 602, V, SP, F | | | |
| 144:25-145:10 | R, E, 701, L, 602, V, SP, F | | | |
| 145:12-145:18 | R, E, 701, L, 602, V, SP, F | | | |
| 152:06-153:08 | MC, L | | | |
| 153:10-153:13 | MC, L | | | |
| 153:17-153:20 | V, SP, L, E, 701 | | | |
| 153:22-153:24 | V, SP, L, E, 701 | | | |
| 154:07-154:13 | | | | |
| 154:15-155:02 | | | | |
| | | 157:02-157:07 | **R** | |
| | | 157:10-157:23 | **R** | |
| | | 157:25-158:13 | **R** | |
| | | 158:15-159:05 | **R** | **162:06-162:10** |
| | | 159:07-160:01 | **R, V** | **162:12-162:19** |
| | | 160:17-161:07 | **R** | **162:21-162:22** |
| | | 162:25-163:12 | **R** | |
| 165:21-167:02 | AF, I, V, SP | | | |
| 167:04-167:12 | AF, I, V, SP | | | |
| | | 167:13-167:18 | **V** | |
| | | 168:01-168:15 | **V** | |
| | | 168:17-169:01 | **V** | |
| 174:21-176:04 | SP, MC | | | |
| 176:07-176:08 | SP, MC | | | |
| 176:10-176:24 | SP, MC | | | |
| 177:01-177:05 | SP, MC | | | |
| 191:15-191:22 | | | | |
| 191:24-191:25 | | | | |
| 192:02-192:22 | I | | | |
| | | 192:23-193:16 | **R** | |
| | | 193:18-194:06 | **R, V** | |
| 195:01-195:20 | V, SP, MC | | | |
| 195:22-196:06 | V, SP, MC | | | |
| 196:08-196:14 | V, SP, MC | | | |
| 196:16-196:22 | V, SP, MC | | | |
| 196:24-197:17 | V, SP, MC | | | |

| | | | | |
|---|---|---|---|---|
| 197:19-198:12 | V, SP, MC, AA | | | |
| 198:14-198:20 | V, SP, MC, AA | | | |
| 198:22-199:01 | V, SP, MC, AA | | | |
| 199:20-199:24 | R, E, 701 | | | |
| 200:01-200:16 | R, E, 701 | | | |
| 201:24-202:21 | R, E, 701 | | | |
| 211:11-213:02 | R, V, SP, E, 701 | | | |
| 213:04-213:13 | R, V, SP, E, 701 | | | |
| 213:15-213:22 | R, V, SP, E, 701 | | | |
| 213:24-214:16 | R, E, 701 | | | |
| 214:22-216:02 | R, V, SP, E, 701, MC, I | | | |
| 216:04-216:17 | R, V, SP, E, 701, MC, I | | | |
| 216:20-217:02 | R, V, SP, E, 701, MC, I | | | |
| 217:04-217:07 | R, V, SP, E, 701, MC, I | | | |
| | | 217:08-217:10 | | |
| | | 217:12-217:20 | | |
| | | 217:22 | | |
| | | 217:24-218:02 | **V** | **218:03-218:07** |
| 218:03-218:07 | R, E, 701, MC | | | |
| 219:21-220:17 | R, V, SP, E, 701, I | | | |
| 220:19-220:21 | R, V, SP, E, 701, I | | | |
| | | 222:16-223:02 | | |
| | | 223:04-223:17 | **V** | |
| | | 223:19-224:03 | **V** | **220:14-220:17; 220:19-220:21** |
| 228:10-229:10 | R, V, SP, E, 701, L, I | | | |
| 229:12-229:14 | R, V, SP, E, 701, L, I | | | |
| | | 229:15-229:21 | **V** | **229:8-10; 229:12-229:14** |
| 230:23-231:08 | R | | | |
| 231:10-232:08 | R | | | |

| | | | | |
|---|---|---|---|---|
| 232:21-233:16 | R, MC | | | |
| 233:18-234:14 | R, MC, V, SP | | | |
| 234:16-234:19 | R, MC, V, SP | | | |
| 234:21-235:21 | R, MC, V, SP | | | |
| 235:23-236:09 | R, MC, V, SP | | | |
| | | 236:10-236:22 | | |
| 236:23-236:25 | R | | | |
| 237:06-237:24 | R | | | |
| 240:05-240:19 | R, V, SP, E, 701 | | | |
| 240:21-241:02 | R, V, SP, E, 701 | | | |
| 241:04-241:05 | R, V, SP, E, 701 | | | |
| 244:14-245:07 | R | | | |
| 249:14-250:11 | R | | | |
| 253:02-253:18 | I | | | |
| | | 253:19-254:08 | **R** | |
| | | 254:13-254:16 | **R** | |
| | | 255:13-255:21 | **R** | |
| | | 257:21-258:01 | **R** | |
| | | 258:03-258:16 | **R** | |
| | | 258:18-259:03 | **R** | |
| | | 259:05-259:14 | **R** | |
| | | 259:16-259:19 | **R** | |
| | | 260:12-261:06 | **R** | |
| | | 261:20-262:01 | **R** | |
| | | 262:03-262:16 | **R** | **262:17-262:23** |
| | | 262:24-263:09 | **R** | |
| | | 263:11-264:04 | **R** | |
| | | 264:20-264:25 | **R** | **266:4-7; 266:9-267:6** |
| | | 265:03-265:10 | **R** | **267:8-267:22** |
| | | 265:23-266:03 | **R** | **267:24** |
| 268:09-268:17 | R, E, 701 | | | |
| 268:20-269:18 | R, E, 701, MC | | | |
| 269:20-270:10 | R, E, 701, MC | | | |

**Deponent: Ron Broide (November 7, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| | | 08:03-08:04 | | |
| 08:05-08:07 | | | | |
| | | 08:08-08:10 | | |
| | | 08:13-09:08 | | |
| 09:09-09:11 | | | | |
| | | 09:12-09:17 | **602, 701** | |
| | | 10:10-10:14 | | **10:25-11:3** |
| | | 10:16 | | |
| | | 10:18-10:24 | | |
| | | 11:24-12:07 | | |
| | | 12:14-13:09 | | **14:18-22** |
| | | 15:16-15:18 | | |
| 16:02-16:13 | I | | | |
| | | 16:14-19:17 | **R** | |
| 19:18-20:07 | I | | | |
| | | 20:08-20:22 | | |
| | | 21:02-21:07 | | |
| | | 21:12-21:16 | | |
| | | 22:11-22:18 | | |
| | | 22:23-25:22 | **R** | |
| 25:23-26:05 | I | | | |
| 26:08-26:10 | I | | | |
| 26:14-26:17 | I | | | |
| | | 26:21-26:24 | | |
| | | 27:02 | | |
| | | 27:04-27:20 | | |
| 27:21-28:24 | I | | | |
| | | 28:25-29:10 | | |
| 29:11-29:25 | I | | | |
| | | 30:01-30:05 | | |
| 30:10-31:02 | I, V | | | |
| | | 31:03-31:05 | | |
| | | 31:08-31:11 | | |
| 31:13-32:06 | I | | | |
| 32:09-32:10 | I | | | |
| | | 32:14-32:16 | | |

| | | | | |
|---|---|---|---|---|
| | | 32:19-32:21 | | |
| | | 32:23-33:04 | | |
| 33:12-33:19 | I | | | |
| | | 33:20-34:12 | **602, 701** | **33:12-33:19** |
| 34:15 | I | | | |
| 34:18-34:21 | I | | | |
| 34:23-34:24 | I | | | |
| 35:02-35:04 | I | | | |
| 35:06-35:11 | I | | | |
| | | 35:12-35:18 | | |
| | | 37:02-37:10 | | |
| | | 37:19-37:22 | | |
| | | 37:25-38:02 | | |
| | | 38:04-38:07 | | |
| | | 38:10-38:16 | **R, V** | |
| | | 39:03-39:06 | | |
| | | 39:09 | | |
| 40:12-40:16 | | | | |
| 40:19-40:22 | | | | |
| 40:24-41:01 | | | | |
| 41:13-41:15 | V | | | |
| 41:19-42:01 | V | | | |
| | | 42:02-42:06 | | |
| 42:07-42:09 | V | | | |
| 42:12-42:14 | V, I | | | |
| | | 42:16-42:19 | | |
| | | 43:15-43:19 | | |
| | | 44:23-44:25 | **I** | **44:12-22** |
| | | 45:14-45:21 | **I** | **45:9-13, 45:22-25** |
| | | 46:09-46:13 | **R, 602, 701** | **46:1-2, 46:5-7, 46:14-18, 46:22-25; 47:15-17; 47:20-48:6** |
| 48:16-48:19 | | | | |
| 48:22-48:23 | | | | |
| | | 52:05-52:07 | **I, R, OS** | |
| | | 52:24-53:02 | **I, OS** | **53:18-20, 53:25-54:12** |
| | | 53:07-53:17 | **I, OS** | **53:18-20, 53:25-54:12** |
| | | 56:17-56:18 | **OS** | |

| | | | | |
|---|---|---|---|---|
| | | 56:24-57:04 | **OS** | |
| | | 57:06-57:08 | **OS** | |
| | | 57:12-57:14 | **OS** | |
| | | 57:16-58:02 | **OS, R, 602, 701, I** | **58:3-6; 58:10-20** |
| | | 58:21-59:09 | **OS, R, 602, 701** | |
| | | 59:13-59:14 | **OS** | |
| | | 59:16-59:20 | **OS, I** | **59:21-23** |
| | | 60:01-60:06 | **OS, R, F, P, 602, 701** | |
| | | 60:08-60:21 | **OS, R, F, P, 602, 701** | |
| | | 61:19-62:09 | **OS, R, F, P, 602, 701** | |
| | | 64:13-64:19 | **OS** | |
| | | 64:23-65:01 | **OS** | |
| 65:17-65:19 | | | | |
| 65:22-66:02 | | | | |
| | | 66:04-66:21 | **R** | |
| 67:19-67:22 | I | | | |
| 67:25-68:06 | I | | | |
| | | 68:10-68:16 | | |
| | | 68:18-69:02 | | |
| | | 71:09-73:07 | **R, F, P, 602, 701** | **73:8-74:14** |
| | | 74:17-74:21 | **OS** | |
| | | 74:23-75:07 | **OS** | |
| | | 75:10-75:12 | **OS** | |
| | | 75:14-75:22 | **OS** | |
| | | 75:25-76:02 | **OS** | |
| | | 76:04-76:25 | **OS** | |
| | | 77:08-77:15 | | |
| 73:8-74:14 | | | | |
| 77:16-77:17 | I | | | |
| 77:20-78:06 | I | | | |
| | | 78:07-78:22 | **R, F, P, 602, 701** | |
| | | 79:01-79:21 | **OS, R, F, P, 602, 701** | |
| | | 79:25-80:04 | **OS** | |
| | | 80:07-80:10 | **OS** | |
| | | 80:12-81:03 | **OS** | |
| | | 81:07-81:09 | **OS** | |
| | | 81:25-82:02 | **OS** | |

| | | | | |
|---|---|---|---|---|
| | | 82:06-82:12 | **OS, R, F, P, 602, 701** | |
| | | 82:14-84:09 | **OS** | |
| | | 84:22-85:10 | **OS, R, F, P, 602, 701** | **34:4-12** |
| | | 85:14 | **OS, R, F, P, 602, 701** | |
| | | 85:16-85:25 | **OS, R, F, P, 602, 701** | |
| | | 86:03 | **OS, R, F, P, 602, 701** | |
| | | 86:15-86:17 | | |
| | | 86:21-87:07 | **OS, R, F, P, 602, 701** | |
| | | 88:01-88:07 | **OS** | |
| | | 88:11-88:20 | **OS, R, F, P, 602, 701** | **34:4-12** |
| | | 88:22-89:02 | **OS** | |
| | | 89:06-89:15 | **OS, R, F, P, 602, 701** | **34:4-12** |
| | | 90:23-92:04 | **OS, R, F, P, 602, 701** | **34:4-12** |
| | | 92:10-93:16 | **OS, R, F, P, 602, 701** | **34:4-12** |
| | | 94:05-94:08 | **OS, I** | **94:9-15, 94:18** |
| 95:02-95:04 | I | | | |
| 95:07 | I | | | |
| | | 97:08-97:18 | **OS, I** | **96:25-97:2** |
| | | 98:08-98:16 | | |
| 98:17-99:03 | I | | | |
| | | 99:04-99:21 | **OS** | |
| | | 99:24-100:06 | **OS, S** | |
| | | 100:08-100:25 | **OS, S** | **101:1-2; 101:5-10** |
| | | 103:03-103:08 | **OS** | |
| | | 103:14-104:13 | **OS , R, F, H** | |
| | | 105:15-106:10 | **OS , I** | **106:11-14, 107:1-5** |
| | | 106:21-106:25 | **OS** | **107:1-5** |
| 107:01-107:05 | I | | | |
| | | 107:06-107:23 | | **107:1-5** |
| | | 108:16-109:05 | **OS** | |

| | | | | |
|---|---|---|---|---|
| | | 109:10-109:16 | **OS** | **107:1-5** |
| 110:04-110:07 | I, V, F, R | | | |
| | | 113:21-115:08 | **OS, R, F, P, 602, 701** | **34:4-12; 107:1-5** |
| | | 115:11-115:16 | **OS, R, F, P, 602, 701** | **107:1-5** |
| | | 117:23-118:05 | **OS** | |
| | | 118:07-118:25 | **OS** | |
| | | 126:08-126:10 | **OS** | |
| 127:07-127:20 | I, FRCP 30(b)(6), V, R, F | | | |
| 128:01-128:19 | | | | |
| | | 130:02-130:07 | **F, P, 602, 701** | |
| 130:08-130:20 | I | | | |
| | | 130:21-130:22 | | |
| | | 131:01-131:02 | | |
| 131:06-132:05 | I | | | |
| | | 132:06-132:14 | **R, F, P, 602, 701** | |
| | | 132:25-133:01 | **OS** | |
| | | 133:05-133:09 | **OS, R, F, P, 602, 701** | |
| | | 135:12-135:22 | **OS, S, F, P** | |
| | | 137:13-137:15 | **OS** | |
| | | 137:19-138:13 | **OS, S, F, P** | |
| | | 138:15-139:10 | **OS, S, F, P** | |
| 139:16-140:05 | I | | | |
| 140:11-140:18 | | | | |
| 149:17-149:19 | I | | | |
| 149:21-150:01 | I | | | |
| 150:03-150:06 | I | | | |
| | | 150:07-150:18 | | |
| 150:19-151:02 | I | | | |
| | | 151:03-151:10 | **OS** | |
| | | 151:12-151:17 | **OS** | |
| | | 151:20-151:24 | **OS** | |
| | | 152:06-152:15 | **OS** | |
| | | 153:21-153:25 | **OS** | |
| 161:06-161:14 | | | | |
| 164:22-164:23 | I, FRCP 30(b)(6), 602 | | | |

| | | | | |
|---|---|---|---|---|
| | | 164:24-165:19 | **S** | **167:6-7, 167:11-16, 167:20-21** |
| | | 168:20-169:04 | **OS** | **169:5-7** |
| | | 169:22-170:03 | **OS, I** | **169:8-15, 169:18-20** |
| | | 170:06-170:11 | **OS, 602, 701** | |
| | | 170:13-170:25 | **OS, 602, 701** | |
| | | 171:25-172:07 | **OS** | |
| | | 174:18-174:21 | **OS** | |
| | | 174:24-175:04 | **OS, 602, 701** | |
| | | 175:06 | **OS** | |
| | | 175:10-175:11 | **OS, 602, 701** | |
| | | 175:13-175:25 | **OS, 602, 701** | |
| | | 176:06-177:19 | **OS, 602, 701** | |
| 180:4-8 | | | | |
| 181:12-181:25 | | | | |
| 182:03-182:08 | | | | |
| 182:17-183:06 | I | | | |
| 183:11 | I | | | |
| | | 183:13-183:19 | | |
| 184:6-11 | | | | |
| 184:19-185:2 | I | | | |
| 185:03-185:14 | | | | |
| | | 185:15-186:02 | | |
| | | 186:06-186:08 | | |
| | | 186:10-186:15 | | |
| | | 187:07-188:10 | **R** | |
| | | 189:22-189:23 | | |
| | | 190:02-190:08 | | |
| 197:09-197:10 | I, R, V, SP | | | |
| 197:13-198:03 | I, R, V | | | |
| | | 207:21-207:23 | | |
| | | 208:01:208:07 | | |
| 208:09-208:15 | I | | | |
| | | 208:16-208:23 | | |
| | | 210:01-210:07 | **OS** | |
| | | 218:16-220:06 | **OS, R, 602, 702, P** | |
| 220:19-221:04 | V, OS | | | |
| 221:08-221:09 | V, OS | | | |

**Deponent: Stephen Donovan (October 25, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 05:25-06:01 | R | | | |
| 06:17-07:01 | I, MC | | | |
| | | 08:07-08:08 | **R, OS** | |
| | | 08:13 | **R, OS** | **8:15-17** |
| 08:23-09:01 | | | | |
| 09:17-10:17 | | | | |
| | | 11:24-12:04 | **R, OS** | |
| 12:05-12:10 | I | | | |
| 12:14-12:18 | I | | | |
| | | 12:19-12:21 | **R, OS** | |
| 12:23-13:03 | | | | |
| | | 13:04-13:07 | **R, OS** | |
| 13:08-13:12 | | | | |
| 13:22-14:11 | | | | |
| 16:16-17:16 | I | | | |
| | | 17:20-17:24 | **R** | |
| 19:23-19:24 | | | | |
| 20:02-20:04 | | | | |
| | | 22:02-22:07 | **R, OS** | **22:8-9, 22:19-24, 23:2-6, 23:9-13, 23:16-17** |
| 26:24-26:25 | R, V | | | |
| 27:08-27:12 | R, V | | | |
| 27:20-27:24 | R, V, AA | | | |
| 28:02-28:09 | R, V, AA | | | |
| 28:17-28:23 | R, V, MC, AF, F | | | |
| 29:03-29:07 | R, V | | | |
| 29:15-29:16 | R, V | | | |
| 30:01-30:05 | R, V | | | |
| 30:17 | R, V | | | |
| 31:10-31:14 | R, V | | | |
| 32:04-32:10 | R, V | | | |
| 32:18-32:23 | R, V | | | |
| 33:16-33:20 | R, V | | | |
| 34:15-34:18 | R, V | | | |
| 34:22-35:03 | R, V | | | |

| | | | | |
|---|---|---|---|---|
| 35:11 | R, V | | | |
| 36:04-36:08 | R, V | | | |
| 36:11-36:15 | R, V | | | |
| 36:23-36:24 | R, V | | | |
| 38:13-38:16 | R, V | | | |
| 38:20 | R, V | | | |
| 39:08-39:09 | R, V | | | |
| 39:17-39:24 | R, V | | | |
| 40:07-40:15 | R, V | | | |
| 40:21-40:25 | AA, R, V | | | |
| 41:12-41:21 | AA, R, V | | | |
| 41:23-41:25 | AA, R, V | | | |
| 42:02-42:09 | AA, R, V | | | |
| 42:17-42:20 | R, V | | | |
| 43:03 | R, V | | | |
| 43:17-43:18 | R, V | | | |
| 43:21-43:24 | R, V | | | |
| 44:07-44:14 | R, V, | | | |
| 44:17-44:21 | R, V, PRIV | | | |
| 45:06-45:08 | R, V | | | |
| 45:11 | R, V | | | |

**Deponent: Jamie Gonzales (August 31, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 08:12-08:16 | | | | |
| | | 12:17-12:21 | **OS, R, P, I** | **12:22–25; 13:6–8** |
| 15:12-17:07 | I, FRCP 30(b)(6) | | | |
| | | 17:08-17:11 | **R** | |
| | | 18:14-19:13 | **OS, R, P, I** | **19:14–18** |
| | | 19:19-20:04 | **OS, R, P, I** | |
| 20:05-21:13 | I, FRCP 30(b)(6) | | | |
| | | 21:14-21:18 | **R, P** | |
| | | 22:05-22:13 | **OS, I, R, P** | **22:14–20** |
| | | 23:10-23:19 | **OS, R, P** | |
| | | 23:25-24:04 | **OS, R, P, I** | **23:8–9** |
| | | 24:23-25:03 | **OS, R, P** | |
| | | 25:08-25:15 | **OS, R, P** | |
| 26:07-26:11 | FRCP 30(b)(6) | | | |
| 26:13-26:18 | FRCP 30(b)(6) | | | |
| 26:23-28:06 | FRCP 30(b)(6) | | | |
| 31:12-32:01 | FRCP 30(b)(6) | | | |
| 32:08-32:16 | FRCP 30(b)(6) | | | |
| 33:02-33:06 | I, FRCP 30(b)(6) | | | |
| 33:11-33:15 | FRCP 30(b)(6) | | | |
| 33:17-34:05 | FRCP 30(b)(6), P, R, SP, V | | | |
| 34:08-34:09 | FRCP 30(b)(6), P, R, SP, V | | | |
| | | 37:15-37:19 | **OS, R, P** | |
| | | 37:24-38:07 | **OS, R, P** | |
| | | 38:11-38:17 | **OS, R, P, V, SP** | |
| 38:18-39:19 | FRCP 30(b)(6), P, R, V | | | |

| | | | | |
|---|---|---|---|---|
| 39:21-39:24 | FRCP 30(b)(6), P, R, V | | | |
| | | 40:19-40:21 | | |
| 40:22-41:02 | I, P, R, V | | | |
| | | 41:03-42:01 | **OS, R, P, V, SP** | |
| 42:02-42:11 | FRCP 30(b)(6), AF, F, I, MC, P, R, V | | | |
| | | 42:12-42:15 | **R, P** | |
| | | 42:18-42:21 | **R, P** | |
| | | 43:21-44:01 | **OS, R, P** | |
| | | 44:22-45:02 | **OS, R, P, SP** | |
| 47:07-48:11 | FRCP 30(b)(6), AF, F, I, MC, P, R, V | | | |
| 48:16-48:20 | FRCP 30(b)(6), AF, F, I, MC, P, R, V | | | |
| | | 49:05-49:25 | **OS, R, P, I** | **50:1–14** |
| | | 50:15-50:17 | **OS, R, P** | |
| | | 50:24-50:25 | **OS, R, P,** | |
| | | 51:03-51:05 | **OS, R, P, V SP** | |
| 53:12-54:05 | FRCP 30(b)(6), CO, I, MC, P, R, V | | | |
| | | 55:10-55:24 | **OS, R, P, SP, HYP, 602** | |
| 55:25-56:09 | FRCP 30(b)(6), AF, F, I, MC, P, R, V | | | |
| | | 56:23-57:17 | **OS, R, P, SP, HYP, 602** | |
| 57:18-58:10 | FRCP 30(b)(6), AA, | | | |

| | | | | |
|---|---|---|---|---|
| | AF, F, I, MC, P, R, V | | | |
| 58:18-59:06 | FRCP 30(b)(6), P, R, V | | | |
| 59:10-59:19 | FRCP 30(b)(6), P, R, V | | | |
| 61:17-63:02 | FRCP 30(b)(6), CO, I, P, R, V | | | |
| | | 63:03-63:06 | **OS, R, P** | |
| | | 63:08-63:22 | **OS, R, P, SP, 602** | |
| | | 65:22-65:25 | **R, P** | |
| 66:01-66:04 | FRCP 30(b)(6), F, I, MC, P, R, V | | | |
| 66:06-66:16 | FRCP 30(b)(6), F, I, MC, P, R, V | | | |
| 66:18-66:21 | FRCP 30(b)(6), F, I, MC, P, R, V | | | |
| | | 66:22-67:03 | **R, P, V** | |
| | | 68:04-68:18 | **OS, R, P, V, SP, 602** | |
| | | 69:09-69:12 | **OS, R, P, V, SP, 602** | |
| | | 71:01-71:17 | **OS, R, P, V, SP, 602** | |
| | | 72:05-72:09 | **OS, R, P** | |
| | | 72:11-72:18 | **OS, R, P, V, SP, 602** | |
| | | 72:22-72:24 | **OS, R, P, V, SP, 602** | |
| 73:03-73:06 | FRCP 30(b)(6), I, P, R, V | | | |
| 73:09-75:07 | I, ID, MC, P | | | |
| | | 75:16-76:01 | **OS, R, P, I** | **76:2–13** |
| | | 87:10-87:14 | **OS, R, P, I** | |

| | | | | |
|---|---|---|---|---|
| | | 90:19-90:25 | **OS, R, P, F, 602** | |
| | | 91:02-91:03 | **OS, R, P, F, 602, MC** | |
| | | 94:25-96:19 | **OS, R, P, 602, MC** | |
| | | 99:21-99:24 | **OS, R, P, V, SP** | |
| | | 101:20-102:05 | **OS, R, P** | |
| | | 105:13-105:24 | **OS, R, P, V, 602, SP, I** | **105:25–106:17** |
| | | 110:15-110:25 | **OS, R, P, V, 602, SP, I** | **111:7–15** |
| | | 111:03-111:06 | **OS, R, P, V** | |
| | | 111:16-112:08 | **OS, R, P, V** | |
| | | 112:13-112:24 | **OS, R, P, V** | |
| | | 113:06-113:22 | **OS, R, P, V, I, SP** | **113:2–5; 113:23–114:13** |
| | | 116:07-116:15 | **OS, R, P, V, I, SP, 602** | |
| | | 117:06-117:19 | **OS, R, P, V, I, SP, 602** | |
| 118:08-120:14 | FRCP 30(b)(6), I, AF, MC, P | | | |
| 125:14-125:20 | FRCP 30(b)(6), ID, P | | | |
| 125:24-126:05 | FRCP 30(b)(6), ID, P | | | |
| 127:11-129:20 | I, R, V | | | |
| | | 129:21-130:09 | **R, P, I, V, 602** | **130:10–18** |
| 132:24-133:15 | FRCP 30(b)(6), I, P, R, V | | | |
| | | 133:16-133:19 | **R, P** | |
| 137:02-137:21 | FRCP 30(b)(6), I, MC, P | | | |
| 138:01-138:20 | FRCP 30(b)(6), I, MC, P, R, V | | | |

| | | | | |
|---|---|---|---|---|
| | | 138:21-138:25 | **R, P,** | |
| 141:07-141:14 | FRCP 30(b)(6), I, P, R, V | | | |
| 141:17-141:25 | FRCP 30(b)(6), I, P, R, V | | | |
| 143:14-143:20 | FRCP 30(b)(6) | | | |
| 143:22-144:10 | FRCP 30(b)(6) | | | |
| 144:22-145:08 | FRCP 30(b)(6), I, P, R, V | | | |
| | | 145:09-145:11 | **R, P, V, I** | **145:12–14** |
| | | 146:04-146:16 | **OS, R, P, V, I** | **146:17-24** |
| 146:25-147:09 | FRCP 30(b)(6), I, P, R, V | | | |
| | | 148:01-148:09 | **OS, R, P, V** | |
| | | 148:11-148:17 | **OS, R, P, V, 602, SP** | |
| | | 148:24-149:01 | **OS, R, P, V, 602, SP** | |
| | | 149:11-149:13 | **OS, R, P, V** | |
| 151:10-152:07 | I, MC, P, R, V | | | |
| | | 152:09-152:10 | **R, P, V** | |
| 152:12-152:17 | FRCP 30(b)(6), CO, I, MC, P, R, V | | | |
| 155:02-155:06 | FRCP 30(b)(6), F, MC, P, R, V, 602 | | | |
| 155:08-156:14 | FRCP 30(b)(6), F, MC, P, R, V, 602 | | | |
| 161:17-161:23 | FRCP 30(b)(6), F, MC, P, R, V, 602 | | | |
| 163:09-166:09 | FRCP 30(b)(6), F, | | | |

| | | | | |
|---|---|---|---|---|
| | MC, P, R, V, 602 | | | |
| 171:24-172:03 | FRCP 30(b)(6), F, I, ID, NSW, P, R | | | |
| 179:24-180:04 | FRCP 30(b)(6), F, P, R, V | | | |
| 180:06-180:23 | FRCP 30(b)(6), F, P, R, 602 | | | |
| 183:05-184:23 | FRCP 30(b)(6), AA, F, MC, P, R, SP, V, 602 | | | |
| 185:04-185:19 | FRCP 30(b)(6), AA, F, MC, P, R, SP, V, 602 | | | |
| 188:20-189:23 | FRCP 30(b)(6), ID, P, R | | | |
| | | 191:03-191:06 | **OS, R, P** | |
| | | 191:11-191:12 | **OS, R, P, V, 602** | |
| 191:13-191:25 | FRCP 30(b)(6), F, I, MC, P, R, V, 602 | | | |
| 192:11-193:01 | F, I, P, V | | | |
| | | 193:12-193:24 | **OS, R, P, V, 602, SP** | |
| 193:25-194:15 | CO, I, P | | | |
| | | 194:21-194:24 | **OS, R, P, V, 602, SP** | |
| | | 195:04-195:11 | **OS, R, P, V, 602, SP** | |
| 199:05-199:09 | FRCP 30(b)(6), F, I, MC, P, R, V, 602 | | | |

| | | | | |
|---|---|---|---|---|
| 199:11-200:04 | FRCP 30(b)(6), F, I, MC, P, R, V, 602 | | | |
| | | 200:05-200:24 | **OS, R, P, V, 602, SP** | |
| | | 201:04-202:18 | **OS, R, P, V, 602, SP** | |
| | | 203:09-203:25 | **OS, R, P, V, 602, SP** | |
| 204:25-205:07 | CO | | | |
| 205:09-207:13 | FRCP 30(b)(6), CO, F, I, MC, P, R, V | | | |
| | | 207:20-208:01 | **S, R, P, F, MC** | |
| 209:25-210:02 | I, P, R, V | | | |
| 210:07-210:20 | I, P, R, V | | | |
| | | 210:25-211:20 | **OS, R, P, V, SP, 602** | |
| | | 214:09-214:19 | **OS, R, P, V, SP** | |
| 219:06-219:10 | FRCP 30(b)(6), I, P, R, V | | | |
| 219:12-219:23 | FRCP 30(b)(6), I, P, R, V | | | |
| 221:11-222:23 | FRCP 30(b)(6), I, MC, P, R, V | | | |
| | | 222:24-223:03 | **R, P** | |
| 223:04-223:09 | FRCP 30(b)(6), I | | | |
| 223:11-224:14 | FRCP 30(b)(6), I, MC, P | | | |
| | | 224:15-226:01 | **OS, R, P, I V** | **226:2-6** |
| | | 226:07-226:11 | **OS, R, P, I, V, SP, MC** | **226:12-16** |

| | | | | |
|---|---|---|---|---|
| | | 226:17-226:25 | **OS, R, P, I V, SP** | **227:11-19** |
| | | 228:14-228:22 | **OS, R, P, V, SP, MC** | |
| | | 229:02-230:08 | **OS, R, P, V, SP, MC** | |
| | | 230:10-230:11 | **OS, R, P, V, SP, MC** | |
| | | 230:17-230:23 | **OS, R, P, V, SP, MC** | |
| | | 232:18-232:21 | **OS, R, P, I, MC** | **231:23-232:17** |

**Deponent: Terrance Hunt (October 26, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 09:24-10:05 | | | | |
| | | 10:06-11:10 | **R** | |
| 11:11-11:16 | | | | |
| | | 11:17-11:25 | **R** | |
| | | 12:04-12:09 | **R** | |
| 12:10-12:11 | I, V, R | | | |
| 12:16-12:18 | I, V, R | | | |
| 12:20-12:24 | V, R | | | |
| 14:25-15:02 | I, V, R, 701, SP | | | |
| 15:09-15:10 | I, V, R, 701, SP | | | |
| 15:12-15:18 | I, V, R, 701, SP | | | |
| 15:20-15:25 | I, V, R, 701, SP | | | |
| 16:02-16:16 | I | | | |
| | | 16:19-16:21 | **R** | |
| | | 16:24-17:01 | **R** | |
| 17:02-17:22 | I | | | |
| | | 17:23-19:09 | **R** | |
| 19:10-19:12 | I | | | |
| | | 19:13-24:07 | **R** | |
| | | 24:12-25:13 | **R** | |
| | | 25:16-25:17 | **R** | |
| | | 25:19-25:22 | **R, 701** | |
| | | 25:24-26:16 | **R** | |
| | | 26:18-27:23 | **R** | |
| | | 28:03-29:03 | **R** | |
| 29:18-29:22 | | | | |
| 30:08-31:04 | I, P | | | |
| | | 31:05-36:16 | **R** | |
| 36:17-36:23 | I | | | |
| | | 36:24-37:25 | **R** | |
| | | 38:06-42:18 | **R** | |
| | | 42:23-43:12 | **R** | |
| | | 43:14-44:02 | **R** | |

| | | | | |
|---|---|---|---|---|
| 44:09-45:24 | I | | | |
| | | 45:25-46:02 | | |
| 46:03-46:20 | I | | | |
| | | 46:21-52:15 | **R** | |
| | | 52:17-53:12 | **R** | |
| | | 53:22-54:06 | **R** | |
| 54:07-56:09 | I | | | |
| | | 58:10-59:04 | **R** | |
| 59:05-60:22 | I | | | |
| 61:1-2 | | | | |
| 61:04-61:06 | | | | |
| 61:08-61:10 | | | | |
| 61:12-62:10 | | | | |
| 62:12-62:16 | | | | |
| 62:19-63:24 | | | | |
| 64:01-64:14 | | | | |
| 64:16-66:13 | | | | |
| 67:11-68:17 | | | | |
| 68:19-69:02 | | | | |
| 69:04-70:24 | ID, I | | | |
| | | 70:25-71:23 | **R, 701** | |
| | | 72:09-74:07 | **R, 701** | |
| | | 74:09-75:03 | **R, 701** | |
| | | 75:05-75:24 | **R, 701** | |
| | | 76:06-76:22 | **R, 701** | |
| | | 77:05-77:13 | **R, 701** | |
| | | 77:15-77:22 | **R, 701** | |
| | | 77:24-77:25 | **R, 701** | |
| | | 78:02-78:04 | **R, 701** | |
| | | 78:06-78:15 | **R, 701** | |
| | | 78:18-78:21 | **R, 701** | |
| | | 78:23-79:04 | **R, 701** | |
| | | 79:06-79:11 | **R, 701** | |
| | | 79:14-79:20 | **R, 701** | |
| | | 79:22-80:16 | **R, 701** | |
| 80:17-80:22 | | | | |
| 80:24-81:06 | | | | |
| | | 81:16-81:18 | | |
| 82:18-82:24 | I | | | |
| | | 82:25-83:11 | | |
| 83:12-84:06 | I | | | |
| | | 84:07-85:23 | **R** | |

| | | | | |
|---|---|---|---|---|
| 85:24-86:06 | I | | | |
| | | 86:07-86:19 | | |
| 87:10-88:15 | I | | | |
| | | 88:16-89:04 | **R** | |
| | | 90:23-91:01 | **R** | |
| | | 91:03-91:06 | **R** | |
| 91:08-91:11 | I, AF, MC, V | | | |
| 96:03-97:05 | I, AF, 602, MC, V, F | | | |
| 97:20-98:05 | I, 602, MC, V, SP | | | |
| 98:07-98:15 | 602, MC, V, SP | | | |
| 98:17-100:10 | 602, MC, V, SP | | | |
| 100:13 | | | | |
| 100:18-102:10 | I, MC, V, SP, 602 | | | |
| | | 102:11-103:16 | **R** | |
| 103:20-104:08 | | | | |
| 104:12-105:08 | | | | |
| 105:10-105:12 | | | | |
| 105:14-106:04 | | | | |
| 106:07-106:25 | I | | | |
| 107:02-107:11 | | | | |
| | | 107:13-109:25 | **R** | |
| 110:01-111:04 | I | | | |
| | | 111:05-111:11 | **R** | |
| 111:12-111:19 | I | | | |
| | | 112:24-113:11 | | |
| 113:25-114:05 | | | | |
| 114:12-116:24 | V, SP, 602, I | | | |
| | | 117:12-118:25 | **R** | |
| | | 119:02-119:05 | **R** | |
| 119:07-119:11 | I | | | |
| | | 119:12-119:15 | **F, R, SP** | |
| | | 119:19-120:05 | **F, R, SP** | |
| 120:11-121:10 | | | | |
| 121:19-121:22 | I | | | |
| | | 121:23-122:04 | **R** | |
| 122:21-123:20 | | | | |
| 123:24-124:02 | I | | | |

| | | | | |
|---|---|---|---|---|
| | | 124:03-124:10 | **F, R, SP** | |
| 124:11-125:08 | | | | |
| 125:21-126:05 | | | | |
| 126:07-127:02 | | | | |
| 127:08-129:05 | 602, SP, V | | | |
| | | 129:19-132:04 | **R, SP, P** | |
| | | 132:06-133:24 | **R, 701** | |
| 133:25-134:13 | I | | | |
| | | 134:14-135:23 | **R, SP** | |
| | | 135:25-136:21 | **R, SP** | **133:25-134:13** |
| 136:23-137:09 | | | | |
| 137:11-138:07 | | | | |
| 139:14-140:25 | I, AA, 602, SP, MC | | | |
| 142:25-143:24 | ID | | | |
| 144:11-146:08 | I, ID | | | |
| | | 146:10-146:14 | **R, SP** | |
| | | 146:21-148:09 | **R, SP** | |
| | | 148:11-148:13 | **R, SP** | |
| | | 152:07-152:09 | **R, 701** | |
| | | 152:11-152:18 | **R, 701** | |
| | | 152:20-153:21 | **R, 701** | |
| 153:22-154:20 | I | | | |
| 154:22-154:23 | | | | |
| | | 154:25-155:07 | **R** | |
| 155:08-156:01 | I | | | |
| | | 156:18-156:21 | **R** | |
| | | 156:23-157:05 | **R** | |
| | | 157:07-158:06 | **ID [157:18-158:06], R** | |
| | | 158:13-159:10 | **R, SP** | **159:11-13<br>159:15-21<br>159:24-25** |
| | | 160:01-160:05 | **R, 701** | |
| | | 160:07-160:22 | **R, 701** | |
| | | 160:24-161:05 | **R, 701** | |
| | | 161:07 | **R, 701** | |
| | | 161:09-161:13 | **R, 701** | |
| 161:14-163:10 | I | | | |
| 163:12-164:07 | | | | |
| 164:09-164:21 | | | | |
| 164:23-164:25 | | | | |

| | | | | |
|---|---|---|---|---|
| 165:02-165:22 | I | | | |
| | | 165:23-166:10 | **R, 701** | |
| | | 166:12-167:08 | **R, 701** | |
| 168:12-170:16 | I, AA, MC, SP, F, ID, V | | | |
| 171:11-172:13 | | | | |
| 172:15-172:16 | | | | |
| 173:04-173:19 | | | | |
| | | 174:10-175:14 | **R, SP** | |
| 176:14-176:17 | I, MC, SP, V | | | |
| | | 177:02-178:25 | **R, 701** | |
| 179:03-179:06 | I | | | |
| 179:08-179:09 | I | | | |
| 179:11-179:21 | I | | | |
| | | 179:22-182:13 | **R** | |
| | | 182:22-183:04 | **R** | |
| | | 183:08-183:09 | **R** | |
| | | 183:11-183:13 | **R** | |
| | | 183:15-183:17 | **R** | |
| | | 183:19-183:20 | **R** | |
| | | 183:22-183:25 | **R** | |
| | | 184:02-184:11 | **R, SP** | |
| | | 184:13-184:15 | **R, SP** | |
| | | 184:17-185:05 | **R** | |
| | | 185:07-186:05 | **R** | |
| | | 186:07-186:12 | **R, SP** | |
| | | 186:14-186:19 | **E** | |
| | | 186:22-186:25 | **R** | |
| | | 187:04-187:08 | **R** | |
| | | 187:13-188:01 | **R, SP** | **187:10-188:1** |
| 188:02-188:20 | I | | | |
| | | 188:21-189:02 | **R** | |
| | | 189:05-189:09 | **R** | |
| | | 189:11-189:13 | **R** | |
| | | 189:18-190:19 | **R, SP** | |
| 190:20-191:14 | I, R, P, V, 602, MC, SP | | | |
| | | 192:18-195:15 | **R** | |
| | | 195:18-195:21 | **R** | |
| | | 195:23-196:12 | **ID [196:6-12] R** | |
| | | 196:14-196:18 | **ID** | |
| | | 196:20-200:25 | **ID** | |

| | | | | |
|---|---|---|---|---|
| | | 208:04-209:01 | **R, P** | |
| | | 209:03-209:18 | **R, P** | |
| | | 209:20-211:22 | **R, P** | |
| | | 211:24-214:11 | **R, P** | |
| | | 214:13-215:01 | **R, P** | |
| | | 216:03-218:06 | **R, P** | |
| | | 221:22-222:16 | **R, P** | |
| | | 223:11-223:16 | **R, P** | |
| | | 223:19-224:14 | **R, P** | |
| | | 225:02-225:21 | **R, P** | |
| | | 225:24-226:13 | **R, P** | |
| 226:14-227:22 | I | | | |
| | | 227:23-230:01 | **R** | |
| | | 230:03-230:07 | **R** | |
| 230:09-232:10 | SP, H, R, V, I | | | |
| | | 232:11-232:25 | **R** | |
| | | 233:09-234:09 | **R** | |
| | | 234:25-237:15 | **R, P** | |
| | | 237:18-238:01 | **R, P** | |
| | | 238:21-239:04 | **R** | |
| | | 243:02-244:05 | **R** | |
| | | 244:07-244:12 | **R** | |
| | | 244:14-244:17 | **R** | |
| | | 244:19-244:23 | **R** | |
| | | 244:25-245:04 | **R** | |
| | | 245:07-245:13 | **R** | |
| | | 245:15-246:10 | **R, SP** | |
| | | 246:13-246:22 | **R** | |
| 251:10-251:23 | SP, 602 | | | |
| 253:14-254:07 | SP, I | | | |
| | | 254:08-256:19 | **R, SP, P** | |
| 256:20-257:18 | R, V | | | |
| 257:20-259:03 | R, V | | | |
| 259:05-259:08 | R, V, F, 602 | | | |
| 259:10-259:15 | R, V, F, 602 | | | |
| 259:17-260:16 | R, V, F, 602, MC, SP | | | |
| 265:15-265:18 | R, V, F, P | | | |
| 266:09-266:11 | R, V, F, P | | | |
| 266:15 | R, V, F, P | | | |
| 269:08-269:11 | R, V, F, P | | | |
| 269:14-269:17 | R, V, F, P | | | |

| | | | | |
|---|---|---|---|---|
| 269:25-270:02 | R, V, F, P | | | |
| 270:05-270:08 | R, V, F, P | | | |
| 270:14-270:16 | R, V, F, P | | | |
| 270:19 | R, V, F, P | | | |
| | | 272:17-273:01 | **R, P** | |
| | | 273:05 | **R, P** | |
| | | 273:11-273:15 | **R, P** | |
| | | 273:18-273:24 | **R, P** | |

**Deponent: Stacey Klinkenborg (September 22, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 08:12-08:14 | | | | |
| 13:14-13:23 | FRCP 30(b)(6) | | | |
| 18:03-18:17 | FRCP 30(b)(6) | | | |
| 19:07-19:18 | FRCP 30(b)(6) | | | |
| 22:02-22:12 | V, SP, FRCP 30(b)(6) | | | |
| 22:14-22:24 | V, SP, FRCP 30(b)(6) | | | |
| | | 23:13-23:21 | **R, P, SP** | |
| 23:22-23:24 | F, I, MC, P, FRCP 30(b)(6) | | | |
| 24:01-24:05 | F, I, MC, P, 602, FRCP 30(b)(6) | | | |
| 24:07-24:09 | F, 602, FRCP 30(b)(6) | | | |
| 24:11-24:14 | F, 602, FRCP 30(b)(6) | | | |
| | | 24:15-24:19 | **R, P, SP, 602** | |
| 25:05-25:15 | F, 602, FRCP 30(b)(6) | | | |
| 25:19-26:16 | CO, F, 602, FRCP 30(b)(6) | | | |
| 26:19-27:01 | CO, E, F, P, V, 602, 701, FRCP 30(b)(6) | | | |
| 27:03-27:17 | E, F, I, P, R, SP, V, 602, 701, FRCP 30(b)(6) | | | |
| | | 27:18-27:20 | **R, P** | |
| | | 27:22-28:03 | **R, P, SP, 602, 701** | |
| | | 28:05-28:13 | **OS, R, P, SP, 602** | |
| | | 28:15-28:18 | **OS, R, P, V, SP, 602** | |

| | | | | |
|---|---|---|---|---|
| | | 29:18-29:23 | **OS, R, P, V, SP, 602, 701** | |
| 35:24-36:22 | F, I, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| | | 36:23-36:25 | **R, V, 602** | |
| 37:01-37:04 | F, I, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 37:05-37:22 | **R, P, V, SP 602** | |
| | | 37:25-38:05 | **R, P, 602** | |
| | | 40:10-40:17 | **R, P, 602** | |
| 41:20-41:25 | F, I, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 49:11-49:23 | P, R, V, FRCP 30(b)(6) | | | |
| 50:03-50:25 | F, P, R, V, 602, FRCP 30(b)(6) | | | |
| 58:18-58:24 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 59:01-59:22 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 59:23-59:25 | **R, P, I** | **60:1-3** |
| | | 60:04-60:07 | **R, P, I** | **60:8-18** |
| 61:12-61:18 | FRCP 30(b)(6) | | | |
| 61:21-62:19 | I, FRCP 30(b)(6) | | | |
| | | 62:20-63:13 | **R, P** | |
| 67:04-68:03 | I, FRCP 30(b)(6) | | | |
| | | 68:05-69:03 | **R, P, SP, 602** | |
| | | 81:16-81:17 | | |
| 81:18-82:14 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 92:22-93:06 | F, MC, P, R, V, SP, FRCP 30(b)(6) | | | |
| | | 93:07-93:12 | **R, P, 602** | |

| | | | | |
|---|---|---|---|---|
| 93:13-93:15 | I, R, FRCP 30(b)(6) | | | |
| | | 93:16-94:02 | **R** | |
| | | 94:05-94:11 | **R, P** | |
| | | 94:17-94:20 | | |
| 94:21-95:17 | F, H, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 95:23-96:16 | **OS, R, P, 602, SP** | |
| 96:17-96:23 | R, FRCP 30(b)(6) | | | |
| 96:25-97:18 | R, FRCP 30(b)(6) | | | |
| | | 103:08-103:17 | **OS, R, P, 602** | |
| | | 104:03-104:05 | **OS, R, P, V, 602** | |
| | | 105:07-105:10 | **OS, R, P, V, 602** | |
| | | 105:12-105:15 | **OS, R, P, V, 602** | |
| 106:16-106:25 | F, I, P, R, V, 602, FRCP 30(b)(6) | | | |
| 107:01-107:08 | | | | |
| | | 107:09-107:13 | **R, P, V** | |
| 107:14-108:01 | | | | |
| | | 108:02-108:24 | **R, P, 602, SP** | |
| | | 109:04-109:07 | **OS, R, P, V** | |
| | | 111:06-111:13 | **OS, R, P, 602** | |
| 111:14-112:15 | I, V, FRCP 30(b)(6) | | | |
| | | 112:16-112:21 | **R, P, V.** | |
| 116:12-116:22 | I, MC, P, R, FRCP 30(b)(6) | | | |
| 116:25-117:20 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| | | 117:21-117:22 | **R, P, 602** | |
| 118:07-118:18 | E, F, I, MC, P, R, V, 602, 701, FRCP 30(b)(6) | | | |
| | | 118:19-119:10 | **R, P, V, 602** | |
| 119:11-120:07 | E, F, I, MC, P, R, V, 602, 701, FRCP 30(b)(6) | | | |

| | | | | |
|---|---|---|---|---|
| 120:21-121:03 | E, F, I, MC, P, R, V, 602, 701, FRCP 30(b)(6) | | | |
| | | 121:04-121:11 | **OS, R, P, V, HYP** | |
| | | 123:08-123:10 | | |
| 123:11-123:17 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 123:18-124:11 | **R, P, SP** | |
| 124:12-125:02 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 125:03-125:05 | **R, P, V, 602, SP** | |
| 128:10-129:15 | F, P, R, V, 602, FRCP 30(b)(6) | | | |
| 130:18-131:01 | F, I, P, R, V, 602, FRCP 30(b)(6) | | | |
| 156:7-157:09 | F, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 165:05-165:16 | F, P, R, V, 602, FRCP 30(b)(6) | | | |
| 166:02-166:08 | F, I, P, R, 602, FRCP 30(b)(6) | | | |
| | | 166:09-166:17 | **R, P, V, 602** | |
| 166:22-167:16 | F, I, P, R, 602, FRCP 30(b)(6) | | | |
| 168:20-168:23 | F, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 168:25 | | | | |
| | | 180:03-180:08 | **OS, R, P** | |
| | | 192:13-192:14 | **OS, R, P** | |
| | | 192:17-192:19 | **OS, R, P** | |
| | | 192:22-193:04 | **OS, R, P, V, MC, 602, 701** | |
| 193:10-193:11 | F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |

| | | | | |
|---|---|---|---|---|
| 193:16-194:01 | F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| | | 194:02-194:16 | **R, P, 602** | |
| 194:17-195:02 | F, H, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| | | 195:03-195:22 | **R, P, 602, SP, MC** | |
| 197:21-198:09 | F, H, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 201:03-201:07 | I, FRCP 30(b)(6) | | | |
| | | 201:08-201:19 | **R, P, SP, 602** | |
| 201:20-202:05 | I, FRCP 30(b)(6) | | | |
| | | 202:06-202:12 | **R, P, SP, 602** | |
| 202:14-202:15 | E, F, I, MC, P, R, V, 602, 701, FRCP 30(b)(6) | | | |
| 202:17-203:03 | E, F, I, MC, P, R, V, 602, 701, FRCP 30(b)(6) | | | |
| | | 203:04-204:11 | **OS, R, P, SP, 602** | |
| | | 206:01-206:04 | **OS, R, P** | |
| | | 206:07-206:13 | **OS, R, P, 602, HYP, SP** | |
| | | 206:16-206:22 | **OS, R, P, 602, SP** | |
| 207:08-207:15 | F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| | | 207:16-208:11 | **R, P, 602, SP** | |
| 208:12-208:16 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 208:20-209:04 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |

| | | | | |
|---|---|---|---|---|
| | | 209:20-209:23 | **OS, R, P, 602, I** | **209:5-16; 209:24-210:5** |
| | | 210:10-210:13 | **OS, R, P, 602** | |
| 211:11-211:17 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 211:19-212:11 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |

**Deponent: Chad Lindemann (October 25, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 09:13-09:16 | | | | |
| 12:09-12:11 | | | | |
| 12:15-12:17 | P, R | | | |
| 15:08-15:11 | I | | | |
| | | 15:12-15:13 | | |
| 15:14-15:25 | I | | | |
| 16:10-16:17 | I | | | |
| | | 16:21-17:05 | **R, P, V** | |
| 17:25-18:14 | AF, F, R, MC, V | | | |
| 20:05-20:08 | | | | |
| 20:15-20:19 | | | | |
| | | 20:20-21:04 | **R, P, V** | |
| 21:23-22:06 | E, F, HYP, I, MC, P, R, SP, V, 701 | | | |
| 22:13-22:15 | E, F, HYP, I, MC, P, R, SP, V, 701 | | | |
| 22:17 | E, F, HYP, I, MC, P, R, SP, V, 701 | | | |
| 22:19-22:20 | E, F, HYP, I, MC, P, R, SP, V, 701 | | | |
| | | 22:25-23:10 | **R, P, V, MC** | |
| 23:11-24:09 | CO, E, F, HYP, I, MC, P, R, SP, V, 701 | | | |
| | | 24:12-24:24 | **I, R, P, V, MC, B, OS** | **25:8–14; 25:21–22; 25:24 – 26:1; 26:5–11** |
| | | 25:02-25:07 | **I, R, P, V, MC, B, OS** | **25:8–14; 25:21–22; 25:24 – 26:1; 26:5–11** |
| 26:12-26:14 | E, F, MC, P, R, SP, V, 602, 701 | | | |

| | | | | |
|---|---|---|---|---|
| 26:16-27:08 | E, F, MC, P, R, SP, V, 602, 701 | | | |
| 27:11-27:17 | F, I, MC, P, R, SP, 602 | | | |
| 27:22-28:12 | F, I, MC, P, R, SP, 602 | | | |
| 28:14-28:17 | F, I, MC, P, R, SP, 602 | | | |
| | | 28:18-28:25 | **R, P, V, 602** | |
| 29:03-29:11 | F, I, MC, P, R, SP, 602 | | | |
| | | 29:12-29:21 | **R, P, V, HYP** | |
| 29:22-30:09 | E, F, I, MC, P, R, SP, V, 701 | | | |
| 30:23-31:14 | E, F, I, MC, P, R, SP, V, 701 | | | |
| | | 31:15-32:16 | **B, R, P, V, OS** | |
| | | 33:16-34:06 | **R, P, V, OS** | |
| | | 34:08 | **R, P, V, OS** | |
| 34:09-34:21 | E, F, I, MC, P, R, SP, V, 602, 701 | | | |
| 34:24-35:01 | E, F, I, MC, P, R, SP, V, 602, 701 | | | |
| 35:05-35:09 | | | | |
| 35:12-36:15 | I, P, R, V, 602, SP | | | |
| | | 36:22-37:13 | **OS, R, P, V, SP, 602, 701** | |
| | | 38:04-38:05 | **R, P, V, OS, SP, 602, 701** | |
| | | 38:07 | **R, P, V, OS, SP, 602, 701** | |
| 38:08-38:10 | | | | |
| 38:14-38:19 | I, R | | | |
| | | 38:20-39:12 | **OS, R** | |
| 39:13-39:23 | I, V, 602, P, R, SP, F | | | |

| | | | | |
|---|---|---|---|---|
| 40:01-40:02 | I, V, 602, P, R, SP, F | | | |
| 41:04-41:18 | I, V, 602, P, R, SP, F | | | |
| | | 41:19-42:07 | **R, P, HYP, SP, 602** | |
| 42:08-42:11 | I, V, 602, P, R, SP, F | | | |
| 42:13 | I, V, 602, P, R, SP, F | | | |
| | | 42:17-43:01 | **R, P, V** | |
| | | 43:08-43:17 | **R, P, V, SP, 602** | |
| | | 43:20-44:05 | **OS, R, P, V, SP, 602** | |
| | | 44:07-44:08 | **OS, HYP R, P, V, SP, 602** | |
| | | 44:10-44:17 | **OS, F, R, P, V, SP, 602** | |
| | | 44:21-44:24 | **OS, HYP, F, R, P, V, SP, 602** | |
| | | 45:01 | **OS, HYP, F, R, P, V, SP, 602** | |
| | | 45:09-45:24 | **OS, HYP, F, R, P, V, SP, 602** | |
| | | 46:01-46:05 | **OS, F, R, P, V, SP, 602** | |
| | | 46:07-46:08 | **OS, I, F, R, P, V, SP, 602** | **46:10–12; 46:14–15; 46:22–47:1** |
| 47:16 | | | | |
| 47:20-47:22 | | | | |
| 48:08-49:16 | I | | | |
| | | 49:17-50:14 | **R, P** | |
| 50:15-50:17 | I, V, 602, SP, F, HYP, E, 701, R, P, L | | | |
| 50:20-50:21 | I, V, 602, SP, F, HYP, E, 701, R, P, L | | | |
| | | 50:23-50:24 | **R, P, V, SP, 602** | |

| | | | | |
|---|---|---|---|---|
| | | 51:02-51:04 | **R, P, V, SP, 602** | |
| 51:06-51:08 | I, V, 602, SP, F, HYP, E, 701, R, P | | | |
| 51:10 | I, V, 602, SP, F, HYP, E, 701, R, P | | | |
| 52:23-53:04 | I, V, 602, SP, F, MC, R, P | | | |
| 53:06-53:08 | I, V, 602, SP, F, HYP, E, 701, R, P | | | |
| 53:10-53:11 | I, V, 602, SP, F, HYP, E, 701, R, P | | | |
| 54:01-54:03 | | | | |
| 54:08-54:18 | | | | |
| 54:24-54:25 | I, V, 602, SP, F, R, P | | | |
| 55:11-56:10 | I, MC, V, ID | | | |
| 56:14-56:22 | I, MC, P, R, V | | | |
| | | 57:15-57:20 | **OS, R, P, V** | |
| | | 58:01-58:05 | **OS, R, P, V** | |
| 58:08-58:24 | I, P, V | | | |
| | | 58:25-59:08 | **I, OS, R, P, V** | |
| | | 59:12-59:16 | **I, OS, R, P, V** | **59:17–22** |
| 59:23-60:06 | I | | | |
| | | 60:10-60:16 | **OS, R, P, 602, MC** | |
| | | 60:19-61:09 | **OS, R, P, B, 602** | |
| | | 61:11-61:20 | **OS, R, P, B, 602** | |
| 61:21-61:23 | | | | |
| 62:03-62:06 | | | | |
| | | 62:07-62:09 | **R** | |
| 62:10-62:20 | I, V, 602, SP, F, P, R | | | |
| 63:02-64:05 | I, V, SP, P, R | | | |

| | | | | |
|---|---|---|---|---|
| 64:13-64:14 | I, V, SP, 602, P, R | | | |
| 64:16-64:19 | I, V, SP, 602, P, R | | | |
| 64:23-65:03 | I, V, 602, SP, F, P, R, MC | | | |
| | | 65:04-65:10 | **R, P, V, B** | |
| 72:01-72:04 | | | | |
| 72:09-72:24 | | | | |
| | | 75:10-75:20 | **R, P, V, MC, SP** | |
| | | 75:22-76:03 | **R, P, V, MC, SP** | |
| 76:04-76:20 | I, V, 602, SP, F, P, R, MC | | | |
| | | 76:21-77:06 | **R, P** | |
| | | 77:10-77:15 | **OS, R, P, MC, 602** | |
| | | 77:17-78:15 | **OS, R, P, MC, 602** | |
| | | 80:03-80:20 | **OS, R, P, MC, 602** | |
| 81:08-81:10 | F, R, P, 602 | | | |
| 81:14-81:16 | F, R, P, 602 | | | |
| 84:04-84:14 | I, R, P | | | |
| | | 84:15-84:19 | **R** | |
| 85:02-85:08 | I, V, 602, SP, F, H, R, P | | | |
| 85:11-85:21 | I, V, 602, SP, F, R, P | | | |
| 87:24-88:02 | I, V, 602, SP, F, R, P | | | |
| 88:10-88:18 | I, V, 602, SP, F, R, P | | | |
| 89:15-89:18 | I, F, R, P, 602 | | | |
| | | 89:22-89:23 | **R, MC** | |
| 89:24-90:04 | I, F, V, 602, R, P, 602 | | | |
| | | 90:07-90:09 | **I, R, P, MC** | **90:10–11** |
| 96:16-97:19 | I, V, 602, SP, F, R, P | | | |

| | | | | |
|---|---|---|---|---|
| 99:10-99:18 | I, V, 602, SP, F, R, P | | | |
| 100:01-100:06 | I, F, R, P, SP, 602, AF | | | |
| 100:09-101:10 | I, F, R, P, SP, 602, AF | | | |
| 103:21-103:24 | R, MU | | | |
| 104:05-104:07 | R, MU, F, 602, I, P | | | |
| 104:11-104:14 | R, MU, F, 602, I, P | | | |
| 104:16-105:01 | R, MU, F, 602, I, P | | | |
| | | 105:02-105:04 | **I, R** | **105:5-20** |
| 105:23-106:04 | R, MU, F, 602, I, P, V, SP | | | |
| 106:20-107:22 | R, MU, F, 602, I, P, V, SP | | | |
| | | 108:01-108:16 | **I, OS, R, P, 602** | **108:17–20** |
| | | 108:23-109:01 | **I, OS, R, P, 602** | **108:17–20** |
| | | 109:03-109:17 | **OS, R, P, 602, SP, HYP** | |
| 109:22-110:03 | R, MU, F, 602, I, V | | | |
| | | 110:05-110:18 | **OS, R, P, 602, B** | |
| 110:19-110:22 | I, V, 602, R, F, AF, CO, MC, P | | | |
| 111:06-111:09 | I, V, 602, R, F, MC, P | | | |
| 111:18-111:25 | I, V, 602, SP, R, F, MC, P | | | |
| | | 112:01-112:02 | **OS, R, P, 602** | |
| | | 112:04-112:09 | **OS, R, P, 602** | |
| 112:11-112:14 | I, V, 602, SP, R, F, MC, P | | | |
| 112:16-112:18 | I, V, 602, SP, R, F, MC, P | | | |

| | | | | |
|---|---|---|---|---|
| 112:20-112:24 | I, V, 602, SP, R, F, MC, P | | | |
| 113:01-113:05 | I | | | |
| | | 113:06-113:14 | **R, P, 601** | |
| 113:15-113:22 | I, R, P, 602 | | | |
| 113:25-114:22 | I, V, 602, SP, R, F, P | | | |
| 116:07-116:25 | I | | | |
| | | 117:01-117:13 | **R, P, SP, HYP** | |
| 119:25-120:02 | | | | |
| 120:06-120:13 | | | | |
| 120:16-121:18 | I, V, 602, SP, R, F, P | | | |
| | | 121:19-122:01 | **OS, R, P, SP, HYP, 602** | |
| | | 122:04-122:11 | **OS, R, P, SP, HYP, 602** | |
| | | 123:08-123:20 | **OS, R, P, SP, HYP, 602** | |
| | | 124:07-124:09 | **OS, R, P, 602** | |
| 124:22-125:09 | I | | | |
| | | 125:10-125:13 | **R** | |
| 125:14-126:17 | I, V, 602, SP, R, F, P | | | |
| | | 126:18-127:06 | **R, P, SP** | |
| 133:10-133:21 | I, V, 602, SP, H, R, P | | | |
| 136:12-136:20 | I, MC | | | |
| | | 136:21-136:23 | **R** | |
| 137:01-137:03 | I, MC | | | |
| | | 137:04-137:05 | **R** | |
| 137:06-137:20 | I, MC | | | |
| | | 137:21-137:25 | **R, P, 602** | |
| 138:01-138:06 | I, R, V, SP, P | | | |
| 139:18-139:21 | | | | |
| | | 139:22-140:02 | **R** | |
| 141:21-142:06 | I, P, R, V | | | |
| | | 142:07-142:11 | **R, P, SP, 602** | |
| | | 142:14-143:06 | **R, P, SP, 602** | |
| 144:07-144:16 | | | | |
| 145:23-146:02 | I, V, 602, R, F, P | | | |

| | | | | |
|---|---|---|---|---|
| | | 146:03-146:23 | **OS, R, P, 602** | |
| 146:24-147:09 | I, V, 602, R, F, P | | | |
| | | 147:10-147:24 | **OS, R, P, 602** | |
| 149:01-149:15 | I, V, 602, R, F, P | | | |
| | | 149:16-150:10 | **OS, R, P, 602** | |
| | | 150:19-152:15 | **OS, R, P, 602** | |
| 152:19-153:02 | I, R, V, 602, SP, MC | | | |
| 153:10-153:13 | | | | |
| 153:19-154:18 | I, R, V, 602, SP, P | | | |
| | | 154:19-154:24 | **R, P** | |
| 154:25-155:10 | I, R, V, 602, SP, P , MC | | | |
| | | 155:11-156:05 | **R, P, V, SP, 602** | |
| | | 156:18-157:17 | **R, P, V SP, 602, HYP, MC** | |
| | | 157:20-158:04 | **R, P, V, SP, 602, MC** | |
| 158:06-158:09 | I, 602, R, F, P | | | |
| | | 158:14-158:15 | **R, P** | |
| 158:16-158:25 | I, 602, R, F, P, SP, MC | | | |
| | | 159:01-159:08 | **I, R, P** | **159:9–14; 159:23–160:4** |
| 160:10-160:20 | R, F, AF, P | | | |
| | | 160:24-161:11 | **R, P** | |
| 162:08-163:02 | I, R, V, 602, SP, P | | | |
| 163:04-163:07 | MU, R | | | |
| 163:14-164:14 | I, R, V, 602, SP, P | | | |
| 164:22-164:23 | I, R, V, 602, SP, F, AF, P | | | |
| 164:25-165:02 | I, R, V, 602, SP, F, AF, P | | | |
| 165:11-165:14 | I, R, 602, P, F | | | |

| | | | | |
|---|---|---|---|---|
| | | 165:17-165:21 | **R, P,** | |
| 165:22-166:10 | I, R, 602, SP, P, F, MC, V | | | |
| | | 166:11-166:14 | **OS, I, R, P, 602** | **166:15–25** |
| 167:12-168:03 | I, R, 602, SP, F, P, MC | | | |
| 168:06-168:12 | I, R, 602, SP, F | | | |
| | | 168:13-168:15 | **R** | |
| 169:04-169:25 | I, R, V, 602, SP, P, AF, F, MC | | | |
| | | 170:01-170:14 | **OS, I, R, P, 602, 701, SP** | **170:15–16; 170:24–171:3** |
| 172:14-173:07 | R, V, P | | | |
| | | 174:19-175:24 | **OS, R, P, 602, MC** | |
| 176:01-176:06 | R, V, 602, F, P | | | |
| 176:10-176:12 | R, V, 602, F, P | | | |
| 176:15-176:21 | R, V, 602, SP, F, P | | | |
| | | 179:18-180:17 | **OS, I, R, P, V, 602, MC** | **180:18–181:10** |
| | | 181:11-181:19 | **OS, I, R, P, V, 602, MC** | **181:20–182:4;** |
| | | 183:23-184:14 | **OS, I, R, P, V, 602, MC** | **184:15–16** |
| | | 184:17-185:10 | **OS, I, R, P, V, 602, MC** | **185:11–13** |
| | | 185:19-185:20 | **OS, I, R, P, V, 602, MC** | |
| 185:21-186:12 | I | | | |
| | | 186:13-188:16 | **OS, I, R, P, V, 602** | **189:7–8; 189:13–15 190:14–20; 191:2–17; 191:20–21; 191:23–24; 192:2–4** |

**Deponent: Mingjiang Luo (November 2, 2023)**

| Defendants' Designation | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 05:12-05:14 | | | | |
| 06:10-06:23 | MC | | | |
| | | 08:18-08:21 | **R, OS** | **8:22-25** |
| 09:01-10:09 | I | | | |
| 10:12-11:18 | I | | | |
| | | 11:19-11:25 | **R** | |
| 12:01-12:03 | MC, I | | | |
| | | 12:04-12:23 | **R** | **13:8-14** |
| | | 13:08-13:14 | **R** | |
| 13:20-14:05 | I | | | |
| | | 14:09-14:18 | **R, OS** | |
| 14:19-14:24 | | | | |
| 16:07-17:17 | R, V | | | |
| 17:20-18:10 | R, V | | | |
| 18:18-18:19 | R, V | | | |
| 20:03-20:13 | R, V | | | |
| 20:16-21:16 | R, V, AA | | | |

**Deponent: Curtis Monnig (November 1, 2023)**

| Defendants' Designation | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 05:16-05:18 | | | | |
| 06:06-06:18 | MC | | | |
| 09:02-09:11 | | | | |
| 11:04-11:13 | | | | |
| 11:17-12:01 | I | | | |
| | | 12:02-12:23 | | |
| | | 13:09-13:20 | | |
| 13:21-13:24 | V | | | |
| 14:03-14:12 | I, MC, V, SP | | | |
| | | 14:14-15:02 | | |
| | | 15:14-16:07 | **R** | |
| | | 17:01-17:09 | | |
| | | 17:16-18:13 | | |
| 20:05-20:09 | I | | | |
| | | 20:21-22:04 | | |
| 22:05-22:23 | I, ID | | | |
| 24:03-24:07 | | | | |
| | | 24:08-24:12 | **R** | |
| | | 24:15-25:01 | **R** | |
| | | 25:09-25:25 | | |
| 27:04-27:09 | I | | | |
| | | 27:10-28:10 | | |
| 28:22-29:10 | I | | | |
| | | 29:11-29:14 | | |
| | | 29:25-30:08 | | |
| | | 31:17-32:10 | **I** | **32:11-32:12, 32:15-32:18, 33:13-15; 33:18-33:23, 33:25; 34:01-34:04** |
| 34:05-36:12 | CO, V, SP, MC, AF | | | |
| 36:15-36:16 | MC, V, SP | | | |
| | | 36:18-37:06 | | |
| 38:17-38:23 | I | | | |
| | | 38:24-39:08 | | |
| | | 39:18-39:24 | | |
| | | 40:10-40:13 | | |

| | | | | |
|---|---|---|---|---|
| | | 40:16-40:17 | | |
| | | 40:19-40:24 | | |
| | | 42:1 | | |
| | | 42:06-43:04 | | |
| | | 43:10-43:21 | | |
| 43:22-45:02 | I | | | |
| | | 45:03-45:08 | | |
| 46:04-47:16 | I, AF, AA | | | |
| 48:06-48:14 | | | | |
| 49:02-51:06 | AA | | | |
| 51:16-51:17 | | | | |
| 51:24-51:25 | | | | |
| | | 52:02-52:03 | | |
| 52:15-54:12 | ID | | | |
| 54:15-54:17 | | | | |
| 55:13-55:22 | | | | |
| 56:22-57:03 | | | | |
| 59:23-61:11 | V, SP | | | |

**Deponent: Jason Paik (November 1, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 09:13-09:15 | | | | |
| | | 13:05-13:08 | **OS** | |
| | | 13:13-14:01 | **OS** | |
| | | 16:19-17:10 | **OS, H, F** | **18:5-19:6** |
| 20:22-21:11 | V, FRCP 30(b)(6) | | | |
| | | 21:12-21:20 | | |
| | | 21:23-21:25 | | |
| 22:17-23:13 | FRCP 30(b)(6) | | | |
| 23:25-24:09 | | | | |
| 24:15-24:24 | FRCP 30(b)(6) | | | |
| 25:02-25:06 | FRCP 30(b)(6) | | | |
| | | 25:07-25:09 | | |
| 25:13-26:03 | | | | |
| 26:22-27:05 | FRCP 30(b)(6) | | | |
| | | 29:09-30:10 | **OS** | |
| | | 30:13-31:05 | **OS** | **31:6-22** |
| | | 31:23-32:06 | | |
| 32:09-32:17 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 32:19 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 33:08-33:11 | CO, F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 33:13 | CO, F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 33:14-34:19 | | |
| | | 36:01-36:07 | | |
| 37:13-37:20 | CO, I, MC, P, R, V | | | |
| 37:24-39:02 | | | | |

| | | | | |
|---|---|---|---|---|
| | | 39:03-39:05 | **H, F, 602** | |
| 39:08-39:18 | I, ID, V, R, P | | | |
| | | 39:19-40:06 | **H, F, 602** | **40:7-20; 40:23-41:3; 41:13-16; 41:20-42:10** |
| | | 43:10-43:17 | | |
| 43:18-44:02 | I, ID, MC, P | | | |
| | | 44:03-44:15 | **H, F, 602** | |
| | | 44:24-45:05 | **H, F, 602** | **44:16-23** |
| 45:06-47:18 | CO, I, MC, P, R | | | |
| | | 47:19-48:06 | | |
| | | 48:22-48:25 | | |
| | | 50:06-50:11 | | |
| | | 51:08-51:11 | **OS** | |
| | | 52:03-52:05 | **H, F, 602** | |
| | | 52:25-53:11 | **OS** | |
| | | 53:22-53:25 | **OS** | |
| 56:2-56:17 | F, I, MC, P, R, V | | | |
| 56:18-56:24 | F, I, MC, P, R, V | | | |
| 58:10-58:24 | | | | |
| | | 59:09-59:16 | **H, F, 602** | **58:25-59:8** |
| | | 60:08-60:18 | | |
| 60:24-61:01 | CO, I, MC, P, R, V | | | |
| | | 61:02-61:09 | **H, F, 602** | **62:3-13** |
| | | 62:14-62:23 | **H, F, 602** | **62:24-63:11; 63:13-17, 63:19; 63:21-64:3; 64:5-17** |
| 64:18-64:22 | CO, I, MC, P, R, V | | | |
| 64:24 | CO, I, MC, P, R, V | | | |
| 65:02-65:04 | CO, I, MC, P, R, V | | | |
| | | 65:05-65:13 | | |
| | | 65:17-66:18 | **H, F, 602** | |
| | | 67:06-67:14 | **H, F, 602** | **67:2-5** |

| | | | | |
|---|---|---|---|---|
| | | 67:25-68:08 | | |
| | | 68:12-68:15 | **H, F, 602** | **68:16-69:9** |
| | | 69:10-69:14 | **H, F, 602** | **69:15-17; 69:19-23; 69:25** |
| 71:17-72:01 | | | | |
| 72:04-73:09 | I, MC, P, R, V | | | |
| 73:15-73:19 | I, MC, P, R, V | | | |
| 74:02-74:04 | I, MC, P, R, V | | | |
| 74:06 | I, MC, P, R, V | | | |
| | | 74:08-74:10 | | |
| 74:11-74:25 | I, MC, P, R, V | | | |
| 75:03-75:12 | I, MC, P, R, V | | | |
| 75:16-76:03 | CO, I, MC, P, R | | | |
| | | 76:04-76:07 | **H, F, 602** | **76:8-23** |
| | | 76:24-77:03 | **H, F, 602** | |
| 77:10-77:12 | CO, I, MC, P, R, V | | | |
| | | 77:13-77:23 | **H, F, 602** | |
| | | 78:02-78:04 | **H, F, 602** | **78:5-10** |
| | | 78:14-78:16 | **H, F, 602** | **78:17-19** |
| | | 78:20-78:24 | **H, F, 602** | **78:25-79:2** |
| | | 81:03-81:08 | **H, F, 602** | **81:9-23** |
| | | 82:03-82:11 | **H, F, 602** | |
| | | 83:03-83:07 | **H, F, 602** | **83:8-24, 84:1** |
| 91:18-92:05 | E, F, H, I, P, R, V, 602, 701, FRCP 30(b)(6) | | | |
| 94:14-95:18 | | | | |
| 95:20-96:05 | | | | |
| | | 96:06-96:09 | | |
| | | 96:23-97:17 | **OS** | **97:18-20, 97:22** |
| | | 97:24-98:23 | **OS** | **97:18-20, 97:22** |
| 99:03-99:14 | I, MC, P, R, V | | | |
| 103:13-103:20 | I, MC, P, V | | | |
| | | 103:21-104:03 | | |
| | | 104:14-105:17 | | **105:18-106:2** |
| | | 107:16-112:03 | **OS, 602, 701** | **112:10-14** |
| 112:10-112:14 | I, MC, P, R, V | | | |
| 112:17-112:22 | | | | |
| 113:01-114:04 | | | | |

| | | | | |
|---|---|---|---|---|
| 114:08-115:02 | F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| | | 115:13-115:17 | | |
| 116:04-117:02 | CO, F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| | | 118:16-118:22 | **OS, H, F, 602** | **118:23-25** |
| | | 119:09-119:24 | **OS, H, F, 602** | |
| | | 120:03-120:06 | **OS, H, F, 602** | **120:8-13** |
| 124:05-125:11 | I, MC, P | | | |
| | | 128:03-128:05 | **OS** | |
| | | 128:10-128:19 | **OS** | |
| | | 131:03-131:12 | **OS** | |
| | | 135:17-136:04 | **OS** | |
| | | 139:10-139:12 | **OS** | |
| | | 139:16-140:06 | **OS** | |
| 149:04-149:24 | CO, F, I, MC, P, R, V | | | |
| 150:01-150:11 | CO, F, I, MC, P, R, V | | | |
| | | 150:12-150:16 | | |
| | | 166:25-168:14 | | |
| 168:15-168:18 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 173:01-173:18 | F, P, R, SP, 602, FRCP 30(b)(6) | | | |
| | | 173:19-173:20 | | |
| 175:16-176:24 | | | | |
| | | 178:13-178:24 | **OS, F, 602, 701** | **179:02-179:09** |
| 179:02-179:09 | F, I, P, R, SP, 602, FRCP 30(b)(6) | | | |
| 183:13-184:02 | P, R, V, FRCP 30(b)(6) | | | |
| 185:16-186:25 | I, MC, SP | | | |
| | | 187:03-187:15 | **OS, H, F, 602, MIL, P** | |

| | | | | |
|---|---|---|---|---|
| | | 188:15-189:09 | **OS, H, F, 602, MIL, P** | |
| | | 189:13-190:01 | **OS, H, F, 602, MIL, P** | |
| 190:02-190:04 | I | | | |
| | | 190:07-191:07 | **OS, H, F, 602, MIL, P** | |
| 192:05-192:14 | I | | | |
| 193:03-193:16 | I, MC, P, R, V | | | |
| 193:19-194:03 | I, MC, P, R, V | | | |
| 194:10-194:14 | I, MC | | | |
| 194:18-195:09 | I, MC | | | |
| | | 196:02-198:15 | **OS, H, F, 602, P** | |

**Deponent: Hemant Patel (September 21, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 10:14-10:16 | | | | |
| 11:05-11:07 | | | | |
| | | 15:19-16:21 | | |
| | | 16:24-18:15 | | |
| | | 21:11-22:10 | | |
| | | 26:08-26:17 | | |
| | | 28:11-28:19 | **V** | **28:20-28:24** |
| 34:01-34:06 | | | | |
| 34:08-34:10 | | | | |
| | | 39:19-40:01 | | |
| | | 58:04-59:10 | **V** | **59:11-59:18** |
| 60:03-60:17 | I | | | |
| 60:22-61:04 | I | | | |
| | | 63:01-63:05 | **V** | |
| | | 63:08-63:13 | | |
| | | 63:16-63:17 | **V** | |
| | | 63:19-63:22 | | |
| | | 63:24-64:01 | **V** | **60:03-60:17** |
| | | 64:15-65:02 | **V** | |
| | | 65:05-65:07 | **V, I** | **65:09** |
| 86:06-86:20 | I, R, F, 602 | | | |
| | | 86:21-87:13 | | |
| | | 87:15-87:16 | **V** | |
| | | 87:18-87:19 | **V** | |
| | | 87:21-87:24 | | |
| | | 88:01 | **V** | |
| | | 88:03-88:11 | | |
| 89:02-89:19 | I, R, F, 602 | | | |
| | | 89:20-89:21 | | |
| | | 90:01 | **V** | |
| | | 90:03-90:16 | **V** | |
| 94:18-95:07 | I, R, F, 602, V, SP | | | |
| | | 95:21-95:24 | **V** | **94:18-95:07** |
| 106:10-106:16 | I, R, F, 602 | | | |
| | | 108:02-108:03 | **SP** | |

| | | | | |
|---|---|---|---|---|
| 108:04-108:08 | I, R, F, 602, V, MC, SP | | | |
| | | 108:09-108:14 | | |
| 108:15-109:21 | I, R, F, 602, V, MC, SP | | | |
| 121:20-122:01 | I, R, F, 602, V, SP | | | |
| 122:03-122:10 | I, R, F, 602, V, SP | | | |
| | | 122:11-122:20 | | **122:03-122:10** |
| 122:21-122:24 | I, R, F, 602, V, SP | | | |
| 123:12-123:13 | I, R, F, 602, V, SP | | | |
| 123:16-125:02 | I, R, F, 602, V, SP | | | |
| | | 125:03-125:08 | **V, I** | **125:09-125:12** |
| | | 125:13-125:18 | | |
| | | 125:20-125:22 | **V** | |
| 130:10-130:23 | | | | |
| | | 130:24-131:06 | **V** | |
| 131:07-131:19 | | | | |
| 144:11-144:20 | | | | |
| | | 144:21-145:04 | **V** | |
| | | 145:22-146:04 | | |
| | | 146:06-146:07 | **V** | **147:03-147:05** |
| 148:12-148:15 | AF, SP | | | |
| 148:20-149:05 | AF, SP | | | |
| 149:19-149:24 | | | | |
| 184:18-184:21 | V, SP, FRCP 30(b)(6) | | | |
| 184:23-184:25 | V, SP, FRCP 30(b)(6) | | | |
| | | 185:02-185:04 | | |
| | | 185:07 | **V** | **184:18-21; 184:23-184:25** |

**Deponent: Ed Podraza (February 29, 2024)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 06:16-06:19 | | | | |
| 11:02-11:09 | I, P, R | | | |
| 11:21-11:22 | I, P, R | | | |
| | | 14:14-14:17 | **OS, R, P** | |
| | | 14:20-15:03 | **OS, R, P** | |
| | | 15:11-15:17 | **OS, R, P** | |
| | | 16:09-16:10 | **OS, R, P** | |
| | | 16:17-16:18 | **OS, R, P** | |
| | | 17:04-17:09 | **OS, R, P** | |
| | | 17:12-17:13 | **OS, R, P** | |
| | | 17:18-18:03 | **OS, R, P** | |
| | | 20:03-20:06 | **OS, R, P** | |
| | | 20:11-20:12 | **OS, R, P, I** | **21:2-5; 21:10** |
| 21:13-21:14 | I, P, R | | | |
| 21:17-21:18 | I, P, R, V | | | |
| 21:20-22:03 | I, P, R, V | | | |
| 23:19-24:05 | | | | |
| 24:14-25:07 | | | | |
| 25:11-25:17 | | | | |
| | | 26:06-26:12 | **R, P, I** | **26:16-17; 26:20-27:3; 27:7–9** |
| | | 29:22-30:21 | **OS, R, P, I** | **30:22–31:3** |
| | | 31:04-31:08 | **R** | |
| 31:09-31:18 | I, MC, P, V | | | |
| 32:01-32:24 | I, MC, P, R | | | |
| | | 32:25-33:10 | **R, P, V, 602** | |
| | | 33:14-34:16 | **R, P, V, 602, MC** | |
| | | 34:21-35:04 | **OS, R, P, V, 602, MC, I** | **34:17-20** |
| | | 35:16-36:22 | **OS, R, P, V, 602, I** | **35:12–15** |
| 36:23-37:24 | E, I, MC, P, R | | | |
| 38:02-38:19 | E, I, MC, P, R | | | |
| | | 39:03-39:18 | **R, P, V, 602, MC** | |

| | | | | |
|---|---|---|---|---|
| | | 39:21-41:01 | **OS, R, P, V, 602, MC, ID,** | |
| | | 41:04-41:09 | **OS, R, P, V, 602, MC** | |
| | | 41:12-42:05 | **OS, R, P, V, 602, MC** | |
| | | 46:20-46:23 | **OS, F, R, P, V, I** | |
| | | 47:02-47:04 | **OS, F, R, P, V, I** | **47:9-14; 47:17-24; 48:3; 48:6-8** |
| | | 50:10-50:16 | **OS, F, R, P, V, I** | **50:6-9; 50:17-24** |
| 52:02-53:07 | I, MC, P, R, V | | | |
| | | 53:08-53:13 | **R, P** | |
| | | 54:03-54:10 | **OS, R, P, 602, SP** | |
| | | 55:04-56:10 | **OS, R, P, 602, SP, MC** | |
| | | 57:04-57:08 | **R, P** | |
| 57:09-58:09 | I, MC, P, R, V | | | |
| | | 58:12-58:23 | **R, P, 602, SP, MC** | |
| | | 59:06-56:20 | **R, P, 602, SP, MC** | |
| 59:21-60:12 | I, MC, P, R, V, 602 | | | |
| | | 60:17-61:07 | **OS, R, P, 602, SP, MC** | |
| | | 61:11-61:24 | **OS, R, P, 602, SP, MC** | |
| | | 62:02-62:07 | **OS, R, P, 602, SP, MC** | |
| | | 62:12-64:04 | **OS, R, P, 602, SP, MC** | |
| 72:21-72:24 | | | | |
| 73:01-73:16 | I, MC, P | | | |
| 73:19 | I, MC, P | | | |
| 73:21-73:25 | | | | |
| 74:03 | | | | |
| 74:05-74:07 | | | | |
| | | 74:13-76:11 | **R, P, 602, SP** | |

| | | | | |
|---|---|---|---|---|
| | | 76:17-77:07 | **R, P, 602, SP** | |
| 78:11-79:05 | I, MC, P | | | |
| | | 79:08-79:22 | **R, P, I** | **79:23-80:6** |
| | | 80:07-81:01 | **OS, R, P, 602** | |
| | | 81:19-82:03 | **OS, R, P** | |
| | | 87:07-88:03 | **OS, R, P, 602, SP, I** | **88:4–15** |
| 89:21-90:15 | I, MC, P, FRCP 30(b)(6) | | | |
| | | 91:19-91:23 | **OS, R, P** | |
| | | 92:03-92:05 | **OS, R, P, MC, I** | **93:15-94:3** |
| | | 94:10-95:11 | **OS, R, P, I, 602, MC** | |
| | | 96:01-96:14 | **OS, R, P, 602, MC** | |
| | | 96:19-96:24 | **OS, R, P, I, 602, MC** | **96:25-97:11** |
| | | 99:06-99:16 | **OS, R, P, I, 602** | **98:23-99:5** |
| | | 99:23-100:02 | | |
| 100:03-101:13 | CO, F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 104:18-104:23 | CO, F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 105:25-106:06 | CO, F, I, MC, P, R, SP, V, 602, FRCP 30(b)(6) | | | |
| 106:24-106:25 | F, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 107:07 | F, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 108:23-108:25 | F, MC, P, R, V, 602, FRCP 30(b)(6) | | | |

| | | | | |
|---|---|---|---|---|
| 109:03-110:07 | CO, F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 110:10-110:12 | **R** | |
| | | 110:15-110:23 | **R, P, 602, SP** | |
| | | 111:01-111:04 | **R, P, 602, SP** | |
| 111:06-111:10 | AA, F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| 111:13-111:21 | AA, F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 111:22-111:24 | **OS, R** | |
| | | 113:02-114:03 | **OS, R, P, 602, SP** | |
| 114:04-114:11 | F, I, MC, P, R, V, 602, FRCP 30(b)(6) | | | |
| | | 114:12-114:25 | **R, P, 602, SP, MC** | |
| | | 120:10-120:12 | **OS, R, P, 602, SP, MC** | |
| 121:25-122:05 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| 122:08 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| 122:12-122:17 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| 123:14-123:16 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| 123:18-123:20 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| 123:23-124:08 | I, MC, P, R, V, FRCP 30(b)(6) | | | |
| | | 124:09-125:15 | **ID, OS, R, P, SP, 602, 701** | |
| 125:24-126:04 | I, ID | | | |
| | | 126:05 | | |
| 126:06-126:08 | I, ID | | | |
| | | 126:09 | | |

| | | | | |
|---|---|---|---|---|
| 126:19-127:25 | CO, E, I, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| 128:01-128:04 | CO, E, I, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| 128:09-128:10 | E, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| 128:12-129:02 | E, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| 129:07 | E, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| 131:18-131:24 | ID, P | | | |
| 132:09-133:05 | | | | |
| 133:12-133:17 | | | | |
| | | 133:24-134:18 | **OS, R, P, SP, 602** | **134:19-24** |
| | | 135:14-136:16 | **OS, R, P, SP, 602** | |
| | | 136:18-136:25 | **OS, R, P, SP, 602** | |
| | | 144:24-145:07 | **OS, R** | |
| | | 145:10-146:06 | **OS, R, P, SP, 602** | |
| | | 146:10-146:23 | **OS, R, P, SP, 602** | |
| 147:05-147:08 | E, I, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| 147:11-147:14 | E, I, MC, P, R, SP, V, FRCP 30(b)(6) | | | |
| | | 147:16-148:07 | **OS, R, P, SP, 602** | |
| | | 148:10-149:13 | **OS, R, P, SP, 602** | |
| 149:14-149:15 | F, I, R, V, 602, FRCP 30(b)(6) | | | |

| | | | | |
|---|---|---|---|---|
| 149:18-149:25 | F, I, R, V, 602, FRCP 30(b)(6) | | | |
| 150:05-150:08 | F, I, R, V, 602, FRCP 30(b)(6) | | | |
| 150:10-150:14 | | | | |
| 150:18-151:18 | I, MC, P, R, FRCP 30(b)(6) | | | |
| | | 151:19-151:22 | **R, P, I** | **151:23–152:3** |
| | | 157:11-157:13 | **OS, R, P** | |
| 158:09-158:17 | FRCP 30(b)(6) | | | |
| 158:21-158:24 | FRCP 30(b)(6) | | | |
| 159:01-159:10 | FRCP 30(b)(6) | | | |
| 159:13-159:14 | FRCP 30(b)(6) | | | |
| 161:04-161:06 | FRCP 30(b)(6) | | | |
| 161:09-161:11 | FRCP 30(b)(6) | | | |
| | | 161:13-161:14 | **R** | |
| | | 161:17-161:23 | **R, P, MC** | |
| | | 162:02-162:12 | **R, P, MC** | |
| | | 162:17-162:19 | **R, P, MC** | |
| 162:21-163:01 | I, FRCP 30(b)(6) | | | |
| 163:06-163:12 | I, FRCP 30(b)(6) | | | |
| 170:04-170:12 | I, MC, P, FRCP 30(b)(6) | | | |
| 170:15-170:20 | I, MC, P, FRCP 30(b)(6) | | | |
| 170:23-171:01 | I, MC, P, FRCP 30(b)(6) | | | |
| 171:03-171:07 | F, MC, P, 602, FRCP 30(b)(6) | | | |
| 171:10 | F, MC, P, 602, FRCP 30(b)(6) | | | |
| | | 173:22-173:24 | **OS, R** | |
| | | 174:03-174:07 | **OS, F, R, P, V, MC** | |
| | | 174:10-174:11 | **OS, R, P, V, MC** | |
| | | 177:12-177:14 | **OS, F, R** | |
| | | 177:21-177:25 | **OS, F, R, P, V, MC, 602, I** | **183:22-184:6; 184:9–17** |
| | | 188:05-188:07 | **OS, R** | |
| | | 188:12-188:19 | **OS, R, P, V, MC, 602** | |

| | | | | |
|---|---|---|---|---|
| | | 190:09-190:17 | **OS, R, P, V, MC, 602** | |
| | | 190:22-191:15 | **OS, H, R, P, MC, 602** | |
| | | 194:18-194:21 | **OS, R** | |
| | | 194:24-195:02 | **OS, R, P, MC** | |
| 195:15-196:09 | FRCP 30(b)(6) | | | |
| 196:11-196:14 | P, R | | | |

**Deponent: Jennifer Ton (October 11, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 05:21-05:25 | | | | |
| 07:05-07:10 | | | | |
| | | 8:13-9:13 | **R** | |
| | | 9:25-10:10 | **R** | |
| | | 10:15-11:6 | **R** | |
| | | 12:22-13:1 | **R** | |
| | | 13:3-14:12 | **R** | |
| | | 15:2-7 | **R** | |
| | | 16:17-17:16 | **R** | |
| | | 17:20-18:3 | **R** | |
| | | 18:6-15 | **R** | |
| | | 19:22-25 | **R** | |
| | | 20:2-22:1 | **R** | |
| | | 22:7-18 | **R** | |
| | | 23:7-15 | **R** | |
| | | 23:17-21 | **R** | |
| | | 24:1-9 | **R** | |
| | | 26:2-19 | **R** | |
| | | 27:5-28:25 | | |
| | | 30:1-10 | | |
| | | 30:16-30:19 | | |
| 30:20-31:01 | I | | | |
| | | 31:02-31:17 | | |
| | | 31:21-32:08 | **V** | |
| | | 33:19-34:13 | | |
| | | 34:24-35:04 | **V** | |
| | | 41:10-42:09 | | |
| 43:11-44:07 | | | | |
| | | 44:08-45:07 | **SP** | |
| | | 46:02-46:05 | | |
| 50:08-50:21 | I | | | |
| | | 50:22-51:05 | **V** | |
| 51:06-52:03 | I | | | |
| 52:22-52:23 | V, SP, AF, E, 701, I | | | |
| 52:25-53:01 | V, SP, AF, E, 701, I | | | |

| | | | | |
|---|---|---|---|---|
| | | 53:15-53:22 | | |
| 54:01-54:08 | I | | | |
| | | 54:09-54:18 | | |
| 54:19-54:23 | I | | | |
| 55:05-55:12 | I | | | |
| | | 55:13-58:04 | | |
| | | 58:07-58:25 | | |
| 59:09 | AA | | | |
| 59:11-59:12 | AA | | | |
| 59:14-59:16 | MC | | | |
| 59:19-59:22 | MC | | | |
| 59:24-60:01 | I | | | |
| 60:03-60:05 | I | | | |
| | | 60:07-60:09 | | |
| | | 60:11-60:12 | | **60:03-60:05** |
| | | 60:14-60:18 | | |
| 69:14-69:17 | | | | |
| 70:03-70:05 | V, AF | | | |
| 70:07-70:10 | V, AF | | | |
| 70:18-71:10 | F, 602, V, SP | | | |
| 71:12 | F, 602, V, SP | | | |
| 73:07-73:17 | | | | |
| 73:21-73:24 | | | | |
| 74:13-74:19 | I | | | |
| | | 74:20-75:11 | | |
| 76:02-76:11 | I | | | |
| | | 76:16-77:06 | **I** | **77:07-77:08, 77:10** |
| | | 77:12-78:07 | | |
| 100:20-101:08 | F, 602 | | | |
| 101:10-101:12 | F, 602 | | | |
| | | 101:14-101:17 | | **101:7-8; 101:10-101:12** |
| 107:15-107:21 | AF, F, 602, V | | | |
| 107:23-107:24 | AF, F, 602, V | | | |
| 108:01-108:03 | AF, F, 602, V | | | |
| 108:05-108:06 | AF, F, 602, V | | | |

| | | | | |
|---|---|---|---|---|
| 108:08-108:09 | AF, F, 602, V | | | |
| 108:11-108:12 | AF, F, 602, V | | | |
| 108:14-108:16 | AF, F, 602, V | | | |
| 108:18 | AF, F, 602, V | | | |
| 108:20-108:21 | AF, F, 602, V | | | |
| 108:23-108:25 | AF, F, 602, V | | | |
| 109:02-109:05 | AF, F, 602, V | | | |
| 110:01-110:03 | AF, F, 602, V | | | |
| 110:05-110:06 | AF, F, 602, V | | | |
| 110:08-110:12 | R, AF, F, 602, V | | | |
| 110:14 | R, AF, F, 602, V | | | |
| 111:09-111:21 | I | | | |
| | | 111:22-111:23 | | |
| | | 111:25-112:06 | **V** | |
| | | 112:08-112:13 | **V** | |
| 112:14-112:22 | MC | | | |
| 112:25-113:04 | MC | | | |
| 125:02-125:18 | MC, V, E, 701 | | | |
| 125:20 | MC, V, E, 701 | | | |
| 134:11-134:24 | | | | |
| 135:22 | | | | |
| 135:24-136:05 | | | | |
| 136:16-136:21 | | | | |
| 136:23-136:24 | | | | |

| | | | | |
|---|---|---|---|---|
| 137:01-137:03 | MC, AF, F, 602, V, SP | | | |
| 137:05-137:08 | MC, AF, F, 602, V, SP | | | |
| 137:11-137:16 | MC, AF, F, 602, V, SP | | | |
| 137:18-137:19 | MC, AF, F, 602, V, SP | | | |
| 137:21-137:23 | MC, AF, F, 602, V, SP, E, 701 | | | |
| 137:25 | MC, AF, F, 602, V, SP, E, 701 | | | |
| 138:02-138:09 | MC, AF, F, 602, V, SP, E, 701 | | | |

**Deponent: Huong Tran (October 18, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 07:09-07:21 | | | | |
| 08:10-08:16 | | | | |
| 09:17-09:22 | | | | |
| | | 11:06-11:08 | | |
| 11:10-11:12 | | | | |
| 11:14-12:07 | | | | |
| 13:17-13:19 | I | | | |
| | | 13:20-13:21 | **I** | **13:22-23** |
| 13:24-14:18 | I, R | | | |
| 14:21-15:12 | I | | | |
| | | 15:13-15:21 | **ID [15:17-18]** | |
| | | 15:23-15:24 | | |
| 15:25-17:13 | | | | |
| | | 17:24-18:11 | **R, V** | |
| 18:12-18:22 | I | | | |
| | | 18:23-19:02 | **R, V** | |
| 19:09-19:14 | I | | | |
| | | 19:15-19:17 | **R, V** | |
| | | 20:17-20:19 | **R, V** | |
| 20:22-20:25 | I, V, F, AF | | | |
| 22:15-23:09 | V, F, R | | | |
| 23:25-24:09 | | | | |
| 24:15-24:24 | I | | | |
| | | 25:05-25:11 | **R, V** | |
| 25:16-26:01 | R, F, V | | | |
| 26:11-26:18 | | | | |
| | | 28:06-28:12 | **R, V** | |
| | | 28:14-28:19 | **R, V** | |
| 28:23-29:19 | R, 602, P, V, FRCP 30(b)(6) | | | |
| | | 29:20-29:24 | **R, V** | |
| | | 30:13-30:25 | **R, V** | |
| 31:01-31:16 | | | | |
| 31:19-31:22 | | | | |
| 33:15-33:23 | P, R, V, I, MC | | | |
| 34:07-34:14 | P, R, V, I, MC, FRCP 30(b)(6) | | | |

| | | | | |
|---|---|---|---|---|
| 35:12-35:13 | | | | |
| 35:15-35:18 | | | | |
| 35:20-35:22 | P, R, V, I, AF, FRCP 30(b)(6) | | | |
| 37:02-37:03 | P, R, V, I, AA, FRCP 30(b)(6) | | | |
| 37:05-37:08 | P, R, V, I, AA, FRCP 30(b)(6) | | | |
| 37:10-37:22 | P, R, V, I, AA, FRCP 30(b)(6) | | | |
| 38:02-38:10 | P, R, V, I, FRCP 30(b)(6) | | | |
| 38:21-39:03 | | | | |
| | | 39:07-39:08 | | **39:4-6 39:9-12** |
| 39:13-40:09 | P, R, V, I, FRCP 30(b)(6) | | | |
| | | 40:15-40:16 | | |
| 43:04-43:07 | | | | |
| 43:25-44:08 | P, R, V, I, 602, E, FRCP 30(b)(6) | | | |
| 44:17-45:06 | | | | |
| 45:20-46:03 | P, R, V, I, 602, E, FRCP 30(b)(6) | | | |
| 46:05-46:09 | P, R, V, I, 602, E, FRCP 30(b)(6) | | | |
| 46:11-47:05 | P, R, V, I, 602, E, FRCP 30(b)(6) | | | |
| 47:08-47:10 | P, R, V, I, 602, E, FRCP 30(b)(6) | | | |
| | | 47:12-47:17 | **R, V, E, FRCP 30(b)(6)** | **47:4-5; 47:8-10** |
| 47:19-47:22 | | | | |
| 48:03-48:09 | I | | | |
| | | 48:10-48:19 | **R, V** | |
| | | 49:08-49:11 | **R, V** | |
| 49:12-50:07 | I | | | |

| | | | | |
|---|---|---|---|---|
| | | 50:08-51:14 | **R, V** | |
| | | 52:03-53:20 | **R, V** | **53:21**<br>**53:23-24** |
| | | 54:01-54:09 | **R, V** | **54:10-11**<br>**54:14-20**<br>**54:22-23** |
| 54:25-55:03 | I | | | |
| | | 55:04-55:06 | **R, V** | **55:7-13** |
| | | 55:17-55:22 | **R, V** | **55:23-25** |
| 56:04-56:22 | P, R, V, I, 602, E, FRCP 30(b)(6) | | | |
| | | 56:23-57:08 | **R, V** | |
| | | 57:12-52:17 | **R, V** | |
| 57:18-57:22 | I | | | |
| | | 57:23-57:25 | **R, V** | |
| 58:01-58:05 | P, R, V, I, 602, FRCP 30(b)(6) | | | |
| | | 58:06-58:07 | **R, V** | |
| 58:08-58:18 | P, R, V, I, 602, FRCP 30(b)(6) | | | |
| | | 58:19-59:01 | **R, V** | |
| | | 59:15-59:18 | **R, V** | |
| | | 60:13-60:24 | **R, V** | |
| 60:25-61:02 | I | | | |
| | | 61:03-61:05 | **R, V** | |
| | | 63:01-63:06 | **R, V** | |
| | | 65:19-66:10 | **R, V** | |
| | | 66:24-67:01 | **R, V** | |
| | | 67:13-68:05 | **R, V** | |
| | | 69:18-69:25 | **R, V** | |
| | | 71:06-71:19 | **R, V** | **71:20-24** |
| | | 71:25-72:23 | **R, V** | **72:24-73:5** |
| | | 73:06-73:24 | **R, V** | |
| | | 74:24-75:16 | **R, V** | |
| | | 75:18-75:20 | **R, V** | |
| | | 75:25-76:11 | **F, R, V** | |
| | | 76:15-76:21 | **F, R** | |
| | | 76:25-77:02 | **F, R** | |
| 77:16-77:22 | | | | |
| 78:09-79:01 | | | | |
| | | 79:09-79:19 | **ID [79:17], R** | |

| | | | | |
|---|---|---|---|---|
| | | 79:21-79:23 | **R, V** | |
| | | 80:02-80:19 | **R, V** | |
| | | 80:23-81:02 | **R, V** | |
| | | 81:07-81:20 | **R, V** | |
| 81:21-81:25 | I | | | |
| 82:03-82:05 | I | | | |
| 82:14-82:17 | P, V, I, 602, FRCP 30(b)(6), E, SP | | | |
| 82:20 | P, V, I, 602, FRCP 30(b)(6), E, SP | | | |
| 82:23-83:04 | P, V, I, 602, FRCP 30(b)(6), E, SP | | | |
| 83:06-83:10 | I | | | |
| | | 83:11-85:22 | **R, V** | |
| | | 86:07-86:17 | **R, V** | |
| | | 86:20-87:12 | **R, V** | |
| | | 87:18-87:19 | **R, V** | |
| | | 88:03-88:06 | **R, V** | |
| | | 89:20-90:05 | **R, V** | |
| 90:06-90:18 | V, I, R, FRCP 30(b)(6) | | | |
| | | 91:22-93:24 | **R, V** | |
| | | 94:19-95:25 | **ID [95:21], R** | **96:2-4**<br>**96:7-8** |
| | | 96:10-96:23 | **R, V** | |
| 96:24-97:15 | V, I, 602, FRCP 30(b)(6) SP, HYP | | | |
| | | 97:16-97:20 | **R, V** | |
| | | 98:05-98:11 | **R, V** | |
| | | 98:14-99:06 | **R, V** | |
| | | 99:22-100:01 | **R, V** | **100:17-19** |
| | | 100:03-100:16 | **R, V** | |
| | | 100:20-101:03 | **R, V** | **101:4-8** |
| 101:09-102:06 | I | | | |
| | | 102:11-103:05 | **R, V** | |
| 103:06-103:14 | I | | | |
| | | 103:15-103:17 | **R, V** | **103:18-19** |
| | | 103:20:103:21 | **R, V** | **103:22-25** |

| | | | | |
|---|---|---|---|---|
| | | 104:01-104:05 | **R, V** | **104:6-8** |
| | | 104:09-104:11 | **R, V** | **104:12-16** |
| | | 104:17-105:11 | **R, V** | |
| | | 105:19-105:22 | **R, V** | |
| 106:04-106:06 | | | | |
| 106:10-106:21 | I | | | |
| | | 106:22-107:01 | **R, V** | |
| | | 107:04-107:08 | **R, V** | |
| 107:09-107:14 | I | | | |
| | | 107:24-108:08 | **R, V** | |
| 108:09-108:14 | I | | | |
| | | 108:15-109:21 | **R, V** | |
| 110:11-110:17 | I | | | |
| 110:20-110:22 | I | | | |
| 110:24-111:07 | I | | | |
| 111:8-12 | I | | | |
| 111:13-111:22 | I | | | |
| | | 111:23-112:06 | **R, V** | |
| | | 112:22-113:14 | **R, V** | |
| | | 113:16-113:17 | **R, V** | |
| | | 113:19-113:25 | **R, V** | |
| | | 114:02-114:04 | **R, V** | |
| 114:06-114:18 | | | | |
| 115:21-116:05 | I | | | |
| | | 116:06-117:04 | **R, V** | |
| 117:05-117:07 | I | | | |
| | | 117:08-117:11 | **R, V** | |
| | | 117:13-118:14 | **R, V** | |
| 117:16-118:01 | I | | | |
| | | 118:02-118:13 | **R, V** | |
| | | 118:15-118:17 | **R, V** | |
| | | 118:19-120:01 | **R, V** | |
| 120:02-120:20 | I | | | |
| | | 120:21-121:08 | **R, V** | |
| | | 121:10 | **R, V** | |
| | | 121:12-121:17 | **R, V** | |
| 122:04-122:10 | I | | | |
| | | 122:11-122:13 | **R, V** | |
| 122:14-123:22 | I | | | |
| | | 123:23-123:24 | **R, V** | |
| 123:25-124:08 | I | | | |
| | | 124:09-125:17 | **R, V** | |

| | | | | |
|---|---|---|---|---|
| | | 129:24-130:03 | **R, V** | |
| | | 131:05-131:06 | **R, V** | |
| | | 131:09-131:11 | **R, V** | |
| | | 131:13-131:20 | **R, V** | |
| | | 131:23-131:25 | **R, V** | **132:2-5** |
| | | 132:06-132:13 | **R, V** | |
| | | 133:08-133:24 | **R, V, LD** | |
| 134:03-134:08 | | | | |
| | | 134:23-135:14 | **R, V** | |
| | | 135:16-135:23 | **R, V** | |
| | | 136:01-136:05 | **R, V** | |
| | | 136:07-136:22 | **R, V** | |
| | | 136:25-137:01 | **R, V** | |
| 137:03-137:21 | MC, SP, V | | | |
| 137:23-137:24 | MC, SP, V | | | |
| 138:01-138:05 | | | | |
| 138:13-138:19 | | | | |
| 138:25-139:05 | | | | |
| 139:14-139:15 | | | | |
| 139:18-139:23 | | | | |
| 139:25-140:02 | | | | |
| 140:05-140:08 | | | | |
| 140:10-140:11 | | | | |
| 140:14-140:15 | | | | |
| 141:15-141:18 | AA, V, R, FRCP 30(b)(6) | | | |
| 141:21 | AA, V, R, FRCP 30(b)(6) | | | |

**Deponent: Hui Xiang (October 13, 2023)**

| Defendants' Designations | Plaintiffs' Objections | Plaintiff's Counter-Designation | Defendants' Objections | Defendants' Counter-Counter Designations |
|---|---|---|---|---|
| 08:13-08:16 | | | | |
| 09:04-09:07 | MC | | | |
| 09:24-10:04 | | | | |
| 12:04-12:21 | | | | |
| 13:05-14:17 | | | | |
| 14:24-15:02 | | | | |
| | | 15:03-15:07 | **V** | |
| 15:19-16:04 | R | | | |
| | | 16:05-16:14 | **V** | |
| 16:15-16:20 | I | | | |
| | | 16:21-16:22 | **R** | |
| 17:15-18:04 | I, R | | | |
| | | 18:05-19:20 | **R** | |
| | | 20:21-21:02 | **V** | |
| | | 21:22-21:25 | | |
| 22:01-22:20 | | | | |
| 23:05-23:20 | R, I | | | |
| | | 23:21-23:24 | **R** | |
| 23:25-24:12 | R | | | |
| 26:11-26:23 | R, I | | | |
| | | 26:24-27:05 | **V** | |
| 27:17-28:14 | V, R | | | |
| | | 28:15-28:17 | | |
| | | 28:19-29:04 | **V** | |
| 29:17-29:20 | I | | | |
| | | 29:21-30:02 | | |
| 30:03-31:03 | I | | | |
| 34:10-34:25 | I | | | |
| | | 35:01-35:08 | | |
| 35:09-36:07 | E, 701, I | | | |
| | | 36:08 | | |
| | | 36:11-36:15 | **V, R** | |
| | | 36:17-38:10 | **SP, V** | |
| | | 39:08-39:14 | | |
| | | 40:06-42:14 | | |
| | | 43:12-44:21 | **V** | |
| | | 45:16-46:04 | **V** | **47:02-47:05** |

| | | | | |
|---|---|---|---|---|
| | | 48:07-48:18 | **V** | |
| | | 49:01-50:17 | **V** | |
| 50:18-51:18 | V, I | | | |
| | | 51:19-52:04 | **V** | |
| 54:10-55:14 | | | | |
| | | 55:15-58:10 | **R** | |
| | | 58:22-59:09 | **V** | |
| 61:04-61:14 | I | | | |
| | | 61:15-61:19 | **V** | |
| 76:11-76:17 | R, V | | | |
| 82:14-82:22 | V, SP, AF | | | |
| 96:08-97:04 | I | | | |
| | | 97:05-99:18 | **R** | |
| | | 100:18-101:04 | **R** | |
| 101:05-102:23 | SP | | | |
| | | 102:24-103:02 | **V, R** | |
| 103:03-105:03 | AF, V, SP | | | |
| 105:12-105:23 | AF, V, SP, I | | | |
| | | 107:02-107:10 | **V, R** | |
| 120:02-121:08 | I | | | |
| | | 121:09-121:14 | | |
| 121:15-122:09 | I | | | |
| 122:11-123:14 | AF, MC, V, SP | | | |
| 123:16-123:18 | AF, MC, V, SP | | | |
| | | 123:20-123:23 | | |
| | | 123:25 | **V** | |
| 124:02-124:05 | AF, MC, V, SP | | | |
| 124:07-124:08 | AF, MC, V, SP | | | |
| | | 124:15-124:19 | **V, R** | |
| 125:12-125:22 | | | | |
| | | 125:23-126:13 | | |
| | | 126:15-126:22 | **V** | |
| | | 126:24-128:04 | **V, R** | **128:14-129:17** |
| 129:07-129:17 | V, I | | | |
| 130:14-130:19 | V, I | | | |
| 131:05-132:22 | V, I, AF, MC | | | |
| 132:24-133:04 | V, I, AF, MC | | | |
| 133:06-133:08 | V, I, AF, MC | | | |
| 133:23-134:03 | | | | |
| 134:05-134:25 | I | | | |
| | | 135:01-137:09 | **V, SP** | |
| | | 138:06-138:08 | **V** | |

| | | | | |
|---|---|---|---|---|
| | | 138:11-138:12 | **V** | |
| | | 138:14-138:20 | **V** | |
| | | 138:24-139:06 | **V, SP** | |
| 139:10-139:24 | AF, MC, V | | | |
| 140:01-140:19 | I | | | |
| | | 140:20-142:12 | **V, R** | **131:05-132:22, 132:24-133:04** |
| 142:13-142:25 | | | | |
| 143:01-143:25 | AF, MC | | | |
| 144:03-144:09 | I | | | |
| | | 144:10-144:24 | **R** | |
| 145:04-145:23 | I | | | |
| | | 145:25-146:15 | **V, R** | |
| | | 146:24-147:05 | **V, SP** | |
| | | 147:07-147:13 | **V, SP** | **147:14-148:20** |
| 147:14-148:20 | V, SP | | | |
| 150:13-150:18 | R | | | |
| 150:20-151:11 | R, V | | | |
| | | 151:23-152:03 | **R** | **151:01-151:05** |
| 156:11-156:23 | R | | | |
| 157:09-158:07 | R, V, SP | | | |
| | | 158:08-158:13 | | |
| | | 158:16-159:06 | **V, SP** | **157:17-158:07, 159:17-159:21** |
| 159:07-159:10 | I, R, MC, V, SP | | | |
| 159:13-160:07 | I, R, MC, V, SP | | | |
| 160:11-161:04 | I, R, MC, V, SP | | | |
| 161:07-161:08 | I, R, MC, V, SP | | | |
| 161:10-161:18 | I, R, MC, V, SP | | | |
| 162:25-164:09 | R | | | |
| 164:23-165:06 | R, I | | | |
| | | 165:07-165:15 | **V, R** | |
| 168:23-168:24 | R | | | |
| 170:10-170:20 | R | | | |
| 171:05-171:11 | R, I | | | |
| | | 171:12-171:18 | **V, R** | |
| 171:19-171:21 | R, MC, V, SP | | | |
| 171:23-171:25 | R, MC, V, SP | | | |
| 172:02-172:08 | R | | | |
| 172:10-172:25 | R | | | |
| 173:07-175:01 | R, MC, I | | | |
| | | 175:02-175:11 | **V, R** | |

| | | | | |
|---|---|---|---|---|
| 175:12-177:25 | R | | | |
| 178:02-178:16 | R | | | |
| 180:11-180:21 | R | | | |
| 181:08-182:18 | R, V, SP | | | |
| 182:20-182:22 | R, V, SP | | | |
| 184:25-185:07 | R | | | |
| 185:09-185:10 | R | | | |
| 185:15-186:18 | R, AF | | | |
| 186:21-187:03 | R, AF | | | |
| 191:18-194:04 | AA, AF, MC, V | | | |
| 194:07-194:08 | AA, AF, MC, V | | | |
| 194:10-194:12 | | | | |
| 194:15-194:16 | | | | |
| 194:18-194:22 | | | | |
| 195:01-195:16 | R | | | |
| 195:18-195:25 | R | | | |
| 197:24-198:07 | R, I | | | |
| | | 198:08-198:11 | **V** | |

# EXHIBIT 7-A

*Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*
Case No. 21-1411-RGA (D. Del.)
Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025)

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-001 | ALGN-0000212 | U.S. Patent No. 11,147,878 | |
| PTX-002 | ALGN-0013405 | U.S. Patent No. 11,285,216 | |
| PTX-003 | ALGN-0000070 | U.S. Patent No. 7,354,740 | |
| PTX-004 | ALGN-0013225 | U.S. Patent No. 8,409,828 | NSW, R, P |
| PTX-005 | ALGN-0013375 | U.S. Patent No. 11,203,748 | |
| PTX-006 | ALGN-0013446 | U.S. Patent No. 11,326,155 | NSW, R, P |
| PTX-007 | ALGN-0013262 | U.S. Patent No. 11,033,625 | NSW, R, P |
| PTX-008 | REV_DAX-03340125 | U.S. Provisional Application No. 60/725,126 | |
| PTX-009 | REV_DAX-03340125 | U.S. Provisional App. No. 60/725,126 | |
| PTX-010 | N/A | U.S. Patent Application 11/524,683 | NSW, R, P |
| PTX-011 | REV_DAX-03327946 | U.S. Patent No. 11,033,625 - Prosecution History | NSW, R, P |
| PTX-012 | N/A | U.S. Patent No. 11,124,786 | NSW, R, P |
| PTX-013 | REV_DAX-03330667 | U.S. Patent No. 11,147,878 - Prosecution History | |
| PTX-015 | REV_DAX-03333270 | U.S. Patent No. 11,285,216 - Prosecution History | |
| PTX-016 | REV_DAX-03326515 | U.S. Patent No. 7,354,740 - Prosecution History | |
| PTX-017 | N/A | Summary document for Rule 30(b)(6) Deposition of Ron Broide - 1 | AU, B, DE, F, H, I, MU |
| PTX-018 | N/A | Summary document for Rule 30(b)(6) Deposition of Ron Broide - 2 | AU, B, DE, F, H, I, MU |
| PTX-019 | N/A | Summary document for Rule 30(b)(6) Deposition of Hemant Patel | AU, B, DE, F, H, I, MU |
| PTX-020 | N/A | Handwritten Note for Rule 30(b)(6) Deposition of Ed Podraza | AU, B, DE, F, H, I, IE, MU, P, R |
| PTX-021 | N/A | Binder of documents brought to Deposition of Christain Schöneich | AU, B, F, I, MU |
| PTX-022 | N/A | Summary document for Rule 30(b)(6) Deposition of Huong Tran | AU, B, DE, F, H, I, MU |
| PTX-023 | N/A | Binder for Rule 30(b)(6) Deposition of Huong Tran | AU, B, DE, F, H, I, MU, R, H, P |
| PTX-024 | ALGN-0012623 | Agreement Between Allergan Pharmaceuticals Ireland and Allergan USA, Inc. (Jan. 1, 2018) | AU, B, DE, F, H, I, MU, MIL, R |
| PTX-025 | ALGN-0012619 | Agreement between Allergan, Inc. and Allergan Botox Limit, Allergan Pharmaceuticals Holdings (Ireland) Limited, and Allergan Pharmaceuticals Ireland | AU, F, NSW, R, MIL, P, H |
| PTX-026 | ALGN-0012639 | Agreement between Allergan, Inc., Allergan Botox Ltd., Allergan Pharmaceuticals (Ireland) Ltd., and Allergan Pharmaceuticals Holdings (Ireland) Ltd. (Jan. 1, 2001) | AU, F, NSW, R, MIL, P, H |
| PTX-027 | ALGN-0012645 | Agreement between Allergn Botox Unlimited Company, Allergan Pharmaceuticals Holdings (Ireland) Unlimited Company, and Allergan Pharmaceuticals Ireland (Jan. 21, 2020) | AU, F, NSW, R, MIL, P, H |
| PTX-028 | ALGN-0012656 | Agreement between Allergn Botox Unlimited Company, Allergan Pharmaceuticals Holdings (Ireland) Unlimited Company, Allergan Pharmaceuticals Ireland, and Allergan, Inc. - IP Asset Purchase (Jan. 21, 2020) | AU, F, NSW, R, MIL, P, H |
| PTX-029 | ALGN-0012840 | Agreement between Allergan Pharmaceuticals (Ireland) Ltd. and Allergan Sales, Inc. (Jan. 1, 2001) | AU, F, NSW, R, MIL, P, H |
| PTX-030 | N/A | Deposition testimony of Terrence Hunt Oct. 26, 2023) | H, MU, P, R, LIVE |
| PTX-031 | ALGN-0028505 | Allergan Notebook [redacted] | F, H, P, R |
| PTX-032 | ALGN-0012903 | Allergan Notebook [redacted] | F, H, P, R |
| PTX-033 | ALGN-0012877 | Results from Experiment 9 | F, H, P, R |
| PTX-034 | ALGN-0028719 | Allergan Notebook [redacted] | F, H, P, R |
| PTX-035 | ALGN-0012882 | Results from Experiment 14 | F, H, P, R |
| PTX-036 | ALGN-0012884 | Results from Experiment 17 | F, H, P, R |
| PTX-037 | ALGN-0029144 | Allergan Notebook [redacted] | F, H, P, R |
| PTX-038 | ALGN-0012886 | Results from Experiment 21 | F, H, P, R |
| PTX-039 | ALGN-0012901 | Results from Experiment 24 | F, H, P, R |
| PTX-040 | ALGN-0012898 | Results from Experiment 23 | F, H, P, R |
| PTX-041 | ALGN-0045104 | Results from Experiment 22 | F, H, P, R |
| PTX-042 | ALGN-0046679 | Email Correspondence - Tran to Hunt (Sept. 13, 2004) | AU, BS, F, H, NP, NSW, P, R |
| PTX-043 | ALGN-0045049 | Email Correspondence - Tran to Hunt (Sept. 27, 2004) | AU, BS, F, H, NP, NSW, P, R |

| *Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*<br>Case No. 21-1411-RGA (D. Del.)<br>Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025) | | | |
|---|---|---|---|
| **PTX No.** | **Bates Beg** | **Description** | **Objection** |
| PTX-044 | ALGN-0046681 | Email Correspondence - Tran to Hunt (Oct. 1, 2004) | AU, BS, F, H, NP, NSW, P, R |
| PTX-045 | ALGN-0046697 | Email Correspondence - Tran to Hunt (Jan. 5, 2004) | AU, BS, F, H, NP, NSW, P, R |
| PTX-046 | ALGN-0046733 | Results from Experiment 19 | F, H, P, R |
| PTX-047 | ALGN-0028932 | Allergan Notebook [redacted] | F, H, NSW, P, R |
| PTX-048 | ALGN-0032278 | [redacted] | F, I, NSW, P, R |
| PTX-049 | ALGN-1836232 | Allergan Presentation - "Product Development: Systems for Producing Toxin & Toxin-Derived Drug Formulations" (Dec.1, 2005) | F, I, NSW, P, R |
| PTX-050 | n/a | Deposition testimony of Huong Tran (Oct. 18, 2023) | H, MU, P, R |
| PTX-051 | ALGN-0032277 | Email - Brin to Joshi et al. (Aug. 1, 2003) | F, H, I, NSW, P, R |
| PTX-052 | ALGN-0032302 | Email - Brin to Steadman et al. (Aug. 18, 2003) | F, H, I, NSW, P, R |
| PTX-053 | ALGN-0047645 | Email - Huong Tran to Terrence Hunt (Jan. 18, 2005) | F, H, I, NSW, P, R |
| PTX-054 | ALGN-0045139 | Email - Huong Tran to Terrence Hunt (June 6, 2005) | F, H, I, NSW, P, R |
| PTX-055 | ALGN-0032389 | Email - Tran to Hunt (Jan. 6, 2005) | F, H, I, NSW, P, R |
| PTX-056 | ALGN-1835923 | File name: "DS2NPDCMC.ppt" | F, H, I, NSW, P, R |
| PTX-057 | ALGN-0032304 | File name: "Product Development New Options Botulinum Toxin ChartTemplate..doc" | F, I, NSW, P, R |
| PTX-058 | ALGN-1363491 | BPS-RR-08-010, "Development the Anion Exchange Chromatography Capture Step for the AGN-191622 Drug Substance 2 (DS2) Manufacturing Process" | R |
| PTX-059 | N/A | ABD-2009-R-0028, "Development Report on the Development of the Cation Exchange Chromatography Intermediate Purification Step for the AGN-191622 Drug Substance 2 (DS2) Manufacturing Process" | R |
| PTX-060 | ALGN-1843012 | BPS-RR-07-017, "Development of an Animal Product Free Downstream Process for the Clostridium botulinum Neurotoxin Type A Complex" | R |
| PTX-061 | ALGN-0043345 | [redacted] | R |
| PTX-062 | ALGN-1363342 | BP-R-08-004, "Analysis of Residual Genomic DNA Content in AGN-191622-DS1 and AGN-191622-DS2 Drug Substances by Real-time Quantitative Polymerase Chain Reaction (qPCR)" | R |
| PTX-063 | ALGN-1363763 | BPS-RR-07-020, "Resin Screening for Purification of 900 kDa Clostridium botulinum Neurotoxin Type A Complex" | R |
| PTX-064 | ALGN-1363727 | ABD-2009-R-0028, "Development of the Cation Exchange Chromatography Intermediate Purification Step for the AGN-191622 Drug Substance 2 (DS2) Manufacturing Process" | R |
| PTX-065 | ALGN-1363127 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-066 | ALGN-0026272 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-067 | ALGN-0026497 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-068 | ALGN-0026782 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-069 | ALGN-0027081 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-070 | ALGN-0027440 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-071 | ALGN-0027762 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-072 | ALGN-0027974 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-073 | ALGN-0028081 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-074 | ALGN-0028293 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-075 | ALGN-0029357 | Allergan Notebook [redacted] | BS, F, H, NSW, P, R |
| PTX-076 | ALGN-1363537 | Allergan Presentation - "Preliminary Analytical Comparability Assessment of AGN-191622-DS1 vs. AGN-191622-DS2" | R |
| PTX-077 | ALGN-1363000 | [redacted] | R |
| PTX-078 | ALGN-1363668 | [redacted] | AU, B, F, I, NSW, P, R |
| PTX-079 | ALGN-1363705 | [redacted] | AU, B, F, I, NSW, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-080 | REV_DAX-03326049 | LabEaze Report, Quantification of Clostridium botulinum Genomic DNA in Botulinum Toxin Samples | R |
| PTX-081 | REV_DAX-00003306 | BLA No. 761127, Section 3.2.P.1 - Description and Composition (Nov. 5, 2019) | BS, F, I, P, R |
| PTX-082 | REV_DAX-02087088 | BLA No. 761127, Section 3.2.P.5.1 – Specifications (Sept. 22, 2020) | BS, F, I, P, R |
| PTX-083 | REV_DAX-00003770 | BLA No. 761127, Section 3.2.P.4.5 - Excipients of Human or Animal Origina (Oct. 25, 2019) | BS, F, I, P, R |
| PTX-084 | REV_DAX-02086422 | BLA No. 761127, Section 3.2.P.5.2 – Analytical Procedures (July 7, 2020) | BS, F, I, P, R |
| PTX-085 | REV_DAX-00003310 | BLA No. 761127, Section 3.2.P.2.2 - Description of Manufacturing Process and Process Controls (Nov. 9, 2019) | BS, F, I, P, R |
| PTX-086 | REV_DAX-02087165 | BLA No. 761127, Section 3.2.P.6 - Reference Standards or Materials (Sept. 22, 2020) | BS, F, I, P, R |
| PTX-087 | REV_DAX-02087172 | BLA No. 761127, Section 3.2.P.8.1 - Stability Summary and Conclusions (Sept. 22, 2020) | BS, F, I, P, R |
| PTX-088 | REV_DAX-02087215 | BLA No. 761127, Section 3.2.P.8.3 - Stability Summary and Conclusions (Sept. 22, 2020) | BS, F, I, P, R |
| PTX-089 | REV_DAX-02089584 | BLA No. 761127, Section 3.2.P.2.3 – Manufacturing Process Development (Mar. 2, 2022) | BS, F, I, P, R |
| PTX-090 | REV_DAX-02089670 | BLA No. 761127, Section 3.2.P.5.4 – Batch Analyses (Mar. 2, 2022) | BS, F, I, P, R |
| PTX-091 | REV_DAX-00002851 | BLA No. 761127, Section 3.2.A.3.1 - General Information | BS, F, I, P, R |
| PTX-092 | ALGN-1786560 | AGN-151607, Section 3.2.S.2.2 - Description of Manufacturing Process and Process Controls | BS, F, I, P, R |
| PTX-093 | REV_DAX-00002323 | BLA No. 761127, Section 2.7.3 - Summary of Clinical Efficacy (Sept. 18, 2019) | BS, F, I, P, R |
| PTX-094 | REV_DAX-02572358 | BLA No. 761127, Section 2.7.6 - Synopsis of Individual Studies (Oct. 10, 2019) | BS, F, I, P, R |
| PTX-095 | REV_DAX-00000198 | BLA No. 761127, Cover Letter (Nov. 24, 2019) | BS, F, I, P, R |
| PTX-096 | REV_DAX-02202776 | BLA No. 761127, Form 483 (July 2, 2021) | BS, F, I, P, R |
| PTX-097 | REV_DAX-02088949 | BLA No. 761127, Section 1.6.2 - Type A Meeting Materials (Nov. 23, 2021) | BS, F, I, P, R |
| PTX-098 | REV_DAX-02089206 | BLA No. 761127, Section 1.6.3 - Correspondence Regarding Meetings (Dec. 15, 2021) | BS, F, I, P, R |
| PTX-099 | REV_DAX-02089293 | BLA No. 761127, Letter (Jan. 5, 2022) | BS, F, I, P, R |
| PTX-100 | REV_DAX-02089240 | BLA No. 761127, Formal Dispute Resolution Request | BS, F, I, P, R |
| PTX-101 | REV_DAX-02089357 | BLA No. 761127, Section 1.11.4 - Complete Response (Mar. 6, 2022) | BS, F, I, P, R |
| PTX-102 | REV_DAX-02105998 | BLA No. 761127, Approval Letter | BS, F, I, P, R |
| PTX-103 | REV_DAX-02755534 | BLA No. 761127, Supplement Approval for Cervical Dystonia (Aug. 11, 2023) | BS, F, I, P, R |
| PTX-104 | REV_DAX-02752690 | BLA No. 761127, Letter (Sept. 23, 2022) | BS, F, I, P, R |
| PTX-105 | REV_DAX-02193716 | BLA No. 761127, Section 1.11.1 - Quality Information Amendment (Nov. 8, 2020) | BS, F, I, P, R |
| PTX-106 | REV_DAX-02105042 | BLA No. 761127, Section 1.11.1 - Quality Information Amendment (Sept. 1, 2022) | BS, F, I, P, R |
| PTX-107 | REV_DAX-02088441 | BLA No. 761127, Section 3.2.S.4.1 - Specification (Nov. 8, 2020) | BS, F, I, P, R |
| PTX-108 | REV_DAX-02104843 | BLA No. 761127, Section 3.2.S.2.6 - Manufacturing Process Development (Aug. 29, 2022) | BS, F, I, P, R |
| PTX-109 | REV_DAX-02090911 | BLA No. 761127, Section 3.2.S.4.4 - Batch Analyses (Mar. 2, 2022) | BS, F, I, P, R |
| PTX-110 | REV_DAX-00004846 | BLA No. 761127, Section 3.2.S.1.2 - Structure (Oct. 19, 2019) | BS, F, I, P, R |
| PTX-111 | REV_DAX-00002010 | BLA No. 761127, Section 2.3.S.3 - Characterization (Nov. 15, 2019) | BS, F, I, P, R |
| PTX-112 | REV_DAX-00005550 | BLA No. 761127, Section 3.2.S.3.1 - Elucidation of Structure and Other Characteristics (Nov. 4, 2019) | BS, F, I, P, R |
| PTX-113 | REV_DAX-00002108 | BLA No. 761127, Section 2.6.1 - Introduction (Sept. 13, 2019) | BS, F, I, P, R |
| PTX-114 | REV_DAX-00001937 | BLA No. 761127, Section 2.3.A.2 - Appendices (Nov. 14, 2019) | BS, F, I, P, R |
| PTX-115 | REV_DAX-02752871 | BLA No. 761127, Section 3.2.S.4.1 - Specification (Dec. 16, 2022) | BS, F, I, P, R |
| PTX-116 | REV_DAX-02104605 | BLA No. 761127, Section 3.2.S.2.2 - Description of Manufacturing Process and Process Controls (July 22, 2022) | BS, F, I, P, R |
| PTX-117 | REV_DAX-00005579 | BLA No. 761127, Section 3.2.S.3.2 - Impurities (Nov. 7, 2019) | BS, F, I, P, R |
| PTX-120 | REV_DAX-03326320 | BLA No. 761127, CDER Mult-Discipline Review (Mar. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-121 | REV_DAX-02105872 | BLA No. 761127, Form 483 (July 15, 2022) | BS, F, I, NSW, P, R |
| PTX-122 | REV_DAX-02085433 | BLA No. 761127, Section 1.11.1 - Quality Information Amendment (Feb. 20, 2020) | BS, F, I, NSW, P, R |
| PTX-123 | REV_DAX-00001922 | BLA No. 761127, Section 2.2 – Introduction to Summary (Sept. 23, 2019) | BS, F, I, NSW, P, R |
| PTX-124 | REV_DAX-02753782 | BLA No. 761127, Section 2.2 – Quality Overall Summary (Dec. 16, 2022) | BS, F, I, NSW, P, R |
| PTX-125 | REV_DAX-02755690 | BLA No. 761127, Section 2.3.P.8 – Manufacture - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-126 | REV_DAX-02753618 | BLA No. 761127, Section 2.3.P.8 – Manufacture (Dec. 16, 2022) | BS, F, I, NSW, P, R |
| PTX-127 | REV_DAX-00001988 | BLA No. 761127, Section 2.3.P.8 – Manufacture (Nov. 19, 2019) | BS, F, I, NSW, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-128 | REV_DAX-02104583 | BLA No. 761127, Section 2.3.S.2 - Manufacture (July 22, 2022) | BS, F, I, NSW, P, R |
| PTX-129 | REV_DAX-02089548 | BLA No. 761127, Section 2.3.S.2 - Manufacture (Mar. 4, 2022) | BS, F, I, NSW, P, R |
| PTX-130 | REV_DAX-00002054 | BLA No. 761127, Section 2.5 - Clinical Overview (Oct. 18, 2019) | BS, F, I, NSW, P, R |
| PTX-131 | REV_DAX-00002116 | BLA No. 761127, Section 2.6.2 - Pharmacology Written Summary (Sept. 23, 2019) | BS, F, I, NSW, P, R |
| PTX-132 | REV_DAX-02085880 | BLA No. 761127, Section 3.2.A.1 - Facilities and Equipment (Apr. 30, 2020) | BS, F, I, NSW, P, R |
| PTX-133 | REV_DAX-02086403 | BLA No. 761127, Section 3.2.A.1 - Facilities and Equipment (July 7, 2020) | BS, F, I, NSW, P, R |
| PTX-134 | REV_DAX-02089575 | BLA No. 761127, Section 3.2.A.2 – Adventitious Agents Safety Evaluation (Mar. 4, 2022) | BS, F, I, NSW, P, R |
| PTX-135 | REV_DAX-00002843 | BLA No. 761127, Section 3.2.A.2 – Adventitious Agents Safety Evaluation (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-136 | REV_DAX-02754390 | BLA No. 761127, Section 3.2.P.1 – Description and Composition - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-137 | REV_DAX-02753787 | BLA No. 761127, Section 3.2.P.2.1 – Components of the Drug Product - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-138 | REV_DAX-00003307 | BLA No. 761127, Section 3.2.P.2.1 - Components of the Drug Product (Nov. 9, 2019) | BS, F, I, NSW, P, R |
| PTX-139 | REV_DAX-02754464 | BLA No. 761127, Section 3.2.P.2.2 – Drug Product - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-140 | REV_DAX-02754890 | BLA No. 761127, Section 3.2.P.2.3 – Manufacturing Process Development - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-141 | REV_DAX-00003340 | BLA No. 761127, Section 3.2.P.2.3 – Manufacturing Process Development (Nov. 10, 2019) | BS, F, I, NSW, P, R |
| PTX-142 | REV_DAX-02753892 | BLA No. 761127, Section 3.2.P.3.2 - Batch Formula - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-143 | REV_DAX-00003564 | BLA No. 761127, Section 3.2.P.3.2 - Batch Formula (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-144 | REV_DAX-02753926 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-145 | REV_DAX-02085929 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls (Apr. 30, 2020) | BS, F, I, NSW, P, R |
| PTX-146 | REV_DAX-02753304 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls (Dec. 19, 2022) | BS, F, I, NSW, P, R |
| PTX-147 | REV_DAX-02085086 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls (Jan. 9, 2020) | BS, F, I, NSW, P, R |
| PTX-148 | REV_DAX-02086321 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls (June 19, 2020) | BS, F, I, NSW, P, R |
| PTX-149 | REV_DAX-02089650 | BLA No. 761127, Section 3.2.P.3.3 - Description of Manufacturing Process and Process Controls (Mar. 2, 2022) | BS, F, I, NSW, P, R |
| PTX-150 | REV_DAX-00003565 | BLA No. 761127, Section 3.2.P.3.3 - Description of Manufacturing Process and Process Controls (Nov. 8, 2019) | BS, F, I, NSW, P, R |
| PTX-151 | REV_DAX-02752873 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls (Nov. 9, 2022) | BS, F, I, NSW, P, R |
| PTX-152 | REV_DAX-02087068 | BLA No. 761127, Section 3.2.P.3.3 – Description of Manufacturing Process and Process Controls (Sept. 22, 2020) | BS, F, I, NSW, P, R |
| PTX-153 | REV_DAX-02754766 | BLA No. 761127, Section 3.2.P.4.1 – Specifications - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-154 | REV_DAX-00003772 | BLA No. 761127, Section 3.2.P.4.1 – Specifications (Oct. 25, 2019) | BS, F, I, NSW, P, R |
| PTX-155 | REV_DAX-02755012 | BLA No. 761127, Section 3.2.P.4.5 – Excipients of Human or Animal Origin - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-156 | REV_DAX-02754761 | BLA No. 761127, Section 3.2.P.5.1 – Specifications - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-157 | REV_DAX-00003776 | BLA No. 761127, Section 3.2.P.5.1 – Specifications (Nov. 8, 2019) | BS, F, I, NSW, P, R |
| PTX-158 | REV_DAX-02753893 | BLA No. 761127, Section 3.2.P.5.1 – Specifications (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-159 | REV_DAX-02754472 | BLA No. 761127, Section 3.2.P.5.2 – Analytical Procedures - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-160 | REV_DAX-02085997 | BLA No. 761127, Section 3.2.P.5.2 – Analytical Procedures (Apr. 30, 2020) | BS, F, I, NSW, P, R |
| PTX-161 | REV_DAX-02086331 | BLA No. 761127, Section 3.2.P.5.2 – Analytical Procedures (June 19, 2020) | BS, F, I, NSW, P, R |
| PTX-162 | REV_DAX-00003778 | BLA No. 761127, Section 3.2.P.5.2 – Analytical Procedures (Nov. 22, 2019) | BS, F, I, NSW, P, R |
| PTX-163 | REV_DAX-02753626 | BLA No. 761127, Section 3.2.P.5.2 – Analytical Procedures (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-164 | REV_DAX-02753935 | BLA No. 761127, Section 3.2.P.5.4 – Batch Analyses - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-165 | REV_DAX-00004060 | BLA No. 761127, Section 3.2.P.5.4 – Batch Analyses (Nov. 8, 2019) | BS, F, I, NSW, P, R |
| PTX-166 | REV_DAX-02087149 | BLA No. 761127, Section 3.2.P.5.4 – Batch Analyses (Sept. 22, 2020) | BS, F, I, NSW, P, R |
| PTX-167 | REV_DAX-02753846 | BLA No. 761127, Section 3.2.P.5.6 – Justifications of Specifications - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-168 | REV_DAX-00004077 | BLA No. 761127, Section 3.2.P.5.6 – Justifications of Specifications (Nov. 8, 2019) | BS, F, I, NSW, P, R |
| PTX-169 | REV_DAX-02754501 | BLA No. 761127, Section 3.2.P.8.1 - Stability Summary and Conclusions - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-170 | REV_DAX-02753650 | BLA No. 761127, Section 3.2.P.8.1 – Stability Summary and Conclusions (Dec. 16, 2022) | BS, F, I, NSW, P, R |
| PTX-171 | REV_DAX-02084916 | BLA No. 761127, Section 3.2.P.8.1 - Stability Summary and Conclusions (Dec. 18, 2019) | BS, F, I, NSW, P, R |
| PTX-172 | REV_DAX-00004125 | BLA No. 761127, Section 3.2.P.8.1 - Stability Summary and Conclusions (Nov. 14, 2019) | BS, F, I, NSW, P, R |

| *Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*<br>Case No. 21-1411-RGA (D. Del.)<br>Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025) | | | |
|---|---|---|---|
| **PTX No.** | **Bates Beg** | **Description** | **Objection** |
| PTX-173 | REV_DAX-02753649 | BLA No. 761127, Section 3.2.P.8.2 – Postapproval Stability Protocol and Stability Commitment - ABPS (Sept. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-174 | REV_DAX-00004161 | BLA No. 761127, Section 3.2.P.8.2 – Postapproval Stability Protocol and Stability Commitment (Nov. 22, 2019) | BS, F, I, NSW, P, R |
| PTX-175 | REV_DAX-02753792 | BLA No. 761127, Section 3.2.P.8.2 – Postapproval Stability Protocol and Stability Commitment (Oct. 20, 2022) | BS, F, I, NSW, P, R |
| PTX-176 | REV_DAX-02755577 | BLA No. 761127, Section 3.2.P.8.3 – Stability Data - ABPS (Sept. 9, 2022) | BS, F, I, NSW, P, R |
| PTX-177 | REV_DAX-02753491 | BLA No. 761127, Section 3.2.P.8.3 – Stability Data (Dec. 19, 2022) | BS, F, I, NSW, P, R |
| PTX-178 | REV_DAX-02086441 | BLA No. 761127, Section 3.2.S.2.2 - Description of Manufacturing Process and Process Controls (July 7, 2020) | BS, F, I, NSW, P, R |
| PTX-179 | REV_DAX-02090551 | BLA No. 761127, Section 3.2.S.2.2 - Description of Manufacturing Process and Process Controls (Mar. 4, 2022) | BS, F, I, NSW, P, R |
| PTX-180 | REV_DAX-00004850 | BLA No. 761127, Section 3.2.S.2.2 - Description of Manufacturing Process and Process Controls (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-181 | REV_DAX-02087245 | BLA No. 761127, Section 3.2.S.2.2 - Description of Manufacturing Process and Process Controls (Sept. 22, 2020) | BS, F, I, NSW, P, R |
| PTX-182 | REV_DAX-02104468 | BLA No. 761127, Section 3.2.S.2.2 Description of Manufacturing Process and Process Controls (May 6, 2022) | BS, F, I, NSW, P, R |
| PTX-183 | REV_DAX-02104811 | BLA No. 761127, Section 3.2.S.2.3 - Control of Materials (Aug. 29, 2022) | BS, F, I, NSW, P, R |
| PTX-184 | REV_DAX-00004870 | BLA No. 761127, Section 3.2.S.2.3 - Control of Materials (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-185 | REV_DAX-02087293 | BLA No. 761127, Section 3.2.S.2.3 - Control of Materials, Appendix 2 | BS, F, I, NSW, P, R |
| PTX-186 | REV_DAX-00004971 | BLA No. 761127, Section 3.2.S.2.6 - Manufacturing Process Development (Nov. 12, 2019) | BS, F, I, NSW, P, R |
| PTX-187 | REV_DAX-02086576 | BLA No. 761127, Section 3.2.S.4.1 – Specification (July 17, 2020) | BS, F, I, NSW, P, R |
| PTX-188 | REV_DAX-00005601 | BLA No. 761127, Section 3.2.S.4.1 – Specification (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-189 | REV_DAX-02087420 | BLA No. 761127, Section 3.2.S.4.1 – Specification (Sept. 22, 2020) | BS, F, I, NSW, P, R |
| PTX-190 | REV_DAX-02087863 | BLA No. 761127, Section 3.2.S.4.1 – Specification (Sept. 28, 2020) | BS, F, I, NSW, P, R |
| PTX-191 | REV_DAX-02507360 | BLA No. 761127, Section 3.2.S.4.4 - Batch Analysis (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-192 | REV_DAX-00006144 | BLA No. 761127, Section 3.2.S.4.5 - Justification of Specification (Nov. 7, 2019) | BS, F, I, NSW, P, R |
| PTX-193 | REV_DAX-02755693 | BLA No. 761127, Section 3.2.S.7.1 – Stability Summary and Conclusions (Dec. 16, 2022) | BS, F, I, NSW, P, R |
| PTX-194 | REV_DAX-02084974 | BLA No. 761127, Section 3.2.S.7.1 – Stability Summary and Conclusions (Dec. 18, 2019) | BS, F, I, NSW, P, R |
| PTX-195 | REV_DAX-02086577 | BLA No. 761127, Section 3.2.S.7.1 - Stability Summary and Conclusions (July 17, 2020) | BS, F, I, NSW, P, R |
| PTX-196 | REV_DAX-00006191 | BLA No. 761127, Section 3.2.S.7.1 – Stability Summary and Conclusions (Nov. 12, 2019) | BS, F, I, NSW, P, R |
| PTX-197 | REV_DAX-02087612 | BLA No. 761127, Section 3.2.S.7.1 – Stability Summary and Conclusions (Sept. 22, 2020) | BS, F, I, NSW, P, R |
| PTX-198 | REV_DAX-00001928 | BLA No. 762117, Section 2.3.A.1 - Appendices (Nov. 14, 2019) | BS, F, I, NSW, P, R |
| PTX-199 | REV_DAX-02104267 | BLA No. 761127, Cover Letter (Mar. 8, 2022) | BS, F, I, NSW, P, R |
| PTX-200 | REV_DAX-00000622 | IND No. 129198, pre-BLA Meeting Minutes (Dec. 20, 2018) | BS, F, I, NSW, P, R |
| PTX-201 | REV_DAX-02364614 | IND No. 129198, Section 1.6.3 - Correspondence Regarding Meetings (Sept. 15, 2016) | BS, F, I, NSW, P, R |
| PTX-202 | REV_DAX-02452979 | IND No. 129198, SN0002 (Sept. 15, 2016) | BS, F, I, NSW, P, R |
| PTX-206 | N/A | FDA Label - Botox Cosmetic (Rev. 11/2023) | F, R, P |
| PTX-207 | REV_DAX-03324803 | FDA Label - Dysport (Rev. 9/2023) | F, R, P |
| PTX-208 | REV_DAX-03325879 | FDA Label - Xeomin (9/2023) | F, R, P |
| PTX-209 | REV_DAX-03325138 | FDA Label - Jeuveau (Rev. 7/2019) | F, R, P |
| PTX-210 | REV_DAX-03326254 | FDA Label - Daxxify (Rev. 8/2023) | F, R, P |
| PTX-211 | N/A | FDA Label - Botox | F, NSW, R, P |
| PTX-212 | REV_DAX-03326279 | FDA Label - Botox (2011) | F, NSW, R, P |
| PTX-213 | ALGN-0430534 | FDA Label - Botox (Rev. 12/2000) | F, NSW, R, P |
| PTX-214 | REV_DAX-03324199 | FDA Label - Botox (Rev. 8/2011) | F, NSW, R, P |
| PTX-215 | N/A | FDA Label - Botox Cosmetic | F, NSW, R, P |
| PTX-216 | ALGN-0162591 | FDA Label - Botox Cosmetic (Rev. 07/2020) | F, NSW, R, P |
| PTX-217 | REV_DAX-02640552 | FDA Label - Botox Cosmetic (Rev. 3/2002) | F, NSW, R, P |
| PTX-218 | N/A | FDA Label - Daxxify | F, R, P |
| PTX-219 | N/A | FDA Label - Dysport | F, NSW, R, P, MU |
| PTX-220 | REV_DAX-02808644 | FDA Label - Dysport (Rev. 7/2020) | F, NSW, R, P |

*Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*
Case No. 21-1411-RGA (D. Del.)
Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025)

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-221 | N/A | FDA Label - Jeuveau | F, NSW, R, P, MU |
| PTX-222 | REV_DAX-03325146 | FDA Label - Jeuveau (Rev. 2/2019) | F, NSW, R, P, MU |
| PTX-223 | N/A | FDA Label - Myobloc | F, NSW, R, P |
| PTX-224 | N/A | FDA Label - Xeomin | F, NSW, R, P, MU |
| PTX-225 | REV_DAX-03325847 | FDA Label - Xeomin (2010) | F, NSW, R, P |
| PTX-226 | REV_DAX-03325859 | FDA Label - Xeomin (Rev. 5/2019) | F, NSW, R, P |
| PTX-227 | REV_DAX-03325904 | FDA Label - Xeomin (Rev. 9/2023) | F, NSW, R, P, MU |
| PTX-228 | REV_DAX-03324013 | FDA Label (PDR) - Botox (Rev. 8/2010) | F, NSW, R, P |
| PTX-229 | REV_DAX-03324759 | FDA Label (PDR) - Dysport (Rev. 5/2009) | F, NSW, R, P |
| PTX-230 | ALGN-1845217 | Rupp, et. al., Poster: "A Cell-Penetrating Peptide CPP Did Not Decrease 150-kDa BoNT/A Toxin Adsorption to Surfaces or Increase Toxin Potency or Duration in a Prototype Formulation" | H, AU, F, FRCP 30(b)(6), I, E, L, P, R |
| PTX-231 | ALGN-1844840 | [redacted] | H, AU, F, FRCP 30(b)(6), I, E, L, P, R |
| PTX-232 | ALGN-1844877 | BIO-20-1288, "Evaluation of Cell-penetrating Peptide Effects on BoNT/A Potency in the Mouse Digit Abduction Score (DAS) Assay" | H, AU, F, FRCP 30(b)(6), I, E, L, P, R |
| PTX-233 | ALGN-1845670 | [redacted] | H, AU, F, FRCP 30(b)(6), NSW, R |
| PTX-234 | ALGN-1845588 | [redacted] | H, AU, F, FRCP 30(b)(6), NSW |
| PTX-235 | ALGN-1845610 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-236 | ALGN-0048173 | Allergan Presentation - "DS2 Program Overview" (April 6, 2015) | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-237 | ALGN-0032081 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-238 | ALGN-1362172 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-239 | ALGN-0069510 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-240 | ALGN-0070354 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-241 | ALGN-1844413 | Allergan Presentation - "LA Toxins & Conjoint" (Nov 2020) | H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-242 | ALGN-1844310 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-243 | ALGN-1843788 | [redacted] | H, AU, F, FRCP 30(b)(6), P, NSW, R |
| PTX-244 | ALGN-1844023 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-245 | ALGN-1841463 | from | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-246 | ALGN-0065104 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-247 | ALGN-1821482 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-248 | ALGN-0059041 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-249 | ALGN-0066908 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW, MIL |
| PTX-250 | ALGN-0059846 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-251 | ALGN-0059723 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-252 | ALGN-0066681 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-253 | ALGN-0056308 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-254 | ALGN-1825926 | [redacted] | H, AU, F, P, NSW, R |
| PTX-255 | ALGN-0069096 | Email chain, top message from Chad Lindemann 12/14/20 HIGHLY CONFIDENTIAL | H, AU, F, P, NSW, R |
| PTX-256 | ALGN-1845266 | [redacted] | H, AU, F, P, NSW, R |
| PTX-257 | ALGN-1837368 | Email chain, top message from Ben Marzouk 8/3/20 HIGHLY CONFIDENTIAL | H, AU, F, P, NSW, R |
| PTX-258 | ALGN-0069679 | Email from Jason Paik HIGHLY CONFIDENTIAL | H, AU, F, P, NSW, R |
| PTX-259 | ALGN-1845430 | Internal training document HIGHLY CONFIDENTIAL | H, AU, F, P, NSW |
| PTX-260 | ALGN-0069887 | Email from Sarah Nguyen 4/7/21 HIGHLY CONFIDENTIAL includes attachment also marked as Lindemann Exhibit 21 | H, AU, F, P, NSW, R, N |
| PTX-261 | ALGN-0067228 | Give Her Lips More BDM $100 PTD through Oct 07, 2018 | H, AU, F, P, NSW |
| PTX-262 | ALGN-1837433 | Botox one-pager | H, AU, F, P, NSW, N |

| *Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*<br>Case No. 21-1411-RGA (D. Del.)<br>Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025) | | | |
|---|---|---|---|
| **PTX No.** | **Bates Beg** | **Description** | **Objection** |
| PTX-263 | ALGN-1825251 | Allergan Presentation - "Facial Injectables ATU: Neurotoxins, Final Report" | H, AU, F, P, NSW |
| PTX-264 | ALGN-0068368 | [redacted] | H, AU, F, P, NSW, R |
| PTX-265 | ALGN-0061184 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-266 | ALGN-0069984 | Email - Jason Paik to Chad Lindemann (May 28, 2021) | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-267 | ALGN-0070396 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-268 | ALGN-0068517 | [redacted] | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-269 | ALGN-1845835 | File name: "ALGN-1845835.pdf" | R, H, AU, F, FRCP 30(b)(6), P, NSW |
| PTX-270 | N/A | Revance Presentation - "Drug Substance Manufacturing Internal Audit" | R, P, F, FRCP 30(b)(6), N |
| PTX-271 | ALGN-1835967 | [redacted] | H, AU, F, P, NSW, R, E, L |
| PTX-272 | ALGN-1363447 | [redacted] | H, AU, F, P, NSW, R |
| PTX-273 | ALGN-1846053 | [redacted] | H, AU, F, P, NSW, R |
| PTX-274 | N/A | Allergan is now part of AbbVie, AbbVie, available at https://www.abbvie.com/allergan.html | H, AU, F, P, NSW, R |
| PTX-275 | ALGN-1825805 | [redacted] | H, AU, F, P, NSW, R, E, L |
| PTX-276 | ALGN-1834948 | [redacted] | H, AU, F, P, NSW, R, E, L |
| PTX-277 | ALGN-1834221 | [redacted] | H, AU, F, P, NSW, R, E, L |
| PTX-278 | ALGN-1824241 | [redacted] | H, AU, F, P, NSW, R, E, L |
| PTX-279 | N/A | Celebrating 20 Years of BOTOX® Cosmetic, Botox Cosmetic, available at https://www.botoxcosmetic.com/what-is-botox-cosmetic/celebrating-20-years-of-botox-cosmetic | H, AU, F, P, NSW, R |
| PTX-280 | ALGN-1846298 | File name: "ALGN-1846298-HIGHLY CONFIDENTIAL.xlsx" | H, AU, F, P, NSW, R |
| PTX-281 | ALGN-0056291 | File name: "Workshop Summary Slides and Actions.pptx" | H, AU, F, P, NSW, R |
| PTX-282 | N/A | How Botox Cosmetic Works, Botox Cosmetic, available at https://www.botoxcosmetic.com/whatis-botox-cosmetic/how-botox-cosmetic-works | H, AU, F, P, NSW, R |
| PTX-283 | N/A | U.S. FDA Approves Botox (onabotulinumtoxinA) for the Treatment of Lower Limb Spasticity in Adults, PR Newswire, available at https://www.prnewswire.com/news-releases/us-fda-approves- botox-onabotulinumtoxina-for-the-treatment-of-lower-limb-spasticity-in-adults-300208358.html | H, AU, F, P, NSW, R |
| PTX-284 | REV_DAX-02606663 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-285 | REV_DAX-02606670 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-286 | REV_DAX-02606677 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-287 | REV_DAX-02606650 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-288 | REV_DAX-02341994 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-289 | REV_DAX-02342001 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-290 | REV_DAX-02342024 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-291 | REV_DAX-02367278 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-292 | REV_DAX-02352573 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-293 | REV_DAX-02515705 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-294 | REV_DAX-02154906 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-295 | REV_DAX-02229076 | Revance Presentation - [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-296 | REV_DAX-02516136 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-297 | REV_DAX-02675392 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-298 | REV_DAX-02676150 | [redacted] | H, F, P, R, FRCP 30(b)(6) |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-299 | REV_DAX-02687206 | Revance Presentation - "Launch Planning" | H, F, P, R, FRCP 30(b)(6) |
| PTX-300 | REV_DAX-02731117 | Revance Presentation - "Daxxify Pulse Survey Kx Advisors" (Aug. 14 2023) | H, F, P, R, DB, FRCP 30(b)(6) |
| PTX-301 | REV_DAX-02691642 | Revance Presentation - [redacted] | H, F, P, R, DB, FRCP 30(b)(6) |
| PTX-302 | REV_DAX-02692609 | Revance Presentation - [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-303 | REV_DAX-02687035 | Revance Presentation [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-304 | REV_DAX-02731113 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-305 | REV_DAX-02254779 | [redacted] | H, F, P, R, E, L |
| PTX-306 | REV_DAX-02668927 | [redacted] | R, P |
| PTX-307 | REV_DAX-02674686 | Revance Presentation - [redacted] | R, P, H |
| PTX-308 | N/A | Video screenshots see REV_DAX-02105298 | AU, R, P, H |
| PTX-309 | REV_DAX-02677523 | [redacted] | AU, R, P, F, NSW, H |
| PTX-310 | REV_DAX-02178383 | [redacted] | H, F, P, R, E, L |
| PTX-311 | REV_DAX-02178384 | [redacted] | H, F, P, R, E, L |
| PTX-312 | REV_DAX-02193754 | [redacted] | H, F, P, R, E, L |
| PTX-313 | REV_DAX-02574573 | [redacted] | H, F, P, R, AU |
| PTX-314 | REV_DAX-02710793 | [redacted] | H, F, P, R, E, L |
| PTX-315 | REV_DAX-02663830 | File name: "_DX00031_DAXXIFY FDA FAQ for Sales Reps_09022022 V5.pdf" | H, F, P, R, E, L |
| PTX-316 | REV_DAX-02578434 | Revance Presentation - "DaxibotulinumtoxinA for Injection: A Novel Formulation" | H, F, P, R, E, L |
| PTX-317 | REV_DAX-00003437 | [redacted] RTP004 [redacted] | H, F, P, R, E, L, I |
| PTX-318 | REV_DAX-00003458 | [redacted] RTP004 [redacted] | H, F, P, R, E, L, I |
| PTX-319 | REV_DAX-02271097 | [redacted] | H, F, P, R, E, L, I |
| PTX-320 | REV_DAX-02161220 | [redacted] | H, F, P, R, E, L, I |
| PTX-321 | AJI_DAX-00009948 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-322 | REV_DAX-02228006 | [redacted] | H, F, P, R, E, L, I, FRCP 30(b)(6) |
| PTX-323 | AJI_DAX-00006827 | [redacted] | H, F, P, R, E, L, I, AU, FRCP 30(b)(6) |
| PTX-324 | AJI_DAX-00000926 | [redacted] | H, F, P, R, E, L, I, AU, FRCP 30(b)(6) |
| PTX-325 | AJI_DAX-00000972 | [redacted] | H, F, P, R, E, L, I, AU, FRCP 30(b)(6) |
| PTX-326 | AJI_DAX-00000979 | [redacted] | H, F, P, R, E, L, I, AU, FRCP 30(b)(6) |
| PTX-327 | AJI_DAX-00010000 | [redacted] | H, F, P, R, E, L, AU, FRCP 30(b)(6) |
| PTX-328 | AJI_DAX-00077848 | [redacted] | H, F, P, R, E, L, AU, FRCP 30(b)(6) |
| PTX-329 | REV_DAX-02350565 | [redacted] | H, F, P, R, E, L, AU |
| PTX-330 | REV_DAX-02350666 | [redacted] | H, F, P, R, E, L, AU |
| PTX-331 | REV_DAX-02090547 | [redacted] | H, F, P, R, E, L, AU |
| PTX-332 | REV_DAX-02693308 | [redacted] | H, F, P, R |
| PTX-333 | REV_DAX-02672691 | [redacted] | H, F, P, R, I, FRCP 30(b)(6) |
| PTX-334 | REV_DAX-02687135 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-335 | REV_DAX-02675048 | Revance Presentation - [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-336 | REV_DAX-02692048 | [redacted] | H, F, P, R, AU, FRCP 30(b)(6) |
| PTX-337 | REV_DAX-02687576 | Revance Presentation [redacted] | H, F, P, R, FRCP 30(b)(6) |

*Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*
Case No. 21-1411-RGA (D. Del.)
Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025)

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-338 | REV_DAX-02691755 | Revance Presentation - [redacted] | H, F, P, R, AU, FRCP 30(b)(6) |
| PTX-339 | REV_DAX-02691609 | Revance Presentation - [redacted] | H, F, P, R, AU, FRCP 30(b)(6) |
| PTX-340 | REV_DAX-02687837 | Revance Presentation - [redacted] | H, F, P, R, AU, FRCP 30(b)(6) |
| PTX-341 | REV_DAX-02674293 | [redacted] | H, F, P, R, AU, FRCP 30(b)(6) |
| PTX-342 | REV_DAX-02672832 | Revance Presentation - "RT002[redacted] | H, F, P, R, AU, FRCP 30(b)(6) |
| PTX-343 | REV_DAX-02673701 | Revance Presentation - [redacted] | H, F, P, R, AU, DB, FRCP 30(b)(6) |
| PTX-344 | REV_DAX-02673436 | Revance Presentation - "RT002[redacted] | H, F, P, R, AU, DB, FRCP 30(b)(6) |
| PTX-345 | REV_DAX-02672700 | Revance Presentation - [redacted] | H, F, P, R, AU, DB, FRCP 30(b)(6) |
| PTX-346 | REV_DAX-02665350 | Revance Presentation [redacted] | F, P, R |
| PTX-347 | REV_DAX-02673078 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-348 | REV_DAX-02674052 | [redacted] | H, F, P, R, FRCP 30(b)(6) |
| PTX-349 | N/A | [redacted] | F, P, R |
| PTX-350 | REV_DAX-02133980 | [redacted] | F, I, P |
| PTX-351 | REV_DAX-02135570 | [redacted] | F, I, P |
| PTX-352 | REV_DAX-02135755 | [redacted] | F, I, P |
| PTX-353 | N/A | [redacted] | AU, B, F, H, P |
| PTX-354 | N/A | [redacted] | AU, B, F, H, P |
| PTX-355 | N/A | [redacted] | AU, B, BS, F, H, I, P, R |
| PTX-356 | REV_DAX-02199221 | [redacted] | BS, F, I, P, R |
| PTX-357 | N/A | [redacted] | AU, B, F, I, P, R |
| PTX-358 | REV_DAX-02569593 | [redacted] RTP004" [redacted] | F, P, R |
| PTX-359 | REV_DAX-02691845 | [redacted] "RTP004[redacted] | F, P, R |
| PTX-360 | N/A | U.S. Application No. 17/322,901 - Information Disclosure Statement | F, H, I, P, R |
| PTX-361 | N/A | [redacted] | AU, B, BS, F, H, I, P, R |
| PTX-362 | N/A | [redacted] | BS, F, I, R |
| PTX-363 | REV_DAX-02559777 | [redacted] | BS, F, MIL, P, R |
| PTX-364 | REV_DAX-02200285 | [redacted] | BS, F, I, P, R |
| PTX-365 | REV_DAX-02731115 | [redacted] | F, H, P, R |
| PTX-366 | REV_DAX-02684360 | [redacted] | F, P, R |
| PTX-367 | REV_DAX-02664482 | [redacted] | F, I, P, R |
| PTX-368 | REV_DAX-02684125 | Revance Presentation - [redacted] | F, P, R |
| PTX-369 | REV_DAX-02682257 | Revance Presentation [redacted] | F, P, R |
| PTX-370 | REV_DAX-02680896 | Revance Presentation - [redacted] | F, P, R |
| PTX-371 | REV_DAX-02681230 | Revance Presentation [redacted] | F, P, R |
| PTX-372 | REV_DAX-02685495 | Revance Presentation [redacted] | F, P, R |
| PTX-373 | REV_DAX-02672548 | Revance Presentation - "Revance CI Program: October 2021 " | F, P, R |
| PTX-374 | REV_DAX-02686248 | Revance Presentation - "Forecast" | F, P, R |
| PTX-375 | REV_DAX-02681726 | Revance Presentation - [redacted] | F, P, R |
| PTX-376 | N/A | Revance Presentation - "Revance 2018 Investor Day" | AU, B, F, I, P, R |
| PTX-377 | N/A | Revance Presentation - "2024 JPMorgan Healthcare Conference supplemental presentation" | AU, B, F, I, P, R |
| PTX-378 | N/A | Revance Therapeutics, Inc., NASDAQ GM:RVNC FQ2 2023 Earnings Call Transcript | AU, B, F, H, I, P, R |
| PTX-379 | REV_DAX-02674260 | [redacted] | F, P, R |
| PTX-380 | REV_DAX-02620248 | Revance Presentation - [redacted] RT002[redacted] | BS, F, H, I, P, R |
| PTX-381 | REV_DAX-02615754 | Revance Presentation - "Regulatory Affairs" | BS, F, H, I, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-382 | REV_DAX-02254906 | [redacted] | BS, F, H, I, P, R |
| PTX-383 | REV_DAX-02106127 | [redacted] | BS, F, H, I, P, R |
| PTX-384 | REV_DAX-02607406 | Revance Presentation - [redacted] | BS, F, H, I, P, R |
| PTX-385 | REV_DAX-02254060 | [redacted] | BS, F, H, I, P, R |
| PTX-386 | REV_DAX-02640233 | [redacted] | F, P, R |
| PTX-387 | REV_DAX-02197411 | [redacted] | F, P, R |
| PTX-388 | REV_DAX-02597508 | [redacted] | F, P, R |
| PTX-389 | N/A | Aesthetics Pipeline, Revance, available at https://www.revance.com/aesthetics/ | AU, BS, B, F, H, I, P, R |
| PTX-390 | REV_DAX-00005126 | [redacted] | BS, F, H, I, NSW, P, R |
| PTX-391 | AJI_DAX-00002217 | [redacted] | BS, F, H, I, NSW, P, R |
| PTX-392 | REV_DAX-02139243 | [redacted] | F, NSW, P, R |
| PTX-393 | N/A | Daxxify, available at https://www.daxxify.com/ | AU, B, F, H, I, NSW, P, R |
| PTX-394 | N/A | Daxxify, Revance Aesthetics, available at https://daxxify.revanceaesthetics.com/?utm_campaign=daxxify-hcpwebsite&utm_medium=referral&utm_source=ra-home-hero&utm_content=cta-exploredaxxify | AU, B, F, H, I, NSW, P, R |
| PTX-395 | REV_DAX-02675693 | [redacted] | F, NSW, P, R |
| PTX-396 | REV_DAX-02105314 | [redacted] | F, NSW, P, R |
| PTX-397 | REV_DAX-02665466 | [redacted] | F, NSW, P, R |
| PTX-398 | REV_DAX-02105482 | [redacted] | F, NSW, P, R |
| PTX-399 | REV_DAX-02667351 | [redacted] | F, H, NSW, P, R |
| PTX-400 | N/A | Frequently Asked Questions, Daxxify, available at https://daxxify.com/faq | AU, B, F, H, I, NSW, P, R |
| PTX-401 | REV_DAX-02342924 | [redacted] | F, I, NSW, P, R |
| PTX-402 | ALGN-1847813 | Press Release - "DAXXIFY Becomes First Facial Injectable to be Named to TIME's Best Inventions" (Oct. 26, 2023) | AU, H, F, NSW, P, R |
| PTX-403 | REV_DAX-02090796 | [redacted] | BS, F, I, NSW, P, R |
| PTX-404 | REV_DAX-00005205 | [redacted] | BS, F, I, NSW, P, R |
| PTX-405 | REV_DAX-00005268 | [redacted] | BS, F, I, NSW, P, R |
| PTX-406 | REV_DAX-02090817 | [redacted] | BS, F, I, NSW, P, R |
| PTX-407 | REV_DAX-02579414 | [redacted] | F, I, NSW, P, R |
| PTX-408 | REV_DAX-02753334 | [redacted] | F, I, NSW, P, R |
| PTX-409 | REV_DAX-02675480 | Revance Presentation - "Board of Directors Meetig Background" (Dec. 6, 2019) | F, NSW, P, R |
| PTX-410 | REV_DAX-02673284 | Revance Presentation [redacted] | F, NSW, P, R |
| PTX-411 | REV_DAX-02664778 | Revance Presentation - "RT002[redacted] | F, H, NSW, P, R |
| PTX-412 | ALGN-1844839 | Nino et al., Abstract: "A Cell Penetrating Peptide (CPP), Synthesized to Match the Sequence of Revance RTP004, Does Not Decrease KD BoNT/A Toxin Absorption to Surfaces" | F, H, P, R |
| PTX-413 | REV_DAX-02730584 | Market Insights, "Aesthetic Injectables United States" (Nov. 28, 2022) | AU, F, H, P, R |
| PTX-414 | ALGN-1845938 | WHO Study Group on Cell Substrates for Production of Biologicals, 11-12 June 2007 ("WHO Study Group 2007") | AU, F, H, P, R |
| PTX-415 | ALGN-1847902 | Effect of Benzonase Endonuclease Addition to Purification of Sabin Polio Virus Type 3 | AU, F, H, P, R |
| PTX-416 | ALGN-1847852 | Millipore Sigma, Benzonase® Endonuclease (2023) ("Millipore Brochure") | AU, F, H, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-417 | N/A | CDC, "Questions About Single Dose - Single Use Vials" | AU, F, H, P, R |
| PTX-418 | ALGN-1848268 | IPR2021-01203, Declaration of Andreas Rummel, Ph.D. (June 1, 2021) | AU, F, H, P, R |
| PTX-419 | ALGN-1848168 | IPR2021-01203, Petition for Inter Partes Review of U.S. Patent No. 9,480,731 (July 1, 2021) | AU, F, H, P, R |
| PTX-420 | ALGN-1848374 | Rupp et al., Abstract: "A Cell-penetrating Peptide CPP Did Not Decrease 150 kDa BoNT/a Toxin Adsorption to Surfaces or Increase Toxin Potency or Duration in a Prototype Formulation," (2021) ("Rupp 2021") | AU, F, H, P, R |
| PTX-421 | ALGN-1848376 | U.S. Publication No. 2010/0168023 (Ruegg et al.) | F, H, P, R |
| PTX-422 | REV_DAX-00000587 | [redacted] | F, P, R |
| PTX-423 | REV_DAX-00000737 | [redacted] | F, H, P, R |
| PTX-424 | N/A | Bertucci et al., "DaxibotulinumtoxinA for Injection has a prolonged duration of response in the treatment of glabellar lines: Pooled data from two multicenter, randomized, double-blind, placebo-controlled, phase 3 studies (SAKURA 1 and SAKURA 2)" (Nov. 2019) ("Bertucci 2019") | F, P, R |
| PTX-425 | N/A | Weisemann et al., Poster "Novel Peptide Excipient RTP004 Enhances the Binding of Botulinum Neurotoxin A Cell Binding Domain Hc to Rat Brain Synaptosomes," P1.58 | F, H, P, R |
| PTX-426 | REV_DAX-02545056 | Weisemann et al., Abstract: "Novel Peptide Excipient RTP004 Enhances the Binding of Botulinum Neurotoxin A Cell Binding Domain Hc to Rat Brain Synaptosomes" ("Weisemann") | F, H, P, R |
| PTX-427 | N/A | Dowdy, S. et al. "A technology evaluation of the atypical use of a CPP-containing peptide in the formulation and performance of a clinical botulinum toxin product," Expert Opinion On Drug Delivery, 20(9):1157–1166 (2023) ("Dowdy 2023") | F, P, R |
| PTX-428 | REV_DAX-02170020 | Dissertation Entitled Characterization and Stabilization of Clostridium Botulinum Neurotoxin for Medical Use, Michael C. Goodnough | F, P, R |
| PTX-429 | REV_DAX-02169202 | DasGupta et al., "Purification and Amino Acid Composition of Type A Botulinum Neurotoxin," Toxicon 22(3):415-24 (1984) | F, P, R |
| PTX-430 | ALGN-1847721 | World Health Organization, "WHO Infection Control Guidelines for Transmissible Spongiform Encephalopathies" (1999) ("WHO Guidelines 1999") | AU, F, H, P, R |
| PTX-431 | REV_DAX-02169854 | U.S. Department of Health and Human Services, Food and Drug Administration, "Guidance for Industry: Revised Precautionary Measures to Reduce the Possible Risk of Transmission of Creutzfeldt-Jakob Disease (CJD) and New Variant Creutzfeldt-Jakob Disease (nvCJD) by Blood and Blood Products") ("FDA Guidance 1999") | F, P, R |
| PTX-432 | REV_DAX-02172826 | U.S. Patent Application Publication No. 2005/0238669 ("Xiang '669") | F, P, R |
| PTX-433 | ALGN-1846935 | Prosecution History of U.S. Application No. 16/700,728 ("Revance's '728 application prosecution history") | F, H, P, R |
| PTX-434 | REV_DAX-03296407 | Asher, "Prions, Mayhem and Management" (2002) ("Prions Mayhem") | F, P, R |
| PTX-435 | REV_DAX-03296144 | Q5A Viral Safety Evaluation of Biotechnology Products Derived from Cell Lines of Human or Animal Origin, 63 Fed. Reg. 51075 (Sept. 24, 1998) ("FDA Guidance 1998") | F, P, R |
| PTX-436 | REV_DAX-02173736 | WO/2001058472 ("Hunt '472") | F, P, R |
| PTX-437 | ALGN-1847206 | U.S. Patent No. 9,469,849 (Ruegg) | F, H, P, R |
| PTX-438 | ALGN-1846666 | U.S. Patent Application No. 10/672,876 ("Donovan 876") | F, H, P, R |
| PTX-439 | ALGN-1847910 | Lovatt, Application of Quantitative PCR in the Biosafety and Genetic Stability Assessment of Biotechnology Products, 82 Rev. Mol. Biotechnol. 279 (2002)) ("Lovatt 2002") | AU, F, H, P, R |
| PTX-440 | N/A | Piras et al., "Distribution of AAV8 particles in cell lysates and culture emdia changes with time and is dependent on the recombinant vector" (2016) | AU, F, H, P, R |
| PTX-441 | N/A | Piras et al., "Distribution of AAV8 particles in cell lysates and culture emdia changes with time and is dependent on the recombinant vector" (2016), Supplemental Data | AU, F, H, P, R |
| PTX-442 | REV_DAX-03325984 | Davis & Dubos, "The Binding of Fatty Acids by Serum Albumin, a Protective Growth Factor in Bacteriological Media," J. Exp. Med., Vol. 86, No. 3, pp 215–28 (1947)) ("Davis 1947") | F, P, R |
| PTX-443 | N/A | U.S. Publication No. 2021/0002384 (Meagher et al.) | F, P, R |
| PTX-444 | REV_DAX-03323122 | Solish et al., "Overview of DaxibotulinumtoxinA for Injections: A Novel Formulation of Botulinum Toxin Type A" (Oct. 13, 2021) ("Solish 2021") | F, P, R |

| *Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*<br>Case No. 21-1411-RGA (D. Del.)<br>Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025) | | | |
|---|---|---|---|
| **PTX No.** | **Bates Beg** | **Description** | **Objection** |
| PTX-445 | REV_DAX-03323089 | Batista et al., Abstract: "A Cell Penetrating Peptide Enhances Membrane Binding of Botulinum Neurotoxin Type A and Increases SNAP-25 Cleavage" (2024) ("Batista 2024") | F, P, R |
| PTX-446 | ALGN-1848246 | U.S. Application No. 13/141,935, Declaration of Curtis Ruegg (July 3, 2017) | F, H, I, P, R |
| PTX-447 | REV_DAX-01071813 | Stone, H. et al., "Characterization of diffusion and duration of action of a new botulinum toxin type A formulation," Toxicon, 58:159–167 (2011) ("Stone 2011") | F, P, R |
| PTX-448 | N/A | Stone et al., "Characterization of diffusion and duration of action of a new botulinum toxin type a formulation," TOXICION 58:159-67 (2011) ("Stone 2011") | F, P, R |
| PTX-449 | REV_DAX-02730955 | Market Insights, "Therapeutic Botulinum Toxin Global" (Sept. 6, 2022) | F, H, P, R |
| PTX-450 | REV_DAX-02730679 | Aug. 28, 2019 Kaiser Assoc. Presentation "Understanding the Value of Daxi's Therapeutic Franchise | F, H, P, R |
| PTX-451 | REV_DAX-03320896 | Goodnough et al., "Stabilization of Botulinum Toxin Type A during Lyophilization" (July 1992) ("Goodnough 1992") | F, H, P, R |
| PTX-452 | ALGN-1363084 | [redacted] | AU, F, H, P, R |
| PTX-453 | REV_DAX-02172190 | U.S. Patent No. 7,452,697 (Luo et al.) | F, H, P, R |
| PTX-454 | N/A | Anti-aging market, Statista, available at https://www.statista.com/study/23679/anti-aging-marketstatista-dossier/ | AU, F, H, P, R |
| PTX-455 | ALGN-1846589 | Anupkumar, Rao & Satpathy, "Microbial Fouling Of An Anion Exchange Resin," Curr. Sci., Vol. 80, No. 9, pp. 1104-07 (2001) ("Anupkumar 2001") | AU, F, H, NSW, P, R |
| PTX-456 | REV_DAX-03323322 | Aoki et al., Preclinical Update on Botox botulinum toxin type A-purified neurotoxin complex relative to other botulinum neurotoxin preparation, Eu. J. Neurol. 64:s3-s10 1999 ("Aoki 1999") | F, H, NSW, P, R |
| PTX-457 | ALGN-1846593 | Aviv & Leder, "Purification of Biologically Active Globin Messenger RNA by Chromatography on Oligothymidylic Acid-Cellulose," Proc. Nat. Acad. Sci., Vol. 69, No. 6, pp. 1408-12 (1972) ("Aviv 1972") | AU, F, H, NSW, P, R |
| PTX-458 | ALGN-1846238 | Barclays_RevanceTherapeuticsInc3Q22PrepFocusonAestheticsmacroviewsandphasedlaunchofDAXXIFY_Nov_07,_2022.pdf | AU, F, H, NSW, P, R |
| PTX-459 | ALGN-1846248 | Barclays_RevanceTherapeuticsIncViewsPostCallwMgmt-StillLikeTheStockDespiteRisk-RewardBeingLessCompelling_Feb_28,_2023.pdf | AU, F, H, NSW, P, R |
| PTX-460 | ALGN-1846598 | Bernstein, et al., "Retinal Tubulin Binds Macular Carotenoids," Invest. Ophthalmol. Vis. Sci., Vol. 38, No. 1, pp. 167-75 (1997) ("Bernstein 1997") | AU, F, H, NSW, P, R |
| PTX-461 | ALGN-1846033 | Bernstein, et al., Global Analysis of Escherichia coli RNA Degradosome Function Using DNA Microarrays, 101(9) Proc. Natl. Sci. 2758 2004 | AU, F, H, NSW, P, R |
| PTX-462 | N/A | Blepharospasm, Cleveland Clinic, available at https://my.clevelandclinic.org/health/diseases/21546-blepharospasm | AU, B, F, H, NSW, P, R |
| PTX-463 | ALGN-1846607 | Boor, et al., "Effects of Salts and Colloids on Potency of Botulinum Toxin, Potency Botulinum Toxin," Proc. Soc. Exp. Biol. Med., pp 270-72 (1955) ("Boor 1955") | AU, F, H, NSW, P, R |
| PTX-464 | ALGN-1846616 | Bovine Calf Serum Certification of Suitability of Monographs of the European Pharmacopoeia, Cert No. RO-CEP 2000-288-REV 01, Council of Europe European Directorate for The Quality Of Medicines ("Certification of Suitability for Bovine Calf Serum") | AU, F, H, NSW, P, R |
| PTX-465 | REV_DAX-03324941 | Broide et al., The rat Digital Abductor Score DAS assay: A physiological model for assessing botulinum neurotoxin induced skeletal muscle paralysis, TOXICON 71:18-24 2013 ("Broide 2013") | F, H, NSW, P, R |
| PTX-466 | ALGN-1848103 | Byrne et al., Purification, Potency, and Efficacy of the Botulinum Neurotoxin Type A Binding Domain from Pichia pastoris as a Recombinant Vaccine Candidate, Infection and Immunity 6610:4817 4822 (Oct. 1998) ("Byrne") | AU, F, H, NSW, P, R |
| PTX-467 | ALGN-1846610 | Cawood, Potter & Dickinson, "An Evaluation of Coomassie Brilliant Blue as a Stain for Quantitative Microdensitometry of Protein in Section," J. Histochem. Cytochem., Vol. 26, No. 8, pp. 645-50. (1978) ("Cawood 1978") | AU, F, H, NSW, P, R |
| PTX-468 | ALGN-1846618 | China Patent No. CN1215084A (English translation available at: https://patents.google.com/patent/CN1215084A/en?oq=CN1215084A+) | AU, F, H, NSW, P, R |
| PTX-469 | ALGN-1846624 | China Patent No. CN1215084A (Original) | AU, F, H, NSW, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-470 | ALGN-1846632 | Collins & East, "Phylogeny and Taxonomy of the Food-Borne Pathogen Clostridium botulinum and its Neurotoxins," J. Appl. Microbiol., Vol. 84, No. 1, pp. 5-17 (1998) ("Collins 1998") | AU, F, H, NSW, P, R |
| PTX-471 | ALGN-1846714 | Committee for Medicinal Products for Human Use, Guideline on Immunogenicity Assessment of Biotechnology-Derived Therapeutic Proteins (2007) ("EMA Guidelines 2007") | F, H, P, R |
| PTX-472 | ALGN-1848109 | Cornet et al., Optimization of the rat digit abduction score DAS assay: Evaluation of botulinum neurotoxin activity in the gastrocnemius lateralis, peronei, and extensor digitorum longus, ToxiconX: 6 1000292020 ("Cornet") | AU, F, H, NSW, P, R |
| PTX-473 | ALGN-1848090 | Cromwell, et al., "Protein Aggregation and Bioprocessing," AAPS J., Vol. 8, No, 3, pp. E572-79 (2006) ("Cromwell 2006") | F, H, P |
| PTX-474 | N/A | Crow's Feet (Lateral Canthal Lines), Cleveland Clinic, available at https://my.clevelandclinic.org/health/diseases/24586-crows-feet | AU, F, H, BS, NSW, P, R |
| PTX-475 | ALGN-1846645 | DasGupta, "Activation of Clostridium Botulinum Type B Toxin by an Endogenous Enzyme," J. Bacteriol., Vol. 108, No. 3, pp. 1051-57 (1971) ("DasGupta 1971") | AU, F, H, NSW, P, R |
| PTX-476 | ALGN-1846652 | De Jongh, Schwartzkof & Howden, "Clostridium Botulinum Type D Neurotoxin: Purification and Detection," Vol. 27, No. 2, pp. 221-28 (1989) ("de Jongh 1989") | AU, F, H, NSW, P, R |
| PTX-477 | ALGN-1846405 | Demonstration of Comparability of Human Biological Products, Including Therapeutic Biotechnology-derived Products (April 1996), accessed at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/demonstration-comparability-human-biological-products-including-therapeutic-biotechnology-derived | F, H, NSW, P, R |
| PTX-478 | N/A | Ellis, C. E., and M. T. Hartsough, "Nonclinical Considerations for Biopharmaceutical Comparability Assessment," Translational Medicine. CRC Press, 2021. 91-98 | AU, H, F, NSW, P, R |
| PTX-479 | N/A | FDA approves DysportTM for therapeutic and aesthetic uses, Ipsen, available at https://www.ipsen.com/websites/IPSENCOM-PROD/wpcontent/uploads/2009/04/08092852/20090430___dysport_usa_10.pdf | AU, H, F, NSW, P, R |
| PTX-480 | ALGN-1846734 | FDA Guidance for Industry Q6B Specifications: Test Procedures and Acceptance Criteria for Biotechnological/Biological Products (1999) ("FDA Q6B") | H, F, NSW, P, R |
| PTX-481 | ALGN-1846336 | FDA Guidance for Industry, "Process Validation: General Principles and Practices" (Jan. 2011) | H, F, NSW, P, R |
| PTX-482 | ALGN-1846358 | FDA Guidance for Industry, "Q6B Specifications: Test Procedures and Acceptance Criteria for Biotechnological/Biological Products" (Aug. 1999) | H, F, NSW, P, R |
| PTX-483 | ALGN-1846416 | FDA, Guidance For Industry, Chemistry, Manufacturing, and Controls Changes to an Approved Application: Certain Biological Products (June 2021). Accessed at https://www.fda.gov/media/109615/download) | H, F, NSW, P, R |
| PTX-484 | ALGN-1846465 | FDA, Guidance For Industry, Comparability Protocols for Postapproval Changes to the Chemistry, Manufacturing, and Controls Information in an NDA, ANDA, or BLA (October 2022). Accessed at https://www.fda.gov/media/162263/download) | H, F, NSW, P, R |
| PTX-485 | REV_DAX-03339952 | File name: "L-Histidine hydrochloride hydrate.pdf" | F, P, R |
| PTX-486 | ALGN-1846263 | GuggenheimSecurities,LLC_RVNC2QCallQuellsConcernsAboutForm483WeExpecttheNextCommunicationfromMgmtWillFinallyMarkDaxiApproval_Aug_10,_2022.pdf | AU, F, H, NSW, P, R |
| PTX-487 | ALGN-1845968 | Guidance for Industry: Characterization and Qualification of Cell Substrates and Other Biological Materials Used in the Production of Viral Vaccines for Infectious Disease Indications, February 2010 ("FDA Guidance 2010") | F, H, NSW, P, R |
| PTX-488 | ALGN-1846761 | Hambleton, "Production, Purification and Toxoiding of Clostridium Botulinum Type A Toxin," in Biomedical Aspects Of Botulism, pp. 247-60 (1981) ("Hambleton 1981") | AU, H, F, NSW, P, R |
| PTX-489 | ALGN-1846382 | Hames, D. and Hooper, N., Biochemistry (3d ed) (2005) | AU, H, F, NSW, P, R |
| PTX-490 | ALGN-1847648 | Hensyl, Stedman's Medical Dictionary (1990) ("Stedman's Medical Dictionary") | AU, H, F, NSW, P, R |
| PTX-491 | ALGN-1846775 | Huse, Bohme & Scholz, "Purification of Antibodies by Affinity Chromatography," J. Biochem. Biophys. Methods," Vol. 51, pp 217–31 (2002) ("Huse 2002") | AU, BS, H, F, NSW, P, R |
| PTX-492 | ALGN-1848400 | ICH Harmonised Tripartite Guideline, Development and Manufacture of Drug Substances (Chemical Entities and Biotechnological/Biological Entities) Q11 (dated May 1, 2012)) | AU, H, F, NSW, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-493 | ALGN-1847842 | ICH Harmonised Tripartite Guideline, Quality of Biotechnology Product: Stability Testing of Biotechnological/Biological Products Q5C (Nov. 30, 1995) | AU, H, F, NSW, P, R |
| PTX-494 | ALGN-1847969 | ICH Q2(R2) Guideline on Validation of Analytical Procedures (Dec.14, 2023) ("ICH Q2(R2)") | F, H, P |
| PTX-495 | ALGN-1846790 | ICH Topic Q 6 B Specifications: Test Procedures and Acceptance Criteria for Biotechnological/Biological Products (1999) ("ICH Q6B") | AU, H, F, NSW, P, R |
| PTX-496 | ALGN-1846807 | Innocente, et al., "Dynamic Surface Properties of the Proteose-Peptone Fraction of Bovine Milk," J. Dairy Sci., Vol. 81, No. 7, pp. 1833-39 (1998) ("Innocente 1998") | AU, H, F, NSW, P, R |
| PTX-497 | REV_DAX-03320985 | Janson & Rydén, Protein Purification, Principles, High Resolution Methods, and Applications (1998) ("Janson 1998") | F, H, P |
| PTX-498 | ALGN-1846054 | Janson, J. & Rydén, L. Eds., Protein Purification, Principles, High Resolution Methods, and Applications, Chapters 1 & 7 2nd Ed. 1998 | F, H, P |
| PTX-499 | ALGN-1846814 | Kang, et al., "Application of Retinol to Human Skin In Vivo Induces Epidermal Hyperplasia and Cellular Retinoid Binding Proteins Characteristic of Retinoic Acid but Without Measurable Retinoic Acid Levels or Irritation," J. Invest. Derm., Vol. 105, No. 4 (1995) ("Kang 1995") | AU, H, F, NSW, P, R |
| PTX-500 | ALGN-1846822 | Kennedy, M. and Krouse, D., "Strategies for improving fermentation medium performance: a review," Journal of Industrial Microbiology & Biotechnology, 23:456–475 (1999) ("Kennedy 1999") | AU, H, F, BS, NSW, P, R |
| PTX-501 | ALGN-1847782 | Kobayashi, et. al., "The Development of Recombinant Human Serum Albumin," Therapeutic Apherises, 1998 ("Kobayashi 1998") | AU, H, F, NSW, P, R |
| PTX-502 | ALGN-1846842 | Kromer, "Glycerine: Demand Strong For Limited Supplies, Reprinted from the Fats and Oils Situation, FOS-238, Economic and Statistical Analysis Division (1967) ("Kromer 1967") | AU, H, F, BS, NSW, P, R |
| PTX-503 | ALGN-1848121 | Kumar et al., "Botulinum Endopeptidase: SAXS Experiments and MD Simulations Reveal Extended Solution Structures That Account for Its Biochemical Properties," J. Phys. Chem. B (June 2020) ("Kumar 2020") | AU, H, F, BS, NSW, P, R |
| PTX-504 | ALGN-1848115 | Kumar et al., "Resolution of sub nanosecond motions in botulinum endopeptidase: An evidence of internal flexibility," Biochimica 1854:321-24 (2015) ("Kumar 2015") | AU, H, F, BS, NSW, P, R |
| PTX-505 | ALGN-1846854 | Lee, Oh & Moon, "Recovery Of Ammonium Sulfate From Fermentation Waste by Electrodialysis," Water Res. Vol. 37, pp. 1091–99 (2003) ("Lee 2003") | AU, H, F, NSW, P, R |
| PTX-506 | N/A | Leonard, Gregory K. and Lauren J. Stiroh, A Practical Guide to Damages, Economic Approaches to Intellectual Property, NERA Economic Consulting (2005) | AU, H, F, |
| PTX-507 | ALGN-1846732 | Letter from Dep't of Human & Health Services, Food & Drug Administration to Manufacturers of Biological Products (April 19, 2000) ("FDA April 2000 Letter") | F, H, P |
| PTX-508 | ALGN-1846863 | Levine, R. et al., "Determination of Carbonyl Content in Oxidatively Modified Proteins," Assay and Repair of Biological Damage, 186:464–478 (1990) ("Levine 1990") | AU, H, F, NSW, P, R |
| PTX-509 | ALGN-1846513 | Li et al., "A survey of FDA Approved Monoclonal Antibodies and Fc-fusion Proteins for Manufacturing Changes and Comparability Assessment" (2023) Pharmaceutical Research, Supplemental Table S2.) | AU, H, F, NSW, P, R |
| PTX-510 | ALGN-1846518 | Li, Z. et al., "A survey of FDA Approved Monoclonal Antibodies and Fc-fusion Proteins for Manufacturing Changes and Comparability Assessment," Pharmaceutical Research, 41(1):13–27 (2023) | AU, H, F, NSW, P, R |
| PTX-511 | ALGN-1847774 | Lide, D.R., "CRC Handbook of Chemistry and Physics, Properties of Amino Acids," 84th ed. 2004, ("CRC Handbook 2004") | AU, H, I, F, NSW, P, R |
| PTX-512 | ALGN-1846878 | Lowenthal & Lamanna, "Factors Affecting The Botulinal Hemagglutination Reaction, and The Relationship Between Hemagglutinating Activity and Toxicity Of Toxin Preparations," Am. J. Hyg., Vol. 54, pp. 342-53 (1951) ("Lowenthal 1951") | AU, H, F, NSW, P, R |
| PTX-513 | ALGN-1848031 | Mahler, et al., "Protein Aggregation: Pathways, Induction Factors and Analysis," J. Pharm. Sci., Vol. 98, No. 9, pp. 2909-34 (2009) ("Mahler 2009") | F, H, P |
| PTX-514 | ALGN-1846890 | Mant & Hodges, High Performance Liquid Chromatography of Peptides and Proteins: Separation, Analysis, and Conformation (1991) ("Mant 1991") | AU, H, F, BS, NSW, P, R |
| PTX-515 | REV_DAX-02671338 | Market Insights, "Aesthetic Injectables United States" (Nov. 9, 2021) | F, H, P |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-516 | ALGN-1847788 | Martin, A., "Physical Pharmacy, Physical Chemistry Principles in the Pharmaceutical Sciences," 4th ed. 1995 ("Martin 1994") | AU, H, F, BS, NSW, P, R |
| PTX-517 | ALGN-1847933 | Merten, et al., Large-Scale Manufacture and Characterization of a Lentiviral Vector Produced for Clinical Ex Vivo Gene Therapy Application, 22 Hum. Gene Ther. 343 (2011)) ("Merten 2011") | AU, H, F, NSW, P, R |
| PTX-518 | ALGN-1846907 | Meyers, Saalmüller & Büttner, "Mutations Abrogating the RNase Activity in Glycoprotein Erns of the Pestivirus Classical Swine Fever Virus Lead to Virus Attenuation," J. Virol., Vol. 73, No. 12, pp. 10224–35 (1999) ("Meyers 1999") | AU, H, F, NSW, P, R |
| PTX-519 | ALGN-1847964 | Millipore Sigma, Bovine Serum Albumin ("Millipore BSA") | F, H, P |
| PTX-520 | REV_DAX-03326124 | Millipore Sigma, Casein Hydrolysate ("Millipore Casein") | H, F, NSW, P, R |
| PTX-521 | ALGN-1847957 | Millipore Sigma, Fetal Bovine Serum ("Millipore FBS") | F, H, P |
| PTX-522 | REV_DAX-03326156 | Millipore Sigma, Human Serum Albumin ("Millipore HSA") | F, H, P |
| PTX-523 | ALGN-1848149 | Montecucco, et al., "Botulinum neurotoxins: revival of an old killer," Cur. Op. Pharm5:274-79 (2005) ("Montecucco 2005") | AU, H, F, NSW, P, R |
| PTX-524 | ALGN-1847947 | Mundle, et al., High-Purity Preparation of HSV-2 Vaccine Candidate ACAM529 Is Immunogenic and Efficacious In Vivo, 8 PLOS One e57224 (2013)) ("Mundle 2013") | AU, H, F, NSW, P, R |
| PTX-525 | ALGN-1848057 | Neagu, et al., "Applications of Tandem Mass Spectrometry (MS/MS) in Protein Analysis for Biomedical Research," Molecules, Vol. 27, No. 8, pp. 1-29 (2022) ("Neagu 2022") | F, H, P |
| PTX-526 | ALGN-1848155 | Pellet et al., "The Light Chain Defines the Duration of Action of Botulinum Toxin Serotype A Subtypes," Am. Soc. Microbio. 92:e00089-18 (2018) ("Pellett 2018") | AU, H, F, NSW, P, R |
| PTX-527 | ALGN-1848002 | Pellett, "Progress in Cell Based Assays for Botulinum Neurotoxin Detection," Curr. Top. Microbiol. Immunol., Vol. 364, pp. 257-85 (2013) ("Pellett 2013") | F, H, P |
| PTX-528 | ALGN-1846922 | Porfírio, et al., "Specific Peptides of Casein Pancreatic Digestion Enhance The Production of Tetanus Toxin," J. of Appl. Microbiol., Vol. 83, pp. 678–84 (1997) ("Porfírio 1997") | AU, H, F, NSW, P, R |
| PTX-529 | ALGN-1846929 | Prato, P., et al., "An Autologous Cell Hyaluronic Acid Graft Technique for Gingival Augmentation: A Case Series," J. Periodontol., pp. 262-67 (2003) ("Prato 2003") | AU, H, F, NSW, P, R |
| PTX-530 | ALGN-1848167 | Pulkoski-Gross et al., Poster: "A Cell Penetrating Peptide Binds Directly to and Enhances Membrane Binding of the Core Toxin of Botulinum Toxin Type A BoNTA," TOXINS Conference (July 27-30, 2022) ("Pulkoski-Gross 2022") | F, H, P |
| PTX-531 | ALGN-1846027 | Redon, et al., Role of mRNA Stability During Genome-Wide Adaptation of Lactococcus lactis to Carbon Starvation, 280(43) J. Biol. Chem. 36380 | AU, H, F NSW, P, R |
| PTX-532 | ALGN-1846758 | Restrictions on the Importation of Ruminants, Meat and Meat Products from Ruminants, and Certain Other Ruminant Products, 63 Fed. Reg. 406 (Jan. 6, 1998) ("FDA Restrictions 1998") | F, H, P |
| PTX-533 | ALGN-1848098 | Roche, et al., "The Antioxidant Properties of Serum Albumin," FEBS Letters, Vol. 582, No. 13, pp. 1783-87 (2008) ("Roche 2008") | F, H, P |
| PTX-534 | ALGN-1846391 | Rowe R., et al., Handbook of Pharmaceutical Excipients (4th ed.) (2003) | AU, H, F, BS, NSW, P, R |
| PTX-535 | REV_DAX-03324955 | Rupp et al., "OnabotulinumtoxinA Displays Greater Biological Activity Compared to IncobotulinumtoxinA, Demonstrating Non Interchangeability in Both In Vitro and In Vivo Assays," Toxins 12:6:393 (2020) ("Rupp 2020") | H, F, NSW, P, R |
| PTX-536 | ALGN-1847232 | Sarramegna, et al., "Optimizing Functional Versus Total Expression of the Human µ-Opioid Receptor in Pichia pastoris," Protein Exp. Purif., Vol. 24, No. 2, pp. 212-20 (2002) ("Sarramegna 2002") | AU, H, F, NSW, P, R |
| PTX-537 | REV_DAX-03321549 | Schantz & Johnson, E, "Preparation and Characterization of Botulinum Toxin Type A for Human Treatment," in Therapy with Botulinum Toxin, pp. 41-49 (1994) ("Schantz 1994") | F, H, P |
| PTX-538 | REV_DAX-02171593 | Schantz & Johnson, E., "Properties and Use of Botulinum Toxin and Other Microbial Neurotoxins in Medicine," Microbiol. Rev., Vol. 56, No. 1, pp. 80 99 (1992) ("Schantz 1992") | F, H, P |
| PTX-539 | REV_DAX-02171620 | Schmidt & Siegel, "Purification of Type E Botulinum Neurotoxin by High-Performance Ion Exchange Chromatography," Anal. Biochem., Vol. 156, pp. 213-19 (1986) ("Schmidt 1986") | F, H, P |
| PTX-540 | ALGN-1847643 | Scientific Steering Committee, "Opinion of the Scientific Steering Committee on the Geographical Risk of Bovine Spongiform Encephalopathy (GBR) in New Zealand" (2002) ("SSC NZ Assessment") | AU, H, F, BS, NSW, P, R |

*Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*
Case No. 21-1411-RGA (D. Del.)
Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025)

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-541 | REV_DAX-02171650 | Scopes, Protein Purification: Principles and Practice Third Edition (1994) ("Scopes 1994") | F, H, P |
| PTX-542 | ALGN-1847241 | Scopes, Protein Purification: Principles and Practice Third Edition (1994)) ("Scopes 1994") | F, H, P |
| PTX-543 | ALGN-1847387 | Segura, M. et al., "Production of Lentiviral Vectors by Large-Scale Transient Transfection of Suspension Cultures and Affinity Chromatography Purification," Biotechnology and Bioengineering, 98(4):789–799 (2007) ("Segura 2007") | AU, H, F, NSW, P, R |
| PTX-544 | REV_DAX-03321560 | Shibata, Murotani & Onodera, "Difference in Tryptophan-nicotinamide Conversion According to Dietary Nitrogen Sources; Casein, Casein Hydrolysate, and Mixtures of Amino Acids," Biosci. Biotech. Biochem., Vol. 56, No. 4, pp. 665-69 (1992) ("Shibata 1992") | F, H, P |
| PTX-545 | ALGN-1848086 | Shimoni, et al., "Process Improvements Increase Production Capacity of a Legacy Product," BioProcess Tech., Vol. 11, No. 10, pp. 26-31 (2013) ("Shimoni 2013") | F, H, P |
| PTX-546 | ALGN-1846125 | Shukla, Etzel, & Gadam, Process Scale Bioseparations for the Biopharmaceutical Industry (2007) ("Shukla 2007") | F, H, P |
| PTX-547 | ALGN-1847398 | Siegel, L., "Fermentation Kinetics of Botulinum Toxin Production (Types A, B, and E," in Biomedical Aspects of Botulism, pp 121-28 (1981) ("Siegel 1981") | AU, H, F, NSW, P, R |
| PTX-548 | REV_DAX-02171818 | Simpson, Schmidt & Middlebrook, "Isolation and Characterization of the Botulinum Neurotoxins," in Preparation of Toxins, Chpt. 12, pp 76-85 (1988) ("Simpson 1988") | F, H, P |
| PTX-549 | ALGN-1846660 | Singleton, Dictionary of Microbiology (1978) | AU, H, F, BS, NSW, P, R |
| PTX-550 | ALGN-1846663 | Singleton, Dictionary of Microbiology and Molecular Biology (2002) | AU, H, F, BS, NSW, P, R |
| PTX-551 | ALGN-1846919 | Spraycar, PDR Medical Dictionary (1995) ("PDR Medical Dictionary") | AU, H, F, BS, NSW, P, R |
| PTX-552 | ALGN-1847651 | Stinson & Jones, "Binding of Todd-Hewitt Broth Antigens by Streptococcus Mutans," Infect. Immun., Vol. 40, No. 3, pp. 1140-45 (1983) ("Stinson 1983") | AU, H, F, NSW, P, R |
| PTX-553 | N/A | Strabismus (Crossed Eyes), Cleveland Clinic, available at https://my.clevelandclinic.org/health/diseases/15065-strabismus-crossed-eyes | AU, F, H, NSW, P, R |
| PTX-554 | ALGN-1846550 | Strube, J. et al., Process intensification in biologics manufacturing, Chemical Engineering and Processing - Process Intensification, Volume 133, 2018) | AU, H, F, NSW, P, R |
| PTX-555 | REV_DAX-02171869 | Sugiyama et al., "Improved Procedure for Crystallization of Clostridium botulinum Type A Toxic Complexes," Appl. Environ. Microbiol., Vol. 33, No. 4, p. 963-66 (1977) ("Sugiyama 1977") | F, H, P |
| PTX-556 | ALGN-1846234 | Tayab, et al., Size Exclusion Chromatography and Size Exclusion HPLC of Proteins, Biochem. Educ. 149 1991 | AU, H, F, NSW, P, R |
| PTX-558 | ALGN-1848028 | Thiry & Cingolani, "Optimizing Scale-Up Fermentation Processes," Trends Biotechnol., Vol. 20, No. 3, pp. 103-05 (2002) ("Thiry 2002") | F, H, P |
| PTX-559 | ALGN-1847657 | Thomas, Reinbold & Nelson, "Effect of the Type of Bacteriological Peptone in the Plating Medium upon the Enumeration of Pasteurization Resistant Bacteria in Milk," J. Food Prot., Vol. 29, No. 6, pp. 182-86 (1966) ("Thomas 1966") | AU, H, F, NSW, P, R |
| PTX-560 | ALGN-1847818 | TIME, The Best Inventions of 2023, Smoother Skin, Revance Therapeutics Daxxify, https://time.com/collection/best-inventions-2023/6326375/revance-theraputics-daxxify/ | F, H, P |
| PTX-561 | ALGN-1847662 | Trautschold, Werle & Zickgraf-Rüdel, "Trasylol," Biochem. Pharmacol., Vol. 16, pp. 59-72 (1967) ("Trautschold 1967") | AU, H, F, NSW, P, R |
| PTX-562 | N/A | Tremaine, Anne Marie and Jerry L. McCullough, "Botulinum toxin type A for the management of glabellar rhytids," Clinical, Cosmetic Investigational Dermatology, Vol. 3, (2010) ("Tremaine") | AU, F, H, NSW, P, R |
| PTX-563 | REV_DAX-02171956 | Tugnoli, et al., "The Therapeutic Use of Botulinum Toxin," Exp. Opin. Investig. Drugs, Vol. 6(10), pp. 1383-94 (1997)) ("Tugnoli 1997") | F, H, P |
| PTX-564 | ALGN-1847700 | U.S. Patent Application Publication No. 2004/0030107 ("Wan '107") | AU, H, F, BS, NSW, P, R |
| PTX-565 | ALGN-1847676 | U.S. Patent No. 4,345,028 (Nelson et al.) | AU, H, F, NSW, P, R |
| PTX-566 | ALGN-1847825 | U.S. Patent No. 6,087,327 ("Pearce 327") | AU, F, H, NSW, P, R |
| PTX-567 | ALGN-1846401 | U.S. Pharmacopeia <791> | AU, H, F, NSW, P, R |
| PTX-568 | ALGN-1847221 | U.S. Publication No. 2003/0008367 (Oguma) | AU, F, H, NSW, P, R |
| PTX-569 | ALGN-1846049 | U.S.P. 1130 Nucleic Acid-Based Techniques – Approaches for Detecting Trace Nucleic Acids (Residual DNA Testing) | AU, H, F, NSW, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-570 | ALGN-1846047 | U.S.P. 509 Residual DNA Testing | AU, F, H, NSW, P, R |
| PTX-571 | ALGN-1846018 | Valasek & Repa, The Power of Real-Time PCR, 29 Adv. Physiol. Educ. 151 (2005) | AU, H, F, NSW, P, R |
| PTX-572 | ALGN-1847687 | Valkama, et al., "Comparative Analysis of Leaf Trichome Structure and Composition of Epicuticular Flavonoids in Finnish Birch Species," Ann. Bot., Vol. 91, pp. 643-55 (2003) ("Valkama 2003") | AU, H, F, BS, NSW, P, R |
| PTX-573 | ALGN-1846566 | Vanderlaan, "Changes in Manufacturing Processes of Biologic Therapies Can Alter the Immunogenicity Profile of the Product," Clinical Pharmacology & Therapeutics 107.4 (2020): 988-993) | AU, H, F, NSW, P, R |
| PTX-574 | ALGN-1846041 | Visvikis, et al., DNA Extraction and Stability for Epidemiological Studies, 36(8) Clin. Chem. Lab. Med. 551 (1998) | AU, F, H, NSW, P, R |
| PTX-575 | ALGN-1847403 | Vossen, Kreysa & Coll, "Overview of the BSE Risk Assessments of the European Commission's Scientific Steering Committee (SSC) and its TSE/BSE ad hoc Group"(2003) ("SSC June 2003") | F, H, P |
| PTX-576 | REV_DAX-03321672 | Wang, Y. et al., "The Preparation and Quality of Botulinum Toxin Type A for Injection (BTXA-China) and Its Clinical Use," Movement Disorders, 15(2):55 (2000)<br>("Wang 2000 Clinical Science") | F, H, P |
| PTX-577 | ALGN-1846039 | Watson & Crick, Molecular Structure of Nucleic Acids, 171 Nature 737 (1953) | AU, H, F, NSW, P, R |
| PTX-578 | ALGN-1847715 | Weickert, et al., "Optimization of Heterologous Protein Production in Escherichia Coli," Curr. Opin. Biotechnol., Vol. 7, No. 5, pp. 494-99 (1996) ("Weickert 1996") | AU, H, F, BS, NSW, P, R |
| PTX-579 | N/A | What Is Daxxify, and Why Would I Want to Inject It in My Face? Allure, available at https://www.allure.com/story/daxxify-injectable-vs-botox | AU, F, H, NSW, P, R |
| PTX-580 | ALGN-1847764 | Wolfinbarger, Snyder & Castellano, "Peptide Utilization By Nitrogen-Starved Neurospora Crassa," J. of Bacteriol., Vol. 153, No. 3, pp. 1567-69 (1983) ("Wolfinbarger 1983") | AU, F, H, NSW, P, R |
| PTX-581 | | INTENTIONALLY LEFT BLANK | - |
| PTX-582 | ALGN-1848392 | Yue et al., Biology of the extracellular matrix: an overview, J. Glaucoma, Vol. 23:8 Supp. 1, S20-3 2014 ("Yue 2014") | AU, F, H, NSW, P, R |
| PTX-583 | ALGN-1847820 | Zacharis, E., et at., "Volatile buffers can override the 'pH memory' of subtilisin catalysis in organic media," Proc. Natl. Acad. Sci.USA,Vol.96,pp.1201- 1205 1999 ("Zacharis 1999") | AU, F, H, NSW, P, R |
| PTX-584 | ALGN-1847767 | Zhang & Glatz, "Process Engineering Strategy for Recombinant Protein Recovery from Canola by Cation Exchange Chromatography," Biotechnol. Prog., Vol. 15, pp. 12 18 (1999) ("Zhang 1999") | AU, F, H, NSW, P, R |
| PTX-585 | ALGN-1846572 | Zhuang et al. Risk-Based Comparability Assessment for Monoclonal Antibodies During Drug Development: A Clinical Pharmacology Perspective. AAPS J 20, 109 (2018) | AU, F, H, NSW, P, R |
| PTX-586 | ALGN-1844340 | Allergan Presentation - "Aesthetics Neurotoxin LRP Strategy" | F, P, R, H |
| PTX-587 | ALGN-1843826 | [redacted] | F, P, R, H |
| PTX-588 | ALGN-1843852 | [redacted] | F, P, R, H |
| PTX-589 | ALGN-0031041 | [redacted] | F, P, R, H |
| PTX-590 | ALGN-0067860 | [redacted] | F, P, R, H |
| PTX-591 | ALGN-0070440 | [redacted] | F, P, R, H |
| PTX-592 | ALGN-0056240 | [redacted] | F, P, R, H |
| PTX-593 | ALGN-0067924 | [redacted] | F, P, R, H |
| PTX-594 | ALGN-0031042 | [redacted] | F, P, R, H |
| PTX-595 | N/A | [redacted] | F, P, R |
| PTX-596 | ALGN-1834385 | Presentation: Daxxify Launch Tracker Main Quant Study Report, May and June Waves w/HCPs (June 30, 2023) | F, P, R |
| PTX-597 | ALGN-1837437 | [redacted] | F, P, R |
| PTX-598 | ALGN-0070510 | [redacted] | F, P, R |
| PTX-599 | ALGN-0066853 | [redacted] | F, P, R |
| PTX-600 | ALGN-0069070 | [redacted] | F, P, R |
| PTX-601 | N/A | [redacted] | F, P, R |
| PTX-602 | ALGN-1846297 | File name: "ALGN-1846297-HIGHLY CONFIDENTIAL.xlsx" | F, P, R |
| PTX-603 | ALGN-1846586 | [redacted] | F, P, R |
| PTX-604 | ALGN-1834340 | Presentation: Daxxify Launch Tracker Main Quant Study Report, May Wave w/ HCPs (June 6, 2023) | F, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-605 | N/A | AbbVie Completes Transformative Acquisition of Allergan, AbbVie, available at https://news.abbvie.com/2020-05-08-AbbVie-Completes-Transformative-Acquisition-of-Allergan | AU, B, I, F, H, P, R, NSW |
| PTX-606 | N/A | AbbVie Reports Third-Quarter 2023 Financial Results, AbbVie, available at https://investors.abbvie.com/static-files/296839c1-fd45-44b5-875e-c11e77924358 | AU, B, I, F, H, P, R, NSW |
| PTX-607 | N/A | About Us, Allergan Aesthetics, available at https://www.allerganaesthetics.com/about/aboutallergan-Aesthetics | AU, B, I, F, H, P, R, NSW |
| PTX-608 | ALGN-1846299 | File name: "ALGN-1846299-HIGHLY CONFIDENTIAL.xlsx" | N, AU, F, H, P, R, NSW |
| PTX-609 | ALGN-1846300 | File name: "ALGN-1846300-HIGHLY CONFIDENTIAL.xlsx" | N, AU, F, H, P, R, NSW |
| PTX-610 | ALGN-1846301 | File name: "ALGN-1846301-HIGHLY CONFIDENTIAL.xlsx" | N, AU, F, H, P, R, NSW |
| PTX-611 | ALGN-1837670 | File name: "Botox Cosmetic - One-Pager 2021 LRP (6-1-21).xlsx" | AU, H, F, NSW, P, R |
| PTX-612 | N/A | SEC Filing - AbbVie Inc. Form 10-K (Period Ending December 31, 2022) | AU, H, F, NSW, P, R |
| PTX-613 | REV_DAX-03339561 | SEC Filing - AbbVie Inc. Form 10-K (Period Ending December 31, 2023) | AU, H, F, NSW, P, R |
| PTX-614 | N/A | SEC Filing - AbbVie Inc. Form 10-Q (Period Ending September 30, 2023) | AU, H, F, NSW, P, R |
| PTX-615 | REV_DAX-03338302 | SEC Filing - Allergan, Inc. Form 10-K (Period Ending December 31, 2009) | AU, H, F, NSW, P, R |
| PTX-616 | REV_DAX-03323699 | SEC Filing - Allergan, Inc. Form 10-K (Period Ending December 31, 2017) | AU, H, F, NSW, P, R |
| PTX-617 | N/A | Presentation - Revance Inventor Day 2023, available at https://investors.revance.com/files/doc_presentation/2023/09/18/RVNC-Investor-Day-Presentation_Final.pdf | AU, B, I, H, F, P, R |
| PTX-618 | REV_DAX-02672909 | Revance Presentation - "RT002 [redacted] | F, P, R, H |
| PTX-619 | REV_DAX-03309439 | [redacted] | F, P, R, H |
| PTX-620 | REV_DAX-03306725 | [redacted] | F, P, R, H |
| PTX-621 | N/A | SEC Filing - Revance Therapeutics, Inc. Form 8-K (Filed April 19, 2023) | AU, H, F, NSW, P, R |
| PTX-622 | N/A | SEC Filing - Revance Therapeutics, Inc. Form 8-K (Filed March 14, 2017) | AU, H, F, NSW, P, R |
| PTX-623 | N/A | SEC Filing - Revance Therapeutics, Inc. Form 8-K (Filed December 18, 2020) | AU, H, F, NSW, P, R |
| PTX-624 | N/A | SEC Filing - Revance Therapeutics, Inc., Form 8-K (Apr. 19, 2023) | AU, H, F, NSW, P, R |
| PTX-625 | REV_DAX-02640101 | [redacted] | F, P, R |
| PTX-626 | REV_DAX-02680014 | [redacted] | F, P, R |
| PTX-627 | ALGN-1365233 | SEC Filing - Revance Therapeutics, Inc. Form 10-K (Period Ending December 31, 2022) | AU, H, F, P, R |
| PTX-628 | REV_DAX-03323559 | S&P Global Market Intelligence Transcript: AbbVie Inc. (NYSE: ABBV) Company Conference Presentation | AU, H, F, P, R |
| PTX-629 | REV_DAX-02696002 | [redacted] | F, P, R |
| PTX-630 | REV_DAX-02666351 | [redacted] | F, P, R |
| PTX-631 | REV_DAX-02664611 | [redacted] | F, P, R |
| PTX-632 | REV_DAX-02680442 | [redacted] | F, P, R |
| PTX-633 | REV_DAX-02669796 | [redacted] | F, P, R |
| PTX-634 | REV_DAX-02680128 | File name: "RHAandDaxxify_Sridhar_4_24_2023.xlsx" | F, P, R |
| PTX-635 | REV_DAX-02680862 | File name: "10Yr Tx Sales_v1.xlsx" | F, P, R, MIL |
| PTX-636 | REV_DAX-02682000 | [redacted] | F, P, R |
| PTX-637 | REV_DAX-02683529 | [redacted] | F, P, R |
| PTX-638 | ALGN-1846318 | Revance Therapeutics, Inc., Q2 2023 Earnings Call, Aug 08, 2023 | AU, H, F, P, R |
| PTX-639 | N/A | 2024 JP Morgan Healthcare Conference Supplemental Presentation, Revance, available at https://investors.revance.com/files/doc_presentation/2024/01/JPM-Presentation_Draft_0107_FINAL2.pdf | AU, B, I, H, F, P, R |
| PTX-640 | N/A | Daxxify Becomes First Facial Injectable to be Named to TIME's Best Inventions, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2023/DAXXIFYBecomes-First-Facial-Injectable-to-be-Named-to-TIMEs-Best-Inventions/default.aspx | AU, B, I, H, F, P, R |
| PTX-641 | REV_DAX-03316772 | [redacted] | F, P, R |
| PTX-642 | REV_DAX-02640102 | [redacted] | F, P, R |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-643 | N/A | Mylan looks to biosimilars for long-term growth as Viatris deal closure nears, S&P Global, available at https://www.spglobal.com/marketintelligence/en/news-insights/latest-newsheadlines/mylan-looks-to-biosimilars-for-long-term-growth-as-viatris-deal-closure-nears-59804552 | AU, B, I, H, F, P, R |
| PTX-644 | N/A | Products and Pipeline, Revance, available at https://www.revance.com/products/ | AU, B, I, H, F, P, R |
| PTX-645 | N/A | Revance Announces FDA Approval of DAXXIFY™ (DaxibotulinumtoxinA-lanm) for Injection, the First and Only Peptide-Formulated Neuromodulator With Long-Lasting Results, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2022/Revance-Announces-FDA-Approval-of-DAXXIFY-DaxibotulinumtoxinA-lanm-for-Injection-the-Firstand-Only-Peptide-Formulated-Neuromodulator-With-Long-Lasting-Results-09-08-2022/default.aspx | AU, B, I, H, F, P, R |
| PTX-646 | N/A | Revance Provides an Update on DAXXIFY Commercial Launch and Preliminary Fourth Quarter and Full Year 2022 Financial Results, Revance, available at https://www.businesswire.com/news/home/20230109005255/en/Revance-Provides-an-Update-on-DAXXIFY%C2%AE-Commercial-Launch-and-Preliminary-Fourth-Quarter-and-Full-Year-2022-Financial-Results | AU, B, I, H, F, P, R |
| PTX-647 | N/A | Revance Provides Corporate Update at Investor Day, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2023/Revance-Provides-Corporate-Update-at-Investor-Day/default.aspx | AU, B, I, H, F, P, R |
| PTX-648 | N/A | Revance Provides Corporate Update, Preliminary Fourth Quarter and Full Year 2023 Financial Results, and Financial Outlook, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2024/Revance-Provides-Corporate-Update-Preliminary-Fourth-Quarter-and-Full-Year-2023-Financial-Results-and-Financial-Outlook/default.aspx | AU, B, I, H, F, P, R |
| PTX-649 | N/A | Revance Reports Fourth Quarter and Full Year 2022 Financial Results, Provides Corporate Update, Revance, available at https://investors.revance.com/investors/Press-Releases/news- details/2023/Revance-Reports-Fourth-Quarter-and-Full-Year-2022-Financial-Results-Provides-Corporate-Update-02-28-2023/default.aspx | AU, B, I, H, F, P, R |
| PTX-650 | N/A | Revance Reports Third Quarter 2023 Financial Results, Provides Corporate Update, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2023/Revance-Reports-Third-Quarter-2023-Financial-Results-Provides-Corporate-Update/default.aspx | AU, B, I, H, F, P, R |
| PTX-651 | N/A | Revance Submits Biologics License Application (BLA) to the FDA for DAXI to Treat Glabellar (Frown) Lines, Revance, available at https://investors.revance.com/files/doc_news/2019/11/News-Release-11-25-2019- 1690222990289369.pdf | AU, B, I, H, F, P, R |
| PTX-652 | N/A | Revance Therapeutics Announces Appointment of Lauren Silvernail as Chief Financial Officer, Revance, available at https://investors.revance.com/files/doc_news/2013/03/News-Release-03-25- 2013-1690223111337273.pdf | AU, B, I, H, F, P, R |
| PTX-653 | N/A | Revance Therapeutics Announces Publication of Positive Results From RT002 Phase 1/2 Study, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2015/Revance-Therapeutics-Announces-Publication-of-Positive-Results-From-RT002-Phase-12-Study-01-08-2015/default.aspx | AU, B, I, H, F, P, R |
| PTX-654 | N/A | Revance Therapeutics Investor Day Corrected Transcript, Factset | AU, B, I, H, F, P, R |
| PTX-656 | N/A | Revance Therapeutics, Inc. Q2 2023 Earnings Call, August 8, 2023, Factset | AU, B, I, H, F, P, R |
| PTX-657 | N/A | Revance Therapeutics, Inc. Q3 2023 Earnings Call, November 8, 2023, Factset | AU, B, I, H, F, P, R |
| PTX-658 | N/A | Revance Therapeutics, Inc., Earnings Call (Feb. 28, 2023) | AU, B, I, H, F, P, R |
| PTX-659 | N/A | ReVance Therapeutics, Inc. Settles With Medicis for Up to $25 Million, Regains Global Rights to Botulinum Toxin Products," Revance, available at https://www.biospace.com/article/releases/revance-therapeutics-inc-settles-with-medicis-for-up-to-25-million-regains-global-rights-to-botulinum-toxin-products-/ | AU, B, I, H, F, P, R |
| PTX-660 | ALGN-1846302 | Revance Therapeutics, Inc., Earnings Call (May 9, 2023) | AU, B, I, H, F, P, R |
| PTX-661 | N/A | Revance wants you to 'Break Up With Botox' as it goes to war with AbbVie in new anti-wrinkle market battle, Fierce Pharma, available at https://www.fiercepharma.com/marketing/revance- wants-you-break-botox-it-goes-war-abbvie-new-anti-wrinkle-market-battle | AU, B, I, H, F, P, R |
| PTX-662 | | INTENTIONALLY LEFT BLANK | - |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-663 | | INTENTIONALLY LEFT BLANK | - |
| PTX-664 | | INTENTIONALLY LEFT BLANK | - |
| PTX-665 | | INTENTIONALLY LEFT BLANK | - |
| PTX-666 | | INTENTIONALLY LEFT BLANK | - |
| PTX-667 | | INTENTIONALLY LEFT BLANK | - |
| PTX-668 | | INTENTIONALLY LEFT BLANK | - |
| PTX-669 | | INTENTIONALLY LEFT BLANK | - |
| PTX-670 | | INTENTIONALLY LEFT BLANK | - |
| PTX-671 | N/A | SEC Filing - Revance Therapeutics, Inc. Form 10-Q (Period Ending June 30, 2023) | AU, H, F, NSW, P, R |
| PTX-672 | N/A | SEC Filing - Revance Therapeutics, Inc. Form 10-Q (Period Ending March 31, 2023) | AU, H, F, NSW, P, R |
| PTX-673 | N/A | SEC Filing - Revance Therapeutics, Inc. Form 10-Q (Period Ending September 30, 2023) | AU, H, F, NSW, P, R |
| PTX-674 | N/A | SEC Filing - Revance Therapeutics, Inc. Form S-1 Registration Statement (Filed December 31, 2013) | AU, H, F, NSW, P, R |
| PTX-675 | N/A | Therapeutics Pipeline, Revance, available at https://www.revance.com/therapeutics/ | AU, H, F, NSW, P, R |
| PTX-676 | N/A | U.S. FDA Approves First Therapeutic Indication for Revance's DAXXIFY® (DaxibotulinumtoxinA-lanm) for Injection for the Treatment of Cervical Dystonia, Revance, available at https://investors.revance.com/investors/Press-Releases/news-details/2023/U.S.-FDA-Approves-First-Therapeutic-Indication-for-Revances-DAXXIFY-DaxibotulinumtoxinA-lanm-for- Injection-for-the-Treatment-of-Cervical-Dystonia/default.aspx | AU, B, I, H, F, NSW, P, R |
| PTX-677 | REV_DAX-02639817 | [redacted] | BS, F, H, P, R |
| PTX-678 | REV_DAX-02639561 | [redacted] | BS, F, H, P, R |
| PTX-679 | REV_DAX-02639670 | [redacted] | BS, F, H, P, R |
| PTX-680 | REV_DAX-02639676 | [redacted] | BS, F, H, P, R |
| PTX-681 | REV_DAX-02257057 | [redacted] | BS, F, H, P, R |
| PTX-682 | REV_DAX-02256967 | [redacted] | BS, F, H, P, R |
| PTX-683 | ALGN-1844591 | [redacted] | AU, F, H, P, R, NSW |
| PTX-684 | ALGN-1844811 | [redacted] | AU, F, H, P, R, NSW |
| PTX-685 | ALGN-1844769 | [redacted] | AU, F, H, P, R, NSW |
| PTX-686 | ALGN-1844670 | [redacted] | AU, F, H, P, R, NSW |
| PTX-687 | ALGN-1844637 | [redacted] | AU, F, H, P, R, NSW |
| PTX-688 | ALGN-1844747 | [redacted] | AU, F, H, P, R, NSW |
| PTX-689 | ALGN-1844584 | [redacted] | AU, F, H, P, R, NSW |
| PTX-690 | ALGN-1844542 | [redacted] | AU, F, H, P, R, NSW |
| PTX-691 | ALGN-1844440 | [redacted] | AU, F, H, P, R, NSW |
| PTX-692 | REV_DAX-02707686 | Agreement between Revance and BioSentinel (Apr. 11, 2016) | BS, F, H, P, R, NSW |
| PTX-693 | ALGN-1844650 | [redacted] | AU, F, H, P, R, NSW |
| PTX-694 | N/A | "System and method for stabilizing antibiotics with histidine" | AU, F, NSW, I |
| PTX-695 | N/A | 21 C.F.R. 312.31.pdf | NP, AU, F, NSW, P, R |
| PTX-696 | N/A | 35 U.S.C. §284 | NP, AU, F, NSW, P, R |
| PTX-697 | N/A | 9 CFR § 113.53 (Requirements for ingredients of animal origin used for production of biologics) | NP, AU, F, NSW, P, R |
| PTX-698 | ALGN-1846587 | 9 U.S.C. § 94.18 | NP, AU, F, NSW, P, R |
| PTX-699 | N/A | Ajinomoto Althea and OmniChem Combine to Form Ajinomoto Bio-Pharma Services, Reflecting a Collective Range of Services Offered to the Bio-Pharma Industry, Ajinomoto Bio-Pharma Services, available at https://www.ajibio-pharma.com/news-post/ajinomoto-althea-andomnichem-combine-to-form-ajinomoto-bio-pharma-services-reflecting-a-collective-range-ofservices-offered-to-the-bio-pharma-industry/ | NP, AU, F, NSW, P, R, H |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-700 | N/A | Contact Us, Ajinomoto Bio-Pharma Services, available at https://www.ajibio-pharma.com/contactus/overview/ | NP, AU, F, NSW, P, R, IL |
| PTX-701 | N/A | Daxxify, National Drug Code Directory, available at https://www.accessdata.fda.gov/scripts/cder/ndc/dsp_searchresult.cfm | NP, AU, F, NSW, P, R |
| PTX-702 | N/A | FDA Approves Expanded BOTOX® (onabotulinumtoxinA) Label for the Treatment of Pediatric Patients with Spasticity, AbbVie, available at https://news.abbvie.com/2020-07-09-FDAApproves-Expanded-BOTOX-R-onabotulinumtoxinA-Label-for-the-Treatment-of-Pediatric-Patients-with-Spasticity | NP, AU, F, NSW, P, R, H |
| PTX-703 | N/A | Frown Lines (Glabellar Lines), Oregon Medical Research, available at https://oregonmedicalresearch.com/patients/conditions-we-study/frown-lines | NP, AU, F, NSW, P, R, I, H |
| PTX-704 | N/A | Ipsen 2022 Universal Registration Document, Ipsen, available at https://www.ipsen.com/websites/ipsen_com_v2/wp-content/uploads/2023/05/18095509/2022-Universal-Registration-Document.pdf | NP, AU, F, NSW, P, R |
| PTX-705 | N/A | Ipsen announces FDA approval of Dysport (abobotulinumtoxinA) for the treatment of lower limb spasticity in adults, Ipsen, available at https://www.ipsen.com/canadafr/blog/pressreleases/ipsen-announces-fda-approval-of-dysport-abobotulinumtoxina-for-the-treatment-oflower-limb-spasticity-in-adults/ | NP, AU, F, NSW, P, R, I, IL, H |
| PTX-706 | N/A | Ipsen Announces Updated Indication for Dysport (abobotulinumtoxinA) for the Treatment of Spasticity in Children, Ipsen, available at https://www.ipsen.com/canadafr/blog/pressreleases/ipsen-announces-updated-indication-for-dysport-abobotulinumtoxina-for-the-treatmentof-spasticity-in-children/ | NP, AU, F, NSW, P, R, I, IL, H |
| PTX-707 | N/A | Medicis Pharmaceutical Corporation, Form 10-K for the Period Ended December 31, 2011 | NP, F, NSW, P, R |
| PTX-708 | N/A | Merz Aesthetics Announces FDA Approval Of XEOMIN® (incobotulinumtoxinA) For The Temporary Improvement In The Appearance Of Moderate To Severe Glabellar Lines In Adult Patients, Cision PR Newswire, available at https://www.prnewswire.com/news-releases/merzaesthetics-announces-fda-approval-of-xeomin-incobotulinumtoxina-for-the-temporaryimprovement-in-the-appearance-of-moderate-to-severe-glabellar-lines-in-adult-patients-125944538.html | NP, AU, F, NSW, P, R, H |
| PTX-709 | ALGN-1846271 | PiperSandlerCompanies_WiderRolloutForDaxxifyOnTapLookingForBriskRHAGrowthIn2023_Feb_28_2023.pdf | NP, AU, F, NSW, P, R, IL, H |
| PTX-710 | N/A | SEC Filing - Evolus, Inc. Form 10-K (Period Ended December 31, 2019) | NP, F, NSW, P, R |
| PTX-711 | N/A | SEC Filing - Evolus, Inc. Form 10-K (Period Ended December 31, 2022) | NP, F, NSW, P, R |
| PTX-712 | N/A | SEC Filing - Evolus, Inc. Form 10-Q (Period Ended June 30, 2019) | NP, F, NSW, P, R |
| PTX-713 | N/A | SEC Filing - Evolus, Inc. Form 10-Q (Period Ended June 30, 2020) | NP, F, NSW, P, R |
| PTX-714 | N/A | SEC Filing - Evolus, Inc. Form 10-Q (Period Ended March 31, 2020) | NP, F, NSW, P, R |
| PTX-715 | N/A | SEC Filing - Evolus, Inc. Form 10-Q (Period Ended September 30, 2019) | NP, F, NSW, P, R |
| PTX-716 | N/A | SEC Filing - Supernus Pharmaceuticals, Inc. Form 10-K (Period Ending December 31, 2022) | NP, F, NSW, P, R |
| PTX-717 | ALGN-1846533 | U.S. Department of Health and Human Services, Food and Drug Administration, "Guidance for Industry: Q5E Comparability of Biotechnological/Biological Products Subject to Changes in Their Manufacturing Process" (June 2005) ("FDA Q5E") | NSW, F, R, P |
| PTX-718 | ALGN-1846284 | WellsFargoSecurities,LLC_RVNC3Q22ModelUpdateDebateFocusedonDaxxifyLaunch_Nov_09,_2022.pdf | AU, F, NSW, P, R, IL, H |
| PTX-719 | ALGN-1846279 | WellsFargoSecurities,LLC_RVNCSecuresFDAApprovalforDAXXIFY_Sep_08,_2022.pdf | AU, F, NSW, P, R, IL, H |
| PTX-720 | ALGN-1846290 | WilliamBlairCompanyLLC_First-QuarterEarningsFocusonSeptember8PDUFAandPotentialFourth-QuarterLaunchforDAXIRemainOutperform_May_10,_2022.pdf | AU, F, NSW, P, R, IL, H |
| PTX-721 | N/A | Declaration of Fusun Zeytin (see D.I. 169-1) | NSW, AU, F, P, R, H |
| PTX-722 | N/A | Defendants Revance Therapeutics, Inc. and Ajinomoto Althea d/b/a Ajinomoto Bio-Pharma Services' First Supplemental Responses and Objections to Plaintiffs' Second Set of Interrogatories (numbers 12 to 14) | NSW, F, H |
| PTX-723 | N/A | Defendants' Supplemental Response and Objections to Interrogatory No. 3 | NSW, F, H, P |
| PTX-724 | N/A | Defendant's Supplemental Privilege Log October 4, 2023 | F, H, R, P |
| PTX-725 | N/A | Defendants' Third Supplemental Responses and Objections to Plaintiffs' Interrogatory No. 14 | NSW, F, H, P |
| PTX-726 | N/A | Objections to Plaintiffs' Interrogatory No. 3 | NSW, F, H, P |
| PTX-727 | N/A | Defendant Revance Therapeutics Inc Responses and Objections | F, H, P |

*Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*
Case No. 21-1411-RGA (D. Del.)
Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025)

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-728 | N/A | Claim Construction Order (D.I. 229) | NSW, F, P |
| PTX-729 | N/A | Complaint for Patent Infringement (D.I. 1) | NSW, F, H, R, P |
| PTX-730 | N/A | Defendants' Responses to Allergan's 1st Set of RFAs (Nos. 1-17) (Aug. 14, 2023) | NSW, F, H, P |
| PTX-731 | N/A | Defendants' Supplemental Response and Objections to Interrogatory Nos. 12-14 (Nov. 3, 2024) | NSW, F, H, P |
| PTX-732 | N/A | Defendants' Supplemental Responses and Objections to Interrogatory Nos. 1-11 (Nov. 3, 2024) | NSW, F, H, P |
| PTX-733 | N/A | Defendants' Supplemental Responses and Objections to Interrogatory Nos. 15-18 (Nov. 3, 2024) | NSW, F, H, P |
| PTX-734 | N/A | First Amended Complaint for Patent Infringement (D.I. 16) | NSW, F, H, R, P |
| PTX-735 | N/A | Memorandum Opinion (D.I. 211) | NSW, F, R, P |
| PTX-736 | N/A | Memorandum Order (D.I. 262) | NSW, F, R, P |
| PTX-737 | N/A | Plaintiffs Objections and Supplemental Repsonses to Defendants' Interrogatories (Nos. 1-12) (Nov. 3, 2024) | NSW, F, H, R, P |
| PTX-738 | | INTENTIONALLY LEFT BLANK | - |
| PTX-739 | N/A | Second Amended Complaint for Patent Infringement (D.I. 79) | NSW, F, H, R, P |
| PTX-740 | N/A | Stipulation and [Proposed] Order Regarding Case Narrowing (D.I. 352) | MIL, MC, H, R, P |
| PTX-741 | N/A | Expert Report of Steven Chamow dated December 13, 2023 | H, R, P, D |
| PTX-742 | N/A | Expert Report of Steven Chamow dated April 18, 2024 | H, R, P, D |
| PTX-743 | N/A | Expert Report of Daniela Drago dated December 15, 2023 | H, R, P, D |
| PTX-744 | N/A | Expert Report of Daniela Drago dated April 19, 2024 | H, R, P, D |
| PTX-745 | N/A | Expert Report of Frank Gessler dated December 15, 2023 | H, R, P, D |
| PTX-746 | N/A | Expert Report of Frank Gessler dated March 8, 2024 | H, R, P, D |
| PTX-747 | N/A | Expert Report of Frank Gessler dated April 18, 2024 | H, R, P, D |
| PTX-748 | N/A | Expert Report of Dr. Christine Meyer dated December 15, 2023 | H, R, P, DB |
| PTX-749 | N/A | Expert Report of Dr. Christine Meyer dated February 8, 2024 | H, R, P, DB |
| PTX-750 | N/A | Expert Report of Dr. Christine Meyer dated April 19, 2024 | H, R, P, DB |
| PTX-751 | N/A | Expert Report of Christian Schöneich dated March 8, 2024 | H, R, P, D |
| PTX-752 | N/A | Expert Report of Christian Schöneich dated April 19, 2024 | H, R, P, D |
| PTX-753 | N/A | Expert Report of Christian Schöneich dated December 15, 2023 | H, R, P, D |
| PTX-754 | N/A | Exemplary Certificates of Analysis | AU, F, NSW, B, H, IE, MU |
| PTX-755 | AJI_DAX-00050147 | [redacted] | F |
| PTX-756 | AJI_DAX-00035106 | [redacted] | F |
| PTX-757 | REV_DAX-02350651 | [redacted] | F |
| PTX-758 | REV_DAX-02139259 | [redacted] | F |
| PTX-759 | REV_DAX-02139892 | [redacted] | F |
| PTX-760 | REV_DAX-02139881 | [redacted] | NSW, AU, F, R |
| PTX-761 | REV_DAX-0218874 | [redacted] | NSW, AU, F, R, P, MU |
| PTX-762 | ALGN-1363787 | Press Release - Revance Therapeutics, Inc. (Aug. 8, 2023) | NSW, AU, F, R, P, H |
| PTX-763 | ALGN-1363793 | Press Release - Revance Therapeutics, Inc. (Aug. 14, 2023) | NSW, AU, F, R, P, H |
| PTX-764 | ALGN-1363797 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2020) | NSW, F, R, P |
| PTX-765 | ALGN-1364012 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2019) | NSW, F, R, P |
| PTX-766 | ALGN-1364383 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2016) | NSW, F, R, P |
| PTX-767 | ALGN-1364653 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2018) | NSW, F, R, P |
| PTX-768 | ALGN-1364932 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2021) | NSW, F, R, P |
| PTX-769 | ALGN-1365507 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2017) | NSW, F, R, P |
| PTX-770 | ALGN-1365769 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2014) | NSW, F, R, P |
| PTX-771 | ALGN-1366073 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2015) | NSW, F, R, P |
| PTX-772 | ALGN-1366273 | SEC Filing - Revance Therapeutics, Inc., Form 10-K (Period Ending Dec. 31, 2013) | NSW, F, R, P |

*Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*
Case No. 21-1411-RGA (D. Del.)
Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025)

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-773 | ALGN-1366472 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2018) | NSW, F, R, P |
| PTX-774 | ALGN-1366605 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2017) | NSW, F, R, P |
| PTX-775 | ALGN-1366706 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2016) | NSW, F, R, P |
| PTX-776 | ALGN-1366809 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2021) | NSW, F, R, P |
| PTX-777 | ALGN-1367049 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2019) | NSW, F, R, P |
| PTX-778 | ALGN-1367147 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2020) | NSW, F, R, P |
| PTX-779 | ALGN-1367333 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2015) | NSW, F, R, P |
| PTX-780 | ALGN-1367434 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2023) | NSW, F |
| PTX-781 | ALGN-1367492 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2022) | NSW, F |
| PTX-782 | ALGN-1367597 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2014) | NSW, F, R, P |
| PTX-783 | ALGN-1367702 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2020) | NSW, F, R, P |
| PTX-784 | ALGN-1367835 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2017) | NSW, F, R, P |
| PTX-785 | ALGN-1367975 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2018) | NSW, F, R, P |
| PTX-786 | ALGN-1368168 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2019) | NSW, F, R, P |
| PTX-787 | ALGN-1368331 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2023) | NSW, F |
| PTX-788 | ALGN-1368417 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2016) | NSW, F, R, P |
| PTX-789 | ALGN-1368520 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2021) | NSW, F, R, P |
| PTX-790 | ALGN-1368627 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2022) | NSW, F, R, P |
| PTX-791 | ALGN-1368918 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2014) | NSW, F, R, P |
| PTX-792 | ALGN-1369062 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Mar. 31, 2015) | NSW, F, R, P |
| PTX-793 | ALGN-1369163 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2018) | NSW, F, R, P |
| PTX-794 | ALGN-1369279 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2017) | NSW, F, R, P |
| PTX-795 | ALGN-1369388 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2016) | NSW, F, R, P |
| PTX-796 | ALGN-1369494 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2019) | NSW, F, R, P |
| PTX-797 | ALGN-1369653 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2022) | NSW, F |
| PTX-798 | ALGN-1369762 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2020) | NSW, F, R, P |
| PTX-799 | ALGN-1369974 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2021) | NSW, F, R, P |
| PTX-800 | ALGN-1370137 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2015) | NSW, F, R, P |
| PTX-801 | ALGN-1370311 | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Period Ending Sept. 30, 2014) | NSW, F, R, P |
| PTX-802 | ALGN-1370452 | SEC Filing - AbbVie Inc., Form 10-Q (Period Ending June 30, 2014) | NSW, F, R, P |
| PTX-803 | REV_DAX-02176567 | [redacted] | NSW, AU, F, R, P |
| PTX-804 | REV_DAX-02666789 | Revance Presentation - "RT002 Pricing Assessment" (Oct. 2018) | NSW, AU, F, P, R, H |
| PTX-805 | | INTENTIONALLY LEFT BLANK | - |
| PTX-806 | | INTENTIONALLY LEFT BLANK | - |
| PTX-807 | REV_DAX-02674751 | Revance Presentation - "Neuromodulator Background" | NSW, AU, F |
| PTX-808 | REV_DAX-02692231 | Revance Presentation - [redacted] | NSW, AU, F |
| PTX-809 | N/A | Patent Assignment - U.S. Patent No. 11,033,625 | AU, NSW, H, P, R |
| PTX-810 | N/A | Patent Assignment - U.S. Patent No. 11,147,878 | AU, NSW, H, P |
| PTX-811 | N/A | Patent Assignment - U.S. Patent No. 11,285,216 | AU, NSW, H, P |
| PTX-812 | N/A | Patent Assignment - U.S. Patent No. 7,354,740 | AU, NSW, H, P |
| PTX-813 | N/A | Patent Assignment - U.S. Patent No. 11,203,748 | AU, NSW, H, P |
| PTX-814 | N/A | Meyer Exhibit 3: FDA Approved Indications of BoNT Injectable Products | H, R, P |
| PTX-815 | N/A | [redacted] | H, R, P |
| PTX-816 | N/A | [redacted] | H, R, P |
| PTX-817 | N/A | [redacted] | H, R, P |
| PTX-818 | N/A | [redacted] | H, R, P |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-819 | N/A | [redacted] | H, R, P |
| PTX-820 | N/A | Meyer Exhibit 5: Lost Profits on Botox Vials Lost Due to Revance's Alleged Infringement in the U.S September 2022 through November 10, 2023 | H, R, P |
| PTX-821 | N/A | Meyer Exhibit 6A: Profit Difference Due to 18-Month Delay as a Percentage of Total Revenue | H, R, P |
| PTX-822 | N/A | Meyer Exhibit 6A.1: Profit Difference Due to 12-Month Delay as a Percentage of Total Revenue | H, R, P |
| PTX-823 | N/A | Meyer Exhibit 6B: Total Forecasted Revenue of Daxxify | H, R, P |
| PTX-824 | N/A | Meyer Exhibit 6C: Expected Aesthetic Profit Difference Due to Delay of 18 months | H, R, P |
| PTX-825 | N/A | Meyer Exhibit 6C.1: Expected Aesthetic Profit Difference Due to Delay of 12 months | H, R, P |
| PTX-826 | N/A | Meyer Exhibit 6D: Yearly Estimated Gross Margin on Daxxify | H, R, P |
| PTX-827 | N/A | Meyer Exhibit 6E: Discount Factors | H, R, P |
| PTX-828 | N/A | Meyer Exhibit 7A: Damages Due to Revance's Alleged Infringement of Asserted Patents Under 18-Month Delay by Scenario | H, R, P |
| PTX-829 | N/A | Meyer Exhibit 7B: Damages Due to Revance's Alleged Infringement of Asserted Patents Under 12-Month Delay by Scenario | H, R, P |
| PTX-830 | N/A | Meyer Exhibit 10 Daxxify Quarterly Revenue | H, R, P |
| PTX-831 | N/A | Meyer Exhibit 11 Daxxify Quarterly Quantity | H, R, P |
| PTX-832 | N/A | Meyer Exhibit 12 Aesthetic Injectable BoNT Market Share Excluding Botox Cosmetic July 2022 - September 2023 | H, R, P |
| PTX-833 | N/A | Meyer Exhibit 15 Comparison of Daxxify to Botox Cosmetic Unit Conversion Ratio Methodologies | H, R, P |
| PTX-834 | N/A | Meyer Exhibit 16 Amended Lost Profits on Botox Vials Lost Due to Revance's Alleged Infringement in the U.S. September 2022 through November 10, 2023 | H, R, P |
| PTX-835 | N/A | Meyer Exhibit 17A Amended Damages Due to Revance's Alleged Infringement of Asserted Patents Under 18-Month Delay by Scenario | H, R, P |
| PTX-836 | N/A | Meyer Exhibit 17B Amended Damages Due to Revance's Alleged Infringement of Asserted Patents Under 12-Month Delay by Scenario | H, R, P |
| PTX-837 | N/A | Curriculum Vitae - Dr. Steven Chamow | - |
| PTX-838 | N/A | Curriculum Vitae - Dr. Daniela Drago | - |
| PTX-839 | N/A | Curriculum Vitae - Dr. Frank Gessler | - |
| PTX-840 | N/A | Curriculum Vitae - Dr. Christine Meyer | - |
| PTX-841 | N/A | Curriculum Vitae - Christian Schöneich | - |
| PTX-842 | N/A | U.S. Patent No. 11,203,748 - Prosecution History | AU, NSW, H, P |
| PTX-843 | REV_DAX-02299952 | [redacted] | NSW, R, P, F, L |
| PTX-844 | ALGN-0026140 | Allergan Notebook [redacted] | NSW, AU, R, P, F, L |
| PTX-845 | ALGN-1848430 | Botox Cosmetic sales data | H, R, P |
| PTX-846 | ALGN-1848431 | Botox Therapeutics sales data | H, R, P, DB |
| PTX-847 | ALGN-1848432 | [redacted] | H, R, P |
| PTX-848 | ALGN-1848433 | [redacted] | H, R, P |
| PTX-849 | REV_DAX-03343077 | File name: "Daxxify Revenue 11.11.23-09.30.24.xlsx" | NSW, AU, H, R, P, F |
| PTX-850 | REV_DAX-03343166 | File name: "Daxxify Revenue 10.01.24-10.18.24 v2.xlsx" | NSW, AU, H, R, P, F |
| PTX-851 | N/A | SEC Filing - Revance Therapeutics, Inc., Form 8-K (Sept. 9, 2024) | NSW, AU, H, R, P, F, NP |
| PTX-852 | N/A | SEC Filing - Revance Therapeutics, Inc., Form 8-K (Nov. 7, 2024) | NSW, AU, H, R, P, F, NP |
| PTX-853 | N/A | SEC Filing - Revance Therapeutics, Inc., Form 10-Q (Nov. 7, 2024) | NSW, AU, H, R, P, F, NP |
| PTX-854 | N/A | Revance Therapeutics, Inc., Q4 2013 Earnings Call, Mar 26, 2014 | NSW, AU, H, R, P, F, NP |
| PTX-855 | N/A | Revance Therapeutics, Inc., Q1 2014 Earnings Call, May 13, 2014 | NSW, AU, H, R, P, F, NP |
| PTX-856 | N/A | Revance Therapeutics, Inc., Q2 2014 Earnings Call, Aug 12, 2014 | NSW, AU, H, R, P, F, NP |
| PTX-857 | N/A | Revance Therapeutics, Inc., Q3 2014 Earnings Call, Nov 12, 2014 | NSW, AU, H, R, P, F, NP |
| PTX-858 | N/A | Revance Therapeutics, Inc., Q4 2014 Earnings Call, Mar 02, 2015 | NSW, AU, H, R, P, F, NP |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-859 | N/A | Revance Therapeutics, Inc., Q1 2015 Earnings Call, May 13, 2015 | NSW, AU, H, R, P, F, NP |
| PTX-860 | N/A | Revance Therapeutics, Inc., Q2 2015 Earnings Call, Aug 06, 2015 | NSW, AU, H, R, P, F, NP |
| PTX-861 | N/A | Revance Therapeutics, Inc., Special Call (Oct. 29, 2015) | NSW, AU, H, R, P, F, NP |
| PTX-862 | N/A | Revance Therapeutics, Inc., Q3 2015 Earnings Call, Nov 09, 2015 | NSW, AU, H, R, P, F, NP |
| PTX-863 | N/A | Revance Therapeutics, Inc. Presents at Credit Suisse 24th Annual Healthcare Conference, Nov-10-2015 07:30 AM | NSW, AU, H, R, P, F, NP |
| PTX-864 | N/A | Revance Therapeutics, Inc., Q4 2015 Earnings Call, Mar 02, 2016 | NSW, AU, H, R, P, F, NP |
| PTX-865 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference, Mar-15-2016 11:15 AM | NSW, AU, H, R, P, F, NP |
| PTX-866 | N/A | Revance Therapeutics, Inc., Q1 2016 Earnings Call, May 09, 2016 | NSW, AU, H, R, P, F, NP |
| PTX-867 | N/A | Revance Therapeutics, Inc. - Special Call (June 13, 2016) | NSW, AU, H, R, P, F, NP |
| PTX-868 | N/A | Revance Therapeutics, Inc., Q2 2016 Earnings Call, Aug 04, 2016 | NSW, AU, H, R, P, F, NP |
| PTX-869 | N/A | Revance Therapeutics, Inc., Q3 2016 Earnings Call, Nov 03, 2016 | NSW, AU, H, R, P, F, NP |
| PTX-870 | N/A | Revance Therapeutics, Inc. - Special Call (Dec. 12, 2016) | NSW, AU, H, R, P, F, NP |
| PTX-871 | N/A | Revance Therapeutics, Inc., Q4 2016 Earnings Call, Feb 27, 2017 | NSW, AU, H, R, P, F, NP |
| PTX-872 | N/A | Revance Therapeutics, Inc. Presents at Cowen and Company 37th Annual Health Care Conference, Mar-07-2017 10:00 AM | NSW, AU, H, R, P, F, NP |
| PTX-873 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference 2017, Mar-14-2017 03:20 PM | NSW, AU, H, R, P, F, NP |
| PTX-874 | N/A | Revance Therapeutics, Inc., Q1 2017 Earnings Call, May 09, 2017 | NSW, AU, H, R, P, F, NP |
| PTX-875 | N/A | Revance Therapeutics, Inc. - Special Call (May 18, 2017) | NSW, AU, H, R, P, F, NP |
| PTX-876 | N/A | Revance Therapeutics, Inc., Q2 2017 Earnings Call, Aug 03, 2017 | NSW, AU, H, R, P, F, NP |
| PTX-877 | N/A | Revance Therapeutics, Inc. Presents at Cantor Fitzgerald Global Healthcare Conference, Sep-26-2017 01:40 PM | NSW, AU, H, R, P, F, NP |
| PTX-878 | N/A | Revance Therapeutics, Inc., Q3 2017 Earnings Call, Nov 02, 2017 | NSW, AU, H, R, P, F, NP |
| PTX-879 | N/A | Revance Therapeutics, Inc. - Special Call | NSW, AU, H, R, P, F, NP |
| PTX-880 | N/A | Revance Therapeutics, Inc., Q4 2017 Earnings Call, Feb 28, 2018 | NSW, AU, H, R, P, F, NP |
| PTX-881 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference 2018, Mar-15-2018 08:00 AM | NSW, AU, H, R, P, F, NP |
| PTX-882 | N/A | Revance Therapeutics, Inc. - Analyst/Investor Day (Apr. 19, 2018) | NSW, AU, H, R, P, F, NP |
| PTX-883 | N/A | Revance Therapeutics, Inc., Q1 2018 Earnings Call, May 08, 2018 | NSW, AU, H, R, P, F, NP |
| PTX-884 | N/A | Revance Therapeutics, Inc. Presents at 2018 UBS Global Healthcare Conference, May-22-2018 11:00 AM | NSW, AU, H, R, P, F, NP |
| PTX-885 | N/A | Revance Therapeutics, Inc. Presents at Goldman Sachs 39th Annual Global Healthcare Conference, Jun-13-2018 10:00 AM | NSW, AU, H, R, P, F, NP |
| PTX-886 | N/A | Revance Therapeutics, Inc., Q2 2018 Earnings Call, Aug 02, 2018 | NSW, AU, H, R, P, F, NP |
| PTX-887 | N/A | Revance Therapeutics, Inc., Q3 2018 Earnings Call, Nov 01, 2018 | NSW, AU, H, R, P, F, NP |
| PTX-888 | N/A | Revance Therapeutics, Inc. Presents at 27th Annual Credit Suisse Healthcare Conference, Nov-14-2018 03:25 PM | NSW, AU, H, R, P, F, NP |
| PTX-889 | N/A | Revance Therapeutics, Inc. - Special Call (Dec. 4, 2018) | NSW, AU, H, R, P, F, NP |
| PTX-890 | N/A | Revance Therapeutics, Inc., Q4 2018 Earnings Call, Feb 26, 2019 | NSW, AU, H, R, P, F, NP |
| PTX-891 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference 2019, Mar-13-2019 03:50 PM | NSW, AU, H, R, P, F, NP |
| PTX-892 | N/A | Revance Therapeutics, Inc., Q1 2019 Earnings Call, May 08, 2019 | NSW, AU, H, R, P, F, NP |
| PTX-893 | N/A | Revance Therapeutics, Inc. Presents at 40th Annual Goldman Sachs Global Healthcare Conference, Jun-11-2019 03:20 PM | NSW, AU, H, R, P, F, NP |
| PTX-894 | N/A | Revance Therapeutics, Inc., Q2 2019 Earnings Call, Aug 05, 2019 | NSW, AU, H, R, P, F, NP |
| PTX-895 | N/A | Revance Therapeutics, Inc. Presents at Morgan Stanley 17th Annual Global Healthcare Conference, Sep-10-2019 04:40 PM | NSW, AU, H, R, P, F, NP |
| PTX-896 | N/A | Revance Therapeutics, Inc., Q3 2019 Earnings Call, Nov 04, 2019 | NSW, AU, H, R, P, F, NP |
| PTX-897 | N/A | Revance Therapeutics, Inc. Presents at Credit Suisse 28th Annual Healthcare Conference, Nov-13-2019 10:20 AM | NSW, AU, H, R, P, F, NP |
| PTX-898 | N/A | Revance Therapeutics, Inc. - Special Call (Jan. 19, 2020) | NSW, AU, H, R, P, F, NP |
| PTX-899 | N/A | Revance Therapeutics, Inc. Presents at 38th Annual J.P Morgan Healthcare Conference, Jan-13-2020 through Jan-16-2020 | NSW, AU, H, R, P, F, NP |

| PTX No. | Bates Beg | Description | Objection |
|---|---|---|---|
| PTX-900 | N/A | Revance Therapeutics, Inc., Q4 2019 Earnings Call, Feb 24, 2020 | NSW, AU, H, R, P, F, NP |
| PTX-901 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference, Mar-10-2020 01:35 PM | NSW, AU, H, R, P, F, NP |
| PTX-902 | N/A | Revance Therapeutics, Inc., Q1 2020 Earnings Call, May 07, 2020 | NSW, AU, H, R, P, F, NP |
| PTX-903 | N/A | Revance Therapeutics, Inc. - Shareholder/Analyst Call (May 14, 2020) | NSW, AU, H, R, P, F, NP |
| PTX-904 | N/A | Revance Therapeutics, Inc. - M&A Call (May 19, 2020) | NSW, AU, H, R, P, F, NP |
| PTX-905 | N/A | Revance Therapeutics, Inc. Presents at Goldman Sachs 41st Annual Global Healthcare Conference, Jun-09-2020 12:50 PM | NSW, AU, H, R, P, F, NP |
| PTX-906 | N/A | Revance Therapeutics, Inc., Q2 2020 Earnings Call, Aug 06, 2020 | NSW, AU, H, R, P, F, NP |
| PTX-907 | N/A | Revance Therapeutics, Inc. Presents at Wells Fargo Securities 2020 Virtual Healthcare Conference, Sep-09-2020 01:20 PM | NSW, AU, H, R, P, F, NP |
| PTX-908 | N/A | Revance Therapeutics, Inc. Presents at Morgan Stanley 18th Annual Global Healthcare Conference, Sep-14-2020 05:15 PM | NSW, AU, H, R, P, F, NP |
| PTX-909 | N/A | Revance Therapeutics, Inc. - Special Call (Oct. 14, 2020) | NSW, AU, H, R, P, F, NP |
| PTX-910 | N/A | Revance Therapeutics, Inc., Q3 2020 Earnings Call, Nov 09, 2020 | NSW, AU, H, R, P, F, NP |
| PTX-911 | N/A | Revance Therapeutics, Inc. Presents at 29th Annual Virtual Healthcare Conference, Nov-10-2020 10:15 AM | NSW, AU, H, R, P, F, NP |
| PTX-912 | N/A | Revance Therapeutics, Inc. Presents at 39th Annual JPMorgan Virtual Healthcare Conference, Jan-14-2021 12:40 PM | NSW, AU, H, R, P, F, NP |
| PTX-913 | N/A | Revance Therapeutics, Inc., Q4 2020 Earnings Call, Feb 22, 2021 | NSW, AU, H, R, P, F, NP |
| PTX-914 | N/A | Revance Therapeutics, Inc. Presents at Cowen 41st Annual Health Care Conference, Mar-03-2021 02:00 PM | NSW, AU, H, R, P, F, NP |
| PTX-915 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference 2021, Mar-09-2021 03:00 PM | NSW, AU, H, R, P, F, NP |
| PTX-916 | N/A | Revance Therapeutics, Inc., Q1 2021 Earnings Call, May 10, 2021 | NSW, AU, H, R, P, F, NP |
| PTX-917 | N/A | Revance Therapeutics, Inc. Presents at Goldman Sachs 42nd Annual Global Healthcare Conference, Jun-08-2021 04:40 PM | NSW, AU, H, R, P, F, NP |
| PTX-918 | N/A | Revance Therapeutics, Inc., Q2 2021 Earnings Call, Aug 05, 2021 | NSW, AU, H, R, P, F, NP |
| PTX-919 | N/A | Revance Therapeutics, Inc. Presents at Wells Fargo 2021 Virtual Healthcare Conference, Sep-09-2021 12:40 PM | NSW, AU, H, R, P, F, NP |
| PTX-920 | N/A | Revance Therapeutics, Inc., Q3 2021 Earnings Call, Nov 09, 2021 | NSW, AU, H, R, P, F, NP |
| PTX-921 | N/A | Revance Therapeutics, Inc., Q4 2021 Earnings Call, Feb 28, 2022 | NSW, AU, H, R, P, F, NP |
| PTX-922 | N/A | Revance Therapeutics, Inc., Q1 2022 Earnings Call, May 10, 2022 | NSW, AU, H, R, P, F, NP |
| PTX-923 | N/A | Revance Therapeutics, Inc., Q2 2022 Earnings Call, Aug 09, 2022 | NSW, AU, H, R, P, F, NP |
| PTX-924 | N/A | Revance Therapeutics, Inc. - Special Call (Sept. 8, 2020) | NSW, AU, H, R, P, F, NP |
| PTX-925 | N/A | Revance Therapeutics, Inc., Q3 2022 Earnings Call, Nov 08, 2022 | NSW, AU, H, R, P, F, NP |
| PTX-926 | N/A | Revance Therapeutics, Inc., Q4 2022 Earnings Call, Feb 28, 2023 | NSW, AU, H, R, P, F, NP |
| PTX-927 | N/A | Revance Therapeutics, Inc. Presents at Barclays Global Healthcare Conference, Mar-14-2023 09:00 AM | NSW, AU, H, R, P, F, NP |
| PTX-928 | N/A | Revance Therapeutics, Inc., Q1 2023 Earnings Call, May 09, 2023 | AU, H, R, P, F |
| PTX-929 | N/A | Revance Therapeutics, Inc. Presents at Goldman Sachs 44th Annual Global Healthcare Conference, Jun-12-2023 08:40 AM | NSW, AU, H, R, P, F, NP |
| PTX-930 | N/A | Revance Therapeutics, Inc., Q2 2023 Earnings Call, Aug 08, 2023 | AU, H, R, P, F |
| PTX-931 | N/A | Revance Therapeutics, Inc. - Analyst/Investor Day (Sept. 19, 2023) | NSW, AU, H, R, P, F, NP |
| PTX-932 | N/A | Revance Therapeutics, Inc., Q3 2023 Earnings Call, Nov 08, 2023 | NSW, AU, H, R, P, F, NP |
| PTX-933 | N/A | Revance Therapeutics, Inc., Q4 2023 Earnings Call, Feb 28, 2024 | AU, H, R, P, F |
| PTX-934 | N/A | Revance Therapeutics, Inc. Presents at Barclays 26th Annual Global Healthcare Conference 2024, Mar-12-2024 09:30 AM | NSW, AU, H, R, P, F, NP |
| PTX-935 | N/A | Revance Therapeutics, Inc., Q1 2024 Earnings Call, May 09, 2024 | NSW, AU, H, R, P, F, NP |
| PTX-936 | N/A | Revance Therapeutics, Inc. Presents at Goldman Sachs 45th Annual Global Healthcare Conference, Jun-11-2024 08:00 AM | NSW, AU, H, R, P, F, NP |
| PTX-937 | N/A | Revance Therapeutics, Inc., Q2 2024 Earnings Call, Aug 08, 2024 | NSW, AU, H, R, P, F, NP |
| PTX-938 | N/A | SEC Filing - Revance Therapeutics, Inc., Form 8-K (Aug. 28, 2024) | NSW, H, R, P, NP |

| *Allergan, Inc., v. Revance Therapeutics, Inc. et al.,*<br>Case No. 21-1411-RGA (D. Del.)<br>Plaintiff Allergan's Trial Exhibit List (dated June 25, 2025) | | | |
|---|---|---|---|
| **PTX No.** | **Bates Beg** | **Description** | **Objection** |
| PTX-939 | N/A | SEC Filing - Revance Therapeutics, Inc., Form 8-K (Aug. 12, 2024) | NSW, H, R, P, NP |
| PTX-940 | N/A | Presentation - Revance Therapeutics, Inc. (Oct. 29, 2015) | R, H, P, AU, F, NSW |
| PTX-941 | N/A | Presentation - Revance Therapeutics, Inc. (Nov. 15, 2015) | R, H, P, AU, F, NSW |
| PTX-942 | N/A | Presentation - Revance Therapeutics, Inc. (Mar. 15, 2016) | R, H, P, AU, F, NSW |
| PTX-943 | N/A | Presentation - Revance Therapeutics, Inc. (Dec. 12, 2016) | R, H, P, AU, F, NSW |
| PTX-944 | N/A | Presentation - Revance Therapeutics, Inc. (Mar. 7, 2017) | R, H, P, AU, F, NSW |
| PTX-945 | N/A | Presentation - Revance Therapeutics, Inc. (May 18, 2017) | R, H, P, AU, F, NSW |
| PTX-946 | N/A | Presentation - Revance Therapeutics, Inc. (Sept. 26, 2017) | R, H, P, AU, F, NSW |
| PTX-947 | N/A | Presentation - Revance Therapeutics, Inc. (Dec. 5, 2017) | R, H, P, AU, F, NSW |
| PTX-948 | N/A | Presentation - Revance Therapeutics, Inc. (Apr. 19, 2018) | R, H, P, AU, F, NSW |
| PTX-949 | N/A | Presentation - Revance Therapeutics, Inc. (May 22, 2018) | R, H, P, AU, F, NSW |
| PTX-950 | N/A | Presentation - Revance Therapeutics, Inc. (Nov. 14, 2018) | R, H, P, AU, F, NSW |
| PTX-951 | N/A | Presentation - Revance Therapeutics, Inc. (Dec. 4, 2018) | R, H, P, AU, F, NSW |
| PTX-952 | N/A | Presentation - Revance Therapeutics, Inc. (Mar. 13, 2019) | R, H, P, AU, F, NSW |
| PTX-953 | N/A | Presentation - Revance Therapeutics, Inc. (June 11, 2019) | R, H, P, AU, F, NSW |
| PTX-954 | N/A | Presentation - Revance Therapeutics, Inc. (Nov. 13, 2019) | R, H, P, AU, F, NSW |
| PTX-955 | N/A | Presentation - Revance Therapeutics, Inc. (Jan. 10, 2020) | R, H, P, AU, F, NSW |
| PTX-956 | N/A | Presentation - Revance Therapeutics, Inc. (Jan. 16, 2020) | R, H, P, AU, F, NSW |
| PTX-957 | N/A | Presentation - Revance Therapeutics, Inc. (May 19, 2020) | R, H, P, AU, F, NSW |
| PTX-958 | N/A | Presentation - Revance Therapeutics, Inc. (Oct. 14, 2020) | R, H, P, AU, F, NSW |
| PTX-959 | N/A | Presentation - Revance Therapeutics, Inc. (Jan. 14, 2021) | R, H, P, AU, F, NSW |
| PTX-960 | N/A | Expert Report of Dr. Christine Meyer dated November 4, 2024 | R, P, F, DB, L, H, DE |
| PTX-961 | N/A | Meyer Exhibit 20: Lost Profits on Botox Vials Lost Due to Revance's Alleged Infringement in the U.S. September 2022 through October 18, 2024 | R, P, F, H, L |
| PTX-962 | N/A | Meyer Exhibit 21A: Damages Due to Revance's Alleged Infringement of Asserted Patents Under 18-Month Delay | R, P, F, H, L |
| PTX-963 | N/A | Meyer Exhibit 21B: Damages Due to Revance's Alleged Infringement of Asserted Patents Under 12-Month Delay | R, P, F, H, L |
| PTX-964 | ALGN-1848434 | Certificate of Incorporation On Change Of Name | R, P, F, H, AU, NSW, NP |
| PTX-965 | ALGN-1848435 | Agreement | R, P, F, H, AU, NSW, NP |
| PTX-966 | ALGN-1848439 | Certificate of Incorporation on Change Of Name | R, P, F, H, AU, NSW, NP |
| PTX-967 | ALGN-1848440 | Certificate of Incorporation on re-registration as an unlimited company | R, P, F, H, AU, NSW, NP |
| PTX-968 | ALGN-1848441 | Certificate of Incorporation on re-registration as an unlimited company | R, P, F, H, AU, NSW, NP |
| PTX-969 | ALGN-1848442 | Amendment to Botox® Distributorship Agreement | R, P, F, H, AU, NSW, NP |
| PTX-970 | ALGN-1848444 | Assignment Agreement | R, P, F, H, AU, NSW, NP |
| PTX-971 | ALGN-1848446 | Assignment Agreement | R, P, F, H, AU, NSW, NP |

# EXHIBIT 7-B

**Allergan, Inc. v. Revance Therapeutics, Inc.; C.A. No. 21-1411-RGA**
**Defendants' Exhibit List**

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-001** | 2021.10.19 | ALGN-0000212 | ALGN-0000251 | US 11,147,878 B2 | No objection at this time | JTX_001 |
| **DTX-002** | N/A | ALGN-0011430 | ALGN-0011447 | 3.2.S.2.2 Description of Manufacturing Process and Process Controls | No objection at this time | |
| **DTX-003** | N/A | ALGN-0012309 | ALGN-0012342 | 3.2.A.2 Adventitious Agent Safety Evaluation | No objection at this time | |
| **DTX-004** | 2010.01.01 | ALGN-0012619 | ALGN-0012622 | Memorandum of Understanding between Allergan, Inc. and Allergan Botox Limited, Allergan Pharmaceuticals Holdings (Ireland) Limited, Allergan Pharmaceuticals Ireland | No objection at this time | JTX_011 |
| **DTX-005** | 2005.03.01 | ALGN-0012886 | ALGN-0012897 | [redacted] | No objection at this time | JTX_013 |
| **DTX-006** | 2008.04.08 | ALGN-0013186 | ALGN-0013224 | Certified US 7,354,740 B2 | No objection at this time | JTX_003 |
| **DTX-007** | 2021.06.15 | ALGN-0013262 | ALGN-0013303 | Certified US 11,033,625 B2 | No objection at this time | JTX_005 |
| **DTX-008** | 2021.12.21 | ALGN-0013375 | ALGN-0013404 | Certified US 11,203,748 B2 | No objection at this time | JTX_004 |
| **DTX-009** | 2022.03.29 | ALGN-0013405 | ALGN-0013445 | Certified US 11,285,216 B2 | No objection at this time | JTX_002 |
| **DTX-010** | 2011.06.30 | ALGN-0029144 | ALGN-0029356 | [redacted] Laboratory Notebook | No objection at this time | JTX_012 |
| **DTX-011** | 2002.06.12 | ALGN-0032081 | ALGN-0032085 | [redacted] | R; H; P | JTX_061 |
| **DTX-012** | 2005.06.24 | ALGN-0032409 | ALGN-0032410 | [redacted] | R; H; P; | |
| **DTX-013** | 2016.05.06 | ALGN-0041619 | ALGN-0041619 | [redacted] | R; H; P; | |
| **DTX-014** | 2008.09.02 | ALGN-0043345 | ALGN-0043401 | [redacted] | R; H; P | JTX_016 |
| **DTX-015** | 2007.07.22 | ALGN-0044134 | ALGN-0044157 | [redacted] | R; H; P; | |
| **DTX-016** | 2007.07.11 | ALGN-0044135 | ALGN-0044157 | [redacted] | R; H; P; | |
| **DTX-017** | 2005.03.14 | ALGN-0045085 | ALGN-0045086 | [redacted] | No objection at this time | |
| **DTX-018** | 2015.04.06 | ALGN-0048173 | ALGN-0048186 | DS2 Program Overview presentation | R; H; P; | JTX_060 |
| **DTX-019** | 2017.05.30 | ALGN-0050445 | ALGN-0050447 | [redacted] | R; H; P; | |
| **DTX-020** | 2017.10.30 | ALGN-0054939 | ALGN-0054975 | DS1 & DS2 Impurity Clearance and DS Tests Comparison presentation | R; H; P; | |
| **DTX-021** | N/A | ALGN-0056823 | ALGN-0056827 | [redacted] | R; H; P | |
| **DTX-022** | 2020.10.13 | ALGN-0056851 | ALGN-0056854 | [redacted] | R; H; P; | |
| **DTX-023** | 2020.11.06 | ALGN-0056886 | ALGN-0056900 | [redacted] | R; H; P; | |
| **DTX-024** | 2021.05.00 | ALGN-0057205 | ALGN-0057241 | LAI scenario planning presentation | R; H; P; | |
| **DTX-025** | 2019.03.29 | ALGN-0059041 | ALGN-0059055 | [redacted] | R; H; P; | JTX_071 |
| **DTX-026** | 2019.09.23 | ALGN-0059723 | ALGN-0059726 | [redacted] | R; H; P; | JTX_072 |
| **DTX-027** | 2020.04.20 | ALGN-0061184 | ALGN-0061192 | [redacted] | R; H; P; | JTX_080 |
| **DTX-028** | 2021.03.00 | ALGN-0065104 | ALGN-0065118 | [redacted] | R; H; P; | JTX_069 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-029** | 2018.01.24 | ALGN-0066906 | ALGN-0066907 | [redacted] | R; H; P; | |
| **DTX-030** | N/A | ALGN-0067825 | ALGN-0067828 | [redacted] | R; H; P | |
| **DTX-031** | N/A | ALGN-0067860 | ALGN-0067860 | [redacted] | R; H; P | JTX_161 |
| **DTX-032** | 2020.04.27 | ALGN-0067922 | ALGN-0067923 | [redacted] | R; H; P; | |
| **DTX-033** | 2024.07.17 | ALGN-0067924 | ALGN-0067924 | [redacted] | R; H; P | JTX_163 |
| **DTX-034** | 2020.09.03 | ALGN-0068368 | ALGN-0068370 | [redacted] | R; H; P; | JTX_079 |
| **DTX-035** | 2020.09.14 | ALGN-0068549 | ALGN-0068563 | [redacted] | R; H; P; | |
| **DTX-036** | 2020.10.02 | ALGN-0068862 | ALGN-0068876 | [redacted] | R; H; P; | |
| **DTX-037** | 2020.12.14 | ALGN-0069096 | ALGN-0069099 | [redacted] | R; H; P; | JTX_074 |
| **DTX-038** | 2021.02.00 | ALGN-0069325 | ALGN-0069383 | [redacted] | R; H; P; | |
| **DTX-039** | 2021.02.00 | ALGN-0069510 | ALGN-0069568 | [redacted] | R; H; P; | JTX_063 |
| **DTX-040** | N/A | ALGN-0069701 | ALGN-0069703 | [redacted] | R; H; P; | |
| **DTX-041** | 2021.04.07 | ALGN-0069887 | ALGN-0069888 | [redacted] | R; H; P; | JTX_077 |
| **DTX-042** | 2022.00.00 | ALGN-0070354 | ALGN-0070385 | [redacted] | R; H; P; | JTX_064 |
| **DTX-043** | N/A | ALGN-0070440 | ALGN-0070440 | [redacted] | R; H; P | JTX_162 |
| **DTX-044** | N/A | ALGN-0070510 | ALGN-0070513 | [redacted] | R; H; P | JTX_166 |
| **DTX-045** | 2008.08.04 | ALGN-0104382 | ALGN-0104417 | BOTOX® Label, 8/4/2008 | R; H; P; | |
| **DTX-046** | N/A | ALGN-0152054 | ALGN-0152508 | Briefing Package, BOTOX® and BOTOX® Cosmetic (Botulinum Toxin Type A) | R; H; P | |
| **DTX-047** | 2020.07.00 | ALGN-0162591 | ALGN-0162612 | BOTOX® Cosmetic Label (revised 07/2020) | R; H; P; | JTX_050 |
| **DTX-048** | 2000.00.00 | ALGN-0430534 | ALGN-0430537 | BOTOX® label (2000) | R; H; P; | JTX_049 |
| **DTX-049** | 2008.06.00 | ALGN-1362172 | ALGN-1362229 | [redacted] | R; H; P | JTX_062 |
| **DTX-050** | 2003.11.18 | ALGN-1363000 | ALGN-1363041 | [redacted] | R; H; P | JTX_021 |
| **DTX-051** | 2004.01.29 | ALGN-1363042 | ALGN-1363083 | [redacted] | R; H; P | |
| **DTX-052** | 2004.07.01 | ALGN-1363084 | ALGN-1363126 | [redacted] | R; H; P | JTX_124 |
| **DTX-053** | 2008.07.21 | ALGN-1363342 | ALGN-1363446 | [redacted] | R; H; P | JTX_017 |
| **DTX-054** | 2011.03.22 | ALGN-1363447 | ALGN-1363490 | [redacted] | R; H; P | JTX_083 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-055** | 2009.11.09 | ALGN-1363491 | ALGN-1363536 | [redacted] | R; H; P | JTX_014 |
| **DTX-056** | 2008.05.30 | ALGN-1363537 | ALGN-1363667 | [redacted] | R; H; P; | JTX_020 |
| **DTX-057** | 2010.02.02 | ALGN-1363727 | ALGN-1363762 | [redacted] | R; H; P | JTX_019 |
| **DTX-058** | 2009.11.11 | ALGN-1363763 | ALGN-1363786 | [redacted] | R; H; P | JTX_018 |
| **DTX-059** | N/A | ALGN-1821473 | ALGN-1821481 | [redacted] | R; H; P; | |
| **DTX-060** | 2023.00.00 | ALGN-1821482 | ALGN-1821738 | [redacted] | R; H; P; | JTX_070 |
| **DTX-061** | 2022.04.00 | ALGN-1824241 | ALGN-1824307 | [redacted] | R; H; P; | JTX_087 |
| **DTX-062** | 2022.01.00 | ALGN-1824647 | ALGN-1824820 | [redacted] | R; H; P; | |
| **DTX-063** | N/A | ALGN-1825251 | ALGN-1825401 | Facial Injectables ATU: Neurotoxins Final Report presentation | R; H; P; | JTX_078 |
| **DTX-064** | 2021.05.24 | ALGN-1825805 | ALGN-1825925 | [redacted] | R; H; P; | JTX_085 |
| **DTX-065** | 2022.04.19 | ALGN-1825926 | ALGN-1826011 | [redacted] | R; H; P; | JTX_073 |
| **DTX-066** | 2022.08.19 | ALGN-1826858 | ALGN-1826886 | [redacted] | R; H; P; | |
| **DTX-067** | 2022.00.00 | ALGN-1828704 | ALGN-1828709 | [redacted] | R; H; P | |
| **DTX-068** | 2022.11.00 | ALGN-1829422 | ALGN-1830268 | [redacted] | R; H; P | |
| **DTX-069** | 2023.06.02 | ALGN-1834340 | ALGN-1834384 | Daxxify® Launch Tracker Main Quant Study Report presentation | No objection at this time | JTX_169 |
| **DTX-070** | 2023.06.20 | ALGN-1834385 | ALGN-1834435 | Daxxify® Launch Tracker Main Quant Study Report presentation | No objection at this time | JTX_164 |
| **DTX-071** | 2023.05.31 | ALGN-1834948 | ALGN-1835020 | [redacted] | R; H; P; | JTX_086 |
| **DTX-072** | 2019.06.12 | ALGN-1836986 | ALGN-1836986 | [redacted] | R; H; P | |
| **DTX-073** | 2020.08.03 | ALGN-1837368 | ALGN-1837372 | [redacted] | R; H; P; | JTX_076 |
| **DTX-074** | N/A | ALGN-1837437 | ALGN-1837437 | [redacted] | R; H; P | JTX_165 |
| **DTX-075** | 2021.06.01 | ALGN-1837670 | ALGN-1837670 | [redacted] | R; H; P | JTX_172 |
| **DTX-076** | 2020.08.00 | ALGN-1838251 | ALGN-1838276 | [redacted] | R; H; P; | |
| **DTX-077** | 2007.06.00 | ALGN-1841581 | ALGN-1841600 | [redacted] | R; H; P; | |
| **DTX-078** | N/A | ALGN-1841668 | ALGN-1841694 | [redacted] | R; H; P; | |
| **DTX-079** | N/A | ALGN-1842908 | ALGN-1842931 | [redacted] | R; H; P | |
| **DTX-080** | 2009.11.18 | ALGN-1843012 | ALGN-1843065 | [redacted] | R; H; P | JTX_015 |
| **DTX-081** | 2022.05.09 | ALGN-1843788 | ALGN-1843825 | [redacted] | R; H; P; | JTX_067 |
| **DTX-082** | 2023.00.00 | ALGN-1843826 | ALGN-1843851 | [redacted] | R; H; P; | JTX_159 |
| **DTX-083** | 2023.06.27 | ALGN-1843852 | ALGN-1844022 | [redacted] | R; H; P; | JTX_160 |
| **DTX-084** | 2023.06.05 | ALGN-1844023 | ALGN-1844309 | [redacted] | R; H; P; | JTX_068 |
| **DTX-085** | 2021.05.10 | ALGN-1844310 | ALGN-1844339 | [redacted] | R; H; P; | JTX_066 |
| **DTX-086** | N/A | ALGN-1844340 | ALGN-1844412 | Aesthetics Neurotoxin LRP Strategy presentation | R; H; P; | JTX_158 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-087** | 2020.11.00 | ALGN-1844413 | ALGN-1844439 | [redacted] | R; H; P; | JTX_065 |
| **DTX-088** | 2013.09.25 | ALGN-1844440 | ALGN-1844541 | [redacted]. | R; H; P; F | JTX_182 |
| **DTX-089** | 2003.01.01 | ALGN-1844747 | ALGN-1844768 | [redacted] | R; H; P; F | JTX_181 |
| **DTX-090** | 2010.11.10 | ALGN-1844769 | ALGN-1844810 | [redacted] | R; H; P; F | JTX_180 |
| **DTX-091** | 2020.00.00 | ALGN-1845217 | ALGN-1845217 | Rupp, D. et. al., "A Cell-Penetrating Peptide (CPP) Did Not Decrease 150-kDa BoNT/A Toxin Adsorption to Surfaces or Increase Toxin Potency or | No objection at this time | JTX_059 |
| **DTX-092** | 2021.05.03 | ALGN-1845266 | ALGN-1845284 | [redacted] | R; H; P; | JTX_075 |
| **DTX-093** | N/A | ALGN-1845665 | ALGN-1845669 | [redacted] | R; H; P | |
| **DTX-094** | N/A | ALGN-1845835 | ALGN-1845835 | Sales charts | R; H; P | JTX_081 |
| **DTX-095** | N/A | ALGN-1845836 | ALGN-1845836 | [redacted] | R; H; P | |
| **DTX-096** | N/A | ALGN-1845837 | ALGN-1845837 | [redacted] | R; H; P | |
| **DTX-097** | 2023.11.15 | ALGN-1845839 | ALGN-1845839 | [redacted] | R; H; P | |
| **DTX-098** | N/A | ALGN-1845840 | ALGN-1845840 | [redacted] | R; H; P | |
| **DTX-099** | N/A | ALGN-1845841 | ALGN-1845841 | [redacted] | R; H; P | |
| **DTX-100** | N/A | ALGN-1845842 | ALGN-1845842 | [redacted] | R; H; P | |
| **DTX-101** | N/A | ALGN-1845843 | ALGN-1845843 | [redacted] | R; H; P | |
| **DTX-102** | 2023.10.00 | ALGN-1845844 | ALGN-1845868 | [redacted] | R; H; P; | |
| **DTX-103** | 2022.04.00 | ALGN-1845869 | ALGN-1845910 | [redacted] | R; H; P; | |
| **DTX-104** | 2011.11.02 | ALGN-1846053 | ALGN-1846097 | [redacted] | R; H; P | JTX_084 |
| **DTX-105** | 1998.00.00 | ALGN-1846054 | ALGN-1846124 | Janson, J. and Rydén, L., Protein Purification: Principles, High Resolution Methods, and Applications, *Wiley-VCH* , 3-309 (2d ed. 1998) | R; H; P | JTX_131 |
| **DTX-106** | 2007.00.00 | ALGN-1846125 | ALGN-1846233 | Shukla, A. et al., Process Scale Bioseparations for the Biopharmaceutical Industry, *Taylor & Francis* (2007) | R; H; P | JTX_150 |
| **DTX-107** | N/A | ALGN-1846297 | ALGN-1846297 | [redacted] | R; H; P | JTX_167 |
| **DTX-108** | N/A | ALGN-1846299 | ALGN-1846299 | [redacted] | R; H; P | JTX_170 |
| **DTX-109** | N/A | ALGN-1846301 | ALGN-1846301 | [redacted] | R; H; P | JTX_171 |
| **DTX-110** | 2023.05.09 | ALGN-1846302 | ALGN-1846317 | Revance Therapeutics, Inc. NasdaqGM:RVNC FQ1 2023 Earnings Call Transcripts | R; H; P; F | JTX_179 |
| **DTX-111** | 2005.06.00 | ALGN-1846533 | ALGN-1846549 | Guidance for Industry, "Q5E Comparability of Biotechnological/Biological Products Subject to Changes in Their Manufacturing Process" | R; H; P | JTX_184 |
| **DTX-112** | N/A | ALGN-1846586 | ALGN-1846586 | [redacted] | R; H; P | JTX_168 |
| **DTX-113** | 2007.12.13 | ALGN-1846714 | ALGN-1846731 | Committee for Medicinal Products for Human Use (CHMP), Guideline on Immunogenicity Assessment of Biotechnology-Derived Therapeutic Proteins | R; H; P | JTX_126 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-114** | 2000.04.01 | ALGN-1846732 | ALGN-1846733 | Letter from Department of Health & Human Services, Food & Drug Administration to Manufacturers of Biological Products (April 19, 2000) | R; H; P | JTX_132 |
| **DTX-115** | 1998.01.06 | ALGN-1846758 | ALGN-1846760 | Federal Register, "Rules and Regulations," 63(3):406-408 (1998) | R; H; P | JTX_141 |
| **DTX-116** | 2016.10.18 | ALGN-1847206 | ALGN-1847220 | US 9,469,849 B2 | R; H; P | JTX_117 |
| **DTX-117** | 1994.00.00 | ALGN-1847241 | ALGN-1847386 | Scopes, R., "Protein Purification: Principles and Practice," *Springer-Verlag* , (3d ed. 1994) | R; H; P | JTX_147 |
| **DTX-118** | 2003.06.05 | ALGN-1847403 | ALGN-1847642 | Overview of the BSE risk assessments of the European Commission's Scientific Steering Committee (SSC) and its TSE/BSE *ad hoc* Group | R; H; P | JTX_156 |
| **DTX-119** | 2023.10.26 | ALGN-1847813 | ALGN-1847817 | Business Wire, "DAXXIFY Becomes First Facial Injectable to be Named to TIME's Best Inventions" (Oct. 26, 2023) | R; H; P | JTX_103 |
| **DTX-120** | 2023.10.24 | ALGN-1847818 | ALGN-1847819 | TIME, The Best Inventions of 2023, Smoother Skin, Revance Therapeutics Daxxify, https://time.com/collection/best-inventions-2023/6326375/revance-theraputics-daxxify/ (Oct. 24, 2023) | R; H; P | JTX_154 |
| **DTX-121** | N/A | ALGN-1847957 | ALGN-1847963 | MilliPore Sigma, "Fetal Bovine Serum" | R; H; P | JTX_136 |
| **DTX-122** | N/A | ALGN-1847964 | ALGN-1847968 | MilliPore Sigma, "Bovine Serum Albumin" | R; H; P | JTX_135 |
| **DTX-123** | 2023.12.14 | ALGN-1847969 | ALGN-1848001 | ICH Q2(R2) Guideline on validation of analytical procedures | No objection at this time | JTX_129 |
| **DTX-124** | 2013.00.00 | ALGN-1848002 | ALGN-1848027 | Pellett, S., "Progress in Cell Based Assays for Botulinum Neurotoxin Detection," *Curr Top Microbiol Immunol.* , 364:257-285 (2013) | R; H; P | JTX_139 |
| **DTX-125** | 2022.03.00 | ALGN-1848028 | ALGN-1848030 | Thiry, M. and Cingolani, D., "Optimizing scale-up fermentation processes," *TRENDS in Biotechnology* , 20(3):103-105 (2002) | R; H; P | JTX_153 |
| **DTX-126** | 2009.09.00 | ALGN-1848031 | ALGN-1848056 | Mahler, H. et al., "Protein Aggregation: Pathways, Induction Factors and Analysis," *Journal of Pharmaceutical Sciences* , 98(9):2909-2934 (2009) | R; H; P | JTX_133 |
| **DTX-127** | 2022.00.00 | ALGN-1848057 | ALGN-1848085 | Neagu, A. et al., "Applications of Tandem Mass Spectrometry (MS/MS) in Protein Analysis for Biomedical Research," *Molecules* , 27(2411):1-29 (2022) | R; H; P | JTX_138 |
| **DTX-128** | 2013.11.00 | ALGN-1848086 | ALGN-1848089 | Shimoni, Y. et al., "Process Improvements Increase Production Capacity of a Legacy Product," *BioProcess International* , 22(10):26-31 (2013) | R; H; P | JTX_149 |
| **DTX-129** | 2006.09.15 | ALGN-1848090 | ALGN-1848097 | Cromwell, M. et al., "Protein Aggregation and Bioprocessing," *The AAPS Journal* , 8(3):E572-E579 (2006) | R; H; P | JTX_127 |
| **DTX-130** | 2008.00.00 | ALGN-1848098 | ALGN-1848102 | Roche, M. et al., "The antioxidant properties of serum albumin," *FEBS Letters* , 582:1783-1787 (2008) | R; H; P | JTX_142 |
| **DTX-131** | 2022.00.00 | ALGN-1848167 | ALGN-1848167 | Pulkoski-Gross et al., "A Cell-Penetrating Peptide Binds Directly to and Enhances Membrane Binding of the Core Toxin of Botulinum Toxin Type A (BoNTA)," *TOXINS* (2022) | R; H; P | JTX_140 |
| **DTX-132** | 2018.08.29 | REV_DAX-00000587 | REV_DAX-00000595 | [redacted] | R; H; P; F | JTX_108 |
| **DTX-133** | 2018.12.01 | REV_DAX-00000596 | REV_DAX-00000621 | [redacted] | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-134** | 2016.06.15 | REV_DAX-00000737 | REV_DAX-00000753 | [redacted] | R; H; P; F | JTX_109 |
| **DTX-135** | 2018.11.01 | REV_DAX-00000754 | REV_DAX-00001137 | [redacted] | R; H; P; | |
| **DTX-136** | 2016.09.15 | REV_DAX-00001141 | REV_DAX-00001171 | [redacted] | R; H; P; | |
| **DTX-137** | 2016.05.06 | REV_DAX-00001172 | REV_DAX-00001774 | [redacted] | R; H; P; F | |
| **DTX-138** | 2018.07.12 | REV_DAX-00001787 | REV_DAX-00001909 | [redacted] | R; H; P; F | |
| **DTX-139** | 2019.11.15 | REV_DAX-00001958 | REV_DAX-00001968 | BLA 761127, 2.3.P.2 Pharmaceutical Development | R; H; P | |
| **DTX-140** | 2019.11.15 | REV_DAX-00001969 | REV_DAX-00001978 | BLA 761127, 2.3.P.3 Manufacture | R; H; P | |
| **DTX-141** | 2019.11.15 | REV_DAX-00002010 | REV_DAX-00002020 | BLA 761127, 2.3.S.3 Characterization | R; H; P | JTX_031 |
| **DTX-142** | 2019.09.23 | REV_DAX-00002028 | REV_DAX-00002053 | BLA 761127, 2.4 Nonclinical Overview | R; H; P | |
| **DTX-143** | 2019.11.05 | REV_DAX-00003306 | REV_DAX-00003306 | BLA 761127, 3.2.P.1 Description and Composition | R; H; P | JTX_022 |
| **DTX-144** | 2019.11.09 | REV_DAX-00003307 | REV_DAX-00003309 | BLA 761127, 3.2.P.2.1 Components of the Drug Product | R; H; P | JTX_036 |
| **DTX-145** | 2019.11.09 | REV_DAX-00003310 | REV_DAX-00003339 | BLA 761127, 3.2.P.2.2 Description of Manufacturing Process and Process Controls | R; H; P | JTX_023 |
| **DTX-146** | N/A | REV_DAX-00003437 | REV_DAX-00003457 | [redacted] RTP00 [redacted] | R; H; P; F | JTX_094 |
| **DTX-147** | 2019.11.07 | REV_DAX-00003564 | REV_DAX-00003564 | BLA 761127, 3.2.P.3.2 Batch Formula | R; H; P | JTX_038 |
| **DTX-148** | 2019.11.08 | REV_DAX-00003565 | REV_DAX-00003574 | BLA 761127, 3.2.P.3.3 Description of Manufacturing Process and Process Controls | R; H; P | JTX_039 |
| **DTX-149** | 2019.11.07 | REV_DAX-00004870 | REV-DAX_00004892 | BLA 761127, 3.2.S.2.3 Control of Materials | R; H; P | JTX_040 |
| **DTX-150** | N/A | REV_DAX-00005126 | REV_DAX-00005146 | [redacted] | R; H; P; F | JTX_101 |
| **DTX-151** | 2019.11.07 | REV_DAX-00006132 | REV_DAX-00006143 | BLA 761127, 3.2.S.4.4 Batch Analyses | R; H; P | |
| **DTX-152** | 2019.11.07 | REV_DAX-00006144 | REV_DAX-00006171 | BLA 761127, 3.2.S.4.5 Justification of Specification | R; H; P | JTX_042 |
| **DTX-153** | N/A | REV_DAX-00007355 | REV_DAX-00007535 | [redacted] | R; H; P; F | |
| **DTX-154** | 2019.07.18 | REV_DAX-00021856 | REV_DAX-00022597 | [redacted] | R; H; P; F | |
| **DTX-155** | 2019.07.18 | REV_DAX-00539399 | REV_DAX-00540118 | [redacted] | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-156** | 2011.00.00 | REV_DAX-01071813 | REV_DAX-01071821 | Stone, H. et al., "Characterization of diffusion and duration of action of a new botulinum toxin type A formulation," *Toxicon* , 58:159–167 (2011) | R; H; P; F | JTX_121 |
| **DTX-157** | 2020.02.20 | REV_DAX-02085433 | REV_DAX-02085449 | BLA 761127, 1.11.1 Quality Information Amendment Attachment 2 – Control Strategy for Quality Attributes | R; H; P | JTX_033 |
| **DTX-158** | 2020.04.30 | REV_DAX-02085880 | REV_DAX-02085898 | BLA 761127, 3.2.A.1 Facilities and Equipment | R; H; P | JTX_034 |
| **DTX-159** | 2020.07.07 | REV_DAX-02086403 | REV_DAX-02086421 | BLA 761127, 3.2.A.1 Facilities and Equipment | R; H; P | JTX_035 |
| **DTX-160** | 2020.07.17 | REV_DAX-02086577 | REV_DAX-02086629 | BLA 761127, 3.2.S.7.1 Stability Summary and Conclusions | R; H; P | JTX_043 |
| **DTX-161** | 2020.10.29 | REV_DAX-02088378 | REV_DAX-02088409 | [redacted] | R; H; P; F | |
| **DTX-162** | 2020.11.08 | REV_DAX-02088441 | REV_DAX-02088441 | BLA 761127, 3.2.S.4.1 Specification | R; H; P | JTX_028 |
| **DTX-163** | 2020.12.17 | REV_DAX-02088824 | REV_DAX-02088863 | [redacted] | R; H; P; F | |
| **DTX-164** | 2021.11.23 | REV_DAX-02088949 | REV_DAX-02089182 | [redacted] | R; H; P | JTX_025 |
| **DTX-165** | 2021.10.25 | REV_DAX-02089520 | REV_DAX-02089522 | [redacted] | R; H; P; F | |
| **DTX-166** | 2022.03.02 | REV_DAX-02090911 | REV_DAX-02090925 | [redacted] | R; H; P | JTX_030 |
| **DTX-167** | 2022.03.08 | REV_DAX-02104270 | REV_DAX-02104328 | [redacted] | R; H; P | |
| **DTX-168** | 2022.07.22 | REV_DAX-02104605 | REV_DAX-02104626 | [redacted] | R; H; P | JTX_032 |
| **DTX-169** | 2022.08.29 | REV_DAX-02104774 | REV_DAX-02104784 | [redacted] | R; H; P | |
| **DTX-170** | 2022.08.29 | REV_DAX-02104843 | REV_DAX-02105003 | [redacted] | R; H; P; F; MIL | JTX_029 |
| **DTX-171** | 2020.02.13 | REV_DAX-02105656 | REV_DAX-02105663 | [redacted] | R; H; P; F | |
| **DTX-172** | N/A | REV_DAX-02105998 | REV_DAX-02106024 | [redacted] | R; H; P; F | JTX_026 |
| **DTX-173** | *Intentionally Omitted* | | | | | |
| **DTX-174** | *Intentionally Omitted* | | | | | |
| **DTX-175** | 2022.09.16 | REV_DAX-02154906 | REV_DAX-02155236 | [redacted] | R; H; P; F | JTX_088 |
| **DTX-176** | 2021.12.07 | REV_DAX-02158281 | REV_DAX-02158295 | [redacted] | R; H; P; F | |
| **DTX-177** | *Intentionally Omitted* | | | | | |
| **DTX-178** | 2003.00.00 | REV_DAX-02169017 | REV_DAX-02169024 | BOTOX® COSMETIC Product Information, *Physicians' Desk Reference* , 57th ed., pp. 547-552, Thomas PDR, New Jersey (2003) | R; H; P; F | |
| **DTX-179** | 1997.05.18 | REV_DAX-02169098 | REV_DAX-02169104 | Carpenter, J. et al., "Rational Design of Stable Lyophilized Protein Formulations: Some Practical Advice," *Pharmaceutical Research* , 14(8):969–975 (1997) | R; H; P; F | |
| **DTX-180** | 2002.00.00 | REV_DAX-02169105 | REV_DAX-02169150 | Carpenter, J. and Manning, M., *Rational Design of Stable Protein Formulations: Theory and Practice* (1st ed.), 109–175 (2002) | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-181** | 1966.02.23 | REV_DAX-02169159 | REV_DAX-02169165 | DasGupta, B. et al., "Chromatographic Fractionation of the Crystalline Toxin of Clostridium botulinum Type A," *Biochemical and Biophysical Research Communications* , 22(6):750–756 (1966) | R; H; P; F | |
| **DTX-182** | 1967.08.11 | REV_DAX-02169166 | REV_DAX-02169168 | DasGupta, B. and Boroff, D., "Chromatographic isolation of hemagglutinin-free neurotoxin from crystalline toxin of *Clostridium botulinum* type A," *Biochim. Biophys. Acta* , 147:603–605 (1967) | R; H; P; F | |
| **DTX-183** | 1968.03.10 | REV_DAX-02169169 | REV_DAX-02169177 | DasGupta, B. and Boroff, D., "Separation of Toxin and Hemagglutinin from Crystalline Toxin of *Clostridium botulinum* Type A by Anion Exchange Chromatography and Determination of Their Dimensions by Gel Filtration," *The Journal of Biological Chemistry* , 243(5):1065–1072 (1968) | R; H; P; F | |
| **DTX-184** | 1968.00.00 | REV_DAX-02169178 | REV_DAX-02169184 | DasGupta, B. et al., "Isolation of Chromatographically Pure Toxin of Clostridium botulinum Type B," *Biochemical and Biophysical Research* | R; H; P; F | |
| **DTX-185** | 1976.09.00 | REV_DAX-02169195 | REV_DAX-02169201 | DasGupta, B. and Sugiyama, H., "Molecular Forms of Neurotoxins in Proteolytic *Clostridium botulinum* Type B Cultures," *Infection and Immunity* , 14(3):680–686 (1976) | R; H; P; F | |
| **DTX-186** | 1984.00.00 | REV_DAX-02169202 | REV_DAX-02169210 | DasGupta, B. and Sathyamoorthy, V., "Purification and Amino Acid Composition of Type A Botulinum Neurotoxin," *Toxicon* , 22(3):415–424 (1984) | R; H; P; F | JTX_111 |
| **DTX-187** | 1990.05.00 | REV_DAX-02169228 | REV_DAX-02169233 | Dekleva, M. and DasGupta, B., "Purification and Characterization of a Protease from *Clostridium botulinum* Type A That Nicks Single-Chain Type A Botulinum Neurotoxin into the Di-Chain Form," *Journal of Bacteriology* , 172(5):2498–2503 (1990) | R; H; P; F | |
| **DTX-188** | 1970.03.02 | REV_DAX-02169584 | REV_DAX-02169590 | DasGupta, B. et al., "Purification of *Clostridium Botulinum* Type A Toxin," *Biochimica et Biophysica Acta* , 214:343–349 (1970) | R; H; P; F | |
| **DTX-189** | 1956.06.25 | REV_DAX-02169625 | REV_DAX-02169630 | Duff, J. et al., "Studies on Immunity to Toxins of *Clostridium Botulinum* ," *Isolation of Botulinum Toxin* , 73:42–47 (1957) | R; H; P; F | |
| **DTX-190** | 1999.11.00 | REV_DAX-02169854 | REV_DAX-02169871 | Guidance for Industry, Revised Precautionary Measures to Reduce the Possible Risk of Creutzfeldt-Jakob Disease (CJD) and New Variant Creutzfeldt-Jakob Disease (nvCJD) by Blood and Blood Products | R; H; P; F | JTX_112 |
| **DTX-191** | 2006.03.05 | REV_DAX-02169945 | REV_DAX-02169969 | GB 2419527 A | R; H; P; F | |
| **DTX-192** | 1999.01.20 | REV_DAX-02169988 | REV_DAX-02169994 | Gessler, F. and Böhnel, H., "Production and purification of *Clostridium botulinum* type C and D neurotoxin," *FEMS Immunology and Medical Microbiology* , 24:361–367 (1999) | R; H; P; F | |
| **DTX-193** | 1994.00.00 | REV_DAX-02170020 | REV_DAX-02170250 | Goodnough, M., Ph.D., "Characterization and stabilization of *Clostridium botulinum* neurotoxin for medical use," University of Wisconsin-Madison (1994) | R; H; P; F | JTX_110 |
| **DTX-194** | 1976.02.00 | REV_DAX-02170262 | REV_DAX-02170270 | Hatheway, C., "Toxoid of *Clostridium botulinum* Type F: Purification and Immunogenicity Studies," *Applied and Environmental Microbiology* , 31(2):234–242 (1976) | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-195** | 2003.00.00 | REV_DAX-02170514 | REV_DAX-02170522 | Johnson, S. et al., “Scale-up of the fermentation and purification of the recombinant heavy chain fragment C of botulinum neurotoxin serotype F, expressed in *Pichia pastoris* ,” *Protein Expression & Purification* , 32:1–9 (2003) | R; H; P; F | |
| **DTX-196** | 2000.00.00 | REV_DAX-02170715 | REV_DAX-02170729 | Malizio, C. et al., “Purification of *Clostridium botulinum* Type A Neurotoxin,” *Methods in Molecular Biology* , 145:27–39 (2000) | R; H; P; F | |
| **DTX-197** | 1988.00.00 | REV_DAX-02171186 | REV_DAX-02171193 | Melling, J. et al., “Clostridium Botulinum Toxins: Nature and Preparation for Clinical Use,” *Eye* , 2:16–23 (1988) | R; H; P; F | |
| **DTX-198** | 1992.03.00 | REV_DAX-02171593 | REV_DAX-02171612 | Schantz, E. and Johnson, E., “Properties and Use of Botulinum Toxin and Other Microbial Neurotoxins in Medicine,” *Microbiological Reviews* , 56(1):80–99 (1992) | R; H; P; F | JTX_144 |
| **DTX-199** | 1986.00.00 | REV_DAX-02171620 | REV_DAX-02171626 | Schmidt, J. and Siegel, L., “Purification of Type E Botulinum Neurotoxin by High-Performance Ion Exchange Chromatography,” *Analytical Biochemistry* , 156:213–219 (1986) | R; H; P; F | JTX_145 |
| **DTX-200** | 1993.00.00 | REV_DAX-02171650 | REV_DAX-02171745 | Scopes, R., *Protein Purification: Principles and Practice* (3rd ed.) (1993) | R; H; P; F | JTX_146 |
| **DTX-201** | 1988.00.00 | REV_DAX-02171818 | REV_DAX-02171827 | Simpson, L. et al., “Isolation and Characterization of the *Botulinum* Neurotoxins,” *Methods in Enzymology* , 165:76–85 (1988) | R; H; P; F | JTX_151 |
| **DTX-202** | 1982.06.05 | REV_DAX-02171829 | REV_DAX-02171836 | Smelt, J. et al., “Growth and toxin formation by *Clostridium botulinum* at low pH values,” *J Applied Bacteriology* , 52:75–82 (1982) | R; H; P; F | |
| **DTX-203** | 1977.00.00 | REV_DAX-02171869 | REV_DAX-02171872 | Sugiyama, H. et al., “Improved Procedure for Crystallization of *Clostridium botulinum* type A Toxic Complexes,” *Applied and Environmental Microbiology* , 33(4):963–966 (1977) | R; H; P; F | JTX_152 |
| **DTX-204** | 1982.00.00 | REV_DAX-02171948 | REV_DAX-02171955 | Tse, C. et al., “Preparation and Characterisation of Homogeneous Neurotoxin Type A from *Clostridium botulinum* ,” *Eur J Biochem* , 122:493–500 (1982) | R; H; P; F | |
| **DTX-205** | 1997.00.00 | REV_DAX-02171956 | REV_DAX-02171968 | Tugnoli, V. et al., “The therapeutic use of botulinum toxin,” *Expert Opinion on Investigational Drugs* , 6(10)1383–1394 (1997) | R; H; P; F | JTX_155 |
| **DTX-206** | 1998.03.31 | REV_DAX-02171991 | REV_DAX-02171999 | US 5,733,873 | R; H; P; F | |
| **DTX-207** | 1998.05.26 | REV_DAX-02172000 | REV_DAX-02172004 | US 5,756,468 | R; H; P; F | |
| **DTX-208** | 2003.05.06 | REV_DAX-02172088 | REV_DAX-02172122 | US 6,558,926 B1 | R; H; P; F | |
| **DTX-209** | 2003.06.26 | REV_DAX-02172651 | REV_DAX-02172679 | U.S. Patent Application Publication No. 2003/0118598 A1 | R; H; P; F | |
| **DTX-210** | 2005.10.27 | REV_DAX-02172826 | REV_DAX-02172862 | U.S. Patent Application Publication No. 2005/0238669 A1 | R; H; P; F | JTX_113 |
| **DTX-211** | 1943.09.07 | REV_DAX-02173075 | REV_DAX-02173085 | Vera, H., “A Comparative Study of Materials Suitable for the Cultivation of Clostridia,” *Journal of Bacteriology* , XLVII:59–69 (1943) | R; H; P; F | |
| **DTX-212** | 2000.04.04 | REV_DAX-02173110 | REV_DAX-02173169 | Wang, W., “Lyophilization and development of solid protein pharmaceuticals,” *International Journal of Pharmaceutics* , 203:1–60 (2000) | R; H; P; F | |
| **DTX-213** | 1988.03.00 | REV_DAX-02173182 | REV_DAX-02173189 | Whitmer, M. and Johnson, E., “Development of Improved Defined Media for *Clostridium botulinum* Serotypes A, B, and E,” *Applied and Environmental Microbiology* , 54(3):753–759 (1988) | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-214** | 2001.08.16 | REV_DAX-02173736 | REV_DAX-02173783 | WO 01/058472 A2 | R; H; P; F | JTX_116 |
| **DTX-215** | 2003.07.22 | REV_DAX-02174235 | REV_DAX-02174259 | WO 2005/007185 A3 | R; H; P; F | |
| **DTX-216** | 2006.01.19 | REV_DAX-02174458 | REV_DAX-02174485 | WO 2006/005910 A2 | R; H; P; F | |
| **DTX-217** | 2019.08.20 | REV_DAX-02176735 | REV_DAX-02176736 | [redacted] | R; H; P; F; | |
| **DTX-218** | 2022.02.28 | REV_DAX-02202583 | REV_DAX-02202642 | [redacted] | R; H; P; F | |
| **DTX-219** | N/A | REV_DAX-02232078 | REV_DAX-02232091 | [redacted] | R; H; P; F | |
| **DTX-220** | N/A | REV_DAX-02251510 | REV_DAX-02251510 | [redacted] | R; H; P; F | |
| **DTX-221** | 2019.02.22 | REV_DAX-02365362 | REV_DAX-02365403 | [redacted] | R; H; P; F | |
| **DTX-222** | 2016.05.06 | REV_DAX-02392986 | REV_DAX-02393588 | [redacted] | R; H; P; F | |
| **DTX-223** | N/A | REV_DAX-02440404 | REV_DAX-02440793 | [redacted] | R; H; P; F; MU | |
| **DTX-224** | N/A | REV_DAX-02476167 | REV_DAX-02476167 | [redacted] | R; H; P; F | |
| **DTX-225** | 2019.06.14 | REV_DAX-02506121 | REV_DAX-02506158 | [redacted] | R; H; P; F | |
| **DTX-226** | 2019.11.07 | REV_DAX-02507360 | REV_DAX-02507371 | [redacted] | R; H; P | JTX_041 |
| **DTX-227** | N/A | REV_DAX-02525897 | REV_DAX-02525897 | [redacted] | R; H; P; F | |
| **DTX-228** | 2019.10.10 | REV_DAX-02572358 | REV_DAX-02572446 | [redacted] | R; H; P | JTX_024 |
| **DTX-229** | 2019.08.30 | REV_DAX-02576255 | REV_DAX-02576257 | [redacted] | R; H; P; F; | |
| **DTX-230** | 2019.02.00 | REV_DAX-02577404 | REV_DAX-02577413 | JEUVEAU™ Label (revised 02/2019) | R; H; P; F | JTX_053 |
| **DTX-231** | N/A | REV_DAX-02579414 | REV_DAX-02579431 | [redacted] | R; H; P; F | JTX_104 |
| **DTX-232** | N/A | REV_DAX-02623354 | | [redacted] | R; H; P; F | |
| **DTX-233** | 2023.03.00 | REV_DAX-02639890 | REV_DAX-02639896 | [redacted] | R; H; P; F | |
| **DTX-234** | N/A | REV_DAX-02640101 | REV_DAX-02640101 | [redacted] | R; H; P; F | JTX_174 |
| **DTX-235** | 2023.01.00 | REV_DAX-02640444 | REV_DAX-02640449 | Dover, J. et al., "Treatment of Upper Facial Lines With DaxibotulinumtoxinA for Injection: Results From an Open-Label Phase 2 Study," *Dermatologic Surgery* , 49(1):60-65 (2023) | R; H; P; F | |
| **DTX-236** | 2002.03.00 | REV_DAX-02640552 | REV_DAX-02640566 | 2002 BOTOX® COSMETIC (Botulinum Toxin Type A) Purified Neurotoxin Complex Label (revised 03/2002) | R; H; P; F | JTX_051 |
| **DTX-237** | 2023.03.01 | REV_DAX-02640619 | REV_DAX-02640622 | Declaration of Thomas Hyatt | R; H; P; F | |
| **DTX-238** | 2016.06.17 | REV_DAX-02653137 | REV_DAX-02653258 | A Phase 2, Randomized, Double-Blind, Dose Ranging, Active and Placebo Controlled, Multi-Center Study to Evaluate the Safety and Efficacy and Duration of Effect of RT002, a Botulinum Toxin Type A for Injection, to Treat Glabellar Lines | R; H; P; F | |
| **DTX-239** | N/A | REV_DAX-02664183 | REV_DAX-02664183 | [redacted] | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-240** | N/A | REV_DAX-02664287 | REV_DAX-02664405 | [redacted] | R; H; P; F | |
| **DTX-241** | 2018.10.00 | REV_DAX-02664778 | REV_DAX-02664858 | RT002 [redacted] | R; H; P; F | JTX_106 |
| **DTX-242** | 2022.08.08 | REV_DAX-02665350 | REV_DAX-02665382 | [redacted] | R; H; P; F | JTX_098 |
| **DTX-243** | N/A | REV_DAX-02666351 | REV_DAX-02666351 | [redacted] | R; H; P; F | JTX_176 |
| **DTX-244** | 2022.08.09 | REV_DAX-02666922 | REV_DAX-02666923 | [redacted] | R; H; P; F; | |
| **DTX-245** | 2022.10.00 | REV_DAX-02667351 | REV_DAX-02667368 | [redacted] | R; H; P; F | JTX_102 |
| **DTX-246** | N/A | REV_DAX-02668606 | REV_DAX-02668614 | [redacted] | R; H; P; F | |
| **DTX-247** | N/A | REV_DAX-02668995 | REV_DAX-02668996 | [redacted] | R; H; P; F | |
| **DTX-248** | N/A | REV_DAX-02670608 | REV_DAX-02670608 | [redacted] | R; H; P; F | |
| **DTX-249** | 2021.09.03 | REV_DAX-02670722 | REV_DAX-02670873 | [redacted] | R; H; P; F | |
| **DTX-250** | N/A | REV_DAX-02670960 | REV_DAX-02670960 | [redacted] | R; H; P; F | |
| **DTX-251** | 2021.11.09 | REV_DAX-02671338 | REV_DAX-02671414 | [redacted] | R; H; P; F | JTX_134 |
| **DTX-252** | 2022.02.23 | REV_DAX-02672021 | REV_DAX-02672097 | RT002 [redacted] | R; H; P; F | |
| **DTX-253** | 2019.11.00 | REV_DAX-02672255 | REV_DAX-02672333 | [redacted] | R; H; P; F | |
| **DTX-254** | N/A | REV_DAX-02672700 | REV_DAX-02672823 | [redacted] | R; H; P; F | JTX_097 |
| **DTX-255** | 2023.01.26 | REV_DAX-02672832 | REV_DAX-02672908 | RT002 [redacted] | R; H; P; F | JTX_095 |
| **DTX-256** | 2018.10.00 | REV_DAX-02673436 | REV_DAX-02673516 | RT002 [redacted] | R; H; P; F | JTX_096 |
| **DTX-257** | N/A | REV_DAX-02675392 | REV_DAX-02675404 | [redacted] | R; H; P; F | JTX_089 |
| **DTX-258** | N/A | REV_DAX-02676150 | REV_DAX-02676163 | [redacted] | R; H; P; F | JTX_090 |
| **DTX-259** | N/A | REV_DAX-02680442 | REV_DAX-02680442 | [redacted] | R; H; P; F | JTX_177 |
| **DTX-260** | N/A | REV_DAX-02681230 | REV_DAX-02681255 | [redacted] | R; H; P; F | JTX_099 |
| **DTX-261** | N/A | REV_DAX-02681788 | REV_DAX-02681788 | [redacted] | R; H; P; F | |
| **DTX-262** | 2020.03.00 | REV_DAX-02682494 | REV_DAX-02682522 | [redacted] | R; H; P; F | |
| **DTX-263** | N/A | REV_DAX-02683600 | REV_DAX-02683600 | [redacted] | R; H; P; F | |
| **DTX-264** | N/A | REV_DAX-02684162 | REV_DAX-02684162 | [redacted] | R; H; P; F | |
| **DTX-265** | N/A | REV_DAX-02684176 | REV_DAX-02684183 | [redacted] | R; H; P; F | |
| **DTX-266** | N/A | REV_DAX-02684809 | REV_DAX-02684809 | [redacted] | R; H; P; F | |
| **DTX-267** | N/A | REV_DAX-02686248 | REV_DAX-02686255 | [redacted] | R; H; P; F | JTX_100 |
| **DTX-268** | N/A | REV_DAX-02687035 | REV_DAX-02687098 | [redacted] | R; H; P; F | JTX_093 |
| **DTX-269** | N/A | REV_DAX-02687206 | REV_DAX-02687228 | Launch Planning presentation | R; H; P; F | JTX_091 |
| **DTX-270** | 2023.04.00 | REV_DAX-02691642 | REV_DAX-02691658 | [redacted] | R; H; P; F | JTX_092 |
| **DTX-271** | N/A | REV_DAX-02692773 | REV_DAX-02692934 | [redacted] | R; H; P; F | |
| **DTX-272** | N/A | REV_DAX-02694304 | REV_DAX-02694304 | [redacted] | R; H; P; F | |
| **DTX-273** | N/A | REV_DAX-02694311 | REV_DAX-02694325 | [redacted] | R; H; P; F | |
| **DTX-274** | 2016.04.11 | REV_DAX-02707686 | REV_DAX-02707707 | [redacted] | R; H; P; F | JTX_183 |
| **DTX-275** | 2022.11.28 | REV_DAX-02730584 | REV_DAX-02730675 | [redacted] | R; H; P; F | JTX_107 |
| **DTX-276** | 2023.08.00 | REV_DAX-02730676 | REV_DAX-02730676 | [redacted] | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-277** | 2022.09.06 | REV_DAX-02730955 | REV_DAX-02731112 | [redacted] | R; H; P; F | JTX_122 |
| **DTX-278** | N/A | REV_DAX-02753334 | REV_DAX-02753348 | [redacted] | R; H; P; F | JTX_105 |
| **DTX-279** | 2022.09.08 | REV_DAX-02753892 | REV_DAX-02753892 | [redacted] | R; H; P | JTX_037 |
| **DTX-280** | 2023.08.11 | REV_DAX-02755534 | REV_DAX-02755554 | [redacted] | R; H; P; F | JTX_027 |
| **DTX-281** | 2020.07.00 | REV_DAX-02808644 | REV_DAX-02808676 | DYSPORT® Label (revised 7/2020) | R; H; P; F | JTX_052 |
| **DTX-282** | 2021.08.00 | REV_DAX-03018439 | REV_DAX-03018463 | XEOMIN Label (revised 8/2021) | R; H; P; F | |
| **DTX-283** | 2023.04.25 | REV_DAX-03296144 | REV_DAX-03296154 | Federal Register, "Notices," 63(185):51074-51084 (1998) ("FDA Guidance 1998") | R; H; P; F | JTX_115 |
| **DTX-284** | 2004.00.00 | REV_DAX-03296155 | REV_DAX-03296247 | Amersham Biosciences, *Ion Exchange Chromatography* (2004) | R; H; P; F | |
| **DTX-285** | 2006.00.00 | REV_DAX-03296343 | REV_DAX-03296388 | Bates, R., "Downstream Processing," *Cell Culture Technology for Pharmaceutical and Cell-Based Therapies* , 439–482 (2006) | R; H; P; F | |
| **DTX-286** | 2002.05.00 | REV_DAX-03296407 | REV_DAX-03296442 | PRIONS: Mayhem and Management (2002) | R; H; P; F | JTX_114 |
| **DTX-287** | 2023.11.17 | REV_DAX-03316772 | REV_DAX-03316772 | [redacted] | R; H; P; F | JTX_178 |
| **DTX-288** | 2023.10.26 | REV_DAX-03318654 | REV_DAX-03318659 | "Daxxify Becomes First Facial Injectable to be Named to TIME's Best Inventions," Revance (Oct. 26, 2023), https://investors.revance.com/investors/Press-Releases/news-details/2023/DAXXIFYBecomes-First-Facial-Injectable-to-be-Named-to-TIMEs-Best-Inventions/default.aspx | R; H; P; F | |
| **DTX-289** | 2000.10.17 | REV_DAX-03320582 | REV_DAX-03320587 | Dysport® Data Sheet (2000) | R; H; P; F | |
| **DTX-290** | 1989.00.00 | REV_DAX-03320591 | REV_DAX-03320628 | Asenjo, J. and Patrick, I., "Large-scale protein purification," *Protein purification applications* , 1–28 (1989) | R; H; P; F | |
| **DTX-291** | 2002.00.00 | REV_DAX-03320629 | REV_DAX-03320647 | Aulton, M., *Pharmaceutics, The Science of Dosage Form Design* (2d ed.) (2002) | R; H; P; F | |
| **DTX-292** | 1990.06.05 | REV_DAX-03320648 | REV_DAX-03320653 | Binz, T. et al., "The Complete Sequence of Botulinum Neurotoxin Type A and Comparison with Other Clostridial Neurotoxins," *The Journal of Biological Chemistry* , 265(16):9153–9158 (1990) | R; H; P; F | |
| **DTX-293** | 2005.00.00 | REV_DAX-03320656 | REV_DAX-03320666 | Bosse, D. et al., "Phase I Comparability of Recombinant Human Albumin and Human Serum Albumin," *J Clin Pharmacol* , 45:57-67 (2005) | R; H; P; F | |
| **DTX-294** | 2000.00.00 | REV_DAX-03320739 | REV_DAX-03320845 | Fifield, F. and Kealey, D., *Principles and Practice of Analytical Chemistry* , Blackwell Science (5th ed.), 80–170 (2000) | R; H; P; F | |
| **DTX-295** | 2005.01.27 | REV_DAX-03320846 | REV_DAX-03320867 | WO 2005/007185 A2 | R; H; P; F | |
| **DTX-296** | 1981.00.00 | REV_DAX-03320868 | REV_DAX-03320895 | Garrett, R. and Grisham, C., *Biochemistry* (1st ed.) (1981) | R; H; P; F | |
| **DTX-297** | 1992.10.00 | REV_DAX-03320896 | REV_DAX-03320898 | Goodnough, M. and Johnson, E., "Stabilization of Botulinum Toxin Type A during Lyophilization," *Applied and Environmental Microbiology* , 58(10):3426-3428 (1992) | R; H; P; F | JTX_123 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-298** | 1998.00.00 | REV_DAX-03320985 | REV_DAX-03321442 | Janson, J. and Rydén, L., *Protein Purification* , Wiley-Liss (2d ed.), 1–460 (1998) | R; H; P; F | JTX_130 |
| **DTX-299** | 2007.00.00 | REV_DAX-03321443 | REV_DAX-03321457 | Jost, W. et al., "Botulinum Neurotoxin Type A Free of Complexing Proteins (XEOMIN®) in Focal Dystonia," *Drugs* , 67(5):669–683 (2007) | R; H; P; F | |
| **DTX-300** | 2005.00.00 | REV_DAX-03321460 | REV_DAX-03321465 | Montecucco, C. and Molgó, J., "Botulinal neurotoxins: revival of an old killer," *Current Opinion in Pharmacology* , 5:274–279 (2005) | R; H; P; F | |
| **DTX-301** | 2000.00.00 | REV_DAX-03321466 | REV_DAX-03321470 | Okeke, C. et al., "Revised USP standards for product dating, packaging, and temperature monitoring," *Am J Health-Syst Pharm* , 57:1441–1445 (2000) | R; H; P; F | |
| **DTX-302** | 1997.11.00 | REV_DAX-03321508 | REV_DAX-03321513 | Randolph, T., "Phase Separation of Excipients during Lyophilization: Effects on Protein Stability," *J Pharma Sci* , 86(11):1198-1203 (1997) | R; H; P; F | |
| **DTX-303** | 1994.00.00 | REV_DAX-03321549 | REV_DAX-03321559 | Schantz, E. and Johnson, E., "Preparation and Characterization of Botulinum Toxin Type A for Human Treatment," *Therapy with Botulinum Toxin* (1994) | R; H; P; F | JTX_143 |
| **DTX-304** | 1992.00.00 | REV_DAX-03321560 | REV_DAX-03321565 | Shibata, K. et al., "Difference in Tryptophan-nicotinamide Conversion According to Dietary Nitrogen Sources; Casein, Casein Hydrolysate, and Mixtures of Amino Acids," *Bioscience, Biotechnology, and Biochemistry* , 56(4):665–669 (1992) | R; H; P; F | JTX_148 |
| **DTX-305** | 1979.10.00 | REV_DAX-03321566 | REV_DAX-03321571 | Siegel, L., and Metzger, J., "Toxin Production by *Clostridium botulinum* Type A Under Various Fermentation Conditions," *Applied and Environmental Microbiology* , 38(4):606–611 (1979) | R; H; P; F | |
| **DTX-306** | 1990.00.00 | REV_DAX-03321574 | REV_DAX-03321592 | Stoscheck, C., "Quantitation of Protein," *Methods in Enzymology* , 182:50–68 (1990) | R; H; P; F | |
| **DTX-307** | 2000.00.00 | REV_DAX-03321672 | REV_DAX-03321672 | Wang, Y. et al., "The Preparation and Quality of Botulinum Toxin Type A for Injection (BTXA-China) and Its Clinical Use," *Movement Disorders* , 15(2):55 (2000) | R; H; P; F | JTX_157 |
| **DTX-308** | 2003.12.04 | REV_DAX-03321712 | REV_DAX-03321719 | U.S. Patent Application Publication No. 2003/0224020 | R; H; P; F | |
| **DTX-309** | 2023.10.17 | REV_DAX-03323091 | REV_DAX-03323100 | Dowdy, S. et al., "A technology evaluation of the atypical use of a CPP-containing peptide in the formulation and performance of a clinical botulinum toxin product," *Expert Opinion On Drug Delivery* , 20(9):1157–1166 (2023) | R; H; P; F | |
| **DTX-310** | N/A | REV_DAX-03323101 | REV_DAX-03323121 | *Curriculum vitae* of Joshua D. Ramsey | DB; H; MIL; P; R; N | |
| **DTX-311** | 2021.11.17 | REV_DAX-03323122 | REV_DAX-03323132 | Solish, N. et al., "Overview of DaxibotulinumtoxinA for Injection: A Novel Formulation of Botulinum Toxin Type A," *Drugs* , 81:2091–2101 (2021) | R; H; P; F | JTX_119 |
| **DTX-312** | 2022.11.08 | REV_DAX-03323193 | REV_DAX-03323300 | Revance Therapeutics, Inc. Form 10-Q (Period Ending Sept. 30, 2022) | R; H; P; F | JTX_188 |
| **DTX-313** | 1999.00.00 | REV_DAX-03323322 | REV_DAX-03323329 | Aoki, K., "Preclinical update on BOTOX® (botulinum toxin type A)-purified neurotoxin complex relative to other botulinum neurotoxin preparations," *European Journal of Neurology* , 6(4):s3–s10 (1999) | R; H; P; F | JTX_125 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-314** | N/A | REV_DAX-03323330 | REV_DAX-03323558 | Abbvie 2022 Annual Report on Form 10-K, 2023 Notice of Annual Meeting & Proxy Statement | R; H; P; F | |
| **DTX-315** | 2024.01.10 | REV_DAX-03323559 | REV_DAX-03323575 | AbbVie Inc. NYSE: ABBV, Company Conference Presentation | R; H; P; F | JTX_175 |
| **DTX-316** | 2023.09.13 | REV_DAX-03323576 | REV_DAX-03323589 | AbbVie Inc. NYSE: ABBV, Company Conference Presentation | R; H; P; F | |
| **DTX-317** | 2023.04.27 | REV_DAX-03323590 | REV_DAX-03323609 | AbbVie Inc. NYSE:ABBV, FQ1 2023 Earnings Call Transcripts | R; H; P; F | |
| **DTX-318** | 2023.07.27 | REV_DAX-03323610 | REV_DAX-03323632 | AbbVie Inc. NYSE:ABBV, FQ2 2023 Earnings Call Transcripts | R; H; P; F | |
| **DTX-319** | 2023.10.27 | REV_DAX-03323633 | REV_DAX-03323654 | AbbVie Inc. NYSE:ABBV, FQ3 2023 Earnings Call Transcripts | R; H; P; F | |
| **DTX-320** | 2024.02.02 | REV_DAX-03323655 | REV_DAX-03323678 | AbbVie Inc. NYSE:ABBV, Q4 2023 Earnings Call Transcripts | R; H; P; F | |
| **DTX-321** | 2018.02.16 | REV_DAX-03323699 | REV_DAX-03323980 | Allergan plc, Warner Chilcott Limited Form 10-K (Fiscal year ending Dec. 31, 2017 | R; H; P; F | JTX_173 |
| **DTX-322** | 2011.00.00 | REV_DAX-03324013 | REV_DAX-03324024 | BOTOX® Label (2011) | R; H; P; F | JTX_057 |
| **DTX-323** | 2019.10.00 | REV_DAX-03324025 | REV_DAX-03324074 | BOTOX® Label (revised 10/2019) | R; H; P; F | |
| **DTX-324** | 2023.08.00 | REV_DAX-03324075 | REV_DAX-03324129 | BOTOX® Label (revised 8/2023) | R; H; P; F | |
| **DTX-325** | 2009.07.31 | REV_DAX-03324130 | REV_DAX-03324143 | BOTOX® Cosmetic Label (7/31/2009) | R; H; P; F | |
| **DTX-326** | 2023.11.00 | REV_DAX-03324144 | REV_DAX-03324185 | BOTOX® COSMETIC Label (revised 11/2023) | R; H; P; F | JTX_044 |
| **DTX-327** | 2024.02.00 | REV_DAX-03324520 | REV_DAX-03324533 | *Curriculum vitae* of Atul T. Patel, M.D., MHSA | DB; H; MIL; P; R; N | |
| **DTX-328** | 2011.00.00 | REV_DAX-03324759 | REV_DAX-03324769 | DYSPORT® Label, *Physicians' Desk Reference* (65th ed.) (2011) | R; H; P; F | JTX_058 |
| **DTX-329** | 2019.09.00 | REV_DAX-03324770 | REV_DAX-03324802 | DYSPORT® Label (revised 9/2019) | R; H; P; F | |
| **DTX-330** | 2023.09.00 | REV_DAX-03324803 | REV_DAX-03324834 | DYSPORT® Label 2023 (revised 9/2023) | R; H; P; F | JTX_045 |
| **DTX-331** | 2022.03.15 | REV_DAX-03324845 | REV_DAX-03324857 | Evolus, Inc. NasdaqGM:EOLS, Company Conference Presentation | R; H; P; F | |
| **DTX-332** | 2023.03.14 | REV_DAX-03324871 | REV_DAX-03324883 | Evolus, Inc. NasdaqGM:EOLS, Company Conference Presentation | R; H; P; F | |
| **DTX-333** | 2021.09.13 | REV_DAX-03324884 | REV_DAX-03324895 | Evolus, Inc. NasdaqGM:EOLS, Company Conference Presentation | R; H; P; F | |
| **DTX-334** | 2018.06.08 | REV_DAX-03324896 | REV_DAX-03324908 | Evolus, Inc. NasdaqGM:EOLS, Company Conference Presentation | R; H; P; F | |
| **DTX-335** | 2020.08.10 | REV_DAX-03324909 | REV_DAX-03324923 | Evolus, Inc. NasdaqGM:EOLS, FQ2 2020 Earnings Call Transcripts | R; H; P; F | |
| **DTX-336** | 2023.03.08 | REV_DAX-03324924 | REV_DAX-03324940 | Evolus, Inc. NasdaqGM:EOLS, FQ4 2022 Earnings Call Transcripts | R; H; P; F | |
| **DTX-337** | 2021.01.00 | REV_DAX-03324979 | REV_DAX-03324985 | Fabi, S. et al., "DaxibotulinumtoxinA for Injection for the Treatment of Glabellar Lines: Efficacy Results From SAKURA 3, a Large, Open-Label, Phase 3 Safety Study," *Dermatologic Surgery* , 47(1):48–54 (2021) | R; H; P; F | |
| **DTX-338** | 2023.00.00 | REV_DAX-03324986 | REV_DAX-03324991 | "Frequently Asked Questions," Dysport (2023), https://www.dysportusa.com/faqs | R; H; P; F | |
| **DTX-339** | 2023.00.00 | REV_DAX-03325107 | REV_DAX-03325112 | "Frequently Asked Questions," Dysport (2023), https://www.dysportusa.com/faqs | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-340** | 2016.08.01 | REV_DAX-03325113 | REV_DAX-03325124 | "Ipsen Biopharmaceuticals, Inc. announces FDA Approval of Dysport® (abobotulinumtoxinA) for the treatment of lower limb spasticity in pediatric patients ages two and older," Ipsen (Aug. 1, 2016), https://www.ipsen.com/canadafr/blog/press-releases/ipsen-announces-fda-approval-of-dysport-abobotulinumtoxina-for-the-treatment-of-lower-limb-spasticity-in-adults | R; H; P; F | |
| **DTX-341** | 2023.04.00 | REV_DAX-03325160 | REV_DAX-03325188 | JEUVEAU® Label (revised 4/2023) | R; H; P; F | |
| **DTX-342** | 2023.12.00 | REV_DAX-03325326 | REV_DAX-03325373 | MYOBLOC® Label (revised 12/2023) | R; H; P; F | |
| **DTX-343** | 2015.07.16 | REV_DAX-03325606 | REV_DAX-03325609 | "Ipsen announces FDA approval of Dysport® (abobotulinumtoxinA) for injection in the treatment of upper limb spasticity in adults in the United States," Ipsen (July 16, 2015), https://ipsen.com/websites/IPSENCOM-PROD/wp-content/uploads/2015/07/08092649/PR-AUL-Approval-FINAL.pdf | R; H; P; F | |
| **DTX-344** | 2023.08.14 | REV_DAX-03325820 | REV_DAX-03325832 | "U.S. FDA Approves First Therapeutic Indication for Revance's DAXXIFY® (DaxibotulinumtoxinA-lanm) for Injection for the Treatment of Cervical Dystonia," Revance (Aug. 14, 2023), https://investors.revance.com/investors/Press-Releases/news-details/2023/U.S.-FDA-Approves-First-Therapeutic-Indication-for-Revances-DAXXIFY-DaxibotulinumtoxinAlanm-for-Injection-for-the-Treatment-of-Cervical-Dystonia/default.aspx | R; H; P; F | |
| **DTX-345** | 2023.09.00 | REV_DAX-03325879 | REV_DAX-03325903 | XEOMIN Label (revised 9/2023) | R; H; P; F | JTX_046 |
| **DTX-346** | 1947.06.03 | REV_DAX-03325984 | REV_DAX-03325997 | Davis, B. and Dubos, R., "The Binding of Fatty Acids by Serum Albumin, a Protective Growth Factor in Bacteriological Media," *J Exp Med.* , 86(3):215–28 (1947) | R; H; P; F | JTX_118 |
| **DTX-347** | 1999.11.23 | REV_DAX-03326042 | REV_DAX-03326043 | Federal Register, "Notices," 64(225):65715-65716 (1999) | R; H; P; F | |
| **DTX-348** | 2012.05.15 | REV_DAX-03326044 | REV_DAX-03326047 | "All Protein :: MyBioSource :: Your source for antibodies, proteins and ELISA Kits!," MyBioSource (2012), https://web.archive.org/web/20120515205140/http://www.mybiosource.com/product.php?name=protein&sort=2a&page=4 | R; H; P; F | |
| **DTX-349** | 2024.00.00 | REV_DAX-03326048 | REV_DAX-03326048 | "ALB native protein :: Albumin Native Protein," MyBioSource (2024) | R; H; P; F | |
| **DTX-350** | 2022.09.02 | REV_DAX-03326099 | REV_DAX-03326123 | *Curriculum vitae* of Michael M. Meagher, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-351** | N/A | REV_DAX-03326156 | REV_DAX-03326163 | "Human Serum Albumin," Millipore Sigma, https://www.sigmaaldrich.com/US/en/products/cell-culture-and-analysis/cell-culture-supplements-and-reagents/albumins-and-transport-proteins/huma | R; H; P; F | JTX_137 |
| **DTX-352** | 2018.00.00 | REV_DAX-03326164 | REV_DAX-03326164 | Smyth, T. et al., "Stabilizing Effect of RTP004 on Nonspecific Surface Adsorption in Drug Product Manufacturing of DaxibotulinumtoxinA | R; H; P; F | |
| **DTX-353** | 2023.08.00 | REV_DAX-03326254 | REV_DAX-03326270 | DAXXIFY® Label (revised 8/2023) | R; H; P; F | JTX_048 |
| **DTX-354** | N/A | REV_DAX-03326440 | REV_DAX-03326445 | *Curriculum vitae* of Akhilesh K. Nagaich, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-355** | N/A | REV_DAX-03326515 | REV_DAX-03327225 | File History of U.S. Patent No. 7,354,740 | No objection at this time | JTX_010 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-356** | N/A | REV_DAX-03327946 | REV_DAX-03329348 | Portions of Prosecution History of U.S. Patent No. 11,033,625 | N; I | JTX_007 |
| **DTX-357** | *Intentionally Omitted* | | | | | |
| **DTX-358** | *Intentionally Omitted* | | | | | |
| **DTX-359** | *Intentionally Omitted* | | | | | |
| **DTX-360** | N/A | REV_DAX-03332540 | REV_DAX-03333269 | Prosecution History of U.S. Patent No. 11,285,216 | No objection at this time | |
| **DTX-361** | N/A | REV_DAX-03333270 | REV_DAX-03335583 | File History of U.S. Patent No. 11,285,216 | No objection at this time | JTX_009 |
| **DTX-362** | *Intentionally Omitted* | | | | | |
| **DTX-363** | 2023.05.09 | REV_DAX-03337872 | REV_DAX-03337876 | "Revance Reports First Quarter 2023 Financial Results, Provides Corporate Update," Revance (May 9, 2023), | R; H; P; F | |
| **DTX-364** | 2024.00.00 | REV_DAX-03337900 | REV_DAX-03337909 | Botulinum Toxin Market Size, Share & COVID-19 Impact Analysis, By Application (Therapeutic {Chronic Migraine, Spasticity, Overactive Bladder, Cervical Dystonia, Blepharospasm, and Others} and Aesthetics), By Type (Botulinum Toxim Type A and Botulinum Toxin Type B), By End-user (Specialty & Dermatology Clinics, Hospitals & Clinics, and Others), and Regional Forecast, 2023-2030 | R; H; P; F | |
| **DTX-365** | 2023.09.19 | REV_DAX-03337910 | REV_DAX-03337913 | "Former IBD 50 Stock Revance Implodes As Its 'Prestige' Plan Goes Up In Smoke," Investor's Business Daily (Sept. 19, 2023), https://www.investors.com/news/technology/rvnc-stock-collapses-as-prestige-plan-goes-up-in-smoke/ | R; H; P; F | |
| **DTX-366** | 2024.01.16 | REV_DAX-03337914 | REV_DAX-03337933 | Jacquet, P. et al., "Optimizing Pharmaceutical Portfolios Through M&A," *LEK* , XXVI(5) (2024) | R; H; P; F | |
| **DTX-367** | 2023.11.08 | REV_DAX-03337943 | REV_DAX-03338160 | Revance Therapeutics, Inc. Form 10-Q (Period Ending Sept. 30, 2023) | R; H; P; F | |
| **DTX-368** | 2023.05.09 | REV_DAX-03338464 | REV_DAX-03338548 | Revance Therapeutics, Inc. Form 10-Q (Period Ending Mar. 31, 2023) | R; H; P; F | JTX_186 |
| **DTX-369** | 2023.08.08 | REV_DAX-03338549 | REV_DAX-03338605 | Revance Therapeutics, Inc. Form 10-Q (Period Ending June 30, 2023) | R; H; P; F | |
| **DTX-370** | 2024.02.28 | REV_DAX-03338606 | REV_DAX-03338780 | Revance Therapeutics, Inc. Form 10-K (Fiscal Year Ending Dec. 31, 2023) | R; H; P; F | |
| **DTX-371** | 2022.05.10 | REV_DAX-03338782 | REV_DAX-03339074 | Revance Therapeutics, Inc. Form 10-Q (Period Ending Mar. 31, 2022) | R; H; P; F | JTX_187 |
| **DTX-372** | 2022.11.08 | REV_DAX-03339075 | REV_DAX-03339178 | Revance Therapeutics, Inc., Form 10-Q (Period Ending June 30, 2022) | R; H; P; F | JTX_185 |
| **DTX-373** | 2022.11.08 | REV_DAX-03339179 | REV_DAX-03339286 | Revance Therapeutics, Inc. Form 10-Q (Period Ending Sept. 30, 2022) | R; H; P; F | |
| **DTX-374** | 2023.02.28 | REV_DAX-03339287 | REV_DAX-03339560 | Revance Therapeutics, Inc. Form 10-K (Fiscal Year Ending Dec. 31, 2022) | R; H; P; F | |
| **DTX-375** | 2024.02.02 | REV_DAX-03339683 | REV_DAX-03339683 | Revance Receives Permanentj-Code for DAXXIFY® and Announces Publication of DAXXIFY Pivotal Study (ASPEN-1) Results in Neurology, dated February 2, 2024. | R; H; P; F; N; NP | |
| **DTX-376** | 1943.08.05 | REV_DAX-03339797 | REV_DAX-03339798 | Brewer, J., "Vegetable Bacteriological Media as Substitutes for Meat Infusion Media," *Bacteriological Research Laboratory, Hynson, Westcott & Dunning, Inc.* , 395–296 (1943) | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-377** | 2007.00.00 | REV_DAX-03339910 | REV_DAX-03339933 | Huang, J. et al., "Purification of the N- and C-Terminal Subdomains of Recombinant Heavy Chain Fragment C of Botulinum Neurotoxin Serotype C," *Pichia Protocols (2d ed.)* , 77–98 (2007) | R; H; P; F | |
| **DTX-378** | 1947.02.00 | REV_DAX-03339934 | REV_DAX-03339951 | Lewis, K. and Hill, E., "Practical Media and Control Measures for Producing Highly Toxic Cultures of Clostridium Botulinum, Type A," *Journal of Bacteriology* , 53(2):213–230 (1947) | R; H; P; F | |
| **DTX-379** | 2016.07.05 | REV_DAX-03339984 | REV_DAX-03339986 | IPR2015-01119, Paper 13 (Judgment and Final Written Decision) | R; H; P | |
| **DTX-380** | 2004.00.00 | REV_DAX-03339987 | REV_DAX-03339989 | Scott, A., "Development of botulinum toxin therapy," *Dermatol Clin* , 22:131–133 (2004) | R; H; P; F | |
| **DTX-381** | 1992.00.00 | REV_DAX-03340018 | REV_DAX-03340028 | Whelan, S. et al., "The complete amino acid sequence of the *Clostridium botulinum* type-E neurotoxin, derived by nucleotidesequence analysis of the encoding gene," *Eur J Biochem* , 204:657–667 (1992) | R; H; P; F | |
| **DTX-382** | 2006.12.12 | REV_DAX-03340098 | REV_DAX-03340108 | US 7,148,041 B2 | R; H; P; F | |
| **DTX-383** | 2010.11.04 | REV_DAX-03340109 | REV_DAX-03340124 | U.S. Patent Application Publication No. 2010/0279953 A1 | R; H; P; F | |
| **DTX-384** | N/A | REV_DAX-03340125 | REV_DAX-03340192 | U.S. Provisional Application No. 60/725,126 | R; H; P; F | JTX_006 |
| **DTX-385** | 2023.05.09 | REV_DAX-03340200 | REV_DAX-03340215 | Revance Therapeutics, Inc. NasdaqGM:RVNC, FQ1 2023 Earnings Call Transcripts | R; H; P; F | |
| **DTX-386** | 2023.09.19 | REV_DAX-03340216 | REV_DAX-03340268 | Revance Therapeutics, Inc. NasdaqFM:RVNC, Analyst/Investor Day | R; H; P; F | |
| **DTX-387** | 2015.04.29 | REV_DAX-03340269 | REV_DAX-03340335 | IPR2015-01119, Paper 2 (Petition for *Inter Partes* Review of U.S. Patent No. 7,148,041 Under 35 U.S.C. §§ 311–319 and 37 C.F.R. § 42.100 et seq). | R; H; P | |
| **DTX-388** | 2023.11.08 | REV_DAX-03340336 | REV_DAX-03340357 | Revance Therapeutics, Inc. NasdaqGM:RVNC, FQ3 2023 Earnings Call Transcripts | R; H; P; F | |
| **DTX-389** | 2024.05.06 | REV_DAX-03340371 | REV_DAX-03340371 | Addendum to *Curriculum Vitae* of Atul T. Patel, M.D., MHSA | DB; H; MIL; P; R; N | |
| **DTX-390** | 2020.02.18 | N/A | N/A | Allergan, Inc. Form 10-K (Fiscal year ending Dec. 31, 2019) | R; H; P; F | |
| **DTX-391** | 2024.00.00 | N/A | N/A | "About Allergan Aesthetics," Allergan Aesthetics (2024), https://allerganaesthetics.com/about/about-allergan-aesthetics | R; H; P; F | |
| **DTX-392** | 2023.11.08 | REV_DAX-03340336 | REV_DAX-3340357 | Revance Therapeutics, Inc. Q3 2023 Earnings Call, November 8, 2023 | R; H; P; F | |
| **DTX-393** | 2023.09.26 | N/A | N/A | Email chain from C. Minniti to A. LaRock re "Re: Allergan, Inc. et al. v. Revance Therapeutics, Inc. et al., Case No. 21-1411-RGS (D. Del.) – Meet and Confer Credentials" | R; H; P; F; | |
| **DTX-394** | 2023.02.21 | N/A | N/A | IPR2023-00604, Ex. 1021 (Expert Declaration of Ronald C. Bates, Ph.D. in Support of Petition for *Inter Partes* Review) | R; H; P; F | |
| **DTX-395** | N/A | REV_DAX-3339702 | REV_DAX-3339796 | *Ion Exchange Chromatography & Chromatofocusing, Principles and Methods* , Amersham Biosciences (AA ed.), 94-188 | R; H; P; F | |
| **DTX-396** | 2006.00.00 | N/A | N/A | *Cell Culture Technology for Pharmaceutical and Cell-Based Therapies* , Taylor & Francis Group, 439-482 (2006) | R; H; P; F | |
| **DTX-397** | 2023.08.00 | N/A | N/A | DAXXIFY® Label (revised 8/2023) | R; H; P; F | |
| **DTX-398** | N/A | N/A | N/A | *Curriculum Vitae* of Ron Broide | N; NP | |
| **DTX-399** | 2005.03.18 | N/A | N/A | [redacted] | No objection at this time | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-400** | 2021.05.28 | N/A | N/A | [redacted] | R; H; P; F | |
| **DTX-401** | 2020.08.20 | N/A | N/A | [redacted] | R; H; P; F | |
| **DTX-402** | 2015.12.04 | N/A | N/A | [redacted] | R; H; P; F; | |
| **DTX-403** | N/A | N/A | N/A | [redacted] | R; H; P; F | |
| **DTX-404** | N/A | N/A | N/A | *Curriculum Vitae* of Chad Lindemann | N; NP | |
| **DTX-405** | N/A | N/A | N/A | 2022 Plan spreadsheet | R; H; P; F | |
| **DTX-406** | N/A | N/A | N/A | Overview_Summary spreadsheet | R; H; P; F | |
| **DTX-407** | N/A | N/A | N/A | Marketing spreadsheet | R; H; P; F | |
| **DTX-408** | N/A | N/A | N/A | Sales spreadsheet | R; H; P; F | |
| **DTX-409** | N/A | N/A | N/A | Handwritten note | R; H; P; F | |
| **DTX-410** | N/A | N/A | N/A | Provisional Application for Patent Cover Sheet with attachments | R; H; P; F | |
| **DTX-411** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. A, *Curriculum Vitae* of Dana Trexler, CPA/CFF | DB; H; MIL; P; R; N | |
| **DTX-412** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 1.0, Summary of Affirmative Damages Scenarios table | DB; H; MIL; P; R | |
| **DTX-413** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 1.1, Summary of Adjusted Lost Profits and Reasonable Royalty Damages - Assuming Lost Profits are Granted table | DB; H; MIL; P; R | |
| **DTX-414** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 1.1a, Calculation of Adjusted Reasonable Royalty Damages - Assuming Lost Profits are Granted table | DB; H; MIL; P; R | |
| **DTX-415** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 1.1b, Calculation of Adjusted Reasonable Royalty Base - Assuming Lost Profits are Granted table | DB; H; MIL; P; R | |
| **DTX-416** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.0, Damages Scenarios 1-3 - Reasonable Royalty With Available Design-Around Alternatives table | DB; H; MIL; P; R | |
| **DTX-417** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.1, Design-Around Cost - Asserted Manufacturing Patents table | DB; H; MIL; P; R | |
| **DTX-418** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.1a, Cost of 1 kg of Casein Hydrolysate - 2011 to 2029 table | DB; H; MIL; P; R | |
| **DTX-419** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.2, Design-Around Cost - Asserted | DB; H; MIL; P; R | |
| **DTX-420** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.2a, Cost of 0.25 mg of HSA - 2011 to 2029 table | DB; H; MIL; P; R | |
| **DTX-421** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.3, [redacted] | DB; H; MIL; P; R | |
| **DTX-422** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 2.3a, [redacted] | DB; H; MIL; P; R | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-423** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 3.0, Damages Scenarios 4-6 - Reasonable Royalty Damages Without Available Design-Around Alternatives table | DB; H; MIL; P; R | |
| **DTX-424** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 4.0, Damages Scenarios 7-8 - Reasonable Royalty Damages Without Available Design-Around Alternatives table | DB; H; MIL; P; R | |
| **DTX-425** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 5.0, Calculation of Reasonable Royalty Rates table | DB; H; MIL; P; R | |
| **DTX-426** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 6.0, Determination of Apportionment Percentages table | DB; H; MIL; P; R | |
| **DTX-427** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 6.1, Analysis of Apportionment - May and June 2023 DAXXIFY Launch Tracker - Main Quant Study Report table | DB; H; MIL; P; R | |
| **DTX-428** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 6.2, Analysis of Apportionment - August 2023 DAXXIFY Pulse Survey - Kx Advisors table | DB; H; MIL; P; R | |
| **DTX-429** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 7.0, Calculation of DAXXIFY Price Premium, Relative to BOTOX table | DB; H; MIL; P; R | |
| **DTX-430** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 7.1, DAXXIFY Average Selling Price table | DB; H; MIL; P; R | |
| **DTX-431** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 7.2, BOTOX Aesthetic Average Selling Price table | DB; H; MIL; P; R | |
| **DTX-432** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.0, Adjustment to the Meyer Report's Lost Profits Calculation - All Adjustments Combined table | DB; H; MIL; P; R | |
| **DTX-433** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.1, Summary of Market Expansion Indicators - DAXXIFY, Allergan LAI, and JEUVEAU table | DB; H; MIL; P; R | |
| **DTX-434** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.2a, DAXXIFY 2021-2023 Market Expansion Indicator - 2016-2018 CAGR as Baseline Growth Rate table | DB; H; MIL; P; R | |
| **DTX-435** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.2b, DAXXIFY 2021-2023 Market Expansion Indicator - 2028-2030 CAGR as Baseline Growth Rate table | DB; H; MIL; P; R | |
| **DTX-436** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.2c, [redacted] | DB; H; MIL; P; R | |
| **DTX-437** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.2d, [redacted] | DB; H; MIL; P; R | |
| **DTX-438** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.2e, [redacted] | DB; H; MIL; P; R | |
| **DTX-439** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.3, [redacted] | DB; H; MIL; P; R | |
| **DTX-440** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.4, [redacted] | DB; H; MIL; P; R | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-441** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.4a, [redacted] | DB; H; MIL; P; R | |
| **DTX-442** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.4b, [redacted] | DB; H; MIL; P; R | |
| **DTX-443** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.5, [redacted] | DB; H; MIL; P; R | |
| **DTX-444** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.6, [redacted] | DB; H; MIL; P; R | |
| **DTX-445** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 8.7, DAXXIFY Longer Duration Survey: Peptide vs. Increase in Units table | DB; H; MIL; P; R | |
| **DTX-446** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 9.0, Summary of Adjusted Meyer Report Manufacturing Patent Royalty Damages - 11-Month Delay - All Adjustments Combined table | DB; H; MIL; P; R | |
| **DTX-447** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 9.1, Adjusted Meyer Report Manufacturing Patent Royalty Rate Calculation - 11-Month Delay - All Adjustments Combined table | DB; H; MIL; P; R | |
| **DTX-448** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 10.0, DAXXIFY Aesthetic and Therapeutic Adjusted Incremental Profit Margin - Projected Financials - 2022 to 2029 table | DB; H; MIL; P; R | |
| **DTX-449** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 10.1, DAXXIFY Aesthetic and Therapeutic Adjusted Incremental Profit Margin - Projected Financials - 2022 to 2030 table | DB; H; MIL; P; R | |
| **DTX-450** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 11.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-451** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 11.1, [redacted] | DB; H; MIL; P; R | |
| **DTX-452** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 12.0, Calculation of Allergan BOTOX Cosmetic Profitability Margins - 2019 to 2029 table | DB; H; MIL; P; R | |
| **DTX-453** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 12.1, Allergan Historical BOTOX U.S. Net Revenue - 2015 to 2023 table | DB; H; MIL; P; R | |
| **DTX-454** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 12.2, Allergan Historical BOTOX Cosmetic U.S. Net Revenue - 2009 to 2023 table | DB; H; MIL; P; R | |
| **DTX-455** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 13.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-456** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 14.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-457** | N/A | N/A | N/A | Trexler Rebuttal Report, Ex. 15.0, BOTOX Customer Visit Frequency Survey table | DB; H; MIL; P; R | |
| **DTX-458** | N/A | N/A | N/A | Trexler Reply, Ex. 1.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-459** | N/A | N/A | N/A | Trexler Reply, Ex. 2.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-460** | N/A | N/A | N/A | Trexler Reply, Ex. 3.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-461** | N/A | N/A | N/A | Trexler Reply, Ex. 4.0, [redacted] | DB; H; MIL; P; R | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-462** | N/A | N/A | N/A | Trexler Reply, Ex. 5.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-463** | N/A | N/A | N/A | Trexler Reply, Ex. 6.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-464** | N/A | N/A | N/A | Trexler Reply, Ex. 7.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-465** | N/A | N/A | N/A | Trexler Reply, Ex. 8.0-[redacted] | DB; H; MIL; P; R | |
| **DTX-466** | N/A | N/A | N/A | Trexler Reply, Ex. 9.0-RVNC v. S&P Index Historical Stock Prices - September 6, 2022 to April 18, 2024 | DB; H; MIL; P; R | |
| **DTX-467** | N/A | N/A | N/A | Trexler Reply, Ex. 10.0-Comparison of Monthly BOTOX Sales - 2018 to 2023 | DB; H; MIL; P; R | |
| **DTX-468** | N/A | N/A | N/A | Trexler Reply, Ex. 10.1-BOTOX Monthly Gross Sales less Returns - 2018 to 2023 | DB; H; MIL; P; R | |
| **DTX-469** | N/A | N/A | N/A | Trexler Reply, Ex. 10.2-BOTOX Gross Sales less Returns - 2018 | DB; H; MIL; P; R | |
| **DTX-470** | N/A | N/A | N/A | *Curriculum vitae* of Michael C. Goodnough | DB; H; MIL; P; R; N | |
| **DTX-471** | 2021.06.16 | N/A | N/A | IPR2021-01203, Ex. 1045 (Declaration of Curtis Ruegg, Ph.D.) | No objection at this time | |
| **DTX-472** | 2010.12.30 | N/A | N/A | IPR2021-01203, Ex. 1024 (US Patent Application Publication No. 2010/0330123 A1) | No objection at this time | |
| **DTX-473** | 2024.08.01 | N/A | N/A | "Pipeline," Abbvie (Aug. 1, 2024), https://www.abbvie.com/science/pipeline.html | R; H; P; F | |
| **DTX-474** | 2016.06.13 | N/A | N/A | "Revance Reports Results for RT001 Topical Phase 3 Trial for Lateral Canthal Lines," Globenewswire (June 13, 2016), https://www.globenewswire.com/news-release/2016/06/13/848193/0/en/Revance-Reports-Results-for-RT001-Topical-Phase-3-Trial-for-Lateral-Canthal-Lines.html | R; H; P; F | |
| **DTX-475** | 2023.11.00 | N/A | N/A | BOTOX® Cosmetic Label (revised 11/2023) | R; H; P; F | |
| **DTX-476** | 2023.11.00 | N/A | N/A | BOTOX® Label (revised 11/2023) | R; H; P; F | |
| **DTX-477** | N/A | N/A | N/A | "About DAXIFFY®," Daxxify, available at https://daxxify.com/faq | R; H; P; F | |
| **DTX-478** | 2014.01.17 | N/A | N/A | "Safety Study of Two Repeat Doses of RT001 for the Treatment of Moderate to Severe Lateral Canthal Lines in Adults," NIH (Jan. 17, 2014), https://classic.clinicaltrials.gov/ct2/history/NCT01124565?V_5=View#StudyPageTop | R; H; P; F | |
| **DTX-479** | 2023.11.08 | N/A | N/A | Revance Therapeutics, Inc. Form 10-Q (Period Ending September 30, 2023) | R; H; P; F | |
| **DTX-480** | N/A | N/A | N/A | "Revance Therapeutics," Golden, https://golden.com/wiki/Revance_Therapeutics-R9DGZJ6#Timeline | R; H; P; F | |
| **DTX-481** | N/A | N/A | N/A | "Now FDA approved for cervical dystonia," DAXXIFY, https://hcp.daxxifytherapy.com/ | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-482** | 2023.11.08 | N/A | N/A | "Revance Reports Third Quarter 2023 Financial Results, Provides Corporate Update," Revance (Nov. 8, 2023), https://investors.revance.com/investors/Press-Releases/news-details/2023/Revance-Reports-Third-Quarter-2023-Financial-Results-Provides-Corporate-Update/default.aspx | R; H; P; F | |
| **DTX-483** | N/A | N/A | N/A | "RHA®," Revance, https://rha.revanceaesthetics.com/ | R; H; P; F | |
| **DTX-484** | 2011.08.00 | N/A | N/A | BOTOX Label (revised 08/2011) | R; H; P; F | |
| **DTX-485** | 2023.01.00 | N/A | N/A | Draft Guidance, Dosage and Administration Section of Labeling for Human Prescription Drug and Biological Products — Content and Format, Guidance for Industry, U.S. Department of Health and Human Services | R; NP | |
| **DTX-486** | 2006.09.00 | N/A | N/A | Office Management and Budget Standards for Statistical Surveys | R; H; P; F | |
| **DTX-487** | 2009.04.30 | N/A | N/A | "FDA Approves DYSPORT(TM) for Therapeutic and Aesthetic Uses," GlobeNewswire (Apr. 30, 2009), https://www.globenewswire.com/news-release/2009/04/30/396594/6391/en/FDA-Approves-DYSPORT-TM-for-Therapeuticand-Aesthetic-Uses.html | R; H; P; F | |
| **DTX-488** | N/A | N/A | N/A | "MYOBLOC®," Myobloc, https://www.myobloc.com/for-cervical-dystonia | R; H; P; F | |
| **DTX-489** | 2020.12.22 | N/A | N/A | "Ajinomoto Bio-Pharma Services and Revance Therapeutics Announce Manufacturing Agreement for Supply of DaxibotulinumtoxinA for Injection," PR Newswire (Dec. 22, 2020), https://www.prnewswire.com/news-releases/ajinomoto-bio-pharma-services-and-revance-therapeutics-announce-manufacturing-agreement-for-supply-of-daxibotulinumtoxina-for-injection-301197277.html | R; H; P; F | |
| **DTX-490** | 2020.07.09 | N/A | N/A | "FDA Approves Expanded BOTOX® (onabotulinumtoxinA) Label for the Treatment of Pediatric Patients with Spasticity," PR Newswire (July 9, 2020), https://www.prnewswire.com/news-releases/fda-approves-expanded-botox-onabotulinumtoxina-label-for-the-treatment-of-pediatric-<br>patients-with-spasticity-301091264.html | R; H; P; F | |
| **DTX-491** | 2016.08.01 | N/A | N/A | "Ipsen Biopharmaceuticals, Inc. announces FDA approval of Dysport® (abobotulinumtoxinA) for the treatment of lower limb spasticity in pediatric patients aged two and older," PR Newswire (Aug. 1, 2016), https://www.prnewswire.com/news-releases/ipsen-biopharmaceuticals-inc-announces-fda-approval-of-dysport-abobotulinumtoxina-for-the-treatment-of-lower-limb-spasticity-in-pediatric-patients-aged-two-and-older-300306718.html | R; H; P; F | |
| **DTX-492** | 2024.06.04 | N/A | N/A | "The Remarkable History of Botox," verywellhealth (June 4, 2024), https://www.verywellhealth.com/how-botox-came-to-be-1124145 | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-493** | 2017.06.16 | N/A | N/A | "Ipsen announces FDA approval of Dysport® (abobotulinumtoxinA) for the treatment of lower limb Spasticity in adults," Ipsen (June 16, 2017), https://www.ipsen.com/canadafr/blog/press-releases/ipsen-announces-fda-approval-of-dysport-abobotulinumtoxina-for-the-treatment-of-lower-limb-spasticity-in-adults/#:~:text=BASKING%20RIDGE%2C%20N.J.%2C%20June%2016,treatment%20of%20spasticity%20in%20adults%2C | R; H; P; F | |
| **DTX-493A** | 2017.06.16 | N/A | N/A | "Ipsen announces FDA approval of Dysport® (abobotulinumtoxinA) for the treatment of lower limb Spasticity in adults," Business Wire (June 16, 2017), https://www.businesswire.com/news/home/20170616005486/en/Ipsen-Announces-FDA-Approval-of-Dysport%C2%AE-Abobotulinumtoxina-for-the-Treatment-of-Lower-Limb-Spasticity-in-Adults | | |
| **DTX-494** | 2010.03.15 | N/A | N/A | "FDA Approves Botox for Upper Extremity Spasticity," msaa (Mar. 15, 2010), https://mymsaa.org/news/botox | R; H; P; F | |
| **DTX-495** | 2012.03.06 | N/A | N/A | US 8,129,139 B2 | R; H; P; F | |
| **DTX-496** | 2012.03.20 | N/A | N/A | US 8,137,677 B2 | R; H; P; F | |
| **DTX-497** | *Intentionally Omitted* | | | | | |
| **DTX-498** | 2023.10.06 | N/A | N/A | Plaintiffs' Objections and Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-7) | R; P | |
| **DTX-499** | 2023.11.03 | N/A | N/A | Exhibit A to Plaintiffs' Response to Defendants' Interrogatory No. 2 (November 3, 2023) | R; P | |
| **DTX-500** | 2023.11.03 | N/A | N/A | Plaintiffs' Objections and Supplemental Responses to Defendants' Interrogatories (Nos. 1-12) | R; P | |
| **DTX-501** | 2023.04.03 | N/A | N/A | Plaintiffs' Objections and Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-7) | R; P | |
| **DTX-502** | 2010.03.15 | N/A | N/A | "FDA Approves Botox for Upper Extremity Spasticity," msaa (Mar. 15, 2010), https://mymsaa.org/news/botox | R; H; P; F | |
| **DTX-503** | 2016.01.22 | N/A | N/A | "U.S. FDA Approves BOTOX® (onabotulinumtoxinA) for the Treatment of Lower Limb Spasticity in Adults," PR Newswire (Jan. 22, 2016), https://www. prnewswire.corn/news-releases/us-fda-approves-botox-onabotulinumtoxina-for-the-treatment-of-lower-limb-spasticity-in-adults-300208358 .html. | R; H; P; F | |
| **DTX-504** | 2020.07.09 | N/A | N/A | "FDA Approves Expanded BOTOX® ( onabotulinumtoxinA) Label for the Treatment of Pediatric Patients with Spasticity," PR Newswire (July 9, 2020), https://www.prnewswire.com/news-releases/fda-approves-expanded-botox -onabotulinumtoxina-label-for-the-treatment-of-pediatric-patients-with-spasticity-301091264 .html. | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-505** | 2022.04.13 | N/A | N/A | "BOTOX® Cosmetic (onabotulinumtoxinA) Celebrates 20 Years Since First U.S. FDA Approval," Abbvie (Apr. 13, 2022), https://news.abbvie.com/2022-04-13-BOTOX-R-Cosmetic-onabotulinumtoxinA-Celebrates-20-Years-Since-First-U-S-FDA-Approval | R; H; P; F | |
| **DTX-506** | 2013.09.11 | N/A | N/A | "Botox Now FDA-Approved for Treating Crow's Feet," CBS News (Sept. 11, 2013), https://www.cbsnews.com/news/botox-now-fda-approved-for-treating-crows-feet | R; H; P; F | |
| **DTX-507** | 2017.10.03 | N/A | N/A | "FDA Approves BOTOX® Cosmetic (OnabotulinumtoxinA) for the Temporary Improvement in the Appearance of Moderate to Severe Forehead Lines Associated with Frontalis Muscle Activity in Adults, "PR Newswire (Oct. 3, 2017), https://www.prnewswire.com/news-releases/fda-approves-botox-cosmetic-onabotulinumtoxina-for-the-temporary-improvement-in-the-appearance-of-moderate-to-severe-forehead-lines-associated-with-frontalis-muscle-activity-in-adults-300529648.html. | R; H; P; F | |
| **DTX-508** | 2019.00.00 | N/A | N/A | Satriyasa, B., "Botulinum toxin (Botox) A for reducing the appearance of facial wrinkles: a literature review of clinical use and pharmacological aspect," *Clinical, Cosmetic and Investigational Dermatology* , 12:223-228 (2019) | R; H; P; F | |
| **DTX-509** | 2016.12.28 | N/A | N/A | Nestor, M. et al., "Key Parameters for the Use of AbobotulinumtoxinA in Aesthetics: Onset and Duration," *Aesthetic Surgery Journal* , 37(S1):S20-S31 (2016) | R; H; P; F | |
| **DTX-510** | 2019.02.15 | N/A | N/A | Allergan plc, Warner Chilcott Limited Form 10-K (Fiscal year ending Dec. 31, 2018) | R; H; P; F | |
| **DTX-511** | 2020.05.07 | N/A | N/A | Allergan plc, Warner Chilcott Limited Form 10-Q (Period ending March 31, 2020) | R; H; P; F | |
| **DTX-512** | 2024.02.20 | N/A | N/A | AbbVie Form 10-K (Fiscal year ending Dec. 31, 2023) | R; H; P; F | |
| **DTX-513** | 2022.02.28 | N/A | N/A | Revance Therapeutics, Inc. Form 10-K (Fiscal year ending Dec. 31, 2021) | R; H; P; F | |
| **DTX-514** | 2021.02.25 | N/A | N/A | Revance Therapeutics, Inc. Form 10-K (Fiscal year ending Dec. 31, 2020) | R; H; P; F | |
| **DTX-515** | 2024.02.02 | N/A | N/A | "Revance Receives Permanent J-Code for DAXXIFY® and Announces Publication of DAXXIFY Pivotal Study (ASPEN-1) Results in Neurology®," BioSpace (Feb. 2, 2024), https://www.biospace.com/article/releases/revance-receivespermanent-j-code-for-daxxify-and-announces-publication-of-daxxify-pivotal-study-aspen-1-results-in-neurology-/ | R; H; P; F | |
| **DTX-516** | 2011.12.00 | N/A | N/A | Thomas, N., "Secondary Considerations in Nonobviousness Analysis: The Use of Objective Indicia Following *KSR v. Teleflex* ," *New York University Law Review* , 86(2070):2070-2112 (2011) | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-517** | 2022.00.00 | N/A | N/A | "Advancing Health Through Innovation: New Drug Therapy Approvals 2022," USFDA (2022), https://www.fda.gov/drugs/novel-drug-approvals-fda/novel-drug-approvals-2022 | R; H; P; F | |
| **DTX-518** | *Intentionally Omitted* | | | | | |
| **DTX-519** | 2019.02.12 | | | US 10,201,594 | R; H; P; F; NP | |
| **DTX-520** | 2016.05.17 | | | US 9,340,587 | R; H; P; F; NP | |
| **DTX-521** | 2018.05.01 | | | US 9,956,435 | R; H; P; F; NP | |
| **DTX-522** | 2024.02.29 | REV_DAX-03325982 | REV_DAX-03325983 | Email chain from M. Meagher to P. MacLeod re "Re: T8750" | R; H; P; F; | |
| **DTX-523** | N/A | N/A | N/A | *Curriculum vitae* of Hui Xiang | N; NP | |
| **DTX-524** | N/A | ALGN-1835967 | ALGN-1835974 | [redacted] | R; H; P; F | JTX_082 |
| **DTX-525** | N/A | ALGN-0033478 | ALGN-0033491 | [redacted] | R; H; P; F | |
| **DTX-526** | N/A | ALGN-0034565 | ALGN-0034578 | [redacted] | R; H; P; F | |
| **DTX-527** | 2019.11.15 | REV_DAX-00001992 | REV_DAX-00002009 | [redacted] | R; H; P | |
| **DTX-528** | 2023.09.00 | N/A | N/A | *Curriculum vitae* of Jeffrey S. Dover, MD | DB; H; MIL; P; R; N | |
| **DTX-529** | 2023.04.00 | N/A | N/A | *Curriculum vitae* of Raj Suryanarayanan, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-530** | 2000.12.00 | REV_DAX-03325271 | REV_DAX-03325286 | MYOBLOC™ Label (revised 12/00) | R; H; P; F | |
| **DTX-531** | 2023.05.20 | REV_DAX-03340359 | REV_DAX-03340370 | Ravari, N. et al., "Fabrication, characterization and evaluation of a new designed botulinum toxin-cell penetrating peptide nanoparticulate complex," *DARU Journal of Pharmaceutical Sciences* , 31:1-12 (2023) | R; H; P; F; MIL; AU | |
| **DTX-532** | 1999.04.28 | REV_DAX-03323133 | REV_DAX-03323192 | Wang, W., "Instability, stabilization, and formulation of liquid protein pharmaceuticals," *International Journal of Pharmaceutics* , 185:129–188 (1999) | R; H; P; F | |
| **DTX-533** | 2024.00.00 | REV_DAX-03323089 | REV_DAX-03323090 | Batista, A. et al., "A Cell Penetrating Peptide Enhances Membrane Binding of Botulinum Neurotoxin Type A and Increases SNAP-25 Cleavage," *Toxicon 237S1* , 7–8 (2024) | R; H; P; F | JTX_120 |
| **DTX-534** | 2019.12.09 | REV_DAX-02176618 | REV_DAX-02176632 | [redacted] | R; H; P; F; | |
| **DTX-535** | 2019.09.26 | REV_DAX-02185995 | REV_DAX-02185995 | [redacted] | R; H; P; F; | |
| **DTX-536** | 2021.06.26 | REV_DAX-02196550 | REV_DAX-02196586 | [redacted] | R; H; P; F; | |
| **DTX-537** | 2021.05.27 | REV_DAX-02196774 | REV_DAX-02196813 | [redacted] | R; H; P; F; | |
| **DTX-538** | N/A | REV_DAX-02202706 | REV_DAX-02202775 | [redacted] | R; H; P; F | |
| **DTX-539** | 2020.09.22 | REV_DAX-02505965 | REV_DAX-02505986 | [redacted] | R; H; P | |
| **DTX-540** | 2020.09.22 | REV_DAX-02505987 | REV_DAX-02506012 | [redacted] | R; H; P | |
| **DTX-541** | 2021.01.21 | REV_DAX-02506544 | REV_DAX-02506596 | [redacted] | R; H; P; F | |
| **DTX-542** | 2021.01.26 | REV_DAX-02506897 | REV_DAX-02506932 | [redacted] | R; H; P; F | |
| **DTX-543** | 2017.10.23 | REV_DAX-02513629 | REV_DAX-02513659 | [redacted] | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-544** | 2019.11.12 | REV_DAX-02521930 | REV_DAX-02522084 | [redacted] | R; H; P; F; MIL | |
| **DTX-545** | 2021.06.10 | REV_DAX-02522341 | REV_DAX-02522343 | [redacted] | R; H; P; F; | |
| **DTX-546** | 2017.01.30 | REV_DAX-02559668 | REV_DAX-02559727 | [redacted] | R; H; P; F | |
| **DTX-547** | N/A | REV_DAX-02577066 | REV_DAX-02577074 | [redacted] | R; H; P; F | |
| **DTX-548** | 2020.09.22 | REV_DAX-02618122 | REV_DAX-02618190 | [redacted] | R; H; P | |
| **DTX-549** | 2019.11.12 | REV_DAX-02618944 | REV_DAX-02619098 | [redacted] | R; H; P; F; MIL | |
| **DTX-550** | N/A | REV_DAX-02707840 | REV_DAX-02707844 | [redacted] | R; H; P; F | |
| **DTX-551** | N/A | REV_DAX-02707845 | REV_DAX-02707847 | [redacted] | R; H; P; F | |
| **DTX-552** | N/A | N/A | N/A | *Curriculum vitae* of Joshua D. Ramsey, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-553** | N/A | N/A | N/A | *Curriculum vitae* of Michael C. Goodnough, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-554** | 2024.02.00 | N/A | N/A | *Curriculum vitae* of Atul T. Patel, M.D., MHSA | DB; H; MIL; P; R; N | |
| **DTX-555** | N/A | REV_DAX-03325979 | REV_DAX-03325981 | "Benzonase® Nuclease HC, Purity > 99%," Millipore Sigma | R; H; P; F | |
| **DTX-556** | N/A | REV_DAX-03326170 | REV_DAX-03326177 | "PCR Cycling Parameters–Six Key Considerations for Success," ThermoFisher Scientific, https://www.thermofisher.com/us/en/home/life-science/cloning/cloning-learningcenter/ invitrogen-school-of-molecularbiology/pcr-education/pcr-reagentsenzymes/pcr-cycling-considerations.html | R; H; P; F | |
| **DTX-557** | 1979.10.00 | REV_DAX-03326150 | REV_DAX-03326155 | Siegel, L. and Metzger, J., "Toxin Production by *Clostridium botulinum* Type A Under Various Fermentation Conditions," *Applied and Environmental Microbiology* , 38(4):606–611 (1979) | R; H; P; F | |
| **DTX-558** | N/A | REV_DAX-03326178 | REV_DAX-03326228 | "Trehalose," NIH, https://pubchem.ncbi.nlm.nih.gov/compound/Trehalose | R; H; P; F | |
| **DTX-559** | N/A | REV_DAX-03326229 | REV_DAX-03326253 | "Trehalose dihydrate," NIH, https://pubchem.ncbi.nlm.nih.gov/compound/Trehalose-dihydrate | R; H; P; F | |
| **DTX-560** | N/A | REV_DAX-03339813 | REV_DAX-03339909 | "Histidine," NIH, https://pubchem.ncbi.nlm.nih.gov/compound/Histidine | R; H; P; F | |
| **DTX-561** | N/A | REV_DAX-03339952 | REV_DAX-03339983 | "L-Histidine hydrochloride hydrate," NIH, https://pubchem.ncbi.nlm.nih.gov/compound/L-Histidine-hydrochloride-hydrate | R; H; P; F | JTX_128 |
| **DTX-562** | N/A | REV_DAX-03330667 | REV_DAX-03332539 | Portions of Prosecution History of U.S. Patent No. 11,147,878 | N; I | JTX_008 |
| **DTX-563** | 2022.09.02 | N/A | N/A | *Curriculum vitae* of Michael Meagher, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-564** | N/A | N/A | N/A | *Curriculum vitae* of Akhilesh K. Nagaich, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-565** | 2023.11.00 | N/A | N/A | *Curriculum vitae* of Steven Schwartz, Ph.D. | DB; H; MIL; P; R; N | |
| **DTX-566** | N/A | N/A | N/A | Trexler Reply, *Curriculum vitae* of Dana Trexler, CPA/CFF | DB; H; MIL; P; R | |
| **DTX-567** | N/A | REV_DAX-02664183 | | [redacted] | R; H; P; F | |
| **DTX-568** | 2023.02.00 | REV_DAX-02672222 | REV_DAX-02672240 | [redacted] | R; H; P; F | |
| **DTX-569** | 2000.12.00 | REV_DAX-03325271 | REV_DAX-03325286 | MYOBLOC™ Label (revised 12/00) | R; H; P; F | |
| **DTX-570** | 2019.08.00 | REV_DAX-03325287 | REV_DAX-03325306 | MYOBLOC Label (revised 8/2019) | R; H; P; F | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-571** | 2020.09.00 | REV_DAX-03325307 | REV_DAX-03325325 | MYOBLOC® Label (revised 9/2020) | R; H; P; F | |
| **DTX-572** | N/A | REV_DAX-03325374 | REV_DAX-03325375 | Drugs@FDA: FDA-Approved Drugs, MYOBLOC | R; H; P; F | |
| **DTX-573** | N/A | REV_DAX-03325847 | REV_DAX-03325858 | XEOMIN Label | R; H; P; F | JTX_054 |
| **DTX-574** | 2019.05.00 | REV_DAX-03325859 | REV_DAX-03325878 | XEOMIN Label (revised 5/2019) | R; H; P; F | JTX_055 |
| **DTX-575** | 2023.09.00 | REV_DAX-03325904 | REV_DAX-03325974 | XEOMIN Label (revised 9/2023) | R; H; P; F | JTX_056 |
| **DTX-576** | N/A | REV_DAX-03325975 | REV_DAX-03325978 | Drugs@FDA: FDA-Approved Drugs, Xeomin | R; H; P; F | |
| **DTX-577** | N/A | REV_DAX-03324013 | REV_DAX-03324024 | Physicians' Desk Reference | R; H; P; F | |
| **DTX-578** | 2023.11.00 | REV_DAX-03324230 | REV_DAX-03324321 | BOTOX Label (revised 11/2023) | R; H; P; F | |
| **DTX-579** | 2023.09.00 | REV_DAX-03324692 | REV_DAX-03324758 | DYSPORT Label (revised 9/2023) | R; H; P; F | |
| **DTX-580** | 2019.07.00 | REV_DAX-03325138 | REV_DAX-03325145 | JEUVEAU™ Label (revised 07/2019) | R; H; P; F | JTX_047 |
| **DTX-581** | N/A | REV_DAX-03326273 | REV_DAX-03326278 | https://www.dysportusa.com/hcp | R; H; P; F | |
| **DTX-582** | 2024.00.00 | REV_DAX-03325797 | REV_DAX-03325797 | Simpson, D. et al., “Botulinum treatment dynamics and persistence over 2 years in patients with cervical dystonia or spasticity: a retrospective claims database analysis,” TOXINS (2024) | R; H; P; F | |
| **DTX-583** | 2020.05.17 | REV_DAX-03325798 | REV_DAX-03325810 | Spiegel, L. et al., “FDA Approvals and Consensus Guidelines for Botulinum Toxins in the Treatment of Dystonia,” Toxins, 12(5):332 (2020) | R; H; P; F | |
| **DTX-584** | 2012.07.00 | REV_DAX-03325102 | REV_DAX-03325106 | Hanson, M., “Use of chemodenervation in dystonic conditions,” Cleveland Clinic Journal of Medicine, 79 Suppl. 2:S25–9 (2012) | R; H; P; F | |
| **DTX-585** | 2022.00.00 | REV_DAX-03325244 | REV_DAX-03325252 | Medina, A. et al., “The Prevalence of Idiopathic or Inherited Isolated Dystonia: A Systematic Review and Meta-Analysis,” Movement Disorders, 9(7):860–868 (2022) | R; H; P; F | |
| **DTX-586** | 2024.07.25 | REV_DAX-03343145 | REV_DAX-03343165 | AbbVie Inc. (NYSE:ABBV) Earnings Call Transcript, Thursday, July 25, 2024 9:00 AM | R; H; P; F | |
| **DTX-587** | 2024.06.12 | REV_DAX-03343093 | REV_DAX-03343108 | AbbVie Inc. (NYSE:ABBV) Company Conference Presentation Transcript, Wednesday, June 12, 2024 10:00 AM | R; H; P; F | |
| **DTX-588** | 2024.05.15 | REV_DAX-03343078 | REV_DAX-03343092 | AbbVie Inc. (NYSE:ABBV) Company Conference Presentation Transcript, Wednesday, May 15, 2024 1:40 PM | R; H; P; F | |
| **DTX-589** | 2024.03.05 | REV_DAX-03343109 | REV_DAX-03343122 | AbbVie Inc. (NYSE:ABBV) Company Conference Presentation Transcript, Tuesday, March 5, 2024 9:10 AM | R; H; P; F | |
| **DTX-590** | 2024.04.26 | REV_DAX-03343123 | REV_DAX-03343144 | AbbVie Inc. (NYSE:ABBV) Earnings Call Transcript, Friday, April 26, 2024 9:00 AM | R; H; P; F | |
| **DTX-591** | 2020.10.00 | ALGN-1844877 | ALGN-1844916 | [redacted] | No objection at this time | JTX_202 |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-592** | 2020.10.20 | ALGN-1845173 | ALGN-1845187 | [redacted] | R; P | |
| **DTX-593** | 2020.06.29 | ALGN-1845188 | ALGN-1845216 | [redacted] | R; P | |
| **DTX-594** | 2024.03.00 | N/A | N/A | Curriculum vitae of Curtis Ruegg, Ph.D. | R; H; P; F; NP | |
| **DTX-595** | N/A | REV_DAX-00002851 | REV_DAX-00002852 | BLA 761127, 3.2.A.3.1 General Information | R; H; P; F; | JTX_198 |
| **DTX-596** | N/A | REV_DAX-02691845 | REV_DAX-02691858 | RTP004 [redacted] | R; H; P; F; | |
| **DTX-597** | 2018.07.11 | REV_DAX-02569593 | REV_DAX-02569612 | [redacted] RTP004 [redacted] | R; H; P; F; | |
| **DTX-598** | 2005.05.00 | REV_DAX-03326428 | REV_DAX-03326439 | FDA Guidance-Nonclinical Studies for the Safety Evaluation of Pharmaceutical Excipients (May 2005) | R; H; P; F; | |
| **DTX-599** | 1996.07.00 | REV_DAX-03326468 | REV_DAX-03326479 | ICH Q5C Quality of Biotechnological Products | R; H; P; F; | |
| **DTX-600** | 2022.09.15 | REV_DAX-02139881 | REV_DAX-02140025 | [redacted] | R; H; P; F; | |
| **DTX-601** | 2022.03.06 | REV_DAX-02089357 | REV_DAX-02089431 | [redacted] | R; H; P; F; | JTX_199 |
| **DTX-602** | 2022.08.30 | REV_DAX-02105299 | REV_DAX-02105313 | [redacted] | R; H; P; F; | |
| **DTX-603** | 1999.08.00 | REV_DAX-03326480 | REV_DAX-03326503 | ICH Q6B Specifications: Test Procedures and Acceptance Criteria for Biotechnological/Biological Products (Aug. 1999) | R; H; P; F; | |
| **DTX-604** | 2019.02.00 | REV_DAX-03325146 | REV_DAX-03325159 | JEUVEAU® Label (revised 02/2019) | R; H; P; F; | |
| **DTX-605** | 2011.01.00 | REV_DAX-03326446 | REV_DAX-03326467 | Guidance for Industry, Process Validation: General Principles and Practices | R; H; P; F; | |
| **DTX-606** | 2022.09.06 | REV_DAX-03326320 | REV_DAX-03326427 | [redacted] | R; H; P; F; | JTX_200 |
| **DTX-607** | 2019.11.12 | REV_DAX-00004971 | REV_DAX-00005125 | [redacted] | R; H; P; F; | JTX_201 |
| **DTX-608** | *Intentionally Omitted* | | | | | |
| **DTX-609** | 2023.10.06 | N/A | N/A | Plaintiffs' Objections and Supplemental Response to Interrogatory No. 5 (Oct. 6, 2023) | R; P; | |
| **DTX-610** | 2023.10.18 | REV_DAX-03326504 | REV_DAX-03326514 | Sattler, S. et. al, "A Narrative Literature Review of the Established Safety of Human Serum Albumin Use as a Stabilizer in Aesthetic Botulinum Toxin Formulations Compared to Alternatives," Toxins, 15(619):1–10 (2023) | R; H; P; F; | |
| **DTX-611** | 1988.04.18 | REV_DAX-03321680 | REV_DAX-03321690 | Woody, M. and DasGupta, B., "Fast Protein Liquid Chromatography of Botulinum Neurotoxin Types A, B and E," Journal of Chromatography, 430:279–289 (1988) | R; H; P; F; | |
| **DTX-612** | 2009.03.03 | REV_DAX-03339687 | REV_DAX-03339693 | Henkel, J. et al., "Catalytic Properties of Botulinum Neurotoxin Subtypes A3 and A4," Biochemistry, 48:2522–2528 (2009) | R; H; P; F; | |
| **DTX-613** | 2006.00.00 | REV_DAX-03339694 | REV_DAX-03339701 | Gessler, F. et al., "Immunomagnetic beads assay for the detection of botulinum neurotoxin types C and D," Diagnostic Microbiology and Infectious Disease, 56:225–232 (2006) | R; H; P; F; | |
| **DTX-614** | 2001.00.00 | REV_DAX-03339995 | REV_DAX-03340017 | Wang, Z. et al., "Glycerol production by microbial fermentation: A review," Biotechnology Advances, 19:201–223 (2001) | R; H; P; F; | |
| **DTX-615** | 2004.00.00 | REV_DAX-03340029 | REV_DAX-03340080 | Alberts, B. et al., Essential Cell Biology, Garland Science (2d ed.), 119-168 (2004) | R; H; P; F; | |
| **DTX-616** | 2000.00.00 | REV_DAX-03340081 | REV_DAX-03340085 | Jackson, G. and Collinge, J., "Prion disease – the propagation of infectious protein topologies," Microbes and Infection, 2:1445–1449 (2000) | R; H; P; F; | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-617** | 2001.06.00 | REV_DAX-03339799 | REV_DAX-03339812 | Carruthers, A. and Carruthers, J., "Botulinum Toxin Type A: History and Current Cosmetic Use in the Upper Face," Seminars in Cutaneous Medicine and Surgery, 20(2):71–84 (2001) | R; H; P; F; | |
| **DTX-618** | 1997.00.00 | REV_DAX-03340193 | REV_DAX-03340199 | Österberg, T. et al., "Development of a Freeze-Dried Albumin-Free Formulation of Recombinant Factor VIII SQ," Pharmaceutical Research, 14(7):892–898 (1997) | R; H; P; F; | |
| **DTX-619** | 2013.00.00 | REV_DAX-03324941 | REV_DAX-03324947 | Broide, R. et al., "The rat Digit Abduction Score (DAS) assay: A physiological model for assessing botulinum neurotoxin-induced skeletal muscle paralysis," Toxicon, 71:18–24 (2013) | R; H; P; F; | JTX_213 |
| **DTX-620** | 2020.00.00 | REV_DAX-03324948 | REV_DAX-03324954 | Kwak, S. et al., "Comparative Pharmacodynamics Study of 3 Different Botulinum Toxin Type A Preparations in Mice," Dermatologic Surgery, 46(12):e132–e138 (2020) | R; H; P; F; | |
| **DTX-621** | 2019.00.00 | REV_DAX-03324005 | REV_DAX-03324012 | Bertucci, V. et al., "DaxibotulinumtoxinA for Injection has a prolonged duration of response in the treatment of glabellar lines: Pooled data from two multicenter, randomized, double-blind, placebo-controlled, phase 3 studies (SAKURA 1 and SAKURA 2)," J Am Acad Dermatol, 82(4):838–845 (2019) | R; H; P; F; | |
| **DTX-622** | 2020.01.00 | REV_DAX-03324486 | REV_DAX-03324499 | Carruthers, J. et al., "DaxibotulinumtoxinA for Injection for the Treatment of Glabellar Lines: Results from Each of Two Multicenter, Randomized, Double- Blind, Placebo-Controlled, Phase 3 Studies (SAKURA 1 and SAKURA 2)," Plastic and Reconstructive Surgery, 145(1):45–58 (2020) | R; H; P; F; | |
| **DTX-623** | 2021.04.00 | REV_DAX-03324515 | REV_DAX-03324519 | Cohen, J. et al., "Prior Botulinum Toxin Treatment Does Not Impact Efficacy or Safety in Clinical Trials: Analysis of DaxibotulinumtoxinA for Injection in the SAKURA Program," Dermatologic Surgery, 47(4):511–515 (2021) | R; H; P; F; | |
| **DTX-624** | N/A | REV_DAX-03326124 | REV_DAX-03326131 | "Casein Hydrolysate," Millipore Sigma, https://www.sigmaaldrich.com/US/en/product/sial/22090 | R; H; P; F; | JTX_214 |
| **DTX-625** | 2009.07.31 | REV_DAX-03326132 | REV_DAX-03326149 | MYOBLOC® Label (7/31/2009) | R; H; P; F; | |
| **DTX-626** | N/A | REV_DAX-03326165 | REV_DAX-03326169 | "Bovine Serum Albumin (BSA Protein)," ThermoFisher Scientific | R; H; P; F; | |
| **DTX-627** | 2015.00.00 | REV_DAX-03325059 | REV_DAX-03325067 | Garcia-Murray, E. et al., "Safety and Efficacy of RT002, an Injectable Botulinum Toxin Type A, for Treating Glabellar Lines: Results of a Phase 1/2, Open-Label, Sequential Dose-Escalation Study," Dermatologic Surgery, 41(15):S47–S55 (2015) | R; H; P; F; | |
| **DTX-628** | 2017.00.00 | REV_DAX-03324500 | REV_DAX-03324510 | Carruthers, J. et al., "Injectable DaxibotulinumtoxinA for the Treatment of Glabellar Lines: A Phase 2, Randomized, Dose-Ranging, Double-Blind, Multicenter Comparison With OnabotulinumtoxinA and Placebo," Dermatologic Surgery, 43:1321–1331 (2017) | R; H; P; F; | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-629** | 2017.12.00 | REV_DAX-03323993 | REV_DAX-03324004 | Bertucci, V. et al., "Comparing Injectable DaxibotulinumtoxinA and OnabotulinumtoxinA in Moderate and Severe Glabellar Lines: Additional Analyses From a Phase 2, Randomized, Dose-Ranging, Double-Blind, Multicenter Study," Dermatologic Surgery, 43:S262–S273 (2017) | R; H; P; F; | |
| **DTX-630** | 2021.12.00 | REV_DAX-03325068 | REV_DAX-03325073 | Glogau, R. et al., "Progressive Improvement in Static Glabellar Lines After Repeated Treatment With DaxibotulinumtoxinA for Injection," Dermatologic Surgery, 47(12):1579–1584 (2021) | R; H; P; F; | |
| **DTX-631** | 2007.02.15 | ALGN-1835922 | ALGN-1835992 | [redacted] | R; H; P; F; | |
| **DTX-632** | 2020.06.13 | REV_DAX-03324955 | REV_DAX-03324969 | Rupp, D. et al., "OnabotulinumtoxinA Displays Greater Biological Activity Compared to IncobotulinumtoxinA, Demonstrating Non-Interchangeability in Both In Vitro and In Vivo Assays," Toxins, 12(393):1-15 (2020) | R; H; P; F; | JTX_215 |
| **DTX-633** | 2010.12.00 | REV_DAX-03324970 | REV_DAX-03324978 | Sattler, G. et al., "Noninferiority of IncobotulinumtoxinA, Free from Complexing Proteins, Compared with Another Botulinum Toxin Type A in the Treatment of Glabellar Frown Lines," Dermatol Sur, 36(54):2146–2154 (2010) | R; H; P; F; | |
| **DTX-634** | 2023.08.14 | REV_DAX-02731117 | REV_DAX-02731121 | Daxxify Pulse Survey Kx Advisors presentation | R; H; P; F; | JTX_211 |
| **DTX-635** | 2022.00.00 | N/A | N/A | "Ipsen 2022 Universal Registration Document," Ipsen (2022), https://www.ipsen.com/websites/ipsen_com_v2/wp-content/uploads/2023/05/18095509/2022-Universal-Registration-Document.pdf | R; H; P; F; | |
| **DTX-636** | 2021.03.00 | N/A | N/A | MYOBLOC® Label (revised 03/2021) | R; H; P; F; | |
| **DTX-637** | *Intentionally Omitted* | | | | | |
| **DTX-638** | 2018.05.08 | N/A | N/A | Revance Therapeutics, Inc. FQ1 2018 Earnings Call \| May 08, 2018 | R; H; P; F; | |
| **DTX-639** | 2017.11.02 | N/A | N/A | Revance Therapeutics, Inc. FQ3 2017 Earnings Call I Nov. 02, 2017 | R; H; P; F; | |
| **DTX-640** | 2022.09.08 | N/A | N/A | Revance Press Release, "Revance Announces FDA Approval of DAXXIFY™ (DaxibotulinumtoxinA-lanm) for Injection, the First and Only Peptide-Formulated Neuromodulator With Long-Lasting Results" (Sept. 8, 2022) (available at https://investors.revance.com/investors/Press-Releases/news-details/2022/Revance-Announces-FDA-Approval-of-DAXXIFY-DaxibotulinumtoxinA-lanm-for-Injection-the-First-and-Only-Peptide-Formulated-Neuromodulator-With-Long-Lasting-Results-09-08-2022/default.aspx.) | R; H; P; F; | |
| **DTX-641** | 2021.09.03 | REV_DAX-02680132 | REV_DAX-02680283 | [redacted] | R; H; P; F; | |
| **DTX-642** | 2024.10.24 | REV_DAX-03343166 | REV_DAX-03343166 | [redacted] | R; H; P; F; | |
| **DTX-643** | 2024.10.18 | REV_DAX-03343077 | REV_DAX-03343077 | [redacted] | R; H; P; F; | |
| **DTX-644** | 2024.10.18 | ALGN-1848430 | ALGN-1848430 | Allergan account level sales data update through Oct. 18, 2024 | No objection at this time | JTX_218 |
| **DTX-645** | N/A | ALGN-1848431 | ALGN-1848431 | Allergan account level sales data update through Oct. 18, 2024 | No objection at this time | JTX_219 |
| **DTX-646** | 2008.00.00 | ALGN-0044324 | ALGN-0044324 | [redacted] | R; H; P | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-647** | 2021.09.21 | ALGN-0013304 | ALGN-0013333 | Certified U.S. Patent No. 11,124,786 | R; H; P | |
| **DTX-648** | 2011.06.22 | ALGN-0028505 | ALGN-0028718 | Allergan Notebook [redacted] | No objection at this time | JTX_192 |
| **DTX-649** | 2011.06.22 | ALGN-0012903 | ALGN-0013114 | Allergan Notebook [redacted] | No objection at this time | JTX_193 |
| **DTX-650** | 2004.04.28 | ALGN-0012877 | ALGN-0012881 | Results from Experiment 9 | No objection at this time | JTX_194 |
| **DTX-651** | 2011.06.22 | ALGN-0028719 | ALGN-0028931 | Allergan Notebook [redacted] | No objection at this time | JTX_195 |
| **DTX-652** | 2004.07.23 | ALGN-0012882 | ALGN-0012883 | Results from Experiment 14 | No objection at this time | JTX_196 |
| **DTX-653** | 2004.09.28 | ALGN-0012884 | ALGN-0012885 | Results from Experiment 17 | No objection at this time | JTX_197 |
| **DTX-654** | *Intentionally Omitted* | | | | | |
| **DTX-655** | 2020.11.04 | ALGN-1841463 | ALGN-1841519 | [redacted] | R; H; P | JTX_203 |
| **DTX-656** | N/A | ALGN-0031042 | ALGN-0031042 | [redacted] | R; H; P | JTX_216 |
| **DTX-657** | N/A | ALGN-0066681 | ALGN-0066681 | [redacted] | R; H; P | JTX_205 |
| **DTX-658** | 2023.02.28 | ALGN-1365233 | ALGN-1365506 | SEC Filing - Revance Therapeutics, Inc. Form 10-K (Period Ending December 31, 2022) | R; H; P | JTX_217 |
| **DTX-659** | 2021.03.11 | ALGN-0069679 | ALGN-0069680 | [redacted] | R; H; P; F; | JTX_206 |
| **DTX-660** | N/A | ALGN-1845430 | ALGN-1845440 | [redacted] | R; H; P; F; | JTX_207 |
| **DTX-661** | 2018.10.07 | ALGN-0067228 | ALGN-0067228 | Give Her Lips More BDM $100 PTD through Oct 07, 2018 | R; H; P; F; | JTX_208 |
| **DTX-662** | 2020.09.24 | ALGN-1837433 | ALGN-1837433 | [redacted] | R; H; P; F; | JTX_209 |
| **DTX-663** | N/A | N/A | N/A | LinkedIn Profile of Jason Paik, MBA | R; H; P; F; | |
| **DTX-664** | 2018.01.01 | ALGN-0012623 | ALGN-0012638 | Distribution Agreement between Allergan Pharmaceuticals Ireland and Allergan USA, Inc. | No objection at this time | JTX_189 |
| **DTX-665** | 2020.01.21 | ALGN-0012645 | ALGN-0012655 | Assignment and Assumption Agreement between Allergan Botox Unlimited Company, Allergan Pharmaceuticals Holdings (Ireland) Unlimited Company and Allergan Pharmaceuticals Ireland | No objection at this time | JTX_190 |
| **DTX-666** | 2020.01.21 | ALGN-0012656 | ALGN-0012839 | Intellectual Property Economic Asset Purchase Agreement between Allergan Botox Unlimited Company, Allergan Pharmaceuticals Holdings (Ireland) Unlimited Company and Allergan Pharmaceuticals Ireland | No objection at this time | JTX_191 |
| **DTX-667** | N/A | ALGN-0070396 | ALGN-0070396 | [redacted] | R; H; P | JTX_210 |
| **DTX-668** | N/A | ALGN-0066908 | ALGN-0066908 | [redacted] | R; H; P | JTX_204 |
| **DTX-669** | 2023.03.01 | N/A | N/A | [redacted] | No objection at this time | JTX_220 |
| **DTX-670** | N/A | N/A | N/A | [redacted] | No objection at this time | |
| **DTX-671** | 2023.07.31 | N/A | N/A | Defendants' Deposition Notice Pursuant to Federal Rule of Civil Procedure 30(b)(6), Tran Ex. 4 | R; H; P; F; | |
| **DTX-672** | N/A | N/A | N/A | LinkedIn Profile of Hui Xiang | R; H; P; F; NP | |
| **DTX-673** | 2008.11.18 | REV_DAX-02172190 | REV_DAX-02172234 | U.S. Patent No. 7,452,697 | R; H; P; F; | JTX_212 |
| **DTX-674** | N/A | ALGN-1848432 | ALGN-1848432 | Document with header "US Medical - ASP - Price/Volume/Mix" | R; H; P | |
| **DTX-675** | N/A | ALGN-1848433 | ALGN-1848433 | Spreadsheet with US Toxins financial data | R; H; P | |
| **DTX-676** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 1.0, Summary of Affirmative Damages Scenarios | DB; H; MIL; P; R | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-677** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 1.1, Summary of Adjusted Lost Profits and Reasonable Royalty Damages - Assuming Lost Profits are Granted | DB; H; MIL; P; R | |
| **DTX-678** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 1.1a, Calculation of Adjusted Reasonable Royalty Damages - Assuming Lost Profits are Granted | DB; H; MIL; P; R | |
| **DTX-679** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 1.1b, Calculation of Adjusted Reasonable Royalty Base - Assuming Lost Profits are Granted | DB; H; MIL; P; R | |
| **DTX-680** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 3.0, Damages Scenarios 4-6 - Reasonable Royalty Damages Without Available Design-Around Alternatives | DB; H; MIL; P; R | |
| **DTX-681** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 4.0, Damages Scenarios 7-8 - Reasonable Royalty Damages Without Available Design-Around Alternatives | DB; H; MIL; P; R | |
| **DTX-682** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 8.0, Adjustment to the Meyer Report's Lost Profits Calculation - All Adjustments Combined | DB; H; MIL; P; R | |
| **DTX-683** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 8.5, [redacted] | DB; H; MIL; P; R | |
| **DTX-684** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 11.0, [redacted] | DB; H; MIL; P; R | |
| **DTX-685** | N/A | N/A | N/A | Trexler Supplemental Report Exhibit 11.1, DAXXIFY Sales [redacted] | DB; H; MIL; P; R | |
| **DTX-686** | N/A | N/A | N/A | Trexler Supplemental Report, Ex. A, Curriculum Vitae of Dana Trexler, CPA/CFF | DB; H; MIL; P; R; N | |
| **DTX-687** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 1.0, Summary of Affirmative Damages Scenarios | DB; H; P; R; F; DE | |
| **DTX-688** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 1.1, Summary of Adjusted Lost Profits and Reasonable Royalty Damages - Assuming Lost Profits are Granted | DB; H; P; R; F; DE | |
| **DTX-689** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 1.1a, Calculation of Adjusted Reasonable Royalty Damages - Assuming Lost Profits are Granted | DB; H; P; R; F; DE | |
| **DTX-690** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 1.1b, Calculation of Adjusted Reasonable Royalty Base - Assuming Lost Profits are Granted | DB; H; P; R; F; DE | |
| **DTX-691** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 3.0, Damages Scenarios 4-6 - Reasonable Royalty Damages Without Available Design-Around Alternatives | DB; H; P; R; F; DE | |

| DTX # | DATE | BEG BATES | END BATES | DESCRIPTION | OBJECTIONS | JTX # |
|---|---|---|---|---|---|---|
| **DTX-692** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 4.0, Damages Scenarios 7-8 - Reasonable Royalty Damages Without Available Design-Around Alternatives | DB; H; P; R; F; DE | |
| **DTX-693** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 8.0, Adjustment to the Siegwarth's Lost Profits Calculation - All Adjustments Combined | DB; H; P; R; F; DE | |
| **DTX-694** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 8.5, [redacted] | DB; H; P; R; F; DE | |
| **DTX-695** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 11.0, [redacted] | DB; H; P; R; F; DE | |
| **DTX-696** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 11.1, [redacted] | DB; H; P; R; F; DE | |
| **DTX-697** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 11.1.1, [redacted] | DB; H; P; R; F; DE | |
| **DTX-698** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 11.1.2, [redacted] | DB; H; P; R; F; DE | |
| **DTX-699** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 16, [redacted] | DB; H; P; R; F; DE | |
| **DTX-700** | N/A | N/A | N/A | Trexler Second Supplemental Report Exhibit 16.1, [redacted] | DB; H; P; R; F; DE | |

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Allergan, Inc.,<br>Allergan Pharmaceuticals Ireland<br>Unlimited Company, and Allergan USA, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Revance Therapeutics, Inc., and Ajinomoto<br>Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,<br><br>Defendants. | Civil Action No. 21-1411-RGA |

**Expert Report of Christine Siegwarth, Ph.D.**

June 19, 2025

**I. Introduction** ........ **1**
A. Professional Qualifications and Experience ........ 1
B. Retention and Assignment ........ 1
C. Information Relied Upon ........ 2
D. Summary of Opinion ........ 4
**II. Calculation of Lost Profits** ........ **5**
**III. Calculation of Reasonable Royalty Damages** ........ **6**
**IV. Summary of Economic Damages** ........ **7**


**HIGHLY CONFIDENTIAL - Subject to Protective Order**

# I. Introduction

## A. Professional Qualifications and Experience

1. I have previously submitted four expert reports in this matter. On December 15, 2023, I filed an expert report concerning economic damages (the "Siegwarth Damages Report").[1] On March 8, 2024, I filed an expert report concerning the commercial success of Defendants' Daxxify product and its nexus to the Asserted Formulation Patents (the "Siegwarth Commercial Success Report").[2] On April 19, 2024, I filed an expert reply report responding to the opinions of Ms. Dana Trexler (the "Siegwarth Reply Report").[3] On November 4, 2024, I filed a supplemental damages report ("Siegwarth Supplemental Damages Report") in which I updated my calculation of lost profits and reasonable royalty damages based on available information through October 18, 2024.[4] Those reports are incorporated herein by reference, including my qualifications, the terms of my retainer, my understanding of certain facts, and my analyses and opinions as set forth in each report. A current version of my CV can be found at **Exhibit 22**.[5]

## B. Retention and Assignment

2. In this report, I have been asked by Counsel for Allergan to update my calculation of lost profits and reasonable royalty damages through May 31, 2025 based on updated Daxxify sales data produced by Revance.

3. NERA was retained by Counsel according to our ordinary retention terms. That is, NERA is being compensated for the time that I spend on this matter at my standard hourly rate of $975.[6] In addition, NERA is separately reimbursed for reasonable out-of-pocket

1 Expert Report of Christine S. Meyer, Ph.D., December 15, 2023. Throughout this report, I adopt the same monikers used throughout the Siegwarth Damages Report.

2 Expert Report of Christine S. Meyer, Ph.D., March 8, 2024. Throughout this report, I adopt the same monikers used throughout the Siegwarth Commercial Success Report.

3 Expert Reply Report of Christine S. Meyer, Ph.D., April 19, 2024. Throughout this report, I adopt the same monikers used throughout the Siegwarth Reply Report.

4 Expert Report of Christine S. Meyer, Ph.D., November 4, 2024. Throughout this report, I adopt the same monikers used throughout the Siegwarth Supplemental Damages Report.

5 Since filing my previous reports, I have legally changed my name from Christine S. Meyer to Christine Siegwarth.

6 NERA is being compensated for the time spent by additional staff members working under my direction at NERA's



HIGHLY CONFIDENTIAL - Subject to Protective Order

expenses. Neither my compensation nor NERA's is dependent on the outcome of this litigation or the nature of my opinions.

## C. Information Relied Upon

4. In preparing this supplemental report, I (or economists working under my direction) have reviewed information in addition to the information I identified in the Siegwarth Damages Report, the Siegwarth Commercial Success Report, the Siegwarth Reply Report, and the Siegwarth Supplemental Damages Report. A list of the additional sources of information and materials upon which I relied in forming my opinions can be found appended to this report as **Exhibit 23**. The specific information upon which I have relied is cited in the footnotes of the text.

5. I understand that Revance has produced updated data on Daxxify sales in the United States through May 31, 2025. As shown in **Exhibit 24**, from December 1, 2022 through May 31, 2025, Revance sold [redacted] vials of Daxxify in the United States, corresponding to total Daxxify sales of $273.4 million.

6. As noted in the Siegwarth Supplemental Damages Report, Revance launched Daxxify for the treatment of cervical dystonia in May 2024.[7] In its most recent sales data, describing orders of Daxxify between October 1, 2024 to May 31, 2025, Revance has further categorized each order of Daxxify as "AES" or "THX."[8] I understand that "AES" is Revance's shorthand for "aesthetic," whereas "THX" stands for "therapeutic."[9] As shown in **Exhibit 24**, from October 1, 2024 to May 31, 2025, Revance sold [redacted] vials of Daxxify for aesthetic (*i.e.*, cosmetic) uses and [redacted] vials of Daxxify for therapeutic uses. I have not been provided with any Daxxify sales data for therapeutic uses covering the period between Revance's May 2024 launch of Daxxify for the treatment of cervical dystonia and October 1, 2024. I therefore reserve the right to update my calculations of

customary hourly rates.

7 Siegwarth Supplemental Damages Report, ¶ 5.

8 REV_DAX-03348497.

9 Siegwarth Supplemental Damages Report, ¶ 5 and FN 6.

damages to include any additional therapeutic sales of Daxxify during this period.

7. I further understand that Revance has not provided updated Daxxify profit and loss financial statements, Daxxify market share data, or any Daxxify market research reports. As such, I am unable to update the portions of my opinions that relied upon such information, nor am I able to address any of Ms. Trexler's opinions that relied on that information.

8. Since the submission of the Siegwarth Reply Report, I understand that the National Medical Products Administration in China has approved Daxxify for glabellar lines.[10] To the extent that Daxxify product manufactured in the United States and transferred overseas to, for example, Fosun, Revance's development partner for Daxxify in China, for use abroad is found to infringe the Asserted Patents, I reserve the right to update my calculations of damages to include product manufactured in the United States and sold for use outside of the United States through the time of trial.

9. Since the submission of the Siegwarth Supplemental Damages Report, I understand that Crown Laboratories, Inc. ("Crown") completed its acquisition of Revance on February 6, 2025.[11] On March 31, 2025, Crown announced that the combined company "will operate under the name Revance, effectively immediately."[12]

10. I understand that on May 30, 2025, the Court dismissed Allergan Pharmaceuticals Ireland Unlimited Company and Allergan USA, Inc. (both of which are wholly owned subsidiaries of Allergan, Inc.[13]) from this matter.[14] I understand that Allergan filed a motion for reconsideration of this decision on June 13, 2025, which is currently pending.

---

[10] Shanghai Fosun Pharmaceutical Industrial Development Co. Ltd. ("Fosun") announced approval of Daxxify for Mainland China for the temporary improvement of the appearance of moderate to severe glabellar lines. Revance Therapeutics, Inc. Form 8-K, November 7, 2024.

[11] "Crown Laboratories Announces Completion of Acquisition of Revance Therapeutics," *Revance*, available at https://www.revance.com/revance-crown-merger/, accessed on June 19, 2025.

[12] "Crown Laboratories Now Operates Under the Name Revance," *Revance*, available at https://www.revance.com/crown-revance-unite/, accessed on June 19, 2025.

[13] Declaration of Jill Carey, November 20, 2024, ¶ 4.

[14] This decision may have an impact on lost profits, but it has no impact on the analysis of a hypothetical negotiation.



**HIGHLY CONFIDENTIAL - Subject to Protective Order**

## D. Summary of Opinion

11. Based on the information available to me and my analysis to date, I have reached the following conclusions.

a. If both the Asserted Manufacturing Patents and the Asserted Formulation Patents are determined to be valid, enforceable, and infringed, and lost profits is determined to be an appropriate measure of damages, total damages through May 31, 2025 would be [redacted];

b. If only the Asserted Manufacturing Patents are determined to be valid, enforceable, and infringed, and lost profits is determined to be an appropriate measure of damages, total damages through May 31, 2025 would be [redacted]

c. If only the Asserted Formulation Patents are determined to be valid, enforceable, and infringed, and lost profits is determined to be an appropriate measure of damages, total damages through May 31, 2025 would be [redacted];

d. If both the Asserted Manufacturing Patents and the Asserted Formulation Patents are determined to be valid, enforceable, and infringed, and lost profits is not determined to be an appropriate measure of damages, total damages through May 31, 2025 would be $101.5 million to $115.1 million;

e. If only the Asserted Manufacturing Patents are determined to be valid, enforceable, and infringed, and lost profits is not determined to be an appropriate measure of damages, total damages through May 31, 2025 would be [redacted];

f. If only the Asserted Formulation Patents are determined to be valid, enforceable, and infringed, and lost profits is not determined to be an appropriate measure of damages, total damages through May 31, 2025 would be [redacted]; and



**HIGHLY CONFIDENTIAL - Subject to Protective Order**

## II. Calculation of Lost Profits

12. Revance has sold [redacted] vials of Daxxify for aesthetic uses in the United States from December 2022 through May 31, 2025.[15] I calculate lost profits using the methodology described in the Siegwarth Damages Report, *i.e.*, Allergan's lost profits are determined as the profits it would have made on incremental sales but-for the alleged infringement by Revance of the Asserted Patents.[16]

13. **Exhibit 25** shows my calculation of lost profits by month due to the infringing Daxxify sales Revance made through May 31, 2025. To determine Allergan's lost sales, I account for a [redacted] percent market expansion effect resulting from the patients that would not have received any BoNT injectable treatment if Daxxify was not available. Among the remaining patients, I assume that half of them would have chosen Botox Cosmetic in the but-for scenario (*i.e.*, I apply a switch factor of 50 percent). It is my opinion that Allergan would have sold an additional [redacted] vials of Botox Cosmetic absent Revance's alleged infringement of the Asserted Patents.[17]

---

[15] **Exhibit 25**. My calculation of vials of Daxxify sold does not include the [redacted] vials of Daxxify distributed as samples as of April 7, 2023 and accounted for in the Siegwarth Damages Report.

[16] Siegwarth Damages Report, ¶¶ 50-51.

[17] **Exhibit 25**; Siegwarth Damages Report, ¶¶ 83, 86, Exhibit 5. As in the Siegwarth Damages Report, for my calculation of the vials of Botox Cosmetic that Allergan would have sold in the but-for world I assume that a 100-unit vial of Daxxify is equivalent to a 100-unit vial of Botox. *See* Siegwarth Damages Report, ¶ 86, FN 172.



HIGHLY CONFIDENTIAL - Subject to Protective Order

14. Applying Allergan's monthly average selling price ("ASP") for Botox and a margin of [redacted] percent to the total lost vials,[18] I calculate total lost profits from September 2022 through May 31, 2025 of [redacted][19]

# III. Calculation of Reasonable Royalty Damages

15. In the Siegwarth Damages Report, I opined that a reasonable royalty for the Asserted Manufacturing Patents would be 15 to 20 percent prior to the expiration of the first APF process family and 12.5 to 17.5 percent thereafter, applied to net sales of Daxxify.[20] I also opined that a reasonable royalty for the Asserted Formulation Patents would be 24 percent, applied to net sales of Daxxify.[21] As calculated in the Siegwarth Damages Report, about [redacted] of Daxxify sales occurred before September 25, 2023, the expiration date of the first APF process family.[22] Total Daxxify sales from the expiration of the first APF process family through May 31, 2025 is about [redacted] based on the updated Daxxify sales data.

---

18 As in the Siegwarth Damages Report, I apply the Botox Cosmetic monthly ASP available through April 2025, to calculate total lost profits. Siegwarth Damages Report, ¶ 87, Exhibit 5. For May 2025, I use the ASP recorded for April 2025. ALGN-1845835; ALGN-1848432; ALGN-1848529. I understand that Allergan USA, Inc. has been dismissed from this matter. I updated my lost profits calculation to remove the lost profits that would have accrued to Allergan USA, Inc. and AbbVie US LLC. *See* Siegwarth Supplemental Damages Report at ¶ 11, FN 12. Accordingly, whereas in the Siegwarth Damages Report, I applied a [redacted] percent gross sales margin, I now apply a [redacted] percent gross sales margin. ALGN-1848530. I further understand that [redacted] that is not reflected in consolidated financial statements. Over the period from January 2023 through May 2025, this [redacted] equates to approximately [redacted] percent of Allergan's total net sales of Botox. If I were to further adjust my lost profits analysis to deduct [redacted], as a percentage of the total net sales of Botox, from the $218.5 million I estimate in total lost profits, the damages scenarios discussed in this report that include lost profits would each decrease by [redacted]. ALGN-1848530.

19 Allergan confirmed that Botox's books transitioned to the AbbVie system from Feb 2023 onward in accordance with the operating model integration of US Allergan with AbbVie. Sales are reported as a negative credit in the AbbVie system as a consequence of the way the AbbVie system operates. ALGN-1848527. The monthly "#" entries in the AbbVie system reflect a manual adjustment as an estimate of the portion of Botox Cosmetic sales that are used for a therapeutic indication, and are matched by an equivalent increase in sales to the Botox Therapeutic profit center. ALGN-1848527. This manual "#" entry is not retrieved by the front-end interface for the previous Allergan system. Allergan further confirmed that one unit of the "Botox 100" promotional SKU is equivalent to 100 vials of Botox (ALGN-1848528), and that the ASP values for September 2024 and January 2025 are accurate and a reflection of the business decision to alter AbbVie's aesthetics customer rewards program and the rolling back of that decision (ALGN-1848529).

20 As previously discussed, the royalty proposed by Ms. Trexler (without double-discounting) is 8 percent (*e.g.*, Siegwarth Reply Report ¶¶ 84, 100, FN 181; Trexler Rebuttal Report ¶¶ 425, 429, Exhibit 6.1) and the equivalent royalty from a 2018 Revance survey is 11 percent (*e.g.*, Siegwarth Damages Report ¶¶ 126, 174 ("33 percent of patients ranked the attribute 'free of all human and animal-derived protein' among their top three 'most attractive attributes' of Daxxify tested"), 182).

21 Siegwarth Damages Report, ¶¶ 11c, 175-184.

22 Siegwarth Damages Report, Exhibits 7A-7B.



**HIGHLY CONFIDENTIAL - Subject to Protective Order**

16. As shown in **Exhibits 26A-26B**, I have updated my calculation of reasonable royalty damages presented in Exhibits 7A-7B of the Siegwarth Damages Report to reflect the updated Daxxify sales data.[23]

# IV. Summary of Economic Damages

17. If the Asserted Patents are found to be valid, enforceable and infringed, it is my opinion that damages owed to Allergan are:

    a. If the finder of fact were to determine that lost profits are a proper measure of damages, and both the Asserted Manufacturing Patents and the Asserted Formulation Patents are found to be valid, enforceable, and infringed:

        1. Lost profits on the Botox vials lost due to Revance's infringement;

        2. A reasonable royalty to the Asserted Manufacturing Patents of 15 to 20 percent through September 25, 2023, and 12.5 to 17.5 percent thereafter on net revenue of Daxxify not covered by lost profits through July 13, 2029;[24] and

        3. A reasonable royalty to the Asserted Formulation Patents of 24 percent on net revenue of Daxxify not covered by lost profits, through expiry of the Asserted Formulation Patents on September 21, 2026.

---

[23] I understand the Court has been made aware of the fact that, while only the calculations in Exhibits 6C-6C.1 of Revance's expected profit difference through Q4 2025 of an 18- or 12-month delay in Daxxify's launch are required for these reasonable royalty calculations, considering the calculation of Revance's expected profit difference through Q2 2029 (*i.e.*, expiration of the last Asserted Manufacturing Patent) shows that the cost in expected gross Daxxify profits through Q4 2025 that I used to arrive at a 15 to 20 percent royalty rate is only part of the gross profits Revance would have expected to lose by delaying Daxxify's launch until the Asserted Manufacturing Patents expired in Q2 2029, as compared to taking a license at the hypothetical negotiation. Siegwarth Damages Report, ¶ 169, FN 302, Exhibits 6C-6C.1.

[24] Consistent with my opinions in the Siegwarth Damages Report and the Siegwarth Reply Report, to the extent the royalty rate applied by the jury differs from those I apply here, the reasonable royalty award can be modified according to the jury's rate. For example, if a single reasonable royalty rate of 17.5 percent is applied to the Asserted Manufacturing Patents on all Daxxify sales from launch through July 13, 2029 (*i.e.*, the expiration date of the second APF process family), then the total reasonable royalty portion of the damages award would be adjusted accordingly.

4. Through May 31, 2025, damages in this scenario are [redacted] in lost profits; [redacted] in royalties on cosmetic sales, [redacted] in royalties on therapeutic sales).

b. If the finder of fact were to determine that lost profits are a proper measure of damages, and only the Asserted Manufacturing Patents are found to be valid, enforceable, and infringed:

1. Lost profits on the Botox vials lost due to Revance's infringement; and

2. A reasonable royalty to the Asserted Manufacturing Patents of 15 to 20 percent through September 25, 2023, and 12.5 to 17.5 percent thereafter on net revenue of Daxxify not covered by lost profits through the expiry of the Asserted Manufacturing Patents on July 13, 2029.

3. Through May 31, 2025, damages in this scenario are [redacted] in lost profits; [redacted] for royalties on cosmetic sales, [redacted] for royalties on therapeutic sales).

c. If the finder of fact were to determine that lost profits are a proper measure of damages, and only the Asserted Formulation Patents are found to be valid, enforceable, and infringed:

1. Lost profits on the Botox vials lost due to Revance's infringement; and

2. A reasonable royalty to the Asserted Formulation Patents of 24 percent on net revenue of Daxxify not covered by lost profits through the expiry of the Asserted Formulation Patents on September 21, 2026.



**HIGHLY CONFIDENTIAL - Subject to Protective Order**

3. Through May 31, 2025, damages in this scenario are [redacted] in lost profits; [redacted] in royalties on cosmetic sales, [redacted] in royalties on therapeutic sales).

d. If the finder of fact were to determine that lost profits are not a proper measure of damages, and both the Asserted Manufacturing Patents and the Asserted Formulation Patents are found to be valid, enforceable, and infringed:

   1. A reasonable royalty to the Asserted Manufacturing Patents of 15 to 20 percent through September 25, 2023 and 12.5 to 17.5 percent thereafter on net revenue of Daxxify through July 13, 2029; and

   2. A reasonable royalty to the Asserted Formulation Patents of 24 percent on net revenue of Daxxify, through expiry of the Asserted Formulation Patents on September 21, 2026.

   3. Through May 31, 2025, damages in this scenario are [redacted] in royalties on cosmetic sales, [redacted] in royalties on therapeutic sales).

e. If the finder of fact were to determine that lost profits are not a proper measure of damages, and only the Asserted Manufacturing Patents are found to be valid, enforceable, and infringed:

   1. A reasonable royalty of 15 to 20 percent through September 25, 2023 and 12.5 to 17.5 percent thereafter on net revenue of Daxxify thereafter through expiry of the Asserted Manufacturing Patents on July 13, 2029.

   2. Through May 31, 2025, damages in this scenario are [redacted]



**HIGHLY CONFIDENTIAL - Subject to Protective Order**

[redacted] in royalties on cosmetic sales, [redacted] in royalties on therapeutic sales).

f. If the finder of fact were to determine that lost profits are not a proper measure of damages, and only the Asserted Formulation Patents are found to be valid, enforceable, and infringed:

1. A reasonable royalty of 24 percent of net revenue of Daxxify through expiration of the Asserted Formulation Patents on September 21, 2026.

2. Through May 31, 2025, damages in this scenario are [redacted] in royalties on cosmetic sales, [redacted] in royalties on therapeutic sales).

18. As shown in **Exhibits 26A-26B**, I have calculated damages on vials of Daxxify distributed through May 31, 2025 under each of these scenarios.

Signed this 19th day of June, 2025.

Christine Siegwarth, Ph.D.

# Christine Siegwarth

Senior Managing Director

NERA
360 Hamilton Avenue
10th Floor
White Plains, New York 10601
(914) 448-4119
christine.siegwarth@nera.com


## Overview

Featured as one of *Global Competition Review*'s "Women in Antitrust," Dr. Christine Siegwarth is an economist specializing in the areas of complex commercial litigation involving intellectual property, antitrust claims, and commercial damages in the United States and Canada.

In the area of intellectual property, Dr. Siegwarth has analyzed damages and provided expert testimony concerning issues arising from patent, trademark, and copyright infringement, the misappropriation of trade secrets, and breaches of contract. She has considerable expertise in analyzing lost profits, reasonable royalties, price erosion, commercial success, and irreparable harm. Dr. Siegwarth has analyzed economic issues in a wide range of industries, with much of her recent work involving pharmaceuticals. She has been retained on behalf of both branded and generic firms in matters that have included small molecule as well as biologic products. Her work has also included the valuation of patents, licenses, and potential business acquisitions.

Dr. Siegwarth has evaluated antitrust claims and damages in numerous cases involving IP issues, including alleged reverse payment, antitrust counterclaims to patent cases, claims of fraudulently-obtained patents, and monopolization claims. She has also analyzed the competitive effects of mergers and acquisitions, the volume of commerce for criminal investigations, and economic issues involving alleged resale price maintenance, and price discrimination. In addition, Dr. Siegwarth has also written, testified, and presented white papers and expert reports to the U.S. Federal Trade Commission (FTC) and U.S. Department of Justice.

Dr. Siegwarth has testified as an expert witness in bench and jury trials in state and federal courts in the United States—including the Southern District of New York and the Southern District of California—and Canada, and before the High Court of Justice of England and Wales. She has also written articles and book chapters about patent infringement damages, and has been asked to speak about economic issues related to intellectual property on numerous occasions, including by the FTC in its hearings entitled, "*The Evolving IP Marketplace*."

Dr. Siegwarth earned her PhD in economics from the Massachusetts Institute of Technology, and a BS in economics from the United States Military Academy at West Point.

## Education

**Massachusetts Institute of Technology** 1995
Ph.D., Economics

**United States Military Academy, West Point** 1988
B.S., Economics

## Honors and Professional Activities

Associate Editor of ABA Section of Antitrust Law, *Antitrust Magazine*, 2013-present

Global Competition Review's 100 "Women *in Antitrust," 2009*

Patricia Roberts Harris Award for Excellence in Pro Bono, Fried Frank, Harris, Shriver & Jacobson LLP, 2004

The Legal Aid Society Pro Bono Award for Assistance to Victims of the World Trade Center Tragedy, 2002

Rauch Faculty Enrichment Grant, Bentley College, 1997

Summer Research Grant, Bentley College, 1996 and 1997

National Science Foundation Scholarship, 1992-1994

Army Commendation Medal and Army Achievement Medal, 1990-1991

## Professional Experience

**NERA Economic Consulting** 1996-present
2023- Senior Managing Director

2019-2023 Managing Director, Chair, Intellectual Property Practice

2016-2018 Managing Director

2015-2016 Senior Vice President

2006-2015 Vice President

2002-2006 Senior Consultant

2000-2002 Consultant

**Colgate University** 1999-2000
Visiting Assistant Professor
Taught courses in Statistics and Introductory Economics.

**Bentley College** 1995-1999
Assistant Professor
Taught courses in Statistics, Macroeconomics, Money and Banking, and the Economics of Race and Gender for undergraduate and graduate students.

**Data Resources, Inc.** 1995-1999
Consultant
Wrote Several industry studies for the *U.S. Industry and Trade Outlook*, a Department of Commerce publication. Consulted on local macroeconomic forecasts.

**Massachusetts Institute of Technology** 1993-1996
Head Teaching Assistant
Taught courses in Macroeconomics.

Research Assistant 1992
Developed Fortran programs for Professor Jerry Hausman.

**United States Army** 1990-1991
First Lieutenant
Assistant Battalion Operations Officer and Platoon Leader, 101st Military Police Company.
Fort Campbell, Kentucky, and Operation Desert Shield and Desert Storm, Saudi Arabia and Iraq.

Second Lieutenant 1988-1990
Platoon Leader and Executive Officer, Headquarters Company, Law Enforcement Command, Fort Campbell, Kentucky.

**Office of Management and Budget, Personnel Policy Branch** 1987
Summer Intern
Analyzed military pay and recruiting

## Expert Testimony and Reports (2021-2025)

Declaration, expert report, deposition testimony, trial testimony and re-trial testimony in *Geigtech East Bay, LLC v. Lutron Electronics Co., Inc.*, United States District Court for the Southern District of New York, February 12, 2021, January 12, January 20, 2023, March 11, 2024, and November 20, 2024.

Expert report, expert commercial success report, expert reply report, deposition testimony, and supplemental expert report in *Allergan, Inc. v. Revance Therapeutics, Inc.*, United States District Court for the District of Delaware, December 15, 2023, March 8, 2024, April 19, 2024, May 31, 2024, November 4, 2024.

Expert Report and deposition testimony in *Enanta Pharmaceuticals, Inc. v. Pfizer, Inc.*, United States District Court for the District of Massachusetts, March 29, April 22, 2024.

Expert Report, deposition testimony in *Sunless, Inc. v. Palm Beach Tan, Inc. et al.*, United States District Court for the Northern District of Ohio, December 1, 2023, and February 9, 2024.

Expert Report, deposition testimony in *Jazz Pharmaceuticals, Inc. v. Avadel CNS Pharmaceuticals, Inc.*, United States District Court for the District of Delaware, October 16 and November 20, 2023.

Expert Report, deposition testimony in *Lucasys, Inc. v. Powerplan, Inc.*, United States District Court for the Northern District of Georgia, December 16, 2022, and March 15, 2023.

Expert report, deposition testimony, supplemental expert report, trial testimony in *AbbVie Endocrine, Inc. v. Takeda Pharmaceuticals Company, Ltd.,* United States Court Chancery for the State of Delaware, September 6, October 26, December 16, 2022, and January 12, 2023.

Expert Report, expert rebuttal report, and deposition testimony *in Alexander Meshechok v. Lawrence Kaplan; and Corporate Solutions Group I, LLC, et al.*, Supreme Court of New York, County of New York, September 30, October 31, 2022, and January 5, 2023.

Expert Report, reply report, and deposition testimony in *Intercept Pharmaceuticals, Inc., and Intercept Pharma Europe Ltd. v. Apotex, Inc. and Apotex Corp*, United States District Court for the District of Delaware, September 9, November 14, and December 20, 2022.

Expert report, deposition testimony, trial testimony, declaration, and hearing testimony in *Seagen Inc. v. Daiichi Sankyo Co., LTD, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK LTD*. United States District Court for the Eastern District of Texas, January 4, January 13, April 7, September 23, and September 29, 2022.

Affidavit and cross-examination in *Luc Bessette v. Her Majesty the Queen in Right of the Province of British Columbia and Ministry of Health Columbia,* Federal Court of Canada. August 29, September 9, 2022.

Expert report, supplemental expert report, and trial testimony in *Farmobile, LLC. v. Farmers Edge, Inc.*, Federal Court of Canada, September 2, 2020, July 19, and August 23, 2022.

Expert rebuttal report, expert commercial success report, supplemental expert report, deposition testimony in *The United States of America v. Gilead Sciences, Inc. and Gilead Sciences Ireland UC*, United States District Court for the District Court of Delaware May 17, June 16, August 5, and August 18, 2022.

Declaration in *Danieli Corporation and Danieli & C. Officine Meccaniche S.p.A. v. SMS Group, Inc., SMA Group GMBH, and Steel Dynamics, Inc*. United States District Court for the Western District of Pennsylvania, November 22, 2021, and July 13, 2022.

Expert report, expert reply report, deposition testimony, and trial testimony in *The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC.v. Adam Potter, PBIH, LLC and Business Insurance Holdings, Inc.,* United States District Court for the District of Delaware, October 15, December 10, 2021, January 19, and June 28, 2022.

Expert rebuttal report, deposition, and trial testimony in *Siemens Gamesa Renewable Energy A/S v. General Electric Co. and GE Renewables North America, LLC*. United States District Court District of Massachusetts, November 30, December 10, 2021, and June 15, 2022.

Expert report and deposition testimony in *Edge Systems LLC v. Cartessa Aesthetics LLC Inc.,* United States District Court for the Eastern District of New York, April 7, and May 25, 2022.

Expert report, reply report, and deposition testimony in *NRT Technology Corp. and NRT Technologies, Inc. v. Everi Holdings Inc. f/k/a Global Cash Access Holdings, Inc. and Everi Payments Inc. f/k/a Global Cash Access, Inc.,* United States District Court for the District of Delaware October 29, 2021, January 28, and February 25, 2022.

Expert rebuttal report and deposition testimony in the Matter of the Arbitration Between *Lyell Immunopharma, Inc. v. PACT Pharma, Inc.*, Judicial Arbitration Mediation Services, February 4 and February 15, 2022.

Expert report and deposition testimony in *Pfizer Inc. et al., v. Aizant Drug Research Solutions Pvt. Ltd.*, United States District Court for the District of Delaware, April 18 and July 16, 2021.

Expert report, rebuttal report, and deposition testimony in *Medtronic, Inc. & Consolidated Subsidiaries v. Commissioner of Internal Revenue,* United States Tax Court, December 4, 2019, January 28, February 17, 2020, and June 21, June 22, 2021.

## Publications (2015-2025)

"Economists Outside the Bubble: Antitrust Interview with Russ Roberts and Glen Weyl. Fall 2021, *Antitrust Magazine, Volume 36, No.1.*

"Unpacking the Economic Toolbox: How to Make Sense of Your Economic Expert's Analysis," Spring 2018, *Antitrust Magazine*, Vol. 32, No. 2 (with Sheng Li and Gabriela Monahova).

"Mini-Roundtable: Calculating Damages in Patent Infringement," Jul-Sep 2016, *Corporate Disputes Magazine, 118-127* (with David Blackburn and Alan Cox).

"Demonstrating Faulty Predictions in Class Certification Analysis," Spring 2016, *Antitrust Magazine*, Vol. 30, No. 2, (with Lauren Stiroh and Claire (Chunying) Xie).

November 2024

**Exhibit 23**

**Additional Materials Relied Upon[1] by Christine Siegwarth, Ph.D.**

## Court Filings

*Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc., v. Revance Therapeutics, Inc., and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services,* United States District Court for the District of Delaware, Case No. 21-1411-RGA

Declaration of Jill Carey, November 20, 2024

## Bates Stamped Documents[2]

| | | |
|---|---|---|
| ALGN-1848526 | ALGN-1848529 | REV_DAX-03348497 |
| ALGN-1848527 | ALGN-1848530 | |
| ALGN-1848528 | ALGN-1848531 | |

## Expert Reports

Expert Report of Christine S. Meyer, Ph.D., November 4, 2024

## SEC and Investor Filings

Revance Therapeutics, Inc. Form 8-K, November 7, 2024

## Publicly Available Information

"Crown Laboratories Announces Completion of Acquisition of Revance Therapeutics," *Revance*, available at https://www.revance.com/revance-crown-merger/

"Crown Laboratories Now Operates Under the Name Revance," *Revance*, available at https://www.revance.com/crown-revance-unite/

[1] "Additional Materials Relied Upon" include any accompanying exhibits to the Court Filings, Data, Depositions and Transcripts, Expert Reports, and Bates Stamped Documents listed in this document.

[2] I do not specifically list other considered Bates Stamped Documents in this section if they are included elsewhere in this **Exhibit 23** as exhibits to Court Filings, Depositions and Transcripts, or Expert Reports.

# Exhibit 24
# Daxxify Sales in the U.S.
# December 2022 through May 2025

| Month | Total Units Sold[1] | Cosmetic Units Sold | Therapeutic Units Sold[2] | Total Sales Amount | Cosmetic Sales Amount | Therapeutic Sales Amount |
|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (g) |
| [redacted] | | | | | | |
| Total: | [redacted] | | | $ 273,433,220 | [redacted] | |

Notes: [1] I rely on Revance sales data for vials of Daxxify sold by Revance, which reports sales starting in December 2022. As described in the Siegwarth Reply Report, I update vials of Daxxify sold to exclude orders with "Order Status" equal to "Cancelled." I also exclude orders with "Order Status" equal to "Returned" or "Return Submitted."

[2] In its most recent sales data (REV_DAX-03348497), describing orders of Daxxify between October 1, 2024 to May 31, 2025, Revance has categorized each order of Daxxify as “AES” (denoting Daxxify for aesthetic uses) or “THX" (denoting Daxxify for therapeutic uses). I understand that the data on Daxxify sales in the United States prior to October 2024 do not include sales of Daxxify for therapeutic uses. Siegwarth Supplemental Damages Report, ¶ 5, FN 6.

Sources: REV_DAX-03316772, sheet "Daxxify Current Quarter Order D."
REV_DAX-03343077, sheet "Revenue Details ITD-0930 AES."
REV_DAX-03348497, sheet "All Data 10.1.24-5.31.25."

## Exhibit 25
## Lost Profits on Botox Vials Lost Due to Revance's Alleged Infringement in the U.S.
## September 2022 through May 2025

| Month | Vials of Daxxify Sold by Revance[1] | Sample Vials of Daxxify Distributed by Revance[2] | Market Expansion Factor[3] | Vials of Daxxify Distributed to Previous Users of Other BoNT Injectable Products | Switch Factor[4] | Lost Vials | Average Selling Price of 100 Unit Vial of Botox Cosmetic[5] | Allergan Profit Margin[6] | Lost Profits |
|---|---|---|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | (i) | (j) |
| | | | | [(b)+(c)]*[1-(d)] | | (e)*(f) | | | (g)*(h)*(i) |
| Sep-Nov 22 | [redacted] | | | | | | | | |
| Dec-22 | | | | | | | | | |
| Jan-23 | | | | | | | | | |
| Feb-23 | | | | | | | | | |
| Mar-23 | | | | | | | | | |
| Apr-23 | | | | | | | | | |
| May-23 | | | | | | | | | |
| Jun-23 | | | | | | | | | |
| Jul-23 | | | | | | | | | |
| Aug-23 | | | | | | | | | |
| Sep-23 | | | | | | | | | |
| Oct-23 | | | | | | | | | |
| Nov-23 | | | | | | | | | |
| Dec-23 | | | | | | | | | |
| Jan-24 | | | | | | | | | |
| Feb-24 | | | | | | | | | |
| Mar-24 | | | | | | | | | |
| Apr-24 | | | | | | | | | |
| May-24 | | | | | | | | | |
| Jun-24 | | | | | | | | | |
| Jul-24 | | | | | | | | | |
| Aug-24 | | | | | | | | | |
| Sep-24 | | | | | | | | | |
| Oct-24 | | | | | | | | | |
| Nov-24 | | | | | | | | | |
| Dec-24 | | | | | | | | | |
| Jan-25 | | | | | | | | | |
| Feb-25 | | | | | | | | | |
| Mar-25 | | | | | | | | | |
| Apr-25 | | | | | | | | | |
| May-25 | | | | | | | | | |
| **Total:** | | | | | | | | | |

HIGHLY CONFIDENTIAL - Subject to Protective Order

Notes: [1] I rely on Revance sales data for vials of Daxxify sold by Revance, which reports sales starting in December 2022. As described in the Siegwarth Reply Report, I update vials of Daxxify sold to exclude orders with "Order Status" equal to "Cancelled." I also exclude orders with "Order Status" equal to "Returned" or "Return Submitted."

[2] According to a Revance "business performance" presentation from April 7, 2023, Revance distributed [redacted] samples between launch and April 7, 2023 through its [redacted]. I assume samples in the [redacted] were distributed during September and November 2022, samples in the [redacted] were distributed during December 2022 through February 2023, and samples in the [redacted] were distributed in March 2023, which I understand are the approximate time periods of each program. To calculate monthly samples for December 2022 through February 2023, I added the samples distributed by Revance under its [redacted] and divided by 3.

[3] As discussed in Section II.D of the Siegwarth Damages Report, I rely on an Allergan survey from June 2023 that indicates that two percent of Daxxify sales were accounted for by patients who would not have otherwise received any BoNT treatment had Daxxify not been available to them.

[4] As discussed in Section II.C of the Siegwarth Damages Report, it is my opinion that 50 percent of Daxxify sales would have come from Botox.

[5] The ASP for September to November 2022 is the average monthly ASP reported by Allergan for the September to November 2022 period. The ASP for May 2025 is assumed to be the same as the ASP for April 2025.

[6] Allergan's consolidated Botox financial statement (ALGN-1848530) reflects standard margins of roughly [redacted] percent. From that, I make an adjustment for the five percent that Allergan USA, Inc. or AbbVie US LLC receives on Botox net revenue in the United States. Siegwarth Supplemental Damages Report at ¶ 11, FN 12.

Sources: REV_DAX-03316772, sheet "Daxxify Current Quarter Order D."
REV_DAX-03343077, sheet "Revenue Details ITD-0930 AES."
REV_DAX-03348497, sheet "All Data 10.1.24-5.31.25."
REV_DAX-02691642-658 (Bullock Exhibit 10) at 645; Bullock Deposition, pp. 31-50.
ALGN-1834385-435 at 392.
ALGN-1845835 (Paik Exhibit 32).
ALGN-1848432.
ALGN-1848529.
ALGN-1848530, sheet "Values."

**Exhibit 26A**
**Damages Due to Revance's Alleged Infringement of Asserted Patents**
**Under 18-Month Delay**
**by Product and Scenario**

| | | Reasonable Royalty | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Royalty Base | | Royalty Rate to Asserted Manufacturing Patents | | Royalty Rate to Asserted Formulation Patents | | Total Damages through May 2025 |
| Scenario[1] | Lost Profits[2] | Through September 25, 2023[3] | After September 25, 2023[4] | Through September 25, 2023 | After September 25, 2023 | | Royalty | |
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | (i) |
| | | | | | | | (c)*[(e)+(g)]+(d)*[(f)+(g)] | (b)+(h) |
| [redacted] | | | | | | | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |
| [redacted] | | | | | | | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A % | N/A % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A % | N/A % | 24.0 % | [redacted] | |
| [redacted] | | | | | | | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 20.0 % | 17.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |

Notes: This exhibit presents damages under the scenario in which Revance faces a delay of 18 months to Daxxify launch, as discussed in the Siegwarth Damages Report, Section V.A.15.a.
[1] Scenarios a-f correspond to the scenarios I discuss in Siegwarth Damages Report Section VI.
[2] I calculate lost profits in **Exhibit 25**.
[3] For the scenarios in which the finder of fact were to determine that lost profits are an appropriate measure of damages, the royalty base is 50 percent of total Daxxify sales during the relevant period.
[4] For the scenarios in which the finder of fact were to determine that lost profits are not an appropriate measure of damages, the royalty base is total Daxxify sales during the relevant period.

Sources: **Exhibit 25**.
REV_DAX-03316772, sheet ("Daxxify Current Quarter Order D").
REV_DAX-03343077, sheet ("Revenue Details ITD-0930 AES").
REV_DAX-03348497, sheet ("All Data 10.1.24-5.31.25").

HIGHLY CONFIDENTIAL - Subject to Protective Order

## Exhibit 26B
## Damages Due to Revance's Alleged Infringement of Asserted Patents
## Under 12-Month Delay
## by Product and Scenario

| | | Reasonable Royalty | | | | | | Total Damages |
|---|---|---|---|---|---|---|---|---|
| | | Royalty Base | | Royalty Rate to Asserted Manufacturing Patents | | Royalty Rate to Asserted Formulation Patents | | |
| Scenario[1] | Lost Profits[2] | Through September 25, 2023[3] | After September 25, 2023[4] | Through September 25, 2023 | After September 25, 2023 | | Royalty | through May 2025 |
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | (i) |
| | | | | | | | (c)*[(e)+(g)]+(d)*[(f)+(g)] | (b)+(h) |
| [redacted] | | | | | | | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |
| [redacted] | | | | | | | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A % | N/A % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A % | N/A % | 24.0 % | [redacted] | |
| [redacted] | | | | | | | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | 24.0 % | [redacted] | |
| [redacted] | | | | 15.0 % | 12.5 % | N/A | [redacted] | |
| [redacted] | | | | N/A | N/A | 24.0 % | [redacted] | |

Notes: This exhibit presents damages under the scenario in which Revance faces a delay of 12 months to Daxxify launch, as discussed in the Siegwarth Damages Report, Section V.A.15.a.

[1] Scenarios a-f correspond to the scenarios I discuss in Siegwarth Damages Report Section VI.

[2] I calculate lost profits in **Exhibit 25**.

[3] For the scenarios in which the finder of fact were to determine that lost profits are an appropriate measure of damages, the royalty base is 50 percent of total Daxxify sales during the relevant period.

[4] For the scenarios in which the finder of fact were to determine that lost profits are not an appropriate measure of damages, the royalty base is total Daxxify sales during the relevant period.

Sources: **Exhibit 25**.
REV_DAX-03316772, sheet ("Daxxify Current Quarter Order D").
REV_DAX-03343077, sheet ("Revenue Details ITD-0930 AES").
REV_DAX-03348497, sheet ("All Data 10.1.24-5.31.25").

HIGHLY CONFIDENTIAL - Subject to Protective Order

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALLERGAN, INC., | ) | |
| PLAINTIFFS, | ) | |
| v. | ) | |
| REVANCE THERAPEUTICS, INC., AND AJINOMOTO ALTHEA, INC. D/B/A AJINOMOTO BIO-PHARMA SERVICES, | ) | Civil Action No. 21-1411-RGA |
| DEFENDANTS. | ) | |

**SECOND SUPPLEMENTAL REBUTTAL EXPERT REPORT ON DAMAGES OF DANA TREXLER, CPA/CFF**

June 23, 2025

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BASIS FOR ANALYSIS .......... 2

III. SUMMARY OF OPINIONS .......... 3

IV. EFFECT OF ALLERGAN AFFILIATE DISMISSALS ON DAMAGES .......... 3

V. LOST PROFIT DAMAGES .......... 4

A. UNAVAILABLE AND UNVERIFIABLE ALLERGAN IRELAND BOTOX PRICING INFORMATION .......... 5

B. ADJUSTMENTS TO ALLERGAN IRELAND'S INCREMENTAL PROFIT MARGIN .......... 7

C. UPDATED ADJUSTED CALCULATION OF ALLERGAN IRELAND'S CLAIMED LOST PROFITS .......... 8

VI. REASONABLE ROYALTY DAMAGES .......... 10

A. THE SIEGWARTH SECOND SUPPLEMENTAL REPORT IGNORES THE CHANGE IN THE PARTIES TO THE HYPOTHETICAL NEGOTIATION .......... 10

B. THE NEW ROYALTY RATES DISCLOSED IN THE SIEGWARTH SECOND SUPPLEMENTAL REPORT ARE FLAWED .......... 10

C. UPDATED REASONABLE ROYALTY DAMAGES .......... 14

# I. INTRODUCTION

1. I have previously submitted three expert reports in this matter. My Rebuttal Expert Report on Damages issued on March 8, 2024 (the "Trexler Rebuttal Report"), my Rebuttal Commercial Success Report issued on April 19, 2024 (the "Trexler Commercial Success Report"), and my Supplemental Rebuttal Expert Report on Damages issued on November 6, 2024 (the "Trexler Supplemental Rebuttal Report"). On June 19, 2025, I received the Expert Report of Christine Siegwarth Ph.D., a supplemental expert report from Allergan's damages expert (the "Siegwarth Second Supplemental Report").[1]

2. I understand that the parties agreed to update their respective damages calculations to account for additional Allergan and Revance sales information through May 31, 2025. However, the Siegwarth Second Supplemental Report not only updates calculations for additional sales data, but also introduces new damages calculations and opinions that were not disclosed in any of Dr. Siegwarth's prior reports over the last one and a half years.[2] Consequently, I was unable to rely on any deposition testimony to fully vet Dr. Siegwarth's new theories. Further, I was unable to seek additional documents that would clarify ambiguities in Dr. Siegwarth's newly produced data and belated analysis. Further, unlike my rebuttal report during expert discovery, I was given only two business days to respond to these new opinions.

3. In this report (the "Trexler Second Supplemental Rebuttal Report"), I have been asked by Counsel for Revance to:[3]

- Consider the parties' updated sales information in both the Therapeutics ("Tx") and Cosmetics ("Cx") markets and update my lost profits and reasonable royalty calculations through May 31, 2025, and[4]

[1] I now refer to the previously defined Meyer Supplemental Damages Report as the "Siegwarth Supplemental Damages Report" and the Meyer Report as the "Siegwarth Report" (see Siegwarth Second Supplemental Report, Footnote 5).
[2] Siegwarth Second Supplemental Report, Footnote 20.
[3] In the Trexler Supplemental Rebuttal Report, I addressed the potential change to the hypothetical negotiation date, which includes several alternative hypothetical dates. As discussed therein, my opinions and conclusions regarding the calculated running reasonable royalty rates remain unchanged no matter which of these hypothetical negotiation dates are selected and incorporate that analysis herein by reference. The ultimate damages amounts, however, change as a result of the additional sales made due to the passage of time.
[4] I understand that Dr. Siegwarth's analysis did not include Tx market sales data for Daxxify for certain periods. This additional Tx sales data adds approximately $1.7 million to the royalty base, representing approximately 0.65% of the

- Respond to certain new opinions expressed in the Siegwarth Second Supplemental Report.[5] I understand that counsel for Revance intends to seek to exclude the untimely opinions expressed in the Siegwarth Second Supplemental Report. To the extent the Court excludes those new opinions, I understand that my responses in this report to those opinions may be withdrawn by Revance.

## II. BASIS FOR ANALYSIS

4. The basis for my analysis and opinions, including the methodologies employed, in this report are the same as those stated in my previous reports. Unless stated otherwise, the analyses and opinions set forth in my three previous reports are incorporated by reference herein.

5. I am a Managing Director at Stout, an advisory firm that, among other services, provides business, economic, financial, and consulting services to clients in a variety of industries. I am the national leader of Stout's Intellectual Property Disputes & Valuations practice. I am a Certified Public Accountant and Certified in Financial Forensics. My education includes a Master's in Business Administration from The Wharton School of the University of Pennsylvania and a Bachelor of Science degree in Accounting from Bucknell University. My curriculum vitae is attached as **SECOND SUPPLEMENTAL EXHIBIT A**.

6. In forming my opinions, I rely upon the documents and information specifically identified throughout this report and the accompanying exhibits. A list of additional documents I considered in forming my opinions in this report, which were produced after the issuance of the Trexler Supplemental Rebuttal Report, is provided in **SECOND SUPPLEMENTAL EXHIBIT B**. The documents and information I utilize in my analysis and report are the types of documents and information upon which experts in my field typically rely when performing such an analysis.

7. I reserve the right to supplement or modify my opinions based on my review of additional materials or information produced in this case or any additional opinions or evidence that Allergan or its

total. Further, certain opinions presented in each of my prior reports were based on the financial data available at the time those reports were prepared. In the Trexler Supplemental Rebuttal Report, I updated the relevant paragraphs line-by-line to reflect newly-produced data. I have not repeated that process here. However, I reserve the right to present any opinions and related analysis based on the newly-produced data through May 31, 2025. To be clear, I reviewed those paragraphs from the Trexler Supplemental Rebuttal Report in light of the new data through May 31, 2025, and have found that the additional data does not change my prior conclusions.

[5] I note that I have neither responded to every new opinion put forth in the Siegwarth Second Supplemental Report nor have I opined on all errors and misstatements set forth by Dr. Siegwarth in her new report since no depositions or fact discovery was made available to me regarding her new opinions. In addition, I was given only two business days to respond to these new opinions. Accordingly, I expressly reserve the right to offer additional rebuttal opinions.

experts submit. I reserve the right to prepare supplemental materials such as summaries, graphical exhibits, or charts for trial, as well as to provide opinions and other materials in response to any additional expert opinions.

8. My firm is being compensated at my standard billing rate of $825 per hour for my time in this matter. My firm's compensation is not dependent in any way upon the outcome of this litigation.

## III. SUMMARY OF OPINIONS

9. Assuming liability is found in favor of Allergan, it is my opinion that Allergan, through its damages expert, Dr. Siegwarth, fails to prove Allergan's lost profit and reasonable royalty damages to a reasonable degree of certainty. The lost profit and reasonable royalty damages opinions proffered in the Siegwarth Second Supplemental Report are speculative, unreliable, and overstated.

## IV. EFFECT OF ALLERGAN AFFILIATE DISMISSALS ON DAMAGES

10. The Siegwarth Second Supplemental Report acknowledges that "the Court dismissed Allergan Pharmaceuticals Ireland Unlimited Company ["Allergan Ireland"] and Allergan USA, Inc. (both of which are wholly owned subsidiaries of Allergan, Inc.) from this matter" but concludes that "[t]his decision may have an impact on lost profits, but it has no impact on the analysis of a hypothetical negotiation."[6] I disagree with the conclusion that this decision has no effect on the outcome of the hypothetical negotiation for a reasonable royalty.

11. Dr. Siegwarth's analysis fails to address whether, or to what extent, Allergan, Inc., a holding company, is indirectly affected by the alleged competitive relationship between the dismissed subsidiaries and Revance, which I discuss in my previous reports is, at best, limited, by Allergan's own repeated admissions.[7] Without examining—let alone establishing—any competitive commercial relationship between Allergan, Inc. and Revance, Dr. Siegwarth's already tenuous assumption that the hypothetical negotiation would have occurred between competitors holds even less.[8]

12. Dr. Siegwarth does not address how a hypothetical negotiation involving a holding company like Allergan, Inc. would differ economically from one between direct competitors. Dr. Siegwarth also

---

[6] Siegwarth Second Supplemental Report, Footnote 14.
[7] Trexler Rebuttal Report, ¶¶153–154.
[8] Siegwarth Report, ¶¶ 112-114, 130, 176, and 180.

fails to explain whether or how Allergan, Inc. would have accounted for the economic interests of other Allergan subsidiaries during the hypothetical negotiation. While claiming that the hypothetical negotiation would be unaffected, the Siegwarth Second Supplemental Report does not explain how these subsidiaries' and parent company's interests are aligned, how those interests would function in the context of a licensing negotiation between Revance and Allergan, Inc., or what actual impact they would have on Allergan, Inc. Instead, the analysis performed in the Siegwarth Second Supplemental Report focuses on the economic impacts to the dismissed subsidiaries, not to Allergan, Inc., the only remaining entity at the hypothetical negotiation.

## V. LOST PROFIT DAMAGES

13. With the Court's dismissal of Allergan Ireland and Allergan USA, Inc. from this matter,[9] I understand that the only remaining plaintiff in the matter is Allergan, Inc. Due to this fact, contrary to Dr. Siegwarth's contention that lost profits are simply "impacted" by this decision, I understand that Allergan, Inc. is not entitled to lost profits as it is a holding company and, therefore, is unable to meet the Panduit Factor tests required to claim lost profits in patent infringement matters.

14. Notably, the Siegwarth Second Supplemental Report calculates the purported lost profits to Allergan, Ireland, not to Allergan, Inc., as Allergan, Inc. does not sell BOTOX. As a result, even if Allergan, Inc. somehow experienced lost profits (potentially through a royalty payment from Allergan Ireland), the purported lost profit damages presented in the Siegwarth Second Supplemental Report are significantly overstated for at least this reason alone. Said another way, Allergan, Inc.'s lost profits resulting from lost royalty payments (if any) are not the same as Allergan Ireland's lost profits resulting from lost sales.

15. Setting aside my understanding that Allergan, Inc. would not be entitled to lost profit damages, even if it were, the Siegwarth Second Supplemental Report fails to calculate Allergan, Inc.'s lost profits and instead calculates Allergan Ireland's purported lost profits. I therefore adjust the Siegwarth Second Supplemental Report's lost profits analysis for errors in the event the Court determines Allergan Ireland's purported lost profits are an available to Allergan, Inc. Assuming

[9] ORDER: Defendants' Partial Motion to Dismiss Plaintiffs Allergan Pharmaceuticals Ireland Unlimited Company and Allergan USA, Inc. (D.I. 437), May 30, 2025.

Allergan, Inc. can claim Allergan Ireland's lost profits, purported lost profit damages through May 31, 2025 would be no more than $19,972,097.[10]

16. Several issues, discussed below, affect my updated opinion on Allergan Ireland's alleged lost profit damages.

### A. UNAVAILABLE AND UNVERIFIABLE ALLERGAN IRELAND BOTOX PRICING INFORMATION

17. Unlike its prior productions, Allergan did not provide customer-level sales data with respect to Allergan Ireland's Botox units and net revenue, which prevents me from calculating Allergan Ireland's actual average selling prices ("ASP") for Botox in the Cx or Tx markets. Instead, it produced a one-page PDF, ALGN-1848529, which purports to reflect Allergan Ireland's ASP per vial of Botox from June 2024 through April 2025. I understand from counsel that no opportunity was provided for discovery regarding the accuracy or authenticity of this document. The Siegwarth Second Supplemental Report relies on this document to calculate Allergan Ireland's updated lost profit damages.[11] However, this document may not be reliable for several reasons.

18. First, as shown in **FIGURE 1** below, ALGN-1848529 reports Allergan Ireland's Botox monthly pricing for two months, September 2024 and January 2025, that is highly inconsistent with all other recorded Botox pricing during the damages period. The Siegwarth Second Supplemental Report does not offer a clear explanation for these inconsistencies.

**FIGURE 1 – BOTOX AVERAGE PRICE PER 100-UNIT VIAL SHOWN IN ALGN-1848529**

[redacted]

[10] **SECOND SUPPLEMENTAL EXHIBIT 1.1**.
[11] ALGN-1848529; Siegwarth Second Supplemental Report, Exhibit 25.

19. According to ALGN-1848529, in September 2024, Allergan Ireland's ASP per vial for "Toxins" was [redacted], approximately [redacted] (or [redacted]%) more than the ASP in August 2024 of [redacted][12] and approximately [redacted] (or [redacted]%) more than the October 2024 ASP of [redacted].[13] This large pricing variance greatly affects Dr. Siegwarth's lost profit damages calculation for September 2024. For example, if the per vial ASP for Toxins in September 2024 were consistent with the surrounding months'—[redacted] per vial[14]—Dr. Siegwarth's lost profit claim for September 2024 would decrease from approximately [redacted], a [redacted] reduction.[15]

20. Next, this document purports to summarize Allergan Ireland's "Monthly ASPs ($) using Plan 2025 Rates[.]"[16] Yet, Dr. Siegwarth utilizes these "plan" rates in her lost profit damages calculation as if the data shown is actual data, not "planned" data. However, Dr. Siegwarth does not provide any explanation as to how the 2025 budgeted plan rates compare to Allergan Ireland's actual pricing history for Botox during this period.

21. Further, even before factoring in Allergan Ireland's September 2024 outlier pricing data in the Siegwarth Second Supplemental Report, Dr. Siegwarth's lost profits analysis was flawed because it failed to account for the significant price difference between Botox and Daxxify.[17] Specifically, Dr. Siegwarth's analysis incorrectly assumes that each Daxxify sale directly translates to a lost Botox sale, despite the fact that the ASP of a vial of Daxxify during the damages period is [redacted] while a vial of Botox is [redacted].[18] Under this analysis, Botox would be priced approximately [redacted] Daxxify.[19] However, Dr. Siegwarth does not evaluate whether Daxxify customers would have paid a [redacted] in the but-for world, ignoring the basic economic principle of price elasticity of demand. This oversight becomes even more pronounced in

---

[12] [redacted]

[15] Siegwarth Second Supplemental Report, Exhibit 25. [redacted] x [redacted]% profit margin = [redacted] = [redacted]; [redacted]

[16] ALGN-1848529.

[17] Dr. Siegwarth's lost profits analysis incorrectly assumes a 1-to-1 sales ratio between Daxxify and Botox, despite substantial evidence in the record that the actual ratio is 2-to-1 or higher (see, *e.g.*, Trexler Rebuttal Report, ¶¶ 229-247). This flawed assumption creates an artificially large price discrepancy between these two products that her analysis fails to address. Had Dr. Siegwarth used the correct 2-to-1 ratio, the price gap is less significant, reducing the relevance of price elasticity. By relying on the incorrect ratio, however, Dr. Siegwarth's lost profits analysis introduces a major price elasticity issue that Dr. Siegwarth has failed to resolve.

[18] **SECOND SUPPLEMENTAL EXHIBITS 8.0 and 11.1.**

[19] [redacted] – [redacted] = [redacted]; [redacted] / [redacted] = [redacted].

September 2024 specifically, where Allergan Ireland's ASP for Botox is reported to be [redacted] per vial, compared to Daxxify's [redacted] per vial.[20] In that month, Botox would be approximately [redacted] the price of Daxxify,[21] yet Dr. Siegwarth still assumes a one-to-one substitution without addressing whether customers would have been willing—or able—to absorb such a steep price difference.

### B. ADJUSTMENTS TO ALLERGAN IRELAND'S INCREMENTAL PROFIT MARGIN

22. Prior to the issuance of the Siegwarth Second Supplemental Report, Allergan had not produced information sufficient to calculate Allergan Ireland's actual but-for profit during the damages period. Accordingly, my prior estimate of Allergan Ireland's but-for profit was based on its forecasted profit margin from a 2019 Allergan Ireland forecast titled "[redacted]"[22] Based on this forecast, I estimated Allergan Ireland's but-for profit margin to approximate [redacted][23] However, along with the Siegwarth Second Supplemental Report, Allergan produced Allergan Ireland's actual profit margins from 2022 through May 2025[24] which show that its actual profit margin is substantially lower than these forecasts indicated, as detailed in **TABLE 1**.

23. Moreover, the Siegwarth Second Supplemental Damages Report reduces Allergan Ireland's profit margin by 5% because "Allergan USA, Inc. has been dismissed from this matter" and it suggests an additional [redacted]% reduction in Allergan's profit margin because "[redacted] that is not reflected in consolidated financial statements."[25] These adjustments do not negate the fact that lost profits are not available to Allergan, Inc.

24. I adjust Allergan Ireland's incremental profit margin based on these two changes. I summarize these changes in the **TABLE 1**.

---

20 **SECOND SUPPLEMENTAL EXHIBITS 8.0 and 11.1.**
21 [redacted] / [redacted] ≈ [redacted]
22 ALGN-0068862–876.
23 **TREXLER REBUTTAL REPORT, EXHIBIT 12.0.**
24 ALGN-1848530.
25 Siegwarth Second Supplemental Report, Footnote 18.

**TABLE 1: UPDATED ALLERGAN BUT-FOR PROFIT MARGIN (2022–2025)**[26]

| | | **Updated Allergan Ireland But-For Profit Margin Based on Actuals and Siegwarth Second Supplemental Report Adjustments** | | | | |
|---|---|---|---|---|---|---|
| Year | Prior Allergan Ireland But-For Profit Margin Based on Allergan Ireland 2019 Forecast | Allergan Ireland Incremental Profit Margin | | Siegwarth Second Supplemental Report Adjustments | | Allergan Ireland's Updated But-For Profit Margin |
| 2022 | [redacted] | [redacted] | – | [redacted] | = | [redacted] |
| 2023 | [redacted] | [redacted] | – | [redacted] | = | [redacted] |
| 2024 | [redacted] | [redacted] | – | [redacted] | = | [redacted] |
| 2025 | [redacted] | [redacted] | – | [redacted] | = | [redacted] |

25. With these adjustments Allergan Ireland's weighted-average incremental profit margin is [redacted][27] during the DAXXIFY sales period (December 1, 2022 to May 2025)[28] not [redacted] as proffered in the Siegwarth Second Supplemental Damages Report, a reduction in Allergan Ireland's purported but-for profit of at least [redacted].[29] This yields a weighted-average incremental profit per vial for BOTOX of [redacted].[30]

### C. UPDATED ADJUSTED CALCULATION OF ALLERGAN IRELAND'S CLAIMED LOST PROFITS

26. Based on the new information cited in the Siegwarth Second Supplemental Report, I adjust Allergan Ireland's lost profit damages as follows:[31]

- **Step 1:** Calculate total vial sales of DAXXIFY sold or distributed.[32]

| | | |
|---|---|---|
| Vials of DAXXIFY Sold: | | [redacted] |
| Sample Vials of DAXXIFY Distributed | Plus: | |
| Vials of DAXXIFY Sold or Distributed (together, "DAXXIFY Vial Sales") | Equals: | |

- **Step 2:** Calculate DAXXIFY vials sales from market expansion.

| | | |
|---|---|---|
| DAXXIFY Vial Sales | | [redacted] |
| Adjusted Market Expansion Factor | Times: | |
| DAXXIFY Vials Sales from Market Expansion | Equals: | |

---

26 **SECOND SUPPLEMENTAL EXHIBITS 16.0 and 16.1.**

27 **SECOND SUPPLEMENTAL EXHIBIT 8.0** and **TREXLER REBUTTAL REPORT EXHIBIT 12.0.**

28 **SECOND SUPPLEMENTAL EXHIBIT 8.0**.

29 [redacted]

30 **SECOND SUPPLEMENTAL EXHIBIT 8.0.**

31 All the numbers in the calculation steps that follow can be found in Second Supplemental **EXHIBIT 8.0.**

32 Although none of the Siegwarth Reports have proven that DAXXIFY sample vials are lost sales of BOTOX, I have included those vials in this recalculation, an input which is favorable to Allergan.

- **Step 3:** Calculate DAXXIFY vials sales that may compete with incumbent manufacturers ("DAXXIFY Competing Vial Sales").

| | | |
|---|---|---|
| DAXXIFY Vial Sales | | [redacted] |
| DAXXIFY Vials Sales from Market Expansion | Minus: | |
| Adjusted DAXXIFY Competing Vial Sales | Equals: | |

- **Step 4:** Calculate DAXXIFY Competing Vial Sales in terms of BOTOX vial sales based on DAXXIFY-to-BOTOX vials-to-treatment ratio (i.e., 2:1) ("DAXXIFY Dosing-Adjusted Vial Sales").[33]

| | | |
|---|---|---|
| DAXXIFY Competing Vial Sales | | [redacted] |
| DAXXIFY-to-BOTOX Vials-to-Treatments Ratio (i.e., 2:1). | Divide: | 2 |
| DAXXIFY Dosing-Adjusted Vial Sales | Equals: | [redacted] |

- **Step 5:** Calculate DAXXIFY Dosing-Adjusted Vial Sales that may have been sales of BOTOX ("Lost BOTOX Vial Sales").

| | | |
|---|---|---|
| DAXXIFY Dosing-Adjusted Vial Sales | | [redacted] |
| Estimated Switching Percentage from BOTOX to DAXXIFY | Times: | [redacted] |
| Lost BOTOX Vial Sales | Equals: | [redacted] |

- **Step 6:** Calculate Allergan Ireland's Incremental Profit Per Vial.

| | | |
|---|---|---|
| Allergan Ireland's Weighted-Average Net Sales Price Per Vial | | [redacted] |
| Allergan Ireland's Weighted-Average Incremental Profit Margin Per Vial | Times: | [redacted] |
| Adjusted Allergan Ireland's Incremental Profit Per Vial | Equals: | [redacted] |

- **Step 7:** Calculate Allergan Ireland's Adjusted Lost Profits.

| | | |
|---|---|---|
| Lost BOTOX Vial Sales | | [redacted] |
| Allergan Ireland's Incremental Profit Per Vial | Times: | [redacted] |
| Adjusted Allergan Ireland's Total Lost Profits | Equals: | $19,972,097 |

27. As previously discussed, the purported lost profits calculated in the Siegwarth Second Supplemental Damages Report are Allergan Ireland's purported lost profits, rather than Allergan, Inc.'s lost profits. As a result, these lost profits are significantly overstated as I understand that Allergan, Inc. does not sell Botox. I am unaware of any evidence in the record to demonstrate that

[33] I adjust the Siegwarth Supplemental Damages Report's calculation to a 2:1 ratio, which is favorable to Allergan. Further, I note that the Siegwarth Second Supplemental Report does not include Daxxify for therapeutic use in its lost profits calculations.

even if Allergan Ireland lost profits on sales of Botox as a result of Daxxify sales that this would result in Allergan, Inc. losing profits.

# VI. REASONABLE ROYALTY DAMAGES

## A. THE SIEGWARTH SECOND SUPPLEMENTAL REPORT IGNORES THE CHANGE IN THE PARTIES TO THE HYPOTHETICAL NEGOTIATION

28. The Siegwarth Second Supplemental Report sets forth that Dr. Siegwarth's opinions remain unchanged, despite the fact that the only plaintiff remaining in the case is Allergan, Inc.. This ignores that the parties to the hypothetical negotiation are not direct competitors, as Allergan, Inc. does not sell BOTOX. Further, the Siegwarth Second Supplemental Report does not discuss or provide evidence to support the opinion that the reasonable royalty opinions would not change now that only Allergan, Inc. is at the hypothetical negotiation with Revance. Lastly, the Siegwarth Second Supplemental Report relies entirely upon the economics of Allergan Ireland in its analysis of the hypothetical negotiation. Nowhere in any of Dr. Siegwarth's reports is there an analysis of Allergan, Inc.'s economic position at the hypothetical negotiation. For these reasons, it is my opinion that the reasonable royalty damages opinions expressed in the Siegwarth Second Supplemental Report are unsupported and unreliable.

## B. THE NEW ROYALTY RATES DISCLOSED IN THE SIEGWARTH SECOND SUPPLEMENTAL REPORT ARE FLAWED

29. The Siegwarth Second Supplemental Report appears to introduce new opinions regarding royalty rates for the Asserted Manufacturing Patents. I understand from Counsel that presenting new damages opinions at this stage of litigation is improper. These new royalty rate opinions are not merely elaborations of prior analyses—they represent a misleading repackaging of both the Siegwarth and Trexler damages opinions to support royalty rate opinions never previously disclosed. Given that the Seigwarth Second Supplemental Report now applies the methodology she used in her previous reports to determine the reasonable royalty rate for the Asserted Formulation Patents to determine a new rate for the Asserted Manufacturing Patents,[34] these late-disclosed opinions suffer from many of the same methodological and analytical flaws present the Siegwarth Report's reasonable royalty opinions for the Formulation Patents, as well as additional defects.

[34] In the previous Siegwarth reports, she utilized a different methodology to determine the reasonable royalty rate for the Asserted Manufacturing Patents.

Further, the belated disclosure of these theories prevented me from relying on any deposition testimony or additional documents that could clarify or test Dr. Siegwarth's new theories.

30. These new reasonable royalty rate opinions for the Asserted Manufacturing Patents appear in footnote 20 of the Siegwarth Second Supplemental Damages Report. Footnote 20 states:

> As previously discussed, the royalty proposed by Ms. Trexler (without double-discounting) is 8 percent (e.g., Siegwarth Reply Report ¶¶ 84, 100, FN 181; Trexler Rebuttal Report ¶¶ 425, 429, Exhibit 6.1) and the equivalent royalty from a 2018 Revance survey is 11 percent (e.g., Siegwarth Damages Report ¶¶ 126, 174 ("33 percent of patients ranked the attribute 'free of all human and animal-derived protein' among their top three 'most attractive attributes' of Daxxify tested"), 182).[35]

31. This footnote is inaccurate, misleading or both for several reasons.

32. First, the Trexler Rebuttal Report did not "propose" an 8 percent royalty rate, as inaccurately asserted in the Siegwarth Second Supplemental Damages Report. This claim reflects either a fundamental misunderstanding or mischaracterization of: (1) my damages opinions, (2) an acceptable patent damages methodology under the income approach or (3) both. To be clear, as shown in the screenshot below, the Trexler Rebuttal Report proposed a 1.4% rate for the Asserted Manufacturing Patents and made clear that the 8 percent figure reflects the "Relative Contribution" of the APF benefit to the DAXXIFY price premium.[36]

**TABLE 24: SUMMARY OF STARTING POINT FOR REASONABLE ROYALTY RATE DETERMINATION**[944]

| Patent | Alleged Licensed Benefit | DAXXIFY's Additional Profit (adjusted price premium) | Relative Contribution to Price Premium | Starting Point Reasonable Royalty Rate |
|---|---|---|---|---|
| Manufacturing Patents | APF | 17.5% | 8% | 1.4% |

33. Second, the Siegwarth Second Supplemental Report's reference to "double-discounting" did not appear in any portion of her prior reports.[37] To the best of my knowledge, the first time that term appeared in the record was in Allergan's Daubert motion challenging my reasonable royalty opinions. Indeed, unlike the Siegwarth Second Supplemental Report, Dr. Seigwarth's prior reports

[35] Siegwarth Second Supplemental Report, Footnote 20.
[36] Trexler Rebuttal Report, ¶477.
[37] Siegwarth Second Supplemental Report, Footnote 20.

correctly state that "Ms. Trexler calculates an apportionment value of about eight percent [emphasis added]."[38]

34. The second part of footnote 20 of the Siegwarth Second Supplemental Damages Report also offers a new royalty rate opinion that was never disclosed. It states:

> [T]he equivalent royalty from a 2018 Revance survey is 11 percent (e.g., Siegwarth Damages Report ¶¶ 126, 174 ("33 percent of patients ranked the attribute 'free of all human and animal-derived protein' among their top three 'most attractive attributes' of Daxxify tested"), 182).[39]

35. None of the paragraphs cited in the Siegwarth Second Supplemental Damages Report describe the 33% figure as indicative of a royalty rate, nor do they explain how or why dividing 33% by three to arrive at 11% would translate the survey data into a royalty rate applicable to the entirety of Revance's accused revenues. As discussed in the Trexler Rebuttal Report "the purpose of apportionment is not to separate the portion of the defendant's revenue between the patented and unpatented features but to separate or apportion the defendant's profits [ ] between the patented feature and the unpatented features."[40] Thus, applying an arbitrary fraction of consumer preference data as a royalty rate—without economic analysis or relationship to profits—is methodologically unsound and inconsistent with accepted damages principles and is raised for the first time in the Siegwarth Second Supplemental Report.

36. The undisclosed 8% and 11% royalty rates for the Asserted Manufacturing Patents have other flaws.

37. First, the economic implications of these newly asserted royalty rates are unreasonable and unsupported by the underlying evidence of purchaser demand. For example, applying an 8% royalty to Revance's revenue erroneously suggests that Allergan would expect Revance to pay—or that Revance would be willing to pay—18% of its incremental profits from Daxxify sales for a feature with little to no associated demand. Even more unreasonable, this 8% rate implies that 46% of Daxxify's 17.5% price premium is attributable to a feature that contributes minimally, if at all, to purchaser demand. These economic implications become even more untenable at the asserted 11% royalty rate.

---

[38] Siegwarth Reply Report, ¶84 (Emphasis added.).
[39] Siegwarth Second Supplemental Report, Footnote 20.
[40] Trexler Rebuttal Report, ¶410.

38. Furthermore, the initial Siegwarth Damages Report already attributed the entirety of Daxxify's price premium—albeit incorrectly and contrary to the facts—to the Formulation Patents. As a result, the royalty rates now assigned to the Asserted Manufacturing Patents suffer from a fundamental inconsistency. Having already allocated 100% of the incremental profit Revance earns from Daxxify's unique features to the Formulation Patents, there is no remaining value for Siegwarth to assign to the Asserted Manufacturing Patents. This internal contradiction undermines the credibility of both sets of royalty rates. At a minimum, either Dr. Siegwarth's opinions substantially overstate the value of the Formulation Patents (as I have previously discussed),[41] or they improperly rely on the same profit stream to support two overlapping damages claims. The result is a claim for damages of more profit than actually earned. In fact, the opening Siegwarth Report itself acknowledges—under its discussion of the Asserted Formulation Patent royalty rate—that "Daxxify's actual price premium is inclusive of other Daxxify attributes such as its HSA-free and animal product-free nature."[42] Yet it used 100% of that price premium to calculate the royalty rate for the Asserted Formulation Patents, leaving, by definition, no residual value attributable to any other feature unique to Daxxify. Thus, the Siegwarth Second Supplemental Report not only overstates the Asserted Formulation Patent royalty rate but also precludes any reasonable basis for assigning additional royalties to the Asserted Manufacturing Patents.

39. Last, the Siegwarth Second Supplemental Report derives its 11% royalty rate from a patient survey while completely ignoring a separate survey in the same document of healthcare providers (HCPs)—a critical omission, given that HCPs are well-established as the key decision-makers in this market. In this other survey only 10% of HCPs ranked "free of accessory-derived proteins" in their top three attributes.[43] Using Dr. Siegwarth's own flawed methodology, this would suggest an apportionment factor of just 3.33% (10% divided by 3), resulting in a royalty rate of approximately 0.6% when this apportionment factor is applied to Daxxify's 17.5% price premium. Even assuming equal weight between patients and HCPs—which would overstate the influence of patients given the gatekeeping role of HCPs—the blended apportionment factor would be just 7.1%, translating to a royalty rate of 1.2%, consistent with the rate I have proposed. If these surveys are to be relied upon, they must be evaluated under the proper principles of the income approach. What cannot be

---

[41] See for example, Trexler Rebuttal Report, Section V.D.
[42] Siegwarth Damages Report, ¶183.
[43] Stebbins Exhibit 13, p. 46.

done, as the Siegwarth Second Supplemental Report attempts, is to extract survey results and treat them as a direct royalty rate to be applied across 100% of Revance's accused revenues.

40. In addition, footnote 23 of the Siegwarth Second Supplemental Report appears to summarize attorney briefing requested by the Court after the close of expert discovery.[44] But that analysis failed to appropriately apportion for the value of the Asserted Manufacturing Patents, which I understand has been briefed for the Court by Revance.[45]

41. The above provides my initial response to these newly disclosed reasonable royalty rate opinions. Given the limited time available, I have not had the opportunity to fully address all of the flaws in these opinions and expressly reserve the right to offer additional rebuttal opinions as necessary.

### C. Updated Reasonable Royalty Damages

42. The Siegwarth Second Supplemental Report fails to analyze a hypothetical negotiation between Allergan, Inc. and Revance. It fails to explain why her reasonable royalty opinions would not change from her previous report considering the Court's recent decision on standing, as I understand it is the plaintiff's burden to prove its damages. It is my opinion that the opinions expressed in the Siegwarth Second Supplemental Report are unsupported and unreliable.

43. As I am responding to the opinions of Dr. Siegwarth, I adjust my reasonable royalty calculations based on the new sales information, and do not adjust my reasonable royalty rates to consider the change in parties at the hypothetical negotiation. To perform this analysis, I would need additional information from Allergan, Inc. on its financial information, at a minimum.

44. Comparing the Siegwarth Second Supplement's highest reasonable royalty damages calculation for the Asserted Patents ($115.1 million) to my highest reasonable royalty damages calculation in my Second Supplemental Scenario 4 for the Asserted Formulation Patents and the Asserted Manufacturing Patents ($13.4 million) results in a difference of $101.7 million, a 759% overstatement,[46] rendering the Siegwarth Second Supplement's reasonable royalty damages opinions overstated, speculative and unreliable.

---

[44] D.I. 536.

[45] D.I. 537.

[46] **Second Supplemental Exhibit 1.0**; [($115.1 million-$13.4 million) / $13.4 million)] x 100 = 759%.

45. My reasonable royalty damages analyses and opinions consider that there are certain factual disputes and legal determinations that have yet to be made. As a result, I provide reasonable royalty damages calculations utilizing updated sales information under various scenarios assuming a hypothetical negotiation date of June 2019 or December 2022 if the Court rejects a September 2011 hypothetical negotiation date, despite the belated disclosures in the Siegwarth Second Supplemental Report.[47] Based on the information available to me and my analysis to date, I have reached the following reasonable royalty damages conclusions summarized in **TABLE 2**.

**TABLE 2: SUMMARY OF REBUTTAL REASONABLE ROYALTY DAMAGES**[48]

| | Patents | Reasonable Royalty (% of Net Sales) | Reasonable Royalty Damages |
|---|---|---|---|
| **Available Design-Around** | | | |
| *Scenario 1* | Both | NA/ Lump Sum | $100,666 |
| *Scenario 2* | Formulation | NA/ Lump Sum | $84,297 |
| *Scenario 3* | Manufacturing | NA/ Lump Sum | $16,369 |
| **If No Available Design-Around** | | | |
| *Scenario 4* | Both | 4.9% | $13,398,228 |
| *Scenario 5* | Formulation | 3.5% | $9,570,163 |
| *Scenario 6* | Manufacturing | 1.4% | $3,828,065 |
| *Scenario 7* | Formulation | 1.75%[49] | $4,785,081 |
| *Scenario 8* | Both | 3.15%[50] | $8,613,146 |

* * * * * *

[47] In the Trexler Supplemental Rebuttal Report, I addressed the potential change to the hypothetical negotiation date, which includes several alternative hypothetical dates. As discussed therein, my opinions and conclusions regarding the calculated running reasonable royalty rates remain unchanged no matter which of these hypothetical negotiation dates are selected and incorporate that analysis herein by reference. The ultimate damages amounts, however, change as a result of the additional sales made due to the passage of time.

[48] **SECOND SUPPLEMENTAL EXHIBIT 1.0**.

[49] Scenario 7 assumes that there is no non-infringing design-around alternative available to Revance and reduces the reasonable royalty rate of 3.5% for the Asserted Formulation Patents by half to account for the dispute between the parties regarding whether the Asserted Formulation Patents provide the benefit of extended duration of effect.

[50] Scenario 8 assumes that there is no non-infringing design-around alternative available to Revance and reduces the reasonable royalty rate of 3.5% for the Asserted Formulation Patents by half to account for the dispute between the parties regarding whether the Asserted Formulation Patents provide the benefit of extended duration of effect. The reasonable royalty rate for the Asserted Manufacturing Patents remains the same in this scenario, as the parties agree that the alleged feature of these patents concerns a product that is APF.

46. The procedures performed are limited to those described herein based on the documents provided to date and other information obtained. Information obtained after the date of this report may affect this analysis and this effect may be material. If requested, I will update my analysis.

47. My procedures are performed solely with respect to the above referenced litigation. This report is not to be reproduced, distributed, disclosed, or used for any other purpose.

***STOUT***



Dana M. Trexler, CPA/CFF June 23, 2025

# EXHIBIT A

# Dana Trexler, CPA/CFF

Managing Director



Dana Trexler, a Managing Director in the Disputes, Claims, & Investigations group, is the National Practice Co-Leader for Stout's Intellectual Property Group. Ms. Trexler has nearly 30 years of experience providing litigation consulting services calculating and testifying to the damages in intellectual property (patent, trademark, copyright, and trade secret) and complex commercial disputes (breach of contract, employment, Lanham Act, post-acquisition, working capital, earn-out, unfair competition).

As a seasoned testifier, Ms. Trexler assists attorneys and clients to evaluate and prepare economic damages in the form of lost profits, reasonable royalties, unjust enrichment, disgorged profits, out-of-pocket costs, among other damage remedies. Ms. Trexler also has extensive experience assessing incremental costs and cost allocations. In addition to her testimony experience in legal matters before the court, Ms. Trexler represents clients in Alternative Dispute Resolution (arbitration) proceedings.

Ms. Trexler has testified as an expert witness in bench and jury trials in state and federal courts in the United States including the District of Delaware, Eastern District of Pennsylvania, District of New Jersey, Northern District of Illinois, Middle District of Florida, Middle District of Pennsylvania, and Western Division of Virginia. She has also testified in the Court of Chancery of the State of Delaware, and Superior Court of the State of Delaware.

Ms. Trexler's investigative accounting experience includes conducting fraud and forensic accounting investigations, health care fraud and abuse investigations, and contract compliance examinations ("royalty audits"); and preparing business interruption and property damage claims.

Ms. Trexler has consulted for clients in many sectors including: aerospace, biotechnology, consumer products; education; financial services; food and beverage; gaming; health care; high technology manufacturing; hospitality; media and entertainment; medical device; pharmaceutical; professional services; real estate; retail; software; and telecommunications, among others.

Prior to joining the firm, Ms. Trexler was a Partner at an advisory and accounting firm. Prior to that, she was a Principal in the Forensic, Valuation and Litigation Services Practice of a regional accounting firm. Her background also includes 18 years at a Big 4 accounting firm, where she was a Director in the Forensic Services Group and assisted clients in litigation and contract compliance matters, as well as helped to establish and lead the Corporate Intelligence practice. A frequent speaker, Ms. Trexler has presented a range of forensic accounting and litigation topics to various professional organizations.

Ms. Trexler is a Certified Public Accountant (CPA) and is Certified in Financial Forensics (CFF). Ms. Trexler is also named in the IAM Patent 1000: The World's Leading Patent Professionals.

Philadelphia, PA USA
**Office:** +1 267.571.4563
dtrexler@stout.com

### Education

M.B.A., The Wharton School,
University of Pennsylvania

B.S., Accounting,
Bucknell University

### Designations

Certified Public Accountant (CPA)
Certified in Financial Forensics (CFF)

### Practice Areas

Intellectual Property Disputes
Trade Secrets & Restrictive Covenants
Complex Business Litigation
Investigations
Transaction Disputes

### Industry Focus

Aerospace, Defense & Transportation
Consumer, Retail, Food & Beverage
Healthcare & Life Sciences
Plastics & Packaging
Technology, Media & Telecommunications

## Professional Memberships

- American Institute of Certified Public Accountants
- Pennsylvania Institute of Certified Public Accountants
- Licensing Executive Society (LES)
- American Bar Association

## Employment History

- Stout – Managing Director, Disputes, Compliance & Investigations (June 2020-Present)
- EisnerAmper LLP – Partner, Financial Advisory Services (August 2012 – June 2020)
- ParenteBeard LLC – Principal, Forensics, Litigation and Valuation Services (February 2012- August 2012)
- PricewaterhouseCoopers LLP – Director, Forensic Services (2004 to February 2012)
- PricewaterhouseCoopers LLP – Manager, Forensic Services (1999 to 2004)
- Coopers & Lybrand/PricewaterhouseCoopers LLP – Senior Associate, Forensic Services (1997 to 1999)
- Coopers & Lybrand – Senior Associate, Assurance (1996 to 1997)
- Coopers & Lybrand – Associate, Assurance (1994 to 1996)

## Testimony Experience

Polysciences, Inc. v. Joseph T. Masrud, Matthew Griffin, and Serochem LLC (Civil Action No. 2:20-cv-03649 PBT), United Stated District Court for the Eastern District of Pennsylania, 2025 (Trial)

ExeGi Pharma, LLC v. VSL Pharmaceuticals, Inc. (Case No. 8:19-cv-02479-LKG), United Stated District Court for the District of Maryland, Southern Division, 2025 (Deposition)

WhatsApp Inc and Meta Platforms, Inc. v. NSO Group Technologies Limited and Q Cyber Technologies Limited (Case No. 19-cv-07123-PJH), United States District Court for the Norther District of California, 2025 (Trial)

DRB Systems, LLC v. Sonny's Enterprises, LLC (Case No. 1:23-cv-00960-RGA-LDH) United States District Court for the District of Delaware, 2025 , (Deposition)

FN Herstal, S.A. and FN America , LLC v. Sturm, Ruger & Co., Inc. (Civil Action No. 1:24-CV-218), United States District Court for the Middle District of North Carolina, 2025 (Deposition)

Mallinckrodt PLC, Pharmaceuticals Ireland Limited, Mallinckrodt Hospital Products IP Unlimited Company and iNO Therapeutics LLC v. Airgas Therapeutics LLC and Airgas USA LLC (C.A. No. 1:22-cv-01648-RGA), United States District Court for the District of Delaware, 2025 (Deposition)

Homevestors of America, Inc. v. Warner Bros. Discovery, Inc. (C.A. No. 22-1583-RGA), United States District Court for the District of Delaware, 2025 (Deposition)

Francesca Gregorini v. Apple Inc., a California corporation; M. Night Shyamalan, an individual, Blinding Edge Pictures, Inc., a Pennsylvania corporation; Uncle George Productions; a Pennsylvania corporation; Escape Artists LLC, a California Limited Liability company; Dolphin Black Productions, a California corporation; Tony Basgallop, an individual; Ashwin Rajan, an individual; Jason Blumenthal, an individual; Todd Black, an individual; Steve Tisch, an individual; And Does 1-10 (Case No. 2:20-cv-00406-SSS-JC), United States District Court Central District of California, Western Division, 2025 (Trial)

Shouhui Zhu, Monarch Medical Management, LLC, Monarch Medical Management, Plymouth Meeting, LLC, Monarch Medical Management, Warminster, LLC, Monarch Medical Management, Cinnaminson, LLC, and Monarch Medical Management, Turnersville, LLC v. Edward M. Silverman, LSE Group, LLC, Premier Immediate Medical Care, LLC f/k/a/ Premier Urgent Care, LLC, Premier Immediate Medical Care, LLC, Premier Immediate Medical Care,Delaware, LLC, Premier Urgent Care at Villanova, LLC, Premier Urgent Care Plymouth Meeting, LLC, Premier Urgent CareWarminster, LLC, Premier Urgent Care, Cinnaminson, LLC, Premier Urgent Care, Turnersville, LLC, Premier Urgent Care, Wynnefield, LLC, Premier Urgent Care, Vermillion Square, LLC, Premier Urgent CareNewtown, LLC, Premier Urgent CareLevittown, LLC, Premier Urgent CareLansdale, LLC, Premier Urgent Care, Langhorne, LLC, Premier Urgent Care, Frazier, LLC, Premier Urgent Care, Doylestown, LLC, and Premier Urgent Care at Kennett Square LLC (April Term, 2018, No. 1032), First Judicial District of Pennsylvania Court of Common Pleas of Philadelphia, 2025 (Trial)

ControlSoft, Inc., v. The Dow Chemical Company (Case No. 1:22-cv-02004-DAP), United States District Court for the Northern District of Ohio, Eastern Division, 2024 (Deposition)

Seaport Global Holdings, LLC v. PowerPay, LLC (Civil Action No. 23-1422), United States District Court for the Eastern District of Pennsylvania, 2024 (Deposition)

Gamon Plus, Inc. and Gamon International, Inc. v. Campbell Soup Company, Meijer, Inc., The Kroger Co., and Trinity Manufacturing (1:15-cv-08940), United States District Court for the Northern District of Illinous, Eastern Division, 2024 (Deposition)

Francesca Gregorini v. Apple Inc., M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists LLC, Dolphin Black Productions, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, Steve Tisch, and Does 1-10 (2:20-cv-00406-SSS-JC), United States District Court for the Central District of California, Western Division, 2024 (Deposition)

Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc. V. Revance Therapeutics, Inc., and Ajinomoto Althea, Inc. D/B/A Ajinomoto Bio-Pharma Services (21-1411-RGA), United States District Court for the District of Delaware, 2024 (Deposition)

Kira Baccari v. Kristopher Baccari, Shannon Baccari, and A Wildlife Pro, LLC (22-2337), United States District Court for the Eastern District of Pennsylvania, 2024 (Deposition)

Osram Sylvania, Inc. v. Ledvance LLC (1:20-cv-09858-RA), United States District Court for the Southern District of New York, 2024 (Deposition)

Polysciences, Inc. v. Joseph T. Masrud, Matthew Griffin, and Serochem, LLC (2:20-cv-03649 PBT), United States District Court for the Eastern District of Pennsylvania, 2023 (Deposition)

Carl Zeiss Meditec, Inc. v. Topcon Medical Systems, Inc., Topcon Healthcare Solutions, Inc., Tobias Kurzke, Greg Hoffmeyer, Genivieve Fay, Katalin Spencer, Terry Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Michael Chen (4:19-cv-04162-YGR (LB)), United States District Court for the Northern District of California, Oakland Division, 2023 (Deposition)

WhereverTV, Inc. v. Comcast Cable Communications, LLC (2:18-cv-00529-JLB-NPM), United States District Court for the Middle District of Florida, Fort Myers Division, 2023 (Trial)

Ecolab Inc, and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water v. Anthony Ridley and ChemTreat, Inc. (1:22-cv-00050-TRM-SKL), United States District Court for the Eastern District of Tennessee, Chattanooga Division, 2023 (Deposition)

Invacare Corporation v. Sunrise Medical (US) LLC (1:21-cv-00823-UNA), United States District Court of Delaware, 2023 (Deposition)

North Shore Window & Door, Inc. v. Andersen Corporation and Fenetres MQ, Inc. (19-CV-6194), United States District Court for the Eastern District of New York, 2023 (Deposition)

AVCO Corporation v. Precision Airmotive LLC (4:12-cv-01313-MWB-KM), United States District Court for the Middle District of Pennsylvania, 2022 (Trial)

Chimney Rock, Inc. v. Regency Centers Corporation (Case 3:21-CV-11190), United States District Court for the District of New Jersey, 2022 (Deposition)

Assure Holding, Inc., f/k/a Assure South, Inc., and AssuredPartners NL, LLC v. Forum Benefit, LLC f/k/a Palmetto Benefit Management, Inc., and Brian Stritt (Case No. Case No. 2019-CP-42-00832), State of South Carolina County of Spartanburg in the Court of Common Pleas, 2022 (Deposition)

Arthur J. Gallagher & Co. v. Don Tarantino, Bernadette Heater, Michael Machette, and Spencer Brush (Case No. 20-cv-05505-ECM), United States District Court for the District of Northern District of California, 2022 (Deposition)

Island Intellectual Property LLC v. TD Ameritrade, Inc., TD Ameritrade clearing, Inc., TD Ameritrade Trust Company; TD Ameritrade Holding Corp., and The Charles Schwab Corporation (Case No. 2:21-cv-00273-JRG), United States District Court for the Eastern District of Texas Marshall Division, 2022 (Deposition)

Crown Packaging Technology, Inc. and CarnaudMetalBox Engineering Ltd. v. Belvac Production Machinery, Inc. (6:18-cv-00070-NKM-RSB), United States District Court for the Western Division of Virginia, Lynchburg Division, 2022 (Trial)

ImmerVision, Inc. v. LG Electronics U.S.A., Inc. and LG Electronics, Inc. (C.A. No. 18-cv-01631-MN-CJB and C.A. No. 18-cv-01630-MN-CJB), United States District Court for the District of Delaware, 2022 (Deposition)

Ice Intermediate, Inc. and InMoment, Inc. v. John R. Sperry, individually, as Trustee for the John R. and Ellen M. Sperry Revocable Living Trust, and as Beneficiary of NTC & Co, FBO: John Rulon Sperry A/C 031038009839, Sperry Capital, LLC, Kurtis Williams, individually and as Trustee of Mountain West Entrust IRA FBO Kurtis

Williams, Kurtis Willams and Nicole Williams as Joint Tenants, and Halosight, Inc. (C.A. No. 2021-0174-JTL), Court of Chancery of the State of Delaware, 2022 (Deposition)

Firtiva Corporation v. Funimation Global Group, LLC (Case No. 2:21-cv-111), United States District Court for the Eastern District of Texas, Marshall Division, 2022 (Deposition)

Remy Holdings International, LLC v. Fisher Auto Parts, Inc. (CV No. 5:19-cv-00021), United States District Court for the Western District of Virginia, Harrisonburg Division, 2022 (Trial)

City of Wilmington v. New Castle County (AAA Case No. 01-19-0000-8779), American Arbitration Association, 2021 (Deposition)

WhereverTV, Inc. v. Comcast Cable Communications, LLC (2:18-cv-00529-JLB-NPM), United States District Court for the Middle District of Florida, Fort Myers Division, 2021 (Deposition)

Crown Packaging Technology, Inc. and CarnaudMetalBox Engineering Ltd. v. Belvac Production Machinery, Inc. (6:18-cv-00070-NKM-RSB), United States District Court for the Western Division of Virginia, Lynchburg Division, 2021 (Deposition)

Remy Holdings International LLC v. Fisher Auto Parts, Inc. (5-19-cv-00021), United States District Court for the Western District of Virginia, Harrisonburg, Division, 2021 (Deposition)

In the Matter of the Thomas R. Tomei Trust (CP-0120-2013), Superior Court of New Jersey, Camden County Chancery Division/Probate Part, 2021 (Deposition)

USCC Services, LLC v. Assurant Service Protection, Inc., d/b/a Assurant Solutions, American Security Insurance Company, American Bankers Insurance Company of Florida, Federal Warranty Service Corporation, Sureway, Inc., United Service Protection, Inc. and Signal, LP and American Security Insurance Company, Standard Guaranty Insurance Company, American Bankers Insurance Company of Florida, Federal Warranty Service Corporation, Sureway Inc., Assurant Service Protection Inc., United Service Protection, Inc., and The Signal LP v. United States Cellular Corporation, and USCC Services, LLC (01-19-0001-2564), under the Commercial Rules of the American Arbitration Association, 2021 (Deposition)

Frank Pecora, Individually and Derivately as a Member of 41 West LLC, 349/351 West 46th Street LLC, ORA LLC , Pecora Realty LLC, and 1365 Empire LLC, and Individually and Derivately as a Shareholder of 173-175 East 91 91 Realty Corp.  v. Antonino Percora; TPEC Inc.; 1 Garvies Point, LLC; PEC, LLC 679 LLC; 536 Ninth, LLC; P&G Lex, LLC; TP 9th Avenue, LLC; TPEC Condo, LLC f/k/a 416 W. 46 LLC; PGS, LLC; TPEC LLC; Forte Italia, LLC; P&M 148 LLC; Gustoso, LLC; Magna Restaurant, LLC; TPEC Corp. Farrington; TPEC Corp. Rock; John Does Companies Nos. 1-10 and Jone Doe Companies Nos. 1-10., Supreme Court of the State of New York, County of New York, 2021 (Deposition)

Claim Watcher, LLC, Homestead Insurance Company, Homestead Smart Health Plans LLC, INDECS Corporation, and Homestead Strategic Holdings Inc., v. UPMC, Individually and t/a the UPMC Health System, UPMC Health Coverage, Inc., and UPMC Susquehanna (MA-001-19 ), Commonwealth of Pennsylvania Department of State, 2020 (Arbitration Hearing)

SmartSand, Inc., v. U.S. Well Services, LLC (N19C-01-144-PRW), Superior Court of the State of Delaware, 2020 (Trial)

SmartSand, Inc., v. U.S. Well Services, LLC (N19C-01-144-PRW), Superior Court of the State of Delaware, 2020 (Deposition)

Kenneth Segal and Adam Segal, as trustee for and on behalf of, The Karen and Kenneth Segal Descendents Trust and Segal and Morel, Inc. v. Strausser Enterprises, Inc. and Gary Strausser and Leonard Mellon, United States District Court For the Eastern District of Pennsylvania, 2020 (Deposition)

Optical Air Data Systems, LLC v. Gulfstream Aerospace Corporation (01-19-0001-0519), Under the Commercial Rules of the American Arbitration Association, 2020 (Arbitration Hearing)

AVCO Corporation v. Precision Airmotive LLC (4:12-cv-01313-MWB-KM), United States District Court for the Middle District of Pennsylvania, 2020 (Hearing)

Aldo U.S. Inc. v. Damco USA, Inc. (01-18-0003-4095), International Centre for Dispute Resolution, American Arbitration Association Commercial Rules, 2020 (Arbitration Hearing)

Larry G. Junker v. Medical Components, Inc. and Martech Medical Products, Inc., United States District Court for the Eastern District of Pennsylvania, 2020 (Trial)

DePuy Synthes Sales, Inc. and Medical Devices Business Services, Inc. v. Orthofix Medical, Inc. Scott Mackey and Miranda Middleton, United States District Court for the Eastern District of Texas Sherman Division, 2020 (Deposition)

## Publications

"How to Attract and Retain Young Women in Accounting", *Philadelphia Business Journal*, May 25, 2017

"How Did They Get That Number? An expert witness talks about the art of calculating damages in IP litigation", *Metropolitan Corporate Counsel*, June 25, 2017

"The Benefits of Game Theory in Negotiations and Mediations", co-authored with Gary H. Levin of BakerHostetler, *The Legal Intelligencer*, October 6, 2015

## Speeches and Seminars

"Damages/License Negotiations", Georgia Intellectual Property Springposium, April 2022.

"Case Study: Damages in IP Litigation", Florida Bar IP Symposium, April 22, 2021

"Damages in Intellectual Property Litigation" presented at a law firm CLE, May 10, 2018

"IP Damages and Licensing Negotiations", Florida Bar IP Symposium, April 12, 2018

"Hot Topics in Patent Damages – A Damages Expert's Perspective" presented at presented at a law firm CLE, March 5, 2018

"Seeking Expert Advice – How to Deal with Survey, Industry and Damage Experts in Trademark and Copyright Cases" presented at West Legal Edcenter Webinar, January 22, 2018

"Creating Value When "There's No There There": Intellectual Property/Alternative Assets" presented at TMA Mid-Atlantic Regional Symposium, June 8, 2017

"Fraud Awareness for Nonprofit Organizations" presented at EisnerAmper LLP, Philadelphia, PA, February 2, 2017

"Apple v. Samsung: Takeaways From the Smartphone Wars" presented at Philadelphia Bar Association, January 25, 2017

"Use and Abuse of Expert Witnesses in Trademark and Copyright Litigation" presented at Clear Law Institute, Webinar, January 9, 2017

"Forensic Accounting Webinar" presented at McDevitt & Kline LLC, Philadelphia, Pennsylvania, December 9, 2016

"Show Me the Money – A Primer on Lanham Act Damages" presented at New York Intellectual Property Lawyers, Association, Uniondale, New York, November 10, 2016

"Hot Topics in IP Damages: Evolving Case Law" presented at CenterForce IP Strategy Summit, New York, New York, October 27, 2016

"How to Effectively Explain Damages to a Jury" presented at DRI Business Litigation Seminar, Nashville, Tennessee, May 5, 2016

"The Yates Memo – What You and Your Audit Committee Need to Know" presented at The Institute of Internal Auditors Philadelphia Chapter, Philadelphia, Pennsylvania, April 29, 2016

"Effective Uses of Financial Experts" presented at Legal Intelligencer Litigation Summit, Philadelphia, April 6, 2016

"Forensic Accounting & Litigation: Hot Buttons in 2016 LIVE Webcast" presented at The Knowledge Group, March 17, 2016

"Threat and Fraud Analytics" presented at The Institute of Internal Auditors Philadelphia Chapter, Philadelphia, PA, November 23, 2015

"Accountant's Role in Forensic Investigations and Disputes" presented at Brindisi Tax Academy, Radnor, PA, November 19, 2015

"Effective Uses of Financial Experts" presented at Pennsylvania Bar Institute 9th Annual Intellectual Property Law Institute, Philadelphia, PA, April 29, 2015

"Hot Topics in Corporate Internal Investigations" presented at Legal Intelligencer Litigation Summit, Philadelphia, April 10, 2015

"Trends in IP Damages" presented at CenterForce IP Strategy Summit: Enforcement – NYC, March 26, 2015

# EXHIBIT B

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Additional Documents Considered**
**Second Supplemental Exhibit B**

## Discovery

Expert Report of Christine S. Siegwarth, Ph.D., June 19, 2025

## Produced Documents

ALGN-1848526
ALGN-1848527
ALGN-1848528
ALGN-1848529
ALGN-1848530
ALGN-1848531
REV_DAX-03348497
REV_DAX-03348498

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Summary of Affirmative Damages Scenarios**
**Second Supplemental Exhibit 1.0**

| | | Available Design-Around? | Hypothetical Negotiation Date | Patents | | Reasonable Royalty Rate (% of Net Sales) | | Reasonable Royalty Damages |
|---|---|---|---|---|---|---|---|---|
| **1** | Scenario 1 | Yes | [5] | Formulation & Manufacturing | | Lump Sum | [1] | $ 100,666 |
| **2** | Scenario 2 | Yes | [5] | Formulation | | Lump Sum | [1] | $ 84,297 |
| **3** | Scenario 3 | Yes | [5] | Manufacturing | | Lump Sum | [1] | $ 16,369 |
| **4** | Scenario 4 | No | [5] | Formulation & Manufacturing | [2] | 4.9% | [3] | $ 13,398,228 |
| **5** | Scenario 5 | No | [5] | Formulation | [2] | 3.5% | [3] | $ 9,570,163 |
| **6** | Scenario 6 | No | [5] | Manufacturing | [2] | 1.4% | [3] | $ 3,828,065 |
| **7** | Scenario 7 | No | [5] | Formulation | [4] | 1.75% | [4] | $ 4,785,081 |
| **8** | Scenario 8 | No | [5] | Formulation & Manufacturing | [4] | 3.15% | [4] | $ 8,613,146 |

[1] See Trexler Rebuttal Report, Exhibit 2.0.
[2] See Trexler Rebuttal Report, Exhibit 5.0.
[3] See Second Supplemental Exhibit 3.0.
[4] See Second Supplemental Exhibit 4.0.
[5] See Trexler Supplemental Rebuttal Report, **Section IV**.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Summary of Adjusted Lost Profits and Reasonable Royalty Damages - Assuming Lost Profits are Granted**
**Second Supplemental Exhibit 1.1**

| | | | | Siegwarth Report | | | Trexler Adjustments | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Low | | | High | | |
| | Patents | Lost Profits? | Reasonable Royalty? | Lost Profits | Reasonable Royalty Damages | Total Damages | Adjusted Lost Profits | Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages | Total Damages | Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages | Total Damages |
| 1 | Asserted Manufacturing and Asserted Formulation Patents | Yes | Yes | [1] $ 218,546,007 | [1] $ 58,573,655 | [1] $ 277,119,662 | [2] $ 19,972,097 | [3] 3.15% | $ 7,381,032 | $ 27,353,129 | [3] 4.9% | $ 11,481,606 | $ 31,453,702 |
| 2 | Asserted Formulation Patents | Yes | Yes | [1] $ 218,546,007 | [1] $ 33,394,346 | [1] $ 251,940,353 | [2] $ 19,972,097 | [3] 1.75% | $ 4,100,574 | $ 24,072,670 | [3] 3.5% | $ 8,201,147 | $ 28,173,244 |
| 3 | Asserted Manufacturing Patents | Yes | Yes | [1] $ 218,546,007 | [1] $ 25,179,309 | [1] $ 243,725,317 | [2] $ 19,972,097 | [3] 1.4% | $ 3,280,459 | $ 23,252,555 | [3] 1.4% | $ 3,280,459 | $ 23,252,555 |
| 4 | Asserted Manufacturing and Asserted Formulation Patents | No | Yes | [1] $ - | [1] $ 115,133,317 | [1] $ 115,133,317 | $ - | [4] Lump-Sum | $ 100,666 | $ 100,666 | [5] 4.9% | $ 13,398,228 | $ 13,398,228 |
| 5 | Asserted Formulation Patents | No | Yes | [1] $ - | [1] $ 65,623,973 | [1] $ 65,623,973 | $ - | [4] Lump-Sum | $ 84,297 | $ 84,297 | [5] 3.5% | $ 9,570,163 | $ 9,570,163 |
| 6 | Asserted Manufacturing Patents | No | Yes | [1] $ - | [1] $ 49,509,344 | [1] $ 49,509,344 | $ - | [4] Lump-Sum | $ 16,369 | $ 16,369 | [5] 1.4% | $ 3,828,065 | $ 3,828,065 |
| 7 | Asserted Manufacturing and Asserted Formulation Patents | Yes | No | [1] $ 218,546,007 | [1] $ - | [1] $ 218,546,007 | [2] $ 19,972,097 | N/A | $ - | $ 19,972,097 | N/A | $ - | $ 19,972,097 |

[1] Siegwarth Second Supplemental Report, Exhibit 25.
Tx sales are only included in the reasonable royalty damages calculation.
[2] See Second Supplemental Exhibit 8.0.
[3] See Second Supplemental Exhibit 1.1a.
[4] See Second Supplemental Exhibit 2.0.
[5] See Second Supplemental Exhibit 3.0.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Calculation of Adjusted Reasonable Royalty Damages - Assuming Lost Profits are Granted**
**Second Supplemental Exhibit 1.1a**

| | Patents | Available Design-Around? | | Reasonable Royalty Rate (% of Net Sales) | | Adjusted Royalty Base | | Adjusted Reasonable Royalty Damages |
|---|---|---|---|---|---|---|---|---|
| 1 | Asserted Manufacturing and Asserted Formulation Patents | No | [1] | 4.9% | [2] | $ 234,318,487 | | $ 11,481,606 |
| 2 | Asserted Formulation Patents | No | [1] | 3.5% | [2] | $ 234,318,487 | | $ 8,201,147 |
| 3 | Asserted Manufacturing Patents | No | [1] | 1.4% | [2] | $ 234,318,487 | | $ 3,280,459 |
| 4 | Asserted Formulation Patents (Dispute over Peptide) | No | [3] | 1.75% | [2] | $ 234,318,487 | | $ 4,100,574 |
| 5 | Asserted Manufacturing and Asserted Formulation Patents (Dispute over Peptide) | No | [3] | 3.15% | [2] | $ 234,318,487 | | $ 7,381,032 |
| 6 | Asserted Manufacturing and Asserted Formulation Patents | Yes | | N/A | | N/A | [4] | $ 100,666 |

[1] See Trexler Rebuttal Report, Exhibit 5.0.
[2] See Second Supplemental Exhibit 1.1b, DAXXIFY Vial Revenue not Subject to Lost Profits.
[3] See Second Supplemental Exhibit 4.0.
[4] See Supplemental Exhibit 2.0.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Calculation of Adjusted Reasonable Royalty Base - Assuming Lost Profits are Granted**
**Second Supplemental Exhibit 1.1b**

| | Description | Calculation | | Value |
|---|---|---|---|---|
| 1 | Total Lost BOTOX Vial Sales | [A] | [1] | [redacted] |
| 2 | DAXXIFY-to-BOTOX Ratio | [B] | [1] | [redacted] |
| 3 | Total Lost DAXXIFY Vial Sales | [C] = [A] * [B] | [2] | [redacted] |
| 4 | Total DAXXIFY Vial Sales (including Samples) | [D] | [1] | [redacted] |
| 5 | DAXXIFY Vials not Subject to Lost Profits | [E] = [D] - [C] | | [redacted] |
| 6 | DAXXIFY Average Selling Price per Vial | [F] | [3] | $ [redacted] |
| 7 | DAXXIFY Vial Revenue not Subject to Lost Profits | [G] = [E] * [F] | | $ 234,318,487 |

[1] See Second Supplemental Exhibit 8.0.
[2] Given that DAXXIFY Competing Vial Sales are divided by 2 to determine Lost BOTOX Vial Sales in Supplemental Exhibit 8.0, Lost BOTOX Vial sales are here multiplied by 2 to convert them back to lost sales on a DAXXIFY vial basis.
[3] See Second Supplemental Exhibit 11.1.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Damages Scenarios 4-6 - Reasonable Royalty Damages Without Available Design-Around Alternatives**
**Second Supplemental Exhibit 3.0**

| | | | | Scenario 4 | | Scenario 5 | | Scenario 6 | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | All Patents-in-Suit | | Asserted Formulation Patents | | Asserted Manufacturing Patents | |
| | Year | Month | [1] DAXXIFY Revenue | [2] Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages | [2] Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages | [2] Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages |
| | *Calculation* | | *[A]* | *[B]* | *[C] = [A] * [B]* | *[D]* | *[E] = [A] * [D]* | *[F]* | *[G] = [A] * [F]* |
| **1** | 2022 | 12 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **2** | 2023 | 1 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **3** | 2023 | 2 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **4** | 2023 | 3 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **5** | 2023 | 4 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **6** | 2023 | 5 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **7** | 2023 | 6 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **8** | 2023 | 7 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **9** | 2023 | 8 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **10** | 2023 | 9 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **11** | 2023 | 10 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **12** | 2023 | 11 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **13** | 2023 | 12 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **14** | 2024 | 1 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **15** | 2024 | 2 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **16** | 2024 | 3 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **17** | 2024 | 4 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **18** | 2024 | 5 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **19** | 2024 | 6 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **20** | 2024 | 7 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **21** | 2024 | 8 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **22** | 2024 | 9 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **23** | 2024 | 10 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **24** | 2024 | 11 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **25** | 2024 | 12 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **26** | 2025 | 1 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **27** | 2025 | 2 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **28** | 2025 | 3 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **29** | 2025 | 4 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **30** | 2025 | 5 | [redacted] | 4.9% | [redacted] | 3.5% | [redacted] | 1.4% | [redacted] |
| **31** | **Total** | | $ 273,433,220 | | [redacted] | | [redacted] | | [redacted] |

[1] See Second Supplemental Exhibit 11.1.
[2] See Trexler Rebuttal Report, Exhibit 5.0.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Damages Scenarios 7-8 - Reasonable Royalty Damages Without Available Design-Around Alternatives**
**Second Supplemental Exhibit 4.0**

| | | | | Scenario 7 | | | | Scenario 8 |
|---|---|---|---|---|---|---|---|---|
| | | | | Asserted Formulation Patents | | Asserted Manufacturing Patents | | |
| | Year | Month | [1] DAXXIFY Revenue | [2] Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages | [2] Reasonable Royalty Rate (% of Net Sales) | Reasonable Royalty Damages | Total Reasonable Royalty Damages |
| | *Calculation* | | *[A]* | *[B]* | *[C] = [A] * [B]* | *[D]* | *[E] = [A] * [D]* | *[F] = [C] + [E]* |
| **1** | 2022 | 12 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **2** | 2023 | 1 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **3** | 2023 | 2 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **4** | 2023 | 3 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **5** | 2023 | 4 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **6** | 2023 | 5 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **7** | 2023 | 6 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **8** | 2023 | 7 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **9** | 2023 | 8 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **10** | 2023 | 9 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **11** | 2023 | 10 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **12** | 2023 | 11 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **13** | 2023 | 12 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **14** | 2024 | 1 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **15** | 2024 | 2 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **16** | 2024 | 3 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **17** | 2024 | 4 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **18** | 2024 | 5 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **19** | 2024 | 6 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **20** | 2024 | 7 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **21** | 2024 | 8 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **22** | 2024 | 9 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **23** | 2024 | 10 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **24** | 2024 | 11 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **25** | 2024 | 12 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **26** | 2025 | 1 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **27** | 2025 | 2 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **28** | 2025 | 3 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **29** | 2025 | 4 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **30** | 2025 | 5 | [redacted] | 1.75% | [redacted] | 1.4% | [redacted] | [redacted] |
| **31** | **Total** | | $ 273,433,220 | | [redacted] | | [redacted] | [redacted] |

[1] See Second Supplemental Exhibit 11.1.
[2] See Trexler Rebuttal Report, Exhibit 5.0. Assumes the parties would subsequently split the Asserted Formulation Patents royalty burden in half, given the dispute over whether DAXXIFY's extended duration results from the Asserted Formulation Patents or the proprietary peptide.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Adjustment to the Siegwarth's Lost Profits Calculation - All Adjustments Combined**
**Second Supplemental Exhibit 8.0**

| | Year | Month | [1] Vials of DAXXIFY Sold (Units) | [2] Sample Vials of DAXXIFY Distributed (Units) | DAXXIFY Vial Sales (Units) | [3] Market Expansion Factor | DAXXIFY Vial Sales from Market Expansion (Units) | DAXXIFY Competing Vial Sales (Units) | [4] DAXXIFY-to-BOTOX Ratio | DAXXIFY Dosing Adjusted Vial Sales (Units) | [5] Estimated Switching Percentage from BOTOX to DAXXIFY | Lost BOTOX Vial Sales (Units) | [6] Average Selling Price of 100 Unit Vial of BOTOX Cosmetic | [7] Allergan Incremental Profit Margin | Allergan's Incremental Profit Per Vial | Lost Profits |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *Calculation* | | [redacted] | | | | | | | | | | | | | |
| 1 | 2022 | 9-11 | [redacted] | | | | | | | | | | | | | |
| 2 | 2022 | 12 | [redacted] | | | | | | | | | | | | | |
| 3 | 2023 | 1 | [redacted] | | | | | | | | | | | | | |
| 4 | 2023 | 2 | [redacted] | | | | | | | | | | | | | |
| 5 | 2023 | 3 | [redacted] | | | | | | | | | | | | | |
| 6 | 2023 | 4 | [redacted] | | | | | | | | | | | | | |
| 7 | 2023 | 5 | [redacted] | | | | | | | | | | | | | |
| 8 | 2023 | 6 | [redacted] | | | | | | | | | | | | | |
| 9 | 2023 | 7 | [redacted] | | | | | | | | | | | | | |
| 10 | 2023 | 8 | [redacted] | | | | | | | | | | | | | |
| 11 | 2023 | 9 | [redacted] | | | | | | | | | | | | | |
| 12 | 2023 | 10 | [redacted] | | | | | | | | | | | | | |
| 13 | 2023 | 11 | [redacted] | | | | | | | | | | | | | |
| 14 | 2023 | 12 | [redacted] | | | | | | | | | | | | | |
| 15 | 2024 | 1 | [redacted] | | | | | | | | | | | | | |
| 16 | 2024 | 2 | [redacted] | | | | | | | | | | | | | |
| 17 | 2024 | 3 | [redacted] | | | | | | | | | | | | | |
| 18 | 2024 | 4 | [redacted] | | | | | | | | | | | | | |
| 19 | 2024 | 5 | [redacted] | | | | | | | | | | | | | |
| 20 | 2024 | 6 | [redacted] | | | | | | | | | | | | | |
| 21 | 2024 | 7 | [redacted] | | | | | | | | | | | | | |
| 22 | 2024 | 8 | [redacted] | | | | | | | | | | | | | |
| 23 | 2024 | 9 | [redacted] | | | | | | | | | | | | | |
| 24 | 2024 | 10 | [redacted] | | | | | | | | | | | | | |
| 25 | 2024 | 11 | [redacted] | | | | | | | | | | | | | |
| 26 | 2024 | 12 | [redacted] | | | | | | | | | | | | | |
| 27 | 2025 | 1 | [redacted] | | | | | | | | | | | | | |
| 28 | 2025 | 2 | [redacted] | | | | | | | | | | | | | |
| 29 | 2025 | 3 | [redacted] | | | | | | | | | | | | | |
| 30 | 2025 | 4 | [redacted] | | | | | | | | | | | | | |
| 31 | 2025 | 5 | [redacted] | | | | | | | | | | | | | |
| 32 | **Total/Weighted Average** | | [redacted] | | | | | | | | | | | | | |
| 33 | | | [redacted] | | | | | | | | | | | | | |
| 34 | | | [redacted] | | | | | | | | | | | | | |
| 35 | | | [redacted] | | | | | | | | | | | | | |

[1] See Second Supplemental Exhibit 11.1
[2] See Siegwarth Second Supplemental Report, Exhibit 25.
[3] See Trexler Rebuttal Report, Exhibit 8.1. JEUVEAU market expansion indicator.
[4] Per the DAXXIFY label, the recommended total dose for treatment of glabellar lines is 40 units per treatment (https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/761127s002lbl.pdf) versus 20 of BOTOX (ALGN-1825805-925 at 840). As such, for treatment of glabellar lines, HCPs are using 2 times the number of units of DAXXIFY as compared to BOTOX. 40 / 20 = 2.
[5] See ALGN-1834948–020 at 002. Average of the % of consumers who switched from Botox to JEUVEAU [redacted]) and XEOMIN ([redacted]).
[6] For the average selling price from September 2022 through September 2023, see ALGN-1845835. To determine average selling price for October 2023 through May 2024, see ALGN-1848432. For average sale price from June 2024 to April 2025, see ALGN-1848529. May 2025 assumed to be equal to April 2025. See also, Siegwarth Second Supplemental Report, Exhibit 25.
[7] See Second Supplemental Exhibits 16.0 and 16.1.

[redacted]

[redacted]

[redacted]

Sales data for:
12/01/2022–11/10/2023, see REV_DAX-03316772, tab "Daxxify Current Quarter Order D."
11/11/2023–09/30/2024, see REV_DAX-03343077, tab "Revenue Details ITD-0930 AES."
10/01/2024–05/31/2025, see REV_DAX-03348497, tab "All Data 10.1.24-5.31.25."

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Comparison of Forecasted and Actual DAXXIFY Sales - Q4 2022 to Q2 2025**
**Second Supplemental Exhibit 11.0**

| | Year | Quarter | [1] Forecasted DAXXIFY Revenue | [2] Actual DAXXIFY Revenue | Difference |
|---|---|---|---|---|---|
| 1 | 2022 | Q4 | [redacted] | [redacted] | [redacted] |
| 2 | 2023 | Q1 | [redacted] | [redacted] | [redacted] |
| 3 | 2023 | Q2 | [redacted] | [redacted] | [redacted] |
| 4 | 2023 | Q3 | [redacted] | [redacted] | [redacted] |
| 5 | 2023 | Q4 | [redacted] | [redacted] | [redacted] |
| 6 | 2024 | Q1 | [redacted] | [redacted] | [redacted] |
| 7 | 2024 | Q2 | [redacted] | [redacted] | [redacted] |
| 8 | 2024 | Q3 | [redacted] | [redacted] | [redacted] |
| 9 | 2024 | Q4 | [redacted] | [redacted] | [redacted] |
| 10 | 2025 | Q1 | [redacted] | [redacted] | [redacted] |
| 11 | 2025 | Q2 | [redacted] | [redacted] | [redacted] |
| 12 | 2023 | Q1 - Q4 | [redacted] | [redacted] | [redacted] |
| 13 | 2024 | Q1 - Q4 | [redacted] | [redacted] | [redacted] |
| 14 | 2025 | Q1 - Q2 | [redacted] | [redacted] | [redacted] |
| 15 | Total | Total | [redacted] | $ 273,433,220 | [redacted] |

[1] REV_DAX-02680442, tab "Quarterly_v4.4.23 Base."
Q4 2022 appears to be actual sales.
[2] See Second Supplemental Exhibit 11.1.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**DAXXIFY Sales - December 2022 to May 2025**
**Second Supplemental Exhibit 11.1**

| | Year | Month | Day | [1] DAXXIFY Revenue | [1] DAXXIFY Vials Sold | [1] DAXXIFY Average Selling Price per Vial |
|---|---|---|---|---|---|---|
| 1 | 2022 | 12 | All | [redacted] | [redacted] | [redacted] |
| 2 | 2023 | 1 | All | [redacted] | [redacted] | [redacted] |
| 3 | 2023 | 2 | All | [redacted] | [redacted] | [redacted] |
| 4 | 2023 | 3 | All | [redacted] | [redacted] | [redacted] |
| 5 | 2023 | 4 | All | [redacted] | [redacted] | [redacted] |
| 6 | 2023 | 5 | All | [redacted] | [redacted] | [redacted] |
| 7 | 2023 | 6 | All | [redacted] | [redacted] | [redacted] |
| 8 | 2023 | 7 | All | [redacted] | [redacted] | [redacted] |
| 9 | 2023 | 8 | All | [redacted] | [redacted] | [redacted] |
| 10 | 2023 | 9 | 1-25 | [redacted] | [redacted] | [redacted] |
| 11 | 2023 | 9 | 26-30 | [redacted] | [redacted] | [redacted] |
| 12 | 2023 | 10 | All | [redacted] | [redacted] | [redacted] |
| 13 | 2023 | 11 | All | [redacted] | [redacted] | [redacted] |
| 14 | 2023 | 12 | All | [redacted] | [redacted] | [redacted] |
| 15 | 2024 | 1 | All | [redacted] | [redacted] | [redacted] |
| 16 | 2024 | 2 | All | [redacted] | [redacted] | [redacted] |
| 17 | 2024 | 3 | All | [redacted] | [redacted] | [redacted] |
| 18 | 2024 | 4 | All | [redacted] | [redacted] | [redacted] |
| 19 | 2024 | 5 | All | [redacted] | [redacted] | [redacted] |
| 20 | 2024 | 6 | All | [redacted] | [redacted] | [redacted] |
| 21 | 2024 | 7 | All | [redacted] | [redacted] | [redacted] |
| 22 | 2024 | 8 | All | [redacted] | [redacted] | [redacted] |
| 23 | 2024 | 9 | All | [redacted] | [redacted] | [redacted] |
| 24 | 2024 | 10 | All | [redacted] | [redacted] | [redacted] |
| 25 | 2024 | 11 | All | [redacted] | [redacted] | [redacted] |
| 26 | 2024 | 12 | All | [redacted] | [redacted] | [redacted] |
| 27 | 2025 | 1 | All | [redacted] | [redacted] | [redacted] |
| 28 | 2025 | 2 | All | [redacted] | [redacted] | [redacted] |
| 29 | 2025 | 3 | All | [redacted] | [redacted] | [redacted] |
| 30 | 2025 | 4 | All | [redacted] | [redacted] | [redacted] |
| 31 | 2025 | 5 | All | [redacted] | [redacted] | [redacted] |
| 32 | 2022 | Total | | [redacted] | [redacted] | [redacted] |
| 33 | 2023 | Total | | [redacted] | [redacted] | [redacted] |
| 34 | 2024 | Total | | [redacted] | [redacted] | [redacted] |
| 35 | 2025 | Total | | [redacted] | [redacted] | [redacted] |
| 36 | Total | Total | | $ 273,433,220 | [redacted] | [redacted] |

[1] Sales data for:
12/01/2022–11/10/2023, see REV_DAX-03316772, tab "Daxxify Current Quarter Order D."
11/11/2023–09/30/2024, see REV_DAX-03343077, tab "Revenue Details ITD-0930 AES."
10/01/2024–05/31/2025, see REV_DAX-03348497, tab "All Data 10.1.24-5.31.25."
The columns "Quantity" and "Item Total" are used to quantify DAXXIFY vials sold and DAXXIFY revenue, respectively.
Only orders with an "Order Status" of "Completed" are included in the above summary.
For the list of cancelled or returned orders (i.e. non-completed orders), see Second Supplemental Exhibit 8.5.
Sample vial sales (sales transactions with positive quantity and zero revenue) from December 2022 to March 2023 are excluded from the above summary.
For a list of the excluded sample vial sales transactions, see Trexler Rebuttal Report, Exhibit 8.6.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**DAXXIFY Sales (Cx Only) - December 2022 to May 2025**
**Second Supplemental Exhibit 11.1.1**

| | Year | Month | Day | [1] DAXXIFY Revenue | [1] DAXXIFY Vials Sold | [1] DAXXIFY Average Selling Price per Vial |
|---|---|---|---|---|---|---|
| **1** | 2022 | 12 | All | [redacted] | [redacted] | [redacted] |
| **2** | 2023 | 1 | All | [redacted] | [redacted] | [redacted] |
| **3** | 2023 | 2 | All | [redacted] | [redacted] | [redacted] |
| **4** | 2023 | 3 | All | [redacted] | [redacted] | [redacted] |
| **5** | 2023 | 4 | All | [redacted] | [redacted] | [redacted] |
| **6** | 2023 | 5 | All | [redacted] | [redacted] | [redacted] |
| **7** | 2023 | 6 | All | [redacted] | [redacted] | [redacted] |
| **8** | 2023 | 7 | All | [redacted] | [redacted] | [redacted] |
| **9** | 2023 | 8 | All | [redacted] | [redacted] | [redacted] |
| **10** | 2023 | 9 | 1-25 | [redacted] | [redacted] | [redacted] |
| **11** | 2023 | 9 | 26-30 | [redacted] | [redacted] | [redacted] |
| **12** | 2023 | 10 | All | [redacted] | [redacted] | [redacted] |
| **13** | 2023 | 11 | All | [redacted] | [redacted] | [redacted] |
| **14** | 2023 | 12 | All | [redacted] | [redacted] | [redacted] |
| **15** | 2024 | 1 | All | [redacted] | [redacted] | [redacted] |
| **16** | 2024 | 2 | All | [redacted] | [redacted] | [redacted] |
| **17** | 2024 | 3 | All | [redacted] | [redacted] | [redacted] |
| **18** | 2024 | 4 | All | [redacted] | [redacted] | [redacted] |
| **19** | 2024 | 5 | All | [redacted] | [redacted] | [redacted] |
| **20** | 2024 | 6 | All | [redacted] | [redacted] | [redacted] |
| **21** | 2024 | 7 | All | [redacted] | [redacted] | [redacted] |
| **22** | 2024 | 8 | All | [redacted] | [redacted] | [redacted] |
| **23** | 2024 | 9 | All | [redacted] | [redacted] | [redacted] |
| **24** | 2024 | 10 | All | [redacted] | [redacted] | [redacted] |
| **25** | 2024 | 11 | All | [redacted] | [redacted] | [redacted] |
| **26** | 2024 | 12 | All | [redacted] | [redacted] | [redacted] |
| **27** | 2025 | 1 | All | [redacted] | [redacted] | [redacted] |
| **28** | 2025 | 2 | All | [redacted] | [redacted] | [redacted] |
| **29** | 2025 | 3 | All | [redacted] | [redacted] | [redacted] |
| **30** | 2025 | 4 | All | [redacted] | [redacted] | [redacted] |
| **31** | 2025 | 5 | All | [redacted] | [redacted] | [redacted] |
| **32** | 2022 | Total | | [redacted] | [redacted] | [redacted] |
| **33** | 2023 | Total | | [redacted] | [redacted] | [redacted] |
| **34** | 2024 | Total | | [redacted] | [redacted] | [redacted] |
| **35** | 2025 | Total | | [redacted] | [redacted] | [redacted] |
| **36** | Total | Total | | [redacted] | [redacted] | [redacted] |

[1] Sales data for:
12/01/2022–11/10/2023, see REV_DAX-03316772, tab "Daxxify Current Quarter Order D."
11/11/2023–09/30/2024, see REV_DAX-03343077, tab "Revenue Details ITD-0930 AES."
10/01/2024–05/31/2025, see REV_DAX-03348497, tab "All Data 10.1.24-5.31.25."
The columns "Quantity" and "Item Total" are used to quantify DAXXIFY vials sold and DAXXIFY revenue, respectively.
Only orders with an "Order Status" of "Completed" are included in the above summary.
For the list of cancelled or returned orders (i.e. non-completed orders), see Second Supplemental Exhibit 8.5.
Sample vial sales (sales transactions with positive quantity and zero revenue) from December 2022 to March 2023 are excluded from the above summary.
For a list of the excluded sample vial sales transactions, see Trexler Rebuttal Report, Exhibit 8.6.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**DAXXIFY Sales (Tx Only) - December 2022 to May 2025**
**Second Supplemental Exhibit 11.1.2**

| | Year | Month | Day | [1] DAXXIFY Revenue | [1] DAXXIFY Vials Sold | [1] DAXXIFY Average Selling Price per Vial |
|---|---|---|---|---|---|---|
| | 2022 | 12 | All | | | |
| | 2023 | 1 | All | | | |
| | 2023 | 2 | All | | | |
| | 2023 | 3 | All | | | |
| | 2023 | 4 | All | | | |
| | 2023 | 5 | All | | | |
| | 2023 | 6 | All | | | |
| | 2023 | 7 | All | | | |
| | 2023 | 8 | All | | | |
| | 2023 | 9 | 1-25 | | | |
| | 2023 | 9 | 26-30 | | | |
| | 2023 | 10 | All | | | |
| | 2023 | 11 | All | | | |
| | 2023 | 12 | All | | | |
| | 2024 | 1 | All | | | |
| | 2024 | 2 | All | | | |
| | 2024 | 3 | All | | | |
| | 2024 | 4 | All | | | |
| | 2024 | 5 | All | | | |
| | 2024 | 6 | All | | | |
| | 2024 | 7 | All | | | |
| | 2024 | 8 | All | | | |
| | 2024 | 9 | All | [redacted] | [redacted] | [redacted] |
| **1** | 2024 | 10 | All | [redacted] | [redacted] | [redacted] |
| **2** | 2024 | 11 | All | [redacted] | [redacted] | [redacted] |
| **3** | 2024 | 12 | All | [redacted] | [redacted] | [redacted] |
| **4** | 2025 | 1 | All | [redacted] | [redacted] | [redacted] |
| **5** | 2025 | 2 | All | [redacted] | [redacted] | [redacted] |
| **6** | 2025 | 3 | All | [redacted] | [redacted] | [redacted] |
| **7** | 2025 | 4 | All | [redacted] | [redacted] | [redacted] |
| **8** | 2025 | 5 | All | [redacted] | [redacted] | [redacted] |
| | 2022 | Total | | [redacted] | [redacted] | [redacted] |
| | 2023 | Total | | [redacted] | [redacted] | [redacted] |
| **9** | 2024 | Total | | [redacted] | [redacted] | [redacted] |
| **10** | 2025 | Total | | [redacted] | [redacted] | [redacted] |
| **11** | Total | Total | | [redacted] | [redacted] | [redacted] |

[1] Sales data for:
12/01/2022–11/10/2023, see REV_DAX-03316772, tab "Daxxify Current Quarter Order D."
11/11/2023–09/30/2024, see REV_DAX-03343077, tab "Revenue Details ITD-0930 AES."
10/01/2024–05/31/2025, see REV_DAX-03348497, tab "All Data 10.1.24-5.31.25."
The columns "Quantity" and "Item Total" are used to quantify DAXXIFY vials sold and DAXXIFY revenue, respectively.
Only orders with an "Order Status" of "Completed" are included in the above summary.
For the list of cancelled or returned orders (i.e. non-completed orders), see Second Supplemental Exhibit 8.5.
Sample vial sales (sales transactions with positive quantity and zero revenue) from December 2022 to March 2023 are excluded from the above summary.
For a list of the excluded sample vial sales transactions, see Trexler Rebuttal Report, Exhibit 8.6.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**Calculation of US BOTOX Cosmetics Adjusted Incremental Profit Margin - Jan. 2022 - May 2025**
**Second Supplemental Exhibit 16.0**

| | Description | 2022 | 2023 | 2024 | Jan. - May 2025 | Total |
|---|---|---|---|---|---|---|
| 1 | Total Net Sales | [redacted] | | | | |
| 2 | Div Margin | | | | | |
| 3 | R&D Add-Back | | | | | |
| 4 | Admin Add-Back | | | | | |
| 5 | Incremental Profit | | | | | |
| 6 | *% Sales* | | | | | |
| 7 | Less: Dr. Siegwarth Adjustment | | | | | |
| 8 | Adjusted Incremental Profit Margin | | | | | |

[1] ALGN-1848530.
[2] Siegwarth Second Supplemental Report, Footnote 18.

**Allergan, Inc. v. Revance Therapeutics, Inc. et al**
**US BOTOX Cosmetics Income Statement - Jan. 2022 - May 2025**
**Second Supplemental Exhibit 16.1**

| Description | Value | 2022 [1] | 2023 [1] | 2024 [1] | Jan. - May 2025 [1] | Total |
|---|---|---|---|---|---|---|
| [redacted] | | | | | | |

[1] ALGN-1848530.