IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Allergan, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a/ Ajinomoto Bio-Pharma Services,<br><br>Defendant. | Civil Action No. 21-1411-RGA<br><br>[redacted]<br><br>**REDACTED - PUBLIC VERSION** |

**<u>PLAINTIFF'S DAMAGES PROFFER</u>**

# TABLE OF CONTENTS

**Page**

I. Nature and Stage of Proceedings ....................1

II. Multiple Permissible Methodologies for Determining a Reasonable Royalty ....................1

III. Revance's 2018 Survey Showed APF Will Contribute 11% of Daxxify's Value ....................2

IV. Allergan's 2023 Survey Showed APF Contributed 8 Percent of Daxxify's Value ....................4

# TABLE OF ABBREVIATIONS AND CITATIONS

| Abbreviation | Full Title | Record Citation |
|---|---|---|
| Siegwarth Opening | December 15, 2023 Expert Report of Christine S. Meyer, Ph.D. | D.I. 360, Ex. A |
| Trexler Rebuttal | March 8, 2023 Rebuttal Expert Report on Damages of Dana Trexler, CPA/CFF | D.I. 349, Ex. 6 |
| Siegwarth Reply | April 19, 2024 Expert Reply Report of Christine S. Meyer, Ph.D. | D.I. 361, Ex. J |

## I. Nature and Stage of Proceedings

Pursuant to the Court's request at the July 1, 2025 pretrial conference, Plaintiff Allergan, Inc. ("Allergan") hereby submits a proffer of what its damages expert, Dr. Christine Siegwarth, would say about her survey-based reasonable royalty opinion for U.S. Patent No. 7,354,740 and U.S. Patent No. 11,203,748 (the "Asserted Manufacturing Patents") at trial. (*See* July 1, 2025 Hr'g Tr. at 38:21-39:11.)

## II. Multiple Permissible Methodologies for Determining a Reasonable Royalty

Dr. Siegwarth will explain that there are multiple ways to estimate a reasonable royalty rate that Allergan and Revance would have agreed on at the hypothetical negotiations. (*E.g.*, Siegwarth Opening, ¶¶ 163-173, 174, 181-182; Siegwarth Reply, ¶ 100.) These include evaluating the parties' opportunity costs of licensing the Asserted Manufacturing patents versus Revance designing around them (*e.g.*, *id.*, ¶¶ 163-173; *see also, e.g.*, *id.*, ¶¶ 110-113) and using the parties' market research surveys to apportion for the value of the Manufacturing Patents (*id.*, ¶ 174; *see also id.*, ¶¶ 181-182). (*See also* Siegwarth Reply, ¶ 100 ("Apportionment by the product attribute would be one way to apportion the relevant profit attributable to each feature of the product; however, analyzing the delay related to designing around the patents is another reflection of that value.").)

Dr. Siegwarth will testify that, assuming a design-around for the Asserted Manufacturing Patents would have been available to Revance (*e.g.*, Siegwarth Opening, ¶ 168), to determine potential reasonable royalty rates for those patents she (1) looked at the parties' opportunity costs of licensing them as opposed to Revance pursuing its design around (*e.g.*, *id.*, ¶¶ 110-113, 163-173) and also (2) used a Revance market research survey showing the value of Daxxify's animal-product free ("APF") feature (*id.*, ¶ 174). Dr. Siegwarth will explain the second, survey-based methodology is consistent with how Ms. Trexler approached the issue

when evaluating a 2023 Allergan survey to determine that "[healthcare providers] ranked APF as 8% of the relative contribution of the reasons why [healthcare providers] switch from other [neurotoxin] Products to DAXXIFY." (Trexler Rebuttal, ¶ 425; *see also id.*, ¶¶ 422-423, 429; Siegwarth Reply, ¶¶ 84 & n.181, 100 & n.227 (citing Siegwarth Opening, ¶ 174).)

## III. Revance's 2018 Survey Showed APF Will Contribute 11% of Daxxify's Value

Dr. Siegwarth will testify that, relative to her 12.5 to 20 percent opportunity-cost-based opinion, "[s]urveys of patients and HCPs provide comparable estimates of the importance of the HSA-free and animal product-free aspect of Daxxify" (Siegwarth Opening, ¶ 174) and "[a]pportionment by the product attribute would be one way to apportion the relevant profit attributable to each feature of the product" (Siegwarth Reply, ¶ 100). Specifically, Dr. Siegwarth will explain that a survey Revance conducted in 2018 allowed her to estimate that Daxxify's APF feature provides 11 percent of Daxxify's value. (*See* Siegwarth Opening Report, ¶ 174 (citing REV_DAX-02666789 at -800 (PTX-804.12)).)

Dr. Siegwarth will show that the survey (excerpted below) asked patients, "Please rank the three most attractive product characteristics from the list below," and 33 percent of respondents selected "[f]ree of all human and animal-derived proteins" as among their top three most attractive attributes. (PTX-804.12.)

Q17. Please rank the three most attractive product characteristics from the list below.




(PTX-804.12 (annotated); *see also* JTX-096.13.)

Dr. Siegwarth will opine that the 33 percent survey result reflects an apportioned value of the APF feature of 11 percent. (*See* Siegwarth Opening, ¶ 174.) That is, because each survey respondent selected the three most attractive product characteristics, dividing the percentage result by three provides the apportioned (or normalized) value attributable to the APF feature (33 percent / 3 = 11 percent). (*See id.*) Dr. Siegwarth will explain that this normalization approach is the same as used in her analysis for the Formulation Patents (*id.*, ¶ 182 & nn.325, 327 (apportioning another "top five" survey from the same Revance study and another "top three" survey from an Allergan study by dividing the survey results by five and three, respectively)) and is consistent with Ms. Trexler's normalization of the 2023 Allergan

survey (*see* Trexler Rebuttal at ¶¶ 425, 429, Exhibit 6.1; Siegwarth Reply, ¶¶ 84 & n.181, 100 & n.227 (citing Siegwarth Opening, ¶ 174)). Dr. Siegwarth may also testify that Ms. Trexler explained the normalization process for surveys where the respondents could select more than one response, and that the experts agree on and both applied the same normalization methodology to those surveys. (*See* Trexler Rebuttal, ¶ 418 (explaining how to normalize surveys).)

If needed, Dr. Siegwarth will further elaborate that the 2018 Revance survey provided a "comparable estimate[]" to her opportunity-cost-based opinion. (Siegwarth Opening, ¶ 174; *see also id.*, ¶¶ 170-173 (opportunity-cost-based opinion).) Dr. Siegwarth will also testify that she likewise normalized other surveys as part of her analysis. For example, she applied the same normalization method to another question from the same 2018 Revance survey (Siegwarth Opening, ¶ 182 & nn.326-27 (citing REV_DAX-02673436 at -447 (JTX-096.12))) and a question from a 2020 Allergan market-research survey (*id.*, ¶ 182 & nn.324-25 (citing ALGN-1844413 at -425 (JTX-065.13)) to determine a value for Daxxify's longer duration. Dr. Siegwarth will also explain that she performed the same normalization method on the 2023 Allergan market-research survey to verify the 8 percent "relative contribution" put forth by Ms. Trexler and discussed further below (Siegwarth Reply, ¶ 100 (citing Siegwarth Opening ¶ 174); *id.*, ¶ 84 & n.181.)

## IV. Allergan's 2023 Survey Showed APF Contributed 8 Percent of Daxxify's Value

Dr. Siegwarth will testify that Revance's damages expert, Ms. Trexler, relied on a 2023 Allergan survey to determine that "the relative contribution of DAXXIFY being an APF [neurotoxin] Product is approximately 8%" (Trexler Rebuttal, ¶ 429), as the "normalized survey results indicate that [healthcare providers] ranked APF as 8% of the relative contribution of the reasons why [healthcare providers] switched from other [neurotoxin] Products to DAXXIFY"

(Trexler Rebuttal, ¶ 425 (citing Exhibit 6.1); *see also id.*, ¶ 429 ("The normalized survey results . . . indicate that, at most, the relative contribution of DAXXIFY being an APF [neurotoxin] Product is approximately 8%." (citing ALGN-1834385 at -408 (JTX-164.24)).

Dr. Siegwarth will testify that she agrees "[a]pportionment by the product attribute would be one way to apportion the relevant profit attributable to each feature of the product," including for the Asserted Manufacturing Patents, and, as an example, will refer back to her own survey analysis, discussed above. (Siegwarth Reply, ¶ 100 & n.227 ("Further, survey evidence, as cited in the Meyer Damages Report, shows that APF is an attribute that consumers and HCPs assign economic value to, albeit less so than the value associated with duration.") (citing Siegwarth Opening, ¶ 174).)

Dr. Siegwarth will show that the 2023 Allergan survey (excerpted below) asked healthcare providers, "Why did you switch away from other neurotoxins to Daxxify®?", and the answer choice "Daxxify® is free of human serum albumin (HSA)" was selected by 21% of respondents in the survey's first wave and 25% of respondents in the survey's second wave. (JTX-164.24.)

N11. Why did you switch away from other neurotoxins to Daxxify®?




(JTX-164.24 (annotated).) Dr. Siegwarth will further explain that she is not criticizing that this survey's normalized result was that 8.2 percent of respondents had selected "Daxxify® is free of human serum albumin (HSA)." (*See* Siegwarth Reply, ¶ 100; *id.* at ¶ 84 & n.181; *see also* Trexler Rebuttal, ¶¶ 425, 429, Exhibit 6.1.)

Dr. Siegwarth will testify that, to determine an appropriate reasonable royalty rate for the Asserted Manufacturing Patents, the normalized 8 percent figure must be applied to the price of Daxxify as a whole, because the survey is evaluating why customers are choosing Daxxify. (*E.g.*, Siegwarth Reply, ¶¶ 84 & n.181, 100 ("Ms. Trexler's use of her calculated 8.2 percent weight attributable to APF as an apportionment factor for Daxxify's price premium is improper."); Siegwarth Opening, ¶¶ 174, 182.) Dr. Siegwarth will criticize Ms. Trexler's analysis on the basis that it is improper for Ms. Trexler to apply this 8 percent figure only to the temporary price premium over Botox at which Revance sold Daxxify in eight of its first months

on the market. (Siegwarth Reply, ¶¶ 84 & n.181, 100; *see also* Trexler Rebuttal, ¶ 397, Exhibit 7.0 & n.1, Exhibit 7.1 & n.1.) Dr. Siegwarth will explain that the survey did not ask, "Why would you pay more for Daxxify than Botox?" and that it was improper for Ms. Trexler to interpret it that way. (*See* Siegwarth Reply, ¶¶ 84 & n.181, 100.)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Allergan, Inc.*

OF COUNSEL:

Eric W. Dittmann
Chad J. Peterman
Melanie R. Rupert
Bruce M. Wexler
Ashley N. Mays-Williams, Ph.D.
Krystina L. Ho, Ph.D.
Carl J. Minniti III
Isaac S. Ashkenazi
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Felix A. Eyzaguirre
PAUL HASTINGS LLP
600 Travis Street, 58th Floor
Houston, TX 77002
(713) 860-7300

Candace Polster
Robert Unikel
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 499-6000

Karthik R. Kasaraneni
David M. Valente
Amanda K. Taylor
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700

July 8, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 8, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire *VIA ELECTRONIC MAIL*
Samantha G. Wilson, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

Dennies Varughese, Pharm. D. *VIA ELECTRONIC MAIL*
Eldora L. Ellison, Ph.D.
Adam C. LaRock, Esquire
Olga A. Partington, Ph.D.
Ryan E. Conkin, Esquire
Anna G. Phillips, Esquire
Sasha S. Rao, Esquire
Marsha Rose Gillentine, Ph.D.
Nirav N. Desai, Esquire
Christopher M. Gallo, Ph.D.
Tyler C. Liu, Esquire
Adil B. Moghal, Ph.D.
Louis P. Panzica, Jr., Esquire
Byron L. Pickard, Esquire
Deirdre M. Wells, Esquire
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005
*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

Peter J. Armenio, Esquire
Andrew Solomon
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
*Attorneys for Defendants Revance Therapeutics, Inc. and Ajinomoto Althea, Inc. d/b/a Ajinomoto Bio-Pharma Services*

*VIA ELECTRONIC MAIL*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)