# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Allergan, Inc.,<br><br>          Plaintiff,<br><br>          v.<br><br>Revance Therapeutics, Inc.<br>and PCI San Diego, Inc.,<br><br>          Defendants. | C.A. No. 21-1411-RGA-LDH |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTIONS FOR
JUDGMENT AS A MATTER OF LAW UNDER RULE 50(B) AND,
<u>IN THE ALTERNATIVE, NEW TRIAL AND/OR REMITTITUR UNDER RULE 59</u>**

Dated: November 12, 2025

Of Counsel:

Dennies Varughese, Pharm. D.
Adam C. LaRock
Byron L. Pickard
Nirav N. Desai
Deirdre M. Wells
Anna G. Phillips
Christopher M. Gallo
STERNE, KESSLER,
GOLDSTEIN & FOX P.L.L.C
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

Peter J. Armenio
Andrew Solomon
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance
Therapeutics, Inc. and PCI San Diego, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

TABLE OF ABBREVIATIONS .............................................................................................. iv

I.    INTRODUCTION ...........................................................................................................1

II.   THE COURT SHOULD GRANT JMOL OF OBVIOUSNESS .........................................3

      A.   There Is No Dispute That Hunt 598 And Johnson 468 Are Prior Art And Disclose All Of The Limitations Of The Formulation Claim ...........................3

      B.   Revance Proved A Motivation To Combine Hunt 598 and Johnson 468 ..........3

      C.   Revance Proved A Reasonable Expectation of Success ...................................5

      D.   Allergan's Teaching Away Argument Is Legally Insufficient .........................6

      E.   Allergan's Asserted Objective Indicia Cannot Save The Formulation Claim ...6

III.  ALTERNATIVELY, THE COURT SHOULD ORDER A NEW OBVIOUSNESS TRIAL .............................................................................................................................8

IV.   THE COURT SHOULD GRANT JMOL ON DAMAGES ...............................................8

      A.   Allergan's "Daubert" Rejoinder Misstates The Record And The Law ..................8

      B.   The Jury's Damages Award Is Neither Supported By Substantial Evidence Nor Reasonable ...........................................................................................................10

          1.   The Formulation Claim Royalty Is Not Supported By Substantial Evidence .10
          2.   The Manufacturing Claim Royalties Are Not Supported By Substantial Evidence ...............................................................................................................11

V.    ALTERNATIVELY, THE COURT SHOULD ORDER A NEW DAMAGES TRIAL ...........................................................................................................................12

VI.   CONCLUSION .............................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Wi-Lan, Inc.*,
  C.A. No. 14-2235-DMS-BLM, 2019 WL 4248899 (S.D. Cal. Jan. 3, 2019).........................10

*Aventis Pharms., Inc. v. Iancu*,
  889 F.3d 1372 (Fed. Cir. 2018).......................................................................................3, 5

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009).............................................................................................6

*EcoFactor, Inc. v. Google LLC*,
  137 F.4th 1333 (Fed. Cir. 2025) ....................................................................................10, 11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018)...................................................................................3, 9, 12

*In re Fulton*,
  391 F.3d 1195 (Fed. Cir. 2004)...................................................................................2, 4, 6

*In re Gurley*,
  27 F.3d 551 (Fed. Cir. 1994)..................................................................................................6

*Idemitsu Kosan Co., Ltd. v. SFC Co. Ltd.*,
  870 F.3d 1376 (Fed. Cir. 2017)..............................................................................................6

*L-3 Commc'ns Corp. v. Sony Corp.*,
  C.A. No. 10-734-RGA, 2014 WL 4674815 (D. Del. Sep. 12, 2014) ......................................4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)................................................................................................12

*Omega Patents LLC v. CalAmp Corp.*,
  13 F. 4th 1361 (Fed. Cir. 2021) .............................................................................................9

*Pfizer, Inc. v. Apotex, Inc.*,
  480 F.3d 1348 (Fed Cir. 2007)...............................................................................................5

*Rite-Hite Corp. v. Kelley Co., Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995)..........................................................................................3, 11

*Standard Oil Co. v. Am. Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1985)................................................................................................5

*In re Susi*,
      440 F.2d 442 (CCPA 1971) ................................................................................................2, 6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
      767 F.3d 1308 (Fed. Cir. 2014).................................................................................................3

*Western Union Co. v. MoneyGram Payment Sys., Inc.*,
      626 F.3d 1361 (Fed. Cir. 2010)..................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 50....................................................................................................................2, 8, 9

Fed. R. Civ. P. 59.........................................................................................................................8

Fed. R. Evid. 702 .........................................................................................................................9

## TABLE OF ABBREVIATIONS

The following table lists the abbreviations used throughout this brief:

| Abbreviation | Description |
|---|---|
| '740 Manufacturing Patent | U.S. Patent No. 7,354,740 |
| '748 Manufacturing Patent | U.S. Patent No. 11,203,748 |
| Allergan | Plaintiff Allergan, Inc. |
| APF | Animal protein free |
| Asserted Claims | Claim 6 of U.S. Patent No. 11,147,878; Claim 8 of U.S. Patent No. 7,354,740; Claim 8 of U.S. Patent No. 11,203,748 |
| BoNT | Botulinum neurotoxin |
| Carpenter | Carpenter *et al.*, "Rational Design of Stable Lyophilized Protein Formulations: Some Practical Advice," *Pharma Res*, 14(8):969–75 (1997) (DTX-179) |
| Dr. Schöneich | Allergan's damages expert Dr. Christian Schöneich |
| Dr. Siegwarth | Allergan's damages expert Dr. Christine Siegwarth |
| Dr. Sury | Revance's formulation expert Dr. Raj Suryanarayanan |
| Formulation Claim | Claim 6 of U.S. Patent No. 11,147,878 |
| Hunt 598 | U.S. Patent App. Pub. No. 2003/0118598 (DTX-209) |
| HSA | Human serum albumin |
| JMOL | Judgment as a matter of law |
| Johnson 468 | U.S. Patent No. 5,756,468 (DTX-207) |
| Manufacturing Claims | Claim 8 of U.S. Patent No. 7,354,740 and Claim 8 of U.S. Patent No. 11,203,748 |
| Ms. Trexler | Revance's damages expert Ms. Dana Trexler |
| POSA | Person of ordinary skill in the art |
| Revance | Defendants Revance Therapeutics, Inc. and PCI San Diego, Inc. |

## I.    INTRODUCTION

In its opening brief, Revance provided ample support for its obviousness and damages post-trial motions.  In its opposition, Allergan did not, and could not, undermine that support.

With respect to the obviousness of the Formulation Claim, Revance showed that it is undisputed that:  (1) Hunt 598 and Johnson 468 are prior art (D.I. 584); (2) the recombinant HSA-BoNT embodiment of Hunt 598 discloses every limitation of the claim except trehalose, which limitation is disclosed by Johnson 468 (*see, e.g.*, Tr. 961:24–972:13 (Dr. Sury mapping the claim limitations); 1206:18–1207:8 (Dr. Schöneich agreeing)); (3) a POSA had a common-sense reason to combine the trehalose from Johnson 468 with the recombinant HSA-BoNT embodiment of Hunt 598 to obtain an APF composition with increased temperature stability (*see, e.g.*, Tr. 955:2–957:25 (Hunt 598 frozen chain constraint; Johnson 468 room temperature stability); 1208:24–1209:12 (benefit of higher temperature stability)); and (4) a POSA reasonably expected this combination would work, including because it was shown to work in naturally-derived HSA-BoNT compositions by Johnson 468, "recombinant proteins are meant to be the same as animal-derived proteins" (Tr. 1146:21–23), and trehalose "has a long history of being an effective stabilizer of protein formulations" (Tr. 958:1–9; DTX-179).  These undisputed facts fully support JMOL that the Formulation Claim is invalid for obviousness.

In its opposition, Allergan argues that Johnson 468's use of naturally-derived HSA in its BoNT compositions teaches away.  But that argument is contradicted by Allergan's own expert. As Dr. Schöneich admitted, "recombinant proteins are meant to be the same as animal-derived proteins." (Tr. 1146:21–23.)  Allergan next argues that the polysaccharide embodiment in Hunt 598 teaches away.  But that argument is irrelevant, both factually and legally.  With respect to the facts, it is undisputed that Allergan's citations apply to the separate polysaccharide embodiment

in Hunt 598 (DTX-209, ¶¶[0175]–[0196]) and do not apply to the recombinant HSA embodiment (DTX-209, ¶¶[0153]–[0174]) on which Revance relies (Tr. 973:19–974:8; 1214:10–20; 1216:20–1217:21).  With respect to the law, disclosing multiple embodiments or preferring one embodiment does not "teach away" absent clear discouragement regarding the relevant embodiment.  *See In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004); *see also In re Susi*, 440 F.2d 442, 446 (CCPA 1971).

To present a proper "teaching away" argument, Allergan needed to show that a POSA would be dissuaded from combining the recombinant HSA-BoNT embodiment in Hunt 598 with the trehalose in Johnson 468.  Allergan failed to do so, rendering its "teaching away" argument insufficient as a matter of law.  Given that insufficiency, the Court should disregard Allergan's "teaching away" argument and grant JMOL of obviousness.  In the alternative, the Court should order a new trial on obviousness to address Revance's actual obviousness combination, avoid Allergan's misdirected "teaching away" arguments and prejudicial mistreatment of Dr. Sury, and cure the other errors identified in Revance's opening brief.

With respect to the jury's damages award, Revance showed that it was neither supported by substantial evidence nor reasonable.  In doing so, Revance showed that Dr. Siegwarth's trial testimony suffered from multiple fatal flaws and cannot provide any substantial evidence to support the jury's damages award.  Allergan tries to dodge Revance's post-trial damages motions by arguing that they are somehow untimely *Daubert* motions.  (D.I. 690, 14–16, 24–25.)  But Revance's Rule 50 motions properly focus on Dr. Siegwarth's trial testimony and admitted exhibits—not on her pretrial opinions.  Rule 50 squarely permits JMOL based on the insufficiency of Allergan's admitted trial evidence.  As shown in Revance's opening brief, that evidence was untethered to the facts of the case, failed to apportion for the patented features, and rested on unsupported assumptions and fatally flawed methodologies.  It cannot support the jury's damages

2

award.  *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014).  The Court should thus grant JMOL on damages.  In the alternative, given Dr. Siegwarth's fatally flawed trial testimony and the other errors identified in Revance's opening brief, the Court should order a new damages trial or remittitur.

## II.    THE COURT SHOULD GRANT JMOL OF OBVIOUSNESS

Allergan does not dispute that the ultimate question of obviousness is one of law for the Court to decide.  Revance's motion is the Court's first opportunity to do so.

### A. There Is No Dispute That Hunt 598 And Johnson 468 Are Prior Art And Disclose All Of The Limitations Of The Formulation Claim

Allergan argues that Revance's motion is merely "pointing to individual elements."  But that argument is belied by the trial record.  The parties agreed that Hunt 598 and Johnson 468 are prior art. (D.I. 584.)  Dr. Sury then showed that the recombinant HSA-BoNT embodiment of Hunt 598 disclosed every limitation of the Formulation Claim except the trehalose limitation and that Johnson 468 disclosed that limitation. (Tr. 961:24–972:13.)  Dr. Schöneich agreed with Dr. Sury's showing. (Tr. 1206:18–1207:8.)  Accordingly, the first two *Graham* factors ("scope and content of the prior art" and "differences between the prior art and the claims at issue") are undisputed and favor Revance.

### B.  Revance Proved A Motivation To Combine Hunt 598 and Johnson 468

In its opposition, Allergan ignores that Hunt 598 and Johnson 468 both disclose BoNT compositions with HSA.  That similarity alone shows a motivation to combine these references.  *See Aventis Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1384–85 (Fed. Cir. 2018) ("the greater the structural similarity between the compounds, the greater the motivation to combine").  The fact that Johnson 468 uses naturally-derived HSA in its compositions—as compared to the recombinant

3

HSA in the relevant Hunt 598 embodiment—does nothing to undermine the motivation to combine these references. Indeed, as Dr. Schöneich admitted: "recombinant proteins are meant to be the same as animal-derived proteins." (Tr. 1146:21–23.)

In addition to their similarity, the references disclose a problem, the solution, and a predictable benefit. Specifically, Hunt 598 discloses a problem that its recombinant HSA-BoNT embodiment requires frozen storage (Tr. 955:2–14, 957:9–25), while Johnson 468 discloses the solution of adding trehalose to HSA-BoNT compositions, with the predictable benefit of increased temperature stability (DTX-207.0003; Tr. 955:2–14). Dr. Schöneich acknowledged the difficulties of requiring frozen storage like Hunt 598 and the benefits of increased temperature stability due to trehalose like Johnson 468. (Tr. 1208:24–1209:12.) Given this record, a POSA had an undisputed reason to combine Hunt 598 and Johnson 468. *See L-3 Commc'ns Corp. v. Sony Corp.*, C.A. No. 10-734-RGA, 2014 WL 4674815, at *3 (D. Del. Sep. 12, 2014) (motivation to combine cannot be "lacking when the motivation is evident in the prior art references themselves"). Allergan's purported other options to increase temperature stability are irrelevant. *See In re Fulton*, 391 F.3d at 1201 ("mere disclosure of alternative designs does not teach away").

Carpenter confirms that a POSA had a reason to combine the stability-enhancing trehalose in Johnson 468 with the recombinant HSA-BoNT embodiment requiring frozen storage in Hunt 598. (DTX-179.0004–0005; Tr. 958:1–9.) Allergan calls Carpenter a "general formulation publication," but it is undisputed that the pertinent art is "protein compositions" (Tr. 946:24–947:11; 1136:16–23) and Allergan fails to cite any evidence that Carpenter would not apply to HSA-BoNT compositions. Allergan next argues that the disclosure of Hunt 598 and Johnson 468 to the PTO precludes a motivation to combine. But that argument is meritless, especially where, as here: (1) the references are both structurally similar ***and*** show a problem-solution motivation

to combine; (2) the PTO never heard Dr. Sury's testimony regarding combining the references nor Dr. Schöneich's admissions; (3) the PTO never considered Carpenter; and (4) Allergan does not cite a single case to support its argument.

### C. Revance Proved A Reasonable Expectation of Success

In its opposition, Allergan again ignores that Hunt 598 and Johnson 468 both disclose HSA-BoNT compositions. That commonality alone establishes a reasonable expectation of success in combining them, especially given that the recombinant HSA in Hunt 598 is "meant to be the same" as animal-derived HSA in Johnson 468. (Tr. 1146:21–23.) *See Aventis Pharms.*, 889 F.3d at 1384–85 ("the greater the structural similarity between the compounds, the greater the [] reasonable expectation of success"). Johnson 468 and Carpenter bolster that showing, with Johnson 468 showing the benefit of adding trehalose to a variety of BoNT compositions (DTX-207.0003-0004) and Carpenter stating that trehalose is one of two "main choices" for a stabilizing excipient that "are relatively effective at protecting proteins during freezing and usually excellent at inhibiting unfolding during dehydration" (DTX-179.0005). Dr. Sury confirmed this reasonable expectation of success with his trial testimony (Tr. 954:1–15; 957:9–25; DDX-6.23; DDX-6.61), which Dr. Schöneich did not dispute.

Allergan's "BoNT is unpredictable" argument cannot change this analysis. *See Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed Cir. 2007) ("obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success"). Nor can Allergan's assertion that "every protein [is] unique." Hunt 598 and Johnson 468 both disclose the same protein, BoNT, rendering Allergan's assertion a moot point. Allergan stresses what Mr. Hunt may have thought during his work, but that is yet another moot point. The relevant question is not what Mr. Hunt thought, but what a POSA charged with

5

knowledge of all of the prior art would have thought. *See Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (only the hypothetical POSA "is presumed to be aware of all the pertinent prior art"; the "actual inventor's skill is irrelevant").

### D. Allergan's Teaching Away Argument Is Legally Insufficient

Allergan's "teaching away" argument fails as a matter of law because it targets the wrong embodiment in Hunt 598. Specifically, Allergan cites statements regarding the polysaccharide embodiment (¶¶ [0175]–[0196]—*e.g.*, the "present invention excludes disaccharides" in ¶ [0180]), not the separate recombinant HSA embodiment on which Revance relies (¶¶ [0153]–[0174]). Indeed, Dr. Schöneich admitted that Allergan's ¶ [0180] statement resides in the polysaccharide embodiment, not in the recombinant HSA embodiment. (Tr. 1214:10–20; 1216:20–1217:21.) As the Federal Circuit has explained, a patent may disclose multiple alternative embodiments without teaching away. *See In re Fulton*, 391 F.3d at 1201; *In re Susi*, 440 F.2d at 446 (preferred examples do not teach away from broader disclosure); *In re Gurley*, 27 F.3d 551, 554 (Fed. Cir. 1994) (an alternative described as "inferior" does not teach away).

To present a legally sufficient "teaching away" argument, Allergan needed to present evidence that "criticize[s], discredit[s], or otherwise discourage[s]" Revance's combination: adding the trehalose of Johnson 468 to the recombinant HSA-BoNT embodiment of Hunt 598. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2009); *see also Idemitsu Kosan Co., Ltd. v. SFC Co. Ltd.*, 870 F.3d 1376, 1381 (Fed. Cir. 2017) ("Evidence concerning whether the prior art teaches away from a given invention must relate to and be commensurate in scope with the ultimate claims at issue."). Allergan failed to do so. Given its legal insufficiency, the Court should disregard Allergan's "teaching away" argument.

### E. Allergan's Asserted Objective Indicia Cannot Save The Formulation Claim

6

Allergan's asserted objective indicia—alleged skepticism, long-felt need, and unexpected results—cannot save the Formulation Claim. Allergan asserts that there was skepticism about stabilizing BoNT "without HSA." But any such skepticism is irrelevant. The Formulation Claim does not require doing "without HSA." The Formulation Claim clearly permits recombinant HSA, which the parties agree is APF. (Tr. 961:24–964:3; 1206:18–1207:8.) Allergan then asserts a long-felt need for stabilized BoNT formulations, but Johnson 468 discloses increasing the temperature stability of BoNT compositions with trehalose and Dr. Sury testified that trehalose had a long history of effectively stabilizing protein formulations (Tr. 958:1–9). This testimony was corroborated by Carpenter (DTX-179) and unrebutted by Dr. Schöneich. The trial record thus confirms that there was no relevant skepticism or long-felt need.

Lastly, Allergan asserts unexpected results. But Johnson 468 showed that adding trehalose to naturally-derived HSA-BoNT compositions increased the temperature stability of those compositions and Dr. Schöneich testified that "recombinant proteins are meant to be the same as animal-derived proteins." (Tr. 1146:21–23.) Given this record, there is no basis for Allergan to argue that it was unexpected that adding trehalose to the recombinant HSA-BoNT embodiment of Hunt 598 would increase its temperature stability. At trial, Allergan tried to link the Formulation Claim to alleged unexpected results with Mr. Hunt's testimony about maintained potency, which is the same as stability. (Tr. 352:11–353:19.) As shown in Johnson 468, Carpenter, and Dr. Sury's testimony, it was not unexpected that adding trehalose to an HSA-BoNT composition would increase its stability (and therefore help maintain its potency). Allergan's unexpected results argument suffers from additional fatal flaws, including that the proffered testing did not compare the claimed combination to the closest prior art and was not commensurate to the claim scope. (Tr. 446:23–447:4; 458:12–459:17.) But in any event, Allergan's asserted objective indicia cannot

overcome the strong *prima facie* case that the Formulation Claim is obvious because it combines known elements to yield a predictable result. *See Western Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("weak secondary considerations generally do not overcome a strong prima facie case of obviousness").

## III. ALTERNATIVELY, THE COURT SHOULD ORDER A NEW OBVIOUSNESS TRIAL

In the absence of JMOL that the Formulation Claim is invalid for obviousness, the Court should order a new obviousness trial. At trial, Allergan confused the jury and improperly skewed its obviousness analysis, including by hyper-focusing on an irrelevant embodiment in Hunt 598 to argue teaching away and baselessly attacking Dr. Sury as unqualified. Allergan's attacks on Dr. Sury had no bearing on the issues and were purely prejudicial. Indeed, Dr. Schöneich agreed with Dr. Sury that: (1) Hunt 598 and Johnson 468 are prior art; (2) these references disclosed all of the limitations of the Formulation Claim; (3) the pertinent art is protein formulations (Tr. 946:24–947:11, 1136:16–23); and (4) there is a benefit to higher-temperature stability (Tr. 1208:24–1209:12). On this record, there was no legitimate basis for Allergan's attacks on Dr. Sury—Dr. Schöneich put the same predicate facts in evidence. That Dr. Sury and Dr. Schöneich came to different ultimate conclusions on obviousness is irrelevant. The ultimate question of obviousness is one of law for the Court to decide, not the experts. And Dr. Schöneich admitted that the difference between his view and Dr. Sury's is one of law. (Tr. 1205:19–24.)

## IV. THE COURT SHOULD GRANT JMOL ON DAMAGES

### A. Allergan's "Daubert" Rejoinder Misstates The Record And The Law

Allergan tries to recast Revance's post-trial damages motions as *Daubert* motions. But that effort fails. Revance's motions do not seek gatekeeping relief. Rather, they seek relief under Rules 50 and 59 because the admitted trial testimony and exhibits cannot sustain the jury's

8

damages award.  Dr. Siegwarth's trial testimony and methodologies were fatally flawed, including because they wrongly assigned all "duration value" to the Formulation Claim, with a resulting 100 to 0 bargaining split; improperly mixed product-wide value and launch premium surveys; used an arbitrary "end of 2025" cutoff that lacked factual mooring; and failed to account for the trial admission that the '748 Manufacturing Patent was not needed to meet FDA requirements.  (D.I. 670, 14–21.)  These are classic sufficiency-of-the-evidence challenges suitable for post-trial relief.

Contrary to Allergan's argument, Revance has not forfeited the right to seek such relief. While Revance made various damages challenges, both before and during trial, whether it made a specific challenge to a specific point is not dispositive.  Rule 50 permits JMOL where the trial evidence is legally insufficient to support the verdict, regardless of whether the testimony was admitted under Rule 702 or any other challenge.  *See Omega Patents LLC v. CalAmp Corp.*, 13 F. 4th 1361, 1379 n.10 (Fed. Cir. 2021) ("'Failure to object to admission of the evidence does not act as a waiver as to a challenge to the sufficiency of the evidence for the jury to award damages.'"). Allergan's contrary suggestion violates controlling precedent requiring apportionment and prohibiting trial testimony and methodologies that smuggle in arbitrary bargaining splits.  (D.I. 670, 18–19.)  Indeed, the Federal Circuit routinely sets aside damages awards when an admitted opinion fails to apportion the value of the claimed invention or relies on assumptions divorced from the record.  *See, e.g., Omega Patents LLC*, 13 F. 4th at 1376–82 (vacating damages award and remanding for new trial because of failure to apportion); *Finjan, Inc.*, 879 F.3d at 1309–10 (remanding damages award because of failure to apportion).

The Court's *Daubert* rulings do not insulate the jury's damages award from these Federal Circuit requirements.  *Daubert* addresses facial reliability.  Post-trial review asks whether the trial record supplies the required substantial evidence.  Here, it does not.  The Court should thus grant

JMOL that Allergan is not entitled to the jury's damages award.  In the alternative, the deficiencies in Dr. Siegwarth's trial testimony warrant a new trial.  Where an expert's trial presentation diverges from the *Daubert* proffer or lacks factual grounding, courts may order one.  *E.g.*, *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1346–47 (Fed. Cir. 2025).  That is what occurred here.  (D.I. 670, 22–24.)  *See Apple Inc. v. Wi-Lan, Inc.*, C.A. No. 14-2235-DMS-BLM, 2019 WL 4248899, at *2 n.1 and *2–*5 (S.D. Cal. Jan. 3, 2019) (declining to consider damages JMOL but granting remittitur or new damages trial due to patentee's apportionment method lacking factual basis), *aff'd in relevant part*, 25 F.4th 960 (Fed. Cir. 2022).

**B.**    **The Jury's Damages Award Is Neither Supported By Substantial Evidence Nor Reasonable**

Allergan tries to frame Revance's damages motions as focusing on factual disputes properly decided by the jury.  But that framing is incorrect, rendering Allergan's arguments and cases inapposite.  Revance's motions focus on the lack of substantial evidence supporting the jury's damages award, not on how the jury decided particular issues in the absence of such evidence.  As explained in Revance's opening brief, a damages award is not supported by the required substantial evidence when it relies on fatally flawed testimony and exhibits, including: (1) an assumption against the weight of the evidence; (2) a failure to apportion patented value; (3) arbitrary anchors that risk skewing the analysis; and (4) an unsupported bargaining split.

**1.  The Formulation Claim Royalty Is Not Supported By Substantial Evidence**

Dr. Siegwarth based her trial testimony regarding the Formulation Claim on the unsupported—and unsupportable—assumption that the parties would attribute 100% of the value of DAXXIFY's extended duration to that claim with a 100 to 0 bargaining split.  As Revance explained in its opening brief, at the time of the hypothetical negotiation, Revance already had patents and a published paper attributing DAXXIFY's extended duration to Revance's proprietary

peptide. (DTX-520; DTX-521; JTX-121.) Given that evidence—which Dr. Siegwarth admitted was available during the hypothetical negotiation—Dr. Siegwarth's testimony that Revance would have agreed to attribute 100% of DAXXIFY's extended duration to the claim with a 100 to 0 bargaining split is fatally flawed and provides no substantial evidence for the jury's damages award. As Dr. Siegwarth admitted, if her assumption is incorrect, her rate is too. (Tr. 642:2–8.)

Dr. Siegwarth's survey testimony similarly fails to provide any substantial evidence. Dr. Siegwarth averaged unlike inputs (the price premium of DAXXIFY and customer preference survey results) and applied the 24% hybrid output to DAXXIFY as a whole (Tr. 1036:10–1039:6), thereby wrongly capturing non-duration and non-patent value. Federal Circuit law requires isolating the value of the patented contribution. *See Rite-Hite Corp.*, 56 F.3d at 1550 (no damages for "items that have essentially no functional relationship to the patented invention"). Allergan's suggestion that the jury was free to "split the difference" is contradicted by the Federal Circuit's repeated guidance against arbitrarily high anchors—like Dr. Siegwarth's 24%—which risk skewing verdicts and cannot substitute for factually supported bargaining outcomes. *See, e.g.*, *EcoFactor*, 137 F.4th at 1346 (unreliable expert damages testimony can "influence the jury"). Accordingly, the Court should enter JMOL that Allergan is not entitled to the damages awarded for the Formulation Claim.

### 2. The Manufacturing Claim Royalties Are Not Supported By Substantial Evidence

Dr. Siegwarth's trial testimony and methodology for the Manufacturing Claims are tied to a delay model with an "end of 2025" cutoff. Dropping evidence from Allergan's *Daubert* proffer, at trial Dr. Siegwarth cited only one piece of evidence as supporting that cutoff, a "by 2025" statement by Mylan's CEO. (PTX-643.0003.) Selecting an arbitrary, unsupported "end of 2025" cutoff, while conceding that moving the cutoff would materially lower the rate (Tr. 626:7–12),

11

reflects the kind of flawed damages analysis that the Federal Circuit has routinely rejected. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (criticizing "arbitrary, unreliable, and irrelevant" damages methodologies). It cannot provide the required substantial evidence for the jury's damages award.

With respect to the '748 Manufacturing Patent, Allergan's statement that "the individual values of these patents are based not on the differences between their patented features, but instead, as Dr. Siegwarth testified, on their relative contributions to the cost of delay" (D.I. 690, 22) confirms that Dr. Siegwarth's trial testimony also failed to apportion for the patented features. Under Federal Circuit precedent, apportionment is not optional—it is required. *See, e.g., Finjan, Inc.*, 879 F.3d at 1311 ("apportionment [is] required to reflect the value of the patented technology compared to the value of the unpatented elements"). That is especially true where, as here, an Allergan inventor testified that practicing the earlier-expiring '740 Manufacturing Patent alone was sufficient to meet FDA purity requirements. (Tr. 386:13–24.) Accordingly, the Court should enter JMOL that Allergan is not entitled to the damages awarded for the Manufacturing Claims.

## V.    ALTERNATIVELY, THE COURT SHOULD ORDER A NEW DAMAGES TRIAL

In the absence of JMOL on damages, the Court should order a new damages trial. Allergan presented its damages case at trial through Dr. Siegwarth's fatally flawed testimony, which violated multiple Federal Circuit requirements. (D.I. 670, 22–25.) The Court also excluded probative Allergan executive statements bearing on the hypothetical negotiation. (*Id.*) A new trial is necessary so a jury can consider reliable damages testimony on all the relevant evidence.

## VI.    CONCLUSION

For all these reasons, and the reasons set forth in Revance's opening brief, the Court should grant Revance's motions for JMOL or, in the alternative, a new trial or remittitur.

12

Dated: November 12, 2025

Of Counsel:

Dennies Varughese, Pharm. D.
Adam C. LaRock
Byron L. Pickard
Nirav N. Desai
Deirdre M. Wells
Anna G. Phillips
Christopher M. Gallo
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

Peter J. Armenio
Andrew Solomon
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Revance*
*Therapeutics, Inc. and PCI San Diego, Inc.*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 12, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jeremy A. Tigan
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899
jtigan@morrisnichols.com
araucci@morrisnichols.com

Candace Polster
Robert Unikel
PAUL HASTINGS LLP
71 South Wacker Drive
Suite 4500
Chicago, IL 60606
candacepolster@paulhastings.com
robertunikel@paulhastings.com


*Attorneys for Plaintiff*

Eric W. Dittmann
Chad J. Peterman
Melanie R. Rupert
Bruce M. Wexler
Ashley N. Mays-Williams, Ph.D.
Krystina L. Ho, Ph.D.
Carl J. Minniti, III
Isaac S. Ashkenazi
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166

Felix A. Eyzaguirre
PAUL HASTINGS LLP
600 Travis Street, 58th Floor
Houston, Texas 77002
felixeyzaguirre@paulhastings.com

Karthik R. Kasaraneni
David M. Valente
Amanda K. Taylor
Vladimir J. Semendyai
PAUL HASTINGS LLP
2050 M. Street NW
Washington, DC 20036
karthikkasaraneni@paulhastings.com
davidvalente@paulhastings.com
amandataylor@paulhastings.com
vladimirsemendyai@paulhastings.com

Dated: November 12, 2025

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants*
*Revance Therapeutics, Inc.*
*and PCI San Diego, Inc.*

2